**Fill in this information to identify the case:**

United States Bankruptcy Court for the:
Northern District of Texas (State)
Case number (*If known*): ______ Chapter 7

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

**Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).**

## Part 1: Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

**1. Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter *7*
☐ Chapter 11

## Part 2: Identify the Debtor

**2. Debtor's name**

WALL007 LLC

**3. Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

______
______
______

**4. Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

__ __ – __ __ __ __ __ __ __
EIN

**5. Debtor's address**

**Principal place of business**

13901 Midway Rd., Ste. 102
Number Street

______

Dallas TX 75244
City State ZIP Code

Dallas
County

**Mailing address, if different**

______
Number Street

______
P.O. Box

______
City State ZIP Code

**Location of principal assets, if different from principal place of business**

______
Number Street

______

______
City State ZIP Code

Debtor WALL007 LLC
Name

Case number (if known)________________

**6. Debtor's website** (URL) N/A

**7. Type of debtor**

- [X] Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- [ ] Partnership (excluding LLP)
- [ ] Other type of debtor. Specify: ________________

**8. Type of debtor's business**

*Check one:*

- [ ] Health Care Business (as defined in 11 U.S.C. § 101(27A))
- [X] Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- [ ] Railroad (as defined in 11 U.S.C. § 101(44))
- [ ] Stockbroker (as defined in 11 U.S.C. § 101(53A))
- [ ] Commodity Broker (as defined in 11 U.S.C. § 101(6))
- [ ] Clearing Bank (as defined in 11 U.S.C. § 781(3))
- [ ] None of the types of business listed.
- [ ] Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

- [X] No
- [ ] Yes. Debtor ________________ Relationship ________________

District ________________ Date filed ________ MM / DD / YYYY Case number, if known________________

Debtor ________________ Relationship ________________

District ________________ Date filed ________ MM / DD / YYYY Case number, if known________________

## Part 3: Report About the Case

**10. Venue**

*Check one:*

- [X] Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- [ ] A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked*:

- [X] The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- [ ] Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

- [X] No
- [ ] Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

Debtor WALL007 LLC
Name

Case number (if known)

**13. Each petitioner's claim**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jun Li | Loan Debt | $ 2,300,000.00 |
| Yunding Kang | Loan Debt | $ 345,000.00 |
| Cunxiang Ji | Loan Debt | $ 226,000.00 |
| | Total of petitioners' claims | $ 3,170,500.00* |

**If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.**

**See attached list of additional Petitioning Creditors*

## Part 4: Request for Relief

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**

**Name and mailing address of petitioner**

Jun Li
Name

No. 336 Central Tianfu Street, Wenjiant District
Number Street

Chengdu, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

DocuSigned by:
✘ Li Jun
1C07DB5AB2F248F...
Signature of petitioner or representative, including representative's title

**Attorneys**

Jiangang Ou, Esquire
Printed name

Nguyen & Chen, LLP
Firm name, if any

11200 Westheimer, Ste. 120
Number Street

Houston TX 77042
City State ZIP Code

Contact phone 832-767-0339 Email jou@nguyen-chen.com

Bar number 5451133

State NY

✘ /s/ Jiangang Ou
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

Debtor WALL007 LLC
Name

Case number (if known)

**Name and mailing address of petitioner**

Yunding Kang
Name

Room 2401, 56 New Nuclear Power Village, No. 55 Xinqiao
Number Street

South Road, Wuyuan Town, Haiyan County Zhejiang Province, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/23/2020
MM / DD / YYYY

DocuSigned by:
Yunding Kang
3A33ACBFC71A4B7...

Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

/s/ Stephen M. Packman
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

**Name and mailing address of petitioner**

Cunxiang Ji
Name

9-1, Weisi Road, Datong Mining Area, Shanxi Province
Number Street

China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
MM / DD / YYYY

Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone Email

Bar number

State

Signature of attorney

Date signed
MM / DD / YYYY

Debtor WALL007 LLC
Name

Case number (if known)

**Name and mailing address of petitioner**

Yunding Kang
Name

Room 2401, 56 New Nuclear Power Village, No. 55 Xinqiao
Number Street

South Road, Wuyuan Town, Haiyan County Zhejiang Province, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ______________
MM / DD / YYYY

✘ ______________________________
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

✘ ______________________________
Signature of attorney

Date signed ______________
MM / DD / YYYY

**Name and mailing address of petitioner**

Cunxiang Ji
Name

9-1, Weisi Road, Datong Mining Area, Shanxi Province
Number Street

China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

DocuSigned by:
✘ Cunxiang Ji
E5BFC06D56164D3...
Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone ______________ Email ______________

