**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**<u>JOINT PRE-CONFERENCE STATEMENT</u>**

The petitioning creditors, Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Lan Ji, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu (collectively, "Petitioning Creditors") and Alleged Debtors, WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC ("Alleged Debtors") (collectively, the "Alleged Debtors," and together with the Petitioning Creditors, the "Parties"), hereby file this Joint Pre-Conference Statement.

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors at this time.

## **PROCEDURAL HISTORY**

1. Petitioning Creditors filed involuntary Chapter 7 bankruptcy petitions ("Petitions") against each Alleged Debtor on April 8, 2020. [Dkt. No. 1 in 20-31131; Dkt. No. 1 in 20-31133; Dkt. No. 1 in 20-31134, Dkt. No. 1 in 20-31135; Dkt. No. 1 in 20-31136; Dkt. No. 1 in 20-31138; Dkt. No. 1 in 20-31139].

2. On April 14, 2019, Petitioning Creditors served each of the Alleged Debtors with the Petition and the summons by U.S. First Class Mail. [Dkt. No. 9 in 20-31131; Dkt. No. 10 in 20-31133; Dkt. No. 9 in 20-31134, Dkt. No. 9 in 20-31135; Dkt. No. 9 in 20-31136; Dkt. No. 9 in 20-31138; Dkt. No. 9 in 20-31139]. The Alleged Debtors dispute the validity of service. On April 24, 2020, this Court entered an Order granting the Petitioning Creditors' motion to jointly administer the bankruptcy cases ("Cases") under the lead case WALL007 LLC [Dkt. No. 11 in 20-31133] (the "Lead Case"). The Alleged Debtors maintain that no notice of the motion to jointly administer the Cases ("Administration Motion"), or the hearing thereon, was provided to the Alleged Debtors. Petitioning Creditors filed a certificate of service in each of the Cases evidencing service of the motion to jointly administer the bankruptcy cases [Dkt. No. 6 in 20-31131; Dkt. No. 7 in 20-31133; Dkt. No. 6 in 20-31134, Dkt. No. 6 in 20-31135; Dkt. No. 6 in 20-31136; Dkt. No. 6 in 20-31138; Dkt. No. 6 in 20-31139]. The Petitioning Creditors have delivery receipts from FedEx should the Court require them.

3. Each Alleged Debtor filed a motion to dismiss the respective involuntary Petition filed against it ("Motions to Dismiss") on May 7, 2020 [Dkt. No. 18 in 20-31131; Dkt. No. 15 in 20-31133; Dkt. No. 14 in 20-31134, Dkt. No. 14 in 20-31135; Dkt. No. 14 in 20-31136; Dkt. No. 14 in 20-31138; Dkt. No. 14 in 20-31139].

4. In addition to the Motions to Dismiss, the Alleged Debtors also filed in the Lead Case a: (i) Motion for a Request for Substitution of Real Party-In-Interest [Dkt. No. 20 in 20-31131]; (ii) Motion for Request for Bond [Dkt. No. 21 in 20-31131]; and (iii) Motion for a Request for Award of Fees, Costs and Damages or in the Alternative to Abstain under Bankruptcy Code § 305 [Dkt. No. 22 and 23 in 20-31131] (the "Other Motions").

## PETITIONING CREDITORS' STATEMENT OF FACTS

5. As set forth in the Petitions, prior to the Petition Date, each of the Alleged Debtors entered into loan agreements ("Loan Agreements") with the Petitioning Creditors.

6. As evidenced by the Loan Agreements, the loans from the Petitioning Creditors to the Alleged Debtors ("Loans") were to be used by the Alleged Debtors for the purchase and development of certain parcels of real estate in Northern Texas ("Property"). **See**, Loan Agreements attached to Declarations of Petitioning Creditors accompanying the Petitions ("Declarations").

7. WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC are, or were intended to be, single asset real estate entities.

8. As set forth in the Declarations, the Alleged Debtors are in default of the Loan Agreements as, despite repeated demands, the Alleged Debtors have failed to pay the Loans back to the Petitioning Creditors as and when required under the Loan Agreements. **See**, Declarations.

9. The Alleged Debtors defaulted on other terms of the Loan Agreements as well, such as, but not limited to, providing accountings and Progress Reports on development of the land.

10. Petitioning Creditors believe that the Alleged Debtors are ultimately owned and/or controlled by the same insider, Timothy Barton.

11. Mr. Barton signed the Loan Agreements and other documents with the Petitioning Creditors (and other Chinese lender/creditors) via "DocuSign."

