**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**PETITIONING CREDITORS' RESPONSE TO ALLEGED DEBTORS' MOTIONS TO DISMISS AND MOTIONS FOR OTHER RELIEF**

The petitioning creditors, Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Lan Ji, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu (collectively, the "Petitioning Creditors"), by and through their undersigned counsel, hereby file this opposition (the "Opposition") to the motions to dismiss case; motions for substitution of real party in interest; motions for bond; motions for award of fees costs and damages; and motions to abstain (collectively, the "Debtor Motions")

[1]The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors sat this time.

(filed by the above captioned alleged debtors, WALL007 LLC; WALL009 LLC; WALL010 LLC; WALL011 LLC; WALL012 LLC; WALL016 LLC; WALL017 LLC - collectively, the "Alleged Debtors"), and in support thereof, respectfully aver as follows:

**INTRODUCTION**[2]

1. Throughout the brief pendency of these proceedings, and reaching a crescendo in their brief in support of the Debtor Motions, the Alleged Debtors attempt to portray the Petitioning Creditors as a syndicate of duplicitous individuals all controlled by Michael Fu ("Fu"), the man the Alleged Debtors claim is the one and only "real party-in-interest" in these bankruptcy cases (the "Cases"). Ignoring voluminous documentation to the contrary, and turning a blind eye to the facts they know to be true, the Alleged Debtors assert that Fu is a party to the Loan Agreements (as hereinafter defined)– somehow the *only* party. The Alleged Debtors insist that Fu unilaterally organized the pool of loans for and in partnership with the Petitioning Creditors and is "using the Petitioners as pawns in this proceeding." See Motions to Dismiss at ¶ 2. In essence, the Alleged Debtors ask this Court to find that *over seventy (70) Petitioning Creditors* should be construed as a single creditor entity (Fu), despite clear evidence to the contrary.

2. In addition to the myriad substantive defects, the motions to dismiss ("Motions to Dismiss") are also procedurally improper. The Motions to Dismiss do not indicate under what subsection of Rule 12(b) of the Federal Rules of Civil Procedure (the "Federal Rules") the Alleged Debtors move as a basis upon which to dismiss the Petitions, as required under Rule 1011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). See Fed. R. Bankr. P. 1011; Motions to Dismiss at ¶¶ 5-7. For purposes of this Opposition, the Petitioning

[2] Capitalized terms not defined in this section are defined in a later section of the Opposition.

Creditors must assume that the Motions to Dismiss are filed under Federal Rule 12(b)(6), as it appears that the Alleged Debtors are not contesting the jurisdiction of this Court.

3. The Motions to Dismiss are also replete with contested facts and legal positions of the Alleged Debtors, all of which are irrelevant to this Court's determination on the Petitions for purposes of a motion to dismiss an involuntary bankruptcy proceeding, and are interposed merely for purposes of obfuscation and delay.

4. The Petitioning Creditors have attached to the Petitions proof of each Loan Agreement and a Declaration from each Petitioning Creditor affirming the Loan, and amount thereof, made to each of the Alleged Debtors at issue. The Declarations further affirm that the Alleged Debtors have failed to repay the Loans as promised to Petitioning Creditors per the clear repayment terms of the Loan Agreements.

5. In their Motions to Dismiss, the Alleged Debtors have failed to articulate factual or legal disputes that would rise to the level of "bona fide" disputes for purposes of disqualifying a claimant as being an eligible petitioning creditor. Accordingly, the Motions to Dismiss must be denied in their entirety as the Alleged Debtors have failed to demonstrate that: (i) the Petitioning Creditors are improper parties to commence such action under 11 U.S.C. § 303(b); (ii) the Alleged Debtors have been and are generally paying their debts as they become due; (iii) the Petitions were filed in bad faith; or (iv) that this Court should abstain under 11 U.S.C. § 305. Indeed, the Alleged Debtors have not provided any evidence demonstrating that the Petitioning Creditors hold claims that are subject to a "bona fide dispute," as such term is used in section 303 of the Bankruptcy Code.

6. The immediate entry of an order for relief with respect to the Petitions will provide a tremendous benefit to the Alleged Debtors and *all* of their respective creditors by, *inter*

*alia*, protecting assets and preventing unnecessary expenditures and mismanagement/waste, as well as providing a platform for the recovery of any transfers of the Alleged Debtors' assets, including perhaps some or all of the $33,000,000 dollars in loans ("Loans") the Petitioning Creditors and other lenders advanced to the Alleged Debtors. Despite repeated demands, the Alleged Debtors have yet to account to the Petitioning Creditors for the use and/or whereabouts of the Loan money.

