# EXHIBIT F

141-316567-20

FILED
TARRANT COUNTY
6/5/2020 4:56 PM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT AND RESPONSE TO DEFENDANTS' MOTIONS TO QUASH**

***To the Honorable John P. Chupp, Judge:***

COME NOW, L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr. (the "**Estate**"), Tejas Group, Ltd. ("**Tejas Group**"), LAH III Family Specific Interest, Ltd. ("**LAH**"), and Blackfoot Interest, Ltd. ("**Blackfoot**") (all collectively, "**Plaintiffs**"), Plaintiffs in the above-entitled and numbered cause, and file this their Motion for Final Default Judgment and Response to the Motions to Quash Service ("**Motions**") filed by Defendants 2999TC LP, LLC ("**2999TC**"), JMJ Development, LLC ("**JMJ**"), and Tim Barton ("**Barton**") (all collectively, "**Defendants**") on June 1, 2020,[1] and respectfully show the Court as follows:

[1] While 2999TC filed one motion to quash and Barton and JMJ jointly filed a separate motion pro se, Plaintiffs note that the two motions are remarkably similar and were filed immediately after one another.

## I.
## INTRODUCTION

In September 2019, Plaintiffs made a $4,000,000.00 loan to 2999TC. Barton and JMJ guaranteed the loan. When Defendants defaulted under the loan by failing to pay as agreed, Plaintiffs accelerated the loan in April of 2020. As a result of Defendants failing to pay the amounts due and owing, Plaintiffs filed the instant lawsuit.

2999TC was properly served with process on April 26, 2020, and its answer was due on May 18, 2020. Barton and JMJ were properly served with process on April 30, 2020, and May 1, 2020, respectively, and their answers were due on May 25, 2020. To date, however, Defendants have not answered this suit or otherwise disputed the allegations set forth in Plaintiffs' pleadings. Accordingly, a default judgment in Plaintiffs' favor is warranted.

## II.
## FACTUAL BACKGROUND

On or around September 16, 2019, 2999TC borrowed from Plaintiffs, and Plaintiffs loaned to 2999TC, the total amount of $4,000,000.00 (the "**Loan**"). [*See* Petition, at ¶ 14].[2] The Loan is evidenced by the promissory notes executed by defendant Barton on behalf of 2999TC (the "**Notes**"). [*See* Petition, at ¶ 14; Exs. A-1 through A-2]. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually calculated on a 360-day-year basis, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversaries of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020. [*See* Petition, at ¶ 15; Exs. A-1 through A-2].

[2] Plaintiffs respectfully asks the Court to take judicial notice of all previous filings and orders in this cause.

Defendants Barton, individually, and JMJ guaranteed the Loan and 2999TC's performance under the Notes (the "**Guaranties**"). [*See* Petition, at ¶ 16; Exs. A-3 through A-6]. After curing a payment default in connection with the first interest-only payment, when the second quarterly $180,000.00 interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. [*See* Petition, at ¶¶ 18-19]. When Plaintiffs' demand for payment was ignored, Plaintiffs accelerated the Loan and demanded payment in full from Defendants of all amounts due and owing. [*See* Petition, at ¶¶ 19, 21]. To date, however, Defendants have failed to pay as agreed, the Notes remain unpaid, and the principal is currently due and owing in full. [*See* Petition, at ¶ 21]. Interest and attorney's fees are accruing daily. [*See* Petition, at ¶ 21]. Accordingly, Plaintiffs filed the instant lawsuit to recover the amounts due and owing under the Notes and the Guaranties. Because Defendants were properly served, the returns of service have been on file with the Court for at least ten days, and Defendants have chosen not to answer the suit, a final default judgment in Plaintiffs' favor is appropriate.

## III.
## ARGUMENT & AUTHORITIES

### A. A default judgment on liability is proper against defendant 2999TC because 2999TC was properly served with process, the return of service has been on file with the Court for at least ten (10) days, and 2999TC has not answered this suit.

Plaintiffs filed their Original Petition, Requests for Disclosure, and Verified Ex Parte Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction on April 22, 2020 ("**Original Petition**"). Defendant 2999TC, a limited liability company existing under the laws of the State of Delaware, was served with process on April 26, 2020, by and through its registered agent in Delaware in accordance with Texas Rules of Civil Procedure 103-108 and Texas Business Organizations Code Sections 5.200, *et seq.* [*See* **Exhibit B**, a true and correct copy of the file-stamped return of service; *see also* **Exhibit C**, a true and correct

Certified copy of Defendant's Certificate of Formation (demonstrating that InCorp Services, Inc. ("**InCorp**"), 919 North Market Street, Suite 950, Wilmington, Delaware 19801 is 2999TC's registered agent in Delaware); **Exhibit I-5**, a true and correct copy of a screen shot of the information on file with the Delaware Secretary of State as of June 2, 2020]; *see also* 6 Del. C. § 18-104 -105 (providing that a limited liability company has obligation to provide registered agent with information necessary to effectuate service of process).[3] The return of service has been on file with the Clerk of the Court since May 4, 2020, which is at least ten (10) days from the date judgment will be entered, excluding the day of filing and today. [*See* **Exhibit B**]; *see also* Tex. R. Civ. P. 107. 2999TC's last known address is c/o Elizabeth Brandon, REED SMITH LLP, 2501 N. Harwood St, Ste. 1700, Dallas, TX 75201. [*See* **Exhibit D**, Certificate of Last Known Address].

