Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| WALL007 LLC, *et al.*[1], | § | |
| | § | Case No. 20-31131 (HDH) |
| Alleged Debtors. | § | (Jointly Administered) |
| | § | |

**THE STATE COURT PLAINTIFFS' OBJECTION TO ALLEGED DEBTORS' EMERGENCY MOTION TO ENFORCE AUTOMATIC STAY UNTIL ADJUDICATION OF THE CHAPTER 7 PROCEEDINGS PURSUANT TO SECTION 11 U.S.C. § 362 AND RELATED SUPPLEMENT**

L. Allen Hodges III, as Independent Executor of The Estate of Leland A. Hodges Jr., Tejas Group, Ltd., LAH III Family Specific Interest, Ltd., and Blackfoot Interest, Ltd. (all collectively, the "State Court Plaintiffs") file their Objection to the Alleged Debtors' Emergency Motion to Enforce Automatic Stay Until Adjudication of the Chapter 7 Proceedings Pursuant to Section 11 U.S.C. § 362 [Docket No. 63] (the "Motion to Enforce Stay") and Supplement to the

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC (collectively, the "Alleged Debtors"). The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors at this time.

Motion to Enforce Stay [Docket No. 70] (the "Supplement" and collectively with the Motion to Enforce Stay, the "Motion") respectfully show as follows:

## I. INTRODUCTION

1. The Alleged Debtors' request to enforce the automatic stay is baseless, disingenuous, and nothing but yet another desperate attempt by Timothy Barton (a defendant in the state court proceeding which the Alleged Debtors seek to stay and coincidentally also a principal of the Alleged Debtors) to use one of the plethora of companies under his control as a vehicle to protect himself (**not** the Alleged Debtors) in a separate lawsuit. Even after the State Court Plaintiffs withdrew all requests for injunctive relief even arguably related to the Alleged Debtors, the Alleged Debtors accuse the State Court Plaintiffs of gamesmanship and trying to exercise control over the Alleged Debtors' in a poorly disguised attempt to delay the State Court Plaintiffs' efforts to pursue their claims against Barton. In doing so, the Alleged Debtors (i) ignore the plain language of the state court pleadings and mischaracterize cherry-picked portions of the same, (ii) make material misrepresentations to the Court, and (iii) fail to offer a single legitimate reason as to why the Court should enforce the stay in a case that has absolutely no bearing on the Alleged Debtors or their assets (other than the fact that the person controlling the Alleged Debtors, Barton, is facing a multi-million dollar judgment for breaching his loan guaranties). Because the Alleged Debtors' Motion is baseless and filed solely for the purpose of delaying a judgment against Barton, the State Court Plaintiffs respectfully asks the Court to deny the motion and award the State Court Plaintiffs their reasonable and necessary attorney's fees incurred as a result of the Alleged Debtors' actions.

## II. BACKGROUND

2. Timothy Barton ("Barton") has a direct or indirect ownership and/or managerial interests in multiple real estate-related companies, including Wall009, LLC, one of the Alleged Debtors in the above-styled matter ("Wall009") as well as JMJ Development, LLC ("JMJ"), and 2999TC LP, LLC ("2999TC") (Barton, JMJ, and 2999TC all collectively referred to herein as the "State Court Defendants") (for clarification, Wall009 is not included in the definition of State Court Defendants nor is it an actual defendant in the State Court Proceeding, as defined below). In September of 2019, 2999TC borrowed $4,000,000.00 from the State Court Plaintiffs (the "Loan"). Barton and JMJ both guaranteed payment of the Loan.

3. After 2999TC defaulted on the Loan and the State Court Defendants failed to pay as agreed, the State Court Plaintiffs filed suit against Defendants on April 22, 2020, in a matter styled *L. Allen Hodges III, et al. v. 2999TC LP, LLC, et al.*, Cause No. 141-316567-20, pending in the 141st District Court of Tarrant County, Texas, the Honorable John Chupp presiding (the "State Court Proceeding"), seeking to recover the more than $4,000,000.00 now owed by the State Court Defendants. Notably, no suggestion of bankruptcy has ever been filed in the State Court Proceeding.

4. From the moment the State Court Proceeding was filed, all three Defendants (none of which are subject to or otherwise involved in this bankruptcy proceeding) have tried to avoid their obligations by dodging service and filing baseless dilatory motions—which were promptly denied. In fact, 2999TC filed its answer only last week when faced with the threat of default judgment. Barton and JMJ filed their answer only this morning, faced with the same prospect—but not without making it subject to another dilatory motion.

