Joyce W. Lindauer
State Bar No. 21555700
Paul B. Geilich
State Bar No. 07792500
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
**ATTORNEYS FOR ALLEGED DEBTORS**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **In re:**<br><br>**WALL007, et al**<br><br>**Alleged Debtors.** | **Case No. 20-31131**<br>**Chapter 7** |

**ALLEGED DEBTORS' MOTION TO COMPEL PRODUCTION OF DOCUMENTARY EVIDENCE PERMITTING VERIFICATION OF ELECTRONIC SIGNATURES AND STAY ALL ADDITIONAL DISCOVERY OF NON-DISPOSITIVE ISSUES, OR IN THE ALTERNATIVE TO INVALIDATE THE INVOLUNTARY PETITION AND TO SCHEDULE HEARING IN CONJUNCTION WITH CREDITORS' MOTION TO COMPEL**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 ON OR BEFORE AUGUST 10, 2020, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COME NOW Alleged Debtors Wall007, et al., and file this their *Motion to Compel Production of Documentary Evidence Permitting Verification of Electronic Signatures and Stay All Additional Discovery of Non-Dispositive Issues, or in the Alternative to Invalidate the Involuntary Petition, and to Schedule Hearing in Conjunction With Creditors' Motion to Compel* (the "Motion"), and respectfully shows the Court as follows:

## I. JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, §157(a) and (b), and 11 U.S.C. §§ 101, et seq. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

### A. *The Underlying Lender Dispute*

The Alleged Debtors are several Texas limited liability companies formed to acquire land to construct a subdivision with the purpose of selling residential lots to home builders. The improvements to the acquired lands are intended to include the development of streets, water utilities, sewers, sidewalks, and residential lots.

The Alleged Debtors sought the assistance of Michael Fu ("Fu"), who was doing business as Silverland Financial Ltd. ("Silverland") and Platinum Investment Corporation ("PIC") (collectively, the "Fu Entities") to acquire capital for these construction projects. Fu represents himself and the Fu Entities as the designated agent of the Petitioners, who are Chinese nationals. Fu reportedly located the Petitioners, engaged them to provide co-lending through the Fu Entities via pooled loan agreements with the respective Alleged Debtors, and organized the transfer of all funds.

Essentially, the pooled loans were part of a single partnership among the Petitioners as Co-Lenders with Fu and/or the Fu Entities wherein he served as the designated agent who administered the pooled loan agreements on their collective behalf. As such, Fu and the Co-Lender Petitioners are a single alleged creditor entity, and are not separate entities. Fu is the real party-in-interest in this case and is using the Petitioners as his pawns in these proceedings. This was further verified in Fu's deposition held on Thursday, July 23, 2020.

When certain loan payments came due, Fu directed the Alleged Debtors to pay him directly on behalf of the Co-Lender Petitioners. Fu also held back monies from the Co-Lenders to offset fees he claimed he was owed. The Alleged Debtors had concerns that Fu was improperly taking a cut of the payments for himself. The Alleged Debtors believe that numerous of the financial practices of Fu, the Fu Entities, and the Petitioners were misleading, may have constituted fraud, and may have violated both U.S. and Chinese law. Based on their suspicions, the Alleged Debtors demanded to pay the Co-Lender Petitioners directly, rather than permit Fu to serve as an intermediary for the transfer of funds. Fu refused. Fu has testified he did not act as an agent for payments, but the documentary proof indicates otherwise.

***The disagreement as to how and to whom the loans should be repaid is the primary underlying dispute with regards to this case***. The parties attempted to mediate the dispute – with Fu acting as the agent for the lenders in the mediation – but no resolution was reached.

B. *The State Court Action*

After the mediation failed, on November 15, 2019, the Fu Entities and a small handful of the Petitioners filed Cause No. DC-19-18361 in the District Court of Dallas County for the 44th Judicial District (the "State Court Case") as a debt collection action against the Alleged Debtors. ***The underlying subject matter of the instant bankruptcy proceedings served as the basis for the underlying claims in that legal matter as well***.

The Original Petition in the State Court Case consists of salacious and specious content, and was filed in an effort by Fu to shake the Alleged Debtors down and to cover for unrelated failed business ventures undertaken by the Fu Entities. In the Original Petition, Fu asserted entitlement to fees the Alleged Debtors did not owe, shared confidential information, spread false rumors and outright lies, and defamed the Alleged Debtors to other lenders in a collective and calculated effort to force the Alleged Debtors to agree to a grossly lopsided settlement.

The Alleged Debtors devoted substantial resources to litigating the State Court Case. In the State Court Case, the Alleged Debtors filed an answer, plea in abatement, motion to dismiss pursuant to Tex. R. Civ. P. 91(a), and an anti-SLAPP ("Strategic Lawsuit Against Public Participation") motion. Petitioners never responded to any of these pleadings.

C. *The Federal Involuntary Bankruptcy Action*

When the court in the State Court Case issued orders contrary to the interests of Fu and the Petitioners, they collectively engaged in a tactical pivot by filing the instant involuntary bankruptcy cases to apply the pressure of additional and superfluous litigation based on the same claims as those in the State Court Case. Despite having initiated the State Court Case themselves, the Petitioners filed these duplicitous bankruptcy cases as a strong-arm litigation tactic. The Petitioners saw the move to Bankruptcy Court as a way to achieve a quicker collection result. Fu has funded all the legal fees for filing these bankruptcy cases. This was verified in Fu's deposition held on Thursday, July 23, 2020. Considering that the primary issue between the parties is a simple contractual dispute, the State Court forum was, and remains, a more appropriate forum to resolve all disputes between the Alleged Debtors and the Petitioners. To that end the Alleged Debtors have filed a motion to dismiss as well as a request to abstain from these proceedings.

D. *The Wet Signature Conflict*

The electronic signature program DocuSign has a function that enables users to electronically "sign" documents using a variety of fonts that appear to be handwritten. At least forty-seven of the sixty-five Petitioning Creditors in this case allegedly used that DocuSign application to e-sign the Involuntary Petition. The remainder bear no markings indicating the process or application used to sign the Involuntary Petition. The Alleged Debtors assert that some or all of the Petitioners are (i) not voluntary participants in the instant Bankruptcy case; (ii) not aware that an involuntary petition was filed in their name; and/or (iii) not real persons, and/or personally signed all the documents. The Alleged Debtors believe that Fu, with assistance from his attorney, Jiangang "James" Ou, has asserted claims without the knowledge and authority of the named Petitioners.

Based on these concerns, the Alleged Debtors were anxious for the receipt of the Petitioners' "wet signatures," which, pursuant to Local Rule 11.1[1] and General Order 2020-07[2],

---

[1] Local Rule 11.1 states, in relevant part:

c. Certification of Signature of Another Person. By submitting a document by electronic means and representing the consent of another person on the document, an attorney who submits the document certifies that the document has been properly signed.

d. Requirements for Another Person's Electronic Signature. An attorney who submits a document by electronic means that is signed by another person—including by a moving party under LR 40.1—must:

1. include a scanned image of the other person's signature, or represent the consent of the other person in a manner permitted or required by the presiding judge; and

2. maintain the signed paper copy of the document for one year after final disposition of the case.

