Joyce W. Lindauer
State Bar No. 21555700
Paul B. Geilich
State Bar No. 07792500
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
**ATTORNEYS FOR ALLEGED DEBTORS**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **In re:**<br><br>**WALL007, et al**<br><br>**Alleged Debtors.** | **Case No. 20-31131**<br>**Chapter 7** |

# ALLEGED DEBTORS' SECOND MOTION TO COMPEL DISCOVERY RESPONSES, FILED IN THE ALTERNATIVE TO ALLEGED DEBTORS' MOTION TO COMPEL PRODUCTION OF DOCUMENTARY EVIDENCE PERMITTING VERIFICATION OF ELECTRONIC SIGNATURES AND STAY ALL ADDITIONAL DISCOVERY OF NON-DISPOSITIVE ISSUES, OR IN THE ALTERNATIVE TO INVALIDATE THE INVOLUNTARY PETITION AND TO SCHEDULE HEARING IN CONJUNCTION WITH CREDITORS' MOTION TO COMPEL

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 ON OR BEFORE AUGUST 18, 2020, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COME NOW Alleged Debtors Wall007, et al., and file this their *Second Motion to Compel Discovery Responses Filed in the Alternative to Alleged Debtor's Motion to Compel Production of Documentary Evidence Permitting Verification of Electronic Signatures and Stay All Additional Discovery of Non-Dispositive Issues, or in the Alternative to Invalidate the Voluntary Petition and to Schedule Hearing in Conjunction with Creditors' Motion to Compel* (the "Motion"). The Alleged Creditors have also filed with this Court a *Motion to Compel Production of Documentary Evidence Permitting Verification of Electronic Signatures and Stay All Additional Discovery of Non-Dispositive Issues, or in the Alternative to Invalidate the Voluntary Petition and to Schedule Hearing in Conjunction with Creditors' Motion to Compel*. (Dkt. No. 101). In the event that this Court grants that motion and rules to stay discovery, the Alleged Creditors will withdraw this Motion for the time being. If that Motion is denied, the Alleged Debtors would respectfully show the Court as follows:

## I. JURISDICTION AND VENUE

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334, §157(a) and (b), and 11 U.S.C. §§ 101, et seq. Consideration of this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

### A. *The Underlying Lender Dispute*

The Alleged Debtors are several Texas limited liability companies formed to acquire land to construct a subdivision with the purpose of selling residential lots to home builders. The improvements to the acquired lands are intended to include the development of streets, water utilities, sewers, sidewalks, and residential lots.

The Alleged Debtors sought the assistance of Michael Fu ("Fu"), who was doing business as Silverland Financial Ltd. ("Silverland") and Platinum Investment Corporation ("PIC") (collectively, the "Fu Entities") to acquire capital for these construction projects. Fu represents himself and the Fu Entities as the designated agent of the Petitioners, who are Chinese nationals. Fu reportedly located the Petitioners, engaged them to provide co-lending through the Fu Entities via pooled loan agreements with the respective Alleged Debtors, and organized the transfer of all funds.

Essentially, the pooled loans were part of a single partnership among the Petitioners as Co-Lenders with Fu and/or the Fu Entities wherein he served as the designated agent who administered the pooled loan agreements on their collective behalf. As such, Fu and the Co-Lender Petitioners are a single alleged creditor entity, and are not separate entities. Fu is the real party-in-interest in this case and is using the Petitioners as his pawns in these proceedings. This was further verified in Fu's deposition.

When certain loan payments came due, Fu directed the Alleged Debtors to pay him directly on behalf of the Co-Lender Petitioners. Fu also held back monies from the Co-Lenders to offset fees he claimed he was owed. The Alleged Debtors had concerns that Fu was improperly taking a cut of the payments for himself. The Alleged Debtors believe that numerous of the financial practices of Fu, the Fu Entities, and the Petitioners were misleading, may have constituted fraud, and may have violated both U.S. and Chinese law. Based on their suspicions, the Alleged Debtors demanded to pay the Co-Lender Petitioners directly, rather than permit Fu to serve as an intermediary for the transfer of funds. Fu refused. Fu has testified he did not act as an agent for payments but the documentary proof indicates otherwise.

***The disagreement as to how and to whom the loans should be repaid is the primary underlying dispute with regard to this case***. The parties attempted to mediate the dispute – with Fu acting as the agent for the lenders in the mediation – but no resolution was reached.

B. *The State Court Action*

After the mediation failed, on November 15, 2019, the Fu Entities and a small handful of the Petitioners filed Cause No. DC-19-18361 in the District Court of Dallas County for the 44th Judicial District (the "State Court Case") as a debt collection action against the Alleged Debtors. ***The underlying subject matter of the instant bankruptcy proceedings served as the basis for the underlying claims in that legal matter as well***.

