***Electronically Recorded Document***

# Johnson County

**Becky Ivey**
**Johnson County Clerk**
**Cleburne, TX**

---

**Document Number:** 2019-24729

**Recorded As** : **ERX-DEED OF TRUST**

| | |
|---|---|
| **Recorded On:** | **September 12, 2019** |
| **Recorded At:** | **02:49:11 pm** |
| **Number of Pages:** | **17** |
| **Recording Fee:** | **$86.00** |

**Parties:**

**Direct-**

**Indirect-**

| | |
|---|---|
| **Receipt Number:** | **175438** |
| **Processed By:** | **Linda Bailey** |

---

***THIS PAGE IS PART OF THE INSTRUMENT***

COUNTY COURT JOHNSON COUNTY, TEXAS

I hereby certify that this instrument was filed on the date and time stamped hereon and was duly recorded in the Volume and Page of the named records in Johnson County, Texas.

Any provision herein which restricts the sale, rental or use of the described Real Estate because of color race is invalid and unenforceable under Federal law.

BECKY IVEY, COUNTY CLERK
JOHNSON COUNTY, TEXAS

Sendera Title

GF# 1903359-VVJA

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# Deed of Trust

## Basic Information

**Date:** September 11, 2019.

**Grantor:** WALL009, LLC, a Texas limited liability company.

**Grantor's Mailing Address:**

1755 Wittington Place, Suite 340
Dallas, Texas 75234
c/o Tim Barton

**Trustee:** Robert W. Buchholz.

**Trustee's Mailing Address:**

420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201

**Lender:** Southern Star Capital LLC d/b/a Reliance Mortgage Company

**Lender's Mailing Address:**

5220 Spring Valley Road, Suite 602
Dallas, Texas 75254

**Obligation**

Note:
Date: September 11, 2019.
Original principal amount: $900,000.00.
Borrower: WALL009, LLC, a Texas limited liability company.

Lender: Southern Star Capital LLC d/b/a Reliance Mortgage Company
Maturity date: September 1, 2020.
Terms of Payment: As provided in the note.

**Property (including any improvements):**

The property described in the attached Exhibit "A" which is incorporated herein by reference.

**Exceptions to Conveyance and Warranty:**

None.

## A. Granting Clause

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

## B. Grantor's Obligations

*B.1.* Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender , and as to property loss, that are payable to Lender under policies containing standard mortgage clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2* Grantor agrees to-

a. keep the Property in good repair and condition;

b. pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

c. defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

d. obey all laws, ordinances, and restrictive covenants applicable to the Property;

e. keep any buildings occupied as required by the Required Insurance Coverages;

f. if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments;

g. notify Lender of any change of address; and

## C. Lender's Rights

*C.1.* Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees,

Doc-24729



succeeding to all rights and responsibilities of Trustee.

*C.2.* If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.* Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

*C.4.* Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.* If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.* COLLATERAL PROTECTION INSURANCE NOTICE

**In accordance with the provisions of Section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

**(A) the Grantor is required to:**

**(i) keep the collateral insured against damage in the amount the Lender specifies;**

**(ii) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and**

**(iii) name the Lender as the persons to be paid under the policy in the event of a loss;**

**(B) the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and**

**(C) if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.**

*C.7.* If a default exists in payment of the Obligation or performance of Grantor obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may-

a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

b. exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c. direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.* If Grantor fails to pay any part of principal or interest secured by a prior lien or liens on the Property when it becomes payable or defaults on any prior lien instrument, the entire debt secured by this deed of trust will immediately become payable at the option of Lender.

C.9. Any act or occurrence that would constitute default under the terms of any lien superior to the lien securing the Note will constitute a default under this Deed of Trust securing the Note.

*C.10.* Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**D. Trustee's Rights and Duties**
If directed by Lender to foreclose this lien, Trustee will-

*D.1.* either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.* sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Liens and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.* from the proceeds of the sale, pay, in this order-

a. expenses of foreclosure, including a reasonable commission to Trustee;
b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
c. any amounts required by law to be paid before payment to Grantor; and
d. to Grantor, any balance; and

*D.4.* be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**E. General Provisions**

*E.1.* If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.* Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.* Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

*E.4.* This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.* If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.* Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.* Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.* Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.

*E.9.* In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.* When the context requires, singular nouns and pronouns include the plural.

*E.11.* The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

*E.12.* Grantor warrants that the extension of credit evidenced by the Note secured hereby is solely for business or commercial purposes, other than agricultural purposes. The Grantor further warrants that the credit transaction evidenced by the Note is specifically exempted under Regulation Z issued by the Board of Governors of the Federal Reserve System and Title I of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the above transaction. Grantor does not claim any part of the Property as residential or business homestead. Grantor acknowledges that Lenders rely on the truth of representations in this paragraph in making the Note secured by this deed of trust.

*E.13.* Grantor will furnish to Lender or other holder of the Note annually, before January 31st of each year, copies of tax receipts showing that all taxes on the Property have been paid. Failure to comply with the foregoing for any reason whatsoever shall constitute a default.

If Grantor fails to pay all taxes on the Property prior to January 31st of each year for the tax period covering the preceding calendar year for any reason whatsoever, including, but not limited to, protests of value, processing of tax account split-out requests, or failure of the tax authorities to certify the tax roll or account, at the option of Lender, Grantor shall immediately deposit with Lender, a sum equal to taxes, assessments and charges against the Property in the amount as estimated by Lender.

All such funds shall bear no interest whatsoever, may be mingled with the general funds of Lender and shall be applied by Lender toward the payment of taxes and assessments; provided, however, that, if a Default shall have occurred hereunder, such funds may at Lender's option be applied to the payment of the Obligation in the order determined by Lender in its sole discretion, and that Lender may at any time, in its sole discretion, apply all or any part of such funds toward the payment of any such taxes, assessments, charges, legal fees, penalties or premiums which are past due, together with any penalties or late charges with respect thereto.

Lender shall have the right to rely upon tax information furnished by applicable taxing authorities in the payment of such taxes and assessments and Lender shall have no obligation to make any protest of any such taxes or assessments. Any excess over the amounts required for such purposes shall be held by Lender for future use, applied to the Obligation or refunded to Grantor, at Lender's option, and any deficiency in such funds so deposited shall be made up by Grantor upon demand by Lender.

The conveyance or transfer of Grantor's interest in the Property for any reason (including, without limitation, the foreclosure of a lien or security interest or a transfer by operation of law) shall constitute an assignment or transfer of Grantor's interest in and rights to such funds held by Lender under this subparagraph but subject to the rights of Lender hereunder.

Grantor will annually furnish to Lender or other holder of the Note evidence of current paid-up Required Insurance Coverage naming Lender or other holder of the Note as an insured.

***E.14.* GRANTOR MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.**

*E.15.* If all or any part of the Property is sold, transferred, or conveyed without the prior written consent of Lender or other holder of the Note, Lender or other holder of the Note may, at its sole option, declare the outstanding principal balance of the Note plus accrued interest immediately due and payable. Lender or other holder of the Note has no obligation to consent to any such sale or conveyance of the Property, and Lender or other holder of the Note is entitled to condition any consent on a change in the interest rate that will thereafter apply to the Note and any other change in the terms of the Note or Deed of Trust that Lender or other holder of the Note in its sole discretion deems appropriate. A lease for a period longer than one year, a lease with an option to purchase, or a contract for deed will be deemed to be a sale, transfer, or conveyance of the Property for purposes of this provision. The creation of a subordinate lien without the consent of Lender or other holder of the Note will be construed as a sale or conveyance of the Property, but any subsequent sale under a subordinate lien to which Lender or other holder of the Note has consented will not be construed as a sale or conveyance of the Property.

*E.16.* Grantor agrees not to grant any lien or security interest in the Property or to permit any junior encumbrance to be recorded or any claim to otherwise become an encumbrance against the Property. If an involuntary encumbrance is filed against the Property, Grantor agrees, within thirty days, to either remove the involuntary encumbrance or provide a bond acceptable to Lender against the involuntary encumbrance.

*E.17.* This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

*E.18.* If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

*E.19.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

*E.20.* Grantor will have full recourse liability for repayment of the principal and interest of the Note and the performance of all covenants and agreements of Grantor in this Deed of Trust.

*E.21.* Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

*E.22.* Grantor agrees to execute, acknowledge, and deliver to Lender any document requested by Lender, at Lender's request from time to time, to

Doc-24729


(a) correct any defect, error, omission, or ambiguity in this deed of trust or in any other document executed in connection with the Note or this deed of trust;
(b) comply with Grantor's obligations under this deed of trust and other documents;
(c) subject to and perfect the liens and security interests of this deed of trust and other documents any property intended to be covered thereby; and
(d) protect, perfect, or preserve the liens and the security interests of this deed of trust and other documents against third persons or make any recordings, file any notices, or obtain any consents requested by Lender in connection therewith. Grantor agrees to pay all costs of the foregoing.

*E.23.* Lender, as a matter of right and without regard to the sufficiency of the security for repayment of the Note and performance and discharge of the Obligations, without notice to Grantor and without any showing of insolvency, fraud, or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Property or any part thereof, and of the Rents, and Grantor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

*E.24* Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The first sentence of this Section shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to the repair and maintenance of the Property.

Grantor shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge. If Grantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

*E.25.* If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

*E.26.* The term Lender includes any mortgage servicer for Lender.

*E.27.* Grantor hereby grants Lenders a right of first refusal with respect to Grantor's power to authorize any third party (other than Lenders pursuant to its rights as set forth in this instrument)

Doc-24729


to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lenders) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lenders, within ten days after receiving written notice from Grantor, fail to pay the ad valorem taxes pursuant to Lenders' rights as set forth in this instrument.

*E.28.* Grantor warrants that the execution of this deed of trust shall not impair or affect any other security, which may be given to secure the payment of the Obligation secured hereby, and all such additional security shall be considered as cumulative. The taking of additional security, execution of releases and partial releases of the security (regardless of consideration for the release or partial release) or any extension of time of payment of the Obligation secured hereby shall not diminish the force, effect, or lien of this deed of trust and shall not affect or impair the liability of any maker, surety, or endorser for the payment of said Obligation.

*E.29.* In the event of any conflict between the provisions of this Deed of Trust and the Note, guaranty (if any) and any of the other documents executed in connection with this transaction, it is the intent of the parties hereto that the provisions of this Deed of Trust shall control. The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Deed of Trust, the Note, guaranty (if any) and any of the other documents executed in connection with this transaction and that such Deed of Trust, Note, guaranty (if any) and all of the other documents executed in connection with this transaction shall not be subject to the principle of construing their meaning against the party which drafted same.

*E.30.* **GRANTOR AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION (WHICH COUNSEL WAS NOT DIRECTLY OR INDIRECTLY IDENTIFIED, SUGGESTED, OR SELECTED BY THE OTHER PARTY), VOLUNTARILY WAIVES A TRIAL BY JURY OF ANY ISSUE ARISING IN AN ACTION OR PROCEEDING BETWEEN THE PARTIES OR THEIR SUCCESSORS, UNDER OR CONNECTED WITH THIS CONTRACT OR ITS PROVISIONS. GRANTOR AND LENDER ACKNOWLEDGE TO EACH OTHER THAT GRANTOR AND LENDER ARE NOT IN SIGNIFICANTLY DISPARATE BARGAINING POSITIONS.**

*E.31* Additional Definitions used in this paragraph:

"Constituent Party": any (a) shareholder, member, general partner or managing member of Grantor, as applicable, or (b) any signatory to this Deed of Trust that signs on Grantor's behalf that is a corporation, general partnership, limited partnership, limited liability company, joint venture, trust, or other type of business organization, or(c) any Guarantor.

"Loan Documents": The Note, this Deed of Trust, the Guaranty, and any and all other documents now or hereafter executed by Grantor, Guarantor, or any other person or party in connection with the loan evidenced by the Note or in connection with the payment of the Obligation or the performance and discharge of the Obligations.

**GRANTOR SHALL INDEMNIFY, DEFEND, PROTECT AND HOLD HARMLESS**

Doc-24729


**LENDER AND TRUSTEE, THEIR RESPECTIVE PARENTS, SUBSIDIARIES, DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, AGENTS, MEMBERS, SUCCESSORS, AND ASSIGNS FROM AND AGAINST ANY AND ALL LIABILITY, DAMAGE, LOSS, COST, OR EXPENSE (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES), ACTION, PROCEEDING, CLAIM OR DISPUTE INCURRED OR SUFFERED BY THE FOREGOING PARTIES SO INDEMNIFIED WHETHER OR NOT AS THE RESULT OF THE NEGLIGENCE OF ANY PARTY SO INDEMNIFIED, WHETHER VOLUNTARILY OR INVOLUNTARILY INCURRED OR SUFFERED, IN RESPECT OF THE FOLLOWING:**

**(i) ANY LITIGATION CONCERNING THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS OR THE PROPERTY, OR ANY INTEREST OF GRANTOR OR LENDER THEREIN, OR THE RIGHT OF OCCUPANCY THEREOF BY GRANTOR OR LENDER, WHETHER OR NOT ANY SUCH LITIGATION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;**

**(ii) ANY DISPUTE, INCLUDING DISPUTES AS TO THE DISBURSEMENT OF PROCEEDS OF THE NOTE NOT YET DISBURSED, AMONG OR BETWEEN ANY OF THE CONSTITUENT PARTIES OR OTHER PARTNERS OR VENTURERS OF GRANTOR IF GRANTOR IS A GENERAL OR LIMITED PARTNERSHIP, OR AMONG OR BETWEEN ANY EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS OR MANAGERS OF GRANTOR IF GRANTOR IS A CORPORATION OR LIMITED LIABILITY COMPANY, OR AMONG OR BETWEEN ANY MEMBERS, TRUSTEES OR OTHER RESPONSIBLE PARTIES IF GRANTOR IS AN ASSOCIATION, TRUST OR OTHER ENTITY;**

**(iii) ANY ACTION TAKEN OR NOT TAKEN BY LENDER OR TRUSTEE WHICH IS ALLOWED OR PERMITTED UNDER THIS DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS RELATING TO GRANTOR, THE PROPERTY, ANY CONSTITUENT PARTIES OR OTHERWISE IN CONNECTION WITH THE LOAN DOCUMENTS, INCLUDING WITHOUT LIMITATION, THE PROTECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST OR OTHER RIGHT, REMEDY OR RECOURSE CREATED OR AFFORDED BY THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS;**

**(iv) ANY ACTION BROUGHT BY LENDER OR TRUSTEE AGAINST GRANTOR UNDER THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS, WHETHER OR NOT SUCH ACTION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;**

**(v) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY, OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE PROPERTY AND ITS IMPROVEMENTS;**

**(vi) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY,**

**OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE SALE AND PURCHASE OF THE PROPERTY AS WELL AS ANY AGREEMENTS RELATED THERETO AS WELL AS ANY SUBSEQUENT RESALE AND/OR TRANSFER OF THE PROPERTY BY GRANTOR; AND**

**(vii) ANY AND ALL LOSS, DAMAGE, COSTS, EXPENSE, ACTION, CAUSES OF ACTION, OR LIABILITY (INCLUDING ATTORNEYS' FEES AND COSTS) DIRECTLY OR INDIRECTLY ARISING FROM OR ATTRIBUTABLE TO THE USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE OF A HAZARDOUS SUBSTANCE ON, IN, UNDER OR ABOUT THE PROPERTY, WHETHER KNOWN OR UNKNOWN AT THE TIME OF THE EXECUTION HEREOF, INCLUDING WITHOUT LIMITATION (A) ALL FORESEEABLE CONSEQUENTIAL DAMAGES OF ANY SUCH USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE, AND (B) THE COSTS OF ANY REQUIRED OR NECESSARY ENVIRONMENTAL INVESTIGATION OR MONITORING, ANY REPAIR, CLEANUP, 13 OR DETOXIFICATION OF THE PROPERTY, AND THE PREPARATION AND IMPLEMENTATION OF ANY CLOSURE, REMEDIAL, OR OTHER REQUIRED PLANS.**

**LENDER AND/OR TRUSTEE MAY EMPLOY AN ATTORNEY OR ATTORNEYS TO PROTEST OR ENFORCE ITS RIGHTS, REMEDIES AND RECOURSES UNDER THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS, AND TO ADVISE AND DEFEND LENDER AND/OR TRUSTEE WITH RESPECT TO ANY SUCH ACTIONS AND OTHER MATTERS. GRANTOR SHALL REIMBURSE LENDER AND/OR TRUSTEE FOR THEIR RESPECTIVE ATTORNEYS' FEES AND EXPENSES (INCLUDING EXPENSES AND COSTS FOR EXPERTS) IMMEDIATELY UPON RECEIPT OF A WRITTEN DEMAND THEREFOR, WHETHER ON A MONTHLY OR OTHER TIME INTERVAL, AND WHETHER OR NOT AN ACTION IS ACTUALLY COMMENCED OR CONCLUDED. ALL OTHER REIMBURSEMENT AND INDEMNITY OBLIGATIONS HEREUNDER SHALL BECOME DUE AND PAYABLE WHEN ACTUALLY INCURRED BY LENDER AND/OR TRUSTEE. ANY PAYMENTS NOT MADE WITHIN FIVE (5) DAYS AFTER WRITTEN DEMAND THEREFOR SHALL BEAR INTEREST AT THE ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS FROM THE DATE OF SUCH DEMAND UNTIL FULLY PAID. THE PROVISIONS OF THIS SECTION E.31 SHALL SURVIVE REPAYMENT OF THE NOTE AND PERFORMANCE OF THE OBLIGATIONS, THE RELEASE OF THE LIEN OF THIS DEED OF TRUST, ANY FORECLOSURE (OR ACTION IN LIEU OF FORECLOSURE), THE TRANSFER BY GRANTOR OF ANY OR ALL OF ITS RIGHT, TITLE AND INTEREST IN OR TO THE PROPERTY AND THE EXERCISE BY LENDER OF ANY AND ALL REMEDIES SET FORTH HEREIN OR IN THE LOAN DOCUMENTS.**

*E.32.* **GRANTOR WAIVES ITS RIGHTS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ. OF THE TEXAS BUSINESS AND COMMERCE CODE, A LAW THAT GIVES CONSUMERS**

**SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, GRANTOR VOLUNTARILY CONSENTS TO THIS WAIVER.**

**NOTICE**

**THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**NOTICE OF INDEMNIFICATION: GRANTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN SECTION E.31 HEREOF) WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY GRANTOR OF LENDER FROM CLAIMS OR LOSSES ARISING AS A RESULT OF LENDER'S OWN NEGLIGENCE.**

**WALL009, LLC, a Texas limited liability company.**

**BY: ITS MANAGERS:**

TRWF LODGE, LLC, a Texas limited liability company.

______________________________
Tim Barton
Its Managing Member

**and**

CARNEGIE DEVELOPMENT, LLC, a Delaware limited liability company.

______________________________
Tim Barton
Its Managing Member

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

Before me, the undersigned notary public, on this day personally appeared Tim Barton, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as the Manager and authorized agent for TRWF LODGE, LLC and CARNEGIE DEVELOPMENT, LLC, for the purposes and consideration therein expressed.

Given under my hand and seal of office this 11 day of September 2019.

Notary Public, State of Texas

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

**EXHIBIT "A"**

**TRACT I**

**BEING a 27.262 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain called 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to be more particularly described by metes and bounds as follows:**

**BEGINNING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the Plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Addition, a distance of 1,128.01 feet to a 1/2' capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East across said 101.49 acre tract a distance of 110.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 5.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, a distance of 50.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 26.19 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, at a distance of 858.80 feet to a 1/2" capped iron rod marked "SANDS" set for corner in the northeast line of said 101.49 acre tract, same being the northeast line of the above referenced John Haigler Survey and being in the southwest line of the above referenced 126.2407 acre tract, same being the southwest line of the above referenced Absalom Williams Survey;**

**THENCE South 30° 13' 50" East with said northeast and southwest lines, a distance of 1,181.38 feet to a 1/2" capped iron rod marked "FORT WORTH SURVEYING" set for corner in the northwest line of the above referenced County Road 501 at the east corner of said 101.49 acre tract;**

**THENCE South 60° 01' 00" West continuing with said County Road and the southeast line of said 101.49 acre tract, a distance of 1,019.04 feet back to the Point of beginning and containing 1,187,549 square feet, or 27.262 acres of land, more or less.**

**TRACT II:**

**BEING a 36.502 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to me more particularly described by metes and bounds as follows:**

**COMMENCING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Venus Ridge, Phase IV and southwest line of said 101.19 acre tract, a distance of 1,128.01 feet to a 1/2" capped iron rod set for corner at the Point of Beginning;**

**THENCE continuing with said northeast and southwest lines the following:**

**North 30° 13' 50" West, a distance of 1,063.25 feet to a 1/2" capped iron rod found for corner;**

**North 00° 26' 19" West, a distance of 112.41 feet to a 1/2" capped iron rod found for corner;**

**South 89° 33' 41" West, a distance of 33.74 feet to a 1/2" capped iron rod found for corner at the beginning of a curve to the left;**

**THENCE continuing with said northeast and southwest lines in a Southwesterly direction with said curve to the left having a radius of 270.00 feet, a chord that bears South 74° 39' 55" West, a distance of 138.81 feet for an arc length of 140.39 feet to a 1/2" capped iron rod found for corner;**

**THENCE North 30° 13' 50" West, a distance of 242.77 feet to a 1/2" capped iron rod found for corner;**

**THENCE South 89° 33' 41" West, a distance of 183.97 feet to a 1/2" capped iron rod found for corner in the northwest line of said 101.49 acre tract, the northwest line of said Haigler Survey, same being the southeast line of that certain called 144.38 acre tract of land described in Deed from Wayne Hood and Eleanor Hood and recorded in Volume 2616, Page 156 of said Deed Records, same being the southeast line of the B.B.B. & C. R.R Survey, Abstract No. 92;**

**THENCE North 59° 45' 40" East with said southeast and northwest lines a distance of 1,286.03 feet to a capped iron rod found for corner at the north corner of said 101.49 acre tract of land, same being the north corner of said Haigler Survey, the east corner of said B.B.B. & C. R.R. Survey, and bing in the southwest line of that certain called 62.7 acre**

Doc-24729


**tract of land described in Deed to Fiedler Farm Partnership, Ltd. and recorded in Volume 4302, Page 538 of said Deed Records, same being the southwest line of the Absolam Williams Survey, Abstract No. 857;**

**THENCE South 30° 13' 50" East with the northeast line of said 101.49 acre tract, same being the northeast line of said Haigler Survey and the southwest line of said 62.7 acre tract, same being the southwest line of said Williams Survey, at a distance of 11,219.39 feet passing a 1/2" capped iron rod found for corner at the south corner of said 62.7 acre tract, same being the west corner of that certain called 128.8645 acre tract of land described in Deed from Anastasia Energy, LLC to DJD Land Partners, LLC and recorded in County Clerk's File No. 2018-18134 of said Deed Records and continuing a total distance of 1,516.42 feet 1/2" capped iron rod found for corner;**

**THENCE across said 101.49 acre tract the following:**

**South 59° 46' 10" West, a distance of 858.80 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 26.19 feet to a 1/2" capped iron rod set for corner;**

**South 59° 46' 10" West, a distance of 50.00 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 5.00 feet to a 1/2" capped iron rod set for corner;**

**THENCE South 59° 46' 10" West, a distance of 110.00 feet back to the Point of Beginning and containing 1,590,029 square feet or 36.502 acres of land, more or less.**