Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry Alleyne-Simmons
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL007 LLC, *et al.*[1],** | § | **Case No. 20-31131-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**RESPONSE AND OBJECTION TO MOTION OF PETITIONING CREDITORS FOR <u>(i) RECONSIDERATION OF DISCOVERY ORDERS; AND ii) RELATED RELIEF</u>**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COME NOW WALL007, LLC et al. ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and file their *Response and Objection to Motion of Petitioning Creditors for (i) Reconsideration of Discovery Orders; and (ii) Related Relief* [Docket No. 175] (the "Motion"), and in support thereof would respectfully show the Court:

As a preface to the Alleged Debtors' response to the Motion of the Petitioners [Dkt 175], the Alleged Debtors call the following to the attention of the Court from the oral ruling on August 19, 2020:

- "The Petitioning Creditors did not really respond to Alleged Debtors' legality argument. Instead, the Petitioners claim that the difficulties associated with the

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.

COVID-19 crisis should excuse them from traveling to the United States for in-person depositions. During the hearing, counsel for the Petitioners did not specifically say there was a travel ban on Chinese nationals entering the United States. Rather, counsel argued that his clients would have to quarantine for 14 days upon entry to the United States and that doing so would be a great inconvenience."

- "The Court also believes that litigants who seek the benefit of the United States law must follow its process. And here, a serious concern has been raised that taking video depositions would violate Chinese law. While traveling to the US may be a great inconvenience and difficulty at this time, the Court believes it is necessary in this case to address both the legality issues and the identity concerns raised by the Alleged Debtors."

- "Because the willingness of the Petitioners to attend in-person depositions will affect several threshold issues, including the ability of the Petitioning Creditors to carry their evidentiary burdens and the identity concerns raised by the Alleged Debtors, **the Court will require that there is an agreement signed by counsel for the Petitioning Creditors that the Petitioning Creditors will appear for live depositions in the United States before any other discovery or motion practice will continue**."

All of the foregoing are contained in each of the Orders issued on September 4, 2020, requiring that:

(i) No discovery or motions practice shall continue unless and until a live deposition agreement signed by counsel for Petitioners is filed with the Court....

(ii) Petitioners are required to sign their answers to their interrogatories with their own "wet signatures" as opposed to the signature of Petitioners' counsel; and

(iii) Petitioners will provide Alleged Debtors with copies of passports of all of the Petitioners, upon request and that such passports will be submitted to the Court for in-camera inspection, upon request.

## I. STANDARD FOR RECONSIDERATION

### A. *When one party has already prevailed on a matter by order of the Court, the Court must apply a standard for Reconsideration that is very difficult for the moving party to meet.*

Fed. R. Civ. P. 59(e) is applied to bankruptcy cases by Fed. R. Bankr. P. 9023 and permits a court to alter or amend a judgment after entry. See Fed. R. Civ. P. 59(e). Motions for such under this Rule must be timely and request a **substantive alteration** of the judgment. *Dave Kohel Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. 171, 177 (E.D. Wis. 1993).

As relates to a motion for reconsideration, the "catchall provision" under Fed. R. Civ. P. 60(b)(6) (which is applied to bankruptcy cases by Fed R. Bankr. Pr. 9024), establishes that "a court may relieve a party or its legal representative from a[n] … order… for…any other reason that justifies relief." Notably, such provision **"is to be used by the courts *sparingly* as an equitable remedy to prevent manifest injustice, and should be utilized *only* where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment."** *Weisband v. First Horizon Home Loans (In re Weisband)*, Nos. AZ-10-1239-PaJuMk, AZ-10-1267-PaJuMk, 2011 Bankr. LEXIS 4321 at *22 (B.A.P. 9th Cir. 2011). "As such, under Rule 60(b)(6), a party seeking relief from a judgment must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Id.*

A motion for reconsideration is not simply an opportunity for the Court to change its mind, and as such, the standard that must be met by the moving party for the Court to entertain such motion is a very difficult one to meet. *Ramos v. Lucio*, No. B-08-122, 2009 U.S. Dist. LEXIS

146718 at *8 (S.D. Tex. 2009). In truth, it is one that is "much more difficult than that normally borne by a [movant in an underlying original motion] … Motions for Reconsideration are **generally disfavored** …." *Id.* at *8-9 (emphasis added). Further, they are considered to be improper mechanisms for the purpose of introducing evidence that was available at the time of an original motion but which was not presented, for relitigating old issues, for advancing new theories, or for securing a rehearing on the merits. *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). Once a Court has entered a ruling, that ruling should only be disturbed upon demonstration by the Movant that (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *Fields v. Pool Offshore*, 1998 U.S. Dist. LEXIS 1122 at *7 (E.D. La. Feb. 3, 1998), aff'd 182 F.3d 353 (5th Cir. 1999). See also *Neaville v. Wells Fargo Bank, N.A.*, No. 3:11-CV-97-P, 2013 U.S. Dist. LEXIS 194315 at *3 (N.D. Tex. Mar. 7, 2013) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.")

## II. ARGUMENT

### A. *The Court did not misinterpret the January 31, 2020 Presidential Proclamation concerning restrictions on travel of Chinese nationals, and as such, it did not commit any "manifest error of fact or law" that would permit reconsideration of the Court's Orders on the topic.*

Of all the arguments for reconsideration presented by counsel for the Petitioners, the only one that conceivably meets the minimum threshold standard permitting possible reconsideration of the Court's Orders is that regarding what counsel would lead the Court to mistakenly believe is a "*Travel Ban*." In the event that the Court did indeed misinterpret the President's January 31, 2020 Proclamation, it is plausible that the Court could have committed a "manifest error of law,"

thereby supporting reconsideration of the Court's Order. 1998 U.S. Dist. LEXIS 1122 at *7. Here, however, no such misinterpretation of the Presidential Proclamation occurred since no *ban* on travel actually exists.

It is important to note that counsel for the Petitioners provided an exhibit to their Motion consisting of a screenshot of a Center for Disease Control and Prevention ("CDC") web page that mentioned "several Presidential proclamations" (collectively, "Proclamations") dealing with travel ***restrictions*** imposed on persons traveling from thirty-seven (37) different countries (including the People's Republic of China), and further mentioning the existence of *exceptions* to such restrictions. Counsel for the Petitioners also provided a faithful representation of two (2) paragraphs of a much longer Presidential proclamation concerning entry restrictions on persons specifically traveling from China. It is notable, however, that counsel for the Petitioners conveniently omits the verbiage or any discussion within the Motion dealing with the exceptions and limitations to these entry restrictions present in Section 2 of such proclamation.

The statement that the Petitioners are "*banned*" from entry into the United States due to travel restrictions imposed by Presidential Proclamation is a misrepresentation of the content of the Proclamation. As previously noted, the Proclamation establishes no such "*ban*." Additionally, counsel for Petitioners failed to credibly interpret the sections of the Proclamation it actually provided; and counsel's assertion of a "*ban*" on travel is presumptuous, conclusory and false since it fails to mention or take into account the following:

- exceptions to travel restrictions on Chinese nationals that are enumerated in the January 31, 2020 Presidential Proclamation including that such restrictions do not apply to "**any alien whose entry would not pose a significant risk of introducing,**

**transmitting, or spreading the virus, as determined by the CDC Director, or his designee**;"

- that no request has been made by the Petitioners to the applicable governing agencies to determine whether or not an exception under the Proclamations applies including but not limited to a determination by the CDC director or his designee that the entry of the Petitioners into the United States for the limited purpose of a deposition would "not pose a significant risk of introducing, transmitting, or spreading the virus;"
- that the Petitioners may take measures that ensure they do not pose a significant risk to public health and may receive such determination or certification by cognizant officials (i.e. by choosing to self-quarantine in advance of travel to the United States, and after arrival in this country); and
- that regardless of the continued application of the Proclamation or any exception thereto, the Petitioners are permitted to enter the United States after spending 14 days in some unrestricted location outside of the People's Republic of China.

The Alleged Debtors also assert that the statement that Chinese nationals are banned from entry is similarly conclusory, presumptuous, and inarguably false since (1) the U.S. has not instituted any "*ban*," and (2) the Petitioners have never provided any evidence that the Chinese government has forbidden travel to the United States.

It is important to reiterate an argument made during the August 17, 2020 hearing before the Court (and which the Court found availing in forming its opinion as to the matters before it on that date), namely that Petitioners are *permitted* to travel to the United States ***if they adhere to a 14-day quarantine requirement***. The Alleged Debtors reassert that the Petitioners simply do not wish to do so or to appear in the United States in person. The Proclamation itself expressly and

conspicuously provides for a scenario in which the Petitioners may enter the country and then enter quarantine since it states that "the United States should take all necessary and appropriate measures to facilitate orderly medical screening and, where appropriate, quarantine of persons [from China] allowed to enter the United States who may have been exposed to this virus." Furthermore, entry is permitted without restriction where Petitioners enter from some other country and have not been in China within the immediately preceding 14-day period.

B. ***The Court need not consider the Petitioners' purported "legal option" of conducting depositions in Macau because it does not meet the standard for reconsideration, and because the proposition that doing such is permitted under Chinese law is legal fiction*.**

The "Macau Option" cannot be properly brought in a Motion for Reconsideration. The reason for this is that this issue could have been litigated during the initial motion adjudication, but Petitioners failed to raise it at the time. Now, they want a "second bite at the apple." As mentioned *supra*, it would be improper to use a motion to reconsider "to introduce evidence that was available at the time of the [original underlying] motion but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits[,]" and courts should disfavor such motions should they be used to do so. *Ramos* at *9. By attempting to raise this issue at this point, and to provide evidence of such by way of the Motion, counsel for the Petitioners is wrongly attempting to offer an argument that it failed to consider earlier, and to provide evidence that was available to it to present to the Court at the August 17, 2020 hearing.

Furthermore, the assertion that the government of Macau is now "permitting Chinese nationals, such as the Petitioners to travel to Macao where their depositions can be taken, either live by counsel or via video" is disingenuous on multiple levels.

First, counsel for Petitioners points to a website that specifically states that tourists *from neighboring Zhuhai, Guangdong Province*, a city that abuts the northern border of Macau, shall

be permitted to travel to there unrestricted. Travel restrictions on persons from the remainder of mainland China appear to be in place (as in the United States) and include provisions for quarantine at “designated hotels” in Macau.

Second, Alleged Debtors assert that the unsupported statement of counsel for the Petitioners that they are permitted travel to Macau to avoid Chinese law forbidding depositions is untrue since (1) Macau is a territory of the People’s Republic of China that is (2) subject to a hybrid legal system incorporating the laws of both the Special Administrative Region of Macau and the People’s Republic of China. As a result, conducting depositions in Macau for the purpose of litigation in the United States and the swearing of an oath is prohibited by Chinese law which was previously asserted by the Alleged Debtors as follows:

- Although Rule 30(d)(4) of the Federal Rules of Civil Procedure permits parties to take a deposition “by telephone or other remote means” the result is that the deposition is officially taking place “where the deponent answers the questions.” Additionally, at least one court has stated, “[T]estifying via video link while located in mainland China, [Plaintiff] violated Chinese law” and as a result, struck such testimony from the record. *Ji v. Jling Inc.*, 15-CV-4194 (SIL), 22 (E.D.N.Y. Mar. 31, 2019). Another reason such video depositions are not permitted is because all depositions require the swearing of an oath which would also violate Chinese law. “China regards the administering of oaths by foreign attorneys and consular officials as a violation of China's judicial sovereignty" and, consequently, "[w]hen foreign attorneys or consular officials administer an unauthorized oath in China, the penalties may include arrest, detention, expulsion, or deportation of all participants in the oath." *Id*.

Third, only Chinese legal, judicial, or political officials may unequivocally determine the legality of the suggested depositions that counsel for the Petitioners proposes should be taken in Macau. However, counsel for Petitioners has yet to provide any evidence of such a determination by the Chinese government. To date, all that has been provided by counsel for the Petitioners is supposition and assumption of the legality of such.

Fourth, the issues originally raised by Alleged Debtors regarding travel to China and/or Hong Kong to conduct depositions as initially raised are not mitigated in any way. The Court should bear in mind that the Petitioners knowingly chose to file their involuntary bankruptcy petition during the global COVID pandemic only after the travel restrictions to which the Petitioners refer had been in place under the Proclamation originally issued in January of 2020. Petitioners nonetheless knowingly assumed the risks regarding travel restrictions, and chose to pursue the matter in the United States, and the Alleged Debtors should not have to be burdened and prejudiced by such choice.

Admittedly, case law provided by counsel for the Petitioners, namely *Dagen v. CFC Grp. Holdings*, does indeed indicate that a telephone deposition was taken of Hong Kong-based witnesses in 2003 (less than four years after transfer of sovereignty when Hong Kong enjoyed more political and legal freedom) as permitted by the U.S. court where the issue of illegality of such depositions was not raised by any of the parties to the case and no permission of any Chinese authority was sought. The only issues in the case regarding the location or method of depositions was "international travel considerations, legitimate business concerns, and cost as rationales for allowing witnesses to testify via telephone instead of appearing in the courtroom." The case does not address whether or not in-person or video depositions in China, Hong Kong, or Macau are permitted by the Chinese government as raised by the Alleged Debtors. The case cited as *Jordan*

*Outdoor Enters., Ltd. V. Hubei Wild Trees Textiles Co.* likewise does not rule that in-person or video depositions conducted in Hong Kong, Macau, or China are legal under Chinese Law. Further, Alleged Debtors deny the allegation that the case provided in Petitioners Exhibit "D" to the Motion holds to the proposition that video depositions may be legally taken in Macau and Hong Kong since the court in that case only makes **a supposition** of such without pointing to any evidence that the local governments of those territories or of China would permit such depositions in this case. The issue of the legality of video or in-person depositions being conducted in the Chinese administrative regions of Hong Kong and Macau or the application of Chinese over those regions is not raised in the case attached in Exhibit "D." Additionally, the Alleged Debtors assert that the facts of the instant case do not mirror the facts of any of the case law provided by Petitioners for the foregoing reasons, and because the identity of the parties in those cases was not in question. Here such issues *are* in question thereby necessitating face-to-face depositions in the United States.

As for the assertion that the U.S.-based Planet Depos referenced in Petitioners' Exhibit "D" to the Motion indicates that it does indeed conduct depositions in both Macau and Hong Kong, such is irrelevant to the matter at hand. The reason for this is that although this company may perform such depositions in both Hong Kong and Macau, it is important to again note that no indication of the *legality* of such depositions is offered by the respondent in the email exchange constituting that exhibit. To that end, the statement that "there will be no violation of U.S. or Chinese law to the knowledge of the Petitioners" is presumptuous, conclusory, and patently false. As such, any order by this Court to perform depositions there will likely to place the deponents and/or those conducting the depositions (whether by contract service or by counsel for the Alleged Debtors) in legal jeopardy.

Since the "Macau Option" was not argued at the August 17, 2020 hearing, since mainland Chinese nationals traveling to Macau must adhere to nearly identical quarantine protocols as those applied to Chinese travelers to the United States, and since there is no evidence to suggest that conducting depositions in Macau are legal under Chinese law, the Court should not consider such to be a "fair and equitable solution" or an "option" available to it.

C. ***The Court need not consider the Petitioners' new allegation against WALL010, LLC of a recent fraudulent transfer that would permit discovery previously restricted by the Court because such allegation fails to meet criteria envisioned in the standard for reconsideration and fails to recognize that such discovery violates the Court's restriction against motion and discovery practice until counsel for the Petitioners takes ordered action to resolve the deposition agreement issue***.

The allegation of fraudulent transfer cannot be properly brought in the Motion for Reconsideration. The reason for this is that counsel for the Petitioners is again attempting to present evidence of an issue that existed at the time of the initial motion adjudication, but which counsel failed to consider or broach at that time. Assuming arguendo that WALL010, LLC *had* executed a fraudulent conveyance (which it did not), such action occurring after the hearing of the underlying motion cannot disrupt the Court's prior ruling. In light of the standard applied to permit a motion for reconsideration and the case law cited above in support of such, it would be more appropriate for the Petitioners to raise such issue as the subject of a new motion to be litigated.

The fraudulent transfer argument also suffers from yet another serious issue: it is a clear and direct violation of the Court's Orders restricting all motion and discovery practice until counsel for Petitioners signs a live deposition agreement and files such with the Court, which, to date, it has failed to do. This requirement has been established in multiple rulings and Orders which include those in Docket No.'s 165, 166, 167, 168, and 169. The purpose of such is to ensure that the Alleged Debtors' concerns regarding identity and standing of the Petitioners are alleviated.

Apart from the fact that this issue may not be presented for the reasons already mentioned, it is also important to address the allegation of fraudulent conveyance itself. A careful examination of the documentation counsel for the Petitioners provides as Petitioner's Exhibit "E" to support its argument for fraudulent transfer shows that Alleged Debtor WALL010, LLC only held a Promissory Note in the principal amount of $300,000.00, not an interest in the Real Property. Furthermore, despite the arguments of counsel for the Petitioners to the contrary, no prior Court approval was required to affect a transfer, and the consideration that WALL010, LLC received for such is clearly stated in the documents provided. It must also be noted that there is no relationship between WALL010, LLC and the grantee receiving personal property identified in the instruments since they are entities separate and apart from one another, despite Mr. Barton's affiliation with the grantee.

As to the supposition that the Alleged Debtors only requested limitation of discovery so as to prohibit Petitioners from delving in to transfers, the Alleged Debtors respond that they do not, in fact, oppose discovery into such matters, and will gladly respond to any unobjectionable discovery requests exploring such *once counsel for Petitioners fulfills its obligations pursuant to the various Discovery Orders* which actually permit discovery into these extended matters. It is apparent that counsel for the Petitioners is attempting to use this allegation to circumvent the Court's restriction on discovery which was put in place to ensure face-to-face live depositions of Petitioners in the United States to alleviate concerns related to their existence, identity, and standing in this case. It is further obvious that the goal of counsel for the Petitioners is to inexplicably keep such issues unresolved, and to deflect the Court's attention away from such matters and onto others by legal slight-of-hand.

Another reason for not wanting to even consider dealing with the Petitioners in China is the reported threats made to various Chinese persons living in the United States connected with the Alleged Debtors or their representatives that if they cooperate with the Alleged Debtors or their counsel bad things may happen to their family members living in China.

Finally, counsel for the Petitioners is requesting relief from the Discovery Orders that is tantamount to a "fishing expedition" intended to buttress an unsupported and untrue supposition. However, as mentioned *supra*, the Alleged Debtors will be happy to respond to any unobjectionable discovery requests on the subject of transfers *after* Petitioners and their counsel follow through with all obligations required of them in the Discovery Orders.

## III. SPECIFIC ADMISSIONS AND DENIALS

Subject to the foregoing, the Alleged Debtors would respectfully show the Court as follows:

1. The Alleged Debtors admit the allegations in Paragraph 1 of the Motion that the Court has jurisdiction.

2. The Alleged Debtors admit the allegations in Paragraph 2 of the Motion that this is a core proceeding.

3. The Alleged Debtors admit the allegations in Paragraph 3 of the Motion that venue is proper.

4. The Alleged Debtors admit the allegations in Paragraph 4 of the Motion that Petitioners filed these proceedings.

5. The Alleged Debtors admit the allegations in Paragraph 5 of the Motion to the extent documents so provide.

6. The Alleged Debtors admit the allegation in Paragraph 6 of the Motion to the extent documents so provide.

7. The Alleged Debtors admit the allegations in Paragraph 7 of the Motion to the extent documents so provide.

8. The Alleged Debtors admit the allegations in Paragraph 8 of the Motion.

9. The Alleged Debtors admit the allegations in Paragraph 9 of the Motion.

10. The Alleged Debtors deny the allegation in Paragraph 10 of the Motion to the extent that the Petitioners have never fully responded to discovery.

11. The Alleged Debtors admit the allegation in Paragraph 11 of the Motion to the extent that a discussion occurred on the referenced date regarding Petitioners' objections to Alleged Debtor responses to discovery requests, but deny the allegation that such attempt was conducted in an amicable manner or with any intention to address Alleged Debtors' concerns related to such discovery requests.

12. The Alleged Debtors admit the allegations in Paragraph 12 of the Motion.

13. The Alleged Debtors admit the allegations in Paragraph 13 of the Motion to the extent documents so provide.

14. The Alleged Debtor are not required to admit or deny the allegation in Paragraph 14 of the Motion.

15. The Alleged Debtors are not required to admit or deny the allegation contained in Paragraph 15 of the Motion.

16. The Alleged Debtors are not required to admit or deny the allegation in Paragraph 16 of the Motion.

17. The Alleged Debtors admit the allegation in Paragraph 17 of the Motion only insofar as the referenced exhibit constituted a downloaded of a Center for Disease Control and Prevention ("CDC") web page that mentioned a "several Presidential proclamations" dealing with

travel restrictions imposed on persons traveling from thirty-seven (37) different countries, and further mentioning the existence of exceptions to such restrictions.

18. The Alleged Debtors admit the allegation in Paragraph 18 to the extent that it contains a faithful representation of two (2) paragraphs of a much longer Presidential proclamation concerning entry restrictions on persons traveling from China. It is notable, however, that counsel for the Petitioners conveniently omits the verbiage dealing with the *exceptions and limitations* to these entry restrictions present in Section 2 of such proclamation.

19. The Alleged Debtors admit the allegation in Paragraph 19 of the Motion to the extent documents so provide.

20. The Alleged Debtors admit the allegation in Paragraph 20 of the Motion, but notes that topics of the referenced Motions to Compel related in no way to the noticed depositions of the certain, yet unidentified, Petitioners.

21. The Alleged Debtors admit the allegation in Paragraph 21 of the Motion to the extent documents so provide.

22. The Alleged Debtors admit the allegation in Paragraph 22 of the Motion to the extent documents so provide.

23. The Alleged Debtors admit the allegation in Paragraph 23 of the Motion to the extent documents so provide.

24. The Alleged Debtors admit the allegation in Paragraph 24 of the Motion to the extent documents so provide. Notably, however, the statement that the Petitioners may not enter the United States due to travel restrictions imposed by Presidential proclamation is conclusory, presumptuous, and false.

25. The Alleged Debtors admit the allegations in Paragraph 25 of the Motion to the extent that the paragraph cited was indeed included in the Petitioners' "Quash Opposition," but the Alleged Debtors again reiterate the falsity of the statement that Petitioners are unable to enter the United States. The Alleged Debtors further assert that no evidence has ever been provided by Petitioners that the Chinese government has forbidden travel to the United States. Notably, the Alleged Debtors admit the allegation that quarantine restrictions may be imposed by both or either the United States or China to permit travel to this country.

26. The Alleged Debtors admit the allegations in Paragraph 26 of the Motion.

27. The Alleged Debtors admit the allegations in Paragraph 27 of the Motion, particularly to the portion of the cited transcript of the August 17, 2020 hearing that Petitioners are *permitted* to travel to the United States ***if they adhere to a 14-day quarantine requirement***. The Alleged Creditors assert that the Petitioners simply do not wish to do so or to appear in the United States in person.

28. The Alleged Debtors admit the allegations in Paragraph 28 of the Motion to the extent that it is a faithful restatement of the Court's comments in the August 17, 2020 hearing, but denies the allegation in such Paragraph that any travel "***ban***" exists. It does not.

29. The Alleged Debtors deny the allegation in Paragraph 29 of the Motion, and again reiterate their assertion that no travel "***ban***" on Chinese nationals is in place in the United States.

30. The Alleged Debtors admit the allegation in Paragraph 30 of the Motion.

31. The Alleged Debtors deny the allegation in Paragraph 31 of the Motion to the extent that no mention of "direct entry" is made in the Presidential proclamation, and that such does indeed provide that the Petitioners may enter the country and then enter quarantine since it states that "the United States should take all necessary and appropriate measures to facilitate orderly

medical screening and, where appropriate, quarantine of persons [from China] allowed to enter the United States who may have been exposed to this virus."

32. The Alleged Debtors deny the allegation in Paragraph 32 of the Motion, particularly since the Petitioners may potentially qualify as an "alien whose entry would not pose a significant risk of introducing, transmitting, or spreading the virus, as determined by the CDC Director, or his designee." Notably, no attempt has been offered or made by Petitioners or their counsel to seek approval for their entry or determination by the CDC that they do not pose such significant risk to public health.

33. The Alleged Debtors deny the allegation in Paragraph 33 of the Motion, and assert that the Petitioners have made no attempt to determine whether the Petitioners would be denied entry, or if any quarantine would be required of them by the CDC or other cognizant federal agency or entity. Additionally, the Alleged Debtors deny the allegation in Paragraph 33 of the Motion that there is any prohibition on "direct entry" from China. As such, all allegations in Paragraph 33 of the Motion are presumptuous, conclusory, and patently false.

34. The Alleged Debtors deny the allegations in Paragraph 34 of the Motion.

35. The Alleged Debtors deny the allegations in Paragraph 35 of the Motion, and asserts that counsel for the Petitioners disingenuously mischaracterizes the nature, scope, and limitations of the Presidential Proclamation as an outright "***ban***" specifically targeting the Petitioners, and forbidding them from "directly entering" the United States. This is patently untrue.

36. The Alleged Debtors deny the allegation in Paragraph 36 of the Motion.

37. The Alleged Debtors admit the allegation in Paragraph 37 of the Motion.

38. The Alleged Debtors deny the allegation in Paragraph 38 of the Motion.

39. The Alleged Debtors can neither admit nor deny the allegation in Paragraph 39 since such is conjecture on the path that Hong Kong may take in regard to permission of tourist travel there, particularly in light of both continuing local political unrest and the ongoing threat to public health posed by COVID-19 (currently assessed by the CDC as "high risk").

40. The Alleged Debtors admit the allegation in Paragraph 40 to the extent that the case cited does indicate that a telephone deposition was taken of Hong Kong-based witnesses in 2003 (less than four years after transfer of sovereignty), but asserts that while such depositions may have been allowed in the past when Hong Kong enjoyed more political and legal freedom, no evidence is provided to suggest that such depositions are indeed allowed today.

41. The Alleged Debtors admit the allegation in Paragraph 41 of the Motion to the extent that the U.S.-based Planet Depos referenced in Petitioning Creditor's Exhibit "D" to the Motion indicates that it does conduct depositions in both Macau and Hong Kong. However, it is important to note that no indication of the *legality* of such depositions is offered by the respondent in the email exchange.

42. The Alleged Debtors admit the allegation in Paragraph 42 of the Motion, but asserts that this Court by prior Order has established the manner in which depositions of Petitioners are to be taken in this case, namely in-person, in Dallas, Texas.

43. The Alleged Debtors can neither admit nor deny the allegation in Paragraph 43 of the Motion, but asserts that the Macau travel restriction only allows unfettered tourist travel by residents of Zhuhai, Guangdong Province while residents from the remainder of mainland China must adhere to travel restrictions mirroring those of the United States. Further, the allegation in Paragraph 43 continues to ignore the purposes for making the Petitioners appear in the United

States, namely whether they exist or not, whether they can prove their identity to the satisfaction of the Court, and whether they have indeed engaged in this lawsuit as a Petitioning Creditor.

44. The Alleged Debtors deny the allegation in Paragraph 44 of the Motion; there is no viable option to depose Petitioners in Macau, by video or otherwise.

45. The Alleged Debtors deny the allegations in Paragraph 45 of the Motion, particularly in light of the fact that no circumstances or relevant Chinese law has changed.

46. The Alleged Debtors deny the allegation in Paragraph 46 of the Motion, particularly as to the occurrence of any fraudulent conveyance by Alleged Debtor, WALL010, LLC, as such is defined by the terms of 11 U.S.C. § 548.

47. The Alleged Debtors deny the allegation in Paragraph 47 of the Motion, as the Alleged Debtor Wall010 LLC, on the Petition Date, only held a Promissory Note in the principal amount of $300,000, not an interest in the Real Property.

48. The Alleged Debtors admit the allegation in Paragraph 48 of the Motion.

49. The Alleged Debtors admit the allegation in Paragraph 49 of the Motion, as no prior Court approval was required, and the Alleged Debtor received the consideration stated in the documents.

50. The Alleged Debtors deny the allegations in Paragraph 50 of the Motion to the extent that the grantee receiving personal property of the instruments is an entity separate and apart from the Alleged Debtor Wall010, LLC, but admits the allegation in Paragraph 50 of the Motion that Mr. Barton is affiliated with the grantee.

51. The Alleged Debtors admit the allegation in Paragraph 51 of the Motion to the extent that this Court has limited discovery pending Petitioning Creditor's counsel's following through with certain requirements enumerated in the Discovery Orders, but denies that such Orders

specifically target matters involving transfers of property. Notably, however, counsel for Petitioners has not yet fulfilled its obligations pursuant to the various Discovery Orders permitting discovery into extended matters.

52. The Alleged Debtors admit the allegation in Paragraph 52 of the Motion to the extent that it is a faithful recitation of the referenced portion of the Court's August 19, 2020 opinion.

53. The Alleged Debtors are not required to admit or deny the allegations in Paragraph 53 of the Motion, but notes that the relief requested is tantamount to a "fishing expedition" intended to buttress an unsupported and untrue supposition. Alleged Debtors note that they will, however, be happy to respond to any unobjectionable discovery requests on the subject *after* Petitioners and their counsel follow through with all obligations required of them in the Discovery Orders.

54. The Alleged Debtors admit the allegations in Paragraph 54 of the Motion.

55. The Alleged Debtors admit the allegations in Paragraph 55 of the Motion to the extent that they generally reflect the holdings of the courts in the cited cases, but notes that a "movant must come forward and specifically identify those matters which it believes the Court has overlooked and why such matters would render the Court's prior decision erroneous." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl. Conservation*, 831 F. Supp. 57, 60-61 (N.D.N.Y. 1993), aff'd in part, rev'd in part, 17 F.3d 521 (2d Cir. 1994). Here, the Court's decision does not preclude discovery on the matter in question, but rather it only prohibits such until counsel for the Petitioners fulfills obligations mandated by the Court pursuant to the Discovery Orders. As such, there is no extant error in the Court's Discovery Orders.

56. The Alleged Debtors deny the allegations in Paragraph 56 of the Motion to the extent that there is no 11 U.S.C. § 59(e) in existence, but notes that the allegations do paraphrase language in the notes to decisions appended to Fed. R. Civ. P. 59.

57. The Alleged Debtors admit the allegation in Paragraph 57 of the Motion, but notes that the context of such allegation presumes that a "manifest error of law" must have been made or "newly discovered evidence" related to the judgement must have been unearthed. Here, neither has occurred since the Discovery Orders deal primarily with the topics of identity and standing of the Petitioners, and since the Discovery Orders actually permit Petitioners' counsel to conduct such discovery once it fulfills certain specific requirements enumerated in the Court's Discovery Orders.

58. The Alleged Debtors deny the allegations in Paragraph 58 of the Motion.

59. The Alleged Debtors deny the allegations in Paragraph 59 of the Motion, and reiterate that the statement that "there will be no violation of U.S. or Chinese law to the knowledge of the Petitioners" is presumptuous, conclusory, and patently false.

60. The Alleged Debtors are not required to admit or deny allegations in Paragraph 60 of the Motion, but again note that the Petitioners have not provided evidence received from any Chinese legal, judicial, or political official regarding the legality of the suggested depositions that counsel for the Petitioners proposes should be taken in Macau. Further, whether the Petitioners agree to remote video or live depositions and the timeframe within which they can be scheduled are irrelevant in light of the question of their legality and in light of the purpose for which face-to-face depositions are to be conducted in the United States (namely verification of both identification and standing of the persons purporting themselves to be Petitioners).

61. The Alleged Debtors admit the allegation in Paragraph 61 of the Motion.

62. The Alleged Debtors deny the allegation in Paragraph 62 of the Motion to the extent that the full context cited case law was not provided.

63. The Alleged Debtors deny the allegations in Paragraph 63 of the Motion to the extent that counsel for the Petitioners mischaracterizes restrictions on Chinese travelers to the United States envisioned in the Presidential proclamation, and since counsel has failed to properly address the issue of legality of the supposed "legal option now available" as argued *supra*.

64. The Alleged Debtors deny the allegation in Paragraph 64 of the Motion and reiterates that the legality of taking depositions in Macau (which is subject to Chinese law) is in question since counsel for the Petitioners has failed to solicit any legal opinion on the matter from the only government which may decide such issue, namely the government of the People's Republic of China.

65. The Alleged Debtors are not required to admit or deny the allegations in Paragraph 65 of the Motion, but notes that no reason exists to "revisit the Petitioners' Compel Order," and reiterates that the requested relief (i.e. to conduct additional discovery on ancillary matters) would result naturally from the terms of the Discovery Orders if counsel for the Petitioners would strictly simply adhere to the requirements imposed on it by the terms of the Discovery Orders.

66. The Alleged Debtors deny the allegation in Paragraph 66 of the Motion that it has provided the Court with *any* option deemed legal and approved by the Chinese government, and as such assert that modification of the Discovery Orders would be both incautious and presumptuous at best, and would result in action that is illegal under Chinese law at worst.

## IV. CONCLUSION

While counsel for the Petitioners has timely filed a motion for what would be considered under Fed. R. Civ. P. 59(e) as a "substantive alteration of the judgment," the Motion itself fails to

adhere to the requirements of Fed. R. Civ. P. 60(b)(6) that would permit the Court to amend its Discovery Orders. Specifically, it is clear that Court has committed no "manifest error of fact or law" when it accurately interpreted the Presidential Proclamation issued on January 31, 2020 as permitting the Petitioners travel from China to the United States for the purpose of conducting ordered in-person face-to-face depositions which will serve to alleviate Alleged Debtors concerns regarding the Petitioners' identity and standing in this case. Second, counsel for Petitioning Creditors is attempting to impermissibly offer evidence and arguments that were available to it at the time of the August 17, 2020 hearing concerning the Petitioners' various motions to compel discovery, but which it failed to consider or present during such hearing. Third, counsel for Petitioners has failed to demonstrate how any "manifest injustice" has been inflicted upon its clients. Finally, counsel for Petitioners has failed to show that controlling law (i.e. that of the People's Republic of China which forbids foreign nationals from taking of depositions of Chinese citizens on Chinese soil) has in any way changed to permit such depositions.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, WALL007, LLC et al. request that this Court enter an order denying the relief requested in the Motion, and for such other and further relief to which it may be justly entitled.

Dated: September 23, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry Alleyne-Simmons
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
Attorneys for Alleged Debtors

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 23, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer