

# NATIONAL APPRAISAL PARTNERS, LLP

## COMMERCIAL REAL ESTATE APPRAISAL AND CONSULTING SERVICES

**HOUSTON**
3203 Edloe Street
Houston, Texas 77027
713.463.8761

**AUSTIN**
108 Wild Basin Road South, Suite 250
Austin, Texas 78746
512.650.6598

**DALLAS/FORT WORTH**
1910 Pacific Avenue, Suite 13750
Dallas, Texas 75201
214.205.3622

**SAN ANTONIO**
7272 Wurzbach Road, Suite 1001
San Antonio, Texas 78240
210.488.1735

**TEMPLE/KILLEEN**
3 Holly Crossing
Belton, Texas 76513
254.233.9839

WWW.NAPLLP.COM

# APPRAISAL OF

# A 195.472 ACRE TRACT OF LAND

LOCATED AT

## 10901 COUNTY ROAD 506
## VENUS, JOHNSON COUNTY, TEXAS 76084

**DATE OF VALUE**
**AUGUST 25, 2020**

**DATE OF REPORT**
**OCTOBER 6, 2020**

**DATE OF INSPECTION**
**AUGUST 25, 2020**

**PREPARED FOR**

**THE VIDA LAW FIRM, PLLC**
3000 CENTRAL DRIVE
BEDFORD, TEXAS 76021

**PREPARED BY**

**NATIONAL APPRAISAL PARTNERS LLP**

**NAP LLP FILE #: 20-1069**

NATIONAL APPRAISAL PARTNERS, LLP

October 6, 2020

Mr. Behrooz P. Vida
The Vida Law Firm, PLLC
3000 Central Drive
Bedford, Texas 76021

**Re: Appraisal of a 195.472 acre tract of land located at 10901 County Road 506 in Venus, Johnson County, Texas 76084**

Dear Mr. Vida,

At your request we have appraised the above referenced property. The purpose of this appraisal is to provide an estimate of the market value of the fee simple interest of the above referenced property as of the date of inspection, or August 25, 2020. **After dropping precipitously between January and late April, oil prices have begun to rebound and have returned to approximately 40% below their 2020 peak. Along with the engineered stoppage of most of the economy due to COVID-19, these two recent factors have affected the real estate market. Recently, the Governor began reopening the Texas economy in phases, which will have a positive effect on the real estate market. We have attempted to reflect current market conditions in light of these recent events.**

The subject property consists of 195.472 acres or 8,514,762 square feet of vacant land located at the southwest corner of County Road 506 and FM 157 in Venus, Johnson County, Texas. The subject property address is 10901 County Road 506, Venus, Johnson County, Texas 76084.

The intended use of this appraisal is for litigation purposes by The Vida Law Firm, PLLC. We have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.

Our valuation was prepared in conformance with the Uniform Standards of Professional Appraisal Practice ("USPAP") of The Appraisal Foundation, and with regulations adopted by the Department of the Treasury, Office of the Comptroller of the Currency, required under Title XI of the Financial Institution Reform, Recovery, and Enforcement Act of 1989. This Appraisal Report is the written result of our findings and analysis. These opinions are to be used solely for the purposes stated above and are subject to the accompanying definition of market value and Statement of General Assumptions and Limiting Conditions.

Extraordinary Assumptions (the use of which might have affected the assignment results herein):

1. During our inspection, we noticed a barn and a shed on the subject site. The site improvements are in poor condition and do not contribute any value to the property. Therefore, we have not included these related site improvements in our analysis.

Hypothetical Conditions (the use of which might have affected the assignment results herein):

1. There are no Hypothetical Conditions for this appraisal.

Based on the investigation described in this report, the market value of the fee simple interest of the subject property as of the date of inspection, or August 25, 2020, is as follows:

**LESS THAN ONE MILLION SIX HUNDRED THOUSAND DOLLARS**
**< $1,600,000**

We appreciate the opportunity to perform this service for The Vida Law Firm, PLLC.

Sincerely,

NATIONAL APPRAISAL PARTNERS, LLP

Nathan D. Riley, MAI, Senior Manager
State Certified General Real Estate Appraiser
TX-1335486-G

Attachments

# EXECUTIVE SUMMARY

**Property Identification**

| | |
|---|---|
| Property Appraised: | 195.472 acre tract of land |
| Address: | 10901 County Road 506<br>Venus, Johnson County, Texas 76084 |
| Location: | SW/C of County Road 506 and FM 157 |
| Date of Inspection: | August 25, 2020 |
| Date of Value: | August 25, 2020 |
| Interest Appraised: | Fee Simple |

**Property Data**

| | |
|---|---|
| Land Area: | 8,514,762 Square Feet<br>195.472 Acres |
| Highest and Best Use | |
| Site As Vacant: | Hold the site for future residential development when demand warrants with interim agricultural use |
| Property As Improved: | N/A |
| Marketing/Exposure Time: | 12 months or less |

**Value Indications**

| | Aggregate | Per Acre |
|---|---|---|
| Cost Approach: | N/A | N/A |
| Sales Comparison Approach: | < $1,600,000 | $8,185 |
| Income Capitalization Approach: | N/A | N/A |
| **Final Value Estimate:** | **< $1,600,000** | **$8,185** |




**Aerial view of the subject property**



**Looking northeast along County Road 506 with the subject on the left**




**Looking southwest along County Road 506 with the subject on the right**



**Looking southeast along FM 157 with the subject property on the right**



View of the subject site



View of the subject site



View of the subject site



Exterior view of the barn and shed (see Extraordinary Assumptions 1)

# TABLE OF CONTENTS

| | Page |
|---|---|
| Letter of Transmittal | i |
| Executive Summary | iii |
| Subject Photographs | iv |
| Table of Contents | viii |
| **SECTION I - SCOPE OF THE APPRAISAL** | |
| SCOPE OF WORK | 1 |
| DATE OF THE APPRAISAL | 1 |
| PURPOSE AND INTENDED USE OF THE APPRAISAL | 1 |
| PROPERTY RIGHTS APPRAISED | 1 |
| DEFINITION OF MARKET VALUE | 2 |
| **SECTION II - GENERAL DATA** | |
| PROPERTY IDENTIFICATION | 3 |
| OWNERSHIP HISTORY OF THE PROPERTY | 3 |
| EXPOSURE/MARKETING PERIOD | 3 |
| AREA ANALYSIS | 4 |
| NEIGHBORHOOD ANALYSIS | 9 |
| SITE ANALYSIS | 12 |
| **SECTION III - HIGHEST AND BEST USE** | |
| SITE AS VACANT | 18 |
| **SECTION IV - SALES COMPARISON APPROACH** | |
| INTRODUCTION | 20 |
| COMPARATIVE ANALYSIS | 23 |
| SALES COMPARISON APPROACH CONCLUSION | 25 |
| **SECTION V - RECONCILIATION AND FINAL VALUE ESTIMATE** | 26 |
| **SECTION VI - CERTIFICATION, STATEMENT OF GENERAL ASSUMPTIONS AND LIMITING CONDITIONS** | |
| CERTIFICATION | 27 |
| STATEMENT OF GENERAL ASSUMPTIONS AND LIMITING CONDITIONS | 28 |
| **SECTION VII - ADDENDA** | |
| Land Sale Write-ups | |
| Subject Legal Description | |
| Qualifications | |
| State Certifications | |

# SCOPE OF THE APPRAISAL

## Scope of Work

The scope of this appraisal involved the systematic research and analysis necessary to reach a value conclusion for the subject. The initial step was to inspect the subject property and the surrounding area. The extent of our inspection of the subject property included an inspection of the subject site and the surrounding neighborhood. After analyzing the macro environment, research was conducted relevant to the valuation process, including gathering comparable land sales and listings, real estate tax data and other pertinent information. We have completed the Sales Comparison Approach to value for this appraisal. This is the only appropriate approach to value a property similar to the subject, and the scope of work defined herein is adequate to derive a credible value opinion of the subject property. The Cost and Income Capitalization Approaches are not appropriate approaches to value similar tracts of vacant land. Therefore, we have not completed the Cost or Income Capitalization Approaches for this appraisal. This Appraisal Report is the written result of our findings and analysis.

## Date of the Appraisal

The date of the market value of the fee simple interest of the subject property is the date of inspection, or August 25, 2020. The date of this report is October 6, 2020.

## Purpose and Intended Use of the Appraisal

The purpose of this appraisal is to estimate the market value of the fee simple interest of the subject property. The intended use of this appraisal is for litigation purposes by The Vida Law Firm, PLLC. This report is for the exclusive use of The Vida Law Firm, PLLC, its affiliates, designates and assignees and no other party shall have any right to rely on any service provided by National Appraisal Partners, LLP without prior written consent. The client for this appraisal is The Vida Law Firm, PLLC.

## Property Rights Appraised

Fee simple interest, as used herein, is defined by *The Dictionary of Real Estate Appraisal*, Sixth Edition, as:

> *Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power and escheat.*

**Definition of Market Value**

The current definition of market value, as defined by the Financial Institution Reform, Recovery and Enforcement Act (FIRREA), effective August 24, 1990, is as follows:

> *The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:*

1. *Buyer and seller are typically motivated;*
2. *Both parties are well informed or well advised, and acting in what they consider their own best interests;*
3. *A reasonable time is allowed for exposure in the open market;*
4. *Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and*
5. *The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.*

# GENERAL DATA

## Property Identification

A brief legal description of the subject property is as follows:

*195.472 acres, being in the J. N. Ely Survey, Abstract 261, Johnson County, Texas.*

The subject property consists of 195.472 acres or 8,514,762 square feet of land which is located at the southwest corner of County Road 506 and FM 157 in Venus, Johnson County, Texas. The subject property address is 10901 County Road 506, Venus, Johnson County, Texas 76084.

## Ownership History of the Property

According to the Central Appraisal District of Johnson County, the current owner of record for the subject property is Carnegie Development. Carnegie Development acquired the subject property from ASCO Land, LLC on December 21, 2018 for $3,510,000 or $17,956 per acre. Based on the analysis presented herein, the prior sale price was significantly above a market level at the time of the sale. The subject property was originally listed for sale for $1,500,000 or $7,673 per acre in July 2018. Based on the analysis presented herein, the prior original listing price was near a market level. During our confirmation efforts, including a conversation with the listing broker, we were unable to determine why the subject property sold for significantly higher than the listing price. The listing broker did not confirm the sale price during our interview. The subject property is not currently being offered for sale nor are any sales currently pending. Based on our research, there have been no other transactions involving the subject property over the past three years.

## Exposure/Marketing Period

The comparable sales used in this appraisal and our interviews with local market participants indicate that the exposure/marketing period for properties similar to the subject is typically less than one year. Therefore, we estimate an exposure/marketing period of 12 months or less for the subject property.

## Area Analysis

The subject property is located within the Dallas-Fort Worth-Arlington Metropolitan Statistical Area (MSA), which includes Collin, Dallas, Delta, Denton, Ellis, Hunt, Johnson, Kaufman, Parker, Rockwall, Tarrant and Wise Counties. The subject property is heavily influenced by factors affecting the Cities of Dallas, Fort Worth, Arlington and the immediate outlying areas.

The Cities of Dallas, Fort Worth and Arlington cover approximately 776 square miles of land (340 square miles, 340 square miles and 96 square miles, respectively). The Dallas-Fort Worth International Airport, a high concentration of corporate headquarters and the financial industry are significant influences on the area. Dallas is the ninth most populous city in the United States and is the third most populous in Texas. Dallas is the county seat of Dallas County.

### Population

Dallas-Fort Worth-Arlington MSA, State of Texas and United States population trends are presented on the table below.

| Population Growth and Forecasts | | | | | |
|---|---|---|---|---|---|
| | **2010** | **2020** | **Annual % Change** | **2025 Projection** | **Annual % Change** |
| **DFWA MSA** | 6,366,542 | 7,779,502 | 2.47% | 8,518,266 | 1.90% |
| Texas | 25,145,561 | 29,806,340 | 2.06% | 32,172,745 | 1.59% |
| United States | 308,745,538 | 333,793,107 | 0.90% | 346,021,282 | 0.73% |

*Source: STDB Online*

The Dallas-Fort Worth-Arlington MSA experienced strong population growth from 2010 to 2020. The Dallas-Fort Worth-Arlington MSA population growth rate exceeded the state and the nation during the period. Population growth for the Dallas-Fort Worth-Arlington MSA is projected to exceed the state and national growth rates between 2020 and 2025.

### Income

The following table summarizes median household income for the Dallas-Fort Worth-Arlington MSA, the State of Texas and the United States.

| Median Household Income | | | |
|---|---|---|---|
| | **2020** | **2025 Projection** | **Annual % Change** |
| **DFWA MSA** | $70,779 | $76,119 | 1.51% |
| Texas | $60,820 | $65,282 | 1.47% |
| United States | $62,203 | $67,325 | 1.65% |

*Source: STDB Online*

The median household income for the Dallas-Fort Worth-Arlington MSA is greater than the State of Texas and the United States. Median household income growth for the Dallas-Fort Worth-Arlington MSA is projected to exceed the State of Texas and trail the United States through 2025.

**Employment**

The following table summarizes historic employment levels for the Dallas-Fort Worth-Arlington MSA and the State of Texas.

| Employment | | | | |
|---|---|---|---|---|
| | DFWA MSA | | Texas | |
| Year | Total | % Change | Total | % Change |
| 2015 | 3,437,575 | -- | 12,505,617 | -- |
| 2016 | 3,556,958 | 3.5% | 12,720,226 | 1.7% |
| 2017 | 3,665,988 | 3.1% | 12,989,682 | 2.1% |
| 2018 | 3,751,938 | 2.3% | 13,285,118 | 2.3% |
| 2019 | 3,842,012 | 2.4% | 13,551,791 | 2.0% |
| 2020 (July) | 3,650,289 | -5.0% | 12,705,927 | -6.2% |

*Source: Texas A&M Real Estate Center*

Over the past four full years, employment growth in the Dallas-Fort Worth-Arlington MSA has averaged 2.8% per year. The average employment growth for the State of Texas was 2.0% over the same period. As a result of COVID-19, employment growth is negative for both the State of Texas and the Dallas-Fort Worth-Arlington MSA as of July 2020.

The following chart outlines Dallas-Fort Worth-Arlington MSA employment growth rates by industry sector over the past twelve months.




*Source: U.S. Bureau of Labor Statistics August 2020*

As a result of COVID-19, nine sectors are reporting employment declines over the past 12 months. The largest declines occurred in the leisure and hospitality sector (-19.8%) and the other services sector (-7.1%). Positive employment growth occurred in the financial activities sector only (3.1%).

The following table lists the top five employers in the Dallas-Fort Worth-Arlington MSA.

| Top Five Employers | |
|---|---|
| **Employer** | **# Local Employees** |
| Wal-Mart | 34,000 |
| American Airlines Group | 27,000 |
| Texas Health Resource | 22,296 |
| Dallas ISD | 19,740 |
| AT&T | 17,000 |

*Source: Dallas Comprehensive Annual Financial Report 2019*

**Unemployment**

The following chart tracks unemployment rates for the Dallas-Fort Worth-Arlington MSA, the State of Texas and the United States over the past six years.




*Source: U.S. Bureau of Labor Statistics July 2020*

The Dallas-Fort Worth-Arlington MSA unemployment rate continuously declined between 2014 and February 2020. The Dallas-Fort Worth-Arlington MSA unemployment rate has been below the United States and the State of Texas between 2014 and 2020. The unemployment rate significantly increased during March and April 2020 due to the halt in the economy as a result of the coronavirus,

COVID-19. However, unemployment rates have started to decrease as of May 2020 and are expected to continue decreasing as the economy stabilizes and businesses reopen.

In late January 2020 the World Health Organization declared a public health emergency in response to the spread of a novel coronavirus (COVID-19), leading to travel restrictions and business disruptions around the globe. Locally and throughout Texas and the United States, state and local governments enacted "stay at home" orders requiring citizens to "social distance" themselves and prohibiting "non-essential" businesses from normal operations, which has had a significant impact on the overall economy for the Dallas-Fort Worth-Arlington MSA, the State of Texas and the United States.

The COVID-19 pandemic has also caused significant changes in energy fuel supply and demand patterns. Crude oil prices, in particular, have fallen significantly since the beginning of 2020, largely driven by the economic contraction caused by COVID-19 and a sudden increase in crude oil supply following the suspension of previously agreed upon production cuts among the Organization of the Petroleum Exporting Countries (OPEC) and partner countries. West Texas Intermediate crude oil fell moderately during January and February from $63.27 per barrel during the first week of January to $44.83 per barrel during the last week of February. However, the price of West Texas Intermediate fell sharply during the months of March and April, including negative prices during the week of April 20th. Since the end of April, the price of West Texas Intermediate has increased gradually to a price of $39.99 per barrel as of mid-September. As a result of the oversupply and the falling prices, production of crude oil in Texas and by Texas based companies has decreased dramatically, resulting in significant layoffs and unemployment.

**Conclusion**

Overall, the outlook for the Dallas-Fort Worth-Arlington MSA is cautious. The uncertainty surrounding the coronavirus, COVID-19, and the drop in oil prices will affect the Dallas-Fort Worth-Arlington MSA's economy. Longer term, population growth, employment and household income growth levels are projected to stabilize.

**Area Map**


Paradise
Corinth
Little Elm
Frisco
Fairview
Farmersville
Floyd
Argyle
Highland Village
Lewisville Lake
The Colony
Allen
Lucas
Lavon Lake
Caddo Mills
Boyd
Rhome
Justin
Lewisville
Plano
Murphy
Wylie
Lavon
Briar
Roanoke
Flower Mound
Carrollton
Royse City
Poolville
Agnes
Springtown
Keller
Grapevine
Farmers Branch
Richardson
Fate
Rockwall
Carter
Azle
Garland
Rowlett
Peaster
Saginaw
North Richland Hills
Euless
University Park
Heath
Lake Worth
Haltom City
Irving
Sunnyvale
Poetry
Weatherford
Willow Park
White Settlement
Fort Worth
Arlington
Grand Prairie
Dallas
Mesquite
Forney
Terrell
Elmo
Annetta
Aledo
Balch Springs
Talty
Annetta South
Benbrook
Forest Hill
Duncanville
Hutchins
Seagoville
Crandall
Oak Ridge
Post Oak Bend City
Cedar Hill
DeSoto
Lancaster
Wilmer
Combine
Kaufman
Winscott
Crowley
Burleson
Subject
Red Oak
Ferris
Oak Grove
Scurry
Cresson
Oak Trail Shores
Briaroaks
Midlothian
Joshua
Granbury
Godley
Venus
Rosser
DeCordova
Kemp
Keene
Alvarado
Palmer
Ike
Crisp
Waxahachie
Pecan Plantation
Cleburne
Garrett
Bono
Ennis
Maypearl
Aley
Alma
Rainbow
Nemo
Grandview
Bardwell
Forreston
Tool
Glen Rose
Rio Vista
Rice
Chatfield
Glass
Brazos Point
Covington
Avalon
Rankin
Italy

## Neighborhood Analysis

### Neighborhood Defined/Location

The subject property is located in northeast Johnson County. The neighborhood is roughly bound by FM 917, Lone Star Road and County Road 511 to the north, U.S. Highway 67 to the south, County Road 506 and V. V. Jones Road to the east and FM 2738 to the west. The neighborhood includes portions of unincorporated Johnson County and Ellis County and portions of the City of Venus and the City of Lillian. The neighborhood is located approximately twenty two miles southeast of the Fort Worth Central Business District and twenty eight miles southwest of the Dallas Central Business District.

### Predominant Development/Stage of Development

The neighborhood is predominantly rural with residential and retail/commercial development scattered throughout. The neighborhood also includes tracts of vacant land. Retail/commercial development in the neighborhood includes hotels, retail centers, restaurants and freestanding retail buildings. Residential and retail/commercial development is concentrated along the primary roadways in the neighborhood such as FM 917, U.S. 67, FM 2738 and FM 157. Residential development is scattered throughout the neighborhood, predominantly along secondary thoroughfares. Industrial development is located along primary and secondary roadways in the subject neighborhood, on freestanding sites and within industrial parks. Overall, the subject neighborhood is established, with new development and redevelopment occurring.

The subject is approximately four miles northwest of the RailPort Business Park. The RailPort Business Park is located at the south intersection of the U.S. 67 and Railport Parkway and includes an 1,700 acre development for distributors and manufacturing operators including Target (1,350,000 square feet) which employs 455 employees, QuikTrip (260,000 square feet) which employs 75 employees and the Google Data Center. The Google Data Center is still under construction and will include 260,000 square feet facility on a 375 acre tract within the RailPort Business Park. The business park includes dual rail services provided by the Union Pacific and BNSF (Burlington Northern Santa Fe), water distribution system, industrial sanitary sewer system, lighted roads to accommodate tractor-trailer traffic and a redundant loop-fed electrical system.

The subject is approximately five miles west of the Martin-Marietta Midlothian Cement Plant. In 1959, Texas Industries, Inc. began construction on the cement plant, which was the first to be constructed in Texas. By 1967, the cement plant had a total of three kilns. In 1972, the fourth kiln was added and the fifth was added in 2003. In 2015, the plant was then purchased by Martin Marietta. The plant currently employs 173 people.

### Accessibility

Primary north/south roadways in the subject neighborhood include FM 2738 and FM 157. Primary east/west roadways in the subject neighborhood include FM 917 and U.S. 67. Overall, the accessibility of the neighborhood is average.

**Immediate Vicinity**

The immediate vicinity of the subject property includes a mixture of industrial and residential development and tracts of vacant land. The following chart outlines land uses adjacent to the subject site.

| | |
|---|---|
| North: | County Road 507, Single-Family Residences |
| South: | County Road 506, Vacant Land, Single-Family Residences , County Road 501, Vacant Land |
| East: | FM 157, Single-Family Residences, Industrial Building, Single-Family Residences, Vacant Land |
| West: | Vacant Land, County Road 615, Vacant Land |

**Conclusion**

The subject neighborhood includes primarily a mixture of retail/commercial, industrial and residential development and tracts of vacant land. Overall, the subject neighborhood is established with new development and redevelopment occurring. The neighborhood has good access to other portions of the Dallas/Fort Worth Area. The outlook for the neighborhood is optimistic. A neighborhood map follows.

## Neighborhood Map



## Site Analysis

The following is a description of the physical characteristics of the subject site. A survey, a plat map, a flood plain map and an Ad Valorem Tax Schedule exhibit of the subject site follow this site analysis section.

### Location

The subject site is located at the southwest corner of County Road 506 and FM 157, in Venus, Johnson County, Texas. The subject property address is 10901 County Road 506, Venus, Johnson County, Texas 76084.

### Size/Shape

The subject site contains 195.472 acres or 8,514,762 square feet of land area and is rectangular in shape.

### Accessibility/Frontage

The site has 2,150.64 feet of frontage along the north side of County Road 506, 3,573.99 feet of frontage along the southwest side of FM 157 and 2,329.19 feet of frontage along the south side of County Road 507. County Road 506 is a two-lane, two way asphalt paved secondary roadway with open ditch drainage in the vicinity of the subject. FM 157 is a two-lane, two way asphalt paved primary roadway with open ditch drainage in the vicinity of the subject. County Road 507 is a two-lane, two way asphalt paved secondary roadway with open ditch drainage in the vicinity of the subject. Overall, the access/frontage of the site is good.

### Topography

The subject site is basically level and at the grade of the adjacent roadways.

### Flood Plain

According to FEMA Map Community Panel Number 48251C0225J dated December 4, 2012, the majority of subject is located in flood zone X, outside of the flood plain. There is a seasonal creek that runs from the west boundary line to the east boundary line in the center of the subject site. Approximately, 19 acres are located in the flood zone A, inside 100-year flood plain, which has limited impact on the developability of the site.

### Zoning

The subject site is located within the Extra-Territorial Jurisdiction (ETJ) of the City of Venus and is not subject to zoning.

**Utilities and Services**

The subject site does not have access to public water and sewer services. Based on our conversation with a representative of the City of Venus Utility Department, there are no current plans to extend to water/sewer utilities in the vicinity of the subject site. The nearest MUD district (Mountain Peak Special Utility District) water line is over a mile away from the subject site. Electricity is provided to the site by various providers.

**Easements and Encroachments**

The site has typical utility easements which do not appear to impact the development potential of the site.

**Environmental Considerations**

During our inspection we did not notice any obvious environmental hazards associated with the subject site. However, we are not qualified to detect such hazards and the valuation herein assumes that the site is free and clear of any environmental problems.

**Agricultural Exemption**

The subject site is currently classified as agricultural land by the Central Appraisal District of Johnson County. The assessed value is based on the land's capacity to produce crops, livestock, or timber, instead of its value on the real estate market. This lower value reduces property taxes on the land. Texas law stipulates that if agricultural land is changed to a use that is not an agricultural use; a rollback tax will be assessed for each of the previous five years in which the land received an agricultural exemption. The rollback tax is the difference between the taxes paid on the land's agricultural value and the taxes that would have been paid if the land had been taxed on its higher market value. In addition, 7% interest is charged for each year from the date that the taxes would have been due. As is typical in the subject market (and considering the site's highest and best use), the buyer of the subject site would be responsible for the payment of any rollback taxes incurred.

**Conclusion**

The subject site is located at the southwest corner of County Road 506 and FM 157 in Venus, Johnson County, Texas. The size and shape of the site are well suited for development. The access/frontage of the site is good. No public water/sewer utilities are available to the site. Electricity is available to the subject site. Overall, the development potential of the subject site is average. A survey, a plat map, a flood plain map and an Ad Valorem Tax Schedule exhibit of the subject site follow.




# SURVEY PLAT
## showing
## 195.472 ACRES
## in the
## JOHN N. LLY SURVEY
## ABSTRACT No. 857
## JOHNSON COUNTY, TEXAS

BEING a 195.4720 acre tract of land situated in the John N. Ely Survey, Abstract No.261, Johnson County, Texas and being all that certain called 195.501 acre tract of land described in Deed from Randolph M. Roten and Lisa Renne Roten to BSAG Properties Ltd. And recorded in Volume 4444, Page 156 of the Real Property Records of Johnson County, Texas.

BEGINNING at a RR Spike set for corner in County Road 506 at the East corner of said 195.501 acre tract of land and being at intersection of the Southwest line of Farm-to-Market Road No. 157 with the Southeast line of said 195.501 acre tract, said corner also being in the in the established Southeast line of said Ely Survey, same being the established Northwest line of the Absalom Williams Survey, Abstract No. 857;

THENCE South 59°40'46" West with said Survey lines and the Southeast line of said 195.501 acre tract a distance of 2,150.64 feet to a RR Spike found for corner at the South corner of said 195.501 acre tract, same being the East corner of a called 0.6 acre save and accept tract from the called 200 acre parent tract recorded in Volume 2170, Page 901 of said Real Property Records;

THENCE North 49°15'24" West across said Ely Survey and with the Southwest line of said 195.502 acre tract a distance of 444.86 feet to a ½" iron rod found for corner at an angle corner in said Southwest line, same being the Northeast line of a called 124.051 acre tract of land described in Deed from Virginia D. Rhinehart to Derrell G. Leonard and recorded in Volume 3557, Page 778 of said Real Property Records;

THENCE North 30°22'29" West with said Southwest and Northeast lines at a distance of 2921.20 feet passing a 5" metal corner post found for corner at the North corner of the above referenced 124.051 acre tract of land, same being the East corner of that certain called 12.027 acre tract of land, Tract Two described in Deed from R. Pratt Phillips, et ux to Harper Cattle, L.L.C. and recorded in Volume 2476, Page 646 of said Real Property Records and continuing a total distance of 3,304.29 feet to RR spike found for the West corner of said 195.502 acre tract and being in County Road 507, the established Northwest line of said John N. Ely Survey, same being the Southeast line of the J. W. Harris Survey, Abstract No. 1072;

THENCE North 59°22'28" East with County Road 507, the Northwest line of said 195.502 acre tract and the Northwest line of said Ely Survey, same being the Southeast line of said Harris Survey a distance of 2,329.19 feet to a RR spike found for corner at the North corner of said 195.502 acre tract, same being the established North corner of said Ely Survey and being in the Southwest line of the J. Ware Survey, Abstract No. 913;

THENCE South 30°27'55" East with the Northeast line of said Ely Survey, the Northeast line of said 195.502 acre tract and the Southwest line of said Ware Survey a distance of 162.69 feet to a ½" iron rod found for corner in the Southwest line of Farm-to-Market Road No. 157 and being at the beginning of a non-tangent curve to the left;

THENCE in a Southeasterly direction with said curve to the left having a radius of 358.31 feet, whose chord bears South 16°46'07" East -169.20 for an arc length of 170.81 feet;

THENCE with the East line of said 195.502 acre tract and the Southwest line of said Farm-to-Market Road the following:
South 30°27'37" East a distance of 454.30 feet to a ½" iron rod found for corner;
South 24°44'51" East a distance of 100.50 feet to a ½" iron rod set for corner with cap marked "SANDS";
South 30°27'29" East a distance of 1,400.00 feet to a ½" iron rod set for corner with cap marked "SANDS";
South 36°10'07" East a distance of 100.50 feet to a ½" iron rod set for corner with cap marked "SANDS";
THENCE South 30°27'29" East a distance of 1,356.00 feet back to the POINT OF BEGINNING AND CONTAINING 8,514,762 square feet or 195.4720 acres of land more or less

B10C) T.T. & T Easement recorded in Volume 422, Page 155, of the Real Property Records of Johnson County, Texas, as shown on survey dated August 29, 2008 prepared by Walter Keven Davis, RPLS No. 4466. DOES AFFECT AS SHOWN

B10d) ETC Texas Pipeline LTD Easement recorded in Volume 4410, Page 98, of the Real Property Records of Johnson County, Texas, as shown on survey dated August 29, 2008 prepared by Walter Keven Davis, RPLS No. 4466. DOES AFFECT AS SHOWN

B10e) Easement recorded in Volume 4429, Page 620, of the Real Property Records of Johnson County, Texas. DOES AFFECT AS SHOWN

B10f) All interest in all of the oil, gas, and other minerals in and under the herein described property, including royalties, bonuses, rentals and all other rights, as reserved in instrument recorded in Volume 4444, Page 156, of the Real Property Records of Johnson County, Texas, together with all rights, express or implied in and to the property herein described, arising out of or connected with said interest and reservation, reference to which instrument is here made for all purposes. Title to said interest has not been investigated subsequent to the date of the aforesaid instrument. NOT WITHIN SCOPES OF SURVEYING LICENSING

B10g) Lease for coal, lignite, oil, gas or other minerals, together with rights incident thereto, recorded in Volume 22, Page 414, of the Real Property Records of Johnson County, Texas. Reference to which instrument is here made for particulars. No further search of title has been made as to the interest(s) evidenced by this instrument, and the Company makes no representation as to the ownership or holder of such interest(s). NOT WITHIN SCOPES OF SURVEYING LICENSING

B10h) Lease for coal, lignite, oil, gas or other minerals, together with rights incident thereto, recorded in Volume 2673, Page 383, of the Real Property Records of Johnson County, Texas. Reference to which instrument is here made for particulars. No further search of title has been made as to the interest(s) evidenced by this instrument, and the Company makes no representation as to the ownership or holder of such interest(s).

B10i) Ordinance 425-2016 recorded on March 18, 2016 in County Clerk's File No. 2016-6107, Official Public Records, Johnson County, Texas. DOES AFFECT

B10j) Second Amendment of Declaration of Pooled Unit Leonard Unit in Volume 4396, page 615. Does Affect As Shown.

*I, J. Scott Cole, Registered Professional Land Surveyor No. 5411, do hereby certify to all parties named in the Title Commitment issued September 25, 2017 and bearing the Commitment No. 17-0003208HK1 that this plat is the result of a survey made by me or under my direction on the ground of the property shown hereon, the lines and dimensions of said property being as indicated by this plat, the size, location and types of buildings and improvements are as shown, set back from the property lines the distances indicated. This original work is protected under copyright laws, Title 17 United States Code Sections 101 and 102. This survey is being provided solely for the use of the recipients named above and no license has been created, expressed or implied, to copy the survey except as is necessary in conjunction with the original transaction, which shall take place within thirty (30) days of the date hereon. Evaluation of Restrictions and Easements of record which may affect this property, if any, has been limited to those provided from Schedule B of the title commitment.*
*Visible and Apparent Easements, if any, are as shown.*
*Bearing Source: All bearings are based on Texas State Plane Coordinate System, North Central Zone.*

J. Scott Cole
Registered Professional Land Surveyor
No. 5411

STATE OF TEXAS REGISTERED J. SCOTT COLE 5411 PROFESSIONAL LAND SURVEYOR

**Plat Map**


SUBJECT
126.0261.00039
126.0261.00043
126.0261.00042
126.0261.00041
126.0261.00020
126.0261.00010
126.0261.00021
A- 261
A- 913
A- 92
126.0858.00010
126.0858.00050
126.0858.00020
126.0857.00015
126.1072.00060
126.1072.00061
126.1072.00050
126.1072.00021
126.0913.00162
126.0913.00093
126.0913.00090
126.0913.00160
126.0913.00220
126.0913.00121
126.0913.00100
126.0913.00030
126.0913.00155
126.0913.00110
126.0913.00180
126.0913.00200
126.0913.00070
126.0913.00131
126.0913.00170
126.0913.00040
126.0913.00145
126.0913.00140
126.0913.00171
126.0913.00130
126.0913.00134
126.0913.00051
126.0913.00190
126.0913.00050
126.0913.00052
126.4450.00590
126.4450.00600
126.4450.00610
126.4450.00620
126.4450.00110
126.4450.00090
126.4450.00080
126.4450.00070
126.4450.00051
126.4450.00040
126.4450.00030
126.4450.00020
126.4450.00680
126.4445.00890
126.4445.01250
126.4445.00330
126.4445.00310
126.4445.01270
126.4445.01280
126.1072.01780
126.1072.01800
126.1072.01830
CR-506
157

InterFlood by a la mode

Prepared for: National Appraisal Partners




Powered by CoreLogic®

**MAP DATA**

FEMA Special Flood Hazard Area: **No**
Map Number: **48251C0225J**
Zone: **X**
Map Date: **December 04, 2012**
FIPS: **48251**

**MAP LEGEND**

Areas inundated by 500-year flooding
Areas inundated by 100-year flooding
Velocity Hazard
Protected Areas
Floodway
Subject Area

# AD VALOREM TAX SCHEDULE

| | |
|---|---|
| Property Address: | 10901 County Road 506<br>Venus, Johnson County, Texas 76084 |
| Owner: | Carnegie Development |
| Account Number: | 126.0261.00039, 126.0261.00040, 126.0261.00041, 126.0261.00042, 126.0261.00043 |
| Land size - Acres[(1)]: | 195.472 Acs. |
| Land size - Square Feet[(1)]: | 8,514,760 Sq.Ft. |

| | 2019 | 2020[(2)] |
|---|---|---|
| **Tax Assessment** | | |
| Land[(3)] | $43,602 | $43,602 |
| Improvements | $0 | $0 |
| Total | $43,602 | $43,602 |
| Total Per Acre | $223.06 | $223.06 |
| **Tax Rates** ($ per $100 of assessed value) | | |
| Jurisdiction: | | |
| Venus ISD | $1.49150 | $1.49150 |
| Johnson County | $0.38470 | $0.38470 |
| Hill College VES | $0.05000 | $0.05000 |
| Lateral Road | $0.04030 | $0.04030 |
| Johnson County ESD #1 | $0.06000 | $0.06000 |
| Combined tax rate: | $2.02650 | $2.02650 |
| **Total Tax Payments[(4)]** | | |
| Jurisdiction: | | |
| Venus ISD | $650.30 | $650.30 |
| Johnson County | $167.70 | $167.70 |
| Hill College VES | $21.80 | $21.80 |
| Lateral Road | $17.60 | $17.60 |
| Johnson County ESD #1 | $0.10 | $0.10 |
| Total | **$857.40** | **$857.40** |
| Total Per Acre | $4.39 | $4.39 |

Notes:

*(1) Johnson County Appraisal District recorded size.*

*(2) The 2020 tax rates are not available as of the date of this report. We have used the 2019 tax rates in our estimate.*

*(3) The current tax assessment is based on the agricultural market valuation.*

*(3) There are no delinquent taxes reported for the subject property.*

# HIGHEST AND BEST USE

The uses to which a property can be put affect its value. This is recognized by the concept of highest and best use, generally understood to mean:

> The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and which results in the highest value. These four factors influence the developability and the marketability/value of property:
>
> ⇒ Legal permissibility (zoning, deed restrictions, building codes, etc.)
> ⇒ Physical possibility (size, shape, frontage, utilities, etc.)
> ⇒ Financial feasibility (demand to support development)
> ⇒ Maximum productivity

Two separate analyses are performed to develop an opinion of highest and best use: first, an examination of the site as vacant and available for development and second, an examination of the existing improvements and an investigation of their contribution to the value of the property. For an existing improved property, as long as the value of the property as improved is greater than the value of the vacant site less demolition costs, the highest and best use is the use as improved. Once the value of the vacant land exceeds the value of the improved property, the highest and best use becomes the use of the land as vacant. Since the subject property is vacant land, we have completed an analysis of the site as vacant only.

## Site as Vacant

### Physically Possible

The subject site contains 195.472 acres or 8,514,762 square feet of land area. The site is rectangular in shape, with frontage along a primary neighborhood roadway and two secondary neighborhood roadways. No public water/sewer utilities are available to the site. Electricity is available to the subject site. Most uses are physically possible on the site. Based on the physical characteristics of the site and its location, the most likely use of the site is some form of residential development or agricultural use.

### Legally Permissible

The subject property is located in the Extra-Territorial Jurisdiction (ETJ) of the City of Venus, which does not subscribe to zoning. Therefore, most types of development would be permitted on the site. There do not appear to be any adverse restrictions which would limit the development of the subject site.

**Financially Feasible/Maximally Productive**

During our inspection, we noted limited new residential development occurring on the borders of the subject neighborhood. However, a vast majority of the properties immediate of the subject property are for agricultural uses. The level of new residential development occurring appears that it will support new residential development on the subject site in the future. Based on our analysis, the highest and best use of the subject site as vacant is to hold the site for future residential development when demand warrants with interim agricultural use.

# SALES COMPARISON APPROACH

## Introduction

In order to apply the Sales Comparison Approach to the subject property, we have researched and analyzed recent land sales and listings in and around the subject neighborhood. We contacted individuals having knowledge of the transaction details and discussed each sale to the fullest extent possible. We also interviewed local brokers, investors and developers regarding current trends in land prices and development in and around the subject neighborhood.

The most pertinent sales to analyze the subject are summarized on the Land Sales Summary and Adjustment Grid and location map following this introduction. A detailed write up of each sale can be found in the Addenda.

## LAND SALES SUMMARY AND ADJUSTMENT GRID

| MARKET DATA | SUBJECT | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| Location | SW/C of County Road 506 and FM 157 | S/S Private Easement Drive, 1061 feet south of East U.S. Highway 67 | S/S FM 1807, 1,970 feet southwest of County Road 213 | N/C County Road 506 and County Road 615 | N/S County Road 105A, 1,611 feet east of County Road 206 | NE/S County Road 615, 1,231 feet northwest of County Road 505 |
| City | Venus | Alvarado | Alvarado | Venus | Grandview | Venus |
| Date of Sale | -- | Jun/20 | Jul/19 | Sep/18 | Jul/18 | May/18 |
| Size (Ac.) | 195.472 Acs. | 69.980 Acs. | 91.520 Acs. | 100.000 Acs. | 141.000 Acs. | 153.695 Acs. |
| Size (SF) | 8,514,762 SF | 3,048,329 | 3,986,611 | 4,356,000 | 6,141,960 | 6,694,954 |
| Sale Price | -- | $525,000 | $445,257 | $750,000 | $634,992 | $595,000 |
| Sale Price Per Acre | -- | $7,502 | $4,865 | $7,500 | $4,503 | $3,871 |
| Proposed Development | -- | Agricultural | Agricultural | Agricultural | Agricultural | Agricultural |
| Sale Price Per Acre | -- | $7,502 | $4,865 | $7,500 | $4,503 | $3,871 |
| | | | COMPARATIVE ANALYSIS | | | |
| MULTIPLIED ADJUSTMENTS | | | | | | |
| Elapsed Time (Years) | | 0.0 years | 0.6 years | 1.5 years | 1.6 years | 1.8 years |
| Market Conditions/Time Adjustment | | 0.0% | 1.8% | 4.5% | 4.8% | 5.4% |
| Conditions of Sale Adjustment | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Ceq. Cond/Time Adj. Price Per Acre | | $7,502 | $4,953 | $7,838 | $4,719 | $4,080 |
| ADDED ADJUSTMENTS | | | | | | |
| Location Adjustment | | 0% | 10% | 0% | 10% | 0% |
| Physical Characteristics: | | | | | | |
| Size Adjustment/Sq. Ft. Basis | | -5% | -5% | -5% | 0% | 0% |
| Shape/Depth | | 0% | 0% | 0% | 0% | 10% |
| Access/Frontage | | 10% | 0% | 10% | 10% | 10% |
| Corner | | 10% | 10% | 0% | 10% | 10% |
| Topography | | 0% | 0% | 0% | 0% | 0% |
| Flood Plain | | 0% | 0% | 0% | 0% | 0% |
| Utilities | | -5% | -5% | 0% | 0% | 0% |
| Zoning | | 0% | 0% | 0% | 0% | 0% |
| Total Adjustment | | 10% | 10% | 5% | 30% | 30% |
| Adjusted Price/Acre | | $8,252 | $5,448 | $8,230 | $6,135 | $5,304 |

| PER ACRE METHOD | | |
|---|---|---|
| | Low: | $5,304 |
| | High: | $8,252 |
| | Mean: | $6,674 |
| | Median: | $6,135 |

**INDICATED VALUE ESTIMATES**

| | | | | |
|---|---|---|---|---|
| $5,304 | X | 195.472 | = | $1,036,783 |
| Indicated Low Value of Subject Site (Rounded): | | | | $1,000,000 |
| $8,252 | X | 195.472 | = | $1,613,035 |
| Indicated High Value of Subject Site (Rounded): | | | | $1,600,000 |
| $6,674 | X | 195.472 | = | $1,304,580 |
| Indicated Mean Value of Subject Site (Rounded): | | | | $1,300,000 |
| $6,135 | X | 195.472 | = | $1,199,221 |
| Indicated Median Value of Subject Site (Rounded): | | | | $1,200,000 |
| INDICATED MARKET VALUE CONCLUSION: | | | | <$1,600,000 |

## Land Sales Map



## Comparative Analysis

For this analysis, we compared the sales to the subject and adjusted them for differences in market conditions (time), conditions of sale, location and various physical characteristics. The adjusted prices for the sales were then reconciled into a final value indication for this approach.

Our analysis includes five sales. The sales range in date of sale from May 2018 to June 2020. The sales range in size from 69.980 to 153.695 acres. The unadjusted prices of the sales range from $3,871 to $7,502 per acre.

**Market Conditions**

For this adjustment, we considered changes in the demand for land, recent and proposed development, the availability of financing, and economic conditions at the local level. Local brokers and investors indicate that prices for vacant land were increasing until COVID-19 began having an impact on the market in March 2020. Therefore, we have applied an upward adjustment of 3.0% per year for market conditions (until March 2020).

**Conditions of Sale**

An adjustment is warranted for conditions of sale when a transaction involves atypical motivations that affect the price of a property. All of the sales were reported to be typical arm's length transactions and were not adjusted for this characteristic.

**Location**

Location adjustments are necessary when the locations of the comparable properties are different than the subject. Sales 2 and 4 have inferior locations as compared to the subject and were adjusted upward for this characteristic. The remaining sales have similar locations as compared to the subject and were not adjusted for this characteristic.

**Size**

The size of a property will usually affect its per unit sale price. An inverse relationship typically exists between the size of a property and its sale price per square foot. The larger the size of a property, the smaller the per unit price, and vice versa, assuming all other variables are constant. The subject site contains 195.472 acres, while the sales range from 69.980 to 153.695 acres. Sales 1, 2 and 3 were adjusted downward due to their smaller sizes as compared to the subject. The adjustment applied is 5% per doubling/halving in size and is based on a comparison of the sales and our conversations with local brokers and investors. Sales 4 and 5 are similar to the subject with respect to size and were not adjusted for this characteristic.

**Shape/Depth**

The shape/depth characteristics of a property can affect its sale price. Sale 5 is irregular in shape as compared to the subject and was adjusted upward for this characteristic. The remaining sales are similar and were not adjusted for this characteristic.

**Access/Frontage**

The access/frontage characteristics of a property will usually affect its sale price. The subject site has frontage along a primary neighborhood roadway and two secondary neighborhood roadways. Sales 1, 3, 4 and 5 have inferior access/frontage as compared to the subject site. Therefore, these comparables were adjusted upward for this characteristic. Sale 2 is similar to the subject with respect to access/frontage and was not adjusted for this characteristic.

**Corner**

Corner sites typically sell for more than interior sites. The subject site is a corner tract of land. Sales 1, 2, 4 and 5 are interior tracts of land and were adjusted upward for this characteristic. Sale 3 is a corner tract of land, similar to the subject, and was not adjusted for this characteristic.

**Topography**

The overall price of a property will generally be negatively impacted if additional investment is required to level the site. All of the comparables are similar to the subject property with respect to topography. Therefore, topography adjustments were not applied to the comparables.

**Flood Plain**

The overall price of a site can be impacted if a portion of the site is located within the flood plain. The majority of the subject site is located outside of the flood plain. Sales 2 and 5 have minimal land area located in the 100-year flood plain which has limited impact on the developability of the sites, similar to the subject site. Sales 1, 3 and 4 are located entirely outside of the flood plain. Therefore, flood plain adjustments were not applied to the sales.

**Utilities**

Access to utilities can have an impact on the sale price of a site. The subject site has no access to public water/sewer utilities. Sales 1 and 2 had access to public utilities at the time of sale and are superior to the subject. Therefore, theses sales were adjusted downward for this characteristic. Sales 3, 4 and 5 do not have access to public utilities, similar to the subject, and were not adjusted for this characteristic.

**Zoning**

The subject site and all of the comparables are located in unincorporated Johnson County, which does not subscribe to zoning. Therefore, adjustments for zoning differences were not applied to the comparables.

**Sales Comparison Approach Conclusion**

The adjusted sale prices of the comparable land sales ranges from $5,304 to $8,252 per acre. The mean of the sales is $6,674 per acre and the median is $6,135 per acre. Sale 5 (the lowest adjusted comparable) sold in May 2018 and is located near the subject site, has no access to public water/sewer utilities and is considered a reasonable comparable. Sale 1 (the highest adjusted comparable) sold in June 2020 to a buyer that will utilize the land for agricultural purposes, has access to public utilities and is considered a reasonable comparable. Considering the above, we have estimated a range of values for the subject property. Below are the low, high, mean and median values derived from the comparables adjusted sale prices for the subject site:

**Low Value**

| | | | | |
|---|---|---|---|---|
| 195.472 acres | X | $5,304 per acre | = | $1,036,783 |
| | | **Rounded** | **=** | **$1,000,000** |

**High Value**

| | | | | |
|---|---|---|---|---|
| 195.472 acres | X | $8,252 per acre | = | $1,613,035 |
| | | **Rounded** | **=** | **$1,600,000** |

**Mean Value**

| | | | | |
|---|---|---|---|---|
| 195.472 acres | X | $6,674 per acre | = | $1,304,580 |
| | | **Rounded** | **=** | **$1,300,000** |

**Median Value**

| | | | | |
|---|---|---|---|---|
| 195.472 acres | X | $6,135 per acre | = | $1,199,221 |
| | | **Rounded** | **=** | **$1,200,000** |

Therefore, based on the above ranges, the market value of the fee simple interest of the subject property as of the date of inspection, or August, 25, 2020, is estimated as follows:

**< $1,600,000**

## RECONCILIATION AND FINAL VALUE ESTIMATE

For this appraisal, we have used the Sales Comparison Approach to estimate the market value of the fee simple interest of the subject property. This is the only appropriate approach to value a property similar to the subject. The Cost and Income Capitalization Approaches are not appropriate approaches to value similar tracts of vacant land. Therefore, we have not completed the Cost or Income Capitalization Approach for this appraisal. Our value conclusion is no greater than as follows:

Cost Approach – N/A
Sales Comparison Approach - < $1,600,000
Income Capitalization Approach – N/A

Based on the investigation described in this report, the market value of the fee simple interest of the subject property as of the date of inspection, or August 25, 2020, is as follows:

**< ONE MILLION SIX HUNDRED THOUSAND DOLLARS**
**< $1,600,000**

# CERTIFICATION

I certify that, to the best of our knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions and assumptions and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.
- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding the agreement to perform this assignment.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- This Appraisal Assignment was not based on a requested minimal valuation, a specific valuation or the approval of a loan.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the *Uniform Standards of Professional Appraisal Practice*.
- Nathan D. Riley and Gabrielle M. Radle made a personal inspection of the property that is the subject of this report.
- Gabrielle M. Radle provided significant real property appraisal assistance to the person signing this certification, including research, analysis and writing the report.
- The reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.
- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
- As of the date of this report, Nathan D. Riley has completed the continuing education program for Designated Members of the Appraisal Institute.
- Nathan D. Riley currently holds an appropriate state certification allowing the performance of real estate appraisals in connection with federally related transactions in the state in which the subject property is located.

Respectfully submitted,

Nathan D. Riley

Nathan D. Riley, MAI, Senior Manager
State Certified General Real Estate Appraiser
TX-1335486-G

## STATEMENT OF GENERAL ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal report has been made with the following general assumptions and limiting conditions.

General

1. No investigation has been made of, and no responsibility is assumed for, the legal description of the property being valued or for legal matters, including title or encumbrances. Title to the property is assumed to be good and marketable unless otherwise stated. The property is further assumed to be free and clear of any or all liens, easements or encumbrances unless otherwise stated.

2. Information furnished by others, upon which all or portions of this report are based, is believed to be reliable, but has not been verified in all cases. No warranty is given as to the accuracy of such information.

3. It is assumed that all required licenses, certificates of occupancy, consents or other legislative or administrative authority from any local, state or national government or private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based.

4. Full compliance with the applicable federal, state and local zoning, use, environmental and similar laws and regulations is assumed, unless otherwise stated.

5. No responsibility is taken for changes in market conditions, and no obligation is assumed to revise this report to reflect events or conditions which occur subsequent to the date hereof.

6. The value estimates herein are predicated on the financial structure prevailing as of the date of this report.

7. Responsible ownership and competent property management are assumed.

8. The allocation, if any, in this report of the total value between components of the property applies only to the program of utilization stated in this report. The separate values for any components may not be applicable for any other purpose and must not be used in conjunction with any other appraisal.

9. Areas and dimensions of the property were obtained from sources believed to be reliable. Maps or sketches, if included in this report, are only to assist the reader in visualizing the property; and no responsibility is assumed for their accuracy. No independent surveys were conducted.

10. It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

11. No soil analysis or geological studies were ordered or made in conjunction with this report, nor was an investigation made of any water, oil, gas, coal or other subsurface mineral and use rights or conditions.

12. Neither National Appraisal Partners LLP nor any individual signing or associated with this report shall be required by reason of this report to give further consultation, provide testimony or appear in court or at other legal proceedings unless specified arrangements therefore have been made.

13. Neither this report nor any portions thereof (including without limitation any conclusions as to value, the identity of National Appraisal Partners LLP or any individuals signing or associated with this report, or the professional associations or organizations with which they are affiliated) shall be disseminated to third parties, without the prior written consent and approval of National Appraisal Partners LLP.

14. The date of analysis on which the conclusion and opinion expressed in this report apply is set forth in the letter of transmittal. Our value opinion is based on the purchasing power of the United States' dollar as of this date.

15. We are not qualified to investigate or test for the presence of toxic materials or substances. Unless otherwise stated in this report, no hazardous material, which may or may not be present on or near the property, was observed. We have no knowledge of the existence of such materials on or in the property; however, we are not qualified to detect such substances. The presence of potentially hazardous substances, such as asbestos, urea-formaldehyde foam insulation, or industrial wastes, may affect the value of the property. The value conclusions herein are predicated on the assumption that there is no such material on, in, or near the property that would cause a loss in value. No responsibility is assumed for any such conditions or for any expertise or engineering knowledge required to discover them. The client should retain an expert in this field if further information is desired.

16. We have not attempted to measure the potential impact on value of recent enforcement of wetlands legislation. Certain areas of the subject site may be dry and developable, while others may contain reclaimable and/or non-reclaimable wetland areas. We are not qualified to make such judgments and recommend retaining an expert in this field, if desired. Our value conclusions are predicated on there being no wetlands impact.

17. We did not make any observations or interpretations on compliance with the Americans With Disabilities Act. We are not experts in this field and are not qualified to make such determinations. Our value estimate is predicated upon the property owner(s) bearing no costs for compliance.

<u>Extraordinary Assumptions (the use of which might have affected the assignment results herein):</u>

1. During our inspection, we noticed a barn and a shed on the subject site. The site improvements are in poor condition and do not contribute any value to the property. Therefore, we have not included these related site improvements in our analysis.

<u>Hypothetical Conditions (the use of which might have affected the assignment results herein):</u>

1. There are no Hypothetical Conditions for this appraisal.

# ADDENDA

# LAND SALE WRITE-UPS

# Comparable 1



(●) Sale ( ) Contract ( ) Offer ( ) Listing NAP # 30149

## IDENTIFICATION

| | |
|---|---|
| Location | S/S Private Easement Drive, 1061 feet south of East U.S. Highway 67 |
| Address | 8244 East U.S. Highway 67 |
| City | Alvarado |
| County | Johnson |
| State | Texas (TX) |
| Source | Seller's broker |
| Name/Company/Phone | Teena Alders/Keller Williams/817-329-8850 |

## TRANSACTION DATA

| | | | |
|---|---|---|---|
| Sale Date | 6/5/2020 | | |
| Sale Price | $525,000 | $0.17/SF | $7,502/Acre |
| Adjusted Sale Price | $525,000 | $0.17/SF | $7,502/Acre |
| Grantor | Domingo Garcia Perez | | |
| Grantee | Alvarado By Morning, LLC | | |
| Financing Terms | Cash to seller | | |
| Recording Data | 15954 | | |
| Marketing Time | Less than 12 months | | |
| Type of Buyer | Owner-occupant | | |
| Property Rights | Fee Simple | | |
| Conditions of Sale | Arms Length | | |

## PHYSICAL DATA

| | |
|---|---|
| Property Type | Land |
| Land Area | 3,048,329 SF 69.980 Acre |
| Shape | Rectangular |
| Access Frontage | 50 FF - Private Easement |
| Zoning/ Deed Restrictions | None |
| Intended Use | Agricultural |
| Floodplain | ( ) Yes (●) No |
| Improvements | ( ) Yes (●) No |
| Signalization | ( ) Yes (●) No |
| Easements/Encroachments | ( ) Yes (●) No |
| Corner Parcel | ( ) Yes (●) No |

Utilities

| | | |
|---|---|---|
| ☒ All Available | ☐ Septic | ☐ Water |
| ☐ None | ☐ Gas | ☐ Sewer |
| ☐ Water Well | ☐ Electric | ☐ Phone |

## LEGAL DESCRIPTION

69.980 acres, being Abstract 770, Tract 18, A Spiva, Johnson County, Texas

## REMARKS

The property is located along a private easement south of East U. S. Highway 67, across rail road tracks. The property includes a small barn and a livestock pond.

## Comparable 2



◉ Sale ○ Contract ○ Offer ○ Listing NAP # 30150

### IDENTIFICATION

| | |
|---|---|
| Location | S/S FM 1807, 1,970 feet southwest of County Road 213 |
| Address | 12548 FM 1807 |
| City | Alvarado |
| County | Johnson |
| State | Texas (TX) |
| Source | Seller's broker |
| Name/Company/Phone | John Daniel/Clark Real Estate/817-458-0402 |

### PHYSICAL DATA

| | |
|---|---|
| Property Type | Land |
| Land Area | 3,986,611 SF 91.520 Acre |
| Shape | Rectangular |
| Access Frontage | 1,140 FF - FM 1807 |
| Zoning/ Deed Restrictions | None |
| Intended Use | Agricultural |
| Floodplain | ◉ Yes ○ No |
| Improvements | ○ Yes ◉ No |
| Signalization | ○ Yes ◉ No |
| Easements/Encroachments | ○ Yes ◉ No |
| Corner Parcel | ○ Yes ◉ No |

Utilities

- ☒ All Available ☐ Septic ☐ Water
- ☐ None ☐ Gas ☐ Sewer
- ☐ Water Well ☐ Electric ☐ Phone

### TRANSACTION DATA

| | | | |
|---|---|---|---|
| Sale Date | 7/25/2019 | | |
| Sale Price | $445,257 | $0.11/SF | $4,865/Acre |
| Adjusted Sale Price | $445,257 | $0.11/SF | $4,865/Acre |
| Grantor | James Neal Ratjen | | |
| Grantee | Legacy Housing Corporation | | |
| Financing Terms | Cash to seller | | |
| Recording Data | 19264 | | |
| Marketing Time | Less than 6 months | | |
| Type of Buyer | Owner-occupant | | |
| Property Rights | Fee Simple | | |
| Conditions of Sale | Arms Length | | |

### LEGAL DESCRIPTION

91.520 acres, being Abstract 499, Tract 5, M. Lapham, Johnson County, Texas

### REMARKS

A small portion of the property is located in the 100-year flood plain.

# Comparable 3

NATIONAL APPRAISAL PARTNERS, LLP

◉ Sale ○ Contract ○ Offer ○ Listing NAP # 30145

## IDENTIFICATION

| | |
|---|---|
| Location | N/C County Road 506 and County Road 615 |
| Address | 10899 County Road 506 |
| City | Venus |
| County | Johnson |
| State | Texas (TX) |
| Source | Seller's broker |
| Name/Company/Phone | Susan Vehon/Remax/817-460-3900 |

## TRANSACTION DATA

| | | | |
|---|---|---|---|
| Sale Date | 9/10/2018 | | |
| Sale Price | $750,000 | $0.17/SF | $7,500/Acre |
| Adjusted Sale Price | $750,000 | $0.17/SF | $7,500/Acre |
| Grantor | J. P. Jr. Fielder, Raymond R. Jr. Butler | | |
| Grantee | Senor Muffler Inc. | | |
| Financing Terms | Cash to seller | | |
| Recording Data | 25209 | | |
| Marketing Time | 2 months | | |
| Type of Buyer | Owner-occupant | | |
| Property Rights | Fee Simple | | |
| Conditions of Sale | Arms Length | | |

## PHYSICAL DATA

| | |
|---|---|
| Property Type | Land |
| Land Area | 4,356,000 SF 100.000 Acres |
| Shape | Rectangular |
| Access Frontage | 3,445 FF - County Road 506<br>1,265 FF - County Road 615 |
| Zoning/ Deed Restrictions | None |
| Intended Use | Agricultural |
| Floodplain | ○ Yes ◉ No |
| Improvements | ○ Yes ◉ No |
| Signalization | ○ Yes ◉ No |
| Easements/Encroachments | ○ Yes ◉ No |
| Corner Parcel | ◉ Yes ○ No |

Utilities

| | | |
|---|---|---|
| ☐ All Available | ☒ Septic | ☐ Water |
| ☒ None | ☐ Gas | ☐ Sewer |
| ☒ Water Well | ☒ Electric | ☐ Phone |

## LEGAL DESCRIPTION

100.000 acres, being Abstract 858, Tract 1, A Williams, Johnson County, Texas

## REMARKS

The property was originally listed for sale for $1,000,000 or $10,000 per acre for 2 months.

# Comparable 4



◉ Sale ○ Contract ○ Offer ○ Listing NAP # 30147

## IDENTIFICATION

| | |
|---|---|
| Location | N/S County Road 105A, 1,611 feet east of County Road 206 |
| Address | 17321 County Road 105A |
| City | Grandview |
| County | Johnson |
| State | Texas (TX) |
| Source | Seller's broker |
| Name/Company/Phone | John Pollock/Remax/817-299-1001 |

## TRANSACTION DATA

| | | | |
|---|---|---|---|
| Sale Date | 7/16/2018 | | |
| Sale Price | $634,992 | $0.10/SF | $4,503/Acre |
| Adjusted Sale Price | $634,992 | $0.10/SF | $4,503/Acre |
| Grantor | Richard & Billie Fuller | | |
| Grantee | GP Connected Ranch LLC | | |
| Financing Terms | Cash to seller | | |
| Recording Data | 19921 | | |
| Marketing Time | 2 months | | |
| Type of Buyer | Owner-occupant | | |
| Property Rights | Fee Simple | | |
| Conditions of Sale | Arms Length | | |

## PHYSICAL DATA

| | | |
|---|---|---|
| Property Type | Land | |
| Land Area | 6,141,960 SF | 141.000 Acres |
| Shape | Flag Shaped | |
| Access Frontage | 50 FF - County Road 150A | |
| Zoning/ Deed Restrictions | None | |
| Intended Use | Agricultural | |
| Floodplain | ○ Yes ◉ No | |
| Improvements | ◉ Yes ○ No | |
| Signalization | ○ Yes ◉ No | |
| Easements/Encroachments | ○ Yes ◉ No | |
| Corner Parcel | ○ Yes ◉ No | |

Utilities

| | | |
|---|---|---|
| ☐ All Available | ☒ Septic | ☐ Water |
| ☒ None | ☐ Gas | ☐ Sewer |
| ☒ Water Well | ☒ Electric | ☐ Phone |

## LEGAL DESCRIPTION

141.000 acres, being Abstract 715, Tract 13, R. Rhodes, Johnson County, Texas

## REMARKS

At the time of sale, the property included a metal pole barn and a mobile home. The property was being sold for land value only. The prospective buyers intend to remove the improvements and operate a cattle operation on the site.

## Comparable 5

**NATIONAL APPRAISAL PARTNERS, LLP**

◉ Sale ○ Contract ○ Offer ○ Listing NAP # 30146

### IDENTIFICATION

| | |
|---|---|
| Location | NE/S County Road 615, 1,231 feet northwest of County Road 505 |
| Address | 1608 County Road 615 |
| City | Venus |
| County | Johnson |
| State | Texas (TX) |
| Source | Seller's broker |
| Name/Company/Phone | Ricky Story/Keller Williams/817-920-7700 |

### TRANSACTION DATA

| | | | |
|---|---|---|---|
| Sale Date | 5/15/2018 | | |
| Sale Price | $595,000 | $0.09/SF | $3,871/Acre |
| Adjusted Sale Price | $595,000 | $0.09/SF | $3,871/Acre |
| Grantor | Viki Adele, Janiak Elizabeth & Weary | | |
| Grantee | Jose Hector Huante | | |
| Financing Terms | Cash to seller | | |
| Recording Data | 12854 | | |
| Marketing Time | 2 months | | |
| Type of Buyer | Owner-occupant | | |
| Property Rights | Fee Simple | | |
| Conditions of Sale | Arms Length | | |

### PHYSICAL DATA

| | | |
|---|---|---|
| Property Type | Land | |
| Land Area | 6,694,954 SF | 153.695 Acres |
| Shape | Irregular | |
| Access Frontage | 1,490 FF - County Road 615 | |
| Zoning/ Deed Restrictions | None | |
| Intended Use | Agricultural | |
| Floodplain | ◉ Yes ○ No | |
| Improvements | ○ Yes ◉ No | |
| Signalization | ○ Yes ◉ No | |
| Easements/Encroachments | ○ Yes ◉ No | |
| Corner Parcel | ○ Yes ◉ No | |

Utilities

| | | |
|---|---|---|
| ☐ All Available | ☒ Septic | ☐ Water |
| ☒ None | ☐ Gas | ☐ Sewer |
| ☒ Water Well | ☒ Electric | ☐ Phone |

### LEGAL DESCRIPTION

153.695 acres, being Abstract 858, Tract 4, A. Williams, Johnson County, Texas

### REMARKS

The property includes a portion of the Mountain Creek in the northeastern corner of the site that is located in the 100-year floodplain.

**SUBJECT LEGAL DESCRIPTION**

EXHIBIT "A"

LEGAL DESCRIPTION

BEING a 195.4720 acre tract of land situated in the John N. Ely Survey, Abstract No.261, Johnson County, Texas and being all that certain called 195.501 acre tract of land described in Deed from Randolph M. Roten and Lisa Renne Roten to BSAG Properties Ltd. And recorded in Volume 4444, Page 156 of the Real Property Records of Johnson County, Texas.

BEGINNING at a RR Spike set for corner in County Road 506 at the East corner of said 195.501 acre tract of land and being at intersection of the Southwest line of Farm-to-Market Road No. 157 with the Southeast line of said 195.501 acre tract, said corner also being in the in the established Southeast line of said Ely Survey, same being the established Northwest line of the Absalom Williams Survey, Abstract No. 857;

THENCE South 59°40'46" West with said Survey lines and the Southeast line of said 195.501 acre tract a distance of 2,150.64 feet to a RR Spike found for corner at the South corner of said 195.501 acre tract, same being the East corner of a called 0.6 acre save and accept tract from the called 200 acre parent tract recorded in Volume 2170, Page 901 of said Real Property Records;

THENCE North 49°15'24" West across said Ely Survey and with the Southwest line of said 195.502 acre tract a distance of 444.86 feet to a ½" iron rod found for corner at an angle corner in said Southwest line, same being the Northeast line of a called 124.051 acre tract of land described in Deed from Virginia D. Rhinehart to Derrell G. Leonard and recorded in Volume 3557, Page 778 of said Real Property Records;

THENCE North 30°22'29" West with said Southwest and Northeast lines at a distance of 2921.20 feet passing a 5" metal corner post found for corner at the North corner of the above referenced 124.051 acre tract of land, same being the East corner of that certain called 12.027 acre tract of land, Tract Two described in Deed from R. Pratt Phillips, et ux to Harper Cattle, L.L.C. and recorded in Volume 2476, Page 646 of said Real Property Records and continuing a total distance of 3,304.29 feet to RR spike found for the West corner of said 195.502 acre tract and being in County Road 507, the established Northwest line of said John N. Ely Survey, same being the Southeast line of the J. W. Harris Survey, Abstract No. 1072;

THENCE North 59°22'28" East with County Road 507, the Northwest line of said 195.502 acre tract and the Northwest line of said Ely Survey, same being the Southeast line of said Harris Survey a distance of 2,329.19 feet to a RR spike found for corner at the North corner of said 195.502 acre tract, same being the established North corner of said Ely Survey and being in the Southwest line of the J. Ware Survey, Abstract No. 913;

THENCE South 30°27'55" East with the Northeast line of said Ely Survey, the Northeast line of said 195.502 acre tract and the Southwest line of said Ware Survey a distance of 162.69 feet to a ½" iron rod found for corner in the Southwest line of Farm-to-Market Road No. 157 and being at the beginning of a non-tangent curve to the left;

THENCE in a Southeasterly direction with said curve to the left having a radius of 358.31 feet, whose chord bears South 16°46'07" East -169.20 for an arc length of 170.81 feet;

THENCE with the East line of said 195.502 acre tract and the Southwest line of said Farm-to-Market Road the following:

South 30°27'37" East a distance of 454.30 feet to a ½" iron rod found for corner;

South 24°44'51" East a distance of 100.50 feet to a ½" iron rod set for corner with cap marked "SANDS";

South 30°27'29" East a distance of 1,400.00 feet to a ½" iron rod set for corner with cap marked "SANDS";

South 36°10'07" East a distance of 100.50 feet to a ½" iron rod set for corner with cap marked "SANDS";

THENCE South 30°27'29" East a distance of 1,356.00 feet back to the POINT OF BEGINNING AND CONTAINING 8,514,762 square feet or 195.4720 acres of land more or less

# QUALIFICATIONS

**Nathan D. Riley, MAI**

**Senior Manager**



Mr. Riley is a Senior Manager at National Appraisal Partners, LLP. He focuses on commercial real estate valuation and consulting projects for financial institutions, accounting firms, attorneys, pension firms, corporations, developers and private investors.

**Experience**

Mr. Riley has been actively engaged in the real estate appraisal industry since January 2000, when he joined the Houston Real Estate Valuation and Consulting Group of Arthur Andersen. From 2003 to 2007, Mr. Riley was an associate appraiser with National Appraisal Partners, LLP. From 2007 to 2012, Mr. Riley was a Director with Cushman & Wakefield, Valuation & Advisory. His experience includes appraisal, appraisal review and consulting engagements on a number of property types, including office buildings, shopping centers, retail properties, restaurants, industrial properties, multifamily projects, gasoline stations/convenience stores, hotels and a variety of special-use properties.

**Affiliations/Advisory Boards**

Mr. Riley is a State Certified General Real Estate Appraiser in Texas. Mr. Riley has been awarded the Appraisal Institute's MAI designation, which is held by appraisers who are experts in the valuation of commercial real estate, and who advise clients on real estate investment decisions. He currently serves as chairman of the Candidate Guidance committee for the Houston Chapter of the Appraisal Institute. Nationally, Mr. Riley has been appointed to the Appraisal Institute's University Relations Panel.

**Education**

Mr. Riley holds a Bachelor of Science Degree in Real Estate from Florida State University and a Master of Arts Degree in Real Estate from the University of Florida.

**STATE CERTIFICATION**

TALCB
TEXAS APPRAISER LICENSING & CERTIFICATION BOARD

# Certified General Real Estate Appraiser

Appraiser: **Nathan Donnell Riley**

License #: **TX 1335486 G**

License Expires: **11/30/2021**

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Occupations Code, Chapter 1103, authorization is granted to use this title: Certified General Real Estate Appraiser

For additional information or to file a complaint please contact TALCB at www.talcb.texas.gov.

**Douglas E. Oldmixon**
**Commissioner**