**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL007 LLC, *et al.*,[1] | Case No. 20-31131 (HDH)<br>(Jointly Administered) |
| Alleged Debtors. | |

**MOTION OF PETITIONING CREDITORS (A) FOR LEAVE TO FILE
AN INTERLOCUTORY APPEAL AND (B) REQUESTING CERTIFICATION TO THE
UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

**TO: THE HONORABLE HARLIN D. HALE**:

The Petitioning Creditors, Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Lan Ji, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu (collectively, the "Petitioning Creditors"), hereby file this motion (the "Motion") seeking (i) leave, pursuant to Bankruptcy Appellate Rule 8004(a)(2), to

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors sat this time.

appeal (this "Appeal") and (ii) certification by this Honorable Court ("Bankruptcy Court") of the appeal, pursuant to Bankruptcy Appellate Rule 8006(f)(1), directly to the United States Court of Appeals for the Fifth Circuit (the "Appeals Court"); or, if certification is not granted, to the United States District Court for the Northern District of Texas, from the following Orders of the Bankruptcy Court entered in the above-captioned proceedings ("Case"): (i) Order Granting in Part the Alleged Debtors' Motion for Discovery Related to Wet Signatures [Dkt. No. 101] (Dkt. No. 165) entered on September 4, 2020; (ii) Order Granting in Part the Petitioners' Motion to Compel Discovery [Dkt. Nos. 92 & 129] (Dkt. No. 167) entered on September 4, 2020; (iii) Order Granting in Part the Alleged Debtor's Motion to Quash Petitioners' Deposition Notice [Dkt. 133] (Dkt. No. 168) entered on September 4, 2020; (iv) Order Granting in Part the Alleged Debtor's Second Motion to Compel Discovery Responses from Petitioners [Dkt. No. 105] (Dkt. No. 169) entered on September 4, 2020; and (v) October 22, 2020 Order Denying Motion for Reconsideration of Discovery Orders (Dkt. No. 202) entered on September 4, 2020 (collectively, the "Orders").

**INTRODUCTION**

The Petitioning Creditors most respectfully disagree with the Bankruptcy Court's rulings in the Orders which would require the Petitioning Creditors to enter into an agreement to travel to the United States for "live," in person depositions prior to the Petitioning Creditors being permitted to proceed with further discovery or motion practice in the Case and, therefore, risk dismissal of the Case. As such, with all due respect to the Bankruptcy Court, Petitioning Creditors have filed a "Notice of Appeal" of the Orders with the Clerk of the Bankruptcy Court and a Request for Certification ("Request for Certification") directly to the Court of Appeals, and a Statement of Issues and Designation of Record ("Designation"), contemporaneously with the filing of this Motion. The Petitioning Creditors believe the Orders are interlocutory and therefor

seek leave from the Bankruptcy Court to appeal the Orders and further request certification to bring this appeal directly to the Appeals Court.

**PRELIMINARY STATEMENT**

Respectfully, in the Orders, the Bankruptcy Court erred as a matter of law (i) in determining that the Petitioning Creditors must enter into an agreement to travel from mainland China to the United States for live depositions; (ii) in staying Petitioning Creditors' discovery and all motion practice in the Case, pending Petitioning Creditors' agreement to travel here from mainland China to the United States for live depositions; and (iii) in denying Petitioning Creditors' Motion for Reconsideration in light of a recent change in the law permitting Chinese nationals to resume travel to Macau.

As argued to the Bankruptcy Court twice by Petitioning Creditors, the Petitioning Creditors are Chinese nationals who cannot enter directly into the United States at this time under President Trump's travel ban. Further, given the surge in the COVID-19 pandemic, even if Petitioning Creditors could somehow bypass the President's travel ban and gain entry into the United States to sit for live depositions, they would risk their health and potentially the health of others merely for the sake of a "live" deposition on U.S. soil. The penalty for their inability to agree to travel here: Dismissal of the Case as early as November 30, 2020. However, Petitioning Creditors are now permitted to enter another country which is not subject to such travel limitations on Chinese nationals, namely, Macau, where their depositions could be taken, either live by counsel or via video from the United States.

Petitioning Creditors have more fully set forth herein the underlying facts and legal arguments supporting why leave to appeal should be granted and further why the Bankruptcy

Court should certify these important, unsettled issues of public policy directly to the Court of Appeals.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY OF THE CASE**

The Petitioning Creditors filed involuntary chapter 7 bankruptcy petitions (collectively, the "Petitions") against each Alleged Debtor on April 8, 2020. See [Dkt. No. 1 in 20-31131]; [Dkt. No. 1 in 20-31133]; [Dkt. No. 1 in 20-31134]; [Dkt. No. 1 in 20-31135]; [Dkt. No. 1 in 20-31136]; [Dkt. No. 1 in 20-31138]; and, [Dkt. No. 1 in 20-31139].

On April 24, 2020, the Bankruptcy Court entered an Order granting the Petitioning Creditors' motions to jointly administer the bankruptcy cases (the "Cases") under the lead case WALL007 LLC [Dkt. No. 11 in 20-31131] (the "Lead Case").

On May 7, 2020, each Alleged Debtor filed Motions to Dismiss. See [Dkt. Nos. 18–19 in 20-31131]; [Dkt. Nos. 15–16 in 20-31133]; [Dkt. Nos. 14–15 in 20-31134]; [Dkt. Nos. 14–15 in 20-31135]; [Dkt. Nos. 14–15 in 20-31136]; [Dkt. Nos. 14–15 in 20-31138]; and, [Dkt. Nos. 14–15 in 20-31139] (collectively, the " Main Motions to Dismiss"). The Main Motions to Dismiss have not yet been heard by the Bankruptcy Court but the Alleged Debtors have unilaterally sought to schedule hearings thereon for December 30, 2020 [Dkt. No. 210].

The Alleged Debtors filed a third motion to dismiss ("Third Motion to Dismiss") on October 12, 2020 [Dkt. No. 182], arguing that if the Petitioning Creditors refuse to travel to the United States to be deposed live, the Court must dismiss the Case. The Third Motion to Dismiss has been set for hearing on November 30, 2020, making a determination on this Appeal of utmost importance to the Petitioning Creditors and the Case. Effectively, if the Petitioning Creditors cannot agree to travel to the United States for live depositions by November 30, 2020, the Alleged Debtors have asked the Bankruptcy Court to dismiss the Case.

The Main Motions to Dismiss seek dismissal of the Petitions alleging, *inter alia*, that: (1) there are an insufficient number of Petitioning Creditors to support the filing of the Petitions against the Alleged Debtors; (2) the Petitioning Creditors' claims are in bona fide dispute; (3) the Alleged Debtors are generally paying their respective debts; and (4) the Petitions are not in the best interests of each of the Alleged Debtors and their creditors. See Main Motions to Dismiss.

On June 1, 2020, the Petitioning Creditors sent a First Set of Interrogatories ("Interrogatories") and First Request for Production of Documents ("Document Requests") (collectively, the "Requests") to each of the Alleged Debtors. On June 20, 2020, the Court entered a Joint Discovery Plan setting forth, among other matters, discovery deadlines. Paper discovery was exchanged between the parties.

On July 10, 2020, at the repeated request of counsel for the Petitioning Creditors, the Petitioning Creditors' and the Alleged Debtors' counsel discussed the Alleged Debtors' responses to the Requests (the "Responses") in a failed attempt to amicably resolve the Petitioning Creditors' objections to the Responses. Back and forth regarding potential resolutions to the various discovery disputes between the parties occurred for most of the month of July and into August 2020.

On July 27, 2020, the Petitioning Creditors filed a Motion to Compel [Dkt. No. 92] requesting that the Alleged Debtors produce paper discovery in the case. On August 10, 2020, the Petitioning Creditors filed an amendment to the Motion to Compel [Dkt. No. 129] (the "Amended Motion to Compel") requesting that the Alleged Debtors produce for deposition (i) Timothy Barton; (ii) Venkat Murugan; (iii) Hongpeng Lin; and (iv) Saskya Bedoya.

In the Amended Motion to Compel, the Petitioning Creditors specifically referenced to the Court, President Trump's proclamation issued on January 31, 2020 (the "Presidential

Proclamation") which remains in effect. See Amended Motion to Compel [Dkt. No. 129], Exhibit "D" thereto; See also https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-persons-pose-risk-transmitting-2019-novel-coronavirus/.

The Presidential Proclamation (number 9984) states, in pertinent part:

> NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby find that the unrestricted entry into the United States of persons described in section 1 of this proclamation would, except as provided for in section 2 of this proclamation, be detrimental to the interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions. I therefore hereby proclaim the following:
>
> Section 1. Suspension and Limitation on Entry. The entry into the United States, as immigrants or nonimmigrants, of all aliens who were physically present within the People's Republic of China, excluding the Special Administrative Regions of Hong Kong and Macau, during the 14-day period preceding their entry or attempted entry into the United States is hereby suspended and limited subject to section 2 of this proclamation.

The Alleged Debtors' Motions to Compel argued that the Petitioning Creditors had not met their paper discovery obligations. Nowhere in the Alleged Debtors' Motions to Compel do the Alleged Debtors seek relief relative to the noticed depositions of certain of the Petitioning Creditors.

On August 5, 2020, counsel for the Alleged Debtors served notices of deposition subpoenas ("Debtor Deposition Notices") on counsel for the following Petitioning Creditors (the

"Petitioner Deponents"): Fang Ding, Guoqin Zhou, Jialin Hu, Jiancheng Chen, Jingqiu Tang, Jun Zeng, Kui Wang, Wenjun Wang, Xiangdong Zhu, Xiaoquan Dai, Qin Chu, Li Jiang, Weisi Wang, Ying Zhou, Di Tang, Kangying Mao, Jiaxiang Lu, Jin Wang, Wanwan Li, Yijing Wu, Heng Zhang.

In the Motion to Quash, the Alleged Debtors inserted language requesting, *inter alia*, that the depositions of the Petitioner Deponents be taken in the United States before any depositions are taken of the Alleged Debtors' representatives or further motion practices proceeds in the Case. Procedurally, the Alleged Debtors never filed a motion or other application requesting enforcement of their Debtor Deposition Notices on the Petitioner Deponents.

On August 13, 2020, the Petitioning Creditors filed their opposition to the Motion to Quash (the "Quash Opposition") and reiterated that the Petitioning Creditors, who are Chinese nationals and reside in mainland China, were unable to enter into the United States due to the ongoing COVID-19 pandemic and specifically because of the travel restrictions imposed by President Trump.

Paragraph 34 of the Quash Opposition states as follows:

> "However, as set forth in the Amended Motion to Compel, Petitioning Creditors cannot enter into the United States due to the ongoing COVID-19 pandemic and travel and quarantine restrictions imposed by both China and the United States."

On August 17, 2020, the Court held a hearing on the multiple contested discovery matters, including the Discovery Motions. At the August 17th hearing, counsel for the Petitioning Creditors and the Court briefly discussed the implications of the travel ban to the U.S. from China due to the ongoing COVID-19 pandemic. In particular, the following discourse occurred:

Why don't you address the ability of your approach to be deposed, just as Ms. Lindauer did in her's. She's saying she needs 10 to 12 depositions.

MR. PACKMAN: And we're happy to provide those by video, Your Honor. I do not believe, based on COVID and the restrictions on travel both from China and into the United States, which would require a 14-day quarantine, that we can do these depositions live in the United States. If we could, we would. We think it's a little bit overkill to have 11 or 12 of these petitioning creditors to have to travel here. But if we would, we could -- if we could, we would. We can only produce them now --

* * *

THE COURT: Yeah. What is the travel situation in China? I just know enough to be dangerous, just from reading in the paper. Are we still under a travel quarantine from China? I don't know what the status is right now.

MR. PACKMAN: Your Honor, based on what the most current information we have from the U.S. government website, there appears to still be a 14-day quarantine requirement for a Chinese national coming into the United States.

THE COURT: Uh-huh.

MR. PACKMAN: So I do agree with Ms. Lindauer that it's a predicament. It would be very expensive and costly for these petitioning creditors to come here. But I don't disagree with Ms. Lindauer that they have some right to ask them questions and prepare for the trial. I don't disagree with that. I just don't know what else to do right now. I just don't know what else to do.

THE COURT: Okay.

MR. PACKMAN: But we will make them available by video.

THE COURT: All right. Okay.

As far as the petitioning creditors' depositions. We will do everything possible to make them available for depositions so they can answer whatever relevant questions Ms. Lindauer has. But as I said, they are just not permitted to travel here at this moment, without being quarantined for at least two weeks. I think that would be unfair to require them to do that.

Tr. at 15:14–16:22; 28:8–28:14, August 17, 2020.

Despite the foregoing, and the travel ban pursuant to the Presidential Proclamation, the Court determined that the Petitioner Deponents would be required to enter into the United States for live depositions and stated, in pertinent part, as follows:

The petitioning creditors did not really respond to alleged debtors' legality argument. Instead, the petitioners claim that the difficulties associated with the COVID-19 crisis should excuse them from traveling to the United States for in-person depositions. During the hearing, counsel for the petitioners did not specifically say there was a travel ban on Chinese nationals entering the United States. Rather, counsel argued that his clients would have to quarantine for 14 days upon entry to the United States and that doing so would be a great inconvenience.

The Court understands the great difficulty travel poses during the current pandemic. However, the Court also believes that litigants who seek the benefit of the United States law must follow its process. And here, a serious concern has been raised that taking video depositions would violate Chinese law. While traveling to the U.S. may be a great inconvenience and difficulty at this time, the Court believes it is necessary in this case to address both the legality issues and the identity concerns raised by the

CINDY SUMNER, CSR (214) 802-7196

5

alleged debtors. Accordingly, the motion to quash at docket number 133 is granted in part to require the petitioning creditors' depositions to be taken in-person, in the United States, at a time and place agreeable to the parties.

Tr. at 4:7–5:4, August 19, 2020.

At the time of the hearing on the Discovery Motions, the Bankruptcy Court did not address counsel for Petitioning Creditors' statement or legal position in its supporting brief, arguing that they cannot enter directly into the U.S. pursuant to the President's travel ban. Petitioning Creditors cannot enter directly into the U.S. for any purpose if they are foreign nationals of China under the Presidential Proclamation absent an exception being recognized under Section 2 of the law as set forth herein. No direct entry of a Chinese national into the U.S. is permitted absent the application of discrete exceptions.

Section 2 of the Presidential Proclamation contains various exceptions to the direct travel ban in Section 1. As noted to the Bankruptcy Court, none of those exceptions apply here. In fact, the Bankruptcy Court has not ruled that the depositions of the Petitioning Creditors fall under any specific exception listed in Section 2 to the direct travel ban. Put simply, the Petitioning Creditors cannot legally (under U.S. Law) travel directly here and enter the United States for any reason at this time.

Just as the Alleged Debtors were concerned about violating Chinese law (by conducting video depositions in China, Petitioning Creditors would violate U.S. law by seeking direct entry into the U.S. and, in fact, would not be permitted to enter the country. The substance of the Presidential Proclamation was clearly attached to the Amended Motion to Compel and was not fully considered or understood prior to the Bankruptcy Court's ruling.

To be clear, the President has banned the Petitioners (who are Chinese nationals) from directly entering the United States pursuant to the Presidential Proclamation. However, there is now a legal alternative to the "live" U.S. depositions which was not previously available in the Case and which runs directly contrary to prior arguments by counsel for the Alleged Debtors.

Pursuant to their Motion for Reconsideration [Dkt. No. 175], the Petitioning Creditors sought the Bankruptcy Court's reconsideration of, *inter alia*, the Orders entered on the Amended Motion to Compel (the "Petitioners Compel Order"), the Alleged Debtors "Motion to Quash" [Dkt. No. 133] (the "Quash Order") and the Orders entered on the Alleged Debtors First and Second Motions to Compel [Dkt. Nos. 165 and 169] (the "Alleged Debtor Compel Orders"). The discovery motions and orders may, at times, be referenced herein collectively as the "Discovery Motions" and the "Discovery Orders" or the "Orders for Reconsideration;" and those discovery orders, together with the Order denying the Motion for Reconsideration, may hereinafter be referred to collectively as the "Orders."

In prior arguments during the Case, Alleged Debtors' counsel maintained that taking depositions in China are illegal and that the depositions could not be taken there <u>or even in other territories</u>. <u>See</u> Alleged Debtors' Motion to Quash Petitioners' Deposition Notices [Dkt. No. 133]; correspondence from Alleged Debtors' counsel Joyce Lindauer to the Court dated June 3, 2020 with the subject line "Memorandum on Conducting Depositions of Chinese Nationals in China" [Dkt. No. 45].

However, as noted to the Court in the Motion for Reconsideration, that is not currently the case, as the government of Macau Special Administrative Region is now, most recently permitting Chinese nationals, such as the Petitioning Creditors, to travel to Macau where their depositions can be taken, either live by counsel or via video. <u>See</u> https://www.worldaware.com/covid-19-alert-macau-allows-tourists-zhuhai-china-aug-12. "Macau residents <u>and passengers from Taiwan and mainland China</u> can enter the special administrative region provided they have not traveled to other countries or territories within 14 days. Individuals arriving from mainland China, Hong Kong, or Taiwan are subject to health

questionnaires and screenings. Travelers who have visited "high-risk" countries, including the Schengen Area, the UK, the US, Australia, South Korea, and Japan, within 14 days of arrival must undergo mandatory quarantine at designated hotels." Id.

There is a history of remote depositions which have taken place in Hong Kong, Macau and elsewhere. See Dagen v. CFC Grp. Holdings, 00 Civ. 5682, 2003 U.S. Dist. LEXIS 20029, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003) (permitting testimony by telephone of witnesses based in Hong Kong); see also Jordan Outdoor Enters., Ltd. v. Hubei Wild Trees Textiles Co., 2014 BL 99734 (M.D. Ga. Apr. 09, 2014) (Chinese national deposed in Hong Kong in Georgia litigation).

A proposal for related Court reporting and interpreter services for video depositions in Macau which was presented to the Bankruptcy Court reflects that the reporting service conducts depositions (including those of Chinese nationals) in Macau and Hong Kong frequently and the cost is not prohibitive.

Pursuant to F.R.C.P. 29(a), "[u]nless the court orders otherwise, the parties may stipulate that: (a) a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified—in which event it may be used in the same way as any other deposition."

This change in the foreign law (regarding direct travel from China's mainland to Macau) was not known to Petitioning Creditors' counsel at the time of the Discovery Motions as it had only been enacted days prior to argument on the Discovery Motions. As noted in the Motion for Reconsideration, there is now a viable legal option for the Alleged Debtors to depose the Petitioner Deponents in Macau which was not an option at the time of the Motion to Quash due to travel restrictions. Despite this change in the law, and ability of the Alleged Debtors to depose

the Petitioner Deponents in Macau live or via video, the Bankruptcy Court denied Petitioning Creditor' Motion for Reconsideration.

In sum, the Bankruptcy Court is nevertheless requiring Petitioning Creditors to agree to travel to the United States despite the Presidential Proclamation. Although they cannot travel directly to the U.S., the Petitioning Creditors must somehow find a way to gain entry into the U.S. by agreeing to travel here at great expense from China and, in the process, obviously risking their potential contraction of COVID-19 (and exposing others to it) or, alternatively, risk dismissal of the Case within 30 days.

## QUESTIONS PRESENTED FOR THE APPELLATE COURT

**1.** Did the Bankruptcy Court err as a matter of law in determining that the Petitioning Creditors must agree to travel from mainland China to the United States for live depositions?

2. Did the Bankruptcy Court err as a matter of law in staying Petitioning Creditors' discovery and all motion practice in the Case pending Petitioning Creditors' agreement to travel here from mainland China to the United States for live depositions?

3. Did the Bankruptcy Court err as a matter of law in denying Petitioning Creditors' Motion for Reconsideration in light of a recent change in the law permitting travel of Chines nationals to resume to Macau?

## RELIEF REQUESTED

Petitioning Creditors Request that the Bankruptcy Court grant them leave to take this Appeal and certify the appeal directly to the Appeals Court.

## ARGUMENT

### A. Leave to Appeal

A district court has jurisdiction to hear an interlocutory appeal from a bankruptcy court order. 28 U.S.C. § 158(a). Section 158(a) provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from

interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Id. Courts apply the approach set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from a district court to a court of appeals, in considering appeals under 28 U.S.C. § 158(a).

Section 1292(b) provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b).

Accordingly, to warrant a Section 1292(b) certification, the moving party "must show that there is (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation." Ryan v. Flowserve Corp., 444 F. Supp 2d 718, 723 (N.D. Tex. 2006); In re Barsan Contractors, 2010 WL 3907116 at *3 (D. N.J. Sept. 30, 2010). "The decision to grant certification is within the district court's discretion, even if all three criteria are present." The moving party "must also show that exceptional circumstances justify a departure from the basic policy of postponing the review until after the entry of final judgment." Id. (internal quotation and citation omitted).

As set forth below, the Petitioning Creditors meet all three requirements of section 1292(b) for leave to appeal the Orders.

**1. This Appeal Presents Multiple Controlling Questions of Law**

Courts have held that what is a controlling question of law — "although not consistently defined — at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation — thereby saving time and expense for the

court and the litigants. WRIGHT MILLER, *supra,* § 3930 at 426 n. 25 (2d ed. 1996 Supp. 2005) (citing *S.E.C. v. Credit Bancorp, Ltd.,* 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000))." Ryan v. Flowserve Corp., 444 F. Supp 2d 718, 723 (N.D. Tex. 2006) (citing Strougo v. Scudder, Stevens & Clark, Inc., No. 96 CIV. 2136 (RWS), 1997 WL 473566, at *7 (S.D.N.Y. Aug. 18, 1997); (Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990)) (other citations omitted).

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974). It is not required that reversal of the order terminate the litigation or that the order be on the claim's merits. Id. "Controlling" means "serious to the conduct of the litigation, either practically or legally." Id. From a practical standpoint, saving the district court's time and the litigants' expenses is "a highly relevant factor." Id.; see also Barsan, 2010 WL 3907116 at *3.

The Bankruptcy Court's decision requires the Petitioning Creditors to appear in the United States for live depositions despite the Presidential Proclamation's travel ban and the ongoing, daily worsening COVID-19 pandemic. In light of a recent change in the law permitting travel by Chinese nationals to resume to Macau, all of the issues presented are in fact controlling issues of law. These issues do not go to the merits of the case but they do seriously impact the conduct of the litigation given the pending Third Motion to Dismiss on November 30, 2020. If the Orders are reversed as to the "live depositions in the U.S. requirement," not only will the parties save considerable time and expense in conducting the depositions of the Petitioner Deponents by video in Macau, but the courts will save time and expense of the ensuing litigation and appeals should Petitioning Creditors be unable to agree to travel here amidst the worst pandemic of our lifetime and the Case is then dismissed as a result.

**2. There Are Substantial Grounds for Difference of Opinion as to the Orders**

A difference of opinion "must arise out of genuine doubt as to the correct legal standard." Barsan, 2010 WL 3907116 at *3 (internal quotation and citation omitted). Courts have found substantial ground for difference of opinion where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the questions and the Court of Appeals of the Circuit has not spoken on the point, *if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented* (emphasis supplied).

Ryan v. Flowserve Corp., 444 F. Supp 2d at 723-25 (citation omitted); see also United States ex rel Minge v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.), 2013 WL6673607, at *5 (S.D.N.Y. Dec. 18, 2013) (substantial ground for difference of opinion exists where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression).

Here, the issues are particularly difficult and, likely of first impression, given the COVID-19 pandemic has largely only been with us in the U.S. since February or March of 2020. There are no cases the Petitioning Creditors have found dealing directly with the issue of foreigners who are subject to travel restrictions being required by a U.S. Court to travel here during the pandemic solely for purposes of sitting for depositions or suffer dismissal of their Case.

Petitioning Creditors believe the issues presented are of "first impression" and should be decided directly by the Appeals Court as set forth below or, if not, by the U.S. District Court.

**3. An Interlocutory Appeal Will Materially Advance the Litigation**

Importantly, an interlocutory appeal from the Orders materially advances the ultimate termination of the litigation. Ichinose v. Homer National Bank (In re Ichinose), 946 F.2d 1169, 1177 (5th Cir. 1991) (citing In re Neshaminy Office Bldg. Assoc., 81 B.R. 301, 303 (E.D. Pa.

1987)) (other citation omitted). The granting of leave to appeal under section 1292(b) materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive. L.R. v. Manheim Twp. Sch. Dist., 540 F. Supp. 2d 603, 613 (E.D. Pa. 2008).

Granting leave to appeal here, and ensuring immediate review by the Appeals Court, will materially advance this litigation. If leave to appeal is not granted and the Bankruptcy Court's Orders are kept in place, the Case could very well be dismissed on November 30, in which case the Appeals Court will be faced with the same issues in about 30 days or so that are now being presented to it. Hearing the appeal now will save everyone time and expense and potentially avoid dismissal of the Case on a procedural issues, albeit important issues, but not on the merits of the Case. Further, if the Appeals Court determines that the Bankruptcy Court erred on the law raised by the Petitioning Creditors in their Motion for Reconsideration, and the depositions of the Petitioning Creditors should be conducted in Macau via video, it will save everyone involved considerable time and expense.

**B. Exceptional Circumstances Warrant Granting Leave to Appeal**

Courts in the Fifth Circuit have held that section 1292(b) appeals are appropriate only under exceptional circumstances. See, e.g., Ryan, 444 F. Supp 2d at 721-22 (citing Clark-Dietz and Associates-Engineers v. Basic Constr. Co., 702 F.2d 67, 69 (5th Cir. 1983)) (other citations omitted). If the moving party proves all of the other section 1292(b) factors, the moving party "must also show that exceptional circumstances justify a departure from the basic policy of postponing the review until after the entry of final judgment." Barsan, 2010 WL 3907116 at *3 (internal quotation and citation omitted). "Exceptional circumstances" are proved by "establish[ing] an urgency that sets this case apart from the typical case." Matter of Magic Restaurants, Inc., 202 B.R. 24, 26 (D. Del. 1996).

Exceptional and exigent circumstances quite clearly exist here given the import of the Orders juxtaposed to the reality of the Presidential Proclamation and the COVID-19 pandemic. The Petitioning Creditors respectfully submit that there needs to be some balancing of the equities here in order to accomplish the purpose of discovery in this Case. Discovery requirements are not interposed by our Federal Rules for purposes of placing the litigants at extreme health risk, particularly where the President of the United States has proclaimed as much. Leave to appeal should be granted based upon the importance of the discovery issues presented in this Case. The issues here are not "run of the mill" discovery issues. They touch directly on the meaning and effect of the Presidential Proclamation and the very purpose of discovery in the face of a pandemic which, by most accounts, is worsening here in the United States every day.

**C. The Appeal Should be Certified Directly to the Appeals Court**

Section (d)(2)(A) of 28 U.S.C. 158, which governs certification of appeals by the Bankruptcy Court directly to the Court of Appeals, provides as follows:

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—
> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken; and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § (d)(2)(A).

Here, multiple grounds exist for certification of the appeal by the Bankruptcy Court directly to the Appeals Court. The Orders require interpretation and application of the Presidential Proclamation and the balancing of interests of the litigants during this horrible COVID-19 pandemic. To the knowledge of Petitioning Creditors there are no controlling decisions within this Circuit or from the United States Supreme Court on the issues presented. Although the issues do not stem from conflicting decisions, the decisions of the Bankruptcy Court is, in the Petitioning Creditors' respectful view, at odds with the Presidential Proclamation and the realities of the COVID-19 pandemic. The decisions also seemingly ignore the simple solution of requiring the Petitioning Creditors to appear for depositions in Macau, something that could be accomplished fairly quickly and at much less expense and inconvenience to all of the parties. Finally, a direct appeal and decision by the Appeals Court will materially advance the litigation which, presently, is scheduled for a hearing on the Third Motion to Dismiss on November 30, 2020.

The Petitioning Creditors believe the issues presented are issues of first impression and inherently involve matters of public importance. As discussed above, granting leave to appeal and ensuring immediate review by the Appeals Court will materially advance this litigation.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court should grant (i) the Petitioning Creditors Motion for (a) Leave to File an Interlocutory Appeal and (b) Certification of the

Appeal to the United States Court of Appeals for the Fifth Circuit; and (ii) such other and further relief as is just and proper.

Dated: November 3, 2020

*/s/ Stephen M. Packman*

Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
(832) 767-0339
Fax : (832) 767-0669
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Petitioning Creditors*