I do hereby certify that this is a true and correct copy of the original record now on file in the Official Public Records of Johnson County, Texas. To verify the authenticity of this copy please visit: https://johnson.tx.publicsearch.us/verifycert/e2rsiECA

Johnson County Clerk

Digitally signed by Becky Ivey
Date: 2020.11.03 10:05:21 -06:00

Doc-24811

***** Electronically Recorded Document *****

# Johnson County

Becky Ivey
**Johnson County Clerk**
**Cleburne, TX**

---

**Document Number:** 2019-24811
**Recorded As** : ERX-ASSIGNMENT

| | |
|---|---|
| **Recorded On:** | September 13, 2019 |
| **Recorded At:** | 11:13:25 am |
| **Number of Pages:** | 6 |
| **Recording Fee:** | $42.00 |

**Parties:**

Direct-
Indirect- NA

| | |
|---|---|
| **Receipt Number:** | 175525 |
| **Processed By:** | Linda Bailey |

EXHIBIT
tabbies
Southern Star
4

***THIS PAGE IS PART OF THE INSTRUMENT***

I hereby certify that this instrument was filed on the date and time stamped hereon and was duly recorded in the Volume and Page of the named records in Johnson County, Texas.
Any provision herein which restricts the sale, rental or use of the described Real Estate because of color race is invalid and unenforceable under Federal law.

BECKY IVEY, COUNTY CLERK
JOHNSON COUNTY, TEXAS

I do hereby certify that this is a true and correct copy of the original record now on file in the Official Public Records of Johnson County, Texas. To verify the authenticity of this copy please visit: https://johnson.tx.publicsearch.us/verifycert/e2rsiECA

Johnson County Clerk

Digitally signed by Becky Ivey
Date: 2020.11.03 10:05:21 -06:00

Doc-24811

**COLLATERAL ASSIGNMENT OF NOTE,**
**LOAN DOCUMENTS AND LIENS**

THE STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

THAT SOUTHERN STAR CAPITAL, L.L.C.("Assignor"), has ENDORSED, TRANSFERRED, ASSIGNED, SOLD, SET OVER, CONVEYED and DELIVERED, and by these presents does hereby ENDORSE, TRANSFER, ASSIGN, SELL, SET OVER, CONVEY and DELIVER unto TEXAS BRAND BANK ("Lender"), and Assignor further hereby grants and assigns a security interest to Lender (the "Security Interest") in and to, all right, title and interest of Assignor in, to and under (a) that certain Real Estate Lien Note, dated September 11, 2019 in the stated principal amount of $900,000.00 made payable to SOUTHERN STAR CAPITAL, L.L.C. DBA RELIANCE MORTGAGE (the "Collateral Note"), (b) all documents and instruments evidencing, securing or otherwise pertaining to the Collateral Note (collectively, the "Collateral Loan Documents"), including, without limitation, that certain Deed of Trust (the "Collateral Deed of Trust") of even date with the Collateral Note from WALL009, LLC (collectively, "Grantor") to SOUTHERN STAR CAPITAL L.L.C. DBA RELIANCE MORTGAGE, TRUSTEE, as beneficiary thereunder, same having been filed under Clerk's File Number 2019-24729 of the Real Property Records of Johnson County, Texas, covering the real property more fully described on Exhibit "A" attached hereto, and (c) all of the liens and security interests granted in the Collateral Loan Documents or otherwise securing the Collateral Note (collectively, the "Collateral Liens"). Assignor hereby BARGAINS, SELLS, TRANSFERS, ASSIGNS, SETS OVER, CONVEYS and DELIVERS unto Lender all of the rights, privileges, securities, equities, powers, benefits, claims, priorities, demands, titles or interests now or hereafter owned or held by Assignor in, to and under the Collateral Note, the Collateral Loan Documents, the Collateral Deed of Trust and the Collateral Liens.

TO HAVE AND TO HOLD the Collateral Note, the Collateral Loan Documents, the Collateral Deed of Trust and the Collateral Liens, together with all and singular the rights, titles, interests, privileges, securities, equities, powers, benefits, claims, priorities and demands thereunto in anywise belonging to Lender, its successors and assigns forever.

This Collateral Assignment is made to secure payment and performance of Assignor's obligations under and pursuant to (i) that certain Promissory Note, dated September 11, 2019 in the stated principal amount of $900,000.00, executed by Assignor and made payable to the order of Lender (collectively with all renewals, increases, modifications, replacements, rearrangements, substitutions, restatements and extensions now or hereafter executed in connection therewith, the "Assignor's Note"), and (ii) all documents and instruments now or hereafter securing, evidencing or pertaining to the Assignor's Note (collectively, "Assignor's Loan Documents").

Assignor represents and warrants to Lender that (i) Assignor is the sole legal and equitable owner and holder of the Collateral Note and the obligations evidenced thereby, (ii) Assignor has not assigned, mortgaged or hypothecated the Collateral Note, any obligations evidenced thereby, or any of the Collateral Liens to any party other than Lender, (iii) the Collateral Note is in all respects current and in good standing and are not overdue or subject to any credits or offsets, (iv) neither the maker of the Collateral Note nor any surety or guarantor of the Collateral Note has raised any counterclaim, defense, allowance, adjustment, dispute, obligation or complaint regarding their respective liability on either of the Collateral Note or under any Collateral Loan Documents, (v) the Collateral Note and the Collateral Loan Documents have not been amended, altered or modified since the date of the execution thereof, (vi) no default, or event that, with notice, lapse of time or both, would constitute a default, under either of the Collateral Note or the Collateral Loan Documents has occurred, and (vii) Assignor has the full right and authority to sell, assign, pledge and grant a security interest in and to the Collateral Note and the Collateral Liens.

Upon the occurrence of a default or an event of default ("Event of Default"), as provided for in the Assignor's Note and/or any of the other Assignor's Loan Documents, Lender shall, in

I do hereby certify that this is a true and correct copy of the original record now on file in the Official Public Records of Johnson County, Texas. To verify the authenticity of this copy please visit: https://johnson.tx.publicsearch.us/verifycert/e2rslECA

Johnson County Clerk

Digitally signed by Becky Ivey Date: 2020.11.03 10:05:21 -06:00



addition to the rights and remedies provided for therein or under Texas law, have the right to sell the Collateral Note, the Collateral Loan Documents, the Collateral Deed of Trust and the Collateral Liens, in any manner afforded to Lender under the laws of the State of Texas. The proceeds of the sale shall be applied first to the reasonable expenses of the sale and then toward the payment of interest, principal and attorneys' fees due and unpaid upon the Assignor's Note, rendering the balance, if any, and surplus, if any, to Assignor; but if there be any deficiency, Assignor shall remain liable therefor. Lender shall have the right to purchase (by credit against the Note) at any public sale in which it is the highest bidder.

Lender shall have all the rights and remedies of a secured party under Title 1, Chapter 9 of the Texas Business and Commerce Code (the "UCC"), and Lender shall be entitled to avail itself of all such other rights and remedies as may now or hereafter exist at law or in equity for the collection of the Obligations evidenced by the Assignor's Note and other Obligations. The foreclosure of the Security Interest created hereby and the resort to any remedy provided hereunder or provided by the UCC or any Texas law shall not prevent the concurrent employment of any other appropriate remedy or remedies.

The requirement of notice to Assignor of the time and place of any public sale of the Collateral Note, the Collateral Loan Documents, the Collateral Deed of Trust and the Collateral Liens or of the time after which any private sale or any other intended disposition thereof is to be made, shall be met if such notice is mailed, postage prepaid, to Assignor at 5220 Spring Valley Suite 602 Dallas, TX. 75254, or such other address provided to Lender by Assignor in writing, at least ten (10) days before the date of any public sale or at least ten (10) days before the time after which any private sale or disposition is to be made, unless a longer period of time is required pursuant to the UCC, in which case, applicable provisions of the UCC shall control.

The Security Interest created herein shall not be affected by or affect any other security taken for the Assignor's Note, and any extensions may be made for the payment of the Assignor's Note, without affecting the priority of the Security Interest or the validity thereof with reference to any third party, and the holder or holders of the Assignor's Note shall not be limited by election of remedies if the holder or holders choose to foreclose this Security Interest by suit. The right to sell the Collateral Note and the Collateral Loan Documents under the terms hereof shall also exist cumulative with such suit, and one method of foreclosure shall not bar the other, but both may be exercised at the same or different times, nor shall one be a defense to the other.

Assignor authorizes Lender, at the option of Lender, to give notice to the maker of the Collateral Note of the existence of this Collateral Assignment and to instruct such maker, upon the occurrence of an Event of Default which is not cured within any applicable grace period, to direct all payments due and payable under the Collateral Note to Lender.

Assignor authorizes Lender, at the option of Lender, and only upon the occurrence of an Event of Default, which is not cured within any applicable grace period, to collect and receive any and all sums becoming due upon the Collateral Note, such sums to be held by Lender without liability for interest thereon and applied towards the payment of the Assignor's Note. Except as otherwise expressly provided herein, Lender shall hold and have the full control of the Collateral Note until the Assignor's Note is fully paid, including, without limitation, the right to foreclose any or all Collateral Liens, without the necessity of consent by Assignor (and without the necessity of the prior foreclosure of the Collateral Note), and to release the Collateral Liens upon the full and final payment of such Collateral Note to Lender. Notwithstanding the foregoing, Lender is under no obligation to make or enforce the collection of the Collateral Note, and the failure of Lender from any cause to make or enforce the collection thereof shall not in any way prejudice the right of Lender to thereafter make or enforce collection thereof or in any way affect the Assignor's Note.

Lender shall, once the Assignor's Note has been paid in full to Lender, remit all proceeds, if any, received by it under the Collateral Note, if any, that remain after the Assignor's Note has been paid in full to Assignor.

This Collateral Assignment shall in no manner impair or affect any of the other liens granted by Assignor to Lender, and no security interest hereafter taken therefor shall in any manner impair or affect the security hereby given, it being agreed that all such present and future

I do hereby certify that this is a true and correct copy of the original record now on file in the Official Public Records of Johnson County, Texas. To verify the authenticity of this copy please visit: https://johnson.tx.publicsearch.us/verifycert/e2rsiECA

Johnson County Clerk

Digitally signed by Becky Ivey
Date: 2020.11.03 10:05:21 -06:00



security shall be cumulative security and that Lender may foreclose under any of such security, as Lender may elect, without waiving the other.

In addition to the other rights of Lender hereunder, Lender may, but shall not be obligated to, renew, extend or rearrange the time and manner of payment of the Collateral Note, in its own name or in the name of Assignor, with or without the joinder or consent of Assignor, without incurring responsibility or liability to Assignor or discharging, impairing or otherwise affecting any liability or obligation of Assignor, including, without limitation, Assignor's liability for payment of the Assignor's Note.

If Assignor hereafter becomes the owner of any of the property covered by the Collateral Loan Documents prior to the date that Lender executes a written release of this Collateral Assignment, Lender shall automatically have a lien and security interest in and against such property to secure the payment of the Assignor's Note, and Assignor does hereby grant Lender a lien and security interest in and against such property, and Assignor shall immediately, at Assignor's sole cost and expense, execute and deliver, and file in the appropriate public records with all filing fees paid, appropriate documents, in form and substance satisfactory to Lender, further evidencing the granting of such lien and security interest. The foregoing provisions shall not be deemed to constitute consent or authorization by Lender to the transfer, sale or other disposition of any of the property covered by the Collateral Loan Documents to or by Assignor.

Assignor shall pay to Lender all expenditures and expenses, including, without limitation, reasonable attorneys' fees, incurred by Lender in exercising, protecting or enforcing Lender's interests, rights and remedies under this Collateral Assignment, plus interest thereon at the maximum rate permitted by applicable law. Assignor shall further do, make, procure, execute and deliver all acts, things, writings and assurances as Lender may at any time reasonably request to protect, assure or enforce Lender's interests, rights and remedies under this Collateral Assignment.

THIS COLLATERAL ASSIGNMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO WITH RESPECT TO THE SUBJECT HEREOF AND SHALL SUPERSEDE ANY PRIOR AGREEMENT BETWEEN THE PARTIES HERETO, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT HEREOF. FURTHERMORE, IN THIS REGARD, THIS AGREEMENT AND OTHER WRITTEN LOAN DOCUMENTS REPRESENT, COLLECTIVELY, THE FINAL AGREEMENT AMONG THE PARTIES THERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENT OF SUCH PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

EXECUTED effective as of September 11, 2019.

Michael D. [signature]
Michael Anderson Manager of Southern
Star Capital, L.L.C.

STATE OF TEXAS §a
§
COUNTY OF Dallas §

This instrument was acknowledged before me on the 12 day of September, 2019, by Mike Anderson for the purposes and consideration therein expressed.

JOHNNA L BEST
MY COMMISSION EXPIRES
08/26/2021
NOTARY ID: 684276-8

[signature]
NOTARY PUBLIC, State of Texas

I do hereby certify that this is a true and correct copy of the original record now on file in the Official Public Records of Johnson County, Texas. To verify the authenticity of this copy please visit: https://johnson.tx.publicsearch.us/verifycert/e2rsiECA

Johnson County Clerk

Digitally signed by Becky Ivey
Date: 2020.11.03 10:05:21 -06:00



# EXHIBIT A

Legal description of land:

Whereas Wall009, LLC is the owner of that certain called 63.76454 acre tract of land situated in the John Haigler Survey, Abstract No. 358, Johnson County, Texas and being a part of that certain called 101.49 acre tract of land described in Deed from Billy Roten and Joyce Roten, husband and wife, to Lynco Ventures, LLC and recorded in County Clerk's Doc No. 2017-12107 of the Deed Records of Johnson County, Texas, said 63.7644 acre tract of land to be more particularly described by metes and bounds as follows:

COMMENCING at a 1/2" iron rod w/cap marked "SANDS" found for corner at the west corner of said 101.49 acre tract, the north corner of that certain called 37.583 acre tract of land known as Venus Ridge Phase III and recorded in Volume 10, Page 819 of the Plat Records of Johnson County, Texas, said 1/2" iron rod found also being in the northwest line of said Haigler Survey, same being the southeast line of B.B.B. & C. R.R Survey, Abstract No. 92, same being the southeast line of that certain 144.38 acre tract of land described in Deed to Wayne Hood and Eleanor Hood recorded in Volume 2616, Page 156 of said Deed Records;

THENCE North 59° 45' 40" East with said northwest and southeast lines a distance of 363.97 feet to a 1/2" iron rod with plastic cap marked "SANDS" set for corner in the south line of a 170 foot wide Texas Power & Light Company Easement as described in Deed recorded in Volume 625, Page 52 of said Deed Records and being at the Point of Beginning;

THENCE North 59° 45' 40" East continuing with said Northwest and southeast lines a distance of 1,286.03 feet to a 1/2" iron rod w/cap marked Fort Worth Surveying found for corner at or about the north corner of said Haigler Survey, same being the north corner of said 101.49 acre tract, the east corner said B.B.B. & C. R.R. Survey, same being the est corner of that certain called 3.03 acre tract of land described in Deed from Wayne Hood and Eleanor Hood to ETC Texas Pipeline, Ltd., recorded in Volume 4438, Page 447 of said Deed Records and also being along the southwest line of the Absalom Williams Survey, Abstract No. 857, same being the southwest line of that certain called 65.70 acre tract of land described in Deed from Tom Cravens, Independent Executor of the Estate of Hazel E. Barnes to Mattie F. Tolbert and recorded in County Clerk's File No. 200900026516 of said Deed Records;

THENCE South 30° 13' 50" East with the northeast line of said 101.49 acre tract, same being the southwest line of said 65.70 acre tract and along the northeast line of said Haigler Survey, same being the southwest line of said Williams Survey a distance of 2,697.80 feet to a 1/2" iron rod w/cap marked FORT WORTH SURVEYING found for corner in the northwest line of County Road 501 (apparent 60' Right-of-Way);

THENCE South 61° 01' 00" West with the southeast line of said 101.49 acre tract and said County Road a distance of 1,019.04 feet to a point for corner;

THENCE across said 101.49 acre tract the following:

North 30° 13' 50"' West a distance of 2,191.26 feet to a point for corner;

North 00° 26' 19" West a distance of 112. 41 feet to a point for corner;

South 89° 33' 41' West a distance of 33.74 feet to a point for corner at the beginning of a non-tangent curve to the left;

COUNTY OF JOHNSON STATE OF TEXAS

I do hereby certify that this is a true and correct copy of the original record now on file in the Official Public Records of Johnson County, Texas. To verify the authenticity of this copy please visit: https://johnson.tx.publicsearch.us/verifycert/e2rsiECA

Johnson County Clerk

Becky Ivey Digitally signed by Becky Ivey Date: 2020.11.03 10:05:21 -06:00

Doc-24811

THENCE in a Southwesterly direction with said curve to the left having a radius of 270.00 feet, whose chord bears South 74° 39' 55" West 138.81 feet for an arc length of 140.39 feet to a point for corner;

THENCE North 30° 13' 50" West a distance of 242.77 feet to a point for corner in the northwest line of said 101.49 acre tract;

THENCE South 89° 33' 41" West with said northwest line of distance of 183.97 feet back to the Point of Beginning and containing 2,777,575 square feet or 63.7644 acres of land, more or less.