Robert W. Buchholz
420 S. Cesar Chavez Blvd.
Suite 300
Dallas, Texas 75201
214-754-5500
214-754-9100 fax
bob@attorneybob.com
Attorney for Southern Star Capital, LLC d/b/a Reliance Mortgage

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 7** |
| **WALL007, LLC, et al** | ) | |
| | ) | **Case No. 20-31131-HDH** |
| | ) | |
| **Alleged Debtors** | ) | |

**MOTION OF SOUTHERN STAR CAPITAL, LLC**
**d/b/a RELIANCE MORTGAGE COMPANY FOR RELIEF FROM AUTOMATIC STAY**

**<u>NOTICE - RESPONSE REQUIRED</u>**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT**

**Earle Cabell Federal Building**
**1100 Commerce St., Rm. 1254**
**Dallas, TX 75242-1496**



**EXHIBIT "2"**

**BEFORE CLOSE OF BUSINESS ON SEPTEMBER 24, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

**TO THE HONORABLE HARLAN D. HALE:**

SOUTHERN STAR CAPITAL LLC, d/b/a RELIANCE MORTGAGE COMPANY, a Texas limited liability company ("Movant") files this *Motion for Relief from Stay* (the "**Motion**") against WALL009, LLC ("**Debtor**"), and would respectfully show the Court as follows:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and §1334.

2. This is a core proceeding. This Motion constitutes a contested matter pursuant to Rule 9014 of the Bankruptcy Rules.

3. Section 362(a) of the Bankruptcy Code provides that the stay comes into effect upon the filing of a petition "under section … 303 of this title." Thus, section 362 applies during the gap period preventing prepetition creditors from commencing or continuing any of the actions set forth in that section. *Musso v. Ostashko (In re Ostashko),* 333 B.R. 625 (E.D.N.Y. 2005); *Hanrahan v. Walterman (In re Walterman Implement Inc.),* 2007 Bankr. LEXIS 186 (Bankr. N.D. Iowa May 22, 2006); *Ostrander v. Gardner (In re Millivision, Inc.),* 331 B.R. 515 (Bankr. D. Mass. 2005). One clear consequence of the stay during the gap period is that a post-filing creditor cannot enforce its claim absent stay relief.

4. This motion is brought pursuant to 11 U.S.C. §§ 105, 361, 362 and Bankruptcy Rule 4001.

5. Movant is the original lender and the current servicer of the holder of a note and deed of trust on a piece of real estate which is legally described in the attached Exhibit 1 which is incorporated herein by reference as if fully copied herein.

6. Movant agreed, on a short-term basis, to extend financing to Debtor secured by the real estate referenced herein.

7. On September 11, 2019, Debtor through Timothy Barton, its President, signed a Promissory Note in the amount of $900,000.00 (the "**Promissory Note**") and executed a Deed of Trust (the "**Deed of Trust**"), which was recorded on September 12, 2019 in the Deed Records of Johnson County, Texas at clerk's file No. 2019-24729. *See* Exhibits "2" and "3". Also, Timothy Barton personally guaranteed the indebtedness to Movant. *See* Exhibit "4".

8. The Promissory Note interest rate was 12.0% and it matured on September 1, 2020. Also, on matured and unpaid amounts the Promissory Note required the lesser of 18% or the Highest Lawful Rate permitted by law.

9. Debtor defaulted under the terms of the Promissory Note **by not making any** of the required payments. The note, by its own terms, matured and became fully due and payable on September 1, 2020. Further, in the deed of trust Debtor agreed to the following waivers:

> *E.19.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

10. Movant originally posted the Property for the May 5, 2020, foreclosure date. *See* Exhibit "5" but was then informed of the pending Bankruptcy Action. Debtor did not proceed with the foreclosure sale after being noticed of the pending bankruptcy action.

11. As of the maturity date of the loan, September 1, 2020, the status of the debt is as follows:

| | | |
|---|---|---|
| a. | Principal Amount Due: | $900,000.00. |
| b. | Total Payments Made: | $0.00. |
| c. | Total interest due as of September 1, 2020: | $108,000.00 |
| | Late Fees Due as of September 1, 2020 | $ 4,950.00 |
| | Total Interest & Late Fees Due as of Sept 1, 2020 | $112,950.00 |
| c. | Additional Collateral held as of September 1, 2020: | CD $90,000.00 |
| | Accrued Interest on CD as of Sept 1, 2020 | $1,654.57 |

12. This balance remains unpaid and is accruing interest and other applicable charges.

13. Movant contends that based on the facts of this case cause exists for the requirements of Bankruptcy Rule 4001(a)(3) to be waived so that Movant may once again post the Property for foreclosure as **Debtor has never made a single payment on the note**.

14. In accordance with the terms of the Deed of Trust Movant would allege that it is entitled to reasonable attorney's fees, including, but not limited to, fees, if any, for the preparation and filing of this Motion for Relief from Stay in the amount of at least $2,500.00.

15. By reason of the foregoing, Movant requests the Court to terminate the stay so Movant may proceed to foreclose in accordance with its Note and Deed of Trust.

16. Debtor has failed to provide adequate protection to Movant which constitutes cause to terminate the automatic stay of 11 U.S.C. § 362(a).

17. Movant reserves the right to assert an 11 U.S.C. § 362(d)(2) Cause of Action, if

appropriate, at the hearing on Movant's Motion for Relief.

18. The provision of Rule 4001 (a) (3) should be waived and Movant be permitted to immediately enforce and implement any order granting relief from the automatic stay.

19. This Motion is supported by the affidavit of Mr. Al Keller which is attached as Exhibit “6”.

WHEREFORE, Movant prays that this Court enter an order, after notice and hearing, terminating the automatic stay as to Movant and allowing the posting and sale of the collateral at foreclosure. Movant further prays that the Court waive the provision of Rule 4001 (a) (3) and that Southern Star Capital, LLC d/b/a Reliance Mortgage be permitted to immediately enforce and implement any order granting relief from the automatic stay; that Movant be awarded its reasonable attorney’s fees and expenses for this Motion; and, that Movant be granted such other and further relief as is just.

Respectfully submitted,

*/s/ Robert W. Buchholz*
By: ______________________________
Robert W. Buchholz
Texas Bar No: 03290600
420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201
Tel. (214) 754-5500
Fax. (214) 754-9100
Bob@attorneybob.com

**CERTIFICATE OF CONFERENCE**

This will certify that the relief sought in this motion was discussed with the attorney for the alleged Debtor Wall 009, LLC, who stated that she is opposed to the relief requested.

*/s/ Robert W. Buchholz*
By: ______________________________
Robert W. Buchholz

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, a true and correct copy of the foregoing Motion for Relief from Stay was served via electronic means as listed on the Court's ECF noticing system which includes the Attorney for the Debtors and the U.S. Trustee, and by regular mail to the debtor(s) at:

| | |
|---|---|
| WALL009 LLC, Debtor<br>13901 Midway Rd., Ste. 102<br>Dallas, TX 75244 | VIA US MAIL |
| Joyce W. Lindauer<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main Street, Suite 500<br>Dallas, TX 75202<br>Attorney for Alleged Debtor | VIA ECF |
| Jiangang Ou<br>Nguyen & Chen LLP<br>11200 Westheimer Road, Suite 120<br>Houston, TX 77042 | VIA ECF |
| Stephen M. Packman<br>Archer & Greiner, P.C.<br>Three Logan Square<br>1717 Arch Street, Suite 3500<br>Philadelphia, PA 19103 | VIA ECF |

Parties Having Filed NOA VIA ECF

Office of United States Trustee VIA ECF

By: */s/ Robert W. Buchholz*
________________________________
Robert W. Buchholz

**EXHIBIT "A"**

**TRACT I**

**BEING a 27.262 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain called 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to be more particularly described by metes and bounds as follows:**

**BEGINNING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the Plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Addition, a distance of 1,128.01 feet to a 1/2' capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East across said 101.49 acre tract a distance of 110.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 5.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, a distance of 50.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 26.19 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, at a distance of 858.80 feet to a 1/2" capped iron rod marked "SANDS" set for corner in the northeast line of said 101.49 acre tract, same being the northeast line of the above referenced John Haigler Survey and being in the southwest line of the above referenced 126.2407 acre tract, same being the southwest line of the above referenced Absalom Williams Survey;**

**THENCE South 30° 13' 50" East with said northeast and southwest lines, a distance of 1,181.38 feet to a 1/2" capped iron rod marked "FORT WORTH SURVEYING" set for corner in the northwest line of the above referenced County Road 501 at the east corner of said 101.49 acre tract;**

**THENCE South 60° 01' 00" West continuing with said County Road and the southeast line of said 101.49 acre tract, a distance of 1,019.04 feet back to the Point of beginning and containing 1,187,549 square feet, or 27.262 acres of land, more or less.**

**TRACT II:**

**BEING a 36.502 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to me more particularly described by metes and bounds as follows:**

**COMMENCING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Venus Ridge, Phase IV and southwest line of said 101.19 acre tract, a distance of 1,128.01 feet to a 1/2" capped iron rod set for corner at the Point of Beginning;**

**THENCE continuing with said northeast and southwest lines the following:**

**North 30° 13' 50" West, a distance of 1,063.25 feet to a 1/2" capped iron rod found for corner;**

**North 00° 26' 19" West, a distance of 112.41 feet to a 1/2" capped iron rod found for corner;**

**South 89° 33' 41" West, a distance of 33.74 feet to a 1/2" capped iron rod found for corner at the beginning of a curve to the left;**

**THENCE continuing with said northeast and southwest lines in a Southwesterly direction with said curve to the left having a radius of 270.00 feet, a chord that bears South 74° 39' 55" West, a distance of 138.81 feet for an arc length of 140.39 feet to a 1/2" capped iron rod found for corner;**

**THENCE North 30° 13' 50" West, a distance of 242.77 feet to a 1/2" capped iron rod found for corner;**

**THENCE South 89° 33' 41" West, a distance of 183.97 feet to a 1/2" capped iron rod found for corner in the northwest line of said 101.49 acre tract, the northwest line of said Haigler Survey, same being the southeast line of that certain called 144.38 acre tract of land described in Deed from Wayne Hood and Eleanor Hood and recorded in Volume 2616, Page 156 of said Deed Records, same being the southeast line of the B.B.B. & C. R.R Survey, Abstract No. 92;**

**THENCE North 59° 45' 40" East with said southeast and northwest lines a distance of 1,286.03 feet to a capped iron rod found for corner at the north corner of said 101.49 acre tract of land, same being the north corner of said Haigler Survey, the east corner of said B.B.B. & C. R.R. Survey, and bing in the southwest line of that certain called 62.7 acre**

tract of land described in Deed to [illegible] Farm Partnership, et al and recorded in Volume 4302, Page 538 of said Deed Records, same being the southwest line of the Absolam Williams Survey, Abstract No. 857;

THENCE South 30° 13' 50" East with the northeast line of said 101.49 acre tract, same being the northeast line of said Haigler Survey and the southwest line of said 62.7 acre tract, same being the southwest line of said Williams Survey, at a distance of 11,219.39 feet passing a 1/2" capped iron rod found for corner at the south corner of said 62.7 acre tract, same being the west corner of that certain called 128.8645 acre tract of land described in Deed from Anastasia Energy, LLC to DJD Land Partners, LLC and recorded in County Clerk's File No. 2018-18134 of said Deed Records and continuing a total distance of 1,516.42 feet 1/2" capped iron rod found for corner;

THENCE across said 101.49 acre tract the following:

South 59° 46' 10" West, a distance of 858.80 feet to a 1/2" capped iron rod set for corner;

South 30° 13' 50" East, a distance of 26.19 feet to a 1/2" capped iron rod set for corner;

South 59° 46' 10" West, a distance of 50.00 feet to a 1/2" capped iron rod set for corner;

South 30° 13' 50" East, a distance of 5.00 feet to a 1/2" capped iron rod set for corner;

THENCE South 59° 46' 10" West, a distance of 110.00 feet back to the Point of Beginning and containing 1,590,029 square feet or 36.502 acres of land, more or less.

## Promissory Note

**Date:** September 11, 2019.

**Borrower**: WALL009, LLC, a Texas limited liability company.

**Borrower's Mailing Address:** WALL009, LLC, 1755 Wittington Place, Suite 340, Dallas Texas 75234, attention Tim Barton.

**Lender**: Southern Star Capital, LLC d/b/a Reliance Mortgage Company

**Place for Payment:**

5220 Spring Valley Road, Suite 602
Dallas, Texas 75254.
or any other place that Lender may designate in writing.

**Principal Amount**: Nine Hundred Thousand Dollars, ($900,000.00).

**Annual Interest Rate**: Twelve Percent (12.0%)

**Maturity Date:** September 1, 2020.

**Annual Interest Rate on Matured, Unpaid Amounts**: Eighteen Percent (18%) or the highest lawful rate, whichever is less.

**Terms of Payment (principal and interest):**

The Principal Amount and all accrued and unpaid interest is due and payable on September 1, 2020, and the interest is due and payable monthly as it accrues.

The monthly interest payments are Nine Thousand and 00/100 dollars ($9,000.00) and are due and payable on the first day of each month with the first payment due on October 1, 2019.

**Late Charge:**

If any installment becomes overdue for more than ten days, at Lender's option a late payment charge equal to five percent (5%) of the amount of the late payment may be charged in order to defray the expense of handling the delinquent payment.

**Security for Payment**: This note is secured by a deed of trust and security agreement (the "deed of trust") dated September 11, 2019, WALL009, LLC, a Texas limited liability company to Robert W. Buchholz, trustee on the following described real property.

The property described in the attached Exhibit "A" which is which is incorporated herein by reference.

**Other Security for Payment:**
None.

**Promise to Pay**
Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. If any amount is not paid either when due under the Terms of Payment or on acceleration of maturity, Borrower promises to pay any unpaid amounts plus interest from the date the payment was due to the date of payment at the Annual Interest Rate on Matured, Unpaid Amounts.

**Waivers**
Borrower waives, to the extent permitted by law, all (1) demand for payment, (2) presentation for payment, (3) notice of intention to accelerate maturity, (4) notice of acceleration of maturity, (5) protest, (6) notice of protest, (7) rights under sections 51.003, 51.004 and 51.005 of the Texas Property Code, (8) rights under section 17.001 and chapter 43 of the Texas Civil Practice and Remedies Code and rule 31 of the Texas Rules of Civil Procedure.

**Attorney's Fees**
Borrower also promises to pay reasonable attorney's fees and court and other costs if an attorney is retained to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

**Prepayment:** Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium.

**Application of Prepayment:** Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue.

**Usury Savings**
It is the intention of the parties hereto to act in strict compliance with "Applicable Law" (hereafter defined). Accordingly, it is agreed that notwithstanding any provision to the contrary in this note, "deed of trust" (defined above), or any other instrument securing or evidencing the indebtedness evidenced by this note, or in any other arrangements or agreements, no such provision shall ever be construed to create a contract to pay, as consideration for use, forbearance or detention of money, "interest," as that term may be defined by Applicable Law, at a rate in excess of the maximum lawful rate of nonusurious interest permitted by Applicable Law. If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for, in this note, the deed of trust, or in any other instrument securing or evidencing the indebtedness evidenced by this note, then in such event (a) the provisions of this paragraph shall govern and control; (b) neither Borrower nor its successors or assigns or any other party liable for the payment of the indebtedness shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum lawful amount of nonusurious interest permitted by Applicable Law, and the same shall be construed as a mutual mistake of the parties hereto, and of any legal holder of this note,

and (c) such excess of interest over the maximum lawful rate of nonusurious interest permitted by Applicable Law shall either be applied as credit against the then unpaid principal amount of the indebtedness owed under this note or refunded to Borrower. Any commitment, extension, brokerage, loan or other fees or sums paid pursuant to this note, the loan evidenced hereby, or the deed of trust and which under Applicable Law are deemed to constitute interest shall be treated as interest and taken into account in calculating the maximum lawful rate of nonusurious interest permitted by Applicable Law. If the holder of this note shall ever receive anything of value that is characterized as interest under Applicable Law and that would apart from this provision be in excess of the maximum lawful rate of nonusurious interest permitted by Applicable Law, an amount equal to the amount that would have been excessive interest shall, without penalty, be applied to the reduction of the principal amount owing on the indebtedness evidenced by this note in the inverse order of its maturity and not to the payment of interest, or refunded to Borrower or the other payor thereof if and to the extent such amount, which would have been excessive, exceeds such unpaid principal. The right to accelerate maturity of this note, or any other indebtedness, does not include the right to accelerate any interest that has not otherwise accrued on the date of such acceleration, and the holder hereof does not intend to charge or receive any unearned interest in the event of acceleration. All interest paid or agreed to be paid to the holder hereof shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated, and spread throughout the full stated term (including any renewal or extension) of such indebtedness so that the amount of interest on account of such indebtedness does not exceed the maximum lawful amount of nonusurious interest permitted by Applicable Law. Further, notwithstanding anything to the contrary contained herein, if the indebtedness evidenced by this note or the or the deed of trust is paid in full by Borrower or its successors or assigns prior to the full stated term of this note (as such term may have been extended pursuant to the terms hereof) and the interest received for the actual period of the existence of the indebtedness evidenced by this note exceeds the maximum lawful rate of nonusurious interest permitted by Applicable Law, then Lender, or its successors or assigns, shall refund to Borrower, or its successors or assigns, the amount of the excess of such interest over the maximum amount of nonusurious interest permitted under Applicable Law, and neither Lender, nor its successors or assigns, shall be subject to any of the penalties, if any, provided by Applicable Law for contracting for, charging, or receiving interest in excess of the maximum lawful rate of nonusurious interest permitted by Applicable Law. To the extent that Title 4 of the Texas Finance Code is relevant for purposes of determining the maximum lawful rate of nonusurious interest permitted by Applicable Law, the parties hereby elect to determine the applicable rate ceiling under such article by using the indicated (weekly) rate ceiling from time to time in effect, subject to Lender's right subsequently to change such method in accordance with Applicable Law.

"Applicable Law" shall mean that law (including, without limitation, Texas law), regulation, or judicial determination in effect from time to time and applicable to this note (including future changes in law), which lawfully permits the contracting for, charging and collection of the highest permissible rate of interest on this note and the loan evidenced hereby, including laws, regulations, and judicial determinations of the State of Texas and of the United States of America.

**Other Clauses**

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

A default exists under this note if (1) (a) Borrower or (b) any other person liable on any part of this note or who grants a lien or security interest on property as security for any part of this note (an "Other Obligated Party") fails to timely pay or perform any obligation or covenant in any written agreement between Lender and Borrower or any Other Obligated Party; (2) any representation in this note or in any other written agreement between Lender and Borrower or any Other Obligated Party is materially false when made; (3) a receiver is appointed for Borrower, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "Collateral Security") for any part of this note; (4) any Collateral Security is assigned for the benefit of creditors; (5) a bankruptcy or insolvency proceeding is commenced by Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; (6) (a) a bankruptcy or insolvency proceeding is commenced against Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered; (7) any of the following parties is terminated, begins to wind up its affairs, suffers a forfeiture of right to do business, is authorized to terminate or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the termination or winding up of the affairs of any of the following parties: Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; (8) any Collateral Security is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral security of like kind and quality or restored to its former condition; or (9) any attachment, sequestration or similar writ is levied upon any property of Borrower or Other Obligated Party and is not discharged within a period of thirty days; (10) any final money judgment against Borrower or any Other Obligated Party is not paid within thirty days; (11) Borrower abandons any portion of the property of Borrower; or (12) if Borrower is an individual, the death or disability of Borrower or Other Obligated Party, if Other Obligated Party is an individual.

**BORROWER waives its rights under the Texas Deceptive Trade Practices–Consumer Protection Act, section 17.41 *et seq.* of the Texas Business and Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of its own selection, BORROWER voluntarily consents to this waiver.**

If any provision of this note conflicts with any provision of a loan agreement, deed of trust, or security agreement of the same transaction between Lender and Borrower, the provisions of the deed of trust will govern to the extent of the conflict.

Borrower and Lender acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of this Note, deed of trust, and all other documents executed in connection with the same transaction between Lender and Borrower and that this Note, the deed of trust and all other documents executed in connection with the same transaction between Lender and Borrower shall not be subject to the principle of construing their meaning against the party which drafted same.

**BORROWER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY KNOWINGLY, INTENTIONALLY, IRREVOCABLY, UNCONDITIONALLY**

**AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.**

Borrower warrants to Lender and agrees that the proceeds of the Note will be used primarily for business or commercial purposes and not primarily for personal, family, or household purposes.

This note will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.

**WALL009, LLC, a Texas limited liability company.**

**BY: ITS MANAGERS:**

TRWF LODGE, LLC, a Texas limited liability company.

____________________________
Tim Barton
Its Managing Member

**and**

CARNEGIE DEVELOPMENT, LLC, a Delaware limited liability company.

____________________________
Tim Barton
Its Managing Member

# Johnson County

## Becky Ivey
## Johnson County Clerk
## Cleburne, TX

---

**Document Number:** 2019-24729

**Recorded As** : ERX-DEED OF TRUST

| | |
|---|---|
| **Recorded On:** | September 12, 2019 |
| **Recorded At:** | 02:49:11 pm |
| **Number of Pages:** | 17 |
| **Recording Fee:** | $86.00 |

**Parties:**

Direct-

Indirect-

| | |
|---|---|
| **Receipt Number:** | 175438 |
| **Processed By:** | Linda Bailey |

---

***THIS PAGE IS PART OF THE INSTRUMENT***

COUNTY COURT — JOHNSON COUNTY, TEXAS

I hereby certify that this instrument was filed on the date and time stamped hereon and was duly recorded in the Volume and Page of the named records in Johnson County, Texas.

Any provision herein which restricts the sale, rental or use of the described Real Estate because of color race is invalid and unenforceable under Federal law.

BECKY IVEY, COUNTY CLERK
JOHNSON COUNTY, TEXAS

Sendera Title

GF# 1903359-VWJA

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

# Deed of Trust

## Basic Information

**Date:** September 11, 2019.

**Grantor:** WALL009, LLC, a Texas limited liability company.

**Grantor's Mailing Address:**

1755 Wittington Place, Suite 340
Dallas, Texas 75234
c/o Tim Barton

**Trustee:** Robert W. Buchholz.

**Trustee's Mailing Address:**

420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201

**Lender:** Southern Star Capital LLC d/b/a Reliance Mortgage Company

**Lender's Mailing Address:**

5220 Spring Valley Road, Suite 602
Dallas, Texas 75254

**Obligation**

Note:
Date: September 11, 2019.
Original principal amount: $900,000.00.
Borrower: WALL009, LLC, a Texas limited liability company.

Lender: Southern Star Capital LLC d/b/a Reliance Mortgage Company
Maturity date: September 1, 2020.
Terms of Payment: As provided in the note.

**Property (including any improvements):**

The property described in the attached Exhibit "A" which is incorporated herein by reference.

**Exceptions to Conveyance and Warranty:**

None.

## A. Granting Clause

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

## B. Grantor's Obligations

*B.1.* Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender , and as to property loss, that are payable to Lender under policies containing standard mortgage clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

*B.2* Grantor agrees to-

a. keep the Property in good repair and condition;

b. pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

c. defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

d. obey all laws, ordinances, and restrictive covenants applicable to the Property;

e. keep any buildings occupied as required by the Required Insurance Coverages;

f. if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments;

g. notify Lender of any change of address; and

## C. Lender's Rights

*C.1.* Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees,

succeeding to all rights and responsibilities of Trustee.

*C.2.* If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

*C.3.* Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

*C.4.* Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

*C.5.* If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

*C.6.* **COLLATERAL PROTECTION INSURANCE NOTICE**

**In accordance with the provisions of Section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

**(A) the Grantor is required to:**

**(i) keep the collateral insured against damage in the amount the Lender specifies;**

**(ii) purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and**

**(iii) name the Lender as the persons to be paid under the policy in the event of a loss;**

**(B) the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and**

**(C) if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.**

*C.7.* If a default exists in payment of the Obligation or performance of Grantor obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may-

a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

b. exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c. direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

*C.8.* If Grantor fails to pay any part of principal or interest secured by a prior lien or liens on the Property when it becomes payable or defaults on any prior lien instrument, the entire debt secured by this deed of trust will immediately become payable at the option of Lender.

C.9. Any act or occurrence that would constitute default under the terms of any lien superior to the lien securing the Note will constitute a default under this Deed of Trust securing the Note.

*C.10.* Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**D. Trustee's Rights and Duties**
If directed by Lender to foreclose this lien, Trustee will-

*D.1.* either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

*D.2.* sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Liens and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

*D.3.* from the proceeds of the sale, pay, in this order-

a. expenses of foreclosure, including a reasonable commission to Trustee;
b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
c. any amounts required by law to be paid before payment to Grantor; and
d. to Grantor, any balance; and

*D.4.* be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**E. General Provisions**

*E.1.* If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor does not, Grantor will be a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

*E.2.* Recitals in any trustee's deed conveying the Property will be presumed to be true.

*E.3.* Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

*E.4.* This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

*E.5.* If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

*E.6.* Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

*E.7.* Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

*E.8.* Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.

*E.9.* In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

*E.10.* When the context requires, singular nouns and pronouns include the plural.

*E.11.* The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

*E.12.* Grantor warrants that the extension of credit evidenced by the Note secured hereby is solely for business or commercial purposes, other than agricultural purposes. The Grantor further warrants that the credit transaction evidenced by the Note is specifically exempted under Regulation Z issued by the Board of Governors of the Federal Reserve System and Title I of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the above transaction. Grantor does not claim any part of the Property as residential or business homestead. Grantor acknowledges that Lenders rely on the truth of representations in this paragraph in making the Note secured by this deed of trust.

*E.13.* Grantor will furnish to Lender or other holder of the Note annually, before January 31st of each year, copies of tax receipts showing that all taxes on the Property have been paid. Failure to comply with the foregoing for any reason whatsoever shall constitute a default.

If Grantor fails to pay all taxes on the Property prior to January 31st of each year for the tax period covering the preceding calendar year for any reason whatsoever, including, but not limited to, protests of value, processing of tax account split-out requests, or failure of the tax authorities to certify the tax roll or account, at the option of Lender, Grantor shall immediately deposit with Lender, a sum equal to taxes, assessments and charges against the Property in the amount as estimated by Lender.

All such funds shall bear no interest whatsoever, may be mingled with the general funds of Lender and shall be applied by Lender toward the payment of taxes and assessments; provided, however, that, if a Default shall have occurred hereunder, such funds may at Lender's option be applied to the payment of the Obligation in the order determined by Lender in its sole discretion, and that Lender may at any time, in its sole discretion, apply all or any part of such funds toward the payment of any such taxes, assessments, charges, legal fees, penalties or premiums which are past due, together with any penalties or late charges with respect thereto.

Lender shall have the right to rely upon tax information furnished by applicable taxing authorities in the payment of such taxes and assessments and Lender shall have no obligation to make any protest of any such taxes or assessments. Any excess over the amounts required for such purposes shall be held by Lender for future use, applied to the Obligation or refunded to Grantor, at Lender's option, and any deficiency in such funds so deposited shall be made up by Grantor upon demand by Lender.

The conveyance or transfer of Grantor's interest in the Property for any reason (including, without limitation, the foreclosure of a lien or security interest or a transfer by operation of law) shall constitute an assignment or transfer of Grantor's interest in and rights to such funds held by Lender under this subparagraph but subject to the rights of Lender hereunder.

Grantor will annually furnish to Lender or other holder of the Note evidence of current paid-up Required Insurance Coverage naming Lender or other holder of the Note as an insured.

***E.14.* GRANTOR MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.**

*E.15.* If all or any part of the Property is sold, transferred, or conveyed without the prior written consent of Lender or other holder of the Note, Lender or other holder of the Note may, at its sole option, declare the outstanding principal balance of the Note plus accrued interest immediately due and payable. Lender or other holder of the Note has no obligation to consent to any such sale or conveyance of the Property, and Lender or other holder of the Note is entitled to condition any consent on a change in the interest rate that will thereafter apply to the Note and any other change in the terms of the Note or Deed of Trust that Lender or other holder of the Note in its sole discretion deems appropriate. A lease for a period longer than one year, a lease with an option to purchase, or a contract for deed will be deemed to be a sale, transfer, or conveyance of the Property for purposes of this provision. The creation of a subordinate lien without the consent of Lender or other holder of the Note will be construed as a sale or conveyance of the Property, but any subsequent sale under a subordinate lien to which Lender or other holder of the Note has consented will not be construed as a sale or conveyance of the Property.

*E.16.* Grantor agrees not to grant any lien or security interest in the Property or to permit any junior encumbrance to be recorded or any claim to otherwise become an encumbrance against the Property. If an involuntary encumbrance is filed against the Property, Grantor agrees, within thirty days, to either remove the involuntary encumbrance or provide a bond acceptable to Lender against the involuntary encumbrance.

*E.17.* This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

*E.18.* If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

*E.19.* Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

*E.20.* Grantor will have full recourse liability for repayment of the principal and interest of the Note and the performance of all covenants and agreements of Grantor in this Deed of Trust.

*E.21.* Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if an attorney is retained for its enforcement.

*E.22.* Grantor agrees to execute, acknowledge, and deliver to Lender any document requested by Lender, at Lender's request from time to time, to

(a) correct any defect, error, omission, or ambiguity in this deed of trust or in any other document executed in connection with the Note or this deed of trust;
(b) comply with Grantor's obligations under this deed of trust and other documents;
(c) subject to and perfect the liens and security interests of this deed of trust and other documents any property intended to be covered thereby; and
(d) protect, perfect, or preserve the liens and the security interests of this deed of trust and other documents against third persons or make any recordings, file any notices, or obtain any consents requested by Lender in connection therewith. Grantor agrees to pay all costs of the foregoing.

*E.23.* Lender, as a matter of right and without regard to the sufficiency of the security for repayment of the Note and performance and discharge of the Obligations, without notice to Grantor and without any showing of insolvency, fraud, or mismanagement on the part of Grantor, and without the necessity of filing any judicial or other proceeding other than the proceeding for appointment of a receiver, shall be entitled to the appointment of a receiver or receivers of the Property or any part thereof, and of the Rents, and Grantor hereby irrevocably consents to the appointment of a receiver or receivers. Any receiver appointed pursuant to the provisions of this subsection shall have the usual powers and duties of receivers in such matters.

*E.24* Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The first sentence of this Section shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to the repair and maintenance of the Property.

Grantor shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge. If Grantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

*E.25.* If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

*E.26.* The term Lender includes any mortgage servicer for Lender.

*E.27.* Grantor hereby grants Lenders a right of first refusal with respect to Grantor's power to authorize any third party (other than Lenders pursuant to its rights as set forth in this instrument)

to pay ad valorem taxes on the Property and authorize a taxing entity to transfer its tax lien on the Property to that third party. Grantor's authorization to any third party (other than Lenders) to pay the ad valorem taxes and receive transfer of a taxing entity's lien for ad valorem taxes shall be null and void and of no force and effect unless Lenders, within ten days after receiving written notice from Grantor, fail to pay the ad valorem taxes pursuant to Lenders' rights as set forth in this instrument.

*E.28.* Grantor warrants that the execution of this deed of trust shall not impair or affect any other security, which may be given to secure the payment of the Obligation secured hereby, and all such additional security shall be considered as cumulative. The taking of additional security, execution of releases and partial releases of the security (regardless of consideration for the release or partial release) or any extension of time of payment of the Obligation secured hereby shall not diminish the force, effect, or lien of this deed of trust and shall not affect or impair the liability of any maker, surety, or endorser for the payment of said Obligation.

*E.29.* In the event of any conflict between the provisions of this Deed of Trust and the Note, guaranty (if any) and any of the other documents executed in connection with this transaction, it is the intent of the parties hereto that the provisions of this Deed of Trust shall control. The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Deed of Trust, the Note, guaranty (if any) and any of the other documents executed in connection with this transaction and that such Deed of Trust, Note, guaranty (if any) and all of the other documents executed in connection with this transaction shall not be subject to the principle of construing their meaning against the party which drafted same.

*E.30.* **GRANTOR AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION (WHICH COUNSEL WAS NOT DIRECTLY OR INDIRECTLY IDENTIFIED, SUGGESTED, OR SELECTED BY THE OTHER PARTY), VOLUNTARILY WAIVES A TRIAL BY JURY OF ANY ISSUE ARISING IN AN ACTION OR PROCEEDING BETWEEN THE PARTIES OR THEIR SUCCESSORS, UNDER OR CONNECTED WITH THIS CONTRACT OR ITS PROVISIONS. GRANTOR AND LENDER ACKNOWLEDGE TO EACH OTHER THAT GRANTOR AND LENDER ARE NOT IN SIGNIFICANTLY DISPARATE BARGAINING POSITIONS.**

*E.31* Additional Definitions used in this paragraph:

"Constituent Party": any (a) shareholder, member, general partner or managing member of Grantor, as applicable, or (b) any signatory to this Deed of Trust that signs on Grantor's behalf that is a corporation, general partnership, limited partnership, limited liability company, joint venture, trust, or other type of business organization, or(c) any Guarantor.

"Loan Documents": The Note, this Deed of Trust, the Guaranty, and any and all other documents now or hereafter executed by Grantor, Guarantor, or any other person or party in connection with the loan evidenced by the Note or in connection with the payment of the Obligation or the performance and discharge of the Obligations.

**GRANTOR SHALL INDEMNIFY, DEFEND, PROTECT AND HOLD HARMLESS**

LENDER AND TRUSTEE, THEIR RESPECTIVE PARENTS, SUBSIDIARIES, DIRECTORS, OFFICERS, EMPLOYEES, REPRESENTATIVES, AGENTS, MEMBERS, SUCCESSORS, AND ASSIGNS FROM AND AGAINST ANY AND ALL LIABILITY, DAMAGE, LOSS, COST, OR EXPENSE (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES), ACTION, PROCEEDING, CLAIM OR DISPUTE INCURRED OR SUFFERED BY THE FOREGOING PARTIES SO INDEMNIFIED WHETHER OR NOT AS THE RESULT OF THE NEGLIGENCE OF ANY PARTY SO INDEMNIFIED, WHETHER VOLUNTARILY OR INVOLUNTARILY INCURRED OR SUFFERED, IN RESPECT OF THE FOLLOWING:

(i) ANY LITIGATION CONCERNING THIS DEED OF TRUST, THE OTHER LOAN DOCUMENTS OR THE PROPERTY, OR ANY INTEREST OF GRANTOR OR LENDER THEREIN, OR THE RIGHT OF OCCUPANCY THEREOF BY GRANTOR OR LENDER, WHETHER OR NOT ANY SUCH LITIGATION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

(ii) ANY DISPUTE, INCLUDING DISPUTES AS TO THE DISBURSEMENT OF PROCEEDS OF THE NOTE NOT YET DISBURSED, AMONG OR BETWEEN ANY OF THE CONSTITUENT PARTIES OR OTHER PARTNERS OR VENTURERS OF GRANTOR IF GRANTOR IS A GENERAL OR LIMITED PARTNERSHIP, OR AMONG OR BETWEEN ANY EMPLOYEES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS OR MANAGERS OF GRANTOR IF GRANTOR IS A CORPORATION OR LIMITED LIABILITY COMPANY, OR AMONG OR BETWEEN ANY MEMBERS, TRUSTEES OR OTHER RESPONSIBLE PARTIES IF GRANTOR IS AN ASSOCIATION, TRUST OR OTHER ENTITY;

(iii) ANY ACTION TAKEN OR NOT TAKEN BY LENDER OR TRUSTEE WHICH IS ALLOWED OR PERMITTED UNDER THIS DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS RELATING TO GRANTOR, THE PROPERTY, ANY CONSTITUENT PARTIES OR OTHERWISE IN CONNECTION WITH THE LOAN DOCUMENTS, INCLUDING WITHOUT LIMITATION, THE PROTECTION OR ENFORCEMENT OF ANY LIEN, SECURITY INTEREST OR OTHER RIGHT, REMEDY OR RECOURSE CREATED OR AFFORDED BY THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS;

(iv) ANY ACTION BROUGHT BY LENDER OR TRUSTEE AGAINST GRANTOR UNDER THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS, WHETHER OR NOT SUCH ACTION IS PROSECUTED TO A FINAL, NON-APPEALABLE JUDGMENT;

(v) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY, OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE PROPERTY AND ITS IMPROVEMENTS;

(vi) ALL CLAIMS, CAUSES OF ACTION, LEGAL PROCEEDINGS, LIABILITY,

**OR DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO THE SALE AND PURCHASE OF THE PROPERTY AS WELL AS ANY AGREEMENTS RELATED THERETO AS WELL AS ANY SUBSEQUENT RESALE AND/OR TRANSFER OF THE PROPERTY BY GRANTOR; AND**

**(vii) ANY AND ALL LOSS, DAMAGE, COSTS, EXPENSE, ACTION, CAUSES OF ACTION, OR LIABILITY (INCLUDING ATTORNEYS' FEES AND COSTS) DIRECTLY OR INDIRECTLY ARISING FROM OR ATTRIBUTABLE TO THE USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE OF A HAZARDOUS SUBSTANCE ON, IN, UNDER OR ABOUT THE PROPERTY, WHETHER KNOWN OR UNKNOWN AT THE TIME OF THE EXECUTION HEREOF, INCLUDING WITHOUT LIMITATION (A) ALL FORESEEABLE CONSEQUENTIAL DAMAGES OF ANY SUCH USE, GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL, OR PRESENCE, AND (B) THE COSTS OF ANY REQUIRED OR NECESSARY ENVIRONMENTAL INVESTIGATION OR MONITORING, ANY REPAIR, CLEANUP, 13 OR DETOXIFICATION OF THE PROPERTY, AND THE PREPARATION AND IMPLEMENTATION OF ANY CLOSURE, REMEDIAL, OR OTHER REQUIRED PLANS.**

**LENDER AND/OR TRUSTEE MAY EMPLOY AN ATTORNEY OR ATTORNEYS TO PROTEST OR ENFORCE ITS RIGHTS, REMEDIES AND RECOURSES UNDER THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS, AND TO ADVISE AND DEFEND LENDER AND/OR TRUSTEE WITH RESPECT TO ANY SUCH ACTIONS AND OTHER MATTERS. GRANTOR SHALL REIMBURSE LENDER AND/OR TRUSTEE FOR THEIR RESPECTIVE ATTORNEYS' FEES AND EXPENSES (INCLUDING EXPENSES AND COSTS FOR EXPERTS) IMMEDIATELY UPON RECEIPT OF A WRITTEN DEMAND THEREFOR, WHETHER ON A MONTHLY OR OTHER TIME INTERVAL, AND WHETHER OR NOT AN ACTION IS ACTUALLY COMMENCED OR CONCLUDED. ALL OTHER REIMBURSEMENT AND INDEMNITY OBLIGATIONS HEREUNDER SHALL BECOME DUE AND PAYABLE WHEN ACTUALLY INCURRED BY LENDER AND/OR TRUSTEE. ANY PAYMENTS NOT MADE WITHIN FIVE (5) DAYS AFTER WRITTEN DEMAND THEREFOR SHALL BEAR INTEREST AT THE ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS FROM THE DATE OF SUCH DEMAND UNTIL FULLY PAID. THE PROVISIONS OF THIS SECTION E.31 SHALL SURVIVE REPAYMENT OF THE NOTE AND PERFORMANCE OF THE OBLIGATIONS, THE RELEASE OF THE LIEN OF THIS DEED OF TRUST, ANY FORECLOSURE (OR ACTION IN LIEU OF FORECLOSURE), THE TRANSFER BY GRANTOR OF ANY OR ALL OF ITS RIGHT, TITLE AND INTEREST IN OR TO THE PROPERTY AND THE EXERCISE BY LENDER OF ANY AND ALL REMEDIES SET FORTH HEREIN OR IN THE LOAN DOCUMENTS.**

*E.32.* **GRANTOR WAIVES ITS RIGHTS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ. OF THE TEXAS BUSINESS AND COMMERCE CODE, A LAW THAT GIVES CONSUMERS**

**SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, GRANTOR VOLUNTARILY CONSENTS TO THIS WAIVER.**

**NOTICE**

**THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**NOTICE OF INDEMNIFICATION: GRANTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN SECTION E.31 HEREOF) WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY GRANTOR OF LENDER FROM CLAIMS OR LOSSES ARISING AS A RESULT OF LENDER'S OWN NEGLIGENCE.**

**WALL009, LLC, a Texas limited liability company.**

**BY: ITS MANAGERS:**

TRWF LODGE, LLC, a Texas limited liability company.

____________________________
Tim Barton
Its Managing Member

**and**

CARNEGIE DEVELOPMENT, LLC, a Delaware limited liability company.

____________________________
Tim Barton
Its Managing Member

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

Before me, the undersigned notary public, on this day personally appeared Tim Barton, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as the Manager and authorized agent for TRWF LODGE, LLC and CARNEGIE DEVELOPMENT, LLC, for the purposes and consideration therein expressed.

Given under my hand and seal of office this 11 day of September 2019.

Notary Public, State of Texas

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

# EXHIBIT "A"

## TRACT I

BEING a 27.262 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain called 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to be more particularly described by metes and bounds as follows:

BEGINNING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the Plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;

THENCE North 30° 13' 50" West with the northeast line of said Addition, a distance of 1,128.01 feet to a 1/2' capped iron rod marked "SANDS" set for corner;

THENCE North 59° 46' 10" East across said 101.49 acre tract a distance of 110.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;

THENCE North 30° 13' 50" West, a distance of 5.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;

THENCE North 59° 46' 10" East, a distance of 50.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;

THENCE North 30° 13' 50" West, a distance of 26.19 feet to a 1/2" capped iron rod marked "SANDS" set for corner;

THENCE North 59° 46' 10" East, at a distance of 858.80 feet to a 1/2" capped iron rod marked "SANDS" set for corner in the northeast line of said 101.49 acre tract, same being the northeast line of the above referenced John Haigler Survey and being in the southwest line of the above referenced 126.2407 acre tract, same being the southwest line of the above referenced Absalom Williams Survey;

THENCE South 30° 13' 50" East with said northeast and southwest lines, a distance of 1,181.38 feet to a 1/2" capped iron rod marked "FORT WORTH SURVEYING" set for corner in the northwest line of the above referenced County Road 501 at the east corner of said 101.49 acre tract;

THENCE South 60° 01' 00" West continuing with said County Road and the southeast line of said 101.49 acre tract, a distance of 1,019.04 feet back to the Point of beginning and containing 1,187,549 square feet, or 27.262 acres of land, more or less.

**TRACT II:**

**BEING a 36.502 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to me more particularly described by metes and bounds as follows:**

**COMMENCING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Venus Ridge, Phase IV and southwest line of said 101.19 acre tract, a distance of 1,128.01 feet to a 1/2" capped iron rod set for corner at the Point of Beginning;**

**THENCE continuing with said northeast and southwest lines the following:**

**North 30° 13' 50" West, a distance of 1,063.25 feet to a 1/2" capped iron rod found for corner;**

**North 00° 26' 19" West, a distance of 112.41 feet to a 1/2" capped iron rod found for corner;**

**South 89° 33' 41" West, a distance of 33.74 feet to a 1/2" capped iron rod found for corner at the beginning of a curve to the left;**

**THENCE continuing with said northeast and southwest lines in a Southwesterly direction with said curve to the left having a radius of 270.00 feet, a chord that bears South 74° 39' 55" West, a distance of 138.81 feet for an arc length of 140.39 feet to a 1/2" capped iron rod found for corner;**

**THENCE North 30° 13' 50" West, a distance of 242.77 feet to a 1/2" capped iron rod found for corner;**

**THENCE South 89° 33' 41" West, a distance of 183.97 feet to a 1/2" capped iron rod found for corner in the northwest line of said 101.49 acre tract, the northwest line of said Haigler Survey, same being the southeast line of that certain called 144.38 acre tract of land described in Deed from Wayne Hood and Eleanor Hood and recorded in Volume 2616, Page 156 of said Deed Records, same being the southeast line of the B.B.B. & C. R.R Survey, Abstract No. 92;**

**THENCE North 59° 45' 40" East with said southeast and northwest lines a distance of 1,286.03 feet to a capped iron rod found for corner at the north corner of said 101.49 acre tract of land, same being the north corner of said Haigler Survey, the east corner of said B.B.B. & C. R.R. Survey, and bing in the southwest line of that certain called 62.7 acre**

**tract of land described in Deed to Farm Partnership, et al and recorded in Volume 4302, Page 538 of said Deed Records, same being the southwest line of the Absolam Williams Survey, Abstract No. 857;**

**THENCE South 30° 13' 50" East with the northeast line of said 101.49 acre tract, same being the northeast line of said Haigler Survey and the southwest line of said 62.7 acre tract, same being the southwest line of said Williams Survey, at a distance of 11,219.39 feet passing a 1/2" capped iron rod found for corner at the south corner of said 62.7 acre tract, same being the west corner of that certain called 128.8645 acre tract of land described in Deed from Anastasia Energy, LLC to DJD Land Partners, LLC and recorded in County Clerk's File No. 2018-18134 of said Deed Records and continuing a total distance of 1,516.42 feet 1/2" capped iron rod found for corner;**

**THENCE across said 101.49 acre tract the following:**

**South 59° 46' 10" West, a distance of 858.80 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 26.19 feet to a 1/2" capped iron rod set for corner;**

**South 59° 46' 10" West, a distance of 50.00 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 5.00 feet to a 1/2" capped iron rod set for corner;**

**THENCE South 59° 46' 10" West, a distance of 110.00 feet back to the Point of Beginning and containing 1,590,029 square feet or 36.502 acres of land, more or less.**

# Guaranty

### Basic Information

Date: September 11, 2019.

Guarantor: Tim Barton.

Guarantor's Mailing Address: 1755 Wittington Place, Suite 340, Dallas, TX 75234

Borrower: WALL009, LLC, a Texas limited liability company.

Borrower's Mailing Address: 1755 Wittington Place, Suite 340, Dallas, TX 75234

Lender: Southern Star Capital, LLC d/b/a Reliance Mortgage Company

Lender's Mailing Address: 5220 Spring Valley Road, Suite 602, Dallas, Texas 75254.

Guaranteed Indebtedness: The debt evidenced by the note dated September 11, 2019, in the original principal amount of $900,000.00, executed by Borrower and payable to the order of Lender, the obligations under the deed of trust executed in connection with the note and any other document executed by Borrower evidencing or securing the note (collectively, the "Loan Documents"), plus all interest, penalties, expenses, attorney's fees, and other collection costs as provided in the Loan Documents.

### Clauses and Covenants

1. Guarantor agrees to pay, when due or declared due, the Guaranteed Indebtedness to Lender at Lender's Mailing Address.

2. Guarantor waives (a) diligence in preserving liability of any person on the Guaranteed Indebtedness and in collecting or bringing suit to collect the Guaranteed Indebtedness; (b) all rights of Guarantor under chapter 43 of the Texas Civil Practice and Remedies Code, section 17.001 of the Texas Civil Practice and Remedies Code, [and] rule 31 of the Texas Rules of Civil Procedure, and sections 51.003, 51.004, and 51.005 of the Texas Property Code]; (c) protest; (d) notice of extensions, increases, renewals, or rearrangements of the Guaranteed Indebtedness; and (e) notice of acceptance of this guaranty, of creation of the Guaranteed Indebtedness, of failure to pay the Guaranteed Indebtedness as it matures, of any other default, of adverse change in Borrower's financial condition, of release or substitution of collateral, of intent to accelerate, of acceleration, and of subordination of Lender's rights in any collateral, and every other notice of every kind. Guarantor's obligations under this guaranty will not be altered nor will Lender be liable to Guarantor because of any action or inaction of Lender in regard to a matter waived or of which notice is waived by Guarantor in the preceding sentence.

3. Guarantor agrees to pay reasonable attorney's fees and other collection costs if an attorney is retained to enforce this guaranty for collection.

4. This guaranty is an absolute, irrevocable, unconditional, and continuing guaranty of payment and performance and not of collection.

5. Lender need not resort to Borrower or any other person or proceed against collateral before pursuing its rights against Guarantor or any other guarantor. Lender's action or inaction with respect to any right of Lender under the law or any agreement will not alter the obligation of Guarantor hereunder. Lender may pursue any remedy against Borrower or any collateral or under any other guaranty without altering the obligations of Guarantor hereunder and without liability to Guarantor, even though Lender's pursuit of such remedy may result in Guarantor's loss of rights of subrogation or to proceed against others for reimbursement of contribution or any other right.

6. Guarantor will remain liable for the Guaranteed Indebtedness even though the Guaranteed Indebtedness may be unenforceable against or uncollectible from Borrower or any other person because of incapacity, lack of power or authority, discharge, or any other reason.

7. Guarantor consents and acknowledges that Guarantor's obligations will not be released by (a) the renewal, extension, or modification of the Guaranteed Indebtedness or any of the Loan Documents; (b) the insolvency, bankruptcy, liquidation, or dissolution of Borrower or any other obligor; (c) the failure of Lender to properly obtain, perfect, or preserve any security interest or lien in any collateral for the Guaranteed Indebtedness; (d) the release, substitution, or addition of any collateral for the Guaranteed Indebtedness; or (e) the failure of Lender to exercise diligence, commercial reasonableness, or reasonable care in the preservation, enforcement, or sale of any of the collateral.

8. Lender need not notify Guarantor that Lender has sued Borrower, but if Lender gives written notice to Guarantor that it has sued Borrower, Guarantor will be bound by any judgment or decree, to the extent permitted by law.

9. Lender may sue any guarantor without impairing Lender's rights against any other guarantor, with or without making Borrower a party. Lender may settle with Borrower or any other guarantor for such amounts as it may elect or may release Borrower or any guarantor or any collateral securing the Guaranteed Indebtedness without impairing Lender's right to collect the Guaranteed Indebtedness from Guarantor.

10. This guaranty binds Guarantor and Guarantor's heirs, successors, and assigns, and it benefits and may be enforced by Lender and Lender's successors in interest. When the context requires, singular nouns and pronouns include the plural. This guaranty will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction. The provisions of this guaranty are severable. If a court of competent jurisdiction finds that any provision of this guaranty is unenforceable, then the remaining provisions will remain in effect without the unenforceable parts.

11. From time to time, at the request of Lender, Guarantor will (i) promptly correct any defect, error or omission which may be discovered in the contents of this Guaranty or in any other Loan Document executed by Guarantor or in the execution or acknowledgment thereof; (ii) execute, acknowledge, deliver and record or file (or cause to be executed, acknowledged, delivered and recorded or filed) such further documents and instruments and perform such further acts and

provide such further assurances as may be necessary, desirable, or proper, in Lender's opinion, (A) to carry out more effectively the purposes of this Guaranty and the other Loan Documents and the transactions contemplated hereunder and thereunder, (B) to confirm the rights created under this Guaranty and the other Loan Documents, (C) to protect and further the validity, priority and enforceability of this Guaranty and the other Loan Documents and the liens and security interests created thereby, and (D) to subject to the Loan Documents any property of Guarantor intended by the terms of any one or more of the Loan Documents to be encumbered by the Loan Documents; and (iii) pay all costs in connection with any of the foregoing.

12. FINAL AGREEMENT: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

________________________________
Tim Barton

# The Law Office of Robert W. Buchholz, P.C.

Attorney and Counselor at Law

Robert W. Buchholz
Member:
State Bar of Texas
Board Certified Civil Trial Law
Texas Board of Legal Specialization
State Bar of Oklahoma
State Bar of Arkansas
National Board of Trial Advocacy
Civil Trial Law
National Board of Civil Pretrial Practice
Civil Pretrial Practice Advocate

April 13, 2020

Via Regular Mail and Certified Mail to the following:

Mr. Tim Barton
WALL009, LLC
1755 Wittington Place, Suite 340
Dallas, Texas 75234.

Mr. Tim Barton
WALL009, LLC
9911 Champa Drive
Dallas, Texas 75218

Re: Notice of foreclosure sale to be conducted on May 5, 2020 by Robert W. Buchholz Trustee of property described in deed of trust dated September 11, 2019, executed by WALL009, LLC, and recorded at Clerks File No. 2019-24729, in the real property records of Johnson County, Texas, securing the obligations therein described (the "Indebtedness").

Dear Mr. Barton:

This letter and the enclosed copy of the Notice of Foreclosure/Trustees Sale are being sent to you as an obligor on the Indebtedness evidenced by the promissory note dated September 11, 2019 in the original principal amount of $900,000.00, executed by WALL009, LLC and payable to the order of Southern Star Capital, LLC d/b/a Reliance Mortgage Company as described in the enclosed notice. Default has occurred under the terms of the Deed of Trust.

Robert W. Buchholz has been named in the Deed of Trust to conduct the foreclosure sale of the property encumbered by the deed of trust.

Mr. Tim Barton
WALL009, LLC
April 13, 2020
Page 2.

I am enclosing a copy of the Notice of Trustee's Sale, which is being posted on the public notice board of the Johnson County Courthouse and in accordance with the provisions of the deed of trust. You are informed that the public auction of the property described in the Notice of Foreclosure Sale is scheduled for Tuesday, May 5, 2020, between the hours of 10:00 a.m. and 4:00 p.m. at the Johnson County, Texas, Courthouse. The sale will begin no earlier than 11:00 a.m. or no later than three hours thereafter. The sale will be held at the location described in the Notice of Foreclosure/Trustees Sale.

As of this date the principal amount of $900,000.00 is due on the note together with all unpaid accrued interest thereon and all fees and expenses as allowed by the deed of trust. Interest will continue to accrue on the matured unpaid principal in accordance with the terms of the Indebtedness until this debt is paid. Additionally, the note evidencing the Indebtedness and deed of trust provide for reimbursement to the Noteholder of its reasonable attorney's fees and expenses incurred in collecting this debt. **You may contact me at 420 S. Cesar Chavez Blvd., Suite 300, Dallas, Dallas County, Texas 75201, 214-754-5500 phone, to obtain a complete statement of the balance owed on your debt to the Noteholder and to arrange payment of this debt.**

Demand is hereby made that you pay the Noteholder the Indebtedness now owed that is secured by the deed of trust.

In accordance with the terms of the Deed of Trust you have waived to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

You will be able to prevent this foreclosure by paying the Noteholder before the foreclosure sale the total amount now owed that is secured by the referenced deed of trust, plus the additional interest that accrues to the date of payment and all attorney's fees and costs incurred by the Noteholder in collecting this Indebtedness. Payment must be made in cash or by cashier's check received by Noteholder or by me before conducting the foreclosure sale. Partial payments will be applied on the Indebtedness but will not prevent the foreclosure sale. If you mail payment and it is received after the sale, it will have been sent too late. To the extent permitted under the terms of the note and applicable law, the obligors on the note will be liable for any deficiency remaining after application of the net foreclosure sale proceeds to the Indebtedness. **You may contact the undersigned about the balance owed on the Indebtedness.**

You are notified that the undersigned is attempting to collect this debt and any information obtained from you will be used for such purpose.

**If you have any questions, please contact me.**

**<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.</u>**

Sincerely yours,

Robert W. Buchholz
420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201
214-754-5500
214-754-9100 fax
bob@attorneybob.com

**A DESCRIPTION OF THE PROPERTY SUBJECT TO THE FORECLOSURE SALE IS ATTACHED HERETO.**

**EXHIBIT "A"**

**TRACT I**

**BEING a 27.262 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain called 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to be more particularly described by metes and bounds as follows:**

**BEGINNING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the Plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Addition, a distance of 1,128.01 feet to a 1/2' capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East across said 101.49 acre tract a distance of 110.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 5.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, a distance of 50.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 26.19 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, at a distance of 858.80 feet to a 1/2" capped iron rod marked "SANDS" set for corner in the northeast line of said 101.49 acre tract, same being the northeast line of the above referenced John Haigler Survey and being in the southwest line of the above referenced 126.2407 acre tract, same being the southwest line of the above referenced Absalom Williams Survey;**

**THENCE South 30° 13' 50" East with said northeast and southwest lines, a distance of 1,181.38 feet to a 1/2" capped iron rod marked "FORT WORTH SURVEYING" set for corner in the northwest line of the above referenced County Road 501 at the east corner of said 101.49 acre tract;**

**THENCE South 60° 01' 00" West continuing with said County Road and the southeast line of said 101.49 acre tract, a distance of 1,019.04 feet back to the Point of beginning and containing 1,187,549 square feet, or 27.262 acres of land, more or less.**

**TRACT II:**

**BEING a 36.502 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to me more particularly described by metes and bounds as follows:**

**COMMENCING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Venus Ridge, Phase IV and southwest line of said 101.19 acre tract, a distance of 1,128.01 feet to a 1/2" capped iron rod set for corner at the Point of Beginning;**

**THENCE continuing with said northeast and southwest lines the following:**

**North 30° 13' 50" West, a distance of 1,063.25 feet to a 1/2" capped iron rod found for corner;**

**North 00° 26' 19" West, a distance of 112.41 feet to a 1/2" capped iron rod found for corner;**

**South 89° 33' 41" West, a distance of 33.74 feet to a 1/2" capped iron rod found for corner at the beginning of a curve to the left;**

**THENCE continuing with said northeast and southwest lines in a Southwesterly direction with said curve to the left having a radius of 270.00 feet, a chord that bears South 74° 39' 55" West, a distance of 138.81 feet for an arc length of 140.39 feet to a 1/2" capped iron rod found for corner;**

**THENCE North 30° 13' 50" West, a distance of 242.77 feet to a 1/2" capped iron rod found for corner;**

**THENCE South 89° 33' 41" West, a distance of 183.97 feet to a 1/2" capped iron rod found for corner in the northwest line of said 101.49 acre tract, the northwest line of said Haigler Survey, same being the southeast line of that certain called 144.38 acre tract of land described in Deed from Wayne Hood and Eleanor Hood and recorded in Volume 2616, Page 156 of said Deed Records, same being the southeast line of the B.B.B. & C. R.R Survey, Abstract No. 92;**

**THENCE North 59° 45' 40" East with said southeast and northwest lines a distance of 1,286.03 feet to a capped iron rod found for corner at the north corner of said 101.49 acre tract of land, same being the north corner of said Haigler Survey, the east corner of said B.B.B. & C. R.R. Survey, and bing in the southwest line of that certain called 62.7 acre**

**tract of land described in Deed to Fielder Farm Partnership, et al and recorded in Volume 4302, Page 538 of said Deed Records, same being the southwest line of the Absolam Williams Survey, Abstract No. 857;**

**THENCE South 30° 13' 50" East with the northeast line of said 101.49 acre tract, same being the northeast line of said Haigler Survey and the southwest line of said 62.7 acre tract, same being the southwest line of said Williams Survey, at a distance of 11,219.39 feet passing a 1/2" capped iron rod found for corner at the south corner of said 62.7 acre tract, same being the west corner of that certain called 128.8645 acre tract of land described in Deed from Anastasia Energy, LLC to DJD Land Partners, LLC and recorded in County Clerk's File No. 2018-18134 of said Deed Records and continuing a total distance of 1,516.42 feet 1/2" capped iron rod found for corner;**

**THENCE across said 101.49 acre tract the following:**

**South 59° 46' 10" West, a distance of 858.80 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 26.19 feet to a 1/2" capped iron rod set for corner;**

**South 59° 46' 10" West, a distance of 50.00 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 5.00 feet to a 1/2" capped iron rod set for corner;**

**THENCE South 59° 46' 10" West, a distance of 110.00 feet back to the Point of Beginning and containing 1,590,029 square feet or 36.502 acres of land, more or less.**

**Notice of Foreclosure/Trustee's Sale**

POSTED
837 A.M. ______ P.M.
APR 14 2020
Becky Ivey
County Clerk, Johnson County Texas
BY ___ [signature] ___ DEPUTY

**Date:** April 13, 2020.

**Trustee:** Robert W. Buchholz:

**Trustee's Address:**

420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201
214-754-5500
214-754-9100 fax
bob@attorneybob.com

**Mortgagee:** Southern Star Capital, LLC d/b/a Reliance Mortgage Company.

**Note:** Note dated September 11, 2019 in the principal amount of $900,000.00 payable to Southern Star Capital, LLC d/b/a Reliance Mortgage Company.

**Deed of Trust**

Date: September 11, 2019.

Grantor: WALL009, LLC, a Texas limited liability company

Mortgagee: Southern Star Capital, LLC, d/b/a Reliance Mortgage Company.

Recording information: File No. 2019-24729 of the Deed Records of Johnson County, Texas.

**Property:** **SEE ATTACHED EXHIBIT "A" WHICH IS INCORPORATED HEREIN BY REFERENCE.**

**County:** Johnson County, Texas.

**Date of Sale (first Tuesday of month):** May 5, 2020.

**Time of Sale:** 11:00 a.m. or within three hours thereafter.

**Place of Sale:** Outside the west doors of the Johnson County Historic Courthouse at 2 N. Main Street in Cleburne Texas (exterior steps to the main floor facing Main Street) or, if the preceding area is no longer the designated area, the area most recently designated by the County Commissioner's Court.

Robert W. Buchholz is the Trustee under the Deed of Trust/Mortgage. Mortgagee has instructed Trustee to offer the Property for sale towards the satisfaction of the Note.

Notice is given that on the Date of Sale, Trustee will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS." THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION, QUIET ENJOYMENT, OR THE LIKE FOR THE PERSONAL PROPERTY IN THIS DISPOSITION. The sale will begin at the Time of Sale or not later than three hours thereafter.

Robert W Buchholz
420 S. Cesar Chavez Blvd., Suite 300
Dallas, Texas 75201
214-754-5500
214-754-9100 fax
bob@attorneybob.com

Doc-24729

**EXHIBIT "A"**

**TRACT I**

**BEING a 27.262 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain called 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to be more particularly described by metes and bounds as follows:**

**BEGINNING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the Plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Addition, a distance of 1,128.01 feet to a 1/2' capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East across said 101.49 acre tract a distance of 110.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 5.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, a distance of 50.00 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 30° 13' 50" West, a distance of 26.19 feet to a 1/2" capped iron rod marked "SANDS" set for corner;**

**THENCE North 59° 46' 10" East, at a distance of 858.80 feet to a 1/2" capped iron rod marked "SANDS" set for corner in the northeast line of said 101.49 acre tract, same being the northeast line of the above referenced John Haigler Survey and being in the southwest line of the above referenced 126.2407 acre tract, same being the southwest line of the above referenced Absalom Williams Survey;**

**THENCE South 30° 13' 50" East with said northeast and southwest lines, a distance of 1,181.38 feet to a 1/2" capped iron rod marked "FORT WORTH SURVEYING" set for corner in the northwest line of the above referenced County Road 501 at the east corner of said 101.49 acre tract;**

**THENCE South 60° 01' 00" West continuing with said County Road and the southeast line of said 101.49 acre tract, a distance of 1,019.04 feet back to the Point of beginning and containing 1,187,549 square feet, or 27.262 acres of land, more or less.**

Doc-24729

**TRACT II:**

**BEING a 36.502 acre tract of land situated in the John Haigler Survey, Abstract No. 358 and the Absalom Williams Survey, Abstract No. 857, City of Venus, Johnson County, Texas and being a part of that certain 101.49 acre tract of land described in Special Warranty Deed from Lynco Ventures, LLC to Wall009, LLC and recorded by Document No. 2017-16584 of the Deed Records of Johnson County, Texas, said 27.262 acres of land to me more particularly described by metes and bounds as follows:**

**COMMENCING at a 1/2" capped iron rod found for corner in the southeast line of said 101.49 acre tract of land, same being the northwest line of County Road 501 (60 foot Right-of-Way) and being at the east corner of Venus Ridge Phase IV Addition, an addition to the City of Venus, Johnson County, Texas, according to the plat thereof recorded in Volume 11, Page 544 of the Plat Records of Johnson County, Texas;**

**THENCE North 30° 13' 50" West with the northeast line of said Venus Ridge, Phase IV and southwest line of said 101.19 acre tract, a distance of 1,128.01 feet to a 1/2" capped iron rod set for corner at the Point of Beginning;**

**THENCE continuing with said northeast and southwest lines the following:**

**North 30° 13' 50" West, a distance of 1,063.25 feet to a 1/2" capped iron rod found for corner;**

**North 00° 26' 19" West, a distance of 112.41 feet to a 1/2" capped iron rod found for corner;**

**South 89° 33' 41" West, a distance of 33.74 feet to a 1/2" capped iron rod found for corner at the beginning of a curve to the left;**

**THENCE continuing with said northeast and southwest lines in a Southwesterly direction with said curve to the left having a radius of 270.00 feet, a chord that bears South 74° 39' 55" West, a distance of 138.81 feet for an arc length of 140.39 feet to a 1/2" capped iron rod found for corner;**

**THENCE North 30° 13' 50" West, a distance of 242.77 feet to a 1/2" capped iron rod found for corner;**

**THENCE South 89° 33' 41" West, a distance of 183.97 feet to a 1/2" capped iron rod found for corner in the northwest line of said 101.49 acre tract, the northwest line of said Haigler Survey, same being the southeast line of that certain called 144.38 acre tract of land described in Deed from Wayne Hood and Eleanor Hood and recorded in Volume 2616, Page 156 of said Deed Records, same being the southeast line of the B.B.B. & C. R.R Survey, Abstract No. 92;**

**THENCE North 59° 45' 40" East with said southeast and northwest lines a distance of 1,286.03 feet to a capped iron rod found for corner at the north corner of said 101.49 acre tract of land, same being the north corner of said Haigler Survey, the east corner of said B.B.B. & C. R.R. Survey, and bing in the southwest line of that certain called 62.7 acre**

Doc-24729

**tract of land described in Deed to Fielder Farm Partnership, et al and recorded in Volume 4302, Page 538 of said Deed Records, same being the southwest line of the Absolam Williams Survey, Abstract No. 857;**

**THENCE South 30° 13' 50" East with the northeast line of said 101.49 acre tract, same being the northeast line of said Haigler Survey and the southwest line of said 62.7 acre tract, same being the southwest line of said Williams Survey, at a distance of 11,219.39 feet passing a 1/2" capped iron rod found for corner at the south corner of said 62.7 acre tract, same being the west corner of that certain called 128.8645 acre tract of land described in Deed from Anastasia Energy, LLC to DJD Land Partners, LLC and recorded in County Clerk's File No. 2018-18134 of said Deed Records and continuing a total distance of 1,516.42 feet 1/2" capped iron rod found for corner;**

**THENCE across said 101.49 acre tract the following:**

**South 59° 46' 10" West, a distance of 858.80 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 26.19 feet to a 1/2" capped iron rod set for corner;**

**South 59° 46' 10" West, a distance of 50.00 feet to a 1/2" capped iron rod set for corner;**

**South 30° 13' 50" East, a distance of 5.00 feet to a 1/2" capped iron rod set for corner;**

**THENCE South 59° 46' 10" West, a distance of 110.00 feet back to the Point of Beginning and containing 1,590,029 square feet or 36.502 acres of land, more or less.**

**AFFIDAVIT OF AL J. KELLER IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

STATE OF TEXAS )

COUNTY OF DALLAS )

BEFORE ME, the undersigned Notary, personally appeared Al J. Keller who after being duly sworn upon his oath, deposed and stated as follows:

1. "My name is Al J. Keller; I am over the age of 18, have never been convicted of a crime involving moral turpitude, and I am otherwise fully competent to testify and to make this affidavit.

2. I am the Chief Financial Officer of Southern Star Capital LLC d/b/a Reliance Mortgage, LLC, which is the servicer for the owner and holder of the Note and Deed of Trust referenced herein and I am authorized to make this affidavit.

3. I have care, custody and control of books, records and files relating to the loan made by Southern Star Capital, LLC, d/b/a Reliance Mortgage Company ("Movant") to Wall009, LLC, ("Debtor"). I have personally worked on said books, records and files and, as to the following facts, I know them to be true of my own personal knowledge or have gained knowledge of them from Movant's books, records and files. Said books, records and files were prepared in the regular course of Movant's business at or near the time of the acts, conditions, or events to which they relate by a person who had personal knowledge of the event being recorded and a business duty to accurately record such event. I have reviewed all of Movant's books and records in connection with this matter. Based upon my review of Movant's books and records, I have personal knowledge of the facts contained herein and, if called upon to testify, I could and would competently testify;

3. At the time of filing the Involuntary Chapter 7 petition, Movant held a Note in the principal amount of $900,000.00 dated September 11, 2019 and was named as the Lender is a certain Deed of Trust of the same date recorded in the Johnson County, Texas Deed Records at Clerk's File No. 2019-24729. These documents were executed by Wall009, LLC.

4. The indebtedness is secured by the Deed of Trust as contained in the documents on the real property described in the Deed of Trust.

5. A true and correct copy of the Legal Description of the Property is attached to the Motion for Lift of Stay as Exhibit "1". A true and correct copy of the Note is attached to the Motion for Lift of Stay as Exhibit "2". A true and correct copy of the Deed of Trust is attached to the Motion for Lift of Stay as Exhibit "3".

6. Debtor is in default on its obligations under the terms of the Note and Deed of Trust in that Debtor has failed to make their payments when due and owing. Debtor has made no payments on the note.

7. The status of the indebtedness as of September 1, 2020 is as follows:

| | | |
|---|---|---|
| a. | Principal Amount Due: | $900,000.00. |
| b. | Total Payments Made: | $0.00. |
| c. | Total interest due as of September 1, 2020: | $108,000.00 |
| | Late Fees Due as of September 1, 2020 | $ 4,950.00 |
| | Total Interest & Late Fees Due as of Sept 1, 2020 | $112,950.00 |
| c. | Additional Collateral held as of September 1, 2020: | CD $90,000.00 |
| | Accrued Interest on C as of Sept 1, 2020 | $1,654.57 |

e. Interest continues to accrue at the default rate of Eighteen Percent Per Annum, or the maximum legal rate as provided for in the note.

8. In accordance with the agreement between the parties Southern Star Capital, LLC d/b/a Reliance Mortgage would state that it is entitled to reasonable post-petition attorney's fees, including, but not limited to, fees, if any, for the preparation and filing of this Motion of Relief from Stay in the amount of at least $2,500.00 plus costs.

9. By failing to make the payments as due, debtor has not provided Movant with adequate protection. Southern Star Capital, LLC d/b/a Reliance Mortgage feels that it does not have adequate protection of its interest in said collateral since the Debtor has made no effort to make any payments under the terms of the note.

FURTHER AFFIANT SAYETH NOT.

Al J. Keller

SUBSCRIBED AND SWORN TO before me the undersigned Notary by the said Al Keller, on this 9th day of September 2020, to certify which witness my official hand and seal of office.

CODY W. OLYNYK
Notary ID #129405339
My Commission Expires
April 29, 2021

Notary Public - State of Texas