Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL007 LLC, *et al.*[1],** | § | **Case No. 20-31131-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**ALLEGED DEBTORS' OBJECTION AND RESPONSE TO PETITIONER'S REQUEST FOR LEAVE TO TAKE DIRECT APPEAL PURSUANT TO 11 U.S.C. § 158(d)(2)(A) REGARDING DISCOVERY ORDERS [DOCKET NUMBERS 220, 221, 225, 226, 230, 231, 235, 236, 240 AND 241]**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COME NOW WALL007, LLC *et al.* ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and file this their *Objection and Response to Petitioners' Request for Leave to Take Direct Appeal Pursuant to 11 U.S.C. § 158(d)(2)(A) Regarding Discovery Orders and Denial of Motion for Reconsideration [Docket Numbers 220, 221, 225, 226, 230, 231, 235, 236, 240, and 241]* (the "Request"), and in support thereof would respectfully show the Court:

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.

## INTRODUCTION

1. As a preface to the Alleged Debtors' Objection and Response, the Alleged Debtors call to the attention of the Court the following excerpts from the oral ruling on August 19, 2020 related to the associated Orders (Dkt. No's 165, 167, 168, 169) entered by this Court on September 4, 2020 and the *Order Denying Reconsideration of Discovery Orders* (Dkt. No. 202) entered by this Court on October 22, 2020:

- T*he Petitioning Creditors did not really respond to Alleged Debtors' legality argument. Instead, the Petitioners claim that the difficulties associated with the COVID-19 crisis should excuse them from traveling to the United States for in-person depositions. During the hearing, counsel for the Petitioners did not specifically say there was a travel ban on Chinese nationals entering the United States. Rather, counsel argued that his clients would have to quarantine for 14 days upon entry to the United States and that doing so would be a great inconvenience.*

- *"The Court also believes that litigants who seek the benefit of the United States law must follow its process. And here, a serious concern has been raised that taking video depositions would violate Chinese law. While traveling to the US may be a great inconvenience and difficulty at this time, the Court believes it is necessary in this case to address both the legality issues and the identity concerns raised by the Alleged Debtors."*

- *Because the willingness of the Petitioners to attend in-person depositions will affect several threshold issues, including the ability of the Petitioning Creditors to carry their evidentiary burdens and the identity concerns raised by the Alleged Debtors,* ***the Court will require that there is an agreement signed by counsel for the Petitioning Creditors that the Petitioning Creditors will appear for live depositions in the United States before any other discovery or motion practice will continue****." (emphasis added)*

To reflect the foregoing, the gist of each is contained in each of the Orders issued on September 4, 2020, requiring that:

- *No discovery or motion practice shall continue unless and until a live deposition agreement signed by counsel for Petitioners is filed with the Court...;* [Dkt. Numbers 166, 167, 168, and 169]

- *Petitioners are required to sign their answers to their interrogatories with their own "wet signatures" as opposed to the signature of Petitioners' counsel;* [Dkt. Numbers 165 and 166]
- *Petitioners will provide Alleged Debtors with copies of passports of all of the Petitioners, upon request and that such passports will be submitted to the Court for in-camera inspection, upon request;* [Dkt. Numbers 165 and 166]
- *Petitioners' depositions shall be required to be taken in person in the United States, at a time and place agreeable to the Parties;* [Dkt. Number 168]
- *Petitioners are required to produce all documents concerning transfers of funds from Chinese accounts to the Alleged Debtors that underlie the Petitioners' claims;* [Dkt. Numbers 169] *and*
- *Petitioners are required to produce all documents concerning communications between Petitioners and Michael Fu.* [Dkt. Numbers 169]

The *Order Denying Motion for Reconsideration of Discovery Orders* [Dkt. No. 202] specifically noted that, despite argument to the contrary, the Petitioners, who are Chinese nationals, are indeed permitted to enter the United States. This Court also determined in that Order that the Petitioners inappropriately relied on a tourist website travel alert as if it were some authoritative source of legal and regulatory information provided by the Chinese government, and incorrectly stated that such permitted travel to Macau to perform depositions (that, even if permitted, would address neither the legality nor the identity concerns raised by the Alleged Debtors). Reasoning that since the Petitioners failed to present in their *Motion for Reconsideration* any newly discovered evidence or change in the controlling law that would forbid travel to the United States or permit the taking of depositions in Macau, and due to its belief that the Petitioners must adhere to the processes of the United States legal system to address the concerns of the Alleged Debtors, nothing changes the Court's conclusion as to the need for the Discovery Orders.

## ARGUMENT

***The Requests and Motions for Leave to Appeal and for Certification are untimely.***

2. The Alleged Debtors do not concede that that the Petitioners' Request is filed timely because there is an issue whether the *Motion for Reconsideration* submitted to the Court tolled the period for filing such Request until such time as the Court ruled on such Motion. The Orders were entered on September 4, 2020. Eleven (11) days later, on September 15, 2020, the *Motion for Reconsideration* was filed. The Court denied the *Motion for Reconsideration on October 22, 2020*. Twelve (12) days after that, on November 3, 2020, the Petitioners filed their various Requests and Motions for Leave to Appeal and for Certification. Essentially, twenty-three (23) non-tolled days elapsed between entry of the Orders and filing of the Motions for Leave to Appeal and for Certification. The Federal Rules of Bankruptcy require that notices of appeal must be filed "within 14 days after entry of the … order… being appealed." FED. R. BANKR. P. 8002(a)(1).

***Petitioners' have not strictly complied with FED. R. BANKR. P. 8006(f)(2).***

3. The Alleged Debtors argue that the Request fails to strictly comply with the technical requirements of FED R. BANKR. P. 8006(f)(2). Such Rule specifically dictates that for the Court to certify the Request, it must include:

> *a.* *"the facts necessary to understand the question presented;*
> *b.* *the question itself;*
> *c.* *the relief sought;*
> *d.* *the reasons why the direct appeal should be allowed, including which circumstance specified in 28 U.S.C. § 158(d)(2)(A)(i)–(iii) applies; and*
> e. *a copy of the judgment, order, or decree and any related opinion or memorandum."* See FED R. BANKR. P. 8006(f)(2)(A)-(E).

***<u>The Petitioners' provide no new facts, allegations, or assertions necessary to understanding the questions presented on appeal.</u>***

4. First, Petitioners assert that the "facts relevant to this mater [sic] are lengthy and, therefore, Petitioning Creditors direct the Court to the facts and procedural history portion of the Motion of Petitioning Creditors seeking leave to appeal and requesting certification of the appeal directly to the Appeals Court (the 'Motion')." Looking to the Statement of Facts and Procedural History of the Case presented in Docket Numbers 221, 226, 231, 236, and 241, the Court will note that the Petitioners present no new information from their previous pleadings, and in fact, have submitted the same stale allegations produced in earlier filings with this Court. Absent any new allegations, such factor weighs against certification.

5. Additionally, Alleged Debtors argued that depositions in China fail to comply with the requirements of Fed. R. Civ. P. 28 which state that a deposition may only be taken in a foreign country "(i) under an applicable treaty or convention; (ii) under a letter of request, whether or not captioned a "letter rogatory"; (iii) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or (iv) before a person commissioned by the court to administer any necessary oath and take testimony." None of these four requirements could be satisfied.

6. The Alleged Debtors deny the allegation that the Petitioners are "unable to enter into the United States due to the ongoing COVID-19 pandemic and specifically because of travel restrictions imposed by President Trump." The Petitioners have continued to reiterate this point despite the fact that it was, and currently is, patently untrue. The Alleged Debtors recognize that such travel and entry into the United States by Chinese nationals is inconvenient but not impossible.

7. The Alleged Debtors deny that there is a "travel ban." To refer to it as such is a misrepresentation of the content of the Proclamation. It is notable that in the transcript of the discourse between the Court and counsel for the Petitioners that such counsel specifically noted that the "restrictions on [Petitioners'] travel both from China and into the United States… would require a 14-day quarantine." Clearly, Petitioner's counsel is fully aware that travel, although conditioned on quarantine, is permitted. Petitioner's counsel believes that requiring them to travel to the United States and be quarantined for the requisite time is "unfair." As an aside, and for some inexplicable reason, counsel goes on to indicate that such Petitioners would not be available for deposition in the future since such counsel "can only produce them now."

8. The Alleged Debtors again deny the allegation that any "travel ban" exists, but recognize that the Court came to the conclusion that the Petitioners failed to address the legality argument relating to the in-person depositions of the Petitioners in the United States. The Court noted the *inconvenience* of such travel to the Petitioners, but that such inconvenience "should not excuse them from traveling to the United States for in-person depositions" since conducting video depositions in sovereign Chinese territory "would violate Chinese law," and since such travel to the United States for such purpose "is necessary in this case to address both the legality issues and the identity concerns raised by the [A]lleged [D]ebtors."

9. The Court did address the "direct entry" argument of counsel for Petitioners, but asserts that the question as to whether the Petitioners may enter *directly* into the United States without quarantine is irrelevant. The relevant question is whether the Petitioners may enter the United States under *any* conditions. Still, the Proclamation itself expressly and conspicuously provides for a scenario in which the Petitioners may enter the country directly and then enter quarantine since it states that "the United States should take all necessary and appropriate measures

to facilitate orderly medical screening and, where appropriate, quarantine of persons [from China] allowed to enter the United States who may have been exposed to this virus." As has been made clear by this Court, the Petitioners may enter the United States and quarantine for fourteen days, or they may alternatively enter another country not impacted by travel restrictions, quarantine for fourteen days, and then enter the United States. The point is that the Petitioners are not "banned" from entry into the United States. The Alleged Debtors point out Paragraph (ix) of the Presidential Proclamation specifically excepts "any alien whose entry would not pose a significant risk of introducing, transmitting, or spreading the virus, as determined by the CDC Director, or his designee." To date, neither Petitioners or their counsel appears to have approached the CDC Director or his designee for such status determination, nor have they provided any evidence that Petitioners were denied such determination by the CDC Director (or his designee).

10. The Petitioners have never approached the CDC Director or his designee for adjudication pursuant to Section 2, Paragraph (ix).

11. This Court did not fail to fully consider or understand the Presidential Proclamation prior to the Court's rulings on the Discovery Motions and the Motion to Reconsider.

12. Alleged Debtors have argued correctly that taking depositions in China (or its sovereign territories) is illegal.

13. Alleged Debtors have previously pointed out that the Macau Special Administrative Region is not an alternative to taking depositions in the United States. Such allegation fails on several levels.

a. First, the "Macau Option" was not properly brought in the *Motion for Reconsideration*. The reason for this is that the issue could have been litigated during the initial motion adjudication, but Petitioners failed to raise it at that time. Now, they want a "second (or

more aptly, third) bite at the apple." As mentioned in the Alleged Debtors' *Response and Objection to the Motion for Reconsideration*, it would be improper to use a motion to reconsider "to introduce evidence that was available at the time of the [original underlying] motion but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits[,]" and courts should disfavor such motions should they be used to do so. *Ramos v. Lucio*, No. B-08-122, 2009 U.S. Dist. LEXIS 146718 at *9 (S.D. Tex. 2009). By attempting to raise this issue at that point, and to provide evidence of such by way of the *Motion for Reconsideration*, counsel for the Petitioners wrongly attempted to offer an argument that it failed to consider earlier, and to provide evidence that was available to it to present to the Court at the August 17, 2020 hearing.

b. Second, Alleged Debtors note that the Petitioners rely on the referenced website to support their argument. The WorldAware website offered by the Petitioners specifically states that that *tourists* from neighboring Zhuhai, Guangdong Province, a city that abuts the northern border of Macau, shall be permitted to travel there unrestricted. Travel restrictions on persons from the remainder of mainland China appear to be in place (as in the United States) and include provisions for quarantine at "designated hotels" in Macau. Further, Macau is a territory of the People's Republic of China that is subject to a hybrid legal system incorporating the laws of both the Special Administrative Region of Macau and the People's Republic of China. Testifying in a video deposition violates Chinese law and will result in such testimony being struck from the record. *Ji v. Jling, Inc.*, 15-CV-4194 (SIL), 22 (E.D.N.Y. Mar. 31, 2019). Further, the administration of an oath by a foreign attorney violates China's judicial sovereignty, which may subject such foreign attorneys to penalties including "arrest, detention, expulsion, or deportation of all participants in the oath." *Id.*

c. Third, the aforementioned website is problematic. The Petitioners' counsel treats it as if it were some form of legal authority. It is not. It is simply a tourist website without any affiliation with the Chinese legal or judicial systems. Additionally, even if it did provide accurate information, the travel alert contained therein was only effective between August 10, 2020 and August 31, 2020. Essentially, the travel alert has expired, and the Petitioners have provided no information or evidence suggesting that any of the supposedly permitted travel is allowed at the present time. Absent any verifiable legal authority to the contrary, any statement that supports the premise that live or video depositions taken in Macau is legal would be presumptuous, conclusory, and patently false.

d. Fourth, the Alleged Debtors recognize that there is a history of remote depositions in Hong Kong and Macau. However in the cases cited, the depositions taken occurred shortly after the transfer of sovereignty over Hong Kong from the United Kingdom to the People's Republic of China and neither case decided questions of the legality of such depositions under Chinese law. Notably, no evidence has been provided that would indicate that current law permits such depositions in either of these Chinese sovereign territories. It is also important to note that the purpose of the depositions, namely the determination of the existence and identity of the Petitioners, was not a question before the courts in either of the two referenced cases (i.e. *Dagen v. CFC Grp. Holdings*, and *Jordan Outdoor Enters., Ltd. V. Hubei Wild Trees Textiles Co*.).

e. Finally, the Alleged Debtors deny that the foreign law relating to travel from mainland China to Macau has changed. The reason for this is that the Petitioners counsel relies on a non-government tourist website providing expired travel alert data to act as some form of purported legal authority in this matter. The Court cannot rely on such source to determine the legality of conducting live or video depositions in a sovereign Chinese territory. As such, the

Petitioners have failed to demonstrate that any "change in the foreign law" has occurred, or is currently in effect. Essentially, the "Macau Option" is not a viable alternative to in-person live depositions in the United States.

***Petitioners questions on appeal fail to meet the requirements of FED.R.BANKR. P. 8006(f)(2).***

14. The questions presented for the appellate court must meet the requirements outlined in Fed. R. Bankr. P. 8006(f)(2). The Petitioners simply ask the question as to whether the Court erred in its determination that the Petitioners must agree to travel to the United States for live depositions, that all motion practice in the case must cease pending such agreement, and that the Motion for Reconsideration was denied despite an alleged (yet non-existent) change in law permitting the proffered "Macau Option." None of these three questions provide any rationale for why the Court may have erred. Essentially, the Petitioners are only asking whether the judgments were correctly decided. "Phrasing the question for certification in such a generic manner fails to provide any substantive basis for the Court to determine whether certification for direct appeal is appropriate." *United Tort Claimants v. Quorum Health Res., LLC (In re Otero Cty. Hosp. Ass'n)*, 584 B.R. 783, 792 (Bankr. D.N.M. 2018). Additionally, Petitioners' "recitation of the relevant facts necessary to understand the question presented is phrased in terms of the issues themselves," reiterates arguments already made to this Court, and fails to explain why the Court made errors in issuing its decisions. "Such an approach arguably conflates the separate requirements of Bankruptcy Rule 8006(f)(2)." *Id.* Since the questions presented do not meet this Rule's requirements (which is supported by provided case law) this factor weighs against granting leave and certification.

***Petitioners provide no rationale for their requested relief.***

15. The relief sought is that this Court simply grant them Leave to Appeal and to certify such direct appeal. While the statement for relief adheres to the language of Bankruptcy Rule 8006(f)(2), Petitioners have provided no rationale that would indicate to the Court the nature of its errors and why such relief should be granted. Further any appeal would be tested for an abuse of discretion.

***Petitioners reasons for direct appeal do not comply with the requirements of 28 U.S.C. § 158(d)(2)(A).***

16. Petitioners have failed to cite any reasons why the direct appeal should be allowed, that comport with the circumstance specified in 28 U.S.C. § 158(d)(2)(A).

a. The issues here deal primarily with two sets of concerns. The first deals with proving both the questionable existence and uncertain identity of foreign nationals who are purported to be the Petitioners in this case. The other deals with the question of current legality of proving such by conducting either live or video depositions on Chinese soil. Again, these issues revolve around discovery questions and as such are subject to an abuse of discretion standard. There is a high probability and certainty that the Fifth Circuit, even if presented with these issues, would not reverse the decision of this Court on discovery issues. *Kean v. Jack Henry & Assocs*., 577 F. App'x 342, 346 (5th Cir. 2014). See also *United States v. Gonzalez*, 967 F.2d 1032, 1035 (5th Cir. 1992)

b. In relation to 28 U.S.C. § 158(d)(2)(A)(i), which states that the Court's Order must involve a question of law as to which there is no controlling decision in the Fifth Circuit Court of Appeals or in the Supreme Court of the United States, or involves a matter of public

importance, the Petitioners have asserted that multiple controlling issues of law exist. This is simply not true.

c. First, the Petitioners assert that the previously mentioned Presidential Proclamation "bans" their travel to the United States. This claim has been asserted in several of the Petitioners' pleadings, and has been soundly debunked by the Alleged Debtors. The Proclamation is very clear. Travel directly to the United States from the People's Republic of China would be permitted if the CDC Director (or his designee) determines that a Petitioner's "entry would not pose a significant risk of introducing, transmitting, or spreading the virus". It is further clear that indirect travel is also permitted if the Petitioners were to enter the United States from a country not mentioned in the Proclamation after a fourteen day quarantine period.

d. Second, the claim that there is a "recent change in the law permitting travel by Chinese nationals to resume to Macau" is erroneous. To support this claim, the Petitioners cite as their evidence a tourist website travel advisory that expired on August 31, 2020. No supporting Chinese legal or regulatory authority was either consulted or cited. As such, the claim of a "recent change of law" supporting their position is a bald supposition. Even in the event that tourist travel is permitted, any change in law to that effect would be irrelevant here since the ability to travel to Macau does not address the issue of the *legality* of conducting depositions of the Petitioners in Macau (which is illegal under Chinese law as mentioned *supra*). While none is asserted, the Alleged Debtors reject any implication that since no legal question here "transcends the litigants and will advance the cause of jurisprudence," and since no vital community interest is affected, there is no implication that a matter of public importance has been invoked. *United Tort Claimants v. Quorum Health Res., LLC (In re Otero Cty. Hosp. Ass'n)*, 584 B.R. 783, 792-93 (Bankr. D.N.M. 2018).

e. A question of law requiring resolution of conflicting decisions, or "when the issue is particularly difficult and of first impression" is envisioned in 28 U.S.C., § 158(d)(2)(A)(ii). *United States ex rel Minge v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.)*, 2013 U.S. Dist. LEXIS 177779, at *15 (S.D.N.Y. 2013). Here, the Petitioners do not assert any conflicting authority. Rather, Petitioners argue that the issues in this case are "particularly difficult" and are "likely of first impression." While the Alleged Debtors admit that the circumstances of this case, namely the existence of travel restrictions designed to combat the spread of a global pandemic is certainly an issue , the Alleged Debtors reject the assertion that the issue is "particularly difficult." The Court has deemed the determination of the existence and identity of the purported Petitioners in this case to be a threshold issue, making in-person depositions of such Petitioners necessary. Further, the Court read the Presidential Proclamation, and based on its reading, determined that travel to the United States for the purpose of conducting such depositions may be carried out by travel to a country not under restriction pursuant to the Proclamation, quarantining there for fourteen (14) days, and then proceeding to the United States for the required depositions. Additionally, Section 2, Paragraph (ix) of the Presidential Proclamation permits the alternate opportunity for the Petitioners to request a determination by the CDC Director or his designee that "entry [of the Petitioners] would not pose a significant risk of introducing, transmitting, or spreading the virus" as a condition precedent to their direct entry into this country. Both of these options are *available* avenues for the Petitioners to pursue their interests before this Court. The same cannot be said of the "Macau Option" proposed by counsel for the Petitioners for the aforementioned reasons.

f. Contrary to the terms of 28 U.S.C., § 158(d)(2)(A)(iii), and the Petitioners' assertion to the contrary, the Court's certification of appeal would not "materially advance the

progress of the case or proceeding in which the appeal is taken." When a party fails to provide an explanation to a court concerning how the appeal would help the progress of the case, that court may deny such certification. *In re Brown*, No. 17-52324-CAG, 2018 Bankr. LEXIS 1533, at *16-17 (Bankr. W.D. Tex. 2018). The Petitioners here assert that an interlocutory appeal "will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive." *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 613 (E.D. Pa. 2008). Alleged Debtors assert that none of these issues should be considered here. The Petitioners argue that failure to grant leave and certification of appeal will likely result in dismissal of the case leading to additional expensive litigation (i.e. having to appeal the dismissal based upon the issues presented in the Requests and Motions for Leave to Appeal). Such argument is irrelevant since the Court's Orders relating to the Discovery Motions and the Motion for Reconsideration of such have properly addressed the threshold issue concerning confirmation of the existence and identity of the Petitioners. Additionally, the argument that the Appeals Court may decide that video depositions should be conducted from Macau on the presumption that doing so would save time and expense is similarly irrelevant. The Fifth Circuit would be deciding whether the Bankruptcy Court abused its discretion in handling a discovery matter and the likelihood of a reversal on this issue is extremely remote. *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 369 (5th Cir. 2009). See also *S.N.A. Nut Co. v. Nat'l Union Fire Ins. Co. (In re S.N.A. Nut Co.)*, No. 95 C 3999, 1996 U.S. Dist. LEXIS 695 (N.D. Ill. 1996)As established earlier, such depositions conducted by American attorneys on Chinese soil would be in violation of Chinese law, and it is highly unlikely that any court would order such depositions in light of their violation of Chinese legal sovereignty and the legal, and potentially punitive, jeopardy in which such action would place the Alleged

Debtors' attorneys. Alleged Debtors argue that no exceptional circumstance would exist that would warrant granting leave to appeal such issues.

g. Further an appeal will unnecessarily delay this case. There is nothing that would tell this Court that any appeal will not unduly delay this case. The Petitioners have had now seven (7) months to figure out how to move this case forward. Sadly, we are still dealing with the same issues that were raised months ago and for which this Court provided a resolution. An appeal to the Fifth Circuit could take months or even years to resolve. In the meantime, the Alleged Debtors continue to deal with motions to lift stay and devaluation of their assets as a result of the inability to refinance properties and pay off lenders.

***The Orders that the Petitioners' seek to appeal do not meet the requirements for an interlocutory appeal.***

17. The Interlocutory appeal of a bankruptcy court's orders are governed by the terms of 28 USC § 1292(b) regardless of whether that appeal is made to the United States District Court for the Northern District of Texas or the United States Court of Appeals for the Fifth Circuit. That statute states that for this Court to certify the interlocutory appeal, three elements must be present:

a. The order involves a controlling question of law;

b. That question has "substantial ground for difference of opinion;" and

c. Allowing an immediate appeal…may materially advance the ultimate termination of the litigation." 28 USC § 1292(b).

18. As mentioned *supra*, the issues encompassed by the Court's Orders do not involve a controlling issue of law providing substantial ground for difference of opinion. Here, the Petitioners must simply choose one of the two travel options presented to it by the Court that comport with the requirements Section 1 and Section 2 (ix) of the Presidential Proclamation. There

is no law or court opinion that is at odds with this Proclamation or this issue. Further, as has been previously stated, an appeal will unnecessarily delay this case, and the Petitioners have failed to present any evidence that would demonstrate to this Court that any appeal would not unduly delay this case.

***Petitioners have provided copies of the Orders that relate to the questions on appeal.***

19. Petitioners have properly provided copies of each order that is related to the individual Requests and Motions for Leave to Appeal and for Certification as exhibits to each.

## CONCLUSION

20. Based on the foregoing the Alleged Debtors argue that the enumerated requirements in FED. R. BANKR. P. 8006(f)(2) have not been met, the presented "facts necessary to understand the question" are mere restatements of erroneous presumptions and misstatements of controlling legal authority. Further, the questions presented on appeal are of such a generic form that they may not be considered by the Appeals Court. Finally the reasons offered by which the direct appeal should be allowed pursuant to the term of 28 U.S.C. § 158(d)(2)(A)(i)–(iii) do not comport with its statutory requirements or those of case law, and are similarly rooted in erroneous presumption and misstatement of controlling authority. As such, the Court should not grant the Petitioners' Motions for Leave to leave to directly appeal

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Alleged Debtors pray that the Court deny the requested relief in each of the Petitioners' *Requests for Leave to Take Direct Appeal Pursuant to 11 U.S.C. § 158(d)(2)(A)* [Dkt. Numbers 220, 225, 230, 235, and 240] and in each of the Petitioners' *Motions (A) for Leave to File an Interlocutory Appeal and (B) Requesting Certification to the United States Court of Appeals for the Fifth Circuit* [Dkt. Numbers 221, 226, 231, 236, and

241], and for such and other and further relief to which the Alleged Debtors may show themselves justly entitled.

Dated: November 13, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors
Email: joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
Attorneys for Alleged Debtors

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 13, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer