**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**OPPOSITION OF PETITIONING CREDITORS TO THE THIRD MOTION OF ALLEGED DEBTORS TO DISMISS INVOLUNTARY PETITIONS WITH PREJUDICE**

The Petitioning Creditors, Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Lan Ji, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu (collectively, "Petitioning Creditors"), by and through their undersigned counsel, file this opposition (the "Third Opposition") to the Alleged Debtors', WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC ("Alleged Debtors"), third motion to dismiss (the "Third MTD") the Involuntary Petitions (hereinafter, at times, the "Petitions" or the "Cases"). The Petitioning Creditors respectfully aver as follows:

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors sat this time.

**INTRODUCTION**

The Alleged Debtors' Third MTD alleges principally that the Petitioning Creditors have not provided certain Court ordered documents to the Alleged Debtors and willfully failed to agree to produce certain Petitioning Creditors for "live depositions" in the United States. For the reasons set forth herein, the Third MTD should be denied or, at a minimum, continued until at least a time after the Motions for Leave to Appeal are heard by the U.S. District Court.

At the outset, it is noted that the Alleged Debtors' First Motion to Dismiss ("First MTD") is apparently pending for a hearing on the merits of the Petitions on December 30, 2020 (the "First MTD Hearing"). The First MTD Hearing was, according to the Clerk's office, unilaterally scheduled by Alleged Debtors' counsel. This date for a plenary hearing was scheduled by counsel without consulting with counsel for Petitioning Creditors. The date unilaterally scheduled is highly inconvenient for everyone in light of the holiday. However, the Petitioning Creditors and counsel are fully prepared to present their case in support of entry of the Petitions on a date to be set by the Court after the holidays.

The fact is that counsel for the Alleged Debtors has been in possession, since July of 2020, of documents from Petitioning Creditors (a) containing many admissions by the Alleged Debtors which refute their "identity" of the Petitioning Creditors' allegations and (b) clearly demonstrating Petitioning Creditors' proof in support of the Petitions. Despite what the Alleged Debtors state in their Third MTD, these documents contain, inter alia, communications between the Alleged Debtors, the Petitioning Creditors and Mr. Fu's agents as more fully set forth herein. They are also replete with proof of each of the Alleged Debtors' receipts of the loan monies from the Petitioning Creditors, acknowledgments of same given to each of the Petitioning Creditors and communications back and forth between the parties (many through Fu's agents) regarding why the funds have not been repaid and endless promises by the Alleged Debtors to repay them.

At trial of this matter, only three Petitioning Creditors for each Alleged Debtor entity must initially show that they hold claims against each of the respective Alleged Debtors that are not contingent as to liability or the subject of a bona fide dispute and which aggregate at least $10,000 more than the

value of any lien on property of the Alleged Debtor securing such claims held by the holders of such claims. Petitioning Creditors can easily demonstrate this to the Court based solely on the documents provided to Alleged Debtors' counsel as more fully set forth herein. Petitioning Creditors can further show, based on such documentation and admissions by the Alleged Debtors in those documents and in these Cases, that the Alleged Debtors are not paying their undisputed debts when due.

There are so many admissions regarding the validity of the asserted debts in the documents provided to Alleged Debtors' counsel (and the pleadings filed by the Alleged Debtors and other creditors in these Cases) that the Petitioning Creditors believe, in good faith, that their testimony is not necessary at trial to prove their case. This is why the Petitioning Creditors planned on filing Motions for Summary Judgment and would still do so if the Court permits it. They believe these Cases can be disposed of by the Court in summary fashion.

The Alleged Debtors' Second Motion to Dismiss (the "Second MTD") was decided by the Court on June 23, 2020, in favor of the Petitioning Creditors and denied. *See Docket No. 81*. The Second MTD also alleged an array of supposed procedural deficiencies which were all rendered moot by the time of the hearing.

The Third MTD is, like the Second MTD, solely a procedural motion as it is based on alleged failures of the Petitioning Creditors to comply with this Court's discovery orders ("Discovery Orders"). The Petitioning Creditors have not willfully failed to comply with the Discovery Orders. As to production of documents under the Discovery Orders, or as otherwise required by this Court (ie., "wet signatures" and passports), Petitioning Creditors have, in their view, fully complied with the Discovery Orders and other mandates of this Court.

As to the "live" depositions of certain of the noticed Petitioning Creditors, Petitioning Creditors' position is well known to the Court. Due to COVID-19 and the current travel ban in place, Petitioning Creditors have not authorized their counsel at this time to enter into a "Live Deposition Agreement" but have offered and continue to offer various reasonable alternatives to such depositions. Petitioning Creditors first address the document allegations herein and then the issue raised of the live depositions.

## PROCEDURAL HISTORY & STATEMENT OF FACTS

### *A. The Documents Requested have been Produced by Petitioning Creditors*

In the Third MTD, the Alleged Debtors identify the following discovery which they allege the Petitioning Creditors have not produced and which, according to them, warrant the draconian relief of dismissal of the Petitions:

1. Petitioning Creditors' "wet signatures" to the petitions. *See Third MTD, pg. 6*.
2. Petitioning Creditors' "wet signatures" to their answers to interrogatories. *Id. at pg. 3*.
3. Copies of Petitioning Creditors' passports. *Id*.
4. All documents concerning communications between Petitioning Creditors and Michael Fu. *Id*.
5. All documents concerning transfers of funds from Chinese accounts to the Alleged Debtors. *Id*.

The Alleged Debtors state as follows in their brief in support of the Third MTD:

> Either the purported Petitioners have the required documentation to give to their counsel or they do not. If they have done so, counsel for the Petitioners has offered no explanation for its delay in producing it. Regardless of the reason for the failure after seven weeks of delay (1) to sign and file the Live Deposition Agreement; (2) to produce the Petitioners' wet signatures on the petition; (3) to provide copies of the Petitioners' passports for review; (4) to submit documentation regarding funds transfers from Chinese accounts to the Alleged Debtors; (5) to present the communications between the Petitioners and Michael Fu; and (6) to cooperate in arranging for the deposition of selected Petitioners, it is apparent that such constitutes a willful refusal to comply with the Court's Orders, thereby demonstrating bad faith on the part of the Petitioners. This unexplained, yet apparently deliberate, delay has served to do nothing but stall these proceedings.

However, quite contrary to the statements to this Court above, the Petitioning Creditors have produced the required documents to counsel as follows.

1. As set forth in the Certification of Jiangang Ou, Esquire (the "Ou Certification") [*Docket No. 84*], Petitioning Creditors provided their original "wet signatures" relative to the Petitions. On July 7, 2020, Petitioning Creditors provided Alleged Debtors' counsel with a DropBox link containing copies of their "wet signatures" relative to the Petitions. A redacted copy of the July 7, 2020, email to Joyce Lindauer is attached hereto as Exhibit "A".

2. As set forth in the Declarations of Amy M. Huber (the "Huber Declarations") [*Docket Nos. 111, 112, 113, 114, 115, 116 and 117*], the Petitioning Creditors confirmed the validity of their "wet signatures" appearing on the Petitions.

3. Petitioning Creditors provided their discovery "wet signatures" to the Court and Alleged Debtors as set forth in the Declaration of Stephen M. Packman ("Packman Declaration") [*Docket No. 213*] and Supplemental Declaration of Stephen M. Packman ("Supplemental Packman Declaration", collectively with the Packman Declaration, the "Packman Declarations") [*Docket No. 244*] on October 30, 2020 and November 5, 2020, respectively.

4. On August 27, 2020, Petitioning Creditors provided Alleged Debtors' counsel with emails containing all of their passports, except for Lin Li, a lender of WALL011, LLC, who gave his Chinese I.D. card. Additionally, on October 30, 2020, Petitioning Creditors' provided all of their passports and the Chinese I.D. card to the Court and the Alleged Debtors via DropBox link contained in the Packman Declaration. *See Packman Declaration*. Copies of the August 27 2020 emails to Joyce Lindauer and the redacted October 30, 2020 email to the Court are attached as Exhibits "B" and "C", respectively.

5. Copies of all communications between Petitioning Creditors and Mr. Fu's employees and agents were produced as part of the Petitioning Creditors' responses to Alleged Debtors' First Set of Discovery Requests ("Discovery Responses"), on July 13, 2020 and July 29, 2020. [*Docket No. 119 at para. 19*]. A redacted copy of the July 13, 2020 and July 29, 2020 emails to Joyce Lindauer providing the DropBox link to the documents are attached as Exhibit "D". Separately, the Petitioning Creditors are submitting to the Court the DropBox link for privacy reasons.

6. As contained in the DropBox link, copies of the Alleged Debtors' acknowledgements of the loan funds, wire receipts, bank account snapshots and other proof of funding from Petitioning Creditors to the Alleged Debtors (**<u>and the Alleged Debtors' receipt thereof</u>**) was also provided to counsel for the Alleged Debtors on July 13, 2020 and July 29, 2020. *Id*.

The Court is respectfully urged to review the documents produced by Petitioning Creditors to Ms. Lindauer on July 13 2020 and July 29, 2020, before ruling on the Third MTD. Counsel for the Alleged Debtors has been in possession of these responsive documents for over four months but now seemingly represents to this Court that the Alleged Debtors did not receive them. Annexed as Exhibit "E" are a sampling of some of the relevant documents from the subject DropBox link counsel received on July 13, 2020 and July 29, 2020. As the Court can plainly surmise, the documents included communications between Petitioning Creditors and Mr. Fu's agents (@yding.cn), communications between the Petitioning Creditors and the Alleged Debtors and Mr. Barton and Ms. Lindauer, proof of wire transfers from the Petitioning Creditors to the Alleged Debtors, proof of receipt of the loan proceeds, acknowledgment that the funds have not been repaid and many other documents which the Alleged Debtors demanded.

Further, Petitioning Creditors have provided counsel and the Court with copies of all of their passports and "wet signatures" on their petitions and discovery certifications as reflected by the Ou Certification, Huber Declarations and Packman Declarations as aforesaid. The Alleged Debtors' assertion that Petitioning Creditors have not complied with this Court's orders and mandates relative to documents and signatures is not true.

***B. The Live Depositions are the Subject of Petitioning Creditors' Interlocutory Appeal***

On November 3, 2020, Petitioning Creditors filed their Motions (A) for Leave to File an Interlocutory Appeal and (B) Requesting Certification to the United States Court of Appeals for the Fifth Circuit [*Docket Nos. 221, 226, 231, 236, and 241*]. On November 17, 2020, via letter from Stephen Manz, Law Clerk to the Honorable Harlin D. Hale, this Honorable Court advised that the Petitioning Creditors' Motions for Leave to Appeal ("Motions for Leave") should be heard by the United States District Court for the Northern District of Texas ("District Court"). The District Court has not yet scheduled the Motions for Leave for hearing or other consideration. The Petitioning Creditors believe, as set forth herein, that the District Court must rule on the Motions for Leave prior to this Court ruling on the Third MTD. However, even if this Court disagrees, there are less egregious alternatives than dismissal if the Petitioning Creditors cannot travel here to appear for depositions prior to a hearing or trial on the First MTD.

## <u>LEGAL ARGUMENT</u>

***A. The Alleged Debtors Have Produced no Evidence of Bad Faith or Willful Intent by Petitioning Creditors which Would Support Dismissal of the Petitions***

The Alleged Debtors attempt to divert the Court's attention from the real, substantive issues for adjudication in these Cases by advancing misleading allegations regarding Petitioning Creditors' compliance with the Discovery Orders and the mandates of this Court. There is no basis to dismiss the Petitions under F.R.B.P. 41(b).

As noted by the Alleged Debtors, F.R.C.P. 41(b) is applied to bankruptcy cases by F.R.B.P. 7041, and permits a court to dismiss a legal action or claim against an Alleged Debtor after a motion by said

party if the Petitioner fails to prosecute or to comply with the Federal Rules of Civil Procedure or a court order. Importantly, dismissal under the subject Rule is authorized when the failure to comply with the court's order results from a party's **"willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply**." *Romero v. ABC Ins. Co,* 320 F.R.D. 36, 40 (W.D. La. 2017)[*emphasis supplied*]. Dismissal is only appropriate where a party's failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply. *Griffin v. ALCOA,* 564 F.2d 1171, 1172 (5th Cir.1977). Dismissal is proper in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 514 (5th Cir.1985).

The United States Court of Appeals for the Fifth Circuit has stated quite clearly that the "death penalty" of dismissal should be applied only in extreme circumstances and requires a heightened standard of inquiry by the trial court.

> Our case law imposes a heighted standard for litigation-ending sanctions (sometimes called "death penalty" sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." Compaq Comput. Corp. v. Ergonome Inc., 387 F.3d 403, 413 (5th Cir. 2004) (quoting Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982)). **But the district court must make four additional findings to impose a litigation-ending sanction: (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation "substantially prejudice[d] the opposing party"; and (4) a lesser sanction would not "substantially achieve the desired deterrent effect." FDIC v. Conner, 20 F.3d 1376, 1380-81 (5th Cir. 1994) [*emphasis supplied*]**.
>
> Rule 37 empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and penalties, including dismissal with prejudice. Griffin's unexcused failure to appear for deposition rendered him liable for a sanction. Although the district court has wide latitude in framing orders and in penalizing failure to comply, that discretion has limits. B. F. Goodrich Tire Co. v. Lyster, 328 F.2d 411, 415 (5th Cir. 1964). Dismissal of a complaint with prejudice is such a drastic remedy that a district court should apply it only in extreme circumstances. Bon Air Hotel, Inc. v. Time, Inc., 376 F.2d 118, 121 (5th Cir. 1967). See also Emerick v. Fenick Industries, Inc., 539 F.2d 1379, 1381 (5th Cir. 1976).
>
> Our function as an appellate court is not to determine whether this court would have dismissed the complaint as an original matter, but whether the district court abused its discretion in doing so. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 641, 96 S. Ct. 2778, 2780, 49 L. Ed. 2d 747, 750 (1976). Central to this review of

> discretion is whether the district court could have fashioned an equally effective but less drastic remedy. Diaz v. Southern Drilling Co., 427 F.2d 1118, 1126-27 (5th Cir. 1970). *Law Funder, LLC v. Munoz*, 924 F. 3d 753 (5th Cir. 2019).

The Fifth Circuit Court has provided guidance on what the term "bad faith" means in the discovery context. In *Vick v. Texas Employment Commission*, 514 F.2d 734 (5th Cir. 1975), the Fifth Circuit Court of Appeals explained that an adverse inference drawn from the destruction of records must be predicated on bad conduct, which was absent in that defendant's actions. *Id*. The Court went on to explain that "bad faith" would be demonstrated by destructive actions driven by "consciousness of a weak case." *Id*. at 737. Thus, in Vick, the Court described bad faith as conduct demonstrating an intent to remove evidence because it could harm the spoliator's case.

### *1. The Document Production Allegations*

First, the Alleged Debtors ask this Court to dismiss the Petitions based on allegations that the Petitioning Creditors have not complied with this Court's Discovery Orders and mandates. The Alleged Debtors have made absolutely no showing of such non-compliance or of any bad faith or willful intent by Petitioning Creditors to avoid compliance with this Court's orders.

As to the paper discovery allegations by the Alleged Debtors, counsel states as follows:

> Also, no interrogatories bearing the Petitioner's "wet signatures" have yet been produced as ordered. Such is required to ensure that the persons purported to be Petitioners are indeed claiming such status. Further, no copies of passports have been produced as requested, and which must be submitted to the Court to establish the existence and identity of persons claiming to be Petitioners (arguably a critical matter in this case). Despite the Alleged Debtor's repeated struggle to arrange face-to-face depositions of the Petitioners to be conducted in the United States, counsel for the Petitioners has failed to cooperate in this endeavor. Finally, no document production from Petitioners on certain matters (i.e. that concerning transfers of funds from Chinese accounts to the Alleged Debtors and communications between and among the purported Petitioners and Michael Fu) has been provided.

As thoroughly detailed herein, and the attachments hereto, these statements are simply incorrect and border on being outright false. Petitioning Creditors twice produced "wet signatures." Petitioning Creditors twice produced Passports to counsel for the Alleged Debtors. The Petitioning Creditors produced documents relative to funding and communications to counsel on July 13, 2020 and July 29, 2020. The Alleged Debtors have done everything but make it easy upon the Petitioning Creditors to arrange for

depositions of Timothy Barton, Murugan Venkat, Saskya Bedoya and Hongpeng Lin, despite their names being plastered upon the documents produced by the Petitioning Creditors to the Alleged Debtors' counsel on July 13 and 19, 2020 (and the numerous damaging admissions therein).

The evidence demonstrates that Petitioning Creditors have fully complied with the Discovery Orders as to document production. *See pages 5-6, supra*. The evidence of record in these Cases demonstrates that Petitioning Creditors have **twice** produced "wet signatures," once relative to the Petitions and then as ordered regarding written discovery responses. *Id. at page 5*. The evidence demonstrates that Petitioning Creditors **twice** provided their Passports to the Alleged Debtors' counsel, once in August and then again more recently on October 30, 2020. *Id. at page 5*. The Alleged Debtors' counsel simply ignores the evidence and, instead, creates allegations to support a request for the most drastic remedy this Court could fashion, dismissal of the Petitions.

Dismissal is surely not the least onerous alternative here. After considering all of the true evidence, if the Court believes that Petitioning Creditors have not complied with the Discover Orders relative to documents, the Court can certainly fashion relief for the Alleged Debtors short of outright dismissal of the Petitions.

Discovery compliance has come at a great cost in this Case for the Petitioning Creditors. It is not an easy task for the Petitioning Creditors (in China) or their counsel here in the U.S., to constantly jump through the endless procedural hoops and road blocks advanced by the Alleged Debtors to avoid litigation of the actual merits of the Petitions. Yet, Petitioning Creditors have tried, in good faith, to comply with this Court's orders during this entire proceeding despite the COVID-19 pandemic, the language barriers, the time differences and the Alleged Debtors' protestations to the contrary.

The Alleged Debtors, on the other hand, have not been so compliant. They have, collectively, produced only forty nine (49) pages of documents, far short of what has been requested. They have yet to produce Mr. Barton, Mr. Venkat, Ms. Bedoya (no evidence of a doctor's note as ordered by the Court has been provided), and Mr. Lin. The documents in the DropBox Link are full of communications on behalf of the Alleged Debtors between these individuals and the Petitioning Creditors and/or Fu's agents. Mr.

Venkat has evaded service after repeated attempts by Petitioning Creditors to serve him. Ms. Bedoya stated to this Court that she cannot appear for medical reasons yet nothing has been produce by her to that effect and as the Court has ordered. No deposition date for Mr. Barton has been suggested or set. And, Mr. Lin has retained separate counsel who also has not suggested or set a deposition date. There has been no cooperation by them or their counsel in these Cases.

***2. The "Live Deposition" Allegations***

On September 4, 2020, the Court ordered the following:

> ORDERED that the petitioners' depositions shall be required to be taken in person, in the United States, at a time and place agreeable to the Parties; it is further
>
> ORDERED that the Court requires that counsel for the Petitioners shall sign an agreement that the petitioners will appear for live depositions in the United States, and that Counsel for the Petitioners shall file such agreement ("Live Deposition Agreement") with the Court. *Docket No. 168.*

The Petitioning Creditors have not intentionally or willfully refused to submit to depositions as maintained by the Alleged Debtors. The Alleged Debtors assert that the Petitioning Creditors were prohibited by the Court from filing a Motion for Reconsideration but how else procedurally were the Petitioning Creditors supposed to protect their rights to disagree with the Court and ask the Court to consider an alternative method for the depositions (such as via video in Macau)? On reconsideration, the Petitioning Creditors asked this Court to take into account that counsel for the Petitioning Creditors was wrong about the Petitioners being able to quarantine in the United States. Petitioning Creditors asked this Court to take into consideration the partial "opening up" of Macau to travel by mainland Chinese. The Court disagreed with the Petitioning Creditors and the matter of Live Deposition Agreement is now on appeal before the District Court.

Petitioning Creditors have not intentionally delayed these proceedings or refused to submit to "live" depositions in the United States. Their position on appeal is quite simply that they cannot travel to the United States at this time for legal and health reasons. Given the circumstances of this Case and the worsening global pandemic, Petitioning Creditors and their counsel believe, **in good faith**, that the "live" depositions are not warranted. The Petitioning Creditors are not refusing to be deposed. There is no

willful intent or bad faith motive here by Petitioning Creditors. If the Petitioning Creditors could travel here directly for what will amount to short depositions they would do so.

The fact is that they cannot travel here at this time and there are less harsh alternatives to address the "identity" verification issue raised by the Alleged Debtors. The availability of lesser alternatives is one of the issues which Petitioning Creditors have raised on appeal. The Alleged Debtors somehow extrapolate bad faith or willful refusal from these facts. Petitioning Creditors have offered various alternatives to "live depositions" which would serve the purpose intended (identifying the Petitioning Creditors as the lenders).

First, the Petitioning Creditors offered depositions by video from China. The Alleged Debtors refused that offer arguing that the depositions were "likely illegal." Second, the Petitioning Creditors then provided written discovery to the Alleged Debtors, including thousands of pages of documents which, in the Petitioning Creditors view, establish clearly that they are the lenders and that their identity and their loan money has been acknowledged repeatedly in writing by the Alleged Debtors. The Alleged Debtors' own loan documents and communications with Petitioning Creditors, will conclusively estop them from arguing otherwise.

Second, the Petitioning Creditors offered to appear for video depositions in Macau now that the travel ban of mainland Chinese to Macau has been eased. This too was rejected by the Alleged Debtors although depositions of Chinese citizens are permitted to be taken there. Contrary to the Court's prior determination, mainland Chinese (with very limited exceptions for special and remote regions) can travel to Macau provided that they have a COVID-19 test result demonstrating that they are not infected within 7 days of their travel:




https://news.gov.mo/detail/en/N20KXUd4P1;jsessionid=8B00BD2915298EA95B1EA26BBEDFE26D.app01?0 *See also* https://www.worldaware.com/covid-19-alert-macau-china-maintains-existing-restrictions.

Third, the Petitioning Creditors noticed **will agree** to travel here for depositions when the travel ban imposed by the Presidential Proclamation is lifted and it is safe to do so (i.e., there is a vaccine available to them). Until then, Petitioning Creditors cannot travel here. It is has nothing to do with their willful refusal to be deposed or bad faith intent as argued by the Alleged Debtors without any evidence thereof.

Petitioning Creditors are just as eager as the Alleged Debtors to have this matter adjudicated. However, they ask the Court to adjudicate this case on the merits. The Court can easily make a

determination at trial whether or not the Petitioning Creditors are, in fact, the lenders from the loan documents, from their testimony should it be required (subject to cross-examination) and from the testimony of the Alleged Debtors and third-party witnesses. There are clearly various less severe alternatives available here short of dismissal of the Petitions.

The Court has previously indicated that if the Petitioning Creditors cannot appear for depositions, the Court will consider what, if any, negative inferences might be drawn therefrom. *See, e.g., the Joint Discovery Plan, para. 9*. The Court did not pre-determine that the Petitions would be dismissed if the Petitioning Creditors could not presently travel here for live depositions. Petitioners will make themselves available by video for trial if necessary and the issue of what, if any, limitations will be inferred as to that testimony is a trial issue which is not before the Court at present. Petitioning Creditors ask this Court to deny the Third MTD and then schedule a hearing or trial on the Petitions and First MTD at the Court's first opportunity.

### B. Petitioning Creditors Submit that the Court Should Not Consider the Third MTD until the District Court Rules on the Motions for Leave

From a procedural perspective, a critical issue is whether or not the Court is going to consider the Third MTD prior to the District Court's consideration of the Motions for Leave. Petitioning Creditors submit that the current procedural posture of these Cases warrants the Court to refrain from deciding the Third MTD until the District Court renders a decision on the Motions for Leave. The District Court has not yet scheduled the Motions for Leave for consideration.

If the District Court grants leave to appeal, this Court will then either certify the "live deposition" issue to the Fifth Circuit, or not. Then the requisite appellate court will hear the matter. The appeal, if granted, **<u>will not take years to decide</u>**. The appeal concerns a discrete discovery issue (the "Live Depositions") which is of first impression and has great current importance given the Presidential Proclamation and the worsening global pandemic. The underlying issue has already been extensively briefed by both sides on the Motions for Leave. The delay will not be significant. The Court can still schedule the hearing or trial on the Petitions and First MTD for after the holidays and, in fact, the

scheduling of same in later January or February would give the appellate courts the impetus to decide the matter expeditiously.

The Petitioning Creditors request that the Court deny the Third MTD or, at the least, adjourn it until such time as the District Court renders a decision on the Motions for Leave. Petitioning Creditors submit that procedurally this makes the most sense at this time for the Cases to move forward in a logical, orderly fashion.

## CONCLUSION

Based on the foregoing, the Petitioning Creditors respectfully request that the Third MTD be denied in its entirety or, alternatively, that the Court adjourn consideration of same until the District Court determines the Motions for Leave.

Dated: November 24, 2020

/s/ *Stephen M. Packman*

Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: 832-767-0339
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
Tel: 215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Petitioning Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2020, I caused to be served a copy of the foregoing by electronic mail upon all parties receiving notice through the Court's CM/ECF Noticing System

*/s/ Stephen M Packman*
Stephen M. Packman, Esquire

219811164v1