Bar number ______________

State ______________

✘ ______________________________
Signature of attorney

Date signed ______________
MM / DD / YYYY

# ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jin Wang | Loan Debt | $72,000.00 |
| Peng Guo | Loan Debt | $58,500.00 |
| Lin Zhou | Loan Debt | $57,500.00 |
| Qu Chen | Loan Debt | $56,500.00 |
| Kai Tian | Loan Debt | $55,000.00 |

**Name and mailing address of petitioner**
Jin Wang
4-2-202, Huanxi Xincun, Xiachen District,
Hangzhou, China

DocuSigned by:
Wang Jin
X____________________ 3/27/2020
6494743B35874A0...

**Name and mailing address of petitioner**
Peng Guo
6th Floor, Block C, North Third Ring Road
East Dongcheng District, Bejing, No. 36,
World Trade Center, China

X____________________

**Name and mailing address of petitioner**
Lin Zhou
1-406, Lane 1058, Lotus Road, Minghang
District, Shanghai, China

X____________________

**Name and mailing address of petitioner**
Qu Chen
1-4-602, Yongtai, Haidian District, Beijing,
China

X____________________

# ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jin Wang | Loan Debt | $72,000.00 |
| Peng Guo | Loan Debt | $58,500.00 |
| Lin Zhou | Loan Debt | $57,500.00 |
| Qu Chen | Loan Debt | $56,500.00 |
| Kai Tian | Loan Debt | $55,000.00 |

**Name and mailing address of petitioner**
Jin Wang
4-2-202, Huanxi Xincun, Xiachen District,
Hangzhou, China

X___________________________________

**Name and mailing address of petitioner**
Peng Guo
6th Floor, Block C, North Third Ring Road
East Dongcheng District, Bejing, No. 36,
World Trade Center, China

DocuSigned by:
X Peng Guo 3/23/2020
E48A2187F66342C...

**Name and mailing address of petitioner**
Lin Zhou
1-406, Lane 1058, Lotus Road, Minghang
District, Shanghai, China

X___________________________________

**Name and mailing address of petitioner**
Qu Chen
1-4-602, Yongtai, Haidian District, Beijing,
China

X___________________________________

# ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jin Wang | Loan Debt | $72,000.00 |
| Peng Guo | Loan Debt | $58,500.00 |
| Lin Zhou | Loan Debt | $57,500.00 |
| Qu Chen | Loan Debt | $56,500.00 |
| Kai Tian | Loan Debt | $55,000.00 |

**Name and mailing address of petitioner**
Jin Wang
4-2-202, Huanxi Xincun, Xiachen District,
Hangzhou, China

X___________________________________

**Name and mailing address of petitioner**
Peng Guo
6th Floor, Block C, North Third Ring Road
East Dongcheng District, Bejing, No. 36,
World Trade Center, China

X___________________________________

**Name and mailing address of petitioner**
Lin Zhou
1-406, Lane 1058, Lotus Road, Minghang
District, Shanghai, China

DocuSigned by:
X Lin Zhou 3/23/2020
2A4A08F3E3B9470...

**Name and mailing address of petitioner**
Qu Chen
1-4-602, Yongtai, Haidian District, Beijing,
China

X___________________________________

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Jin Wang | Loan Debt | $72,000.00 |
| Peng Guo | Loan Debt | $58,500.00 |
| Lin Zhou | Loan Debt | $57,500.00 |
| Qu Chen | Loan Debt | $56,500.00 |
| Kai Tian | Loan Debt | $55,000.00 |

**Name and mailing address of petitioner**
Jin Wang
4-2-202, Huanxi Xincun, Xiachen District, Hangzhou, China

X____________________________________

**Name and mailing address of petitioner**
Peng Guo
6th Floor, Block C, North Third Ring Road East Dongcheng District, Bejing, No. 36, World Trade Center, China

X____________________________________

**Name and mailing address of petitioner**
Lin Zhou
1-406, Lane 1058, Lotus Road, Minghang District, Shanghai, China

X____________________________________

**Name and mailing address of petitioner**
Qu Chen
1-4-602, Yongtai, Haidian District, Beijing, China

DocuSigned by:
X QU CHEN 3/21/2020
569106D448FB466...

# ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Kai Tian
No. 17 Minkang Hutong Xicheng District,
Bejing, China

DocuSigned by:
X Kai Tian 3/24/2020
31697F8B75F34C4...

218138923v1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF JUN LI IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Li Jun
1C07DB5AB2F248F...
JUN LI

218180299v1

# LOAN AGREEMENT

THIS AGREEMENT is dated FEB 25th, 2017, and is between Jun Li(Passport No. E80147802), ("Lender,"), Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD 2,000,000----two million US dollars

Interest: Interest amount equal to fifteen percent (15 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

# ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

### Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: ______________________

LI JUN

2017年2月28日

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**5.12 <u>Final Agreement</u>. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

-By: 李军 LI JUN 2017年2月28日

**"BORROWER"**

Wall 007, LLC

By: ______________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YUNDING KANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Yunding Kang
5A33ACBFC71A4B7...
YUNDING KANG

218180308v1

# LOAN AGREEMENT

THIS AGREEMENT is dated March 1, 2017, and is between Kang Yunding (Passport No_G54255758), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

康

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $300,000----three hundred thousand US dollars

Interest: Interest amount equal to seventeen percent (15 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

康

# ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

隸

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

祿

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

康

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

### Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

隷

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

康

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: ______________________________

**5.12 Final Agreement. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

-By: Kang Yunding

**"BORROWER"**

Wall 007, LLC

By: ______________________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

康

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF CUNXIANG JI IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Cunxiang Ji
E5BFC06D56164D3...
CUNXIANG JI

218180309v1

# LOAN AGREEMENT

THIS AGREEMENT is dated March 1, 2017, and is between Cunxiang Ji (Passport No_G26733358), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $200,000----Two Hundred thousand US dollars

Interest: Interest amount equal to thirteen percent (13 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

### Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: ____________________________

Cunxiang Ji

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**5.12 Final Agreement. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

By: Cunxiang Ji

**"BORROWER"**

Wall 007, LLC

By: ______________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF JIN WANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/27/2020

DocuSigned by:
Wang Jin
6494743B35874A0...

JIN WANG

218180310v1

# LOAN AGREEMENT

THIS AGREEMENT is dated April 19, 2017 , and is between Wang Jin (Passport No_E72440477), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $60,000----sixty thousand US dollars.

Interest: Interest amount equal to twenty percent (20 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: DocuSigned by: Wang Jin
6494743B35874A0...

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

5.12 **<u>Final Agreement</u>. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

DocuSigned by:

-By: Wang Jin ______________________________

6494743B35874A0...

**"BORROWER"**

Wall 007, LLC

By: ______________________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**<u>DECLARATION OF PENG GUO IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Peng Guo
E48A2187F66342C...
PENG GUO

218180312v1

# LOAN AGREEMENT

THIS AGREEMENT is dated March 1, 2017, and is between Guo Peng (Passport No_E90833751), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

### The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $50,000----fifty thousand US dollars

Interest: Interest amount equal to seventeen percent (17 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

### Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: ____________________________

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**5.12 <u>Final Agreement</u>. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

-By: ______________________________

**"BORROWER"**

Wall 007, LLC

By: ______________________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL007, LLC, | Case No. |
| Alleged Debtor. | |

## DECLARATION OF LIN ZHOU IN SUPPORT OF INVOLUNTARY PETITION

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DocuSigned by:
Lin Zhou
2A4A08F3E3B9470...

Dated: 3/23/2020

LIN ZHOU

218180313v1

# LOAN AGREEMENT

THIS AGREEMENT is dated__April 11, 2017_, and is between _Zhou Lin_ (Passport No_E13211404), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $50,000----fifty thousand US dollars.

Interest: Interest amount equal to fifteen percent (15 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

### Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: DocuSigned by: Lynn Zhou
2A4A08F3E3B9470...

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**5.12 Final Agreement. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

DocuSigned by:

-By: Lynn Zhou ______________________

2A4A08F3E3B9470...

**"BORROWER"**

Wall 007, LLC

By: ______________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF QU CHEN IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
QU CHEN
569106D448FB466...

QU CHEN

218180315v1

# LOAN AGREEMENT

THIS AGREEMENT is dated April 11, 2017 , and is between Chen Qu (Passport No_E89280825), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $50,000----fifty thousand US dollars.

Interest: Interest amount equal to thirteen percent (13 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

## ARTICLE TWO

### Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

### Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: DocuSigned by: GU CHEN 569106D448FB466...

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**5.12 <u>Final Agreement</u>. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

DocuSigned by:

By: GU CHEN
569106D448FB466...

**"BORROWER"**

Wall 007, LLC

By: ______________________________

Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL007, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**<u>DECLARATION OF KAI TIAN IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/24/2020

DocuSigned by:
Kai Tian
31697F8B75F34C4...
KAI TIAN

218180316v1

# LOAN AGREEMENT

THIS AGREEMENT is dated April 4, 2017 , and is between Tian Kai (Passport No_G42638576), ("Lender,"), and Wall 007, LLC, ("Borrower").

**Borrower acknowledges that the obligation of Lender to make the Loan to Borrower described below, is conditioned upon Lender's receipt of capital to make the Loan.**

## ARTICLE ONE

## The Loan

1.1 The Loan. Lender, upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein and as represented by the promissory note described herein.

(a) Note: The Loan shall be evidenced by, and repaid with interest in accordance with the promissory note of even date herewith, and generally described as follows:

(i) A single advance promissory note from Borrower in the original amount of Two Million Seven Hundred Sixty Thousand and No/100 Dollars ($2,760,000.00),Which is part of the total Purchase Price of $3,450,000.00, Said funds will be provided 80% by Lender funds collected by PIC and 20% by Steve Wall and PIC principal Michael Fu (the "Note"), has been or will be executed by Borrower to acquire of the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX.

(ii) The records of Lender shall be prima facie evidence of the amount owing on the Note.

(iii) Payment schedules, interest rates and other terms shall be as set forth in the Note.

(iv) Principal and interest:

Principal: USD $50,000----fifty thousand US dollars.

Interest: Interest amount equal to ten percent (10 %) per annum commencing on April 16th, 2017, the date that the Borrower receives the entire or partial of the total loan amount claimed by the Lender. The first year interest will be due to the Lender, within ten (10) Working Days after the expiration of one year on April 17th, 2018. The second year interest, together with the total principal shall be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

(b) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREE THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Note in part or in full without penalty at any time before final maturity, by cash or Check, . Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower are responsible under the Note or any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed in writing, relieve Borrower of Borrower's obligation to continue to make payments in accordance with the payment schedule.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of the Note and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower;

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected; or

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the

extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns have been appropriately filed and the taxes paid except those for which extensions have been obtained. All Interest paid will be after Tax cost

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, regardless of whether a Default or Event of Default shall have occurred, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it. Borrower's obligations under this subsection shall survive the delivery of the Loan Papers, the making of advances, the payment and

performance in full of the Indebtedness, the release or termination of the Loan Papers, any Bankruptcy proceeding, and any other event whatsoever.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to collect the Note or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

3.7 Borrower has the right to terminate the loan agreement anytime upon paying off the principal and interest to the date of termination.

## ARTICLE FOUR

## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement or the Note, irrespective of whether or not the Lender shall have made any demand under this Agreement or the Note and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land. In the event that the Borrower fails to provide the quarterly progress reports, the lender shall have the right to call the note upon a 60 day notice and if not cured by Borrower, shall have the right to reclaim the loan with promised interest earned thereon as of the date said note is called and stop the relationship with Wall007 LLC.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, the Note and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other. To the extent that terms and conditions contained therein are inconsistent or in conflict with conditions contained therein are inconsistent or in conflict with each other or with this Loan Agreement, the term or condition most favorable to Lender shall control over the less favorable and conflicting term or condition.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, the Note, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement and Note have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Note. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Note, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the Shares in Wall 007, LLC shall be pledged as collateral for this Loan.

5.7 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO LENDER: DocuSigned by: Tian kai ________________
31697F8B75F34C4...

TO BORROWER:

5.8 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner and holder of the Note shall hereafter designate by written notice to Borrower.

5.9 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.10 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.11 **Confidentiality**. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**5.12 <u>Final Agreement</u>. NOTICE TO BORROWER: AN AGREEMENT, PROMISE OR COMMITMENT TO LOAN MORE THAN $50,000.00 MUST BE IN WRITING AND SIGNED BY THE LENDER OR IT WILL BE UNENFORCEABLE. THE WRITTEN LOAN AGREEMENT WILL BE THE ONLY SOURCE OF RIGHTS AND OBLIGATIONS FOR AGREEMENTS TO LEND MORE THAN $50,000.00. ACCORDINGLY, YOU ARE NOTIFIED THAT:**

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**"LENDER"**

By: DocuSigned by: Tian kai
31697F8B75F34C4...
______________________________

**"BORROWER"**

Wall 007, LLC

By: ______________________________
Tim Barton as President of Carnegie Development, LLC,

The Managing Member of Wall 007, LLC