12. Other creditors of the Debtors have filed Proofs of Claims in certain of the Cases since the Petition date (with loan agreements and other proof attached) for unpaid amounts due on loans similar to those from the Petitioning Creditors to the Alleged Debtors totaling $**2,889,179.08**.

## ALLEGED DEBTORS' STATEMENT OF FACTS

13. Alleged Debtors dispute the Petitioning Creditors statement of facts and set forth their statement of facts, as provided principally in Paragraphs 8-14 of their Briefs in Support of their Motions, and further state the following:

14. The Alleged Debtors are Texas limited liability companies formed for the purpose of acquiring land in order to construct horizontal improvements thereon as necessary to create a subdivision – streets, water utilities, sewers, sidewalks, and residential lots – with the objective of selling residential lots to home builders over a period of time.

15. Each Alleged Debtor entered into a pooled loan agreement with their respective Petitioning Creditors through their designated agent Michael Fu, who was doing business as Silverland Financial Ltd. and Platinum Investment Corporation (collectively referred to herein as "Fu"). Fu located the Petitioning Creditors, engaged them to provide **co-lending** through the Fu Entities, organized the transfer of funds, and acted as an agent on behalf of all the co-lending Petitioning Creditors. The pooled loans were part of a single partnership amongst the Petitioning

Creditors as co-lenders with Fu and/or his entities as the unified, designated agent. None of the contemplated promissory notes described in the Loan Agreements were ever executed.

16. Alleged Debtors dispute that they received funds from the Petitioning Creditors; Alleged Debtors have received "remittances" from many unknown persons and entities in China, Hong Kong, and the United States. Contrary to their Declarations filed certain Petitioning Creditors fail to evidence the funding and remittance of the alleged loan proceeds by such Petitioning Creditors to the Alleged Debtors in accordance with the term of the Loan Agreements.

17. Alleged Debtors assert that (i) Fu has continuously misled Petitioning Creditors and the Alleged Debtor and has conducted certain financial practices related to the Petitioning Creditors' claims in violation of both the laws of China and United States; and (ii) Fu has interfered with and prevented Alleged Debtors from withholding taxes as required and redirected Alleged Debtors' payments to certain, unrelated third-party accounts in foreign jurisdictions instead of returning funds to the originating banks.

18. Alleged Debtors assert that (i) Fu and Petitioning Creditors have not abided by the terms of the applicable Loan Agreements; (ii) Alleged Debtors have made certain payments to Petitioning Creditors at the direction of Fu; and (iii) they have not defaulted under the Loan Agreement.

19. Dispute arose between the parties in 2019 regarding the respective pooled loan agreements, including as to payments, payment terms, payment instructions, the lack of identification for the unknown remitters, co-lenders' banks, and tax withholding issues. Such disputes culminated in the filing of Cause No. DC-19-18361 in the 44th Judicial District Court of Dallas County, Texas, by some of the Petitioning Creditors and Fu against WALL007 LLC and WALL009 LLC. Instead of participating by responding in the state court action to several pending

matters, the Petitioning Creditors opted instead to forum shop and file these involuntary bankruptcy petitions in bad faith.

20. Alleged Debtors assert that Petitioning Creditors filed the Petitions without meeting the requisite statutory compliance, with improper motives as a litigation tactic and debt collection device, and in bad faith as set forth in their Motions to Dismiss. Alleged Debtors assert that (i) there are an insufficient number of Petitioning Creditors; (ii) Petitioning Creditors' claims are subject to bona fide disputes, contingent, and unliquidated; (iii) the Alleged Debtors are generally paying their debts as they become due; and (iv) the Petitions are not in the best interest of all of the creditors or the Alleged Debtors.

21. Alleged Debtors assert that Fu is the real party-in-interest based on the pooled loan agreements and his agency role and should be substituted for the Petitioning Creditors, except as to Alleged Debtors' request for sanctions and damages in which he should be included as an additional party. Fu is a party to the Loan Agreements, organized the pool of loans for and in partnership with the Petitioning Creditors, that is subject of the Petitioning Creditors' claims. Fu also has asserted certain rights and claim related to the Loan Agreement that are in dispute and has essentially served and acted on behalf of the Petitioning Creditors as if a single creditor of each respective entity. Further, upon information and belief, Fu has acted fraudulently and may have committed financial crimes in the course of his actions.

## RESULTS OF COUNSELS' MEETING

22. **Date, Time Location of Counsels Meeting:** Telephonic conference on May 11, 2020 at around 10:55 am NY time. The attendees were as follows:

(a) Stephen M. Packman – Counsel for Petitioning Creditors.

(b) Joyce W. Lindauer – Counsel for Alleged Debtors.

23. **The parties stipulated to the following facts:**

(a) None at this time.

24. **Petitioning Creditors' Statement of Contested Facts and Legal Issues:**

(a) The Petitioning Creditors have reviewed the Motions to Dismiss and the Other Motions (collectively, the "Motions"). The Motions are procedurally improper. The Motions are further replete with contested facts and legal positions of the Alleged Debtors which are irrelevant to this Court's determination on the Petitions and interposed merely for purposes of obfuscation and delay. The Petitioning Creditors have attached to the Petitions proof of each Loan Agreement and a Declaration from each Petitioning Creditor affirming the Loan, and amount thereof, made to each of the Alleged Debtors at issue. The Declarations further affirm that the Alleged Debtors have failed to repay the Loans as promised to Petitioning Creditors per the clear repayment terms of the Loan Agreements.

(b) Petitioning Creditors will file with the Court more detailed proof of the Loan proceeds advanced by them to the Alleged Debtors and the Alleged Debtor's signed confirmation of receipt thereof. The Petitioning Creditors are uncertain what the Alleged Debtors did with the loan proceeds which were supposed to be utilized (per a Prospectus and other representations) by the Alleged Debtors for the purchase and build out of residential housing projects.

(c) The Petitioning Creditors have requested proper accountings from the Alleged Debtors and other information relative to the Loans and the underlying "projects," to no avail. The Petitioning Creditors have, once again in these Cases, through their counsel, requested that the Alleged Debtors provide such information to the Petitioning Creditors. That information has yet to be provided by the Alleged Debtors.

(d) The Petitioning Creditors submit that there are no real issues which could be raised by the Alleged Debtors as to the legitimacy of the Petitioning Creditors' claims. Put simply, the Petitioning Creditors loaned money to the Alleged Debtors on the promise that the Loans would be repaid pursuant to the terms of the Loan Agreements. Despite repeated demands, the Alleged Debtors have refused (and continue to refuse) to repay the Loans. If, as the Alleged Debtors suggest, they have tried to repay the Loans without success, it is curious that they should now contest the Petitioning Creditors' Loan claims (or dispute their obligations to repay the Loans); and, of course, the Alleged Debtors should have no issue with the immediate payment of the Loans to the Petitioning Creditors. Otherwise, it is axiomatic that the Alleged Debtors have failed to pay their debts as they became due.

(e) In fact, there is no dispute that the Alleged Debtors are not paying their debts as they come due, and the indebtedness owed to the Petitioning Creditors is not contingent in nature. This is evidenced not only by the Petitioning Creditors' Declarations but also by the Proofs of Claims filed by other Chinese creditors in the Cases. Petitioning Creditors expect additional claims may be filed based on the number of loans made to the Alleged Debtors in addition to the Loans.

(f) There is no bona fide dispute as to the underlying debts which are evidenced by the Loan Agreements, or the fact that the Alleged Debtors have refused to repay the debts per the terms of the Loan Agreements despite demand. The Motions (and Other Motions) wish to delve into matters which are completely irrelevant to this Court's determination whether to grant the Petitions and enter Orders for Relief thereon. Petitioning Creditors intend to oppose efforts by the Alleged Debtors to delay matters by seeking irrelevant discovery in these Cases.

(g) The Petitioning Creditors maintain that they properly served the Petitions and the Motion to consolidate the cases (for administrative purposes only) upon the Alleged Debtors based upon the information which was available to counsel for the Petitioning Creditors as to the Alleged Debtors' business address. The Petitioning Creditors maintain that the Alleged Debtors' responses were due to the Petitions on May 5, 2020. The Alleged Debtors filed the Motions to Dismiss and the Other Motions on May 7, 2020.

(h) Petitioning Creditors dispute the entirety of the Alleged Debtors Statements below and, in particular, wish to note that the statements of counsel regarding her telephone conference with Petitioning Creditors' counsel are incorrect. Counsel's version of the conversation (which she felt compelled to add to this document) completely mischaracterizes the discussion. Moreover, it is the position of the Petitioning Creditors that the entirety of the Alleged Debtors' position herein and in the Motions and Other Motions, is nothing but concocted diatribe, interposed for no other purpose than to avoid the real issues in these Cases and to create delay.

25. **Alleged Debtors' Statement of Contested Facts and Legal Issues:**

(a) The Alleged Debtors direct the Court to their Motions filed. Further the Alleged Debtors contend the Motions are procedurally proper. Challenging involuntary petitions with a motion to dismiss is expressly permitted under the Bankruptcy Code and Rules. 11 U.S.C. § 303(b)(1); 11 U.S.C. § 303(h)(1); 11 U.S.C. § 305(a); 11 U.S.C. § 707(a). The Motions are relevant to this Court's determination on the Petitions because they identify multiple disputes that exist regarding the alleged debts, challenge the existence of any defaults by them and challenge the existence, validity, source of funds, and ownership of the loans made the subject of the Petitions, dispute the identity and number of creditors in each case and ultimately challenge the motives behind the filings as such were made in bad faith by Petitioning Creditors and Fu,

including to shortcut state court proceedings resulting in damages and irreparable harm to the Alleged Debtors. The Petitioning Creditors have attached to the Petitions their alleged proof of each Loan Agreement and an alleged Declaration from each Petitioner; however, (i) there is no proof that such persons actually made the loans and remitted the funds under the terms of the Loan Agreements; (ii) the documents are allegedly docu-signed by persons from or located in China and elsewhere; and (iii) the amounts therein are not liquidated, not non-contingent and are disputed for multiple reasons including as previously stated above. There are bona fide disputes as to the underlying loans. The Alleged Debtors intend to show that the Petitions were filed in bad faith and have caused harm to the Alleged Debtors and that the Petitioning Creditors and Fu will be responsible for compensatory damages, punitive damages, and fees.

(b) Alleged Debtors have asserted in their Motions the following legal issues as cause for dismissal of the Petitions:

(i) 11 U.S.C. § 303(b)(1) because there are an insufficient number of petitioning creditors;

(ii) 11 U.S.C. § 303(b)(1) because all of Petitioners claims are subject to bona fide disputes, contingent, and disputed;

(iii) 11 U.S.C. § 303(h)(1) because Alleged Debtor is generally paying its debts as they become due;

(iv) 11 U.S.C. § 305(a) because the Involuntary Petition is not in the best interest of the Alleged Debtor's creditors or the Alleged Debtor;

(v) 11 U.S.C. § 707(a) for good cause shown; and

(vi) 11 U.S.C. § 305(a) in abstention.

(c) Conference with Petitioning Creditor's Counsel during the May 11, 2020 conference call revealed that the main purpose of the filings was to obtain an accounting of monies that were received by the Wall entities from some of the Petitioning Creditors. The consequence of the filings could actually be the liquidation of the Wall real estate assets which could result in tremendous losses for the Petitioning Creditors and the Wall entities in this marketplace and after significant development work has already occurred. These concerns along with the ill-conceived filing of the involuntary petitions were expressed to Counsel for the Petitioning Creditors.

26. **List of motions, including dispositive motions, expected to be filed or that have been filed:**

(a) The Motions consist of the following by Alleged Debtors:

(i) Motions to Dismiss Involuntary Petitions filed in each of the Cases.

(ii) Motion for a Request for Substitution of Real Party-In-Interest.

(iii) Motion for Request for Bond.

(iv) Motion for a Request for Award of Fees, Costs and Damages or in the Alternative to Abstain under Bankruptcy Code § 305.

(b) The Petitioning Creditors intend to file opposition to the Motions and then file motions for summary disposition of the Petitions if permitted by the Court. The Petitioning Creditors believe these Petitions require only simple cases of proof by the Petitioning Creditors (to demonstrate the claims are not in bona fide dispute and the Alleged Debtors are not paying their debts when due). The Petitioning Creditors anticipate requiring limited discovery in the form of document requests (but reserve their right to take depositions if necessary) and believe that thereafter the Petitions can be adjudicated by the Court on a summary basis; or, if deemed necessary by the Court, upon truncated plenary hearing(s) to be scheduled by the Court.

(c) The Alleged Debtors each intend to file their respective list of creditors pursuant to FED. R. BANK. P. 1003(b) and then expect extensive discovery to be necessary in these cases for the purposes of ferreting out issues including standing, service, the alleged loan amounts, the validity and enforceability of the loan agreement, to identity the remitters and source of funds, the role of Michael Fu d/b/a Silverland Financial Ltd and Platinum Investment Corporation, and the facilitation of the filing of the involuntary petitions. Alleged Debtors anticipate such discovery to be conducted pursuant to FED. R. BANK. P. 7027-7036 as applied to contested matters by LOCAL BANKRUPTCY RULE 2004-1(b).

Dated: May 13, 2020

/s/ *Jiangang Ou*

Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: 832-767-0339
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
Tel: 215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Petitioning Creditors*

-and-

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
972-503-4033
Email: joyce@joycelindauer.com

*Counsel for the Alleged Debtors*

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2020, I caused a copy of the foregoing document to be served via ECF to all parties.

/s/ *Jiangang Ou*
Jiangang Ou

218513040v3