**RELEVANT PROCEDURAL HISTORY**

7. The Petitioning Creditors filed involuntary chapter 7 bankruptcy petitions (collectively, the "Petitions") against each Alleged Debtor on April 8, 2020. See [Dkt. No. 1 in 20-31131]; [Dkt. No. 1 in 20-31133]; [Dkt. No. 1 in 20-31134]; [Dkt. No. 1 in 20-31135]; [Dkt. No. 1 in 20-31136]; [Dkt. No. 1 in 20-31138]; [Dkt. No. 1 in 20-31139].

8. On April 14, 2019, the Petitioning Creditors served each of the Alleged Debtors with the Petition and the summons by U.S. First Class Mail. See [Dkt. No. 9 in 20-31131]; [Dkt. No. 10 in 20-31133]; [Dkt. No. 9 in 20-31134]; [Dkt. No. 9 in 20-31135]; [Dkt. No. 9 in 20-31136]; [Dkt. No. 9 in 20-31138]; [Dkt. No. 9 in 20-31139]. The Alleged Debtors dispute the validity of such service.

9. The Petitioning Creditors have filed an Amended Certification of Service addressing the original "service issues" raised by the Alleged Debtors. See Docket No. 32 in 20-31131.

10. On April 24, 2020, this Court entered an Order granting the Petitioning Creditors' motion to jointly administer the bankruptcy cases (the "Cases") under the lead case WALL007 LLC [Dkt. No. 11 in 20-31131] (the "Lead Case"). The Alleged Debtors maintain that no notice of the motion to jointly administer the Cases (the "Administration Motion"), or the hearing thereon, was provided to the Alleged Debtors. Petitioning Creditors filed a certificate of service

in each of the Cases evidencing service of the Administration Motion. See [Dkt. No. 6 in 20-31131]; [Dkt. No. 7 in 20-31133]; [Dkt. No. 6 in 20-31134]; [Dkt. No. 6 in 20-31135]; [Dkt. No. 6 in 20-31136]; [Dkt. No. 6 in 20-31138]; [Dkt. No. 6 in 20-31139]. The Petitioning Creditors have filed an Amended Certification of Service addressing the "service issues" raised by the Alleged Debtors. See Docket No.33

11. On May 7, 2020, each Alleged Debtor filed the Motions to Dismiss. See [Dkt. No. 18 in 20-31131]; [Dkt. No. 15 in 20-31133]; [Dkt. No. 14 in 20-31134]; [Dkt. No. 14 in 20-31135]; [Dkt. No. 14 in 20-31136]; [Dkt. No. 14 in 20-31138]; [Dkt. No. 14 in 20-31139].

12. The Alleged Debtors also filed other Debtor Motions as follows in the Lead Case: (i) a Motion for a Request for Substitution of Real Party-In-Interest [Dkt. No. 20 in 20-31131]; (ii) a Motion for Request for Bond [Dkt. No. 21 in 20-31131]; and (iii) a Motion for a Request for Award of Fees, Costs and Damages or in the Alternative to Abstain under Bankruptcy Code § 305 [Dkt. No. 22 and 23 in 20-31131].

## STATEMENT OF FACTS

13. As set forth in the Petitions, prior to the Petition Date, each of the Alleged Debtors entered into loan agreements ("Loan Agreements") with the Petitioning Creditors. See Petitions. See Loan Agreements attached to Declarations of Petitioning Creditors accompanying the Petitions ("Declarations").

14. As evidenced by the Loan Agreements, the Loans from the Petitioning Creditors to the Alleged Debtors were to be used by the Alleged Debtors for the purchase and development of certain parcels of real estate in Northern Texas ("Property"). See Loan Agreements (¶1.1(a)(i)) attached to Declarations of Petitioning Creditors accompanying the Petitions.

15. Each of the Alleged Debtors are, or were intended to be, single asset real estate entities. See Motions to Dismiss ¶ 8.

16. As set forth in the Declarations, the Alleged Debtors are in default of the Loan Agreements as, despite repeated demands, the Alleged Debtors have failed to repay the Loans to the Petitioning Creditors as and when required under the Loan Agreements. See Declarations.

17. In fact, an examination of the Loan Agreement attached to the Declarations reflects that not only are interest payments due to Petitioning Creditors which have not been paid but many of the Loans have matured by their terms and are now due in full as a result of maturity thereof. See Exhibit "A."

18. The Alleged Debtors defaulted on other terms of the Loan Agreements as well, such as, but not limited to, failing to provide accountings and progress reports on development of the Property as and when required.

19. Petitioning Creditors believe that the Alleged Debtors are all ultimately owned and/or controlled by the same insider, Timothy Barton.

20. Mr. Barton signed the Loan Agreements and other documents with the Petitioning Creditors (and other lender/creditors) via "DocuSign." See Exhibit "A" pg. 10.

21. Mr. Barton also signed off on documents in favor of the Petitioning Creditors verifying the Alleged Debtors receipt of the Loans. Attached as Exhibit "B" are multiple documents signed by Mr. Barton evidencing receipt of the Loans by the Alleged Debtors.

22. Since the Petition Date, other creditors of the Alleged Debtors have filed Proofs of Claims in certain of the Cases (with loan agreements and other proofs attached) for unpaid amounts due on loans similar to those from the Petitioning Creditors to the Alleged Debtors, totaling $**2,889,179.08**. See Claims Registers of WALL007 LLC (20-31131); WALL009 LLC (20-31133); WALL010 LLC (20-31134); WALL011 LLC (20-31135); WALL012 LLC (20-31136]; WALL016 LLC (20-31138); WALL017 LLC (20-31139).

## LEGAL ARGUMENT

23. An involuntary bankruptcy petition is to be construed in the light most favorable to the petitioners, whose allegations are to be taken as true. In re Rambo Imaging, L.L.P, 2007 WL 3376163 (Bankr. W.D. Tex. 2007); see also In re Calloway, 70 B.R. 175, 179 (Bankr. N.D. Ind. 1986). Motions to dismiss an involuntary petition pursuant to Bankruptcy Rule 1011(b) and Federal Rule 12(b), are disfavored and should not be granted unless it appears certain that the petitioners would not be entitled to an order for relief under any facts they could prove in support of their allegations. Id.

24. Consideration of matters beyond the complaint is improper in the context of a motion to dismiss under Federal Rule 12(b)(6). Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999) ("This court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts ...."), cert. denied, 530 U.S. 1229 (2000).

25. Dismissal of the Petitions is inappropriate as the Petitions facially meet all of the requirements of section 303(b) of the Bankruptcy Code.

26. The Alleged Debtors argue that the Petitions should be dismissed because the Petitioning Creditors are not eligible creditors under 11 U.S.C. § 303. They blindly assert that Mr. Fu is the real party in interest who should be substituted in the Cases, and that the claims at issue (whether they belong to Mr. Fu or the Petitioning Creditors) are nevertheless subject to a "bona fide dispute." The Alleged Debtors also argue that the Petitions were filed in bad faith.

27. In fact, the Alleged Debtors argument in support of substituting Mr. Fu as the Petitioning Creditors is not supported in the slightest. It appears to be simply a desire of counsel for the Alleged Debtors unsupported by any law at all.

28. As demonstrated below, and set forth in the Petitions and uncontroverted by any evidence currently before this Court, the Petitioning Creditors are eligible to file the Petitions

pursuant to 11 U.S.C. § 303(b) as they plainly hold claims against the Alleged Debtors arising under the various Loan Agreements.

29. Taking all of the facts pled by the Petitioning Creditors in the Petitions and related documents, in the light most favorable to the Petitioning Creditors, there is no question that the Motions to Dismiss must be denied in their entirety.

30. Additionally, the Petitioning Creditors respond herein to the Debtor Motions for a bond, for abstention and for attorney's fees and damages asserted by way of "afterthought" motions filed with the Motions to Dismiss. They too are completely devoid of support under the facts and law of this case.

**A. The Allegations Contained In the Petitions Must Be Taken As True and Viewed In the Light Most Favorable To the Petitioning Creditors**

31. The Motions to Dismiss state that they are made generically pursuant to Federal Rule 12(b), without any indication as to whether they are made pursuant to Federal Rule 12(b)(1) or 12(b)(6) or, some other Rule.

32. As prescribed by controlling case law, Federal Rule 12(b) (1) and 12(b)(6) motions generally apply a different analysis (a factual evaluation versus a facial evaluation). However, given that no answer has yet been filed in these Cases, the factual allegations in the Petitions must be taken as true and unrefuted, and construed in the light most favorable to the Petitioning Creditors whether the Motions to Dismiss are considered in the context of either Federal Rule 12(b)(l) or 12(b)(6).

33. Case law is clear that motions to dismiss pursuant to Federal Rule 12(b)(6) must be determined based on the face of the complaint (or involuntary petition) and that the involuntary petition will be construed in the light most favorable to the petitioning creditors in

the context of such a motion. In re Rambo Imaging, L.L.P., 2007 WL 3376163 at *5 (Bankr. W.D. Tex. 2007) (… for purposes of a Rule 12(b)(6) motion to dismiss-even when applied to an involuntary petition-the “complaint” is construed in the light most favorable to the “plaintiff,” and all facts alleged by it are accepted as true.).

34. In the Fifth Circuit, “[t]he complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff.” Woodard v. Andrus, 419 F.3d 348, 351 (5th Cir. 2005); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (“[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.”); Grisham v. United States, 103 F.3d 24, 25-26 (5th Cir. 1997).

35. The Petitioning Creditors filed Official Form 5 with each of the Petitions. In addition to Official Form 5, the Petitioning Creditors included the Declarations from each of the Petitioning Creditors outlining the factual allegations and claims necessary to support the filing of the involuntary petitions against the Alleged Debtors. For purposes of the instant Motions to Dismiss, courts have found that “in the absence of affidavits or evidence to the contrary, the well pleaded allegations of the creditors' petition, for purposes of a motion to dismiss, must be accepted as true.” In re Rambo Imaging, L.L.P., 2007 WL 3376163, at *9 (Bankr. W.D. Tex. Nov. 8, 2007) (citation omitted).

36. Motions to dismiss pursuant to Federal Rule 12(b)(1), filed prior to an answer in an involuntary bankruptcy case, are evaluated in the same manner as under Federal Rule 12(b)(6). When a Federal Rule 12(b)(1) motion is made prior to the service of an answer to the petition, the court must accept factual allegations in the pleading relating to jurisdiction as true.

The motion will be granted "only if [petitioner] has failed to allege an element necessary for subject matter jurisdiction. In re Modell, 168 B.R. 851, 855 (Bankr. S.D.N.Y. 1994).

> On a factual 12(b)(1) motion, the court is free to weigh the evidence and satisfy itself as to the existence of subject matter jurisdiction, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of the jurisdictional claims. In addition, the plaintiff has the burden of proof that jurisdiction does in fact exist. This 12(b)(1) factual evaluation may occur at any stage of the proceedings from and after the time the answer has been served until after the trial has been completed. A factual jurisdictional proceeding cannot occur, however, until the plaintiffs' allegations have been controverted.

In re Onyx Telecommunications, Ltd., 60 B.R. 492, (Bankr. S.D.N.Y. 1985).

37. The Petitions each included the Petitioning Creditors' Declarations, together with the requisite Official 5 Form, all of which when taken in the light most favorable to the Petitioning Creditors, plainly demonstrates that the Petitions were properly pled and supported by required facts.

38. The Motions to Dismiss should be denied.

**B. The Petitioning Creditors are Legitimate Creditors of the Alleged Debtors.**

39. The Bankruptcy Code provides that a creditor "is an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A "claim" is defined as "(A) right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5).

40. The Alleged Debtors do not dispute that each Alleged Debtor has 12 or more creditors. See Motions to Dismiss, ¶ 28 ("Here, it is beyond dispute that each Alleged Debtor has twelve or more creditors") In fact, the Alleged Debtors have each filed statements in the Cases, pursuant to Bankruptcy Rule 1003(b), listing such creditors.

41. Instead, the Alleged Debtors allege (without any legal support) that the claims held by the Petitioning Creditors are actually held by a single creditor, Mr. Fu. The Alleged Debtors therefore assert that the Petitioning Creditors have not meet the numerosity requirement under section 303, as the three (3) creditor requirement for each of the Petitions is supposedly not met.

42. The Alleged Debtors creative position is simply incorrect and belied by even a cursory review of the operative documents themselves.

43. The Loan Agreements were attached to the respective Petitions as prima facie evidence that each Petitioning Creditor entered into an agreement to make a Loan to the Alleged Debtors.

44. Bald and unsupported assertions by the Alleged Debtors that Fu should be substituted for the Petitioning Creditors would require both factual and legal determinations by this Court, after discovery, presentation of any evidence, and briefing on this unique position by the Alleged Debtors.

45. This Court cannot make such a determination now – even if there were some legal basis for it, which there is not – solely from the matters pled in the Petitions and the Motions to Dismiss.

**C. The Petitioning Creditors' Claims are Not Contingent.**

46. The Petitioning Creditors hold claims against the Alleged Debtors which are not contingent. In All Media Properties, Inc., 5 B.R. 126 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981) ("All Media").

47. The All Media court held that "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." All Media, 5 B.R. at 133.

48. However, if a legal obligation to pay arose at the time of the original relationship, but that obligation is subject to being avoided by some future event or occurrence, the claim is not contingent as to liability. The claim may be disputed as to liability for various reasons. Likewise, an unmatured obligation is not contingent as to liability. The obligation to pay existed from the outset; no outside event is necessary to bring the obligation into existence, but rather the obligation may be extinguished by payment. This does not render such a debt "contingent as to liability", but renders it only "unmatured". Id. at 133.

49. Here, there is no extrinsic event which must materialize. The Loan Agreements fixed the payment terms and maturity dates (and hence the liability of the Alleged Debtors) of the underlying Loan obligations memorialized thereby.

50. Put simply, the Petitioning Creditors loaned money to the Alleged Debtors on the promise that the Loans would be repaid on set payment dates pursuant to the terms of the Loan Agreements.

51. Further, the Loans all mature on a date set by the clear terms of each Loan Agreement.

52. For instance, the Loan Agreement between WALL007 LLC and Petitioning Creditor Jun Li attached as Exhibit "A," provides for interest payment dates on April 17, 2018 and 2019, and a maturity date on April 17, 2019. See Exhibit "A."

53. The Loan Agreement between WALL009 LLC and Petitioning Creditor Wu Yijing attached as Exhibit "A" calls for interest payment dates on July 1, 2018 and 2019 and a maturity date of July 1, 2019. See Exhibit "A"

54. The Petitioning Creditors are working on a more fulsome compilation for the Court which will set forth all payments by due date, any payments made and the maturity dates of all of the Loans held by the Petitioning Creditors.

55. However, for purposes herein, it is clear that the Petitioning Creditors have not been paid interest on their Loans as and when required by the specific, non-contingent terms of the Loan Agreements.

56. It is further certain that many, if not the majority, of the Loans have matured by their terms and are therefore payable now in full.

57. As to those Loans which have not matured, but which have been accelerated by default demand, they are also payable in full; However, even the non-payment of interest due alone would suffice for Petition purposes as the Petitioning Creditors will demonstrate in their proofs.

58. The Motions to Dismiss should be denied.

**D. The Petitioning Creditors' Claims Are Not Subject To Bona Fide Dispute.**

59. The Petitioning Creditors' claims are not subject to a "bona fide dispute" as such term is used in section 303 of the Bankruptcy Code, as interpreted by bankruptcy courts.

60. In Sims, the Fifth Circuit found that in considering whether a claim is subject to a bona fide dispute, "the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute …" Subway Equip. Leasing Corp. v. Sims (In re Sims ), 994 F.2d 210, 221 (5th Cir. 1993). Under this objective standard, the petitioning creditor has the burden to establish a prima facie case that no bona fide dispute exists, after which the debtor must present evidence sufficient to rebut the prima facie case. Id. However, "[n]either the debtor's subjective intent nor his subjective belief is sufficient to meet this burden." Id. (citation omitted). Furthermore, although the court "may be required to conduct a limited analysis of the legal issues" and its determination "will often depend ... ***upon an assessment of witnesses' credibilities and other factual considerations,*** " the court's aim is to "ascertain whether a dispute that is bona fide exists ... not to actually resolve the dispute." Id. (emphasis added); see also, In re Norris, 183 B.R. 437 (Bankr. W.D. La. 1995)).

61. Moreover, "[t]he mere existence of State Court litigation and the assertion by an alleged debtor of various defenses or counterclaims is not *per se a* ***bona fide*** **dispute**." In re Norriss Bros. Lumber Co., Inc., 133 B.R. 599 (N.D. Tex. 1991) (emphasis added). Nor must the petitioning creditor(s) and alleged debtor agree to the precise dollar amount of the claims at issue, as such disagreement is far from a "bona fide dispute."[3]

[3] Notably, bankruptcy courts have routinely interpreted section 303(b) to allow creditors to file an involuntary bankruptcy petition so long as a portion of the creditor's claim in excess of the statutory threshold amount was not contingent as to liability or the subject of a bona fide dispute, even if the parties disagree as to the precise dollar amount. See e.g., In re Onyx Telecomm., Ltd., 60 B.R. 492, 497-98 (Bankr. S.D.N.Y. 1985); In re Dilley, 331 B.R. 1,8 (1st Cir. BAP 2006) (holding that there was no bona fide dispute as to liability given the lack of evidence that the tort claims at issue did not exceed the $12,300 threshold amount); In re ELRS Loss Mitigation, LLC, 325 B.R. 604, 623-24 (Bankr. N.D. Okla. 2005) ("Given that the sum of $28,269.15 exceeds

62. The Petitioning Creditors hold undisputed claims against the Alleged Debtors for non-payment of sums due under the clear terms of the Loan Agreements. Simply arguing that the claims are disputed or that the claims are the subject of a pending state court action (which was only commenced six months ago, no less) is woefully insufficient to demonstrate that a "bona fide" dispute exists.

63. In fact, a State Court action was initiated in Texas on November 15, 2019, DC-19-18361; 44th District Court (the "State Court Action").

64. The State Court Action involved only three lenders and two of the seven Alleged Debtors, namely, WALL007 LLC and WALL009 LLC. The defendants were finally served after months of effort by the plaintiff/creditors. On March 31, 2020, the Alleged Debtors filed their motion to dismiss, eight days prior to the Petitions.

65. At best, the Alleged Debtors would need to take discovery regarding whether the claims of the Petitioning Creditors are subject to a bona dispute.[4] This, of course, would require that extrinsic facts not pled in the Petitions be considered, which for purposes of a motion to dismiss is inappropriate.

66. Despite repeated demands, the Alleged Debtors have refused (and continue to refuse) to repay the Loans. If, as the Alleged Debtors suggest, they have tried to repay the Loans without success, it is curious that they should now contest the Loan claims (or dispute their obligations to repay the Loans); and, of course, the Alleged Debtors should have no issue with the immediate payment of the Loans to the Petitioning Creditors. See Motions to Dismiss ¶ 12

---

the $12,300 required under § 303(b)(1), the Court need not and will not address the disputes as to those issues."); In re DemirCo Holdings, Inc., 2006 WL 1663237 at *4 (Bankr. C.D .Ill. 2006).

4 The Alleged Debtors apparently acknowledge that they need discovery in order to try and support their bald and unfounded assertions in the Motions to Dismiss, evidenced by ***each Alleged Debtor serving each Petitioning Creditor with nearly 30 pages of written discovery requests earlier this week***.

("The Alleged Debtors assert that Fu, through the Fu Entities, has continuously misled the Alleged Debtors and the Petitioners, breached obligations and agreements, interfered and obstructed the *Alleged Debtors in performing their obligations and efforts to even remit payments to the Petitioners*"). Is axiomatic, then, that the Alleged Debtors have failed to pay their debts as they became due.

67. In fact, there is no dispute that the Alleged Debtors are not paying their debts as they come due, and the indebtedness owed to the Petitioning Creditors is not contingent in nature. This is evidenced not only by the Petitioning Creditors' Declarations but also by the Proofs of Claims filed by other lenders/creditors in the Cases. Petitioning Creditors expect additional claims may be filed based on the number of loans made to the Alleged Debtors in addition to the Petitioning Creditors' Loans.

**E. The Petitions Were Not Filed In Bad Faith.**

68. The Alleged Debtors generically assert in the Motions that the Petitions were filed in bad faith.

69. The Code requires the following on this topic:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> **(1)** against the petitioners and in favor of the debtor for—
>
> **(A)** costs; or
>
> **(B)** a reasonable attorney's fee; or
>
> **(2)** against any petitioner that filed the petition in bad faith, for—
>
> **(A)** any damages proximately caused by such filing; or

**(B)** punitive damages.

11 U.S.C. § 303(b)(h)(i).

70. The Alleged Debtors must overcome the presumption that the Petitions were filed in good faith. In re Tichy Electric Company, Inc., 332 B.R. 364 (Bankr. N.D. Iowa 2005); Basin Elec. Power Coop. v. Midwest Processing Co., 769 F.2d 483, 486 (8th Cir. 1985).

71. The Petitions were not used by one or two litigation creditors as an alternative to available collection rights.

72. There are seventy-seven (77) Petitioning Creditors (and other creditors) who are in the dark about what the Debtor did with $33,000,000 in loan proceeds.

73. The Alleged Debtors argue (once again without a shred of supporting evidence or legal support) that the Petitions were filed in "bad faith" because: (i) there are an insufficient number of Petitioning Creditors; (ii) Petitioning Creditors' claims are subject to bona fide disputes, contingent, and unliquidated; (iii) the Alleged Debtors are generally paying their debts as they become due; and (iv) the Petitions are not in the best interest of the Alleged Debtors and its creditors.

74. As detailed herein, the bad faith allegations by the Alleged Debtors are unsupported and untrue.

75. These allegations are not even properly brought before this Court pursuant to a Federal Rule 12(b) motion to dismiss.[5]

76. Petitioning Creditors have already detailed thoroughly herein why their underlying claims are not contingent or subject to bona fide dispute.

---

5 See e.g., In re Immudyne, Inc., 218 B.R. 860, 862 (Bankr. S.D. Tex. 1998) ("With respect to the issue of bad faith, that issue is not properly considered under Rule 12(b), because it does not go to the court's subject matter jurisdiction or the merits of the involuntary petition. Rather, such bad faith, if it were to exist, would be better addressed on a motion to dismiss the case pursuant to 11 U.S.C. § 707(a).").

77. In terms of the claims being "unliquidated," this language appears to have been added by the Alleged Debtors to the Code section.

78. If the Alleged Debtors are referring to the amount of the claims at issue, they can be easily determined from the face of the Loan Agreements as to the principal amounts thereof, with basic interest calculations thereon. Such support will be provided as necessary in these proceedings.

79. The Alleged Debtors next contend that the Petitions are filed in bad faith since they believe that they are paying their debts as due.

80. This of course is completely inapposite to the fact that over 80 creditors of the Alleged Debtors have asserted claims in the Cases for payment on past-due amounts.

81. Further, the Alleged Debtors have submitted to this Court a list of creditors with amounts due thereon totaling in excess of a ten (10) million dollars. See (Dkt No. 28 in 20-31131); (Dkt. No 19 in 20-31133); (Dkt. 18 in 20-31134); (Dkt. No 18 in 20-31135); (Dkt. No. 18 in 20-31136); (Dkt. No. 18 in 20-31138); (Dkt. No. 18 20-31139).

82. Finally, and apparently as another asserted basis for their bad faith claims, the Alleged Debtors contend that the Petitions are not in the best interests of the Alleged Debtors and their creditors.

83. These involuntary Cases are far from "two-party disputes," but rather involve many Petitioning Creditors as well as other creditors, including those who have filed claims virtually identical in nature to those of the Petitioning Creditors (e.g., loan repayment claims).

84. If anything, the filing of the Petitions place the Petitioning Creditors in a less advantageous position, because they will be treated in the larger pool of similarly-situated

creditors of the Alleged Debtors, rather than proceeding in a "race to the courthouse" for preferred treatment through piecemeal state court litigation.

85. The Petitioning Creditors have determined in good faith that commencement of the Cases, and an order for relief with appointment of a chapter 7 trustee, is in the best interests of the creditor body.

86. The remainder of the Alleged Debtors' contentions in this regard are addressed in the Abstention section of this brief below.

### F. There is No Basis to Require Any Bond By the Petitioning Creditors in this Case

87. The Alleged Debtors further request that the Petitioning Creditors and Fu post a bond to indemnify the Alleged Debtors. However, as indicated above, the Petitioning Creditors did not file these Cases in bad faith.

88. Under 11 U.S.C. § 303 (e), "after notice and a hearing, and for cause, the court may require the petitioners under this section to file a bond to indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section."

89. Imposition of a bond is permissive under the statute, not mandatory. In re Funnel Science Internet Marketing, LLC, 551 B.R. 262, 274 (E.D. Tex. 2016) (quoting 11 U.S.C. § 303(e)); see also, In re Age Refining, Inc., 801 F.3d 530, 545 (5th Cir. 2015) ("may" denotes discretionary, permissive action by the Bankruptcy Court).

90. As set forth above, the Petitions were not filed in bad faith and there has been no finding of such. In fact, the Alleged Debtors admit in the Debtor Motions that "Fu, through the Fu entities, has continuously mislead [sic] the Alleged Debtors and the Petitioners ... and obstructed the Alleged Debtors ***in performing their obligations and efforts to even remit payments to Petitioners.***" See Debtor Motions at ¶ 12 (emphasis added). This assertion is

repeated elsewhere: "[T]he Alleged Debtors ***made substantive efforts to arrange payment to Petitioners.*** Alleged Debtors were impaired in doing so by Fu and the Fu Entities for reasons including their failure to provide necessary payment instructions and the outright unwillingness by Fu and Fu Entities to comply with United States tax withholding laws." See Debtor Motions at ¶ 38 (emphasis added).

91. Why would the Alleged Debtors "make substantive efforts to arrange payment" to the Petitioning Creditors if they honestly contended that no debt was due and that the Petitions were filed in bad faith? The inconsistent positions of the Alleged Debtors cannot be reconciled.

92. Moreover, the Alleged Debtors have not set forth any facts which would establish the cause required under the Code for the imposition of a bond. And the burden on the Alleged Debtors to establish cause is not light.

93. Petitioning creditors in involuntary cases should not be routinely required to post a bond upon the alleged debtor's request, however, because the Bankruptcy Code does not impose a mandatory bond requirement. In re Reed, 11 B.R. at 757 (quoted in In re Secured Equipment Trust of Eastern Air Lines, Inc., 1992 WL 295943, at *6 (S.D.N.Y.)). Section 303(e) provides only that the Court "may" require the petitioning creditors to post a bond, and that such a requirement should only be imposed upon the Court's finding of "cause."

94. Moreover, "[it] is clear that there is a presumption of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith." United States Fidelity & Guar., 58 B.R. at 1011. The putative debtor must establish a prima facie case of bad faith before petitioning creditors may be required to post a bond under § 303(i)(2). See In re Contemporary Mission, Inc., No. 5-82-00916, slip op. (Bankr.D.Conn. Jan. 31, 1983) ("[T]he determination of whether to require a bond should not be turned into a de facto hearing on the

merits; instead the involuntary petition's lack of merit must be relatively clear.") (quoting *Norton Bankruptcy law and Practice* § 9.12 at 27 (1981)).

95. The Alleged Debtor have not demonstrated cause for a bond requirement by Petitioning Creditors and Mr. Fu is not a Petitioning Creditor.

**G. Abstention Under 11 U.S.C. § 305 is Not Warranted in These Cases**

96. Abstention is not warranted in these properly filed Cases. As the statutory language and legislative history demonstrate, the test under section 305(a)(1) is not whether dismissal will give rise to a substantial prejudice to the debtor nor whether a balancing process favors dismissal. In re Eastman, 188 B.R. 621, 625 (9th Cir. BAP 1995). Rather, the test is ***whether both the debtor and the creditors would be "better served" by a dismissal***. Id. (emphasis added).

97. The interests of creditors will undoubtedly not be better served by a dismissal of the Cases. While the Alleged Debtors may argue for dismissal, it certainly is not in the best interest of the Petitioning Creditors (and the vast majority of the other lenders/creditors of the Alleged Debtors).

98. The Alleged Debtors have yet to provide any evidence that both creditors and the Alleged Debtors will be better served if the Cases are dismissed.

99. As with the bond requirement, demonstrating grounds for abstention is a high hurdle.

100. "The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal." In re Eastman, 188 B.R. at 624.

101. In recognition of the prevalence of § 305(a)(1) motions involving involuntary bankruptcy cases, the earliest compilation of factors for courts to consider in a § 305(a)(1) motion considered only three factors, including whether (1) the petition was filed by a few disgruntled creditors and the filing was opposed by most other creditors; (2) there was an out-of-court restructuring in progress; and (3) the debtor's and creditors' interests were furthered by dismissal. See e.g., Globo Comunicacoes, 317 B.R. at 255 (citing In re Grigoli, 151 B.R. 314, 319-20 (Bankr. E.D.N.Y. 1993)); see also In re Paper I Partners, L.P., 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002) (noting that "early cases" considered these three factors as relevant in a § 305(a)(1) motion, but that later decisions have broadened the analysis to include consideration of at least seven factors).

102. More recent court decisions involving § 305(a)(1) motions apply a seven-factor test in determining whether to abstain by dismissal or suspension. These factors build upon the earlier three-factor test and include: "(1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." In re Paper I Partners, L.P., 283 B.R. at 678 (citing In re 801 South Wells Street Ltd. Partnership, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)); In re Trina Assoc., 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991).

103. The Alleged Debtors do not even address these factors let alone establish them.

104. If they had addressed the factors, they would not meet their burden.

105. Creditors are best served here by having one central forum in which collective proceedings can hopefully achieve a just and equitable solution for the myriad of creditors whose Loans remain unpaid and unaccounted for by the Alleged Debtors.

106. Allowing the matters to be litigated piecemeal in state court(s) is inefficient, more costly for the creditors (and the Alleged Debtors for that matter) and will not likely result in a global resolution of the claims of creditors against the Alleged Debtors.

107. The State Court Action is not far along and is not collective, only involving two of the Alleged Debtors and three creditors.

108. Perhaps most important, the Code will allow a fiduciary of the Estate (a Chapter 7 Trustee) to (i) delve into the assets and liabilities of the Alleged Debtors, (ii) pursue potential recovery actions which are not uniformly available to individual creditors under State law and, even if they are, they would not be pursued for the collective good of all creditors of the Alleged Debtors, and (iii) ultimately, attempt to provide a fair and equitable distribution of the Alleged Debtors' assets and from recoveries on claims.

109. There is no pending proceeding that is far along such that these Cases could be deemed costly and time consuming.

110. In fact, as evidenced by the Alleged Debtors litigious nature "out of the gate" in these Cases, there is no current prospect of resolution between creditors and the Alleged Debtors.

111. The Court should not abstain from hearing these Cases and granting the requested relief if deemed appropriate.

### H. No Basis Exists for Awarding Sanctions or Costs Under 11 U.S.C. § 303(i)

112. The Alleged Debtors have failed to demonstrate that they are entitled to fees, costs, and damages (including punitive damages, no less) somehow proximately caused by the filing of the Petitions.

113. If a petition is dismissed, the Court *may*, in its discretion, grant judgment against the petitioners for fees, costs and damages under 11 U.S.C. § 303(i). Under section 303(i)(1), the award of attorneys' fees and costs does not require a finding of bad faith and is intended to reimburse the debtor for expenses necessarily incurred in defending an involuntary petition.

114. In order to recover actual or punitive damages under section 303(i)(2), the Alleged Debtors must show that the Petitions were filed in bad faith. The awarding of fees, costs, and damages is not automatic, but is committed to the sound discretion of the Court. 11 U.S.C. § 303(i); In re Tichy Electric Company, Inc., 332 B.R. 364, 374 (Bankr. N.D. Iowa 2005); In re Cannon Express Corp., 280 B.R. 450, 453 (Bankr. W.D. Ark. 2002).

115. For all the reasons set forth above, the Alleged Debtors have failed to overcome the presumption that the Petitions were filed in good faith (and indeed, they will never be able to overcome this presumption no matter how much discovery they try to foist upon the Petitioning Creditors).

116. The Alleged Debtors have also failed to provide any evidence of the actual, direct damages they have allegedly suffered as a result of the filing of the Petitions.

117. Rather, the Petitions are proper and should stand. The Alleged Debtors’ request for reimbursement of fees and costs, damages, and sanctions should be denied.

**CONCLUSION**

Based on the foregoing, the Petitioning Creditors respectfully request that the Debtor Motions should be denied in their entirety.

Dated: May 29, 2020

/s/ *Jiangang Ou*
Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: 832-767-0339
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
Tel: 215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Petitioning Creditors*

218605872v4