2999TC has moved to quash service solely based on the notion that its registered agent in Delaware, InCorp, "does not have any records indicating that it is the registered agent for [2999TC]."[4] This novel position is wholly without legal support and directly defeated by both Delaware and Texas law, as it is undisputed that InCorp is the registered agent on file for 2999TC, and that InCorp was properly served with process in this matter. *See* Tex. R. Civ. P. 103-108; 6 Del. C. § 18-104 -105; Tex. Bus. Orgs. Code §§ 5.200, *et seq.*; [*See* **Exhibits B** and **C**]. Accordingly, because 2999TC does not dispute that it made InCorp its registered agent[5] and

[3] As displayed by **Exhibit** I-1, 2999TC has failed to comply with its obligation to maintain a registered agent in Texas. *See* Petition, at ¶ 7.

[4] *See* 2999TC's Motion to Quash, at p. 2. 2999TC's also appears to suggest—without any support—that its registered agent did not receive copies of all relevant documents. Notably absent from InCorp's letter to the Court is any statement that InCorp allegedly received ***only*** the document attached to the letter.

[5] Plaintiffs note that also InCorp's letters attached to 2999TC's motion (which Plaintiffs were shown for the first time by virtue of the filing of 2999TC's motion) fail to deny that InCorp is in fact 2999TC's registered agent—they, at best, state that InCorp's records are not accurate ***and confirm that InCorp was in fact served***. Plaintiffs, however, object to these vague, unsworn hearsay statements and respectfully asks the Court to disregard the same.

because the state of InCorp's internal records are not the correct standard, 2999TC's motion to quash is without merit and should be denied.[6]

The deadline for 2999TC to file an answer was 10:00 a.m. on May 18, 2020. *See* Tex. R. Civ. P. 99. To date, however, 2999TC has not filed an answer or any other responsive pleading with the Court disputing Plaintiffs' allegations. 2999TC is therefore in default and has admitted all allegations of fact in Plaintiffs' Original Petition. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984); *Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.). Accordingly, a default judgment on liability against 2999TC is proper.

**B. A default judgment on liability is proper against defendant JMJ because JMJ was properly served with process, the return of service has been on file with the Court for at least ten (10) days, and JMJ has not answered this suit.**

Plaintiffs filed their Original Petition on April 22, 2020. Defendant JMJ, a limited liability company existing under the laws of the State of Texas, was served with process on May 1, 2020, by way of substitute service by taping the process to the door of, and via certified mail and first class mail to, JMJ's offices at 1755 Wittington Pl., Ste. 340, Dallas, Texas 75234, and by email to tbarton@jmjdevelopment.com in accordance with Texas Rules of Civil Procedure 103-108 and the Court's April 30, 2020, order (the "**April Order**"). [*See* **Exhibit E**, true and correct copies of the file-stamped returns of service. The returns of service have been on file with the Clerk of the Court since May 4, 2020, which is at least ten (10) days from the date judgment will be entered, excluding the day of filing and today. [*See* **Exhibit E**]; *see also* Tex. R. Civ. P. 107. JMJ's last known address is 1755 Wittington Pl., Ste. 340, Dallas, Texas 75234. [*See* **Exhibit D**, Certificate of Last Known Address].

[6] Moreover, it is worth noting that counsel for 2999TC received copies of Plaintiffs' Petition and the TRO on the same day she informed Plaintiffs' counsel that she represented 2999TC, and that 2999TC has admitted more than once that its answer deadline has now passed. [*See* **Exhibits I-2** and **I-3**].

On June 1, 2020, JMJ filed a motion to quash service based on the notion that Plaintiffs' should have known that JMJ's offices were closed due to COVID-19.[7] JMJ's motion ignores the fact that the address it reports for its purported registered agent leads to a UPS store and that there is no registered agent to be served at that location. [*See* **Exhibit F**, a true and correct Certified copy of JMJ's Statement of Change of Registered Office/Agent (representing that JMJ's registered agent, ONE Agent Texas, LLC, is located at 13901 Midway Rd., Ste. 102, Dallas, Texas 75244); *see also* Plaintiffs' Motion for Substitute Service, ¶ 3[8] & Ex. A, p. 3]. Further, JMJ's motion disputes neither that the Court had authority to grant substitute service by the means set forth in its April Order, that the method of service was reasonably effective to give notice of the suit, that Plaintiffs' properly executed such substitute service in compliance with the Court's April Order, or that JMJ indeed received service. *See* Tex. R. Civ. P. 106. Accordingly, JMJ's motion to quash should be denied.

The deadline for JMJ to file an answer was 10:00 a.m. on May 25, 2020. *See* Tex. R. Civ. P. 99. To date, however, JMJ has not filed an answer or any other responsive pleading with the Court disputing Plaintiffs' allegations. JMJ is therefore in default and has admitted all allegations of fact in Plaintiffs' Original Petition. *See Morgan*, 675 S.W.2d at 731; *Argyle Mech., Inc.*, 156 S.W.3d at 687. Accordingly, a default judgment on liability against JMJ is proper.

[7] *See* Barton and JMJ's Motion to Quash.

[8] Plaintiffs' Motion for Substitute Service is incorpated herein by referenced.

**C. A default judgment on liability is proper against defendant Barton because Barton was properly served with process, the return of service have been on file with the Court for at least ten (10) days, and Barton has not answered this suit.**

Plaintiffs filed their Original Petition on April 22, 2020. Defendant Barton was served with process on April 30, 2020, by way of substitute service executed by delivering the process to a person at least 16 years of age at Barton's residence at 3525 Arrowhead Drive, Dallas, Texas 75204 in accordance with Texas Rules of Civil Procedure 103-108 and the Court's April Order.[9] [*See* **Exhibit G**, a true and correct copy of the file-stamped return of service]. The return of service has been on file with the Clerk of the Court since May 1, 2020, which is at least ten (10) days from the date judgment will be entered, excluding the day of filing and today. [*See* **Exhibit G**]; *see also* Tex. R. Civ. P. 107. Barton's last known address is 3525 Arrowhead Drive, Dallas, Texas 75204. [*See* **Exhibit D**, Certificate of Last Known Address]. Further, at no time since this suit was filed has Barton been a member of the United States armed services for purposes of the Servicemembers Civil Relief Act. *See* 50 App. U.S.C.A.§ 501; [**Ex. H** ( Service Members' Aff.)].

On June 1, 2020, Barton filed a motion to quash service, appearing to argue that service was not proper because (1) Barton was out of state, (2) Plaintiffs attempted to serve Barton at addresses that were closed due to COVID-19 and/or incorrect residential addresses, and (3) Plaintiffs improperly attempted to serve Barton by email.[10] In other words, Barton's motion seeks to quash service solely based upon some of the grounds *upon which the Court granted substitute service*.[11] Significantly, Barton does not deny receiving the substitute service or residing at 3525 Arrowhead Drive, Dallas, Texas 75204. Barton's motion also conveniently

[9] Plaintiffs' respectfully asks the Court to take judicial notice of all prior filings and orders in the above-styled lawsuit.

[10] *See* Barton and JMJ's Motion to Quash.

[11] *See* Plaintiffs' Motion for Substitute Service.

leaves out the fact that Plaintiffs repeatedly tried to coordinate service with Barton (on his own behalf and on behalf of JMJ), but Barton stubbornly refused to acknowledge Plaintiffs' communications.[12] In light of Plaintiffs' diligent (but ignored) attempts to establish contact with Barton and JMJ, his after-the-fact attempt to now create the misleading appearance that Plaintiffs "pulled a fast one" on him and JMJ is disingenuous at best, especially since the motion disputes neither that the Court had authority to grant substitute service by the means set forth in its April Order, that the method of service was reasonably effective to give Barton notice of the suit, nor that Plaintiffs' properly executed such substitute service in compliance with the Court's April Order.[13] *See* Tex. R. Civ. P. 106. Accordingly, Barton's motion to quash should be denied.

The deadline for Barton to file an answer was 10:00 a.m. on May 25, 2020. *See* Tex. R. Civ. P. 99. To date, however, Barton has not filed an answer or any other responsive pleading with the Court disputing Plaintiffs' allegations. Barton is therefore in default and has admitted all allegations of fact in Plaintiffs' Original Petition. *See Morgan*, 675 S.W.2d at 731; *Argyle Mech., Inc.*, 156 S.W.3d 687. Accordingly, a default judgment on liability against Barton is proper.

**D. Plaintiffs are entitled to a final judgment for their actual damages, interest, costs, and attorney's fees.**

A plaintiff who prevails on its breach-of-note or breach-of-guaranty claim is entitled to recover its benefit-of-the-bargain damages, pre-judgment and post-judgment interest, costs, and attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (authorizing recovery of attorney's fees); Tex. Fin. Code §§ 302.002 (providing pre-judgment interest at the rate agreed to by the

[12] *See, e.g.*, *id.* at ¶¶ 2-8.

[13] That Barton and JMJ have had plenty of notice of this suit is only underlined by the fact that Barton has been communicating with Plaintiffs' counsel regarding the same on both his own and JMJ's behalf since May 11, 2020—coincidentally from the same email address to which Plaintiff reached out to Barton to coordinate service but received no response. *See* **Ex. I-4**; *see also* Plaintiffs' Motion for Substitute Service, at ¶¶ 4-9 & Ex. B at ¶¶ 2-5.

parties), 304.002 (providing post-judgment interest as specified in contract); Tex. R. Civ. P. 131 (authorizing recovery of court costs for prevailing party); *Ventling v. Johnson*, 466 S.W.3d 143, 149 (Tex. 2015) (providing that pre-judgment interest accrues from the date the suit is filed until the date before judgment, and that post-judgment interest accrues from the date of the judgment until the judgment is paid in full); *Microlaser Therapy Corp.*, No. 05-17-00761-CV, 2018 WL 6845242, at *6 (Tex. App.—Dallas Nov. 16, 2018, pet. denied) (mem. op.) (holding that plaintiff establishing breach of guaranty claim is entitled to recover attorney's fees); *Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d 508, 513-14 (Tex. App.—El Paso 2014, no pet.) (holding that plaintiff suing on breach of note is entitled to recover attorney's fees); *Qaddura v. Indo-European Foods, Inc.*, 141 S.W.3d 882, 888-89 (Tex. App.—Dallas 2004, pet. denied) (holding that benefit-of-the bargain damages are proper for breach of contract); *Pineda v. PMI Mortg. Ins. Co.*, 843 S.W.2d 660, 670–71 (Tex. App.—Corpus Christi 1992, pet. denied) (holding that parties' agreement controls).

Here, Defendants agreed to pay back the Loan of $4,000,000.00 to Plaintiffs along with 18 percent (18%) interest-only quarterly payments, calculated on a 360-day-year basis. Accordingly, the benefit-of-the bargain damages Plaintiffs sustained as a result of Defendants' breach of the Notes and Guaranties are $4,000,000.00, plus any unpaid interest that accrued prior to the filing of this lawsuit. [*See* **Exhibit A** ¶¶ 2-12; *see also* **Exs. A-1** through **A-6**].

In addition, Defendants owe interest on Plaintiffs' actual damages pursuant to their contractual obligations to Plaintiffs, as follows:

| **Loan Date** | **Amount** | **Daily Interest Charge**[14] | **Interest owed for the second quarter (December 17, 2019-March 16, 2020**[15] | **Amount of interest accruing for the period beginning on March 17, 2020, and ending on April 21, 2020**[16] | **Total Interest Owed as of April 21, 2020**[17] |
|---|---|---|---|---|---|
| September 16, 2019 | $4,000,000 | $2,000 | $180,000.00 | $70,000.00 | $250,000 |

Because the amount of damages sought by Plaintiffs may be accurately calculated by the Court from the factual allegations in Plaintiffs' Petition and from the Notes and Guaranties, Plaintiffs' damages are liquidated, and no hearing on actual damages is required. *See* Tex. R. Civ. P. 241 (providing that if a claim is liquidated and proved by an instrument in writing, the damages shall be assessed by the court); *Abcon Paving, Inc. v. Crissup*, 820 S.W.2d 951, 953 (Tex. App.—Fort Worth 1991, no writ) ("A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual as opposed to the conclusory allegations in the plaintiff's petition and the instrument in writing."); *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 845-46 (Tex. App.—Dallas 2014, no pet.); [*see also* Petition, at ¶¶ 14-21; **Exs. A** and **A-1** through **A-6**].

Furthermore, the total reasonable and necessary attorney's fees and costs owed by Defendants pursuant to Texas Civil Practice & Remedies Code Section 38.001, Texas Rule of

[14] Calculated as follows: (Amount Owed ($4,000,000 x 0.18) / 360 = $2,000). [*See* **Exhibit A** ¶¶ 8-10].

[15] Calculated as follows: (Amount Owed ($4,000,000 x 0.18) / 360 = $2,000) x 90 = $180,000.00. [*See* **Exhibit A** ¶¶ 8-10].

[16] Calculated beginning on the first day after the second quarterly payment was due (which was March 16, 2020) and purposefully (1) ignore March 31, as including March 31 would make the quarter exceed 90 days, and (2) does not address the interest accrued for the period beginning with the funding of the Loan through the date the first quarterly payment was due, as Plaintiffs ultimately received payment for that period. [*See* **Exhibit A** ¶¶ 8-10].

[17] Calculated as follows: (Daily Interest Charge ($2,000) x Number of Days Outstanding as of April 21, 2020 (December 17, 2019 – April 21, 2020 = 127 days)).

Civil Procedure 131, the Notes, and the Guaranties is $58,167.50. [*See* **Exhibit I** (Affidavit of Joakim G. Soederbaum) ¶¶ 2-5; **Exs. A-1** through **A-6**].

Accordingly, a final judgment should be rendered is $4,250,000.00 in actual damages, $58,167.50 in attorney's fees, costs, plus prejudgment interest on the outstanding principal balance of the Loan at the annual rate of 18% calculated on a 360-day-year basis starting on April 22, 2020, and until the date before the judgment is entered, and post-judgment interest at the annual rate of 18% calculated on a 360-day-year basis beginning on the day of the judgment until the judgment is paid in full.

## IV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that the Court deny Defendants' Motion to Quash in their entirety, grant Plaintiffs' Motion for Final Default Judgment, and enter a final judgment in Plaintiffs' favor and against Defendants 2999TC, Barton, and JMJ, jointly and severally, awarding Plaintiffs the following relief:

(a) Actual damages of $4,250,000.00;

(b) Prejudgment interest at the annual rate of 18% calculated on a 360-day-year basis on the outstanding principal balance of the Loan ;

(c) Post-judgment interest at the annual rate of 18% calculated on a 360-day-year basis, beginning on the date of the judgment until paid in full;

(d) Reasonable and necessary attorney's fees of $58,167.50, plus additional attorney's fees in the event of an appeal by either Defendant;

(e) Costs of Court; and

(f) Such other and further relief to which Plaintiffs are justly entitled, whether at law or in equity.

Respectfully submitted,

***/s/ Joakim G. Soederbaum***
Dee J. Kelly, Jr.
dee.kelly@kellyhart.com
State Bar No. 11217250
Joakim G. Soederbaum
joakim.soederbaum@kellyhart.com
State Bar No. 24091338
**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817-332-2500
Facsimile: 817-878-9280

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June, 2020, a true and correct copy of the foregoing document was served electronically upon all pro se Parties and counsel of record as follows:

Elizabeth C. Brandon
Bradley J. Purcell
**REED SMITH LLP**
ebrandon@reedsmith.com
bpurcell@ReedSmith.com
**ATTORNEYS FOR DEFENDANT 2999TC LP, LLC**

Tim Barton, Individually
tbarton@jmjdevelopment.com
**PRO SE**

JMJ Development, LLC
By: Tim Barton
Its: Chief Executive Officer
tbarton@jmjdevelopment.com
**PRO SE**

Vance McMurry
508 W. Lookout #14-74
Richardson, Texas 75080
vance@mcmurrylegal.com
**AS FILING ATTORNEY[18] FOR DEFENDANTS**
**TIM BARTON AND JMJ DEVELOPMENT, LLC**

*/s/ Joakim G. Soederbaum*
Joakim G. Soederbaum

[18] Plaintiffs note that Defendants Barton and JMJ did not provide any contact information on their motion to quash (although they appear to have served themselves via the email address indicated above). Accordingly, out of an abundance of caution, Plaintiffs are also serving a copy of this filing on the attorney assisting these pro se Defendants with their filing.

# EXHIBIT A

**CAUSE NO. 141-316567-20**

| | | |
|---|---|---|
| **L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | **141ST JUDICIAL DISTRICT** |
| **v.** | § | |
| **2999TC LP, LLC, JMJ DEVELOPMENT, LLC, AND TIM BARTON,** | § | |
| **Defendants.** | § | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT OF L. ALLEN HODGES III**

STATE OF TEXAS §
§
COUNTY OF TARRANT §

BEFORE ME, the undersigned authority, personally appeared L. Allen Hodges III who, being by me duly sworn, deposed as follows:

1. "My name is L. Allen Hodges III. I am over twenty-one (21) years of age, of sound mind, and have never been convicted of a felony. I am fully competent to testify to, and have personal knowledge of, the facts stated within this affidavit, and every statement of fact contained herein is true and correct.

2. "I am one of two duly qualified and acting independent executors for the Estate of Leland A. Hodges Jr. (the '**Estate**'), appointed under the will of Leland A. Hodges Jr., which is dated August 8, 2013, and which was probated in Probate Court Number One of Tarrant County, Texas, under the following case name and number: *Estate of Leland Allen Hodges, Jr., Deceased*, No. 2019 PR01662-1. I am also the managing member of North Texas Investments,

LLC ('**NTI**'), which is the general partner of Tejas Group, Ltd. ('**Tejas Group**'), a Texas limited partnership; LAH III Family Specific Interest, Ltd. ('**LAH**'), a Texas limited partnership; and Blackfoot Interest, Ltd. ('**Blackfoot**'), a Texas limited partnership (the Estate, Tejas Group, LAH, and Blackfoot collectively, the '**Plaintiffs**').

3. "I obtained personal knowledge of the facts stated herein by and through, among other things, my duties as an independent executor for the Estate and as the managing member of NTI, including but not limited to managing the Plaintiffs' financial affairs and investments on a continuing basis; my personal involvement with the loan Plaintiffs made to 2999TC LP, LLC ('**2999TC**'), and my review and understanding of documents that were executed in connection with that loan. I have reviewed Plaintiffs' Motion for Default Judgment and the exhibits attached thereto (the '**Motion**').

4. "On or about September 16, 2019, Plaintiffs loaned and delivered to 2999TC LP, LLC ('**2999TC**') the total sum of $4,000,000.00 (the '**Loan**'). The funds were advanced on September 17, 2019. The Loan is reflected by two promissory notes made, executed, and delivered by Tim Barton ('**Barton**') on behalf of 2999TC: one to the Estate for $1,000,000.00 and one jointly to Tejas Group, LAH, and Blackfoot for $3,000,000.00 (both notes collectively, the '**Notes**'). True and correct copies of the Notes along with their corresponding subsequent amendments are attached as **Exhibit A-1** and **Exhibit A-2**, respectively, to the Motion and incorporated herein fully by reference. Pursuant to the terms of the Notes, the Loan accrues interest at the rate of 18% annually, and 2999TC is required to pay all accumulated, outstanding interest on a quarterly basis, payable on the 3-month, 6-month, and 9-month anniversary of the Notes, with the fourth and final interest payment being due along with all outstanding principal on September 16, 2020.

5. "Barton, individually, and JMJ Development, LLC ('**JMJ**') agreed to guarantee the Loan. In connection with the closing of the Loan, Barton, individually and on behalf of JMJ, executed a total of four guaranties unconditionally guaranteeing the Loan and 2999TC's payments under the Notes (the '**Guaranties**'). True and correct copies of these Guaranties are attached as **Exhibits A-3** through **Exhibit A-6**, respectively, to the Motion and incorporated herein fully by reference.

6. "2999TC, failed to pay the first quarterly interest-only payment in the amount of $180,000.00 when due on December 16, 2019, and Plaintiffs did not receive that payment until on or about January 29, 2020.

7. "When the second quarterly interest-only payment became due on March 16, 2020, 2999TC again failed to pay as agreed. To date, despite Plaintiffs' demands for payment, 2999TC, Barton, and JMJ have failed to pay Plaintiffs as agreed; Plaintiffs have received no payment in connection with the Loan since the payment due in December 2019 was made in late January of 2020; the Notes remain unpaid; the Loan has been accelerated; and the $4,000,000.00 principal balance is currently due and owing in full along with all interest accrued after December 16, 2019.

8. "As set forth in the Notes, interest accrues on the outstanding principal balance of the Loan at the rate of 18% per year calculated on a 360-day-year basis. I have calculated the amounts due and owing under the Loan as of April 21, 2020. In doing so, I reviewed and relied upon the language of the Notes and any payments received by Plaintiffs in connection with the Loan. My interest calculations include both the first and last day of the indicated time period.

9. "Applying the 18% annual interest rate calculated on a 360-day-year basis, interest accrues at the rate of $2,000.00 per day: $4,000,000.00 x 0.18) / 360 = $2,000.00. Based on the currently outstanding principal balance and a 360-day year, each quarter consists of 90

days and each quarterly interest payment due amounts to $180,000.00: $2,000.00 x 90 = $180,000.00. As of April 21, 2020, the total amount owed under the Loan was $4,250,000.00, consisting of the original Loan balance of $4,000,000.00 and $250,000.00 in interest accrued for the period beginning on December 17, 2019, and ending on April 21, 2020. The $250,000.00 in interest accrued as of April 21, 2020, consists of the $180,000.00 second quarterly payment due on March 16, 2020, and $70,000.00 for the period March 17, 2020, through April 21, 2020. The $70,000.00 partial third quarterly payment was calculated by taking the number of days from March 17, 2020, through March 30, 2020 (14), add the number of days from April 1 through April 21, 2020 (21), which adds up to a total of 35, and multiplying that number of days (35) by the daily interest rate ($2,000.00): 35 days x $2,000.00 = $70,000.00. These calculations purposefully ignore the day of March 31, as including March 31 would make the quarter exceed 90 days (and thereby, the year would exceed 360 days). These calculations take into account and fully credit the fact that Plaintiffs ultimately received payment of the interest accrued for the first quarterly period beginning on September 17, 2019, and ending on December 16, 2019.

10. "Pursuant to the terms of the Notes, interest continues to accrue on the outstanding principal balance of the Loan after April 21, 2020, at the 18% annual interest rate calculated on a 360-day-yearly and 90-day-quarterly basis for as long as a principal balance remains outstanding and owing in connection with the Loan.

11. "Plaintiffs are the sole owners and holders of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

12. "Plaintiffs are presently in possession of the Notes and Guaranties they now seek to enforce against 2999TC, Barton, and JMJ.

13. "The records kept by Plaintiffs relating to the Notes were made and kept in the ordinary course of Plaintiffs' business; it is the regular practice of Plaintiffs to make and keep

such records; such records were made on or about the time of the recorded transactions; such records were made by a person with knowledge of the information recorded who was acting in the regular course of Plaintiffs' business; and I am presently the custodian of such records, which include Exhibits 'A-1' through 'A-6' to Plaintiffs' Motion. Such exhibits are true and correct copies of the instruments and documents that are in Plaintiffs' files and are incorporated herein by reference.

"FURTHER AFFIANT SAYETH NOT."

______________________________
L. Allen Hodges III

SUBSCRIBED AND SWORN to before me, the undersigned notary, on the 5th day of June, 2020.

______________________________
Notary in and for the State of Texas

TARA LEE EDLAND
NOTARY PUBLIC
STATE OF TEXAS
ID# 128204469
EXPIRES 3-11-2022

# EXHIBIT A-1

# PROMISSORY NOTE

$1,000,000 September 16, 2019

FOR VALUE RECEIVED, **2999TC LP, LLC**, Delaware limited liability company, ("**Maker**") promises to pay to **The Estate of Leland A. Hodges Jr.** ("**Lender**"), or order, the stated principal sum of One Million Dollars and 00/100 Dollars ($1,000,000.00) ("**Principal**"), advanced to Maker as of the date hereof plus interest (the "**Loan**") in accordance with the terms of this promissory note (the "**Note**"). All payments hereunder shall be made payable to Lender and shall be delivered to Lender c/o L. Allen Hodges III, 306 W. 7th St., Ste. 701, Fort Worth, Texas 76102, or at such other place as Lender from time to time may designate in writing.

1. The Principal of this Note outstanding from time to time shall bear interest at the rate of eighteen percent (18%) per annum (the "**Interest Rate**") from the date of this Note to and including the Maturity Date (as defined herein) computed daily on the basis of a three hundred sixty (360)-day year and actual days elapsed. Interest only payments consisting of all unpaid and accrued interest shall be payable on a quarterly basis, due and payable on the 3-month, 6-month and 9-month anniversary of this Note and on the Maturity Date, whereupon all of the accrued and unpaid interest, along with all unpaid principal, shall be due and payable in full.

2. The entire outstanding principal balance plus accrued, unpaid interest and any additional sums due hereunder shall be due and payable in full twelve (12) months after the date set forth above (the "**Maturity Date**"), unless sooner called by Lender as set forth below.

3. This note is related to the acquisition of property located at 2999 Turtle Creek Blvd, Dallas, Texas ("**Property**") and development of a luxury hotel and residences mixed use project on such property ("**Project**").

4. This Note shall not be prepayable. Beginning on December 15, 2019, Lender, at Lender's option, may call this Note at any time by giving Maker written notice of its election to do so. Upon such call by Lender, this Note shall be due and payable on the date that is sixty (60) days after the date on which Lender gives notice it is exercising its call option.

5. From and after the maturity of this Note, whether by acceleration or otherwise, all sums then due and payable under this Note, including all Principal, all accrued, unpaid interest, additional sums due hereunder, shall bear interest at the Default Rate of eighteen percent (18%) per annum until paid in full.

6. If any of the following "**Events of Default**" occur, the balance of all principal and interest under this Note shall, at the Lender's option, exercisable in its sole discretion, become immediately due and payable without further notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character:

(a) Maker fails to perform any obligation under this Note to pay any amount due hereunder interest, and does not cure that failure within ten (10) days of such failure;

(b) Maker or any other person liable on any part of this note, including any guarantor of this Note, or who grants a lien or security interest on any property as security for any part of this note (an "**Other Obligated Party**") fails to timely perform any obligation or covenant in any written agreement between Lender and Maker or any Other Obligated Party and such failure continues for thirty (30) days after written notice from Lender;

(c) any warranty, covenant, or representation in this Note or in any other written agreement between Lender and Maker or any Other Obligated Party is materially false when made;

(d) a receiver is appointed for Maker, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "**Collateral Security**") for any part of this Note

(e) any Collateral Security is assigned for the benefit of creditors;

(f) a bankruptcy or insolvency proceeding, in or out of court, for the adjustment of debtor-creditor relationships ("**Insolvency Proceeding**"), is commenced by Maker, a partnership of which Maker is a general partner, or an Other Obligated Party;

(g) (a) an Insolvency Proceeding is commenced against Maker, a partnership of which Maker is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty (60) days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

(h) any of the following parties is dissolved, begins to wind up its affairs, or is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Maker or an Other Obligated Party; or

(i) any Collateral Security is the subject of a levy or execution, issuance of an official writ or order of seizure.

7. The Loan proceeds shall be solely used for the acquisition of the Property by MO 2999TC, LLC.

8. Lender may exercise any or all of the rights and remedies available to it, including, without limitation, those under this Note and any other instrument or agreement relating hereto (collectively, the "**Note Documents**"), or any one or more of them. Maker and each Other Obligated Party severally waive the order of their liability, the marshaling of assets, demand, presentment for payment, notice of dishonor, protest and notice of protest, notice of default, notice of intent to accelerate maturity, and notice of the acceleration.

9. All amounts payable under this Note are payable in lawful money of the United States. Checks constitute payment only when collected. Except as otherwise expressly provided herein, all payments made hereunder shall be applied first to Late Charges, then to additional sums due hereunder, then to accrued, unpaid interest until all Late Charges, additional sums and accrued, unpaid interest are paid in full and finally to principal.

10. If any proceeding is commenced which arises out of or relates to this Note, the prevailing party shall be entitled to recover from the other party such sums as may be determined to be reasonable attorneys' fees, in addition to costs and expenses otherwise allowed by law. In all other situations, including any matter arising out of or relating to any Insolvency Proceeding, Maker agrees to pay all of Lender's reasonable costs and expenses, including attorneys' fees, which may be incurred in enforcing or protecting Lender's rights or interests.

11. This Note is governed by the laws of the State of Texas, without regard to the choice of law rules of that State.

12. If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

13. This Note inures to and binds the heirs, legal representatives, successors and assigns of Maker, Lender and Lenders' agents; <u>provided, however</u>, that Lender in its sole discretion may assign or transfer all or any portion of this Note, all without notice to, or the consent of, Maker.

14. Time is of the essence with respect to every provision contained herein in which time is a factor.

15. Regardless of any provision contained in this Note or any instrument executed or delivered in connection herewith, it is the express intent of the parties that at no time shall any of the Maker or any Other Obligated Party pay interest in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and Lender will never be considered to have contracted for or to be entitled to charge, receive,

collect, or apply as interest on this Note, any amount in excess of the Maximum Rate (or any other interest amount which might in any way be deemed usurious), and, in the event that Lender ever receives, collects, or applies as interest any such excess, the amount which would be excessive interest will be applied to the reduction of the principal balance of this Note, and, if the principal balance of this Note is paid in full, any remaining excess shall forthwith be paid to Maker. In determining whether the interest paid or payable exceeds the Maximum Rate (or any other interest amount which might in any way be deemed usurious), Maker and Lender shall, to the maximum extent permitted under applicable law: (a) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense or fee rather than as interest; (b) exclude voluntary prepayments and the effect thereof; and (c) spread the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the term. The term "**Maximum Rate**" shall mean at the particular time in question the maximum rate of interest which, under applicable law, may then be charged on this Note. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Maker from time to time as of the effective time of each change in such Maximum Rate.

16. Maker represents and warrants that: (i) the person signing on behalf of Maker is duly authorized to execute this Note; and (ii) the execution, delivery and performance of this Note has been duly authorized and approved by Maker.

THIS NOTE AND THE OTHER NOTE DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the undersigned has duly executed and delivered this Secured Promissory Note as of the date first above written.

**MAKER**

2999TC LP, LLC
Delaware limited liability company

By: ______________________
Name: Tim Barton
Its: President

# FIRST AMENDMENT TO PROMISSORY NOTE

THIS FIRST AMENDMENT TO PROMISSORY NOTE (this "First Amendment"), entered into as of February 21, 2020 (the "First Amendment Effective Date"), is made by and between **2999TC LP, LLC**, Delaware limited liability company ("Maker"), and **THE ESTATE OF LELAND A. HODGES JR.** ("Lender").

## WITNESSETH

**WHEREAS**, Maker executed that certain Promissory Note dated September 16, 2019 (the "Note") payable to the order of Lender in the original principal amount of $1,000,000;

**WHEREAS**, Maker and Lender have agreed to amend certain provisions contained in the Note; and

**WHEREAS**, the parties are willing to make such amendments to the Note, in accordance with and subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## AMENDMENT TO NOTE

1.01 Amendment to Note. The Note is hereby amended by adding the following Section 17 immediately following Section 16 of the Note:

> "17. Venue. In the event of a dispute involving this Note or any other instruments executed in connection herewith, the undersigned irrevocably agrees that venue for such dispute shall lie exclusively in any court of competent jurisdiction in Tarrant County, Texas."

## ARTICLE II
## MISCELLANEOUS

2.01 Counterparts. This First Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall constitute one and the same instrument.

2.02 Governing Law. This First Amendment shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas.

2.03 Successors and Assigns. This First Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.