5. When their case was originally filed, the State Court Plaintiffs sought and received a temporary restraining order from Judge Chupp enjoining the State Court Defendants from encumbering certain collateral purportedly pledged against the Loan (the "TRO"). That TRO was extended twice by the express agreement of 2999TC, JMJ, and Barton but subsequently expired on June 16, 2020.[2]

6. On June 5, 2020, which was the first time that the State Court Plaintiffs received any communications from the State Court Defendants indicating a potential automatic stay issue, 2999TC filed its Motion to Dissolve Temporary Restraining Order ("Motion to Dissolve") and Motion to Stay Case ("Motion to Stay") due to the Alleged Debtors' bankruptcy case. The State Court denied the Motion to Stay. With respect to the Motion to Dissolve, the State Court continued consideration of that motion until the pending on the State Court Plaintiffs' Application for Temporary Injunctive Relief, which was scheduled for hearing on June 16, 2020.

7. Out of an abundance of caution, and in order to ensure no potential automatic stay issues, the State Court Plaintiffs filed their First Amended Petition on June 15, 2020. As evidenced by the First Amended Petition, the State Court Plaintiffs fully withdrew their request for injunctive relief in state court and demonstrated that they no longer seek any relief other than strictly a monetary judgment against 2999TC on the debt (and against Barton and JMJ as guarantors if such debt remains unpaid at the time of judgment). A copy of the First Amended Petition filed in the State Court Proceeding is attached hereto as Exhibit A. Furthermore, the

[2] The Alleged Debtors conveniently neglect to mention to the Court that the State Court Defendants twice expressly agreed to extend the TRO ***after*** the Alleged Debtors claim that those same defendants discussed the bankruptcy with counsel for the State Court Plaintiffs for the first time. In other words, because Barton agreed to extend the TRO while being well aware that one of his entities (Wall009) was involved in this bankruptcy proceeding but without ever suggesting that the State Court Proceeding might be implicated by the bankruptcy proceeding, any allegation by the Alleged Debtors (which includes Wall009) that the State Court Plaintiffs knowingly violated the automatic stay by seeking injunctive relief is disingenuous at best. As a matter of fact, the first time Barton or any of his entities suggested to the State Court Plaintiffs that this bankruptcy proceeding somehow implicates the State Court Proceedings was on June 5, 2020—coincidentally promptly after the State Court Plaintiffs declined to agree to push the State Court Defendants' answer dates back any further.

TRO dissolved by its own terms on June 16, 2020. As this Court will see, the Alleged Debtors and their property are in no way placed at issue or implicated by the State Court Plaintiffs' claims or request for relief.

8. Having seen the State Court Defendants fail to stop the State Court Proceeding after trying five different dilatory motions before Judge Chupp, the Alleged Debtors (having no interest in the outcome of the state proceedings, the only rational explanation is that they are driven solely by Barton's personal interests) filed this emergency Motion seeking enforcement of the automatic stay. [*See* Doc. 63]. The Alleged Debtors, however, set out no grounds for an emergency, argue no rationale for the automatic stay beyond the now withdrawn request for injunctive relief, misrepresent facts to the Court, and appear to have made the filing solely to further Barton's efforts to block the State Court Plaintiffs from seeking to pursue their claims against him individually before Judge Chupp.

## III. ARGUMENT & AUTHORITIES

9. It is well-established that insofar as litigation is only against non-debtors, and does not seek to "obtain possession or exercise control" over property owned by the debtor, the automatic stay will not apply to halt the state-court litigation. *See* 11 U.S.C. 362(a)(3); *In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007) (The automatic stay does not apply to actions "not directed against the debtor or property of the debtor."); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) ("Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) (holding that while the stay protects a debtor who has filed a bankruptcy petition, litigation may proceed against other co-defendants); *R. Hassell Builders, Inc. v. Texan Floor Svs. Ltd.*, 546 S.W.3d 816 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("As a general rule, the . . .

automatic stay protects only the debtor, property of the debtor, or property of the estate; it does not protect non-debtor parties or their property.”).

10. A stay under section 362 may apply to an action against nondebtor defendants depending on their relationship to the debtor—where “there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.” *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). Importantly, the party invoking the stay has the burden to show that it is applicable. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 722-723 (S.D. Tex. 2010); *see also Garlock, Inc.*, 278 F.3d at 436 (5th Cir. 2001) (finding no claim of a formal tie or contractual indemnification sufficient to create an “identity of interests.”).

11. The Alleged Debtors’ arguments are without merit and disingenuous at best. Because they fall far short of satisfying their burden of showing why the State Court Proceeding should be stayed, their Motion should be promptly denied so that the State Court Plaintiffs may pursue their claims for breach of promissory notes and guaranties against the non-debtor State Court Defendants.

**A. The State Court Plaintiffs’ Purported Knowledge of the Bankruptcy is Irrelevant to a Determination Whether the Stay Applies, and the Alleged Debtors’ Material Misrepresentation Should Not be Rewarded.**

12. The Alleged Debtors assert that enforcement of the stay is justified because the State Court Plaintiffs intentionally violated the same (which the State Court Plaintiffs dispute) due to having knowledge of the bankruptcy case’s implications with respect to the State Court Proceedings. [Doc. 63, at p. 5; Doc. 70, at p. 3]. As an initial matter, section 362 does not authorize a bankruptcy court to stay another proceeding solely based on a party’s (actual or purported) knowledge of the bankruptcy proceeding, making the Alleged Debtors’ unfounded

accusation irrelevant. Worse yet, desperate to stay the State Court Proceeding, the Alleged Debtors make material misrepresentations to the Court by claiming that the Barton informed the State Court Plaintiffs about the bankruptcy implications **before** the State Court Plaintiffs filed suit:

> After the Petitioning Creditors initiated these Chapter 7 proceedings, **Mr. McMurray informed counsel for the [State Court] Plaintiffs about the filing and potential impact on the Collateral Property. Despite knowledge of this proceeding and the impact on their claims, the [State Court] Plaintiffs proceeded with filing the Hodges Lawsuit, seeking injunctive relief, and obtaining an ex parte TRO.**

[Doc. 63, at p. 5 (emphasis added)]. This representation by the Alleged Debtors, however, is directly contradicted by the Declaration of Mr. McMurry, which makes expressly clear that Mr. McMurry had no such conversation prior to the State Court Plaintiffs filing suit:

> I had a phone call with Mr. Hill, which I believe occurred **on May 6, 2020**, where we discussed the status of the Collateral in question, their concerns, and the pledges. He also asked me about **the involuntary bankruptcy that had been filed on Wall009, LLC *which I had not yet previously mentioned***. I explained the background of the bankruptcy filings and that the Alleged Debtors, including Wall009, LLC, were challenging those involuntary bankruptcy petitions.

[Doc. 63, at p. 202 (emphasis added)]. Not only is Mr. McMurry's declaration void of any statement that even arguably can be read to mean that he ever discussed the potential impact of this bankruptcy proceeding on the State Court Proceeding, but it makes expressly clear that the Alleged Debtors' allegation that the State Court Plaintiffs intentionally ignored "the impact [this bankruptcy proceeding would have] on their claims" and filed suit anyways is patently false. [*See* Doc. 63, at p. 5].[3]

13. Furthermore, the allegation that the State Court Plaintiffs' "litigation tactics" reveal some attempt to obtain property of the estate in violation of the automatic stay is also

[3] That the Alleged Debtors' reiterate this false accusation in their Supplement makes it difficult to believe that their first factual misrepresentation to the Court was inadvertent. [*See* Doc. 70, at p. 3].

baseless. Rather, by filing their First Amended Petition and removing any requested relief remotely related to the Alleged Debtors and/or their property, the State Court Plaintiffs have further clarified that the State Court Proceeding in no way impacts the Alleged Debtors or their estates.

14. Because the State Court Plaintiffs' (actual or purported) knowledge of this bankruptcy proceeding has nothing to do with whether automatic stay applies to the State Court Proceeding, and because the Alleged Debtors' argument is based solely on a material misrepresentation of the underlying facts, their Motion should be denied.

**B. The Withdrawn Request for Injunctive Relief and the Expired Temporary Restraining Order Cannot Justify Staying the State Court Proceeding.**

15. In their Motion, the Alleged Debtors refer exclusively to the State Court Plaintiffs' request for injunctive relief and the temporary restraining order entered by the Honorable Judge Chupp on April 23, 2020, to argue that this Court should stay the State Court Proceeding. [*See* Doc. 63, pp. 7-9]. Fatal to this argument: (i) despite disagreeing with the Alleged Debtors' characterization of the State Court Proceedings, in an attempt to stop spending time and money on arguing baseless motions filed by Barton and his various entities, the State Court Plaintiffs filed their First Amended Petition in the State Court Proceedings unequivocally withdrawing all requests for relief that even arguably could implicate the Alleged Debtors, (ii) the State Court Plaintiffs cancelled the June 16, 2020, temporary injunction hearing, and (iii) the agreed-upon TRO expired on June 16, 2020. In other words, at best, the potential implications the request for injunctive relief and/or the TRO may have had on the Alleged Debtors and/or their assets no longer exists. Because the Alleged Debtors do not come close to meeting their burden to show that the State Court Proceeding should be stayed based on ***potential*** issues that no longer exist, their Motion to Enforce Stay should be denied. *See Beran*, 747 F. Supp. 2d at

722-723 (S.D. Tex. 2010); *see also In re TXNB*, 483 F.3d at 301 (The automatic stay does not apply to actions "not directed against the debtor or property of the debtor."); *Garlock, Inc.*, 278 F.3d at 436 ("Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors); *Texan Floor Svs. Ltd.*, 546 S.W.3d at ("As a general rule, the . . . automatic stay protects only the debtor, property of the debtor, or property of the estate; it does not protect non-debtor parties or their property.").

### C. The Alleged Debtors' Request to Stay the State Court Proceeding Based on Unsupported and Self-Serving Speculation and an Intentional Misreading of the State Court Pleadings Should be Denied.

16. The Alleged Debtors continue to insist on trying to stay the State Court Proceeding even after the State Court Plaintiffs withdrew their request for injunctive relief and made expressly clear that they seek no relief relating to the Alleged Debtors or their assets.[4] To that effect, the Alleged Debtors filed a Supplement to their Motion.

17. The Supplement, however, only highlights the absurdity and disingenuousness of the Alleged Debtors' argument. First and foremost, it expressly concedes that the State Court Plaintiffs "amended their petition to withdraw their request for injunctive relief." [Doc. 70, at p. 2]. Despite this concession, the Alleged Debtors argue that the First Amended Petition "continues to **indirectly** assert rights in the Collateral" and speculate that the State Court Proceeding "**may** impact the Collateral." [*Id.* at pp. 2-3 (emphasis added)]. As their only "support" for these wishful and self-serving assertions, the Alleged Debtors go through and identify, and rely solely upon, various instances where the State Court Plaintiffs **mention** the

[4] The Alleged Debtors seem to try to make a point out of the fact that the State Court Plaintiffs "did not dissolve the TRO" when withdrawing their request for injunctive relief. [*See* Doc. 70 n.3]. The State Court Plaintiffs are unsure how this bears any significance in light of the fact that the TRO was set to expire the very next day and, to the extent still necessary to do so, any party of interest was free to ask the court to dissolve it—but neither State Court Defendants, the Alleged Debtors, nor any other Barton entity found it necessary to do so or to ask the State Court Plaintiffs to do so.

Loan collateral and explain how **<u>Barton's</u>** (not the Alleged Debtors') failure to provide certain collateral constitutes a breach of Barton's guaranties. [*Id.* at pp. 4-5]. Notably, the vast majority (if not all) of these statements are located within the facts section of the First Amended Petition.

18. Put differently, based solely on background facts clearly plead for context and in support of the State Court Plaintiffs' breach of guaranty claim against Barton, the Alleged Debtors non-sensically conclude that "the [State Court] Plaintiffs have squarely placed the Collateral Property at issue (and have requested findings related to such property) and they have engaged in litigation tactics to keep the Collateral Property in their lawsuit, obtain an improvident TRO concerning that Collateral Property, and preserve their ability to continue to include the Collateral Property in their litigation." [*Id.* at pp. 5-6]. The Alleged Debtors further speculate that "the [State Court] Plaintiffs are seeking such findings from the Court and have preserved their rights to assert claims against the Collateral Property in the course of the [State Court Proceeding] and to seek discovery concerning the Collateral Property in the course of that litigation." [*Id.* at p. 5].

19. An actual review of the First Amended Petition immediately defeats the Alleged Debtors' mischaracterization of the same, as the Alleged Debtors conveniently fail to mention to the Court that the First Amended Petition expressly states that it does **<u>not</u>** seek the relief the Alleged Debtors represents to the Court:

> Barton ultimately caused membership interest in the following entities to be pledged as security of the Loan: Wall009, LLC, Ridgeview Addition, LLC, LDG001, LLC, JMR100, LLC, D4KL, LLC, BM318, LLC, and 2999TC LP, LLC. With respect to the pledge of interest in Ridgeview Addition LLC, the entity through which Barton pledged that interest, Carnegie Development, LLC, falsely represented to Plaintiffs that Ridgeview Addition, LLC owns the Guaranty Collateral identified as Ridgeview. **<u>To be clear, Plaintiffs do not assert any claim, and do not seek any relief from this Court, arising from and/or based on (i) their security interest in the membership interest of these entities or (ii) their attenuated interest in the real estate owned by these entities and/or</u>**

> **identified in the Barton Guaranties. Rather, the only relief Plaintiffs seek herein is directly against Defendants based on their respective breaches of the Notes and Guaranties: actual damages, pre- and post-judgment interest, attorney's fees, and costs.**
>
> By way of specific example, with respect to the pledge of membership interest in Wall009 LLC, this entity is an alleged debtor subject to an involuntary chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 20-31131. **Plaintiffs are not seeking any relief as to Wall009 LLC or the membership interests in Wall009 LLC, and will not seek any such relief without prior Bankruptcy Court approval.**

[*See* Ex. A, n.5 (emphasis added)].[5] In other words, the First Amended Petition places beyond doubt that the State Court Plaintiffs do not seek any relief that "implicates directly or directly the assets of the Alleged Debtors." This much is confirmed by the fact that neither the Alleged Debtors nor the State Court Defendants, as is standard for a party with a good-faith belief that a bankruptcy filing affects a proceeding, filed a suggestion of bankruptcy in the State Court Proceeding, but rather raised the stay issue only after all other baseless dilatory efforts failed.

20. Putting aside the fact that the Alleged Debtors' argument is in direct conflict with the First Amended Petition, they fail to explain (i) how the Alleged Debtors' assets are "squarely placed" at issue by merely being referenced; (ii) what findings related to such assets have been requested or are even necessary to determine whether the State Court Defendants breached certain promissory notes or guaranties; and (iii) how the State Court Plaintiffs have "ke[pt] the Collateral Property in their lawsuit" and "preserve[d] their ability to continue to include the Collateral Property in their litigation" in a way that would implicate the automatic stay. [*Id.* at pp. 5-6]. As a matter of fact, it is impossible to make the slightest sense of the Alleged Debtors' argument because the standard they appear to be asking the Court to apply here would require

[5] While the First Amended Petition references certain assets that supposedly trace through Barton's spider's web of entities to one of the Alleged Debtors, it is abundantly clear (i) that such references are provided solely for narrative and factual background strictly as they relate to the claims against 2999TC, JMJ, and Barton; and (ii) the State Court Plaintiffs seek only monetary relief directly from those three defendants.

bankruptcy courts to stay every unrelated proceeding strictly involving non-debtors as long as one of the parties to any such proceedings one day may amend its pleadings to ***mention*** a debtor or its assets—regardless whether the relief at issue actually implicates the debtor or its assets.[6] This is simply absurd.

21. Next, the Alleged Debtors argue that the state court proceeding must be stayed because "the [State Court] Plaintiffs . . . have preserved their rights to . . . seek discovery concerning the Collateral Property in the course of that litigation." [*Id.* at p. 5]. The Alleged Debtors presents no authority stating that the State Court Plaintiffs are not allowed to engage in discovery concerning its claims against the State Court Defendants for breach of certain promissory notes and guaranties—neither do they identify any kind of discovery that they have reason to believe the State Court Plaintiffs will conduct "concerning the Collateral Property" that would be even remotely close to implicate the automatic stay.

22. The Alleged Debtors' failure to provide factual and legal support for their request to stay the State Court Proceeding speaks for itself: they are attempting to impose the automatic stay upon a proceeding that does not come even remotely close to falling within the purview of, and is not subject to, the stay. Because the Alleged Debtors have not provided any legal or factual support for its non-sensical arguments, and instead rely on blatant misrepresentations in a desperate attempt to distract the Court, the State Court Plaintiffs do not believe the Motion was filed in good faith but rather for the sole purpose of causing further delay in the State Court Proceeding on behalf of Barton and his other non-debtor entities.

---

[6] By way of example, applying the Alleged Debtors' proposed new standard for the automatic stay would require the Court to stay a lawsuit between two individuals if one sued the other for delivering a silver Honda when they had agreed upon the sale of a black Honda as long as Honda has a pending bankruptcy proceeding and the plaintiff references the car make in the pleadings.

23. In short, the Alleged Debtors have not come close to meeting their burden to demonstrate why the State Court Proceeding should be stayed or how a money judgment against the non-debtor State Court Defendants would implicate the Alleged Debtors or their assets in violation of section 362 in any way, shape, or form. Therefore, their Motion should be denied. *See Beran*, 747 F. Supp. 2d at 722-723 (S.D. Tex. 2010); *see also In re TXNB*, 483 F.3d at 301 (The automatic stay does not apply to actions "not directed against the debtor or property of the debtor."); *Garlock, Inc.*, 278 F.3d at 436 ("Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors); *Texan Floor Svs. Ltd.*, 546 S.W.3d at ("As a general rule, the . . . automatic stay protects only the debtor, property of the debtor, or property of the estate; it does not protect non-debtor parties or their property.").

**D. Conclusion.**

24. Despite making blatantly false representations and ignoring the most relevant parts of the live State Court Pleading in a disingenuous attempt to cast the State Court Plaintiffs in a bad light, the Alleged Debtors have not met their burden to show why the State Court Proceeding should be stayed. As a matter of fact, their arguments are in direct conflict with the State Court Plaintiffs' First Amended Petition. Based on the glaring lack of support for arguments presented by the Alleged Debtors, and their blatant misrepresentations to the Court, the State Court Plaintiffs believe the Alleged Debtors do not have a good faith basis for its request to stay the State Court Proceeding "to protect their property" but are merely trying to help Barton to cause further delay to the claims against him individually after the State Court Defendants unsuccessfully filed numerous dilatory motions that were promptly denied in the State Court Proceeding. Because the Alleged Debtors for the sole purpose of causing delay forced the State Court Plaintiffs to respond to a motion for expedited hearing as well as its baseless "emergency" Motion to Enforce Stay, the Court should deny the request to stay the

State Court Proceeding and further order the Alleged Debtors to reimburse the State Court Plaintiffs' for their expenses incurred in responding to an arguing these issues.

25. Furthermore, the State Court Plaintiffs do not believe their original petition implicated any stay issues (as apparently neither did the state court). However, to the extent there were any potential stay issues regarding the original petition, those issues have since been resolved by the filing of the First Amended Petition. Therefore, if applicable, the State Court Plaintiffs request a finding from the Court confirming that any prior stay is terminated pursuant to 11 U.S.C. § 362(j).

26. Alternatively, in the event the Court finds that the allegations in the First Amended Petition implicates the stay, the State Court Plaintiffs respectfully asks for an opportunity to file an amended petition addressing the Court's concerns prior to a ruling on the Motion, as justice would be best served by allowing the State Court Plaintiffs to pursue their claims against non-debtors Barton, JMJ, and 2999TC. As is evidenced herein and by the filing of the First Amended Petition, the State Court Plaintiffs solely want to pursue actions against the non-debtor State Court Defendants, in no way seek to violate the automatic stay, and will take additional measures to reassure the Court of such, if the Court finds necessary.

**RELIEF REQUESTED**

For the above reasons, the State Court Plaintiffs respectfully request that the Court: (i) deny the Motion to Enforce Automatic Stay as supplemented (either immediately or after allowing the State Court Plaintiffs an opportunity to amend as the Court sees fit); (ii) order the Alleged Debtors to reimburse the State Court Plaintiffs for their reasonable and necessary fees and expenses incurred as a result of the Alleged Debtors' baseless filings concerning the

automatic stay; (iii) to the extent a stay previously applied, confirm that such stay is terminated; and (iv) grant such further relief as the Court deems just and proper.

Dated: June 18, 2020

Respectfully submitted,

*_/s/ Katherine T. Hopkins_*
Dee J. Kelly, Jr.
Tex. Bar I.D. 11217250
Katherine T. Hopkins
Tex. Bar I.D. 24070737
Joakim G. Soederbaum
Tex. Bar I.D. 24091338
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280
dee.kelly@kellyhart.com
katherine.hopkins@kellyhart.com
joakim.soederbaum@kellyhart.com

**ATTORNEYS FOR L. ALLEN HODGES III, AS INDEPENDENT EXECUTOR OF THE ESTATE OF LELAND A. HODGES JR., TEJAS GROUP, LTD., LAH III FAMILY SPECIFIC INTEREST, LTD., AND BLACKFOOT INTEREST, LTD.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served on June 18, 2020, on the persons/entities receiving service via ECF notification.

*_/s/ Katherine T. Hopkins_*
Katherine T. Hopkins