[2] General Order 2020-07 states, in relevant part:

> [D]ocuments requiring a client's or other third party's signature may either be: (a) received and maintained in "wet signature form" in accordance with prior practice; (b) received by facsimile, email, text, or photo transmission from the signer (with attorneys using reasonable safeguards to ensure that the debtor has actually signed the applicable document); or (c) signed utilizing a commercially available electronic signing technology, such as DocuSign, that maintains an audit trail and other security features to ascertain the authentic identity of the signer. …

were originally due, along with an attorney certification, to be provided to this Court within 30 days of the filing of the electronically-signed Petition, or May 8, 2020. No wet signatures, nor any attorney certification of receipt of the same, was timely filed. When the Petitioners failed to provide the Court with the required wet signatures and certification by the court-mandated deadline, the Alleged Debtors moved to dismiss the case. *See* Second Motion of Alleged Debtors to Dismiss Involuntary Petition Without Prejudice for Procedural Deficiencies, Dkt. No. 27. In response, on June 23, 2020, this Honorable Court entered an order providing the Petitioners with a grace period and requiring the Petitioners to "provide their 'wet' non-electronic signatures on this voluntary petition by no later [than] July 6, 2020…" *See* Order re: Second Motion, Dkt. No. 81. Based on the clear language of this order, the Petitioners were not permitted to utilize any e-signature program (such as DocuSign) to meet the Court's requirement.

On July 6, 2020, Mr. Ou filed with the court an attorney's certification attesting under penalty of perjury that he was in receipt of wet signatures of all but three of the Petitioning Creditors. *See* Certification of Jiangang Ou, Dkt. No. 84. Mr. Ou produced to the Alleged Debtors the documents he claimed contained the wet signatures the following day. The Alleged Debtors' concerns regarding the authenticity of these signatures have not been alleviated. The signatures from multiples sources – including loan agreements, Chinese passports, the Involuntary Petition, and the Wet Signature certifications, are inconsistent. Moreover, and particularly considering these suspicious discrepancies, counsel for the Petitioning Creditors Mr. Ou has not provided any information or evidence establishing the methodology that he used to confirm the identity of the Petitioning Creditors or the authenticity of these signatures.

---

Additionally, the debtor's attorney must file a certification within thirty (30) days of filing an electronically signed document that he or she has now received the debtor's original "wet signature" and will maintain it in accordance with Administrative Procedures for the Filing, Signing, and Verifying of Documents by Electronic Means in Texas Bankruptcy Courts.

To assist the Court in understanding the Alleged Debtors' suspicions and concerns regarding the authenticity of the signatures, the Alleged Debtors have created a derivative document, "Wet Signatures Chart" attached hereto as **Exhibit A**, designed to identify and confirm the signatures of the Petitioning Creditors. The Wet Signatures Chart contains a list of sixty-five (65) Chinese names in Hanyu Pinyin (the romanization of Chinese characters based on their pronunciation). The columns in the Wet Signatures Chart (Exhibit A) contain "signatures" used in several signed documents, including the Involuntary Petition, Loan Agreements, Passports and which in some cases appeared to have been possibly generated by a person, and in other cases, likely generated by a computer. In almost all the cases, the signatures do not appear to match. These signatures cannot be authenticated by simple examination and, indeed, appear to come from different sources. As such, it is impossible to state with any degree of certainty that the Petitioning Creditors are who they say they are, and that they are the individuals who actually did sign the Involuntary Petition and the other documents.

DocuSign itself has acknowledged the possibility of fraud in the identity of a party that uses its application. To combat this concern, "each DocuSign transaction automatically generates and stores a complete, time-stamped history of every send, view, print, sign, or decline action." This information is captured in the DocuSign Certificate of Completion that is generated for every DocuSign transaction. Any party to the transaction who wants to review the activity associated with a document can view, download or print the Certificate of Completion for that document to verify the transaction.

"DocuSign's court-admissible, digitally signed, and tamper-evident Certificate of Completion contains a comprehensive audit trail that includes:

- Signing parties' names
- Digital signatures

- Email addresses
- Public IP addresses
- Signing location (if provided)
- Chain of custody (sent, viewed, signed, etc.)
- Timestamps"[3]

Despite the ease with which they can obtain such certifying information that would validate electronic signatures affixed to the Involuntary Petition, neither the Petitioning Creditors nor their counsel has produced same on their own accord, nor have they provided any actual response to the discovery requests that asked for essentially the same certifying information. Considering the Petitioning Creditors' failure to provide this basic information, a subpoena to DocuSign to obtain such certified information is imminently forthcoming.

The Petitioners have also stymied the Alleged Debtors' efforts to obtain discovery to confirm or refute the validity of the posited signatures or otherwise confirm the existence and consent of the Petitioners.

- When asked in discovery to produce documentation showing that they physically signed the Involuntary Petition with a "wet signature" and delivered a copy to their counsel of record in addition to, or instead of, using any e-signature provider, the Petitioning Creditors provided no substantive response, electing to refer the Alleged Debtors to documents already produced (which show only electronic signatures, or are unrelated to the wet signature in question).

- When asked for copies of written agreements or documents on which the e-signature was affixed and for a variety of information that may be used to verify the e-signature, the Petitioning Creditors objected, citing relevancy, ambiguity, undue burden, confidentiality, and legal conclusion objections, then finally referring the Alleged Debtors to documents already produced. Again, no actual response was given.

- When asked for copies of naturalization certificates, passports (issued by any country), tax identification numbers, identity cards, or documents containing personally identifiable information ("PII") that the Alleged Debtors could use to validate the identity or demonstrate the existence of the Petitioning Creditors, the latter again objected citing that such request was irrelevant, ambiguous, unduly

[3] https://support.docusign.com/s/question/0D51W000069k8z6/preventing-possible-forgery.

burdensome, asks for confidential information, and ultimately refused to respond to the request.

- When asked to provide copies of invoices in their possession showing that they had *personally* incurred legal expenses related to the instant case, of course redacting any privileged information, the Petitioning Creditors refused to do so, citing that such was irrelevant, ambiguous, confidential, and required such individual to produce a legal conclusion.

- When asked an interrogatory about legal representation, including about payment of fees, to determine if individual Petitioning Creditors had actually engaged legal counsel, and to determine who those persons were, the Petitioning Creditors refused to respond, claiming that such Interrogatory was irrelevant, ambiguous, unduly burdensome, privileged, and/or required them to present a legal conclusion.

- When asked an interrogatory about how Petitioning Creditors received and consented to the filing of the Original Petition, the Petitioning Creditors refused to respond, claiming that such Interrogatory was irrelevant, ambiguous, unduly burdensome, privileged, and/or required them to present a legal conclusion.

In essence, the Petitioning Creditors have refused to provide any meaningful document by which the Alleged Debtors could determine that each Petitioning Creditor in question engaged legal counsel in this case to file an Involuntary Petition on their behalf, signed the Involuntary Petition, or even exists in the first place and other allegedly signed documents. The Petitioning Creditors have hidden under boilerplate "relevancy" objections despite the fact that such requests are highly relevant and calculated to determine if a living individual had actually engaged legal counsel to represent his or her interests before this Court.

The Alleged Debtors do not believe the electronic signatures appearing on the Involuntary Petitions either represent persons authorizing the filing of the Involuntary Petition on their behalf, and/or personally signed the Petition, and in some cases represent actual living persons. To make a conclusive determination, the Alleged Debtors require (1) documentary evidence validating electronic signatures that comports with requirements established by this Court and/or the Local Civil Rules established by the United States District Court for the Northern District of Texas, and (2) responses to their above-detailed discovery requests. Accordingly, the Alleged Debtors now

move this Court seeking an order compelling the Petitioning Creditors to produce such evidence and information or, in the alternative, to invalidate the Petition as a result of the Petitioner's failure to meet the "wet signatures" threshold for litigating the matter before this Court.

## III. ARGUMENT

### A. *The Petitioning Creditors Should Either be Compelled to Produce Verification Evidence of Wet Signatures, or the Involuntary Bankruptcy Should be Invalidated*

To be able to file an Involuntary Petition, a Petitioning Creditor must be able to show that he or she has a claim against the Alleged Debtors. Being able to identify a Petitioning Creditor, and being able to show that such person actually possesses a claim against an Alleged Debtor are critical, threshold requirements that must be demonstrated before an Involuntary Petition may be deemed valid. Here, the electronic signatures of the Petitioning Creditors have not been validated by provision of actual "wet signatures," thereby shedding doubt on the validity of the Involuntary Petition. The signatures of persons characterized as Petitioning Creditors on the Involuntary Petition have only been provided in electronic signature format, do not comport with the legal requirements of the Electronic Signatures in Global and National Commerce Act ("ESIGN" or 15 U.S.C. §§ 7001 *et seq*.), the Local Civil Rules of the Northern District of Texas, or General Orders 2020-07, 2020-09, and 2020-15 issued by this Court, and cannot be used to verify the identity (or even the existence) of such persons.

#### i. *The Petitioners Have Failed to Abide by This Court's Multiple Orders Requiring the Production of "Wet Signatures"*

By this Court's own order, the Petitioners are mandated to provide the Alleged Debtors with actual wet signatures of all Petitioners. Failure to do so constitutes failure to meet the threshold requirements for litigating in this Court. Pursuant to this Court's order, to the extent that any Petitioner's wet signature is not provided, that Petitioner should be dismissed from this suit.

This Court has also directed litigants broadly, via Local Rule 11.1 and three General Orders, namely 2020-07, 2020-09, and 2020-15 of the importance and necessity of wet signature authorizations, stating that when a document is filed without the "original 'wet signature' in the attorney's possession," the filing constitutes the attorney's certification that he or she received authorization to file such document from the debtor (or in this case the Petitioning Creditor) and that at the time of filing, the attorney possessed an electronic image of the signature page received. These General Orders also require that the attorney file a certification within thirty (30) days of filing the electronically signed document that he or she has received and is maintaining the debtor's (or again, the Petitioning Creditor's) *original "wet signature."*

The issue has been deemed by this Court as dispositive in other cases, including earlier this year, in *In re Santos*. No. 19-33256-SGJ (N.D. Tex., Dall. Div., March 17, 2020). In that case, a serial bankruptcy filer was barred from filing another Chapter 13 case for 180 days. To get around this limit, he schemed with his attorney, Mr. Le, to file for bankruptcy in his ex-wife's name. Mr. Le never received wet signature authorization from the ex-wife to file for bankruptcy in her name, yet represented to the court that he had. This Court stressed throughout the opinion that Mr. Le's actions amounted to forging the ex-wife's signatures and violated both court statutes and rules of professional conduct. The case was dismissed and the attorney was sanctioned.

Other jurisdictions have held similarly. In *In re Stromberg*, the neighboring Bankruptcy Court for the Southern District of Texas (Houston Division) stated that "there are no circumstances that would ever justify an attorney filing a petition … without first obtaining the debtor's signature, regardless of how urgent the need may appear to be. … Without the debtor's signature to verify the information … the factual contentions have no evidentiary support." 487 B.R. 775 (Bankr. S. D. Tex., 2013). The court concluded that the electronic filing of a document that purports to have

the debtor's signature but, that is not, in fact, signed by the debtor, "is no different than physically forging the debtor's signature on a paper document." *Id.* at 808. ("[M]ultiple bankruptcy courts have found that 'electronically filing a document bearing an electronic signature that was not actually or validly signed' constitutes a forgery amounting to a Rule 9011 violation.").

Here, the Petitioning Creditors' legal counsel has filed the Involuntary Petitions with this Court to initiate the instant proceedings, and by so doing has certified it to be "properly signed" pursuant to Local Civil Rule 11.1(c). However, Petitioning Creditors' counsel has failed to submit any documentation permitted or required by this Court (i.e. a scanned image of each Petitioning Creditor's hand-written "wet signature" either in Hanyu Pinyin or in Chinese characters), that certifies or verifies the electronic signatures of each supposed Petitioning Creditor in accordance with the Court's order in this case, Local Civil Rule 11.1(d)(1), and this Court's General Orders 2020-07, 2020-09, and 2020-15. In fact, we know that at the time of the filing of the Petitions counsel did not have wet signatures. Accordingly, Petitioning Creditors' counsel has not met the minimum threshold for litigating in this Court, and the matter should be dismissed.

ii. *The Petitioners Have Not Satisfied ESIGN Standards for Electronic Signature Confirmation*

To the extent that this Court will accept non-"wet" digital signatures as confirmation of identity and authorization, the signatures provided by Petitioners do not comport with the legal requirements of the Electronic Signatures in Global and National Commerce Act ("ESIGN" or 15 U.S.C. §§ 7001 *et seq*.). ESIGN generally states that a signature may not be denied legal effect, validity, or enforceability solely because it is in electronic form. 15 U.S.C. § 7001(a)(1). However, a specific exception to this rule encompasses "official court documents (including briefs, pleadings, and other writings) required to be executed in connection with court proceedings." 15 U.S.C. § 7003(b)(1). Such pleadings would extend to an Involuntary Petition. *See, e.g.*, *In re*

*Mayfield*, Case No. 16-22134-D-7 (Bankr. E.D. Cal. Jul. 15, 2016). Further, DocuSign provides authorization information to assist in meeting ESIGN standards, but the Petitioning Creditors' counsel has failed to produce such discoverable information. Accordingly, the matters should be dismissed.

iii. *The Petitioners Have Not Satisfied Chinese Legal Standards for Electronic Signature Confirmation*

Moreover, although Chinese legal standards are only persuasive to this Court, the Petitioners have also failed to conform to the standards defined by Chinese law for acceptable electronic signature authorization. China requires electronic signatures to be verified by provision of "(1) the name of the electronic verification service; (2) the name of the certificate holder; (3) the serial number of the certificate; (4) the term of validity for the certificate; (5) the validation data of the electronic signature of the certificate holder; (6) the electronic signature of the electronic verification service; and (7) other items as prescribed by the department in charge of the information industry under the State Council." See Electronic Signature Law of the People's Republic of China of April 1, 2005, art. 21, attached hereto as **Exhibit B**. Therefore, it is clear that the Petitioning Creditors, who are all Chinese nationals, recognize the necessity and importance in providing signed authorizations. The failure to do so constitutes grounds for dismissal.

B. *All Discovery on Non-Dispositive Issues Should Be Stayed*

A protective order staying discovery is warranted and necessary because the Petitioning Creditors have not met the threshold requirements for bringing a claim into this Court, and because dispositive motions, including this Motion and the Alleged Debtors' Motion to Dismiss, are pending before this Court. A stay will prevent the Petitioners from using underhanded tactics to gain an unfair advantage in related (and superseding) Texas state court litigation, and will likely eliminate costly and unnecessary discovery.

Rule 26 of the Federal Rules of Civil Procedure gives this Court broad discretion to issue necessary orders to protect the parties and to control the discovery process. Rule 26(c) provides:

> Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions; including a designation of the time or place ... .

A court's inherent power to control discovery in a suit pending before it has been recognized by the United States Supreme Court as well as the Fifth Circuit. *Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635 (1979) ("[J]udges should not hesitate to exercise appropriate control over the discovery process."); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); see also *Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987).

In determining whether to stay discovery, courts look to whether a "threshold" or "preliminary" issue is at the heart of the dispositive motion, such as when jurisdiction, venue, standing, or immunity are preliminary issues. *See White v. Spikes*, No. 3:14-cv-389-M-BN, at *4 (N.D. Tex. Mar. 4, 2015); *Tamburo v. Dworkin*, No. 04 C 3317, 2010 WL 4867346, at *1 (N.D. Ill. Nov. 17, 2010) (*citing U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79– 80 (1988)); *Twin City Fire Ins. Co. v. Emp'rs Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989). Where these threshold issues are part of the motion to dismiss, courts apply more scrutiny and give greater weight to the concern that discovery burdens would ultimately prove unnecessary. *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997) (holding that a threshold showing of jurisdiction is consistent with the district court's obligation to control discovery).

Also, because these threshold issues are seen as prerequisites to reaching the merits, courts are more likely to stay discovery because discovery is primarily geared toward the merits of the case. To the extent that threshold issues require discovery before they can be decided, courts can and do limit discovery to only those threshold issues in order to carefully manage the process and decide the threshold matters without expending resources on merits discovery until it will clearly be relevant. *See, e.g.*, *Spikes*, No. 3:14-cv-389-M-BN, at *4 (citing *Enplanar, Inc. v. Marsh*, 25 F.3d 1043, 1994 WL 261088, at *2 (5th Cir. June 2, 1994)); *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (holding that the court has discretion in type and amount of discovery permitted).

Although a pending dispositive motion does not automatically stay discovery, courts have found them appropriate to protect litigants from costly discovery which may ultimately prove unnecessary. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (affirming discovery stay because it would "further the goal of efficiency for the courts and the litigants"). Thus, if the motion is granted, discovery on some or all of the claims can be avoided, conserving limited judicial resources and saving the parties time and money. *See, e.g. Chudasama v. Mazda Motor Corp.*, 123 F.3d at 1368 ("If the district court dismisses a non-meritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided."); *cf. Followell v. Mills*, No. 05-2423, 2006 WL 889395, at *5 (W.D. Tenn. Mar. 31, 2006) ("If the motion is granted, the issue of discovery is moot. If the motion is denied, the protective order will be dissolved."); *In re Harrah's Entertainment, Inc. Sec. Litig*, No. 95-3925, 1997 WL 40640, at *2 (E.D. La. Feb. 3, 1997) (Clement, J.) (issuing protective order because "should [defendants] prevail on their motions to dismiss, no discovery would be necessary and any production of

documents would have been a useless and wasteful effort. Rule 26 authorizes the Court to avoid such needless expense.") (citing *Petrus*, 833 F.2d at 583).

Here, the Petitioning Creditors have not yet established through valid, authenticated wet signatures that their petitions are validly in this court. Accordingly, the Petitioning Creditors have not established that they have a right to discovery. Moreover, because this and other dispositive motions are currently pending before this Court, a stay should be imposed until the resolution of such threshold matters.

C. *The Hearing on This Motion Should be Heard on the Same Date as the Petitioning Creditors' Motions Hearing.*

A hearing is currently scheduled for July 31, 2020 for consideration of Petitioning Creditor's pending Motion to Compel Discovery. The Alleged Debtors respectfully request that this Motion be heard at that time. Considering that the Alleged Debtors are seeking a stay of discovery and the Petitioning Creditors are seeking to compel the same, the issues are interrelated and resolution of all issues would serve judicial economy and prevent conflicting decisions on related matters. Indeed, the Court should hear argument on this Motion before the Creditors' Motion to Compel, as a decision to stay discovery as requested herein will render that Motion moot.

WHEREFORE PREMISES CONSIDERED, Alleged Debtors respectfully request that the Court enter an order granting this Motion and:

a) finding and concluding that Petitioning Creditors should be compelled to provide documentary evidence permitting verification of identity and/or existence of the electronic signatories to the Involuntary Bankruptcy in accordance with Local Civil Rule 11.1; and

b) staying all discovery on non-dispositive issues; or, in the alternative

c) finding and concluding that the Involuntary Petition should be deemed invalid for lack of verified electronic signatures as required pursuant to Local Civil Rule 11.1; and

d) awarding attorney's fees and costs; and

e) providing Defendants with such other and further relief to which they may be justly entitled.

Dated: July 27, 2020

Respectfully submitted,

**Joyce W. Lindauer Attorney, PLLC**
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034

/s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
joyce@joycelindauer.com

Guy H. Holman
State Bar No. 24095171
guy@joycelindauer.com

Paul B. Geilich
State Bar No. 07792500
paul@joycelindauer.com

*Attorneys for Alleged Debtors*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon all counsel of record on this the 27th day of July 2020, via email pursuant to the Court's CM/ECF system.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

# EXHIBIT "A"

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Aiguo Luo | | DocuSigned by: Aiguo Luo E80095162CD7480... Aiguo Luo 3/22/2020 | DocuSigned by: Aiguo Luo 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Luo Aiguo E80095162CD7489... 12/4/2018 |
| Chao Xu | | DocuSigned by: Xu Chao 015D7F42D0394A4... Xu Chao CHAO XU | DocuSigned by: Xu Chao 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Xu Chao 015D7F42D0394A4... 12/11/2018 |
| Chenchen Jiang | | Irvine, CA 92612 DocuSigned by: Chenchen Jiang Chenchen Jiang 3/21/2020 | DocuSigned by: Chenchen Jiang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Chenchen Jiang 46B24A454B1C44B... Jiang Chenchen |
| Cunxiang Ji - Wall007 | 纪存祥 | Executed on 3/21/2020 MM / DD / YYYY 6/18/2020 DocuSigned by: Cunxiang Ji Cunxiang Ji Signature of petitioner or representative, including representative's title | DocuSigned by: Cunxiang Ji 68ED39D16CF8498... | "LENDER" By: Cunxiang Ji |
| Cunxiang Ji - Wall011 | 纪存祥 | District, Beijing, China DocuSigned by: Cunxiang Ji Cunxiang Ji 3/21/2020 6/18/2020 | DocuSigned by: Cunxiang Ji 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Ji Cunxiang Ji Cunxiang |
| Di Tang - WALL016 | [signature] | Chaoyang District, Beijing, China DocuSigned by: [signature] 1B99C82DCCFA404... [signature] 3/30/2020 | | "CO-LENDER" DocuSigned by: [signature] 1B99C82DCCFA404... 9/22/2018 |
| Di Tang - WALL017 | [signature] | Executed on 3/31/2020 MM / DD / YYYY DocuSigned by: Di Tang [signature] Signature of petitioner or representative, including representative's title | DocuSigned by: Di Tang 68ED39D16CF8498... 1B99C82DCCFA404... 1/23/2019 | "CO-LENDER" DocuSigned by: [signature] 1B99C82DCCFA404... 1/23/2019 |
| Fang Ding | | DocuSigned by: Ding Fang 3FAD10B850E047D... Fang Ding 3/22/2020 | DocuSigned by: Ding Fang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Ding Fang 3FAD10B850E047D... 12/15/2018 |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Feng Yan |  | Pudong, Shanghai, China<br>X DocuSigned by: Feng Yan 7055BD38054D45D Feng Yan 3/23/2020 | DocuSigned by: Feng Yan 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: 7055BD38054D45D<br>Yan Feng |
| Fuqing Chen |  | Beijing, China<br>X DocuSigned by: FUQING CHEN 1EFB359D25F6474... 3/23/2020 '020 | DocuSigned by: FUQING CHEN 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: FUQING CHEN 1EFB359D25F6474 11/29/2018 |
| Guoqin Zhou |  | | DocuSigned by: Guoqin Zhou 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Guoqin Zhou 4ADEA6E85B57429 11/6/2018 |
| Hanjiang Fu |  | Zhejiang Province, China<br>X DocuSigned by: Hanjiang Fu FDB3A8A52EEC4C0... HanJiang Fu 3/22/2020 | DocuSigned by: Fu Hanjiang 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Fu Hanjiang FDB3A8A52EEC4C0 12/19/2018 |
| Heng Zhang - WALL009 | | X DocuSigned by: Heng Zhang 0D9EFF2ABD7948B... Heng Zhang 21/2020<br>Also see Docusign from Verification of Discovery:<br>Heng Zhang<br>Heng Zhang | DocuSigned by: Heng Zhang 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Zhang Heng 0D9EFF2ABD7948B...<br>Zhang Heng |
| Heng Zhang - WALL012 | | X DocuSigned by: Heng Zhang 0D9EFF2ABD7948B... Heng Zhang 21/2020 020<br>Also see Docusign from Verification of Discovery:<br>Heng Zhang<br>Heng Zhang | DocuSigned by: Zhang Heng 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Zhang Heng 0D9EFF2ABD7948B...<br>Zhang Heng |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Hong Guo | | DocuSigned by: Guo Hong X Guo Hong 3/23/2020 | DocuSigned by: Guo Hong 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Guo Hong E3A17D1C3F7C415... Guo Hong |
| Jialin Hu | | DocuSigned by: X Hu Jialin C875CF88E31142C... Hu Jialin 3/23/2020 | DocuSigned by: Hu Jialin 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Hu Jialin C875CF88E31142C... 1/22/2019 |
| Jiancheng Chen | | DocuSigned by: X Jiancheng Chen 3/23/2020 X jianchengchen | DocuSigned by: Jiancheng Chen 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Chen E89B237DA0E7479... Chen Jiancheng |
| Jiaxiang Lu | | DocuSigned by: X Jiaxiang Lu Lu jiaxiang 3/21/2020 | DocuSigned by: Lu Jiaxing 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Lu Jiaxiang E3A17D1C3F7C415... 2/1/201 |
| Jin Wang - WALL007 | | Executed on 4/2/2020 MM / DD / YYYY DocuSigned by: X Wang Jin Jin Wang Signature of petitioner or representative, including representative's title | DocuSigned by: Wang Jin 68ED39D16CF8498... | "LENDER" By: DocuSigned by: Wang Jin |
| Jin Wang - WALL009 | | Executed on 4/2/2020 MM / DD / YYYY DocuSigned by: X Wang Jin Jin Wang Signature of petitioner or representative, including representative's title | DocuSigned by: Wang Jin 68ED39D16CF8498... | DocuSigned by: Wang Jin Wang Jin |
| Jingqiu Tang | | DocuSigned by: X Jingqiu Tang Jingqiu Tang 3/21/2020 | DocuSigned by: Jingqiu Tang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Tang Jingqiu 9/24/2018 |
| Jinzhe Wu | | DocuSigned by: X Jinzhe Wu 3/21/2020 Jinzhe Wu | | "CO-LENDER" DocuSigned by: Wu Jinzhe Wu Jinzhe |
| Jun Li | | Executed on 3/21/2020 MM / DD / YYYY DocuSigned by: X Li Jun LI Jun Signature of petitioner or representative, including representative's title | | "LENDER" By: 李军 LI JUN 2017年2月28日 |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Jun Wang | | X DocuSigned by: Jun Wang E631C7366785451... Jun Wang 3/23/2020 | DocuSigned by: Wang Jun 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Wang Jun 569106D448FB466... 9/29/2018 |
| Jun Zeng | 曾军 | X DocuSigned by: Zeng Jun 863965F351CA495... Zeng Jun 3/24/2020 | DocuSigned by: Zeng Jun 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Zeng Jun 863965F351CA495 |
| Kai Tian | 田凯 | X DocuSigned by: kai Tian 31697F8875F34C4... Kai tian 3/24/2020 | DocuSigned by: kai Tian 68ED39D16CF8498... | -By: DocuSigned by: Tian kai 31697F8875F34C4... |
| Kangying Mao | 毛康瑛 | X DocuSigned by: Mao kangying 8B77075A6CAF44A... Mao Kangying 3/31/2020 | DocuSigned by: Mao kangying 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Mao kangying 8B77075A6CAF44A... Mao Kangying |
| Kui Wang | | Xicheng District, Beijing, China X DocuSigned by: wang Kui 18A3C786642948A... wang Kui 3/22/2020 | | "CO-LENDER" DocuSigned by: 王葵 18A3C786642948A |
| Lan Ji | | X DocuSigned by: 86D1444E84AE4A8... 3/20/2020 | | "CO-LENDER" DocuSigned by: J L 86D1444E84AE4A8... Ji Lan |
| Li Jiang - Wall011 | 姜丽 | Executed on 3/21/2020 MM / DD / YYYY X DocuSigned by: li jiang 213B9409FBED46E... Li Jiang Signature of petitioner or representative, including representative's title | DocuSigned by: li jiang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Jiang li 213B9409FBED46E... Jiang Li |
| Li Jiang - Wall012 | 姜丽 | Executed on 3/21/2020 MM / DD / YYYY X DocuSigned by: li jiang 213B9409FBED46E... Li Jiang Signature of petitioner or representative, including representative's title | DocuSigned by: li jiang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Jiang li 213B9409FBED46E... Jiang Li |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Li Jiang - Wall016 | 姜丽 | Executed on 3/21/2020 MM / DD / YYYY<br>DocuSigned by: Li Jiang 213B9409FBED46E... x Li jiang<br>Signature of petitioner or representative, including representat | DocuSigned by: Li Jiang 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: Jiang Li 213B9409FBED46E... |
| Lin Gao | | DocuSigned by: GAO LIN AE14B1521DE74AE... x GAO LIN 3/23/2020 | DocuSigned by: GAO LIN 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: GAO LIN AE14B1521DE74AE...<br>GAO LIN |
| Lin Li | | Executed on 3/21/2020 MM / DD / YYYY<br>DocuSigned by: Li Lin DDA0A5F0CC8B429... x Li Lin<br>Signature of petitioner or representative, including represent | DocuSigned by: Li Lin 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: Li Lin DDA0A5F0CC8B429...<br>Li Lin |
| Lin Zhou - WALL007 | 周霖 | District, Shanghai, China<br>DocuSigned by: Lin Zhou x Lin Zhou 3/23/2020 | DocuSigned by: Lin Zhou 68ED39D16CF8498... | "LENDER"<br>By: DocuSigned by: Lynn Zhou 2A4A08F3E389470... |
| Lin Zhou - WALL009 | 周霖 | DocuSigned by: Lin Zhou 2A1A08F3E389470... x Lin Zhou 3/23/2020 | DocuSigned by: Lin Zhou 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: Lynn Zhou 2A4A08F3E389470...<br>Zhou Lin |
| Liying Yang | | Executed on 3/29/2020 MM / DD / YYYY<br>DocuSigned by: Liying Yang x Liying Yang<br>Signature of petitioner or representative, including representative's title | DocuSigned by: Yang Liying 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: Yang Liying 49CC57C7097743E...<br>Yang Liying |
| Mai Ye | | DocuSigned by: Mai Ye 361FA8EE16C842A... x Mai Ye 3/21/2020 | DocuSigned by: Mai Ye 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: Ye Mai 361FA8EE16C842A...<br>Ye Mai |
| Ou Jiang | 江鸥 | DocuSigned by: OU JIANG x OU JIANG 3/21/2020 | | "CO-LENDER"<br>DocuSigned by: Jiang Ou E70DFC2FD1FC4B4...<br>Jiang Ou |
| Pei Guan - WALL009 | | DocuSigned by: Pei Guan x Guan Pei 3/22/2020 | DocuSigned by: Pei Guan 68ED39D16CF8498... | "CO-LENDER"<br>DocuSigned by: Guan Pei 48E869D93483444...<br>Guan Pei |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Pei Guan - WALL016 | | X DocuSigned by: Pei Guan 3/22/2020 | DocuSigned by: Pei Guan 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Guan Pei 48F869D934834A4... |
| Peng Guo | | World Trade Center, China X DocuSigned by: Peng Guo Peng Guo 3/23/2020 | DocuSigned by: Peng Guo 68ED39D16CF8498... | "LENDER" -By: Guo Peng |
| Pengfei Dong | | X DocuSigned by: Pengfei Dong 2CD990B3C180443... Pengfei Dong 3/27/2020 | DocuSigned by: Pengfei Dong 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Dong Pengfei 2CD990B3C180443... Dong Pengfei |
| Qiao Qin | 秦乔 | X DocuSigned by: Qin Qiao FA12B66FCD8F4E0... Qin Qiao 3/22/2020 | | "CO-LENDER" DocuSigned by: Qin Qiao FA12B66FCD8F4E0... Qin Qiao |
| Qin Chu - WALL016 | | Executed on 3/23/2020 MM / DD / YYYY X DocuSigned by: Qin Chu Qin Chu Signature of petitioner or representative, including representative's title | DocuSigned by: Qin Chu 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Chu Qin C0E7ADA1861E41E... 9/19/2018 |
| Qin Chu - WALL017 | | X DocuSigned by: Qin Chu C0E7ADA1861E41E... Qin Chu 3/23/2020 | DocuSigned by: Qin Chu 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Chu Qin C0E7ADA1861E41E... 12/5/2018 |
| Qiuying Li | | Street, Xicheng District, Beijing, China X DocuSigned by: Qiuying Li 53A143F779624F2... Qiuying Li 3/24/2020 | DocuSigned by: Qiuying Li 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Li Qiuying 53A143F779624F2... Li Qiuying |
| Qu Chen | 陈曲 | X DocuSigned by: QU CHEN 569106D448FB466... Qu CHEN 3/21/2020 | DocuSigned by: QU CHEN 68ED39D16CF8498... | "LENDER" -By: DocuSigned by: QU CHEN 569106D448FB466... |
| Rufeng Ding | 持照人签名 / Bearer's signature 丁汝风 | X DocuSigned by: Rufeng Ding Rufeng Ding 3/20/2020 | | "CO-LENDER" DocuSigned by: Ding Rufeng 9290C0274FBF418... Ding Rufeng |
| Ruinian Wu | 吴瑞年 | X DocuSigned by: Wu Ruinian D1F825843B3A468... Wu Ruinian 3/22/2020 | DocuSigned by: Wu Ruinian 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Wu Ruinian D1F825843B3A468... Wu Ruinian |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Sicheng Zhan | | X DocuSigned by: Sicheng Zhan DCF03F72A019452 | DocuSigned by: Sicheng Zhan 68ED39D16CF8498... | DocuSigned by: Sicheng Zhan DCF03F72A019452 SICHENG ZHAN |
| Tianqing Song - Wall010 |  | X TBS Song tianqing | DocuSigned by: Song Tianqing 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Song Tianqing 8F13DECE00B248F... Song Tianqing |
| Tianqing Song - WALL011 |  | X DocuSigned by: Song Tianqing 8F13DECE00B248F... 4/2/2020 Song tianqing | DocuSigned by: Song Tianqing 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Song Tianqing 8F13DECE00B248F... Song Tianqing |
| Wai Ying | | X DocuSigned by: Wai Ying 39C3AB4D7E6547A... Wai Ying 3/23/2020 | DocuSigned by: Wai Ying 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Ying Wai 39C3AB4D7E6547A... Ying Wai |
| Wanwan Li | | X Wan Wan Li | DocuSigned by: Wanwan Li 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Li Wan wan 999DB8CDBC184CA... Li Wanwan |
| Weijia Kong | | X DocuSigned by: Weijia Kong 213B8409FBFD40E... Weijia kong 3/21/2020 | DocuSigned by: Weijia Kong 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Kong Weijia 213B8409FBFD40E... Kong Weijia |
| Weisi Wang |  | MM / DD / YYYY X DocuSigned by: Wang Weisi Wang Weisi Signature of petitioner or representative, including repre | DocuSigned by: Wang Weisi 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Wang Weisi 5572A02925E4438... Wang Weisi |
| Wenjuan Yin |  | X DocuSigned by: Wenjuan Yin 131CE6EEF7B4477... Wenjuan Yin 3/21/2020 | DocuSigned by: Wenjuan Yin 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Yin Wenjuan 131CE6EEF7B4477... Yin Wenjuan |
| Wenjun Wang | | MM / DD / YYYY X DocuSigned by: Wenjun Wang Wenjun, Wang Signature of petitioner or representative, including representative's title | DocuSigned by: Wenjun Wang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Wenjun Wang Wenjun Wang |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Xiangdong Zhu | | X DocuSigned by: 8AE5B9D71B0F4AF... 22/2020<br>WALL017 LLC | | “CO-LENDER”<br>DocuSigned by:<br>8AE5B9D71B0F4AF...<br>Zhu Xiangdong |
| Xiaodong Hao | | X DocuSigned by: AE4856768D404AC... 3/21/2020<br>218154102v1 | DocuSigned by: Hao Xiaodong 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Hao Xiaodong<br>AE4856768D404AC...<br>Hao Xiaodong |
| Xiaomin Fan | | X DocuSigned by: Xiaomin Fan<br>Signature of petitioner or representative, including representati | DocuSigned by: Xiaomin Fan 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Fan Xiaomin 12/27/2018 |
| Xiaoquan Dai | | Executed on MM / DD / YYYY<br>X<br>Signature of petitioner or representative, including representative's title | DocuSigned by: Xiaoquan Dai 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Dai Xiaoquan<br>E423342E1F4347A...<br>Dai Xiaoquan |
| Xuegeng Gong | | MM / DD / YYYY<br>X Xuegeng Gong<br>Signature of petitioner or representative, including representative's title | DocuSigned by: Xugeng Gong 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Gong Xuegeng<br>Gong Xuegeng |
| Yadan Liu | | Haidian District, China<br>X DocuSigned by: 3/21/2020 | DocuSigned by: Yadan Liu 68ED39D16CF8498... | “CO-LENDER”<br>DocuSigned by: Liu Yadan<br>0CF9D3F7122B458...<br>Liu Yadan |
| Yan Zhang | | 3/21/2020<br>“CO-LENDER”<br>DocuSigned by: Zhang Yan<br>Zhang Yan | DocuSigned by: Zhang Yan 68ED39D16CF8498... | |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Yi Tang | | X DocuSigned by: Tang Yi 205EE92CBF0D41C... Tang Yi 3/21/2020 | DocuSigned by: Tang Yi 68ED39D16CF8498... | “CO-LENDER” DocuSigned by: Tang Yi 205EE92CBF0D41C... Tang Yi |
| Yijing Wu - WALL009 | | X DocuSigned by: Yijing Wu 4018D14BC4804EC... Yijing Wu Signature of petitioner or representative, including representative's title | DocuSigned by: Yijing Wu 68ED39D16CF8498... | “CO-LENDER” DocuSigned by: Yijing Wu 4018D14BC4804EC... Wu Yijing |
| Yijing Wu - WALL016 | | Executed on 4/2/2020 MM / DD / YYYY X DocuSigned by: Yijing Wu 4018D14BC4804EC... Yijing Wu Signature of petitioner or representative, including representative's title | DocuSigned by: Yijing Wu 68ED39D16CF8498... |  |
| Yijing Wu - WALL017 | | X DocuSigned by: A00818CDE906445... Yijing Wu 4/6/2020 | DocuSigned by: Wu Yijing 68ED39D16CF8498... | “CO-LENDER” DocuSigned by: Wu Yijing 0D9EFF2ABD7948B... |
| Ying Zhang | | X DocuSigned by: Zhang Ying B5A7D0443FCE4B1... Zhang Ying 3/23/2020 218154667v2 Zhang Ying | DocuSigned by: Zhang Ying 68ED39D16CF8498... | “CO-LENDER” DocuSigned by: Zhang Ying B5A7D0443FCE4B1... Zhang Ying |
| Ying Zhou | 周霖 | X DocuSigned by: Ying Zhou Zhou Ying Signature of petitioner or representative, including representative's title | DocuSigned by: Ying Zhou 68ED39D16CF8498... | “CO-LENDER” DocuSigned by: Zhou Ying C45482F8B0B7423... Zhou Ying |
| Yuan Yuan | | X DocuSigned by: Yuan Yuan ECC429B8D08D47A... 3/26/2020 Yuan Yuan | | “CO-LENDER” DocuSigned by: Yuan Yuan ECC429B8D08D47A... 12/12/2018 |
| Yue Xu | | China X DocuSigned by: Yue Xu Yue Xu 3/22/2020 | DocuSigned by: Yue Xu 68ED39D16CF8498... | “CO-LENDER” DocuSigned by: Xu Yue 6B10F269F1184F9... Xu Yue |

| Petitioning Creditor - Full Name | Passport | Petition | Standard Docusign Signature Used (if any) | Loan Agreement - Signature page |
|---|---|---|---|---|
| Yue Zhang - Wall011 | 张玥 | DocuSigned by: X Yue Zhang 0CBE0AE2950E48F... Yue Zhang 3/21/2020 | DocuSigned by: Yue Zhang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: 张玥 0CBE0AE2950E48F... Zhang Yue |
| Yue Zhang - WALL016 | 张玥 | DocuSigned by: X Yue Zhang 0CBE0AE2950E48F... Yue Zhang 3/21/2020 Name and mailing address of petitioner | DocuSigned by: Yue Zhang 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Zhang Yue 0CBE0AE2950E48F... |
| Yulan Chen | | DocuSigned by: X Yulan Chen Yulan Chen 3/23/2020 | DocuSigned by: Yulan Chen 68ED39D16CF8498... | "CO-LENDER" DocuSigned by: Chen Yulan 9/19/2018 |
| Yunding Kang | | Executed on 3/23/2020 MM / DD / YYYY DocuSigned by: X Yunding kang Yunding Kang Signature of petitioner or representative, including representative's title | DocuSigned by: Yunding kang 68ED39D16CF8498... | "LENDER" By: Kang Yunding |

# EXHIBIT “B”

# Electronic Signature Law of the People's Republic of China

**Full text**

Contents

Chapter I General Provisions

Chapter II Data Message

Chapter III Electronic Signature and Certification

Chapter IV Legal Responsibility

Chapter V Supplementary Provisions

Chapter I General Provisions

Article 1

This Law is enacted in order to standardize acts of electronic signature, validate the legal effect of electronic signature, and safeguard the lawful rights and interests of the parties concerned.

Article 2

For the purposes of this Law, electronic signature means the data in electronic form contained in and attached to a data message to be used for identifying the identity of the signatory and for showing that the signatory recognizes what is in the message.

The data message as mentioned in this Law means the information generated, dispatched, received or stored by electronic, optical, magnetic or similar means.

Article 3

The parties concerned may agree to use or not to use electronic signature or data message in such documentations as contracts and other documents, receipts and vouchers in civil activities.

The legal effect of a document, with regard to which the parties concerned have agreed to use electronic signature or data message, shall not be denied only because the form of electronic signature or data message is adopted.

The provisions of the preceding paragraphs shall not be applicable to the following documents:

(1) documents relating to such personal relations as marriage, adoption and succession;

(2) documents relating to the transfer of the rights and interests residing in such real estate as land and houses;

(3) documents relating to termination of such public utility services as water supply, heat supply, gas supply and power supply; and

(4) other circumstances where electronic documentation is not applicable, as provided for by laws and administrative regulations.

Chapter II Data Message

Article 4

A data message, which can give visible expression to the contents carried and can readily be picked up for reference, shall be deemed to be the written form which conforms to the requirements of laws and regulations.

Article 5

Data messages that meet the following conditions shall be deemed to satisfy the requirements for the form of the original copies as provided for by laws and regulations:

(1) messages that can give effective expression to the contents carried and can readily be picked up for reference; and

(2) messages that can unfailingly guarantee that the contents remain complete and unaltered from the time when they are finally generated. And the completeness of the data messages shall not be affected when endorsements are added to the data messages or when their forms are altered in the process of data interchange, storage and display.

Article 6

Data messages that meet the following conditions shall be deemed to satisfy the requirements for document preservation as provided for by laws and regulations:

(1) messages that can give effective expression to the contents carried and can readily be picked up for reference;

(2) the format of the data messages is the same as the format when they are generated, dispatched or

received, or although the format is not the same, the contents originally generated, dispatched or received can accurately be expressed; and

(3) messages the addressers and receivers of which and the time of their dispatch and receipt can be identified.

Article 7

No data messages to be used as evidence shall be rejected simply because they are generated, dispatched, received or stored by electronic, optical, magnetic or similar means.

Article 8

The following factors shall be taken into consideration when the truthfulness of data messages to be used as evidence is examined:

(1) the reliability of the methods used for generating, storing or transmitting the data messages;

(2) the reliability of the methods used for keeping the completeness of the contents;

(3) the reliability of the methods for distinguishing the addressers; and

(4) other relevant factors.

Article 9

Any of the following data messages shall be deemed to be dispatched by the addresser:

(1) the data message is dispatched with authorization of the addresser;

(2) the data message is dispatched automatically by the information system of the addresser; and

(3) verification of the data message made by the receiver in accordance with the method recognized by the addresser proves that the message is identical with the one dispatched.

If the parties concerned have agreed otherwise with regard to the matters specified in the preceding paragraph, such agreement shall be complied with.

Article 10

If confirmation of receipt of a data message is required pursuant to the provisions of laws and administrative regulations or the agreement reached between the parties concerned, such receipt shall be confirmed. When the addresser receives the confirmation of the receipt sent by the receiver, the data

message shall be deemed to have been received.

Article 11

The time when a data message enters into a certain information system beyond the control of the addresser shall be deemed to be the time when the message is dispatched.

If a receiver designates a special system for receipt of a data message, the time when the message enters into the system as designated shall be deemed to be the time when the said message is received; and if no special system is designated, the first time when the data message enters into any systems of the receiver's shall be deemed to be the time when the message is received.

If the parties concerned have agreed otherwise on the time of dispatch or the time of receipt of data messages, such agreement shall be complied with.

Article 12

The principal business place of an addresser shall be the place of dispatch of data messages, and the principal business place of a receiver shall be the place of receipt of data messages. If there are no principal business places, their habitual residences shall be the places of dispatch or receipt.

If the parties concerned have agreed otherwise on the place of dispatch or the place of receipt of data messages, such agreement shall be complied with.

Chapter III Electronic Signature and Certification

Article 13

If an electronic signature concurrently meets the following conditions, it shall be deemed as a reliable electronic signature:

(1) when the creation data of the electronic signature are used for electronic signature, it exclusively belongs to an electronic signatory;

(2) when the signature is entered, its creation data are controlled only by the electronic signatory;

(3) after the signature is entered, any alteration made to the electronic signature can be detected; and

(4) after the signature is entered, any alteration made to the contents and form of a data message can be detected.

The parties concerned may also choose to use the electronic signatures which meet the conditions of

reliability they have agreed to.

Article 14

A reliable electronic signature shall have equal legal force with handwritten signature or the seal.

Article 15

An electronic signatory shall have the creation data of his electronic signature well preserved. When an electronic signatory learns that the creation data of his electronic signature have got lost or may have got lost, he shall make it known to all the parties concerned in time, and terminate the use of such data.

Article 16

If an electronic signature needs to be verified by a third party, the electronic verification service established according to law shall provide such service.

Article 17

An electronic verification service shall meet the following conditions:

(1) having the professional technicians and managerial personnel suited for provision of electronic verification services;

(2) having the funds and business places suited for provision of electronic verification services;

(3) having the technology and equipment complying with the safety standards of the State;

(4) having the certificates for the use of the codes approved by the code control institution of the State; and

(5) other conditions prescribed by laws and administrative regulations.

Article 18

A person that intends to engage in electronic verification service shall make an application to the department in charge of the information industry under the State Council and submits the materials proving fulfillment of the conditions as specified by Article 17 of this Law. Upon receiving the application, the department in charge of the information industry under the State Council shall examine it according to law and consult with the department in charge of commerce and other relevant departments under the State Council, before making a decision on whether to grant or deny approval within 45 days from the date it receives the application. If it grants approval, it shall issue the license of electronic verification;

and if it denies approval, it shall inform the applicant in writing of the fact and of the reasons why.

The applicant shall, upon the strength of the license of electronic verification, go through the formalities for enterprise registration at the administrative department for industry and commerce according to law.

The electronic verification service that has been qualified for verification shall, in accordance with the regulations of the department in charge of the information industry under the State Council, make public in the Internet such information as its name and the number of its license.

Article 19

The electronic verification service shall formulate and publish its rules for electronic verification, which are in conformity with the relevant regulations of the State, and submit them to the department in charge of the information industry under the State Council for the record.

The rules for electronic verification shall include the matters such as the scope of liability, the norms for operation and the protective measures for information safety.

Article 20

When an electronic signatory applies to an electronic verification service for the certificate of his electronic signature, he shall provide truthful, complete and accurate information.

Upon receiving the application for certificate of the electronic signature, the electronic verification service shall check the identity of the applicant and examine the relevant materials.

Article 21

The certificate of an electronic signature issued by the electronic verification service shall be accurate and devoid of error, and the following items shall clearly be stated therein:

(1) the name of the electronic verification service;

(2) the name of the certificate holder;

(3) the serial number of the certificate;

(4) the term of validity for the certificate;

(5) the validation data of the electronic signature of the certificate holder;

(6) the electronic signature of the electronic verification service; and

(7) other items as prescribed by the department in charge of the information industry under the State Council.

Article 22

An electronic verification service shall guarantee that the items in the certificate of an electronic signature are complete and accurate within the term of its validity, and guarantee the party relying on the electronic signature the ability to prove or to know the items stated in the certificate of the electronic signature and other relevant matters.

Article 23

If an electronic verification service intends to suspend or terminate the service, it shall, 90 days prior to the suspension or termination of service, notify the parties concerned of how to get continued services and of other relevant matters.

If an electronic verification service intends to suspend or terminate the service, it shall report to the department in charge of the information industry under the State Council 60 days prior to the suspension or termination of service, and shall make proper arrangements by negotiating with other electronic verification services on how to carry on its business.

If an electronic verification service fails to reach an agreement with other electronic verification services on matters of how to carry on its business, it shall apply to the department in charge of the information industry under the State Council for arranging other electronic verification services to carry on its business.

If the license of electronic verification of an electronic verification service is revoked according to law, its business shall be carried on in accordance with the regulations of the department in charge of the information industry under the State Council.

Article 24

An electronic verification service shall have the information relating to verification well preserved. The time limit for preservation of such information shall at least be five years after the certificate of the electronic signature ceases to be valid.

Article 25

The department in charge of the information industry under the State Council shall, in accordance with this Law, formulate the specific measures for administration of the electronic verification services and exercise supervision over the electronic verification services according to law.

Article 26

Upon examination and approval by the department in charge of the information industry under the State Council on the basis of relevant agreements or the principle of reciprocity, the certificates of electronic signatures issued by overseas electronic verification services outside of the territory of the People's Republic of China shall have equal legal force with the ones issued by the electronic verification services established in accordance with this Law.

Chapter IV Legal Responsibility

Article 27

An electronic signatory who, having learnt that the creation data of his electronic signature have got lost or might have got lost, fails to notify in time the parties concerned of the fact and to terminate the use of the same, who fails to provide the electronic verification service with truthful, complete and accurate information, or who makes other errors, thus causing losses to the party relying on the electronic signature and to the electronic verification service, shall bear the responsibility for compensation.

Article 28

Where an electronic signatory or the party relying on the electronic signature suffers losses due to engaging in civil activities on the basis of the electronic signature verified by an electronic verification service, and if the electronic verification service fails to prove that it is free from fault, the service shall bear the responsibility for compensation.

Article 29

Where a person provides electronic verification services without permission, the department in charge of the information industry under the State Council shall order him to desist from the illegal act; the unlawful gains, if any, shall be confiscated; if such gains exceed RMB 300,000 yuan, a fine of not less than one time but not more than three times the unlawful gains shall be imposed; and if there are no unlawful gains or the amount of such gains is less than 300,000 yuan, a fine of not less than 100,000 yuan but not more than 300,000 yuan shall be imposed.

Article 30

Where an electronic verification service that intends to suspend or terminate electronic verification services fails to report to the department in charge of the information industry under the State Council 60 days prior to the suspension or termination of service, the said department shall impose a fine of not less than 10,000 yuan but not more than 50,000 yuan on the person who is directly in charge of the service.

Article 31

Where an electronic verification service fails to observe the rules for verification, fails to have the information relating to verification well preserved, or commits other illegal acts, the department in charge of the information industry under the State Council shall order it to rectify within a time limit; if it fails to

comply at the expiration of the time limit, its electronic verification license shall be revoked, and the persons who are directly in charge of the service and the other persons who are directly responsible shall be prohibited from engaging in electronic verification services within the period of 10 years. If an electronic verification license is revoked, the fact shall be made known to the public and the administrative department for industry and commerce shall be informed of the same.

Article 32

Where a person counterfeits, copies or usurps the electronic signature of another person's, which constitutes a crime, his criminal responsibility shall be investigated according to law; and if losses are caused to another person, he shall bear civil responsibility according to law.

Article 33

Where a staff member of the department in charge of supervision and administration over the electronic verification industry in accordance with this Law fails to perform his duties of granting administrative license and exercising supervision and administration according to law, he shall be given an administrative sanction according to law; and if a crime is constituted, he shall be investigated for the criminal responsibility according to law.

Chapter V Supplementary Provisions

Article 34

The meanings of the following terms used in this Law are:

(1) the electronic signatory means a person who holds the creation data of an electronic signature and produces the electronic signature either in person or on behalf of the person he represents;

(2) the relying party on the electronic signature means the person who engages in relevant activities on the basis of his trust in the certificate of the electronic signature or the electronic signature;

(3) the certificate of the electronic signature means a data message or other electronic records that can prove the connection between the electronic signatory and the creation data of the electronic signature;

(4) the creation data of an electronic signature means such data as the characters and codes that are used in the course of the electronic signature and that reliably connects the electronic signature with the electronic signatory; and

(5) the validation data of an electronic signature means the data used for verifying the electronic signature, including the code, password, algorithm and public key.

Article 35

The State Council or the departments specified by the State Council may, in accordance with this Law, formulate specific measures for the use of the electronic signatures and data messages in administrative and other public activities.

Article 36

This Law shall go into effect as of April 1, 2005.