The Original Petition in the State Court Case consists of salacious and specious content, and was filed in an effort by Fu to shake the Alleged Debtors down and to cover for unrelated failed business ventures undertaken by the Fu Entities. In the Original Petition, Fu asserted entitlement to fees the Alleged Debtors did not owe, shared confidential information, spread false rumors and outright lies, and defamed the Alleged Debtors to other lenders in a collective and calculated effort to force the Alleged Debtors to agree to a grossly lopsided settlement.

The Alleged Debtors devoted substantial resources to litigating the State Court Case. In the State Court Case, the Alleged Debtors filed an answer, plea in abatement, motion to dismiss pursuant to Tex. R. Civ. P. 91(a), and an anti-SLAPP ("Strategic Lawsuit Against Public Participation") motion. Petitioners never responded to any of these pleadings.

C. *The Federal Involuntary Bankruptcy Action*

When the court in the State Court Case issued orders contrary to the interests of Fu and the Petitioners, they collectively engaged in a tactical pivot by filing the instant involuntary bankruptcy cases to apply the pressure of additional and superfluous litigation based on the same claims as those in the State Court Case. Despite having initiated the State Court Case themselves,

the Petitioners filed these duplicitous bankruptcy cases as a strong-arm litigation tactic. The Petitioners saw the move to Bankruptcy Court as a way to achieve a quicker collection result. Fu has funded the legal fees for filing the bankruptcy cases. Considering that the primary issue between the parties is a simple contractual dispute, the State Court forum was, and remains, a more appropriate forum to resolve all disputes between the Alleged Debtors and the Petitioners. To that end the Alleged Debtors have filed a motion to dismiss as well as a request to abstain from these proceedings.

On June 17, 2020, the Parties jointly filed a Joint Discovery Plan (Dkt. No. 72), wherein the parties agreed to complete service of discovery on or before July 6, 2020.

D. *The Discovery Dispute*

The Alleged Debtors assert that the Petitioners never tendered loaned amounts to the Alleged Debtors personally. As such they failed to comply with the loan agreements. Additionally, no promissory notes were executed as envisioned by the loan agreements. The Alleged Debtors believe that the financial practices of Fu, the Fu Entities, and the Petitioners were misleading, may have constituted fraud, and may have violated both U.S. and Chinese law. As such any debt owed to the Petitioners is in dispute.

The Alleged Debtors assert that Fu and/or the Fu Entities have endeavored to mislead the Alleged Debtors and the Petitioners, have breached obligations and agreements, and have interfered with the Alleged Debtors' performance of their obligations to tender payments to the Petitioners.

The Alleged Debtors assert that some or all of the Petitioners are (i) not voluntary participants in the instant Bankruptcy case; (ii) not aware that an involuntary petition was filed in their name; and/or (iii) not real persons.

As to each of these assertions, the Alleged Debtors must necessarily rely on the responses to discovery requests to determine the truth of each matter and must use such in the development of its defense to Petitioners case in chief against the Alleged Debtors.

On July 5, 2020, Petitioners served their discovery responses. However, even after service of the responses provided, Alleged Debtors are still no closer to determining the facts that would enable them to answer questions necessary for them to prepare a proper response to allegations leveled by the Petitioners in this case. The responses provided have served as an exercise in evasion and obfuscation in direct contravention of FED R. CIV. P. 37(a)(3)(B) and (a)(4).

Whenever the Petitioners direct the Alleged Debtors to any information or communication, the Petitioners object to such for any number of general objections and then ultimately either refuse to provide such document or information, or refer the Alleged Debtor to documents already produced without any specificity as to which document to refer. In essence, the Petitioners have generally failed to respond to the Alleged Debtors' discovery requests.

As for the Interrogatories, the Petitioners responses were generally vague and without elaboration when any response was actually given. When asked about legal representation, including about payment of fees, to determine if individual Petitioners had actually engaged legal counsel, and to determine who those persons were, they refused to respond. The same is true when asked about the identity of who delivered, and how they delivered, the draft of the Involuntary Petition to which they were to consent and sign. In each case, the Petitioners cited that such Interrogatories were irrelevant, ambiguous, unduly burdensome, privileged, and/or required them to present a legal conclusion. None of these objections hold merit since the queries to which they relate are calculated to determine if they had engaged legal counsel to represent their interests before this Court.

This same tactic was applied to Requests for Production. When the Alleged Debtors requested copies of written agreements with various identified parties regarding loans (as opposed to investments) to the Alleged Debtors and for copies of the resultant promissory notes and security instruments evidencing such loans, Petitioners again generally objected, stating that such Requests were ambiguous, required a legal conclusion, and in some cases directed the Alleged Debtors to unidentified "documents produced." When asked for written agreements and communications the Petitioners with the Fu Entities, the Alleged Debtors were again referred to the same "documents produced." When asked for documentation supporting Petitioners' contention that monies to be loaned were actually delivered, no requested bank statement, confirmation emails, or receipts were provided and in many cases, and the Chinese language screen shots of what may indicate a wire transfer invariably indicate amounts different than those appearing in the loan agreements between the various Wall entities and the Petitioners, thereby bringing into question the amounts conveyed, if any. When asked for documentation concerning monetary and non-monetary defaults of the Loan Agreements, the Petitioning Creditor continued to cite objections based on ambiguity and the requirement to present legal conclusions, and then directing the Alleged Debtors to search for such information among the "documents produced." When asked for documentation dealing with the believed agency relationship between Fu or the Fu Entities and the Petitioners, they again cited the ambiguity and legal conclusion objections. When asked to show documentation showing that the Petitioners had sought legal representation to assert claims against the Alleged Creditors (but of course omitting any privileged information), Petitioners responded that such request was irrelevant, ambiguous, confidential, and required them to come to a legal conclusion. They refused to respond further to such Request. A Request for documentation of their agreements or communications with Fu and the Fu Entities related to the Involuntary Bankruptcy was met with

an objection citing that such information was both irrelevant and not likely to lead to the discovery of admissible evidence, but directed the Alleged Debtors to unidentified "documents produced." When asked to show documents proving that the Petitioners had served the Involuntary Petition or other pleadings, such Request was labelled irrelevant, ambiguous, unduly burdensome, and requiring a legal conclusion, then referred the Alleged Debtors to "documents produced." When requested for documents proving their identity, Petitioners refused to respond to the Request, citing that such was irrelevant, unduly burdensome, and requested information that was confidential, private, personal, and violative of U.S. federal law, state law, or Chinese law. Finally, when requested to provide copies of written agreements, correspondence, or documents related to the first eighteen Requests that had not been provided pursuant to any other Request, the Petitioners objected to such, stating that doing so would be unduly burdensome, but to search the "documents produced" for anything responsive. Such objections make it impossible for the Alleged Debtors to obtain substantive information needed to prepare their case

The same general objections were also applied to most of the Requests for Admission, with most falling under the categories of relevancy, attorney-client privilege, ambiguity, undue burden, and legal conclusion. Such Requests dealt with such varied topics as language proficiency; the Petitioners personal review of the Involuntary Petition prior to filing; the engagement on their behalf of their legal representation by third parties; the identity of any non-attorney persons explaining or discussing the Involuntary Petition to or with them; the timing of when, or if, the Petitioners provided documentation to their legal representatives (i.e. before or after filing of the Involuntary Bankruptcy); the identity of the party actually transferring or owning the funds related to the Loan Agreements; the aggregate amount of funds actually transferred in one or more transactions in a single year; whether taxable income was reported and/or paid to the IRS; their

authorization to Fu and the Fu Entities to filter funds through financial institutions in other countries; instructions to Fu and the Fu Entities to direct the Alleged Debtors to adjust accounting records; compensation paid to Fu or the Fu Entities for actions or services related to the Loan Agreement; advice provided by Fu or the Fu Entities related to U.S. investment projects and related taxation concerns (including how to avoid payment of such); confirmation of Fu or the Fu Entities as the Petitioners' agent; the status of the Petitioning Creditor as a Co-Lender in a pool of loan agreements; the identity of persons to whom the rights to receive payments or to administer the Loan Agreements may have been assigned or delegated; and the identity of who actually retained (and paid the retainer for) the Petitioners' legal counsel. Again, such responses are designed to prejudice the ability of the Alleged Debtors to formulate a case.

For the Alleged Debtors to prepare their case, they require responses to their discovery requests. Here, however, very few were provided without general, disingenuous, and frivolous objection, outright refusal to respond, or response directing the Alleged Debtors to review unspecified documents that provide no information allowing them to satisfy the Request. Because of this, the Court should find that the Petitioners have provided no substantive responses, and have raised frivolous objections to virtually the entirety of Alleged Debtors' discovery requests which have served only to frustrate the Alleged Debtors' attempts to develop their case, in violation of the Joint Discovery Plan and the parties' shared duties and obligations regarding discovery.

## III. PETITIONERS' BOILERPLATE, FACTLESS DISCOVERY RESPONSES DO NOT COMPLY WITH THE RULES AND ARE FRIVOLOUS.

### A. *Summary of Argument*

Pursuant to Fed. R. Civ. P. 26(b)(1), parties are permitted "to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and [which is] proportional to the needs of the case, considering the importance of the issues at stake in the action,

… the parties' relative access to relevant information, … [and] the importance of the discovery in resolving the issues…[.] Information within this scope of discovery need not be admissible in evidence to be discoverable."

Petitioners' responses to Alleged Debtors' discovery requests contain improper, boilerplate objections that reference no facts or application to the matter at hand, and which provide no specific explanation or grounds for such objections in violation of the Federal Rules of Civil Procedure. As a result:

Petitioners should be compelled to respond to all discovery requests pursuant to Fed. R. Civ. P. 26(b)(1), 37(a)(3)(B), and (a)(4);

Petitioners' objections to Alleged Debtors' requests for discovery should be waived pursuant to Fed. R. Civ. P 37(b)(2);

B. *General, boilerplate objections are not allowed under the Federal Rules of Civil Procedure, and Petitioners have therefore waived their objections to Alleged Debtors' discovery requests (or they should be stricken).*

The "prohibition against general [or blanket] objections to discovery requests has been long established." *Clapper v. Am. Realty Inv'rs, Inc.,* No. 3:14-CV-2970-D (BF), 2015 U.S. Dist. LEXIS 179043 at *4 (N.D. Tex. 2015). Rule 33(b)(4) requires that "[t]he grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(4). Stated succinctly, "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (quoting *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01–cv–01644–REB–CBS, 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010)). Here, no such supporting explanations are provided. Further, when a party provides general objections such as the ones given in this case, and the nature of which are mentioned *supra*, such responses "are meaningless and constitute a

waste of time for opposing counsel and the court. In the face of such objections, it is impossible to know whether information has been withheld and, if so, why. This is particularly true in cases like this where multiple 'general objections' are incorporated into many of the responses with no attempt to show the application of each objection to the particular request." *Id*. citing *Weems v. Hodnett*, No. 10-cv-1452, 2011 U.S. Dist. LEXIS 80746, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011).

"Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request.... 'A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'" *Enron Corp. Sav. Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009). Here, no such affidavit or evidentiary proof was provided.

While a responding party need not "marshal all evidence that may be offered at trial," the other party may request, and the responding party must disclose, information supporting "the legal theories and, in general, the factual bases of the responding party's claims." *NPR Invs., LLC v. United States*, Civil Action No. 5:05-CV-00219-TJW, 2009 U.S. Dist. LEXIS 59853 at *2 (E.D. Tex. 2009). When information sought by the Alleged Debtors through discovery results in virtually no information of relevance being provided that is "crucial to developing their [case], and the withholding of this information hindered [their] ability to prepare for trial[,]" such [parties] are "plainly prejudiced by [the] failure to provide adequate discovery responses *Yazdchi v. Am. Honda Fin. Corp, 217 F. App'x 299, 304 (5th Cir. 2007)*. Here, such failure to respond appears to be calculated to prejudice the Alleged Debtors in their ability to answer any questions that underlie the preparation of their case, not the least of which attempts to determine whether the Petitioners

are the persons actually bringing the instant case before this Court and whether each has actually stated a valid claim. Further, FED. R. CIV. P. 33(b)(3) obligates a respondent to "'fully' answer the interrogatories [posed to it]… to the extent it is able to [do so], and to supplement its responses as required under Rule 26(e)(1)(A)." *Klein v. Fed. Ins. Co.*, Civil Action No. 7:03-CV-102-D, 2014 U.S. Dist. LEXIS 95482 at *26 (N.D. Tex. 2014). When a respondent fails to respond when able to do so, as here, the Court may appropriately grant a Motion to Compel such responses. *Id*.

In this case, Petitioners and their counsel have propounded only boilerplate objections to discovery requests that are frivolous, constituting a refusal to make a good faith attempt to respond to Alleged Debtors' discovery requests. Accordingly, in the event that discovery is not stayed, Petitioners should be compelled to respond to all discovery requests, each of which is calculated to determine the identity of the Petitioners, whether they initiated the filing of the Involuntary Petition, and whether or not each has stated a valid claim against the Alleged Debtors.

WHEREFORE PREMISES CONSIDERED, Defendants respectfully request that the Court enter an order granting this Motion to Compel and:

a) Finding and concluding that such Motion to Compel is warranted pursuant to the terms of FED. R. CIV. P. 26(b)(1), 37(a)(3)(B) and 37(a)(4).

b) Finding and concluding that Petitioners' objections to Alleged Debtor's discovery requests are waived or are otherwise stricken, and that any designated matters supporting any of such Petitioners' claims be prohibited from introduction into evidence pursuant to FED. R. CIV. P. 37(b)(2); and;

c) Finding and concluding that facts shall be taken to be deemed in the Alleged Debtors' favor pursuant to FED. R. CIV. P. 37(b)(2); and

d) Providing Alleged Debtors with such other and further relief to which they may be justly entitled.

Dated: July 28, 2020

Respectfully submitted,

/s/ Joyce W. Lindauer

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Paul B. Geilich
State Bar No. 07792500
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
paul@joycelindauer.com
**ATTORNEYS FOR ALLEGED DEBTORS**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served upon all counsel of record on this 28th day of July, 2020, via email pursuant to the Court's CM/ECF system.

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer