**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**OPPOSITION OF PETITIONING CREDITORS TO THE THIRD MOTION OF ALLEGED DEBTORS TO DISMISS INVOLUNTARY PETITIONS WITH PREJUDICE**

The Petitioning Creditors, Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Lan Ji, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu (collectively, "Petitioning Creditors"), by and through their undersigned counsel, file this opposition (the "Third Opposition") to the Alleged Debtors', WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC ("Alleged Debtors"), third motion to dismiss (the "Third MTD") the Involuntary Petitions (hereinafter, at times, the "Petitions" or the "Cases"). The Petitioning Creditors respectfully aver as follows:

---

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors sat this time.

**EXHIBIT "7"**

**INTRODUCTION**

The Alleged Debtors' Third MTD alleges principally that the Petitioning Creditors have not provided certain Court ordered documents to the Alleged Debtors and willfully failed to agree to produce certain Petitioning Creditors for "live depositions" in the United States. For the reasons set forth herein, the Third MTD should be denied or, at a minimum, continued until at least a time after the Motions for Leave to Appeal are heard by the U.S. District Court.

At the outset, it is noted that the Alleged Debtors' First Motion to Dismiss ("First MTD") is apparently pending for a hearing on the merits of the Petitions on December 30, 2020 (the "First MTD Hearing"). The First MTD Hearing was, according to the Clerk's office, unilaterally scheduled by Alleged Debtors' counsel. This date for a plenary hearing was scheduled by counsel without consulting with counsel for Petitioning Creditors. The date unilaterally scheduled is highly inconvenient for everyone in light of the holiday. However, the Petitioning Creditors and counsel are fully prepared to present their case in support of entry of the Petitions on a date to be set by the Court after the holidays.

The fact is that counsel for the Alleged Debtors has been in possession, since July of 2020, of documents from Petitioning Creditors (a) containing many admissions by the Alleged Debtors which refute their "identity" of the Petitioning Creditors' allegations and (b) clearly demonstrating Petitioning Creditors' proof in support of the Petitions. Despite what the Alleged Debtors state in their Third MTD, these documents contain, inter alia, communications between the Alleged Debtors, the Petitioning Creditors and Mr. Fu's agents as more fully set forth herein. They are also replete with proof of each of the Alleged Debtors' receipts of the loan monies from the Petitioning Creditors, acknowledgments of same given to each of the Petitioning Creditors and communications back and forth between the parties (many through Fu's agents) regarding why the funds have not been repaid and endless promises by the Alleged Debtors to repay them.

At trial of this matter, only three Petitioning Creditors for each Alleged Debtor entity must initially show that they hold claims against each of the respective Alleged Debtors that are not contingent as to liability or the subject of a bona fide dispute and which aggregate at least $10,000 more than the

value of any lien on property of the Alleged Debtor securing such claims held by the holders of such claims. Petitioning Creditors can easily demonstrate this to the Court based solely on the documents provided to Alleged Debtors' counsel as more fully set forth herein. Petitioning Creditors can further show, based on such documentation and admissions by the Alleged Debtors in those documents and in these Cases, that the Alleged Debtors are not paying their undisputed debts when due.

There are so many admissions regarding the validity of the asserted debts in the documents provided to Alleged Debtors' counsel (and the pleadings filed by the Alleged Debtors and other creditors in these Cases) that the Petitioning Creditors believe, in good faith, that their testimony is not necessary at trial to prove their case. This is why the Petitioning Creditors planned on filing Motions for Summary Judgment and would still do so if the Court permits it. They believe these Cases can be disposed of by the Court in summary fashion.

The Alleged Debtors' Second Motion to Dismiss (the "Second MTD") was decided by the Court on June 23, 2020, in favor of the Petitioning Creditors and denied. *See Docket No. 81*. The Second MTD also alleged an array of supposed procedural deficiencies which were all rendered moot by the time of the hearing.

The Third MTD is, like the Second MTD, solely a procedural motion as it is based on alleged failures of the Petitioning Creditors to comply with this Court's discovery orders ("Discovery Orders"). The Petitioning Creditors have not willfully failed to comply with the Discovery Orders. As to production of documents under the Discovery Orders, or as otherwise required by this Court (ie., "wet signatures" and passports), Petitioning Creditors have, in their view, fully complied with the Discovery Orders and other mandates of this Court.

As to the "live" depositions of certain of the noticed Petitioning Creditors, Petitioning Creditors' position is well known to the Court. Due to COVID-19 and the current travel ban in place, Petitioning Creditors have not authorized their counsel at this time to enter into a "Live Deposition Agreement" but have offered and continue to offer various reasonable alternatives to such depositions. Petitioning Creditors first address the document allegations herein and then the issue raised of the live depositions.

## PROCEDURAL HISTORY & STATEMENT OF FACTS

### *A. The Documents Requested have been Produced by Petitioning Creditors*

In the Third MTD, the Alleged Debtors identify the following discovery which they allege the Petitioning Creditors have not produced and which, according to them, warrant the draconian relief of dismissal of the Petitions:

1. Petitioning Creditors' "wet signatures" to the petitions. *See Third MTD, pg. 6.*
2. Petitioning Creditors' "wet signatures" to their answers to interrogatories. *Id. at pg. 3.*
3. Copies of Petitioning Creditors' passports. *Id.*
4. All documents concerning communications between Petitioning Creditors and Michael Fu. *Id.*
5. All documents concerning transfers of funds from Chinese accounts to the Alleged Debtors. *Id.*

The Alleged Debtors state as follows in their brief in support of the Third MTD:

> Either the purported Petitioners have the required documentation to give to their counsel or they do not. If they have done so, counsel for the Petitioners has offered no explanation for its delay in producing it. Regardless of the reason for the failure after seven weeks of delay (1) to sign and file the Live Deposition Agreement; (2) to produce the Petitioners' wet signatures on the petition; (3) to provide copies of the Petitioners' passports for review; (4) to submit documentation regarding funds transfers from Chinese accounts to the Alleged Debtors; (5) to present the communications between the Petitioners and Michael Fu; and (6) to cooperate in arranging for the deposition of selected Petitioners, it is apparent that such constitutes a willful refusal to comply with the Court's Orders, thereby demonstrating bad faith on the part of the Petitioners. This unexplained, yet apparently deliberate, delay has served to do nothing but stall these proceedings.

However, quite contrary to the statements to this Court above, the Petitioning Creditors have produced the required documents to counsel as follows.

1. As set forth in the Certification of Jiangang Ou, Esquire (the "Ou Certification") [*Docket No. 84*], Petitioning Creditors provided their original "wet signatures" relative to the Petitions. On July 7, 2020, Petitioning Creditors provided Alleged Debtors' counsel with a DropBox link containing copies of their "wet signatures" relative to the Petitions. A redacted copy of the July 7, 2020, email to Joyce Lindauer is attached hereto as Exhibit "A".

2. As set forth in the Declarations of Amy M. Huber (the "Huber Declarations") [*Docket Nos. 111, 112, 113, 114, 115, 116 and 117*], the Petitioning Creditors confirmed the validity of their "wet signatures" appearing on the Petitions.

3. Petitioning Creditors provided their discovery "wet signatures" to the Court and Alleged Debtors as set forth in the Declaration of Stephen M. Packman ("Packman Declaration") [*Docket No. 213*] and Supplemental Declaration of Stephen M. Packman ("Supplemental Packman Declaration", collectively with the Packman Declaration, the "Packman Declarations") [*Docket No. 244*] on October 30, 2020 and November 5, 2020, respectively.

4. On August 27, 2020, Petitioning Creditors provided Alleged Debtors' counsel with emails containing all of their passports, except for Lin Li, a lender of WALL011, LLC, who gave his Chinese I.D. card. Additionally, on October 30, 2020, Petitioning Creditors' provided all of their passports and the Chinese I.D. card to the Court and the Alleged Debtors via DropBox link contained in the Packman Declaration. *See Packman Declaration*. Copies of the August 27 2020 emails to Joyce Lindauer and the redacted October 30, 2020 email to the Court are attached as Exhibits "B" and "C", respectively.

5. Copies of all communications between Petitioning Creditors and Mr. Fu's employees and agents were produced as part of the Petitioning Creditors' responses to Alleged Debtors' First Set of Discovery Requests ("Discovery Responses"), on July 13, 2020 and July 29, 2020. [*Docket No. 119 at para. 19*]. A redacted copy of the July 13, 2020 and July 29, 2020 emails to Joyce Lindauer providing the DropBox link to the documents are attached as Exhibit "D". Separately, the Petitioning Creditors are submitting to the Court the DropBox link for privacy reasons.

6. As contained in the DropBox link, copies of the Alleged Debtors' acknowledgements of the loan funds, wire receipts, bank account snapshots and other proof of funding from Petitioning Creditors to the Alleged Debtors (**and the Alleged Debtors' receipt thereof**) was also provided to counsel for the Alleged Debtors on July 13, 2020 and July 29, 2020. *Id.*

The Court is respectfully urged to review the documents produced by Petitioning Creditors to Ms. Lindauer on July 13 2020 and July 29, 2020, before ruling on the Third MTD. Counsel for the Alleged Debtors has been in possession of these responsive documents for over four months but now seemingly represents to this Court that the Alleged Debtors did not receive them. Annexed as Exhibit "E" are a sampling of some of the relevant documents from the subject DropBox link counsel received on July 13, 2020 and July 29, 2020. As the Court can plainly surmise, the documents included communications between Petitioning Creditors and Mr. Fu's agents (@yding.cn), communications between the Petitioning Creditors and the Alleged Debtors and Mr. Barton and Ms. Lindauer, proof of wire transfers from the Petitioning Creditors to the Alleged Debtors, proof of receipt of the loan proceeds, acknowledgment that the funds have not been repaid and many other documents which the Alleged Debtors demanded.

Further, Petitioning Creditors have provided counsel and the Court with copies of all of their passports and "wet signatures" on their petitions and discovery certifications as reflected by the Ou Certification, Huber Declarations and Packman Declarations as aforesaid. The Alleged Debtors' assertion that Petitioning Creditors have not complied with this Court's orders and mandates relative to documents and signatures is not true.

### *B. The Live Depositions are the Subject of Petitioning Creditors' Interlocutory Appeal*

On November 3, 2020, Petitioning Creditors filed their Motions (A) for Leave to File an Interlocutory Appeal and (B) Requesting Certification to the United States Court of Appeals for the Fifth Circuit [*Docket Nos. 221, 226, 231, 236, and 241*]. On November 17, 2020, via letter from Stephen Manz, Law Clerk to the Honorable Harlin D. Hale, this Honorable Court advised that the Petitioning Creditors' Motions for Leave to Appeal ("Motions for Leave") should be heard by the United States District Court for the Northern District of Texas ("District Court"). The District Court has not yet scheduled the Motions for Leave for hearing or other consideration. The Petitioning Creditors believe, as set forth herein, that the District Court must rule on the Motions for Leave prior to this Court ruling on the Third MTD. However, even if this Court disagrees, there are less egregious alternatives than dismissal if the Petitioning Creditors cannot travel here to appear for depositions prior to a hearing or trial on the First MTD.

## LEGAL ARGUMENT

### A. *The Alleged Debtors Have Produced no Evidence of Bad Faith or Willful Intent by Petitioning Creditors which Would Support Dismissal of the Petitions*

The Alleged Debtors attempt to divert the Court's attention from the real, substantive issues for adjudication in these Cases by advancing misleading allegations regarding Petitioning Creditors' compliance with the Discovery Orders and the mandates of this Court. There is no basis to dismiss the Petitions under F.R.B.P. 41(b).

As noted by the Alleged Debtors, F.R.C.P. 41(b) is applied to bankruptcy cases by F.R.B.P. 7041, and permits a court to dismiss a legal action or claim against an Alleged Debtor after a motion by said

party if the Petitioner fails to prosecute or to comply with the Federal Rules of Civil Procedure or a court order. Importantly, dismissal under the subject Rule is authorized when the failure to comply with the court's order results from a party's **"willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply**." *Romero v. ABC Ins. Co,* 320 F.R.D. 36, 40 (W.D. La. 2017)[*emphasis supplied*]. Dismissal is only appropriate where a party's failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply. *Griffin v. ALCOA,* 564 F.2d 1171, 1172 (5th Cir.1977). Dismissal is proper in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 514 (5th Cir.1985).

The United States Court of Appeals for the Fifth Circuit has stated quite clearly that the "death penalty" of dismissal should be applied only in extreme circumstances and requires a heightened standard of inquiry by the trial court.

> Our case law imposes a heighted standard for litigation-ending sanctions (sometimes called "death penalty" sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery." Compaq Comput. Corp. v. Ergonome Inc., 387 F.3d 403, 413 (5th Cir. 2004) (quoting Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982)). **But the district court must make four additional findings to impose a litigation-ending sanction: (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation "substantially prejudice[d] the opposing party"; and (4) a lesser sanction would not "substantially achieve the desired deterrent effect." FDIC v. Conner, 20 F.3d 1376, 1380-81 (5th Cir. 1994) [*emphasis supplied*].**
>
> Rule 37 empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and penalties, including dismissal with prejudice. Griffin's unexcused failure to appear for deposition rendered him liable for a sanction. Although the district court has wide latitude in framing orders and in penalizing failure to comply, that discretion has limits. B. F. Goodrich Tire Co. v. Lyster, 328 F.2d 411, 415 (5th Cir. 1964). Dismissal of a complaint with prejudice is such a drastic remedy that a district court should apply it only in extreme circumstances. Bon Air Hotel, Inc. v. Time, Inc., 376 F.2d 118, 121 (5th Cir. 1967). See also Emerick v. Fenick Industries, Inc., 539 F.2d 1379, 1381 (5th Cir. 1976).
>
> Our function as an appellate court is not to determine whether this court would have dismissed the complaint as an original matter, but whether the district court abused its discretion in doing so. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 641, 96 S. Ct. 2778, 2780, 49 L. Ed. 2d 747, 750 (1976). Central to this review of

> discretion is whether the district court could have fashioned an equally effective but less drastic remedy. Diaz v. Southern Drilling Co., 427 F.2d 1118, 1126-27 (5th Cir. 1970). *Law Funder, LLC v. Munoz*, 924 F. 3d 753 (5th Cir. 2019).

The Fifth Circuit Court has provided guidance on what the term "bad faith" means in the discovery context. In *Vick v. Texas Employment Commission*, 514 F.2d 734 (5th Cir. 1975), the Fifth Circuit Court of Appeals explained that an adverse inference drawn from the destruction of records must be predicated on bad conduct, which was absent in that defendant's actions. *Id.* The Court went on to explain that "bad faith" would be demonstrated by destructive actions driven by "consciousness of a weak case." *Id.* at 737. Thus, in Vick, the Court described bad faith as conduct demonstrating an intent to remove evidence because it could harm the spoliator's case.

### *1. The Document Production Allegations*

First, the Alleged Debtors ask this Court to dismiss the Petitions based on allegations that the Petitioning Creditors have not complied with this Court's Discovery Orders and mandates. The Alleged Debtors have made absolutely no showing of such non-compliance or of any bad faith or willful intent by Petitioning Creditors to avoid compliance with this Court's orders.

As to the paper discovery allegations by the Alleged Debtors, counsel states as follows:

> Also, no interrogatories bearing the Petitioner's "wet signatures" have yet been produced as ordered. Such is required to ensure that the persons purported to be Petitioners are indeed claiming such status. Further, no copies of passports have been produced as requested, and which must be submitted to the Court to establish the existence and identity of persons claiming to be Petitioners (arguably a critical matter in this case). Despite the Alleged Debtor's repeated struggle to arrange face-to-face depositions of the Petitioners to be conducted in the United States, counsel for the Petitioners has failed to cooperate in this endeavor. Finally, no document production from Petitioners on certain matters (i.e. that concerning transfers of funds from Chinese accounts to the Alleged Debtors and communications between and among the purported Petitioners and Michael Fu) has been provided.

As thoroughly detailed herein, and the attachments hereto, these statements are simply incorrect and border on being outright false. Petitioning Creditors twice produced "wet signatures." Petitioning Creditors twice produced Passports to counsel for the Alleged Debtors. The Petitioning Creditors produced documents relative to funding and communications to counsel on July 13, 2020 and July 29, 2020. The Alleged Debtors have done everything but make it easy upon the Petitioning Creditors to arrange for

depositions of Timothy Barton, Murugan Venkat, Saskya Bedoya and Hongpeng Lin, despite their names being plastered upon the documents produced by the Petitioning Creditors to the Alleged Debtors' counsel on July 13 and 19, 2020 (and the numerous damaging admissions therein).

The evidence demonstrates that Petitioning Creditors have fully complied with the Discovery Orders as to document production. *See pages 5-6, supra*. The evidence of record in these Cases demonstrates that Petitioning Creditors have **twice** produced "wet signatures," once relative to the Petitions and then as ordered regarding written discovery responses. *Id. at page 5*. The evidence demonstrates that Petitioning Creditors **twice** provided their Passports to the Alleged Debtors' counsel, once in August and then again more recently on October 30, 2020. *Id. at page 5*. The Alleged Debtors' counsel simply ignores the evidence and, instead, creates allegations to support a request for the most drastic remedy this Court could fashion, dismissal of the Petitions.

Dismissal is surely not the least onerous alternative here. After considering all of the true evidence, if the Court believes that Petitioning Creditors have not complied with the Discover Orders relative to documents, the Court can certainly fashion relief for the Alleged Debtors short of outright dismissal of the Petitions.

Discovery compliance has come at a great cost in this Case for the Petitioning Creditors. It is not an easy task for the Petitioning Creditors (in China) or their counsel here in the U.S., to constantly jump through the endless procedural hoops and road blocks advanced by the Alleged Debtors to avoid litigation of the actual merits of the Petitions. Yet, Petitioning Creditors have tried, in good faith, to comply with this Court's orders during this entire proceeding despite the COVID-19 pandemic, the language barriers, the time differences and the Alleged Debtors' protestations to the contrary.

The Alleged Debtors, on the other hand, have not been so compliant. They have, collectively, produced only forty nine (49) pages of documents, far short of what has been requested. They have yet to produce Mr. Barton, Mr. Venkat, Ms. Bedoya (no evidence of a doctor's note as ordered by the Court has been provided), and Mr. Lin. The documents in the DropBox Link are full of communications on behalf of the Alleged Debtors between these individuals and the Petitioning Creditors and/or Fu's agents. Mr.

Venkat has evaded service after repeated attempts by Petitioning Creditors to serve him. Ms. Bedoya stated to this Court that she cannot appear for medical reasons yet nothing has been produce by her to that effect and as the Court has ordered. No deposition date for Mr. Barton has been suggested or set. And, Mr. Lin has retained separate counsel who also has not suggested or set a deposition date. There has been no cooperation by them or their counsel in these Cases.

### 2. *The "Live Deposition" Allegations*

On September 4, 2020, the Court ordered the following:

> ORDERED that the petitioners' depositions shall be required to be taken in person, in the United States, at a time and place agreeable to the Parties; it is further
>
> ORDERED that the Court requires that counsel for the Petitioners shall sign an agreement that the petitioners will appear for live depositions in the United States, and that Counsel for the Petitioners shall file such agreement ("Live Deposition Agreement") with the Court. *Docket No. 168.*

The Petitioning Creditors have not intentionally or willfully refused to submit to depositions as maintained by the Alleged Debtors. The Alleged Debtors assert that the Petitioning Creditors were prohibited by the Court from filing a Motion for Reconsideration but how else procedurally were the Petitioning Creditors supposed to protect their rights to disagree with the Court and ask the Court to consider an alternative method for the depositions (such as via video in Macau)? On reconsideration, the Petitioning Creditors asked this Court to take into account that counsel for the Petitioning Creditors was wrong about the Petitioners being able to quarantine in the United States. Petitioning Creditors asked this Court to take into consideration the partial "opening up" of Macau to travel by mainland Chinese. The Court disagreed with the Petitioning Creditors and the matter of Live Deposition Agreement is now on appeal before the District Court.

Petitioning Creditors have not intentionally delayed these proceedings or refused to submit to "live" depositions in the United States. Their position on appeal is quite simply that they cannot travel to the United States at this time for legal and health reasons. Given the circumstances of this Case and the worsening global pandemic, Petitioning Creditors and their counsel believe, **in good faith**, that the "live" depositions are not warranted. The Petitioning Creditors are not refusing to be deposed. There is no

willful intent or bad faith motive here by Petitioning Creditors. If the Petitioning Creditors could travel here directly for what will amount to short depositions they would do so.

The fact is that they cannot travel here at this time and there are less harsh alternatives to address the "identity" verification issue raised by the Alleged Debtors. The availability of lesser alternatives is one of the issues which Petitioning Creditors have raised on appeal. The Alleged Debtors somehow extrapolate bad faith or willful refusal from these facts. Petitioning Creditors have offered various alternatives to "live depositions" which would serve the purpose intended (identifying the Petitioning Creditors as the lenders).

First, the Petitioning Creditors offered depositions by video from China. The Alleged Debtors refused that offer arguing that the depositions were "likely illegal." Second, the Petitioning Creditors then provided written discovery to the Alleged Debtors, including thousands of pages of documents which, in the Petitioning Creditors view, establish clearly that they are the lenders and that their identity and their loan money has been acknowledged repeatedly in writing by the Alleged Debtors. The Alleged Debtors' own loan documents and communications with Petitioning Creditors, will conclusively estop them from arguing otherwise.

Second, the Petitioning Creditors offered to appear for video depositions in Macau now that the travel ban of mainland Chinese to Macau has been eased. This too was rejected by the Alleged Debtors although depositions of Chinese citizens are permitted to be taken there. Contrary to the Court's prior determination, mainland Chinese (with very limited exceptions for special and remote regions) can travel to Macau provided that they have a COVID-19 test result demonstrating that they are not infected within 7 days of their travel:




https://news.gov.mo/detail/en/N20KXUd4P1;jsessionid=8B00BD2915298EA95B1EA26BBEDFE26D.app01?0 *See also* https://www.worldaware.com/covid-19-alert-macau-china-maintains-existing-restrictions.

Third, the Petitioning Creditors noticed **will agree** to travel here for depositions when the travel ban imposed by the Presidential Proclamation is lifted and it is safe to do so (i.e., there is a vaccine available to them). Until then, Petitioning Creditors cannot travel here. It is has nothing to do with their willful refusal to be deposed or bad faith intent as argued by the Alleged Debtors without any evidence thereof.

Petitioning Creditors are just as eager as the Alleged Debtors to have this matter adjudicated. However, they ask the Court to adjudicate this case on the merits. The Court can easily make a

determination at trial whether or not the Petitioning Creditors are, in fact, the lenders from the loan documents, from their testimony should it be required (subject to cross-examination) and from the testimony of the Alleged Debtors and third-party witnesses. There are clearly various less severe alternatives available here short of dismissal of the Petitions.

The Court has previously indicated that if the Petitioning Creditors cannot appear for depositions, the Court will consider what, if any, negative inferences might be drawn therefrom. *See, e.g., the Joint Discovery Plan, para. 9.* The Court did not pre-determine that the Petitions would be dismissed if the Petitioning Creditors could not presently travel here for live depositions. Petitioners will make themselves available by video for trial if necessary and the issue of what, if any, limitations will be inferred as to that testimony is a trial issue which is not before the Court at present. Petitioning Creditors ask this Court to deny the Third MTD and then schedule a hearing or trial on the Petitions and First MTD at the Court's first opportunity.

**B. Petitioning Creditors Submit that the Court Should Not Consider the Third MTD until the District Court Rules on the Motions for Leave**

From a procedural perspective, a critical issue is whether or not the Court is going to consider the Third MTD prior to the District Court's consideration of the Motions for Leave. Petitioning Creditors submit that the current procedural posture of these Cases warrants the Court to refrain from deciding the Third MTD until the District Court renders a decision on the Motions for Leave. The District Court has not yet scheduled the Motions for Leave for consideration.

If the District Court grants leave to appeal, this Court will then either certify the "live deposition" issue to the Fifth Circuit, or not. Then the requisite appellate court will hear the matter. The appeal, if granted, **will not take years to decide**. The appeal concerns a discrete discovery issue (the "Live Depositions") which is of first impression and has great current importance given the Presidential Proclamation and the worsening global pandemic. The underlying issue has already been extensively briefed by both sides on the Motions for Leave. The delay will not be significant. The Court can still schedule the hearing or trial on the Petitions and First MTD for after the holidays and, in fact, the

scheduling of same in later January or February would give the appellate courts the impetus to decide the matter expeditiously.

The Petitioning Creditors request that the Court deny the Third MTD or, at the least, adjourn it until such time as the District Court renders a decision on the Motions for Leave. Petitioning Creditors submit that procedurally this makes the most sense at this time for the Cases to move forward in a logical, orderly fashion.

## CONCLUSION

Based on the foregoing, the Petitioning Creditors respectfully request that the Third MTD be denied in its entirety or, alternatively, that the Court adjourn consideration of same until the District Court determines the Motions for Leave.

Dated: November 24, 2020

/s/ *Stephen M. Packman*
Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: 832-767-0339
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
Tel: 215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Petitioning Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2020, I caused to be served a copy of the foregoing by electronic mail upon all parties receiving notice through the Court's CM/ECF Noticing System

*/s/ Stephen M Packman*
Stephen M. Packman, Esquire

219811164v1

# EXHIBIT "A"

**Huber, Amy M.**

**From:** Joyce Lindauer <joyce@joycelindauer.com>
**Subject: RE: Wall - Certification re: Wet-Signatures**
**Date:** July 7, 2020 at 2:45:13 PM CDT
**To:** jou nguyen-chen.com <jou@nguyen-chen.com>

Thank you

**From:** jou nguyen-chen.com <jou@nguyen-chen.com>
**Sent:** Tuesday, July 7, 2020 1:10 PM
**To:** Joyce Lindauer <joyce@joycelindauer.com>
**Cc:** Jorge Garcia <jgarcia@archerlaw.com>; Stephen Packman <spackman@archerlaw.com>
**Subject:** Re: Wall - Certification re: Wet-Signatures

[redacted]

We received Liying Yang's early today so only two are pending.

On Jul 7, 2020, at 11:11 AM, Joyce Lindauer <joyce@joycelindauer.com> wrote:

Could you also provide us copies of the wet signatures – thank you

**From:** Garcia, Jorge <jgarcia@archerlaw.com>
**Sent:** Monday, July 6, 2020 8:53 PM
**To:** Joyce Lindauer <joyce@joycelindauer.com>
**Cc:** Packman, Stephen <spackman@archerlaw.com>; jou nguyen-chen.com <jou@nguyen-chen.com>
**Subject:** Wall - Certification re: Wet-Signatures

Ms. Lindauer:

Attached is the Certification of Jiangang Ou, Esquire regarding Receipt of Original "Wet-Signature" Petitions and Declarations from Petitioning Creditors that I filed today. We filed this with the Court earlier today, docket no. 85 and 86, but apparently there is a technical issue and the filings do not show up on the docket or on PACER. I will be contacting the Court regarding this issue tomorrow morning, but wanted to get this to you today due to the Court's deadline.

If you have any questions, please let me know.

Thanks,
Jorge

**Jorge Garcia, Esq.**

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-246-3102
jgarcia@archerlaw.com
www.archerlaw.com

<~WRD3490.jpg>

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

# EXHIBIT "B"

**Huber, Amy M.**

| | |
|---|---|
| **From:** | jou nguyen-chen.com <jou@nguyen-chen.com> |
| **Sent:** | Monday, November 23, 2020 7:32 PM |
| **To:** | Huber, Amy M. |
| **Cc:** | Packman, Stephen M. |
| **Subject:** | [EXT MAIL] Fwd: contact information for the Chinese Lenders |
| **Attachments:** | wall 007.zip; wall 009.zip; wall 012.zip |

Begin forwarded message:

**From:** jou nguyen-chen.com <jou@nguyen-chen.com>
**Subject: Fwd: contact information for the Chinese Lenders**
**Date:** August 27, 2020 at 10:08:27 AM CDT
**To:** Joyce Lindauer <joyce@joycelindauer.com>
**Cc:** Stephen Packman <spackman@archerlaw.com>

Joyce,

FYI. —The original email and the three(3) zipped documents attached thereto proving passports of lenders were sent to the Alleged Debtors at their request.

Please let us know the names of the Petitioning Creditors of whom the Alleged Debtors allege do not have a copy of passport so we can verify and double check and help save the Court's time and efforts. Please be noted that our roles are not only clients' lawyers but also the court's officers.

Jiangang "James" Ou
Attorney at Law

Nguyen & Chen, LLP
11200 Westheimer Suite 120
Houston, Texas 77042
(832)767-0339
(832)767-0669 (fax)
jou@nguyen-chen.com

CONFIDENTIALITY NOTICE: The information in this electronic message may be privileged and confidential and is intended for the use of the individual or entity named above. If you are not the intended recipient, you are on notice that any unauthorized disclosure, copying, distribution, or taking of any action in reliance on the contents of this message is prohibited.

Case 20-31131-hdh7 Doc 294-2 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 3 of 6

------------------ Original ------------------
**From:** "樊玲"<tidy@yding.cn>;
**Date:** Tue, Jun 18, 2019 04:51 PM
**To:** "Murugan Venkat"<mvenkat.jmj@gmail.com>;
**Cc:** "Tim Barton"<tbarton@jmjdevelopment.com>; "周霖"<lynn@yding.cn>; "Sohail Quraeshi"<sqpolo@gmail.com>; "Hongpeng Lin"<HLin@jmjdevelopment.com>; "Allen Zhang"<allen.zhang@yding.cn>;
**Subject:** Re: contact information for the Chinese Lenders

Hi Ven,
Kindly to check attachment as passport pictures for WALL007/WALL009/WA012, we are wait the last 4 from clients, after we received , we will send to you immediately.
About the WeChat ID, we will provide all list to Hong today.

------------------
Tidy Fan
tidy@yding.cn
+86-13918867172

------------------ Original ------------------
**From:** "Murugan Venkat"<mvenkat.jmj@gmail.com>;
**Date:** Mon, Jun 17, 2019 11:00 PM
**To:** "樊玲"<tidy@yding.cn>;
**Cc:** "Tim Barton"<tbarton@jmjdevelopment.com>; "周霖"<lynn@yding.cn>; "Sohail Quraeshi"<sqpolo@gmail.com>; "Hongpeng Lin"<HLin@jmjdevelopment.com>; "Allen Zhang"<allen.zhang@yding.cn>;
**Subject:** Re: contact information for the Chinese Lenders

Hello Tidy
Please send the copy of the passports for all these investors ASAP
**Thanks & regards**
**Murugan Venkat**
On Mon, Jun 17, 2019 at 8:19 AM 樊玲 <tidy@yding.cn> wrote:

> Hi, Tim,
> Kindly to check attachment as client list with name/cell number/address/passport or ID number on Wall007,Wall009,Wall012, we will add wechat ID information after we collect everyone, try to update tomorrow.
> ------------------
> Tidy Fan
> tidy@yding.cn
> +86-13918867172

**Huber, Amy M.**

**From:** jou nguyen-chen.com <jou@nguyen-chen.com>
**Sent:** Thursday, August 27, 2020 11:16 AM
**To:** Joyce Lindauer
**Cc:** Packman, Stephen
**Subject:** [EXT MAIL] Fwd: wall 010 011 护照
**Attachments:** wall 010.zip; wall 011.zip

Joyce,

FYI. —The original email and zipped documents attached thereto proving passports of lenders were sent to the Alleged Debtors at their request.

Please let us know the names of the Petitioning Creditors of whom the Alleged Debtors allege do not have a copy of passport so we can verify and double check ***and help save the Court's time and efforts. Please be noted that our roles are not only clients' lawyers but also the court's officers.***

Jiangang "James" Ou
Attorney at Law

Nguyen & Chen, LLP
11200 Westheimer Suite 120
Houston, Texas 77042
(832)767-0339
(832)767-0669 (fax)
jou@nguyen-chen.com

CONFIDENTIALITY NOTICE: The information in this electronic message may be privileged and confidential and is intended for the use of the individual or entity named above. If you are not the intended recipient, you are on notice that any unauthorized disclosure, copying, distribution, or taking of any action in reliance on the contents of this message is prohibited.

------------------ Original ------------------

**From:** "樊玲"<tidy@yding.cn>;
**Date:** Wed, Jun 19, 2019 08:18 PM
**To:** "Hongpeng Lin"<hlin@jmjdevelopment.net>; "Hongpeng Lin"<hlin@jmjdevelopment.com>;
**Subject:** wall 010 011 护照

今天发的护照照片太大了，我怕万一收不到，再分成两份邮件发给你

----------------
Tidy Fan
tidy@yding.cn
+86-13918867172

Case 20-31131-hdh7 Doc 294-2 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 5 of 6

**Huber, Amy M.**

| | |
|---|---|
| **From:** | jou nguyen-chen.com <jou@nguyen-chen.com> |
| **Sent:** | Thursday, August 27, 2020 11:17 AM |
| **To:** | Joyce Lindauer |
| **Cc:** | Packman, Stephen |
| **Subject:** | [EXT MAIL] Fwd: wall 016 017 护照 |
| **Attachments:** | wall 016.zip; wall 017.zip |

Joyce,

FYI. —The original email and zipped documents attached thereto proving passports of lenders were sent to the Alleged Debtors at their request.

Please let us know the names of the Petitioning Creditors of whom the Alleged Debtors allege do not have a copy of passport so we can verify and double check ***and help save the Court's time and efforts. Please be noted that our roles are not only clients' lawyers but also the court's officers.***

Jiangang "James" Ou
Attorney at Law

Nguyen & Chen, LLP
11200 Westheimer Suite 120
Houston, Texas 77042
(832)767-0339
(832)767-0669 (fax)
jou@nguyen-chen.com

CONFIDENTIALITY NOTICE: The information in this electronic message may be privileged and confidential and is intended for the use of the individual or entity named above. If you are not the intended recipient, you are on notice that any unauthorized disclosure, copying, distribution, or taking of any action in reliance on the contents of this message is prohibited.

**From:** "樊玲"<tidy@yding.cn>;
**Date:** Wed, Jun 19, 2019 08:19 PM
**To:** "Hongpeng Lin"<hlin@jmjdevelopment.net>; "Hongpeng Lin"<hlin@jmjdevelopment.com>;
**Subject:** Re:wall 016 017 护照

这是016和017的

-----------------
Tidy Fan
tidy@yding.cn
+86-13918867172

------------------ Original ------------------
**From:** "樊玲"<tidy@yding.cn>;
**Date:** Wed, Jun 19, 2019 08:18 PM
**To:** "Hongpeng Lin"<hlin@jmjdevelopment.net>; "Hongpeng Lin"<hlin@jmjdevelopment.com>;
**Subject:** wall 010 011 护照

今天发的护照照片太大了，我怕万一收不到，再分成两份邮件发给你

--------------------
Tidy Fan
tidy@yding.cn
+86-13918867172

# EXHIBIT "C"

## Huber, Amy M.

| | |
|---|---|
| **From:** | Huber, Amy M. <ahuber@archerlaw.com> |
| **Sent:** | Friday, October 30, 2020 3:23 PM |
| **To:** | hdh_settings@txnb.uscourts.gov |
| **Cc:** | Packman, Stephen M.; joyce@joycelindauer.com; Jiangang "James" Ou (jou@nguyen-chen.com) |
| **Subject:** | In re WALL007, LLC, et al., Chapter 7 Bankruptcy Case No. 20-31131 (HDH) (Bankr. N.D. Tex.) |
| **Attachments:** | (219647693 – 3) - 2020.10.30 - Letter to Jennie Bergreen, Judge Hale_s Courtroom Deputy enclosing Declration of Stephen M. Packman (COMPLETE).PDF |

Dear Ms. Bergreen:

On behalf of Stephen M. Packman, Esquire, please review the attached correspondence. Thank you.

**Amy M. Huber**
*Bankruptcy Administrative Assistant/Paralegal*
Stephen M. Packman, Esq.
Douglas G. Leney, Esq.
Tanneika A. Minott, Esq.
Jorge Garcia, Esq.

Archer & Greiner P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103
215-963-3300 (Ext. 5436)
ahuber@archerlaw.com
www.archerlaw.com

INFORMATION CONTAINED IN THIS E-MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS EMAIL, DO NOT READ, DISTRIBUTE OR REPRODUCE THIS TRANSMISSION (INCLUDING ANY ATTACHMENTS). IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR EMAIL REPLY.

ARCHER
ATTORNEYS AT LAW

Stephen M. Packman
*Fellow of INSOL*
*Also Member of Pennsylvania and New York Bar*
spackman@archerlaw.com
215-246-3147 (Ext. 5147) Direct

Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103-2739
215-963-3300 Main
215-963-9999 Fax
www.archerlaw.com

October 30, 2020

**VIA EMAIL**

Jenni Bergreen, Courtroom Deputy to the
Honorable Harlin D. Hale
U.S. Bankruptcy Court
Northern District of Texas
Earle Cabell Federal Building
1100 Commerce Street, 14th Floor
Courtroom #3
Dallas, TX 75242-1496
hdh_settings@txnb.uscourts.gov

Re: In re WALL007, LLC, et al.[1]
Chapter 7 Bankruptcy Case No. 20-31131 (HDH) (Bankr. N.D. Tex.)
Our File No. WAL347-00961

Dear Ms. Bergreen:

Enclosed please find the Declaration of Stephen M. Packman (the "Declaration") regarding the Petitioning Creditors' passports and wet signatures verifying their responses to the Alleged Debtors' discovery requests. Please note, in order to protect the Petitioning Creditors' privacy, the Declaration is being submitted directly to you and is not, at present being filed on the docket. Petitioning Creditors are also filing a Motion for a protective order.

Thank you for your time and consideration in this matter.

Respectfully,

*/s/ Stephen M. Packman*
STEPHEN M. PACKMAN

SMP:amh
Enclosure
cc: Joyce Lindauer, Esq. (via email) (w/enc.)
James Ou, Esq. (via email) (w/enc.)

219647693v1

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| WALL007 LLC, *et al.*,[1] | Case No. 20-31131 (HDH) |
| Alleged Debtor. | |

**DECLARATION OF STEPHEN M. PACKMAN**

Stephen M. Packman, counsel for the Petitioning Creditors, hereby declare as follows:

**PETITIONERS' PASSPORTS**

1. The Petitioning Creditors' ("Petitioners") passports are accessible via the following Dropbox link: [redacted] ("Link").

2. The Petitioning Creditors' passports contain confidential, personal information and, therefore, they request permission to file this pleading on the docket in this case with the Link **redacted** from the public.

**WET SIGNATURES**

3. Attached hereto as Exhibit "A" are true and correct copies of forty five (45) Petitioners' wet signatures for the "Verifications" to their Responses and Objections to the First

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors at this time.

Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of the Alleged Debtors.

4. The remaining Verifications will be provided to the Court on or before November 6, 2020.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October 30, 2020

/s/ *Stephen M. Packman*
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
215-963-3300
Email: spackman@archerlaw.com

# EXHIBIT "A"

DocuSign Envelope ID: DC4B47B8-188E-4705-9966-C2FC487F3A73

## VERIFICATION

I, Jin Wang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL007, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Wang Jin 王金 Wang Jin

Jin Wang

DocuSign Envelope ID: 3C53FEBE-51DC-4FAE-B6C9-23EDF63B8B80

**VERIFICATION**

I, Jun Li, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL007, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Li Jun 李军 LI JUN

Jun Li

**VERIFICATION**

I, Lin Zhou, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL007, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Lin Zhou

周霖

)ocuSign Envelope ID: E6A7A6BD-BB4D-47F6-9A8B-32DE6AFD92D2

**VERIFICATION**

I, Qu Chen, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL007, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

QU CHEN

Qu Chen

陈曲 CHEN QU

DocuSign Envelope ID: 41867A33-CA7A-4E8A-AE45-31477D858540

**VERIFICATION**

I, Yunding Kang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL007, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Yunding kang Yun ding Kang

Yunding Kang

康云鼎

DocuSign Envelope ID: B573B92A-DDF0-4A73-A36E-C60AA1CBE40A

**VERIFICATION**

I, Kai Tian, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL007, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Kai Tian 田凯 Kai Tian

Kai Tian

DocuSign Envelope ID: 5B981BE9-AB44-439D-A80B-35877150AD4E

**VERIFICATION**

I, Jin Wang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL009, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Wang Jin Wang Jin

Jin Wang

DocuSign Envelope ID: E0D24174-4F43-464B-A6BC-516EC2FC3781

## VERIFICATION

I, Weijia Kong, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL009, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Weijia Kong Weijia kong 孔维佳

Weijia Kong

DocuSign Envelope ID: 95D5E67C-AFFE-45E3-B737-F19680484FD7

## VERIFICATION

I, Mai Ye, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL009, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Mai Ye

Mai Ye

DocuSign Envelope ID: 20A68210-ADBE-47CE-B64C-A33414845168

## VERIFICATION

I, Lin Zhou, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL009, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Lin Zhou

DocuSign Envelope ID: 517CA8A4-B6E3-47BE-8AFD-AACE15376EC3

# VERIFICATION

I, Qiuying LI, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL009, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Qiuying Li Qiuying Li

Qiuying Li

DocuSign Envelope ID: FBE0000F-DC50-41FC-94A0-B5F0216AD808

# VERIFICATION

I, Yue Xu, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL009, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Yue Xu

DocuSign Envelope ID: DB03AB0A-49B0-4E01-BD8F-F402D89E6E46

**VERIFICATION**

I, Wenjun Wang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL010, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Wenjun Wang

Wenjun Wang

Wenjun Wang 王文君

# VERIFICATION

I, Tianqing Song, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL010, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Song tian qing

Song Tianqing

Tianqing Song

DocuSign Envelope ID: CAA4FEAE-DC29-44E7-BA54-87448F403916

## VERIFICATION

I, Liying Yang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL010, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Liying Yang

Liying Yang

Liying Yang

Case 20-31131-hdh7 Doc 294-3 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 22 of 51

DocuSign Envelope ID: 080216C6-8976-4CD7-825E-DA958C624FA3

**VERIFICATION**

I, Yan Zhang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL010, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Zhang Yan 张雁
Yan Zhang Yan Zhang

DocuSign Envelope ID: 5A88C14E-6364-4053-94D3-9EF74075DBAB

## VERIFICATION

I, Li Jiang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL011, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

li jiang LiJiang 姜丽

Li Jiang

# VERIFICATION

I, Tianqing Song, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL011, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Song Tianqing

Song Tianqing

Tianqing Song

DocuSign Envelope ID: B0B6CFFF-AFDC-4D30-A9AC-717EE8A47055

**VERIFICATION**

I, Rufeng Ding, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL011, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Rufeng Ding

Rufeng Ding

Rufeng Ding 丁汝枫

DocuSign Envelope ID: 7CC1F38E-F843-4C3D-80E8-A74E36D54EBC

**VERIFICATION**

I, Lin Li, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL011, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

li lin li lin 李林

Lin Li

DocuSign Envelope ID: 546464D3-231E-48D4-89F6-88ACABB31BBE

**VERIFICATION**

I, Li Jiang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

li jiang Li Jiang 姜丽

Li Jiang

DocuSign Envelope ID: BF25A537-59B2-4BB0-AE69-22D9884456A0

# VERIFICATION

I, Ou Jiang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Ou Jiang 江欧 Ou Jiang

Ou Jiang

DocuSign Envelope ID: 71693EBD-9E99-4C9E-9FC7-0B9E1A6C5F54

## VERIFICATION

I, Yi Tang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Tang Yi

Yi Tang

唐艺 TANG YI

2020.10.24.

DocuSign Envelope ID: 150A1AB0-4279-4CED-B53C-6C18ACC7D87E

**VERIFICATION**

I, Pengfei Dong, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

董鹏飞

Pengfi Dong Pengfei Dong

Pengfei Dong

DocuSign Envelope ID: 89B9EFD4-BF46-4B1B-ACC8-5013154FACA9

## VERIFICATION

I, Jinzhe Wu, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Wu Jinzhe
吴津喆

Jinzhe Wu

Jinzhe Wu

DocuSign Envelope ID: 5D38DFDD-CB11-42EE-B7F0-E3B661003A7F

## VERIFICATION

I, Wenjuan Yin, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Wenjuan Yin 尹文娟 Wenjuan Yin

Wenjuan Yin

DocuSign Envelope ID: 49B9D557-3055-41EF-AEC2-EE16CBDC64F2

**VERIFICATION**

I, Xiaoquan Dai, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Xiaoquan Dai

DocuSign Envelope ID: D6E4AD2F-7FE2-41AA-8199-B52DFE1C6E3D

## VERIFICATION

I, Jiancheng Chen, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Jiancheng Chen

Jiancheng Chen

陈建成 jiancheng chen

DocuSign Envelope ID: A0E4CB9F-38D4-44E9-B9E4-C7EE7C68D6AC

## VERIFICATION

I, Wanwan Li, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

李弯弯 Wan Wan Li

Wanwan Li

Wanwan Li

DocuSign Envelope ID: 669FA492-D6A1-42B3-A768-23A7E789B194

**VERIFICATION**

I, Feng Yan, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL012, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Feng Yan

Feng Yan

DocuSign Envelope ID: 7E060550-5E77-4CED-951D-E3B07B8D8112

## VERIFICATION

I, Li Jiang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL016, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Li jiang Li Jiang 姜丽

Li Jiang

DocuSign Envelope ID: 1A58B0C1-7B51-4611-97E3-D795BC356698

# VERIFICATION

I, Sicheng Zhan, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL016, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Sicheng Zhan

DocuSign Envelope ID: 3C21B320-C109-4011-ADA7-240D7C530D61

**VERIFICATION**

I, Yulan Chen, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL016, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Yulan Chen Yulan Chen

Yulan Chen

ocuSign Envelope ID: A99ADA8C-AD0C-47E4-935E-BD70E0F8BCE2

## VERIFICATION

I, Jun Zeng, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL016, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Zeng Jun Zeng Jun 曾军

Jun Zeng

# VERIFICATION

I, Di Tang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL016, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Di Tang

Tang

DocuSign Envelope ID: 5518DAE7-100C-410F-8762-7739D6A0ABC7

**VERIFICATION**

I, Fang Ding, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Ding Fang Ding Fang 丁芳

Fang Ding

DocuSign Envelope ID: 695098EA-FB5D-4C9B-9473-1E6BD33480D9

## VERIFICATION

I, Yuan Yuan, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Yuan Yuan

Yuan Yuan

Yuan Yuan

苑媛

DocuSign Envelope ID: 8003E74D-B31A-40EF-AC76-B97337291527

**VERIFICATION**

I, Jialin Hu, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Hu Jialin Hu Jialin 胡嘉林
_______________________
Jialin Hu

without waiver of same, denied.

218684072v6

# VERIFICATION

I, Di Tang, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Di Tang

Tang Di

DocuSign Envelope ID: 67E4F9D8-68E2-4B71-905B-403960904222

**VERIFICATION**

I, Wai Ying, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Wai Ying
Wai Ying

Wai Ying.

DocuSign Envelope ID: 9BBEE656-56AD-4F3F-9514-9E6441F40149

# VERIFICATION

I, Xiangdong Zhu, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Xiangdong Zhu

Zhu xiang dong

DocuSign Envelope ID: C1C9D75D-DEE3-4440-93BF-A5C8EA009C40

# VERIFICATION

I, Jiaxiang Lu, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Jiaxiang Lu Jiaxiang Lu 陆加祥

Jiaxiang Lu



DocuSign Envelope ID: DF146606-F07F-4340-9473-DFC46E245B70

## VERIFICATION

I, Aiguo Luo, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Aiguo Luo



DocuSign Envelope ID: A694B8FD-FC40-4BA3-8D8F-CA3DEF781770

## VERIFICATION

I, Chao Xu, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Xu Chao Xu Chao 许超

Chao Xu

DocuSign Envelope ID: 7636FDBD-0DD3-4F2C-A1DF-9C925E91F71A

## VERIFICATION

I, Xiaomin Fan, verify that I have read the foregoing Responses and Objections to the First Set of Request for Production of Documents, First Set of Interrogatories, and First Set of Request for Admissions of Alleged Debtor WALL017, LLC and that the answers contained therein are true and correct to the best of my knowledge, information and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2020

Xiaomin Fan Xiaomin Fan

Xiaomin Fan

# EXHIBIT "D"

**Huber, Amy M.**

|  |  |
|---|---|
| **From:** | jou nguyen-chen.com <jou@nguyen-chen.com> |
| **Sent:** | Monday, July 13, 2020 6:34 PM |
| **To:** | Packman, Stephen |
| **Cc:** | Joyce Lindauer; Garcia, Jorge |
| **Subject:** | [EXT MAIL] Re: Wall |

Joyce,

Please click the below DropBox web link and download the documents in response to the Alleged Debtors's Request for Production of Documents, which are being produced on rolling basis.

[redacted]

Jiangang "James" Ou
Attorney at Law

Nguyen & Chen, LLP
11200 Westheimer Suite 120
Houston, Texas 77042
(832)767-0339
(832)767-0669 (fax)
jou@nguyen-chen.com

CONFIDENTIALITY NOTICE: The information in this electronic message may be privileged and confidential and is intended for the use of the individual or entity named above. If you are not the intended recipient, you are on notice that any unauthorized disclosure, copying, distribution, or taking of any action in reliance on the contents of this message is prohibited.

On Jul 11, 2020, at 1:32 PM, Packman, Stephen <spackman@archerlaw.com> wrote:

Joyce:

Per our call yesterday, we will look over the alleged debtors' discovery responses again and advise what objections we have to those responses. If we cannot resolve those issues early next week, we will ask the Court to intervene. We categorically disagree with your statement yesterday during our call that the alleged debtors' financial records are irrelevant to these proceedings. Based upon defenses asserted by the alleged debtors those document are highly relevant. If the alleged debtors have no corporate or financial records, then that needs to be stated in your responses. We find that hard to believe since the alleged debtors have asserted in this litigation that the alleged debtors are in fact bona fide separate companies with assets and liabilities. Perhaps that is not the case?

James will begin production of documents to you by Petitioning Creditors on a rolling basis on Monday.

If you wish to convey any settlement offers, please convey them to me and James in writing.

Thanks.

**Huber, Amy M.**

> Begin forwarded message:
>
> From: Jiangang Ou <jou@nguyen-chen.com<mailto:jou@nguyen-chen.com>>
> Subject: Re: Wall
> Date: July 29, 2020 at 8:22:49 AM CDT
> To: Joyce Lindauer <joyce@joycelindauer.com<mailto:joyce@joycelindauer.com>>
> Cc: Stephen Packman <spackman@archerlaw.com<mailto:spackman@archerlaw.com>>, Jorge Garcia <jgarcia@archerlaw.com<mailto:jgarcia@archerlaw.com>>
>
> Joyce,
>
> Here is the first supplemental production: [redacted]
>
> Please let me know immediately should you have any problem in viewing or downloading same.
>

>
> Jiangang "James" Ou
> Attorney at Law
>
> Nguyen & Chen, LLP
> 11200 Westheimer Suite 120
> Houston, Texas 77042
> (832)767-0339
> (832)767-0669 (fax)
> jou@nguyen-chen.com<mailto:jou@nguyen-chen.com>
>
> CONFIDENTIALITY NOTICE: The information in this electronic message may be privileged and confidential and is intended for the use of the individual or entity named above. If you are not the intended recipient, you are on notice that any unauthorized disclosure, copying, distribution, or taking of any action in reliance on the contents of this message is prohibited.
>
>
>
> On Jul 13, 2020, at 5:34 PM, jou [redacted] <jou@nguyen-chen.com<mailto:jou@nguyen-chen.com>> wrote:
>
> Joyce,
>
> Please click the below DropBox web link and download the documents in response to the Alleged Debtors's Request for Production of Documents, which are being produced on rolling basis.
>
> [redacted]
>
> Jiangang "James" Ou
> Attorney at Law
>
> Nguyen & Chen, LLP
> 11200 Westheimer Suite 120
> Houston, Texas 77042
> (832)767-0339
> (832)767-0669 (fax)
> jou@nguyen-chen.com<mailto:jou@nguyen-chen.com>
>
> CONFIDENTIALITY NOTICE: The information in this electronic message may be privileged and confidential and is intended for the use of the individual or entity named above. If you are not the intended recipient, you are on notice that any unauthorized disclosure, copying, distribution, or taking of any action in reliance on the contents of this message is prohibited.

>
>
>
> On Jul 11, 2020, at 1:32 PM, Packman, Stephen <spackman@archerlaw.com<mailto:spackman@archerlaw.com>> wrote:
>
> Joyce:
>
> Per our call yesterday, we will look over the alleged debtors' discovery responses again and advise what objections we have to those responses. If we cannot resolve those issues early next week, we will ask the Court to intervene. We categorically disagree with your statement yesterday during our call that the alleged debtors' financial records are irrelevant to these proceedings. Based upon defenses asserted by the alleged debtors those document are highly relevant. If the alleged debtors have no corporate or financial records, then that needs to be stated in your responses. We find that hard to believe since the alleged debtors have asserted in this litigation that the alleged debtors are in fact bona fide separate companies with assets and liabilities. Perhaps that is not the case?
>
> James will begin production of documents to you by Petitioning Creditors on a rolling basis on Monday.
>
> If you wish to convey any settlement offers, please convey them to me and James in writing.
>
> Thanks.
>
>
>

# EXHIBIT "E"

DocuSign Envelope ID: 57111D15-556D-41AE-8287-98C004C0B0BB


## AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated July 28, 2018, and is between Zeng Jun (Passport No: [redacted]), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

### ARTICLE ONE

### The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000 of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $ 100,000 - One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent ( 10 %) per annum commencing on August 1st, 2018, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after August 1st, 2019. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of August 1st, 2020. Sums not paid by such times, shall bear interest at the rate of Twelve percent ( 12 %) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

DocuSign Envelope ID: 5741D15-556D-41AE-8287-98C0040DB9BB Case 20-31131-hdh7 Doc 294-5 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 6 of 88

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

### Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 016, LLC<br>c/o Tim Barton<br>1755 Wittington Place, Suite 340<br>Dallas, TX 75234<br>tbarton@jmjdevelopment.net<br>972-385-9934 (office) |
| TO CO-LENDER: | Zeng Jun<br>Room 232, No.21 Er Wei Rd., Shen He District,<br>Shenyang City, Liao Ning Province, China<br>zjun2@126.com<br>(86)13704272071 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Zeng Jun
863965F351CA495

**"BORROWER"**

WALL 016, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

# Wall016, LLC

August 6, 2018

Zeng Jun
Passport Number: E21730486
Room 232, No.21 Er Wei Rd., Shen He District,
Shenyang City, Liao Ning Province, China
zjun2@126.com
(86) 13704272071

Dear Zeng Jun:

This letter will serve as confirmation by Wall016, LLC that we have received the amount of USD 100,000.00 by wire transfer into our account at Wells Fargo Bank on August 2, 2018.

The loan proceeds stated above will be paid with interest to the original sending account in accordance with the time, terms and conditions of the Loan Agreement.

Please contact the undersigned immediately if you have any questions regarding this receipt.

Sincerely,
Wall016, LLC

By: Timothy Barton
President of Carnegie Development LLC
The Managing Member of Wall016 LLC

**已成功提交银行处理，请您准确记录业务编号（TT开头），以便核实交易状态，后续银行工作人员可能会与您联系**

电子银行交易序号[redacted]6279

业务编号：[redacted]1656

扣款账户：长城电子借记卡[redacted]*2192长城电子借记卡 辽宁

汇款币种：美元

收款银行SWIFT代码：WFBIUS6SXXX

收款银行全称：WELLS FARGO BANK, N.A.

收款人名称（英文或拼音）：Tim Barton

收款人账号：[redacted]2748

收款人详细地址（英文或拼音）：13901Midway Rd Suite 102,LB243Dallas,TX75244(PH)972-385-9934

汇款人名称：李百贺

汇款人名称（英文或拼音）：LI BAIHE

汇款人地址（英文或拼音）：No.201Xingsheng Street,Xinglongtai Dis,Panjin,Liaoning,CHINA

汇款人邮政编码：[redacted]4114

汇款人联系电话：[redacted]1457

钞/汇：现汇

汇款金额：28,000.00

基准费用：341.49 （手续费191.49 电讯费150.00）

优惠后费用：307.34 （手续费172.34 电讯费135.00）

国内外费用承担方式：SHA 共同承担

付费币种：人民币元

给收款方的汇款附言：short travel,deposit,Zeng Jun

收款人常驻国家（地区）：美国

汇款用途：其他私人旅行

汇款用途详细说明：美国西部旅游押金

跨境汇款资金来源承诺：本人确认本笔汇出汇款的资金来源于购汇，且汇款用途购汇用途一致，原《个人购汇申请书》填报时如有不一致处已进行修改。

WALL016-JUN ZENG-0010

汇款方式：快速汇款（中银全球智汇）

中银全球智汇，快速汇款，收费透明，进程可见

是否保证全额汇至收款行：否

**中国建设银行网上银行外汇汇款电子回单**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 凭证号 | [redacted]7137 | 日期 | 2018-07-31 | 金额 | **24,060.00** | 币种 | 美元 |
| 付款人 | 姓名地址 | wanghuimin No.2029,Xinglonggou Village,Jianping Xian,Liaoning Pro vince ChaoYang CHINA | | 收款人 | 姓名地址 | Tim Barton 13901 Midway Rd Sui te 102,LB243Dallas,TX75244 (PH)972-3 85-9934 Dallas USA | |
| | 账 号 | [redacted]2 589 | | | 账 号 | [redacted]27 48 | |
| | 开户行 | 中国建设银行股份有限公司 | | | 开户行 | WELLS FARGO BANK, N.A. | |
| 收款人SWIFT代码 | WFBIUS6SXXX | 收款人开户行地址 | 420 MON #TGOMERY STREET SAN FRANCISCO,CA UNI #TED STATES OF AMERICA | | | | |
| 备注 | | | | 附言 | Short travel,deposit,Zeng Jun | | |

**重要提示：本回单不作为收付方交易确认的最终依据。**
您可登录个人网上银行，通过我的账户->更多服务->验证电子凭证菜单，输入凭证号验证回单真实性。

WALL016-JUN ZENG-0012

A confirmation email will be sent to you soon. The Confirmation Number verifies that funds have been submitted to the recipient.

You may print this page for reference purposes

| | |
|---|---|
| Confirmation Number: | 47140196 |
| From: | Regular Savings - 9651 : Avail. Bal $46,379.17 |
| To: | YIDING (Chase Bank) |
| Delivery speed: | 3 Business Days |
| Delivery method: | ACH |
| Amount: | $37,070.00 |
| Fee: | $3.00 |
| Frequency: | One time on ... |
| Start on date: | 09/27/2018 |
| Estimated arrival date: | 10/02/2018 |

Make Another Transfer

What can I do?

Obtain your confirmation number and print a copy

Make another transfer

More information about transfers

**Date : 7/1/2020 7:32:16 AM**
**From : "曾军"**
**To : shouhouusa@yding.cn**
**Subject : JMJ发给我的邮件**
**Attachment : Message from Gov Gregg Abbott;Latest update on the bankruptcy petitions filed by Michael FU representing some of you as;Wall016 LLC - Loan Forbearance and extension;\;Recorded message from Michael FU's lawyer, saying, how Michael FU got the rights from all the lenders;Re: Conference Call;Re: Conference Call;JMJ Project Updates;RE: Conference Call Update;CONFIDENTIAL: WALL LENDERS CONFERENCE CALL Tuesday 7 January 2020 9:00am CHINA STANDARD TIME;RE: Zeng Jun asking JMJ to follow the contract terms;RE: Zeng Jun asking JMJ to follow the contract terms;Zeng Jun asking JMJ to follow the contract terms;RE: Re:Negated Option to Convert-股权转换即将关闭;Negated Option to Convert-股权转换即将关闭;Wall016 - Zeng Jun- $100k;Message from JMJ- JMJ的一封信;Letter from JMJ, 来自JMJ的一封信;**

Date : 3/28/2020 12:10:15 AM
From : "Murugan Venkat"
To : "Murugan Venkat" , "Saif Sachwani"
Cc : "Tim Barton"
Subject : "Stay Home" order in Dallas and the update on the meeting with the plaintiff's lawyers on 19th March 2020

To

All Wall Lenders;

Please be advised that on Sunday 22nd March 2020, the Dallas County Judge Clay Jenkins issued a countywide shelter-in-place order, marking the most expansive action yet from a Texas official to combat the new corona virus continuing to spread across the state https://www.kbtx.com/content/news/Dallas-County-orders-residents-to-shelter-in-place-as-coronavirus-cases-there-spread-569014421.html

The "Stay Home Stay Safe" order, effective as of 11:59 p.m. on March 23, will continue through April 3. And it comes hours after Gov. Greg Abbott declined to issue a statewide shelter-in-place, though the state's top elected official noted he would applaud local leaders if they decided to take more sweeping actions for their jurisdictions. The Dallas County Judge Clay Jenkins further said that he expected his authority to keep the order in place would extend beyond April 3, if necessary.

As such, our offices remain closed per state and federal guidelines due to Corona virus pandemic.

Meeting on 19th March 2020 to finalize the structure and procedures required to effectuate payments Chinese lenders. On 19th March 2020, Jamyang, the Chinese interpreter traveled from Los Angeles, California to Texas for a meeting with plaintiff's attorney. Mr. Barton, Steve Wall and Jamyang risked their lives and drove for several hours from Dallas to Houston, especially when Jamyang was exposed so much in his flight from LA to Dallas, and was in the car from Dallas to Houston, along with Mr. Barton and Steve Wall.

The Houston attorneys representing the plaintiffs were present, while the attorneys from the New York law firm cited Corona virus as the reason for nonattendance.

The purpose of the meeting is to finalize the structure and procedures required to effectuate payments to the Chinese lenders.

While the plaintiff's lawyers were in agreement with our legal team, regretfully Michael Fu's behavior was so belligerent displaying fits of anger, and rage that his attorneys were unable to contain the situation as Michael Fu spewed a litany of profanities directed at the attorney representing the Wall entities. Michael Fu screamed and yelled at our lawyer and us, demanding the lawyer to do what he says. He yelled many bad words and said to do what he says or get out. The meeting was ultimately terminated by the lawyers before any of the parties can discuss RESOLUTION.

It is apparent that Michael Fu who has already been paid millions of dollars by the Wall entities continues to BLOCK any and all actions by US that would result in satisfaction of loans to Wall Lenders.

However, we continue to do our best and we will update as soon as the situation improves

Sincerely

至

所有墙贷款人;

请注意，在2020年3月22日星期日，达拉斯县法官克莱·詹金斯(Clay Jenkins)发布了一项全县范围内的就地庇护令，这是德克萨斯州官员迄今为止为打击新的日冕病毒而采取的最广泛的行动https: //www.kbtx.com/content/news/Dallas-County-orders-residents-to-shelter-in-place-as-coronavirus-cases-there-spread-569014421.html

“保持家庭安全”命令于下午11:59生效。3月23日将持续到4月3日。在州长格雷格·雅培(Greg Abbott)拒绝发布全州范围内的庇护所数小时后，尽管该州最高当选官员表示，他将为当地领导人决定采取更多全面行动表示赞赏。为他们的管辖范围。达拉斯县法官克莱·詹金斯进一步表示，他希望保持命令到位的权限将在必要时延长至4月3日之后。

因此，由于电晕病毒大流行，我们的办公室根据州和联邦指南保持关闭状态。

于2020年3月19日举行会议，以最终确定实现中国贷方付款所需的结构和程序。2020年3月19日，中国口译员Jamyang从加利福尼亚州洛杉矶到达德克萨斯州，与原告律师会晤。巴顿先生，史蒂夫·沃尔和詹扬冒着生命危险，从达拉斯到休斯敦开车了几个小时，尤其是当詹扬在从洛杉矶飞往达拉斯的飞行中被暴露得如此之多，并与达拉斯先生一起从达拉斯到休斯敦的汽车中。巴顿和史蒂夫·沃尔。

代表原告的休斯顿律师在场，而纽约律师事务所的律师则以电晕病毒为原因。

会议的目的是最终确定向中国贷方付款的结构和程序。

当原告的律师与我们的法律团队达成协议时，令人遗憾的是，迈克尔·傅的行为如此好战，表现出愤怒和怒火，以至于他的律师无法遏制这种情况，因为迈克尔·傅吐出了一连串的亵渎语直指代表华尔街的律师实体。傅伟（Michael Fu)对我们和我们的律师大喊大叫，要求律师按照他说的去做。他大声喊了许多坏话，说了做他说的话或滚蛋。会议最终被律师终止，随后任何一方都可以讨论决议。

显然，已经由Wall实体支付了数百万美元的Michael Fu将继续阻止美国采取的所有行动，以使向Wall Lenders的贷款得到满足。

但是，我们会继续努力，并会在情况改善后立即进行更新

真诚的

Zhì

suǒyǒu qiáng dàikuǎn rén;

qǐng zhùyì, zài 2020 nián 3 yuè 22 rì xīngqírì, dálāsī xiàn fǎguān kè lái·zhānjīnsī (Clay Jenkins) fābùle yī xiàng quánxiàn fànwéi nèi de jiù dì bìhù lìng, zhè shì dé kè sà sī zh

"bǎochí jiātíng ānquán" mìnglìng yú xiàwǔ 11:59 shēngxiào. 3 yuè 23 rì jiāng chíxù dào 4 yuè 3 rì. Zài zhōu cháng géléi gé·yǎpéi (Greg Abbott) jùjué fābù quán zhōu fànwéi nèi de l

Yīncǐ, yóuyú diàn yūn bìngdú dà liúxíng, wǒmen de bàngōngshì gēnjù zhōu hé liánbāng zhǐnán bǎochí guānbì zhuàngtài.

Yú 2020 nián 3 yuè 19 rì jǔxíng huìyì, yǐ zuìzhōng quèdìng shíxiàn zhōngguó dàifāng fùkuǎn suǒ xū de jiégòu hé chéngxù.2020 Nián 3 yuè 19 rì, zhōngguó kǒuyì yuán Jamyang cóng ji

Dàibiǎo yuángào de xiūsīdùn lǜshī zàichǎng, ér niǔyuē lǜshī shìwù suǒ de lǜshī zé yǐ diàn yūn bìngdú wèi yuányīn.

Huìyì de mùdì shì zuìzhōng quèdìng xiàng zhōngguó dàifāng fùkuǎn de jiégòu hé chéngxù.

Dāng yuángào de lǜshī yǔ wǒmen de fǎlǜ tuánduì dáchéng xiéyì shí, lìng rén yíhàn de shì, màikè'ěr·fù de xíngwéi rúcǐ hàozhàn, biǎoxiàn chū fènnù hé nùhuǒ, yǐ zhìyú tā de lǜshī w

Xiǎnrán, yǐjīng yóu Wall shítǐ zhīfùle shù bǎi wàn měiyuán de Michael Fu jiāng jìxù zǔzhǐ měiguó cǎiqǔ de suǒyǒu [illegible] dànán.

Dànshì, wǒmen huì jìxù nǔlì, bìng huì zài qíngkuàng gǎishàn hòu lìjí jìnxíng gēngxīn

zhēnchéng de

Thanks & regards
Murugan Venkat

**Date : 12/25/2019 9:02:04 AM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Tim Barton" , "Hongpeng Lin"**
**Subject : CONFIDENTIAL: WALL LENDERS CONFERENCE CALL Tuesday 7 January 2020 9:00am CHINA STANDARD TIME**

Dear WALL Lenders,

We shall conduct a WALL LENDERS call on Tuesday, 7th January 2020 to provide an update on the pending lawsuit initiated by Michael Fu against the WALL companies.

As a result of this unexpected lawsuit by broker Michael Fu who is seeking additional commissions, all activities on the WALL companies are presently under review by litigation counsel, including the repayment of Lender loans and other related matters arising from this dispute with Michael Fu.

Please respond via email by January 3, 2010 that you will be participating on this Lenders call on January 7, 2020 and a CODE will be sent to you confirming that you shall join the Lenders call with Timothy L. Barton.

Accordingly, kindly email your reply to mvenkat@jmjdevelopment.net

**Thanks & regards**
**Murugan Venkat**

**Date : 1/7/2020 12:26:52 AM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Tim Barton" , "Hongpeng Lin"**
**Subject : JMJ Project Updates**
**Attachment : Lender U.pdf;**

Hello to every one

Please see the Project Status Update in the attachment

**Thanks & regards**
**Murugan Venkat**

# LENDER UPDATE

## 2019 Q4

PRESENTED
6TH JAN 2020 MONDAY



# WALL ENTITIES

Wall Entities
# LENDER UPDATE



The purpose of this document is to provide a 4th Quarter status update to the various lenders (the "Lenders") in the following single purpose entities ("SPE's"):

**WALL007, LLC**
----
Orchard Village
Fort Worth, TX
144 Acres

**WALL009, LLC**
----
Venus Ridge & Northstar
Venus, TX
100 Acres

**WALL010, LLC**
----
Lost Creek
Fort Worth, TX
170.44 Acres

**WALL011, LLC**
----
Khoury
Venus, TX
128 Acres

**WALL012, LLC**
----
Lyons Ranch Phase 1
Aledo, TX
332 Acres

**WALL016, LLC**
----
Lyons Ranch Phase 2
Aledo, TX
160 Acres

**WALL017, LLC**
----
Windmill Farms
Forney, TX
200 Acres

**WALL018, LLC**
----
Griffin
Venus, TX
157 Acres

**WALL019, LLC**
----
Bear Creek
Parker County, TX
100 Acres

## GENERAL BACKGROUND

During 2017 and 2018 the SPE's raised capital from the Lenders to acquire, entitle and develop the various parcels of land that are currently held by the respective SPE's. Following the closing and acquisition of the various parcels of land, we have set forth on a plan to work with the various city officials and engineers in an effort to plan, permit and secure the capital required to install the sewer, water, streets, sidewalks, green space, entry monuments, amenity features, etc. for each development.

Once these plans were created, we set out to secure various homebuilders in which to sell the finished single-family lots such that the homebuilders could start construction of the homes, and ultimately market and sell the homes to the ultimate homeowners. As these lots are sold, the cash proceeds are then used to pay off the construction lender, fees, interest expense, etc., and then ultimately, after all the obligations are paid, the net proceeds are used to pay back the Lenders.

Although each of the SPE's is at varying levels of development, all of the SPE's appear to be tracking with the initial Wall Entities development plans. The current status update for each of these SPE's is as follows:

WALL016-JUN ZENG-0020

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL007, LLC | ORCHARD VILLAGE | FORT WORTH, TX | 144 ACRES |

Orchard Village is a 144 +/- acre residential development located approximately 11 miles south of Downtown Fort Worth, Texas. The development Is located in one of the most desired submarkets in the Dallas-Fort Worth area.

Housing demand in the submarket remains stable as homebuyers flock to the top-rated schools while still desiring to remain close to major thoroughfares and employment hubs.

Following its acquisition in 2017, we commenced to plat the property into four separate and distinct phases. Following the city platting process, we then secured a contract and in 2018 the SPE sold an initial phase (approximately 330-lots) to Legend Homes, a national U.S. homebuilder.

At the present time, the grading activities are taking place for the entire development, and we have secured a second homebuilder contract to acquire lots in phase 1A and 3 and build a "for rent" housing product for approximately 512 homes. Plans for these lots have already been approved by the city of Fort Worth, and a pre-construction meeting has been requested and is pending approval. The final plat is presently being revised by the Wall Entities engineer and surveyor with respect to a "zero-lot line" zoning per the builder.

Once these items are submitted, it is estimated that the process will take approximately two weeks for the Community Facilities Agreement to be approved and a pre-construction meeting to take place. Following this meeting, construction of the lots will commence, and it is estimated that it will take approximately 10-months to complete the lots, weather permitting.

As the lots are delivered to the home builder, they will start construction immediately, and are scheduled to deliver the finished homes at a rate of 50 homes per quarter, or about 2 1/2 years to complete the development.

The final phase of 1B will be 131-lots that will be developed and ultimately sold to a homebuilder. We have received offers and proposed contracts by two U.S. National homebuilders ... DR Horton and Lennar Homes ... and we are presently evaluating its options.




PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | ✓ | | |
| 9 | Preliminary Design - Water | ✓ | | |
| 10 | Preliminary Design - Power | ✓ | | |
| 11 | Preliminary Design - Drainage | ✓ | | |
| 12 | Preliminary Design - Paving | ✓ | | |
| 13 | Preliminary Design - Platting | ✓ | | |
| 14 | Preliminary Design - Grading | ✓ | | |
| 15 | Records to the bank | ✓ | | |
| 16 | Final Design / Permit | ✓ | | |
| 17 | Title Insurance | ✓ | | |
| 18 | Closing | ✓ | | |
| 19 | Construction | | ✓ | |
| 20 | Sale of paper lots | | ✓ | |

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL009, LLC | VENUS RIDGE & NORTHSTAR | VENUS, TX | 100 ACRES |

Venus, Texas is located approximately 45-minutes southwest of Dallas, and about 30-minutes southeast of Fort Worth and has an unemployment rate of 3.5%, and is predicted to have job growth in excess of 40% over the next 10-years, which is well above the national average of 33%.

We have assembled a significant holding of property in the Venus market as a result of the popular Venus Independent School District, which has an elementary, middle and high school all within a 1-mile distance from the two sites.

Venus Ridge was the first property to be acquired in Venus, and as such, is the most developed of all the Wall projects. Following its acquisition of the Venus Ridge land in 2017, we set out to plan, entitle, plat and develop the 33 single family estate lots. As the lots were being developed, we secured a home builder (Carnegie Homes) to commit to purchase all 33 of the lots. As the lots have been sold to Carnegie Homes in 2018 and 2019. The sales proceeds have been used to pay off the construction loan which was secured to develop the lots. As of the 3rd quarter, Carnegie Homes has sold 20 out of the total 33 homes.

Northstar was an additional land assemblage. Although divided into three phases, the Phase 1 plans have already been approved by the city of Venus and the special water district. We have already held pre-construction meetings and plans have been issued for construction. The final plat for Phase 1 has been approved by the City Council and will be recorded once the final construction has been completed.

In addition to the on-site activities, offsite sanitary sewer plans are currently being reviewed by the city and are pending approval. The final approval of these plans will not hold back construction of Phase 1 although final acceptance will not be granted until the offsite sewer has been completed.

With respect to the lot sales, we have solicited offers from various homebuilders and it is presently negotiating final purchase and sale agreements with Carnegie Homes and Lillian Homes.




PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | ✓ | | |
| 9 | Preliminary Design - Water | ✓ | | |
| 10 | Preliminary Design - Power | ✓ | | |
| 11 | Preliminary Design - Drainage | ✓ | | |
| 12 | Preliminary Design - Paving | ✓ | | |
| 13 | Preliminary Design - Platting | ✓ | | |
| 14 | Preliminary Design - Grading | ✓ | | |
| 15 | Records to the bank | ✓ | | |
| 16 | Final Design / Permit | ✓ | | |
| 17 | Title Insurance | ✓ | | |
| 18 | Closing | ✓ | | |
| 19 | Construction | | ✓ | |
| 20 | Sale of paper lots | | ✓ | |

WALL016-JUN ZENG-0022

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| **WALL010, LLC** | **LOST CREEK** | **FORT WORTH, TX** | **170.44 ACRES** |

Lost Creek is located southwest of Fort Worth with easy access to I-20. We have finished the Master Plan for the Project and are working on utility services for the project.

The project is challenging, but we are diligently working on getting access to be approved by the city and Fire Marshall. Additionally, work has been done to acquire access which would meet city regulations.

Once city approvals can be met, there are many home builders who have shown interest.




### SAMPLE EXTERIORS





### PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | ✓ | | |
| 9 | Preliminary Design - Water | ✓ | | |
| 10 | Preliminary Design - Power | ✓ | | |
| 11 | Preliminary Design - Drainage | ✓ | | |
| 12 | Preliminary Design - Paving | ✓ | | |
| 13 | Preliminary Design - Platting | ✓ | | |
| 14 | Preliminary Design - Grading | ✓ | | |
| 15 | Records to the bank | ✓ | | |
| 16 | Final Design / Permit | ✓ | | |
| 17 | Title Insurance | ✓ | | |
| 18 | Closing | ✓ | | |
| 19 | Construction | | ✓ | |
| 20 | Sale of paper lots | | ✓ | |

WALL016-JUN ZENG-0023

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL011, LLC | KHOURY | VENUS, TX | 128 ACRES |

This Project is ongoing. Two master plans have been completed and the utilities are being negotiated with the city. Negotiations are also underway for support from the city for utility costs and the conversation is moving positively.

There continues to be high residential demand in the area and purchase contracts from home builders are being negotiated.



SAMPLE EXTERIOR AND INTERIOR





PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | ✓ | | |
| 9 | Preliminary Design - Water | ✓ | | |
| 10 | Preliminary Design - Power | ✓ | | |
| 11 | Preliminary Design - Drainage | ✓ | | |
| 12 | Preliminary Design - Paving | ✓ | | |
| 13 | Preliminary Design - Platting | ✓ | | |
| 14 | Preliminary Design - Grading | ✓ | | |
| 15 | Records to the bank | ✓ | | |
| 16 | Final Design / Permit | ✓ | | |
| 17 | Title Insurance | ✓ | | |
| 18 | Closing | ✓ | | |
| 19 | Construction | | ✓ | |
| 20 | Sale of paper lots | | ✓ | |

WALL016-JUN ZENG-0024

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL012, LLC | LYONS RANCH PHASE 1 | ALEDO, TX | 332 ACRES |

We have contracted to acquire approximately 469 acres +/- of land in the popular Eastern Parker County area, within the City of Fort Worth Extra-Territorial Jurisdiction ("ETJ"), for the Development of a Single-Family Subdivision. The Subdivision will be built in four total phases, and upon full build-out, will consist of up to 300-Single-Family Estate Lots and will be named "Lyons Ranch." Lyons Ranch is located at the intersection of White Settlement and Farmer Road, just north of Interstate 20.

Lyons Ranch is currently in the preliminary stage at the city of Fort Worth entitlement process. Phase 1 of the development will take place on approximately 103-acres and consist of a total of 61-single family estate lots. In addition to the development of the streets, water, lighting, wayfinding, utilities, etc., phase 1 will also consist of the development of entryway features, signage, amenity lakes, detention facilities and green space. It is envisioned that Phase I will commence construction following the final approval of the Preliminary Plat, which will require the submission of the Integrated Storm Water Management (ISWM) and Traffic Impact Assessment (TIA), and the preliminary engineered plans and specifications.

The ISWM and TIA are presently being revised by our engineers per the comments received by the city of Fort Worth. Once the studies have been approved, then the preliminary plat can be submitted for review by the Fort Worth Planning and Zoning Committee. Once the preliminary plat is approved, then the project will go into final design phase and approval by the city of Fort Worth and Parker County. The Phase 1 Lots are projected to break ground during Q2 of 2020.



PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | | ✓ | |
| 9 | Preliminary Design - Water | | ✓ | |
| 10 | Preliminary Design - Power | | ✓ | |
| 11 | Preliminary Design - Drainage | | ✓ | |
| 12 | Preliminary Design - Paving | | | ✓ |
| 13 | Preliminary Design - Platting | | ✓ | |
| 14 | Preliminary Design - Grading | | ✓ | |
| 15 | Records to the bank | | | ✓ |
| 16 | Final Design / Permit | | | ✓ |
| 17 | Title Insurance | | | ✓ |
| 18 | Closing | | | ✓ |
| 19 | Construction | | | ✓ |
| 20 | Sale of paper lots | | | ✓ |

WALL016-JUN ZENG-0025

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL016, LLC | LYONS RANCH PHASE 2 | ALEDO, TX | 160 ACRES |

We have finalized easements for road and utility access for Lyons Ranch Phase 2. A water plant is being designed and permits for such is in process. The master plan has been completed. Once water permits and city permits are approved, construction will start the following quarter.



SAMPLE EXTERIOR AND INTERIOR





PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | | ✓ | |
| 3 | Offering and negotiations | | | ✓ |
| 4 | Due diligence | | | ✓ |
| 5 | Contract | | | ✓ |
| 6 | Escrow payment | | | ✓ |
| 7 | Appraisal | | | ✓ |
| 8 | Cost estimate | | | ✓ |
| 9 | Preliminary Design - Water | | | ✓ |
| 10 | Preliminary Design - Power | | | ✓ |
| 11 | Preliminary Design - Drainage | | | ✓ |
| 12 | Preliminary Design - Paving | | | ✓ |
| 13 | Preliminary Design - Platting | | | ✓ |
| 14 | Preliminary Design - Grading | | | ✓ |
| 15 | Records to the bank | | | ✓ |
| 16 | Final Design / Permit | | | ✓ |
| 17 | Title Insurance | | | ✓ |
| 18 | Closing | | | ✓ |
| 19 | Construction | | | ✓ |
| 20 | Sale of paper lots | | | ✓ |

WALL016-JUN ZENG-0026

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL017, LLC | WINDMILL FARMS | FORNEY, TX | 200 ACRES |

Negotiations are ongoing for access to utilities and permits from the city. We are revising the previous master plan to accommodate additional density.

After the road plan is approved and permits are released, construction will start the following quarter.




SAMPLE EXTERIOR AND INTERIOR





PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | | ✓ | |
| 4 | Due diligence | | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | | ✓ | |
| 9 | Preliminary Design - Water | | ✓ | |
| 10 | Preliminary Design - Power | | ✓ | |
| 11 | Preliminary Design - Drainage | | ✓ | |
| 12 | Preliminary Design - Paving | | ✓ | |
| 13 | Preliminary Design - Platting | | ✓ | |
| 14 | Preliminary Design - Grading | | ✓ | |
| 15 | Records to the bank | | ✓ | |
| 16 | Final Design / Permit | | | ✓ |
| 17 | Title Insurance | | ✓ | |
| 18 | Closing | | ✓ | |
| 19 | Construction | | | ✓ |
| 20 | Sale of paper lots | | | ✓ |

WALL016-JUN ZENG-0027

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL018, LLC | GRIFFIN | VENUS, TX | 157 ACRES |

The Project Master Plan is complete. We are waiting for new utility plan from the City. The City is active in creating a plan to support costs on infrastructure. We expect to have all predevelopment issues resolved by next quarter.



SAMPLE EXTERIOR AND INTERIOR





PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | ✓ | | |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | | ✓ | |
| 9 | Preliminary Design - Water | | ✓ | |
| 10 | Preliminary Design - Power | | ✓ | |
| 11 | Preliminary Design - Drainage | | ✓ | |
| 12 | Preliminary Design - Paving | | ✓ | |
| 13 | Preliminary Design - Platting | | ✓ | |
| 14 | Preliminary Design - Grading | | ✓ | |
| 15 | Records to the bank | | ✓ | |
| 16 | Final Design / Permit | | ✓ | |
| 17 | Title Insurance | ✓ | | |
| 18 | Closing | ✓ | | |
| 19 | Construction | | | ✓ |
| 20 | Sale of paper lots | | | ✓ |

WALL016-JUN ZENG-0028

| ENTITY NAME | PROJECT NAME | LOCATION | LAND DETAILS |
|---|---|---|---|
| WALL019, LLC | BEAR CREEK | PARKER COUNTY, TX | 100 ACRES |

Bear Creek was awarded full rights as a utility district and work is currently ongoing to get utility system in place.

There is strong demand from home builders and the project continues to garner interest as Bear Creek is part of the overall development that will open up the City of Aledo. There will be several more months of predevelopment before project start.



### SAMPLE EXTERIOR





### PROJECT STATUS | AS OF 2019 Q4

| # | DETAILS | COMPLETED | IN PROGRESS | NOT DUE YET |
|---|---|---|---|---|
| 1 | First site inspection | ✓ | | |
| 2 | Preliminary evaluation | ✓ | | |
| 3 | Offering and negotiations | ✓ | | |
| 4 | Due diligence | ✓ | | |
| 5 | Contract | ✓ | | |
| 6 | Escrow payment | | | ✓ |
| 7 | Appraisal | ✓ | | |
| 8 | Cost estimate | | ✓ | |
| 9 | Preliminary Design - Water | | | ✓ |
| 10 | Preliminary Design - Power | | | ✓ |
| 11 | Preliminary Design - Drainage | | | ✓ |
| 12 | Preliminary Design - Paving | | | ✓ |
| 13 | Preliminary Design - Platting | | | ✓ |
| 14 | Preliminary Design - Grading | | | ✓ |
| 15 | Records to the bank | | | ✓ |
| 16 | Final Design / Permit | | | ✓ |
| 17 | Title Insurance | ✓ | | |
| 18 | Closing | ✓ | | |
| 19 | Construction | | | ✓ |
| 20 | Sale of paper lots | | | ✓ |

As noted in this Lender Update, much activity and progress has taken place. However, much more is still to come. It is our belief that this update is self-explanatory, however, in the event that any Lender requires additional information, please feel free to contact a our representative by calling at 972-385-9934.

**13901 Midway Road**
Dallas, Texas 75244

Phone: 972.385.9934
Fax: 972.241.4484



This brochure contains various performance estimates, targets and/or projections that are based upon and subject to various assumptions made as of the date such estimates, targets and/or projections were developed. All estimates are unaudited and calculated on a pro forma basis. Estimates are provided for informational purposes only. While such estimates, targets and/or projections are believed to be reasonable approximations based upon available information, no guarantee or assurances can be provided as to their accuracy. Consequently, the inclusion of the estimates, targets and/or projections herein should not be regarded as any representation that such estimates, targets and/or projections will be achieved.

This brochure makes use of stock photography. Some photography is for illustrative purposes only and persons/renderings depicted are models/examples. They are representative in nature and subject to change.

**Date : 4/27/2020 4:09:28 AM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Saif Sachwani" , "Tim Barton"**
**Subject : Latest update on the bankruptcy petitions filed by Michael FU representing some of you as "Co-Lenders"**
**Attachment : Letter .docx;WALL011_.pdf;WALL012_.pdf;WALL016_.pdf;WALL017_.pdf;WALL007_.pdf;WALL009_.pdf;WALL010_.pdf;List of .txt;image001.png;**

Dear Lender

Please find the attached letter from the attorney representing the Wall entities, seeking to dismiss the series of involuntary bankruptcies filed in the court what Mr. Fu and Mr. Jang have organized recently.

Also, see the copies of the Bankruptcy petitions in the attachments, which gives the names and your address, as the petitioner

#20-31135-sgj7 for Wall011 LLC
#20-31136-hdh7 for Wall012 LLC
#20-31138-bjh7 for Wall016 LLC
#20-31139-hdh7 for Wall017 LLC
#20-31131-hdh7 for Wall007 LLC
#20-31133-sgj7 for Wall009 LLC
#20-31134-bjh7 for Wall010 LLC

This action is to stop our development progress and force us to sell the assets the Wall entities have.

This action if approved by the court will require us to sell the assets under duress of a court ordered sale and in the middle of the Virus forced crisis. This will certainly cause a loss for all of us.

In a sale the first money will pay the contraction loan and all legal cost that we have spent. The next funds will pay any other debt owed for construction.

They will also pay the court and real estate broker fee.

Then the law firm that Mr. Fu hired will take his 30% or what ever he is owed

Then what ever is left will pay back the loan to you

You will most likely never get your interest or original fund back.

If you see your name in the bankruptcy petitions, then we will consider you have joined Mr. Fu in this case and will be responsible for any damage it causes to all the lenders and the Wall company

It is important that you check your names in the bankruptcy petitions [attached]. If you see your name and have not signed with the lawyer to join this case, please contact us at once.

If you see you name and have not signed a letter with the Lawyer, then you need to tell us so we can remove your name

Once again Mr. Fu has his own interest before lender. He and Mr. Jang have put this in the Newspaper to harm us and this has damaged us very badly and hence we are not able to work and get funds for the project.

We wait for your reply email

**Thanks & regards**
**Murugan Venkat**

**From:** Joyce Lindauer
**Sent:** Friday, 24 April 2020 7:01 PM
**To:** Tim Barton;
**Subject:** Letter

Letter

**PLEASE NOTE OUR NEW ADDRESS IN DOWNTOWN DALLAS**

Case 20-31131-hdh7 Doc 294-5 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 33 of 88

JOYCE LINDAUER
Attorney at Law
And Mediator

Joyce Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street
Suite 500
Dallas, TX 75202
PH 972-503-4033
FAX 972-503-4034
CEL 214-957-8039

List of Petitioners in the Bankruptcy Case

Note: Please check the copies of the court filiings to check your names

Jun Li

Yunding Kang

Cunxiang Ji

Jin Wang

Peng Guo

Lin Zhou

Qu Chen

Kai Tian

Yijing Wu

Xuegeng Gong

Jin Wang

Weijia Kong

Heng Zhang

Hong Guo

Pei Guan

Yue Xu

Mai Ye

Chenchen Jiang

Qiuying Li

Ruinian Wu

Lin Zhou

Liying Yang

Yan Zhang

Wenjun Wang

Lan Ji

Ying Zhou

Lin Li

Li Jiang

Rufeng Ding

Cunxiang Ji

Lin Gao

Qiao Qin

Yue Zhang

Xiaodong Hao

Tianqing Song

Li Jiang

Weisi Wang

Xiaoquan Dai

Feng Yan

Heng Zhang

Ou Jiang

Jinzhe Wu

Yadan Liu

Wanwan Li

Wenjuan Yin

Jiancheng Chen

Yi Tang

Ying Zhang

Pengfei Dong

Kangying Mao

Yijing Wu

Li Jiang

Qin Chu

Yulan Chen

Sicheng Zhan

Pei Guan

Jingqiu Tang

Di Tang

Jun Zeng

Kui Wang

Yue Zhang

Jun Wang

Xiaomin Fan

Di Tang

Jialin Hu

Qin Chu

Jiaxiang Lu

Fuqing Chen

Hanjiang Fu

Aiguo Luo

Fang Ding

Xiangdong Zhu

Wai Ying

Yuan Yuan

Chao Xu

Guoqin Zhou

Yijing Wu

Case 20-31131-hdh7 Doc 294-5 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 38 of 88

**Date : 10/25/2019 11:00:42 PM**
**From : "Hongpeng Lin"**
**To : "zjun2@126.com"**
**Subject : Letter from JMJ, 来自JMJ的一封信**

**Greetings Jun Zeng**

**For and on behalf of Tim Barton, Chairman of the JMJ group of entities in Dallas, Texas, USA. We hope to find you in good health and prosperity. This letter is to provide you with an update on the steps we have taken to find resolution for the issues presented in reference to the loan you have provided. Please understand, communicating directly with you has been difficult and restricted due to the involvement of Michael Fu and his Chinese owned company, PIC. We appreciate and thank you for your support in our U.S. based projects. Over the past two years Our company has had extensive growth which we have happily welcomed. Through this period of growth, we have continued to progress in business and employment of qualified individuals to assist in the growth. The JMJ entities have worked diligently to prepare this summary for your knowledge and response.**

**The Lenders from 2017, were paid the interest for the first year, during 2018. During the first quarter of 2019, the Tax returns for 2018 were filed, at that time certain non-compliance issues were brought to our attention as well as the consequent penalty and the possible criminal prosecution. The compliance issues include but are not limited to,**

- **Tax withholding on the interest payment**
- **Sending the payments back to the same bank account where it came from.**

**These details were highlighted in each receipt we issued to you upon receiving the wire transfer from you.**

**Since April 2019, the following steps have been put in place in order to proceed without having additional compliance issues.**

- **All funds have been kept in a JMJ entity bank account so as to send the appropriate wire-transfer to each lender accordingly.**
- **We needed to communicate with each of the lenders regarding the Mandatory Tax withholdings, therefore we asked Michael Fu and his staff to communicate with all the lenders to explain the various options.**

**We understand the value of hard-earned money for all the Chinese lenders. Hence, we would like to help as much as we can within the legal framework possible. Between the months of April and June, the money was maintained in the JMJ entity bank accounts. During the exponential growth of the company during this same time period, funds were needed to finance our growth. In June one of our managers, travelled to Singapore as well as to Hong Kong to engage the employees of PIC since we had not received sufficient communication from them on behalf of the Chinese Lenders. Since April 2019 and until now, Michael Fu and his company, PIC, have been telling us that most of the Chinese Lenders, cannot receive the funds back into the same bank account the initial wires had been sent out from. Michael Fu and his company also provided information stating that withholding of taxes was not acceptable. Since then, Michael Fu has engaged an attorney and we began working with his attorney. In the first week of September 2019, Michael Fu signed a non-binding agreement and since then, he has been reaching out to you. During the months of April through June of 2019 we did not see any progress on the part of Michael Fu. He also stopped us in reaching out to you directly and then made the decision to give up in communicating with each of the Chinese Lenders.**

In the past few weeks, Michael Fu has informed us that it is becoming more expensive for him to be our agent in China. Since 2018, the JMJ entities have paid US$ 1.8 millions in commissions to Michael Fu and his company. He has invested a fraction of his commission in the name of his employees, family members, etc. where we are paying interest. Therefore, he has made a significant amount of funds during his tenure as our Chines Agent.

As a summary, here is what we would like to help, each and every one of you:

During the mediation process, which some of the Chinese lenders participated in about 3-4 months ago, Three different options were decided upon.

- Option One is to comply with the legal framework by doing the following,
  - Provide Interest payments after deducting tax withholdings
  - Interest payments must be sent to the same bank account where it originated from.
    - Discharge the loan document [if it is past 2 years]
    - Provide the copy of the Original Wire Transfer
    - Provide the tax ID with the IRS/USA
    - We are ready to send the interest within 30 days, from the date of verification of all the documents
    - In the following 90 days from the payment of Interest, we will remit the loan amount
- Option Two
  - Since shares in a publicly traded company are recognized as negotiable throughout the world, you can convert the loan into shares for which, we provide the buy-back guarantee and you can get paid through this process as per rules
- Option three
  - We can consult the experts and can customize a resolution to meet your individual needs. In this option we are asking you to pay 10% towards the expenses.

Since this is our first attempt to communicate with you directly, we hope you can understand we are working diligently to help and assist in resolving any issues with each of the Chinese Lenders. We are happy to answer all your questions and would like to provide you the best service possible. Two of our employees in our corporate office in Dallas, TX are originally from China and are available to communicate with you at your convenience. We believe there will not be any issues in our direct communications with you going forward. Please provide us with your speedy response.

Sincerely

Manager [Asia operations]
JMJ Group of Entities
Dallas, TX

**Translation in Chinese is for easy understanding of our communication and for any error in translations, English version is binding and legal**

**中文翻译是为了易于理解我们的沟通，如果翻译中有任何错误，英语版本具有约束力和法律效力**

您好，

谨代表美国德克萨斯州达拉斯的**JMJ**集团主席**Tim Barton**先生，我们希望您身体健康，生意兴荣。 这封信是为了向您提供我们在解决贷款相关问题的进展。 请您理解，由于**Michael Fu**以及其中国公司逸鼎的介入，与您的直接沟通变得异常困难与艰辛。我们十分感激与感谢您对我们在美国项目的支持。 在过去的两年中，我们公司取得了长足的发展，我们对此感到十分高兴。

在这期间，我们继续扩展我们的业务以及雇佣合适的人才以协助我们公司成长。 **JMJ**集团特别准备这份摘要给您知晓与响应。

自**2017**年起开始计算，借款方于**2018**年支付了第一年的利息。 **2018**年的税表于**2019**年的第一季度提交， 我们注意到一些不符合法规的问题以及可能面临的处罚与刑事诉讼。 这些问题包括但不限于以下几点：

- 利息的预扣税
- 将付款发回原账户

这些在我们发给您的收据上都有注明。

自**2019**年**4**月份以来，我们已经采取以下措施来避免将来出现同样的问题。

- 所有资金已经放在**JMJ**集团的银行账户中，以便可以电汇给各个贷款方
- 我们需要向每个贷款方沟通预扣税的问题， 因此我们请**Michael Fu**及其工作人员联系每个贷款方进行沟通，解释各种选择。

我们了解以及明白所有中国贷款方的血汗钱是十分重要的。 因此，我们希望在法律框架内尽可能多的提供帮助。 从**4**月到**6**月之间，这笔钱存在**JMJ**集团的银行账户中。 于此同时，我们公司在快速增长，而大量的资金也需要来协助我们增长。由于从逸鼎没有收到有效的贷款人的沟通，我们的一位经理在**6**月份的时候前往新加坡和香港与逸鼎的员工进行面谈。 自**2019**年**4**月份至今，**Michael Fu**和他的公司逸鼎一直在告诉我们，大多数中国贷款人无法将资金退回到原始汇款账户中。**Michael Fu**与他的公司还声称不接受预扣税。 从那以后，**Michael Fu**聘请了一位律师，我们开始与这位律师沟通。 在**2019**年**9**月的第一周，**Michael Fu**签署了一份无约束力的协议， 也是从那时起，他一直在联系您。 从**2019**年**4**月到**6**月， 我们没有在**Michael Fu**身上看到任何的进展。 他还阻止我们直接与您联系， 最后决定放弃与每个中国的贷款人进行沟通。

在过去的几周里，**Michael Fu**告诉我们，作为我们在中国的代理商，成本变得越来越高了。 自**2018**年以来，**JMJ**集团已经向**Michael Fu**及其公司支付了**180**万美金的佣金。 我们每年还需要支付利息给他以员工，家人等名义投资的一部分赚取的佣金。 所以，他在担任我们中国代理期间,已经赚了一大笔钱。

作为总结，我们希望为大家提供以下帮助：

在大约**3-4**个月之前， 我们与一部分贷款人调解的过程中，决定了三种不同的选择。

- 方案一是通过完成下列要求来遵守法律框架的要求
  - 扣除预扣税部分后返还剩余利息
  - 利息支付必须返回原始汇款账户
  - 解除贷款协议（如果两年期满）
  - 提供原汇款单的复印件
  - 提供美国国税局提供的税号
  - 我们准备好在认证完所有文件的30天内汇出利息
  - 在利息支付后的90天内，我们将汇出本金
- 方案二
  - 由于上市公司的股票在全国范围内都是可转让的，因此您可以将贷款转换为股票，我们将提供回购担保， 这样您就可以按照这个流程来获得付款。
- 方案三
  - 我们可以咨询专家来为根据您的需求来定制一个方案， 在这个情况下，我们要求您支付10% 的费用

鉴于这是我们第一次尝试与您直接沟通，因此希望您能理解我们正在努力工作，帮助和协助解决每个中国贷款人有关的任何问题。 我们很乐意回答您的所有问题并希望为您提供最好的服务。 我们位于德克萨斯州达拉斯办公室的两位来自中国的员工可以在您方便的时候与您联系。 我们相信，今后与您的直接沟通不会有任何问题。 请尽快给我们答复。

谢谢!

经理[亚洲业务]

JMJ集团

德克萨斯州达拉斯

**Date : 4/27/2020 3:46:26 PM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Saif Sachwani" , "Tim Barton"**
**Subject : Message from Gov Gregg Abbott**

http://epaper.dallasnews.com/infinity/article_popover_share.aspx?guid=c306ff0d-0cd1-4130-84d1-320ba0981b6a

GROMER JEFFERS JR.Open for business? Be ready for a clash

# GROMER JEFFERS JR.

# Open for business? Be ready for a clash



**Dallas County Judge Clay Jenkins** is among those advocating for opening businesses in three phases, with the first phase for businesses where there's less risk of spreading the virus. (Ben Torres/Special Contributor)

Image 1 of 2

NEXT IMAGE >

ov. Greg Abbott on Monday is expected to give guidance on how and when Texas should reopen businesses that have been closed or restricted to help mitigate the spread of COVID-19.

Abbott's announcement, which is expected to involve reopening much of the state sooner rather than later, will likely put him at loggerheads with local officials, most notably Dallas County Judge Clay Jenkins.

Jenkins wants areas like Dallas and Harris counties to be classified as places with significant spread of the novel coronavirus. That would necessitate that businesses in those areas come back on line considerably later than the rest of the state.

If the governor's plan is as I expect, Texas businesses could start coming back on line days after his order. It's unclear what he has planned for Dallas County, but it's a safe bet Jenkins won't like it.

Last week Abbott told WBAP in Dallas-Fort Worth that he and his advisers have been talking to businesses in detail about safe ways to reopen. "They're saying they need about a week, to ... go back in and clean up their facilities, and whether it be a movie theater ... or a restaurant to get everything organized to make sure they have all the supplies they need," he said.

"But this is going to be happening in the first couple of days in May, where you're going to be able to go back and go dining under safe standards, you're going to be able to get a haircut, you're going to be able to go to a hair salon, you're going to be able to start doing some things that people have been been long wanting to do."

The governor has formed a 39-member panel to help guide his decisions, though he's being criticized by some analysts because more than half of the panelists are Abbott campaign donors.

What Abbott says about big counties like Dallas and Harris is critical to how much resistance he gets from local and even business leaders.

Since the beginning of the pandemic, the politics surrounding the fight against COVID-19 have resulted in disparate views on when an area is safe for businesses to reopen and people to start gathering again. As more people lose jobs and businesses start to collapse, the debate has boiled down to getting to an ideal level of virus mitigation versus stopping the economic slide.

Statements by Lt. Gov. Dan Patrick about there being "more important things than living" in calling for businesses to restart and rallies led by fringe figures have obscured a tortuous debate by political leaders, business owners and average Americans.

When is it truly safe to go back?

According to *Fortune* magazine, the "real unemployment rate" is above 20% and 26.5 million U.S. jobs have been lost. Texas has seen 1.5 million claims for unemployment pay since March 15. The biggest job losses occurred in the restaurant industry, as well as in health care and retail sectors.

Though not at the rate of states like New York, the coronavirus has wreaked havoc on Texas. There have been 24,631 positive cases in Texas as of Sunday afternoon, with 648 deaths.

As of Sunday, Dallas County had more than 3,000 positive cases and 82 deaths.

Rural counties with meat processing plants seem to be coronavirus hot spots.

At the end of last week, Moore County had 8.53 cases per 1,000 residents. Potter had 1.83 per 1,000; and Randall had 1.03.

For comparison, Harris County, the state's most populous, had 1.16 cases per 1,000 people and Dallas County had 1.07.

While Abbott's goal has been to keep Texans safe, he's under pressure to begin the process of getting Texans back to work and restoring the state's usually roaring economy.

Places like Pecos County in West Texas, where at the beginning of the month there was only one confirmed coronavirus case, will likely be allowed to open with no restrictions.

Controversy could unfold when Abbott calls for businesses in Dallas County to reopen. If he classifies the Dallas area in the same way as most Texas counties, including nearby Ellis County, that would go against Jenkins' science-based approach.

Many scientists believe areas should consider reopening after two consecutive weeks of reduced spread of the virus. Last week was the first time Dallas County saw a reduction in new transmissions from one week to the next. Another week of positive case reductions would put an initial phase of reopening in May.

Dallas County has a stay-at-home-order in place until May 15, but Abbott could override it.

How should businesses reopen?

Jenkins and others would like to have a process in three phases. Some businesses with less risk of spreading the virus would open first. They would be heavily monitored and testing for the virus would be ramped to higher levels than currently exist. Then close-contact businesses like tattoo shops and hair salons would go next. The last cluster would be movie theaters and other places that attract masses of people in confined spaces.

It's unclear when it would be safe to attend a Texas Rangers game at the team's new stadium or to jam into a music concert.

Abbott has the power to dictate his plan, and Jenkins is preparing to make a case against whatever aspect of the policy with which he disagrees, while backing up his objections with science.

Last week there was a preview of a Jenkins-Abbott clash, when the county judge disagreed with the governor's order that elective surgeries and other procedures could begin as early as April 22.

"I have, again, looked to the experts, the science, and the data," Jenkins wrote in a statement that called for an incremental approach.

"Such a carefully planned and phased approach will best ensure patient, provider and public safety," he said.

Some elected leaders are hoping for the best.

State Rep. Victoria Neave, D-Dallas, says she's working directly with the Strike Force to Open Texas to identify businesses owned by women, veterans and people of color.

"A solutions-focused approach to this challenge is necessary as we move forward with the governor's first phase of safely and strategically reigniting our economy," Neave said.

But expect more disagreements between Abbott and Jenkins, with area businesses caught in the middle.

It's similar to what's happening in states like Georgia, where last week Gov. Brian Kemp ordered the reopening of parts of the Peach State economy, including close-contact businesses like nail salons, barbershops and massage parlors.

Kemp's decision was counter to federal guidelines backed by President Donald Trump.

Throughout the pandemic there's been a lack of unity between federal, state and local officials.

The lack of a vaccine, which could take 18 months or more to develop, makes the thought of venturing out somewhat scary.

The ultimate choice to reopen or patronize a business will be made by Texas residents or executives. It's the people who will decide whether to go back to work, church, the movies or the bar.

*Twitter: @gromerjeffers*

**Date : 10/30/2019 11:01:47 PM**
**From : "Hongpeng Lin"**
**To : "zjun2@126.com"**
**Subject : Message from JMJ- JMJ的一封信**

The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version

中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责，因此请以英语版本为准。

Kind Attn: Zeng Jun

贷款人您好，

For Wall007 LLC, the interest payment was due on April 17th, 2019.

Wall007 LLC的利息应于2019年4月17日到期支付。

Quiet ahead of time, we notified PIC to provide the bank details of all the lenders and the US federal tax ID

我们在此之前就已经通知逸鼎提供所有贷款人的银行详细信息以及美国国税局的税号。

Since then, PIC was saying that PIC is representing all the Chinese lenders and stopped us in sending the payment by giving various reasons

从那以后，逸鼎一直在说他们代表了所有的中国客户，并通过各种理由阻止我们支付到期款项。

We therefore tried to reach out to each and every Chinese lender via WeChat as well as by email

因此，我们尝试通过微信以及电子邮件的方式与每个中国贷款人联系。

At that point of time, PIC engaged an attorney in US and put us into mediation process

那时，逸鼎在美国聘请了律师，并将我们带入了调解程序。

As part of the mediation, we signed a term sheet with PIC

作为调解的一部分，我们与逸鼎签署了条款协议。

While we received the options of the lenders, we received a notice from a new attorney representing PIC and some of the lenders

当我们收到贷款人的选择意向时，我们又收到--封律师通知信，这次是一个新律师，自称代表逸鼎和一些贷款人。

Then we received an another notice from an another attorney representing 14 lenders

然后，我们收到了一个另一位律师的通知，自称代表了14位贷款人。

When an another attorney is representing 14 lenders, it clearly indicates that PIC is no longer representing the Chinese lenders

然而当这位律师代表了14位贷款人时，则清楚地表明逸鼎不再代表中国的贷款人。

We therefore require the copy of the authorization what you have given to PIC. If you have not given any such authorization to PIC, we would like to reach out to you directly

因此，我们需要您提供您授权给逸鼎的授权副本，如果您没有给逸鼎任何授权的话，我们希望能直接跟您联系。

Here in our Dallas, we have two employees who are Chinese and can fluently speak your language. We strongly believe that these two employees would serve your needs better by communicating via WeChat and/or email

在我们达拉斯办公室，有两位来自中国的员工，他们可以说流利的中文。我们坚信，通过微信和/或电子邮件进行交流，着两位员工将更好的满足您的需求。

By this, we can certainly avoid any further delays

这样我们可以避免进一步的延误。

Please let us know

静待佳音

Signed by Manager [Asia Operations] by S Quraeshi

由亚洲运营部经理S Quraeshi签名

**Date : 11/8/2019 1:42:03 AM**
**From : "Hongpeng Lin"**
**To : "zjun2@126.com"**
**Cc : "Tim Barton" , "Murugan Venkat"**
**Subject : Negated Option to Convert-股权转换即将关闭**

Hi Zeng Jun

Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.

由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。在这之后，贷款人将无权再将借款转换为公司股票。尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。其他条款均不受影响。

S. Quareshi

S. 古雷西

Manager

经理

JMJ Asia Operations

JMJ亚洲部

The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version

中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责，因此请以英语版本为准。

**Date : 1/5/2020 7:19:16 AM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Hongpeng Lin" , "Tim Barton"**
**Subject : RE: Conference Call Update**

To
The Wall016 lenders

With regards to the Conference Call on Monday, January 6, 2020, at 7:00 pm CST / Tuesday, January 7th at 9am China time, we wish to inform that you will be receiving the Conference Call details for the Monday/Tuesday call as soon as we resolve some technical issues with the IT Department's ability to accommodate all of the Lenders.

关于2020年1月6日星期一晚上7点（中国时间1月7日星期二）的电话会议，我们希望通知您，一旦我们解决了IT部门容纳所有贷款人的能力，你将立即收到星期一/星期二电话会议的电话会议详情。

guān yú 2020 nián 1 yuè 6 rì xīng qī yì wǎn shàng 7 diǎn （ zhōng guó shí jiān 1 yuè 7 rì xīng qī èr ） de diàn huà huì yì， wǒ men xī wàng tōng zhī nín， yí dàn wǒ men jiě jué le IT bù mén róng nà suǒ yǒu dài kuǎn rén de néng lì， nǐ jiāng lì jí shōu dào xīng qī yī / xīng qī èr diàn huà huì yì de diàn huà huì yì xiáng qíng。

Thank you,
Vance McMurry
Attorney at Law
McMurry Law, PLLC
508 W. Lookout Dr., Ste. 14-74
Richardson, Texas 75080

P.S.: We used google translator. The purpose of translation is to provide the reading comfort in Chinese language. Errors in translation is regretted. For all practical purposes, the English version prevails

P.S.：我们使用谷歌翻译。翻译的目的是提供汉语的阅读舒适。翻译错误是令人遗憾的。出于所有实际目的，英文版以

P.S.： wǒ men shǐ yòng gǔ gē fān yì。 fān yì de mù de shì tí gòng hàn yǔ de yuè dú shū shì。 fān yì cuò wù shì lìng rén yí hàn de。 chū yú suǒ yǒu shí jì mù dì， yīng wén bǎn yǐ

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication and, as such, is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 972-746-9656 and return the message to us by email (vance@mcmurrylegal.com). Thank you.

**Date : 1/7/2020 1:04:40 AM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Tim Barton" , "Hongpeng Lin"**
**Subject : Re: Conference Call**

Dear Lenders,

We have sent you the Wall Entities Lender Projects Update for Q4 2019 for your perusal in advance of today's call.

Unfortunately, we are still experiencing technical difficulties so today's conference call is being rescheduled and our Technical Team will send you the new call in details for this week.

We look forward to speaking with you soon.

Thank you

**Thanks & regards**
**Murugan Venkat**

---

**From:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Date:** Monday, January 6, 2020 at 6:26 PM
**To:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>, Hongpeng Lin <HLin@jmjdevelopment.com>
**Subject:** JMJ Project Updates

Hello to every one
Please see the Project Status Update in the attachment
**Thanks & regards**
**Murugan Venkat**

Case 20-31131-hdh7 Doc 294-5 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 50 of 88

**Date : 1/8/2020 1:58:34 AM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Tim Barton" , "Hongpeng Lin"**
**Subject : Re: Conference Call**

All Lenders of WALL Entities

In continuation of my earlier email dated Monday, January 6, 2020, at 7:04 PM CST, kindly note that the Conference Call which was originally scheduled for Tuesday, January 7, 2020, at 9:00 am [Chinese time], was not held due to technical difficulties. Therefore it is now being held as follows:

1. Thursday, January 9, 2020, at 9:00 am [Chinese time]

2. Tuesday, January 14, 2020, at 10:00 pm [Chinese Time] since the morning time was not convenient for some Lenders

Please let me know which date you prefer to call-in, and we will have a Mandarin-speaking Translator for both these Conference Calls. As you know, the purpose of the Lender Conference Call is to provide an update on the WALL Projects and share some recent developments. And, you should all have received the WALL Entities Lender Updates for Q4 2019; if you have not received it, let me know and I will email it to you.

Because of the Confidentiality provisions of our agreements, we are therefore planning to have One-to-One individual Lender Calls to respond to individual Lender queries with the Translator present. These One-to-One individual Lender Calls will be held on January 15, 16, 17 and 18, 2020; please let me know the date and time you wish to schedule the One-to-One Telephone Call, thank you.

We look forward to your participation and continued support,

**Thanks & regards**
**Murugan Venkat**

---

**From:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Date:** Monday, January 6, 2020 at 7:04 PM
**To:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>, Hongpeng Lin <HLin@jmjdevelopment.com>
**Subject:** Re: Conference Call

Dear Lenders,

We have sent you the Wall Entities Lender Projects Update for Q4 2019 for your perusal in advance of today's call.

Unfortunately, we are still experiencing technical difficulties so today's conference call is being rescheduled and our Technical Team will send you the new call in details for this week.

We look forward to speaking with you soon.

Thank you

**Thanks & regards**
**Murugan Venkat**

---

**From:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Date:** Monday, January 6, 2020 at 6:26 PM
**To:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>, Hongpeng Lin <HLin@jmjdevelopment.com>
**Subject:** JMJ Project Updates

Hello to every one
Please see the Project Status Update in the attachment
**Thanks & regards**
**Murugan Venkat**

**Date : 11/12/2019 4:28:55 PM**
**From : "Hongpeng Lin"**
**To : "曾军"**
**Cc : "Murugan Venkat" , "Tim Barton" , "Tim Barton" , "Murugan Venkat"**
**Subject : RE: Re:Negated Option to Convert-股权转换即将关闭**

Hi Zeng Jun,

Please allow me to walk you through the stock conversion process.

The stock option works great by bringing a higher value to the investors.

Investments in shares are risky. However, the conversion option comes with buy back guaranteed so that the Chinese investors, do not loose even a penny

The term sheet provides the time line for conversion

Here are the steps

Step 1 Your choice for the conversion

Step 2 Amended contract

Step 3 Processing the request and recording the conversion for compliances

You should receive the payment or shares in 15 days.
您好,
请允许我跟您讲解一下股票转换的过程。
转换股票的选项对投资者来说更有利，因为能带来更高的收益。
投资股票自然有风险，但是，转换股权的选项自带回购保证，因此，中国投资人不会损失一分钱。
条款列表提供了转换的时间
步骤如下:
第一步， 您选择要转换
第二步， 修改合同
第三步， 处理请求并合规地记录转换

您应该在15天内收到付款或股份。

Thanks,
Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484
HLin@jmjdevelopment.com
www.jmjdevelopment.net
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Monday, November 11, 2019 12:01 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** chandler@yding.cn
**Subject:** Re:Negated Option to Convert-股权转换即将关闭

你好！
可以详细说明股权转换方案吗?

曾军

在 2019-11-08 09:42:03，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

Hi Zeng Jun
Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite

liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.
由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。在这之后，贷款人将无权再将借款转换为公司股票。尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。其他条款均不受影响。

S. Quareshi
S. 古雷西
Manager
经理
JMJ Asia Operations
JMJ亚洲部
The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version
中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责，因此请以英语版本为准。

**Date : 11/13/2019 4:57:46 PM**
**From : "Hongpeng Lin"**
**To : "Murugan Venkat" , "曾军"**
**Cc : "Tim Barton" , "chandler@yding.cn"**
**Subject : RE: Zeng Jun asking JMJ to follow the contract terms**

Hi Ven,

He was asking about the conversion. If you put the email from him below "可以详细说明股权转换方案吗？" into Google Translate, you will get "Can you elaborate on the equity conversion plan?" therefore, I reply the detail to him.

Thanks,
Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484
HLin@jmjdevelopment.com
www.jmjdevelopment.net
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Sent:** Wednesday, November 13, 2019 10:52 AM
**To:** 曾军 <zjun2@126.com>; Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>; chandler@yding.cn
**Subject:** Zeng Jun asking JMJ to follow the contract terms

Hello Hong
If Zeng Jun is asking us to follow the contract terms, I do not understand why then you were writing about conversion
Is it wrong in your translation?

**Thanks & regards**
**Murugan Venkat**
Here is the translation of what Zeng Jun wrote on Wednesday, November 13, 2019 2:05 AM

Hello there! I do not accept the equity plan, please pay according to the contract agreement signed before

**From:** 曾军 <zjun2@126.com>
**Sent:** Wednesday, November 13, 2019 2:05 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** Murugan Venkat <MVenkat@jmjdevelopment.com>; Tim Barton <tbarton@jmjdevelopment.com>; chandler@yding.cn
**Subject:** Re:RE: Re:Negated Option to Convert-股权转换即将关闭

你好！
我不接受股权方案，请按之前签署的合同协议来打款。

在 2019-11-13 00:28:55，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

> Hi Zeng Jun,
>
> Please allow me to walk you through the stock conversion process.
>
> The stock option works great by bringing a higher value to the investors.
>
> Investments in shares are risky. However, the conversion option comes with buy back guaranteed so that the Chinese investors, do not loose even a penny
>
> The term sheet provides the time line for conversion
>
> Here are the steps
>
> Step 1 Your choice for the conversion
>
> Step 2 Amended contract

Step 3 Processing the request and recording the conversion for compliances

You should receive the payment or shares in 15 days.
您好，
请允许我跟您讲解一下股票转换的过程。
转换股票的选项对投资者来说更有利，因为能带来更高的收益。
投资股票自然有风险，但是，转换股权的选项自带回购保证，因此，中国投资人不会损失一分钱。
条款列表提供了转换的时间
步骤如下：
第一步，您选择要转换
第二步，修改合同
第三步，处理请求并合规地记录转换

您应该在15天内收到付款或股份。

Thanks,
Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484
HLin@jmjdevelopment.com
www.jmjdevelopment.net
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Monday, November 11, 2019 12:01 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** chandler@yding.cn
**Subject:** Re:Negated Option to Convert-股权转换即将关闭

你好！
可以详细说明股权转换方案吗？

曾军

在 2019-11-08 09:42:03，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

Hi Zeng Jun
Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.
由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。在这之后，贷款人将无权再将借款转换为公司股票。尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。其他条款均不受影响。

S. Quareshi
S. 古雷西
Manager
经理
JMJ Asia Operations
JMJ亚洲部
The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version
中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责．因此请以英语版本为准。

**Date : 11/13/2019 5:08:33 PM**
**From : "Murugan Venkat"**
**To : "Hongpeng Lin" , "曾军"**
**Cc : "Tim Barton" , "chandler@yding.cn"**
**Subject : RE: Zeng Jun asking JMJ to follow the contract terms**

Hello Hong

Your below email reminds me either of the following:

- When Zeng Jun asked about conversion, I guess, we failed to explain him the benefits. We need to review what we are writing as our answers to the Chinese Lenders. Perhaps, you can help me with the Chinese style of communication. I am aware that the schools in USA has "Writing Skills" Similarly, we need to provide the answers in the Chinese traditions. Please convey my apologies to Zeng Jun, for the constraints in communication. The Conversion brings higher value by minimizing the risk to zero with buy back guarantee. It is the outcome of a professional experts
- Alternatively, if Zeng Jun changed his mind, we have to accept what this valuable Chinese lender wants

**Thanks & regards**
**Murugan Venkat**

**From:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Sent:** Wednesday, November 13, 2019 10:58 AM
**To:** Murugan Venkat <MVenkat@jmjdevelopment.com>; 曾军 <zjun2@126.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>; chandler@yding.cn
**Subject:** RE: Zeng Jun asking JMJ to follow the contract terms

Hi Ven,

He was asking about the conversion. If you put the email from him below "可以详细说明股权转换方案吗？" into Google Translate, you will get "Can you elaborate on the equity conversion plan?" therefore, I reply the detail to him.

Thanks,

Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484
HLin@jmjdevelopment.com
www.jmjdevelopment.net

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** Murugan Venkat <MVenkat@jmjdevelopment.com>
**Sent:** Wednesday, November 13, 2019 10:52 AM
**To:** 曾军 <zjun2@126.com>; Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>; chandler@yding.cn
**Subject:** Zeng Jun asking JMJ to follow the contract terms

Hello Hong
If Zeng Jun is asking us to follow the contract terms, I do not understand why then you were writing about conversion
Is it wrong in your translation?

**Thanks & regards**
**Murugan Venkat**
Here is the translation of what Zeng Jun wrote on Wednesday, November 13, 2019 2:05 AM

Hello there! I do not accept the equity plan, please pay according to the contract agreement signed before

**From:** 曾军 <zjun2@126.com>
**Sent:** Wednesday, November 13, 2019 2:05 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** Murugan Venkat <MVenkat@jmjdevelopment.com>; Tim Barton <tbarton@jmjdevelopment.com>; chandler@yding.cn
**Subject:** Re:RE: Re:Negated Option to Convert-股权转换即将关闭

你好！

我不接受股权方案，请按之前签署的合同协议来打款。

在 2019-11-13 00:28:55，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

Hi Zeng Jun,

Please allow me to walk you through the stock conversion process.

The stock option works great by bringing a higher value to the investors.

Investments in shares are risky. However, the conversion option comes with buy back guaranteed so that the Chinese investors, do not loose even a penny

The term sheet provides the time line for conversion

Here are the steps

Step 1 Your choice for the conversion

Step 2 Amended contract

Step 3 Processing the request and recording the conversion for compliances

You should receive the payment or shares in 15 days.
您好，
请允许我跟您讲解一下股票转换的过程。
转换股票的选项对投资者来说更有利，因为能带来更高的收益。
投资股票自然有风险，但是，转换股权的选项自带回购保证，因此，中国投资人不会损失一分钱。
条款列表提供了转换的时间
步骤如下：
第一步，您选择要转换
第二步，修改合同
第三步，处理请求并合规地记录转换

您应该在15天内收到付款或股份。

Thanks,
Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484
HLin@jmjdevelopment.com
www.jmjdevelopment.net
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Monday, November 11, 2019 12:01 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** chandler@yding.cn
**Subject:** Re:Negated Option to Convert-股权转换即将关闭

你好！
可以详细说明股权转换方案吗？

曾军

在 2019-11-08 09:42:03，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

Hi Zeng Jun
Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.

由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。在这之后，贷款人将无权再将借款转换为公司股票。尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。其他条款均不受影响。

S. Quareshi
S. 古雷西
Manager
经理
JMJ Asia Operations
JMJ亚洲部

The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version
中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责，因此请以英语版本为准。

**Date : 1/20/2020 1:57:16 PM**
**From : "Murugan Venkat"**
**To : "Murugan Venkat"**
**Cc : "Hongpeng Lin"**
**Subject : Recorded message from Michael FU's lawyer, saying, how Michael FU got the rights from all the lenders**
**Attachment : 2-6 h+u.pdf;119 MP3 .mp3;**

Dear Lender;

Attorney James Ou of Nguyen and Chen, the law firm in Houston, engaged by Michael Fu to represent Silverland and Platinum Investment Corporations to recoup his commissions while having your loans with interest paid directly to HIM, NOT YOU through both Silverland and Platinum Investment Corporations

Please listen to the recording on 30 December 2019, where in attorney James Ou of Nguyen and Chen, is explaining how Michael FU has the right from all the lenders

Mr. Ou states emphatically that Michael Fu is forfeiting his commissions in support of the lenders.

But if you can read the extract of the plaintiff's statement, the lawsuit claims are totally different. Enclosed herein, is a copy of the lawsuit filed in Texas State Court (Dallas) and it is evident in the first five pages that Michael Fu is suing for his commissions and intends for the court to direct all funds to Silverland and Platinum Investment Corporations not to YOU.

**Thanks & regards**
**Murugan Venkat**

6-CIT ATTY / JURY

FILED
DALLAS COUNTY
11/15/2019 12:51 PM
FELICIA PITRE
DISTRICT CLERK

Kayla Buckley

CAUSE NO. DC-19-18361

| | | |
|---|---|---|
| SILVERLAND FINANCE LTD., PLATINUM INVESTMENT CORPORATION, LIN ZHOU, JIN WANG, AND LI JUN, | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| VS. | § | B-44TH JUDICIAL DISTRICT |
| WALL007, LLC, WALL009, LLC, TIMOTHY BARTON, SADA CUMBER, CARNEGIE DEVELOPMENT, INC, AND JMJ DEVELOPMENT, LLC, | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiffs **SILVERLAND FINANCE LTD., PLATINUM INVESTMENT CORPORATION, LIN ZHOU, JIN WANG,** and **LI JUN,** to file this Original Petition against Defendants **WALL007, LLC, WALL009, LLC, TIMOTHY BARTON, SADA CUMBER, CARNEGIE DEVELOPMENT, INC,** and **JMJ DEVELOPMENT, LLC,** and would respectfully show unto the Court the following:

## I.
## DISCOVERY AND DAMAGES

Plaintiffs intend to conduct discovery under level 3 of Rule 190 of the Texas Civil Rules of Civil Procedure. Damages are over $1,000,000.

## II.
## PARTIES

Plaintiff Silverland Finance Ltd. is a foreign corporation incorporated under the laws of the Marshall Islands.

Plaintiff Platinum Investment Corporation is a foreign corporation incorporated under the laws of China.

Plaintiff Lin Zhou is an individual who resides in China.

Plaintiff Jin Wang is an individual who resides in Harris County, Texas.

Plaintiff Li Jun is an individual who resides in China.

Defendant WALL007 LLC is a Texas limited liability company

**III.**

**JURISDICTION AND VENUE**

Jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court. Venue is proper pursuant to Texas Civil Practice and Remedies Code § 15.002 because Dallas County, Texas is Defendants' county of residence and/or principal office in this state.

**IV.**

**FACTS**

In or around 2017, WALL007, LLC ("WALL007") and WALL009, LLC ("WALL009") began acquiring loans from a group of foreign lenders (the "Co-Lenders") to be used in connection with two residential housing development projects in Texas.

The loans were collected by Platinum Investment Corporation ("PIC") and/or Silverland Finance Ltd. ("SFL"), acting as agent(s) or intermediaries for the Co-Lenders, and provided to WALL007 and WALL009.

WALL007 received a total of two million seven hundred sixty thousand dollars and zero cents ($2,760,000.00) in loans from the Co-Lenders for use on its residential housing development project in Fort Worth, Texas.

WALL009 received a total of two million three hundred twenty thousand dollars and zero cents ($2,320,000.00) in loans from the Co-Lenders for use on its residential housing development project in Venus, Texas.

*007 Commission Agreement*

On or about April 24, 2017, Silverland Finance Ltd. ("Silverland") entered into a Service and Commission Agreement with WALL007 LLC (the "007 Commission Agreement"). Exhibit A.

Timothy Barton signed the 007 Commission Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL007. *See id.*

Lan Zhou signed the 007 Commission Agreement on behalf of Silverland. *See id.*

Per the 007 Commission Agreement, Silverland was to act as an agent and intermediary for the group of foreign lenders that loaned WALL007 money for a residential housing development project. *Id.* at ¶1.

In exchange for the services Silverland provided per the 007 Commission Agreement, Silverland was to receive the interest in the amount of 20% per annum on the principal on the loans made to WALL007 by the group of [illegible]. *Id.* at ¶[illegible].

In the event of WALL007's default under the 007 Commission Agreement, Silverland "shall have the immediate right to assume control of [WALL007], except for any outstanding indebtedness of [WALL007]." *Id.* at ¶3.

WALL007 has defaulted on the 007 Commission Agreement by failing to make any payments to Silverland when they were due. As a result of WALL007's default, Silverland had a Notice of Default sent to WALL007 on or about July 18, 2019. *See* Exhibit B.

Case 20-31131-hdh7 Doc 294-5 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 63 of 88

***009 Commission Agreement***

On or about April 24, 2017, Silverland also entered into a Service and Commission Agreement with WALL009 LLC (the "009 Commission Agreement"). Exhibit C.

Timothy Barnett signed the 009 Commission Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL009. *See id.*

Lyon Zhou signed the 009 Commission Agreement on behalf of Silverland. *See id.*

Per the 009 Commission Agreement, Silverland was to act as an agent and intermediary for a group of foreign lenders that loaned WALL009 money for a residential housing development project. *Id.* at ¶1.

In exchange for the services Silverland provided per the 009 Commission Agreement, Silverland was to receive the spread between (i) the interest rate to be paid to the EB-5 Lenders and (ii) 20% per annum on the principal of the loans made to WALL009 by the group of lenders. *Id.* at ¶2.

In the event of WALL009's default under the 009 Commission Agreement, Silverland "shall have the immediate right to assume control of [WALL009], except for any outstanding indebtedness of [WALL009]." *Id.* at ¶3.

WALL009 has defaulted on the 009 Commission Agreement by failing to make any payments to Silverland when they were due. As a result of WALL009's default, Silverland had a Notice of Default sent to WALL009 on or about July 18, 2019. *See* Exhibit D.

**Date : 11/6/2019 6:02:43 PM**
**From : "Hongpeng Lin"**
**To : "曾军"**
**Subject : Wall016 - Zeng Jun- $100k**

Hi,

We value your trust on us. We are committed to do the best to you as well as to all other lenders and we are here to honor the contract terms. We initiate action much ahead of the due dates. Since April 2019, PIC did not allow us to do anything as per the contract terms. We regret the delay cause by PIC. That is the reason why we are now reaching out to you directly.

- For Wall016 borrowing from you, $100k commence on Aug 1st ,2018 Interest due on Aug 1st 2019 for amount of $10,000.

By relying on PIC's email, we sent certain payments which happened to be a wire fraud and we lost heavily. We are therefore, very cautious now. For interest payment, we need to withhold taxes, we also worked out alternative options to save on tax withholdings. Please let us know what you want to do.

Thanks,
Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484
HLin@jmjdevelopment.com
www.jmjdevelopment.net
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Wednesday, November 6, 2019 6:20 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** chandler@yding.cn
**Subject:** Re:Letter from JMJ, 来自JMJ的一封信

你好!
我想知道，你们什么时候支付利息，已经过去3个月了。

曾军

在 2019-10-26 07:00:42，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

**Greetings Jun Zeng**

**For and on behalf of Tim Barton, Chairman of the JMJ group of entities in Dallas, Texas, USA. We hope to find you in good health and prosperity. This letter is to provide you with an update on the steps we have taken to find resolution for the issues presented in reference to the loan you have provided. Please understand, communicating directly with you has been difficult and restricted due to the involvement of Michael Fu and his Chinese owned company, PIC. We appreciate and thank you for your support in our U.S. based projects. Over the past two years Our company has had extensive growth which we have happily welcomed. Through this period of growth, we have continued to progress in business and employment of qualified individuals to assist in the growth. The JMJ entities have worked diligently to prepare this summary for your knowledge and response.**

**The Lenders from 2017, were paid the interest for the first year, during 2018. During the first quarter of 2019, the Tax returns for 2018 were filed, at that time certain non-compliance issues were brought to our attention as well as the consequent penalty and the possible criminal prosecution. The compliance issues include but are not limited to,**

- **Tax withholding on the interest payment**

- Sending the payments back to the same bank account where it came from.

These details were highlighted in each receipt we issued to you upon receiving the wire transfer from you.

Since April 2019, the following steps have been put in place in order to proceed without having additional compliance issues.

- All funds have been kept in a JMJ entity bank account so as to send the appropriate wire-transfer to each lender accordingly.
- We needed to communicate with each of the lenders regarding the Mandatory Tax withholdings, therefore we asked Michael Fu and his staff to communicate with all the lenders to explain the various options.

We understand the value of hard-earned money for all the Chinese lenders. Hence, we would like to help as much as we can within the legal framework possible. Between the months of April and June, the money was maintained in the JMJ entity bank accounts. During the exponential growth of the company during this same time period, funds were needed to finance our growth. In June one of our managers, travelled to Singapore as well as to Hong Kong to engage the employees of PIC since we had not received sufficient communication from them on behalf of the Chinese Lenders. Since April 2019 and until now, Michael Fu and his company, PIC, have been telling us that most of the Chinese Lenders, cannot receive the funds back into the same bank account the initial wires had been sent out from. Michael Fu and his company also provided information stating that withholding of taxes was not acceptable. Since then, Michael Fu has engaged an attorney and we began working with his attorney. In the first week of September 2019, Michael Fu signed a non-binding agreement and since then, he has been reaching out to you. During the months of April through June of 2019 we did not see any progress on the part of Michael Fu. He also stopped us in reaching out to you directly and then made the decision to give up in communicating with each of the Chinese Lenders.

In the past few weeks, Michael Fu has informed us that it is becoming more expensive for him to be our agent in China. Since 2018, the JMJ entities have paid US$ 1.8 millions in commissions to Michael Fu and his company. He has invested a fraction of his commission in the name of his employees, family members, etc. where we are paying interest. Therefore, he has made a significant amount of funds during his tenure as our Chines Agent.

As a summary, here is what we would like to help, each and every one of you:

During the mediation process, which some of the Chinese lenders participated in about 3-4 months ago, Three different options were decided upon.

- Option One is to comply with the legal framework by doing the following,
  - Provide Interest payments after deducting tax withholdings
  - Interest payments must be sent to the same bank account where it originated from.

- Discharge the loan document [if it is past 2 years]
- Provide the copy of the Original Wire Transfer
- Provide the tax ID with the IRS/USA
- We are ready to send the interest within 30 days, from the date of verification of all the documents

WALL016-JUN ZENG-0064

- **In the following 90 days from the payment of Interest, we will remit the loan amount**

  - **Option Two**

    - **Since shares in a publicly traded company are recognized as negotiable throughout the world, you can convert the loan into shares for which, we provide the buy-back guarantee and you can get paid through this process as per rules**

  - **Option three**

    - **We can consult the experts and can customize a resolution to meet your individual needs. In this option we are asking you to pay 10% towards the expenses.**

**Since this is our first attempt to communicate with you directly, we hope you can understand we are working diligently to help and assist in resolving any issues with each of the Chinese Lenders. We are happy to answer all your questions and would like to provide you the best service possible. Two of our employees in our corporate office in Dallas, TX are originally from China and are available to communicate with you at your convenience. We believe there will not be any issues in our direct communications with you going forward. Please provide us with your speedy response.**

**Sincerely**

**Manager [Asia operations]**
**JMJ Group of Entities**
**Dallas, TX**

**Translation in Chinese is for easy understanding of our communication and for any error in translations, English version is binding and legal**

中文翻译是为了易于理解我们的沟通，如果翻译中有任何错误，英语版本具有约束力和法律效力

您好，

谨代表美国德克萨斯州达拉斯的JMJ集团主席Tim Barton先生，我们希望您身体健康，生意兴荣。 这封信是为了向您提供我们在解决贷款相关问题的进展。 请您理解，由于Michael Fu以及其中国公司逸鼎的介入，与您的直接沟通变得异常困难与艰辛。我们十分感激与感谢您对我们在美国项目的支持。 在过去的两年中，我们公司取得了[illegible]

在这期间，我们继续扩展我们的业务以及雇佣合适的人才以协助我们公司成长。 JMJ集团特别准备这份摘要给您知晓与响应。

自2017年起开始计算，借款方于2018年支付了第一年的利息。 2018年的税表于2019年的第一季度提交， 我们注意到一些不符合法规的问题以及可能面临的处罚与刑事诉讼。 这些问题包括但不限于以下几点：

- 利息的预扣税
- 将付款发回原账户

这些在我们发给您的收据上都有注明。

自2019年4月份以来，我们已经采取以下措施来避免将来出现同样的问题。

- 所有资金已经放在JMJ集团的银行账户中，以便可以电汇给各个贷款方
- 我们需要向每个贷款方沟通预扣税的问题， 因此我们请Michael Fu及其工作人员联系每个贷款方进行沟通，解释各种选择。

我们了解以及明白所有中国贷款方的血汗钱是十分重要的。 因此，我们希望在法律框架内尽可能多的提供帮助。 从4月到6月之间，这笔钱存在JMJ集团的银行账户中。 于此同时，我们公司在快速增长，而大量的资金也需要来协助我们增长。由于从逸鼎没有收到有效的贷款人的沟通，我们的一位经理在6月份的时候前往新加坡和香港与逸鼎的员工进行面谈。 自2019年4月份至今，Michael Fu和他的公司逸鼎一直在告诉我们，大多数中国贷款人无法将资金退回到原始汇款账户中。Michael Fu与他的公司还声称不接受预扣税。 从那以后，Michael Fu聘请了一位律师，我们开始与这位律师沟通。 在2019年9月的第一周，Michael Fu签署了一份无约束力的协议， 也是从那时起，他一直在联系您。 从2019年4月到6月， 我们没有在Michael Fu身上看到任何的进展。 他还阻止我们直接与您联系， 最后决定放弃与每个中国的贷款人进行沟通。

在过去的几周里，Michael Fu告诉我们，作为我们在中国的代理商，成本变得越来越高了。 自2018年以来，JMJ集团已经向Michael Fu及其公司支付了180万美金的佣金。 我们每年还需要支付利息给他以员工，家人等名义投资的一部分赚取的佣金。 所以，他在担任我们中国代理期间，已经赚了一大笔钱。

作为总结，我们希望为大家提供以下帮助：

在大约3-4个月之前， 我们与一部分贷款人调解的过程中，决定了三种不同的选择。

- 方案一是通过完成下列要求来遵守法律框架的要求
    - 扣除预扣税部分后返还剩余利息
    - 利息支付必须返回原始汇款账户
    - 解除贷款协议（如果两年期满）
    - 提供原汇款单的复印件
    - 提供美国国税局提供的税号
    - 我们准备好在认证完所有文件的30天内汇出利息
    - 在利息支付后的90天内，我们将汇出本金
- 方案二
    - 由于上市公司的股票在全国范围内都是可转让的，因此您可以将贷款转换为股票，我们将提供回购担保， 这样您就可以按照这个流程来获得付款。
- 方案三
    - 我们可以咨询专家来为根据您的需求来定制一个方案， 在这个情况下，我们要求您支付10% 的费用

鉴于这是我们第一次尝试与您直接沟通，因此希望您能理解我们正在努力工作，帮助和协助解决每个中国贷款人有关的任何问题。 我们很乐意回答您的所有问题并希望为您提供最好的服务。 我们位于德克萨斯州达拉斯办公室的两位来自中国的员工可以在您方便的时候与您联系。

Case 20-31131-hdh7 Doc 294-5 Filed 11/24/20 Entered 11/24/20 15:28:24 Page 68 of 88

我们相信，今后与您的直接沟通不会有任何问题。请尽快给我们答复。

谢谢！

经理[亚洲业务]

JMJ集团

德克萨斯州达拉斯

**Date : 4/2/2020 4:03:11 AM**
**From : "Murugan Venkat"**
**To : "zjun2@126.com"**
**Cc : "Tim Barton" , "Saif Sachwani"**
**Subject : Wall016 LLC - Loan Forbearance and extension**
**Attachment : 1 Page 1.pdf;**

Please keep the attachment for your records

**Thanks & regards**
**Murugan Venkat**

# WALL016 LLC

To

31st March 2020

Jun Wang
Email zjun2@126.com

RE: Loan Forbearance ⇔ Extension regarding WALL016, LLC

Dear Jun,

As a result of the recent global outbreak of the novel corona virus (COVID-19), which has been declared a national emergency in the United States and has been declared a pandemic by the World Health Organization and by the United States Center of Disease Control, various local and state orders and mandates have been entered, in compliance with federal guidance, ordering the closure of businesses (other than "essential businesses", as defined in the respective orders and mandates). Entry of these orders and mandates have significantly impacted the business of WALL016, LLC given the current state of the capital markets globally. While we have been working diligently to adhere to the payments scheduled as outlined in our Loan Agreement, the unforeseen world health crises has completely shut down the financial markets and has put an indefinite hold on any attempts to secure additional capital to comply with the current scheduled payment requirements.

WALL016, LLC has diligently continued, meaningful discussion with both debt and equity sources who have been underwriting our various projects for capital infusion, yet all parties have stated they are on an indefinite hold on any capital advancements to the construction industry. Throughout most of Texas, we are under various mandatory "shelter-in-place" or "stay-at-home" decrees with most businesses shut down by law. Nationally, the United States President has declared a National Emergency and has advised most businesses to close consistent with the local mandates and orders that have been entered in Texas. Given this local and national shutdown and unforeseen act of God, which would be construed as a "force majeure" event, that has made business performance impossible, we apply a 18-months forbearance, effective as of today, on any amount due [either as interest or otherwise, due now or past due or in the forbearance period] for this loan. While we are confident that the financial markets eventually will return to some level of normalcy, we cannot predict the exact timing for the reasons set forth in this letter. We, therefore, request this payment modification in good faith to allow us the time necessary to adjust to this unprecedented and unforeseen global health and financial crises.

Current Loan Information

**Borrower**: WALL016, LLC ⇔ **Loan Amount**: US $50000

Sincerely,
Sohail Quraeshi
Vice President [Asia Operations]
WALL016 LLC

**Date : 11/13/2019 4:51:50 PM**
**From : "Murugan Venkat"**
**To : "曾军" , "Hongpeng Lin"**
**Cc : "Tim Barton" , "chandler@yding.cn"**
**Subject : Zeng Jun asking JMJ to follow the contract terms**

Hello Hong
If Zeng Jun is asking us to follow the contract terms, I do not understand why then you were writing about conversion
Is it wrong in your translation?

**Thanks & regards**
**Murugan Venkat**
Here is the translation of what Zeng Jun wrote on Wednesday, November 13, 2019 2:05 AM

Hello there! I do not accept the equity plan, please pay according to the contract agreement signed before

**From:** 曾军 <zjun2@126.com>
**Sent:** Wednesday, November 13, 2019 2:05 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** Murugan Venkat <MVenkat@jmjdevelopment.com>; Tim Barton <tbarton@jmjdevelopment.com>; chandler@yding.cn
**Subject:** Re:RE: Re:Negated Option to Convert-股权转换即将关闭

你好！
我不接受股权方案，请按之前签署的合同协议来打款。

在 2019-11-13 00:28:55，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

> Hi Zeng Jun,
>
> Please allow me to walk you through the stock conversion process.
>
> The stock option works great by bringing a higher value to the investors.
>
> Investments in shares are risky. However, the conversion option comes with buy back guaranteed so that the Chinese investors, do not loose even a penny
>
> The term sheet provides the time line for conversion
>
> Here are the steps
>
> Step 1 Your choice for the conversion
>
> Step 2 Amended contract
>
> Step 3 Processing the request and recording the conversion for compliances
>
> You should receive the payment or shares in 15 days.
> 您好，
> 请允许我跟您讲解一下股票转换的过程。
> 转换股票的选项对投资者来说更有利，因为能带来更高的收益。
> 投资股票自然有风险，但是，转换股权的选项自带回购保证，因此，中国投资人不会损失一分钱。
> 条款列表提供了转换的时间
> 步骤如下：
> 第一步，您选择要转换
> 第二步，修改合同
> 第三步，处理请求并合规地记录转换
>
> 您应该在15天内收到付款或股份。

Thanks,
Hongpeng Lin
JMJ Development, Inc.
1755 Wittington Place
Suite 340
Dallas, TX 75234
P: 972.385.9934
F: 972.241.4484

HLin@jmjdevelopment.com
www.jmjdevelopment.net
The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Monday, November 11, 2019 12:01 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** chandler@yding.cn
**Subject:** Re:Negated Option to Convert-股权转换即将关闭

你好！
可以详细说明股权转换方案吗？

曾军

在 2019-11-08 09:42:03，"Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

Hi Zeng Jun
Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.
由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。 在这之后，贷款人将无权再将借款转换为公司股票。 尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。 其他条款均不受影响。

S. Quareshi
S. 古雷西
Manager
经理
JMJ Asia Operations
JMJ亚洲部
The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version
中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责。因此请以英语版本为准。

**Date : 7/1/2020 7:38:16 AM**
**From : "曾军"**
**To : shouhouusa@yding.cn**
**Subject : 我回复JMJ的邮件**
**Attachment : Re:RE: Re:Negated Option to Convert-股权转换即将关闭;Re:Negated Option to Convert-股权转换即将关闭;Re:Wall016 - Zeng Jun- $100k;Re:Letter from JMJ, 来自JMJ的一封信;**

**Date : 11/6/2019 12:20:21 PM**
**From : "曾军"**
**To : "Hongpeng Lin"**
**Cc : chandler@yding.cn**
**Subject : Re:Letter from JMJ, 来自JMJ的一封信**

你好!
我想知道, 你们什么时候支付利息, 已经过去3个月了。

曾军

在 2019-10-26 07:00:42, "Hongpeng Lin" <HLin@jmjdevelopment.com> 写道:

**Greetings Jun Zeng**

**For and on behalf of Tim Barton, Chairman of the JMJ group of entities in Dallas, Texas, USA. We hope to find you in good health and prosperity. This letter is to provide you with an update on the steps we have taken to find resolution for the issues presented in reference to the loan you have provided. Please understand, communicating directly with you has been difficult and restricted due to the involvement of Michael Fu and his Chinese owned company, PIC. We appreciate and thank you for your support in our U.S. based projects. Over the past two years Our company has had extensive growth which we have happily welcomed. Through this period of growth, we have continued to progress in business and employment of qualified individuals to assist in the growth. The JMJ entities have worked diligently to prepare this summary for your knowledge and response.**

**The Lenders from 2017, were paid the interest for the first year, during 2018. During the first quarter of 2019, the Tax returns for 2018 were filed, at that time certain non-compliance issues were brought to our attention as well as the consequent penalty and the possible criminal prosecution. The compliance issues include but are not limited to,**

- **Tax withholding on the interest payment**
- **Sending the payments back to the same bank account where it came from.**

**These details were highlighted in each receipt we issued to you upon receiving the wire transfer from you.**

**Since April 2019, the following steps have been put in place in order to proceed without having additional compliance issues.**

- **All funds have been kept in a JMJ entity bank account so as to send the appropriate wire-transfer to each lender accordingly.**
- **We needed to communicate with each of the lenders regarding the Mandatory Tax withholdings, therefore we asked Michael Fu and his staff to communicate with all the lenders to explain the various options.**

**We understand the value of hard-earned money for all the Chinese lenders. Hence, we would like to help as much as we can within the legal framework possible. Between the months of April and June, the money was maintained in the JMJ entity bank accounts. During the exponential growth of the company during this same time period, funds were needed to finance our growth. In June one of our managers, travelled to Singapore as**

well as to Hong Kong to engage the employees of PIC since we had not received sufficient communication from them on behalf of the Chinese Lenders. Since April 2019 and until now, Michael Fu and his company, PIC, have been telling us that most of the Chinese Lenders, cannot receive the funds back into the same bank account the initial wires had been sent out from. Michael Fu and his company also provided information stating that withholding of taxes was not acceptable. Since then, Michael Fu has engaged an attorney and we began working with his attorney. In the first week of September 2019, Michael Fu signed a non-binding agreement and since then, he has been reaching out to you. During the months of April through June of 2019 we did not see any progress on the part of Michael Fu. He also stopped us in reaching out to you directly and then made the decision to give up in communicating with each of the Chinese Lenders.

In the past few weeks, Michael Fu has informed us that it is becoming more expensive for him to be our agent in China. Since 2018, the JMJ entities have paid US$ 1.8 millions in commissions to Michael Fu and his company. He has invested a fraction of his commission in the name of his employees, family members, etc. where we are paying interest. Therefore, he has made a significant amount of funds during his tenure as our Chines Agent.

As a summary, here is what we would like to help, each and every one of you:

During the mediation process, which some of the Chinese lenders participated in about 3-4 months ago, Three different options were decided upon.

- Option One is to comply with the legal framework by doing the following,
  - Provide Interest payments after deducting tax withholdings
  - Interest payments must be sent to the same bank account where it originated from.

    - Discharge the loan document [if it is past 2 years]
    - Provide the copy of the Original Wire Transfer
    - Provide the tax ID with the IRS/USA
    - We are ready to send the interest within 30 days, from the date of verification of all the documents
    - In the following 90 days from the payment of Interest, we will remit the loan amount
- Option Two
  - Since shares in a publicly traded company are recognized as negotiable throughout the world, you can convert the loan into shares for which, we provide the buy-back guarantee and you can get paid through this process as per rules
- Option three
  - We can consult the experts and can customize a resolution to meet your individual needs. In this option we are asking you to pay 10% towards the expenses.

Since this is our first attempt to communicate with you directly, we hope you can understand we are working diligently to help and assist in resolving any issues with each of the Chinese Lenders. We are happy to answer all your questions and would like to provide you the best service possible. Two of our employees in our corporate office in Dallas, TX are originally from China and are available to communicate with you or your

**convenience. We believe there will not be any issues in our direct communications with you going forward.**

**Please provide us with your speedy response.**

**Sincerely**

**Manager [Asia operations]**

**JMJ Group of Entities**

**Dallas, TX**

**Translation in Chinese is for easy understanding of our communication and for any error in translations, English version is binding and legal**

中文翻译是为了易于理解我们的沟通，如果翻译中有任何错误，英语版本具有约束力和法律效力

您好，

谨代表美国德克萨斯州达拉斯的JMJ集团主席Tim Barton先生，我们希望您身体健康，生意兴荣。 这封信是为了向您提供我们在解决贷款相关问题的进展。 请您理解，由于Michael Fu以及其中国公司逸鼎的介入，与您的直接沟通变得异常困难与艰辛。我们十分感激与感谢您对我们在美国项目的支持。 在过去的两年中，我们公司取得了长足的发展，我们对此感到十分高兴。

在这期间，我们继续扩展我们的业务以及雇佣合适的人才以协助我们公司成长。 JMJ集团特别准备这份摘要给您知晓与响应。

自2017年起开始计算，借款方于2018年支付了第一年的利息。 2018年的税表于2019年的第一季度提交， 我们注意到一些不符合法规的问题以及可能面临的处罚与刑事诉讼。 这些问题包括但不限于以下几点：

利息的预扣税

将付款发回原账户

这些在我们发给您的收据上都有注明。

自2019年4月份以来，我们已经采取以下措施来避免将来出现同样的问题。

所有资金已经放在JMJ集团的银行账户中，以便可以电汇给各个贷款方

我们需要向每个贷款方沟通预扣税的问题， 因此我们请Michael Fu及其工作人员联系每个贷款方进行沟通，解释各种选择。

我们了解以及明白所有中国贷款方的血汗钱是十分重要的。 因此，我们希望在法律框架内尽可能多的提供帮助。 从4月到6月之间，这笔钱存在JMJ集团的银行账户中。 于此同时，我们公司在快速增长，而大量的资金也需要来协助我们增长。由于从逸鼎没有收到有效的贷款人的沟通，我们的一位经理在6月份的时候前往新加坡和香港与逸鼎的员工进行面谈。 自2019年4月份至今，Michael Fu和他的公司逸鼎一直在告诉我们，大多数中国贷款人无法将资金退回到原始汇款账户中。Michael Fu与他的公司还声称不接受预扣税。 从那以后，Michael Fu聘请了一位律师，我们开始与这位律师沟通。 在2019年9月的第一周，Michael Fu签署了一份无约束力的协议， 也是从那时起，他一直在联系您。 从2019年4月到6月， 我们没有在Michael Fu身上看到任何的进展。 他还阻止我们直接与您联系， 最后决定放弃与每个中国的贷款人进行沟通。

在过去的几周里，Michael Fu告诉我们，作为我们在中国的代理商，成本变得越来越高了。 自2018年以来，JMJ集团已经向Michael Fu及其公司支付了180万美金的佣金。 我们每年还需要支付利息给他以员工，家人等名义投资的一部分赚取的佣金。 所以，他在担任我们中国代理期间，已经赚了一大笔钱。

作为总结，我们希望为大家提供以下帮助：

在大约3-4个月之前， 我们与一部分贷款人调解的过程中，决定了三种不同的选择。

- 方案一是通过完成下列要求来遵守法律框架的要求
  - 扣除预扣税部分后返还剩余利息
  - 利息支付必须返回原始汇款账户
  - 解除贷款协议（如果两年期满）
  - 提供原汇款单的复印件
  - 提供美国国税局提供的税号
  - 我们准备好在认证完所有文件的30天内汇出利息
  - 在利息支付后的90天内，我们将汇出本金
- 方案二
  - 由于上市公司的股票在全国范围内都是可转让的，因此您可以将贷款转换为股票，我们将提供回购担保， 这样您就可以按照这个流程来获得付款。
- 方案三
  - 我们可以咨询专家来为根据您的需求来定制一个方案， 在这个情况下，我们要求您支付10% 的费用

鉴于这是我们第一次尝试与您直接沟通，因此希望您能理解我们正在努力工作，帮助和协助解决每个中国贷款人有关的任何问题。 我们很乐意回答您的所有问题并希望为您提供最好的服务。 我们位于德克萨斯州达拉斯办公室的两位来自中国的员工可以在您方便的时候与您联系。我们相信，今后与您的直接沟通不会有任何问题。 请尽快给我们答复。

**谢谢!**

**经理[亚洲业务]**

**JMJ集团**

**德克萨斯州达拉斯**

**Date : 11/11/2019 6:00:34 AM**
**From : "曾军"**
**To : "Hongpeng Lin"**
**Cc : "chandler@yding.cn"**
**Subject : Re:Negated Option to Convert-股权转换即将关闭**

你好！
可以详细说明股权转换方案吗？

曾军

在 2019-11-08 09:42:03, "Hongpeng Lin" <HLin@jmjdevelopment.com> 写道:

Hi Zeng Jun

Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.

由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。 因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。 在这之后，贷款人将无权再将借款转换为公司股票。 尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。 其他条款均不受影响。

S. Quareshi

S. 古雷西

Manager

经理

JMJ Asia Operations

JMJ亚洲部

The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version

中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责，因此请以英语版本为准。

**Date : 11/13/2019 8:04:48 AM**
**From : "曾军"**
**To : "Hongpeng Lin"**
**Cc : "Murugan Venkat" , "Tim Barton" , "chandler@yding.cn"**
**Subject : Re:RE: Re:Negated Option to Convert-股权转换即将关闭**

你好！
我不接受股权方案，请按之前签署的合同协议来打款。

在 2019-11-13 00:28:55, "Hongpeng Lin" <HLin@jmjdevelopment.com> 写道:

Hi Zeng Jun,

Please allow me to walk you through the stock conversion process.

The stock option works great by bringing a higher value to the investors.

Investments in shares are risky. However, the conversion option comes with buy back guaranteed so that the Chinese investors, do not loose even a penny

The term sheet provides the time line for conversion

Here are the steps

Step 1 Your choice for the conversion

Step 2 Amended contract

Step 3 Processing the request and recording the conversion for compliances

You should receive the payment or shares in 15 days.

您好，

请允许我跟您讲解一下股票转换的过程。

转换股票的选项对投资者来说更有利，因为能带来更高的收益。

投资股票自然有风险，但是，转换股权的选项自带回购保证，因此。中国投资人不会损失一分钱。

条款列表提供了转换的时间

步骤如下：

第一步， 您选择要转换

第二步， 修改合同

第三步， 处理请求并合规地记录转换

您应该在15天内收到付款或股份。

Thanks,

Hongpeng Lin

JMJ Development, Inc.

1755 Wittington Place

Suite 340

Dallas, TX 75234

P: 972.385.9934

F: 972.241.4484

HLin@jmjdevelopment.com

www.jmjdevelopment.net

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Monday, November 11, 2019 12:01 AM
**To:** Hongpeng Lin <HLin@jmjdevelopment.com>
**Cc:** chandler@yding.cn
**Subject:** Re:Negated Option to Convert-股权转换即将关闭

**你好！**

**可以详细说明股权转换方案吗？**

**曾军**

在 2019-11-08 09:42:03, "Hongpeng Lin" <HLin@jmjdevelopment.com> 写道：

Hi Zeng Jun

Because any unaccepted options to convert the loans into shares of the public company creates outstanding and indefinite liabilities on the books of the company and would negatively impact the financials in future years, any offer to permit the lenders to convert into shares shall expire within 30 days of this notice if such offer is not otherwise accepted in writing by the Lender as delivered to the borrower. After such period, the lenders shall have no further right to convert the loans into shares of the company although the company may continue to permit such option on a case by case basis in its sole discretion. All other options described under the Terms shall remain unaffected.

由于开放将借款转为上市公司股票这个选项会在上市公司的账簿上产生未清偿和无限期负债，并且会对未来几年的财务产生负面的影响。因此，如果借款人在30天内没有收到贷款人以书面形式来表达转换意愿的话，那么借款转换为股票的这个选项将会关闭。 在这之后，贷款人将无权再将借款转换为公司股票。 尽管公司可以继续根据具体情况自行决定是否允许这种转换的发生。 其他条款均不受影响。

S. Quareshi

S. 古雷西

Manager

经理

JMJ Asia Operations

JMJ亚洲部

The translation is provided for making it easy & comfortable to read by the lenders. However, translation errors may be there. Hence, the English version shall be used as official version

中文翻译是为了方便贷款人阅读和理解，但是翻译可能存在错误，我们不对翻译中的错误负责，因此请以英语版本为准。

**Date : 11/11/2019 5:50:15 AM**
**From : "曾军"**
**To : "Hongpeng Lin"**
**Cc : "chandler@yding.cn"**
**Subject : Re:Wall016 - Zeng Jun- $100k**

你好！
我的钱是汇到Tim私人账户的，请问这样的情况利息该怎么回款？

曾军

At 2019-11-07 02:02:43, "Hongpeng Lin" <HLin@jmjdevelopment.com> wrote:

Hi,

We value your trust on us. We are committed to do the best to you as well as to all other lenders and we are here to honor the contract terms. We initiate action much ahead of the due dates. Since April 2019, PIC did not allow us to do anything as per the contract terms. We regret the delay cause by PIC. That is the reason why we are now reaching out to you directly.

- For Wall016 borrowing from you, $100k commence on Aug 1st ,2018 Interest due on Aug 1st 2019 for amount of $10,000.

By relying on PIC's email, we sent certain payments which happened to be a wire fraud and we lost heavily. We are therefore, very cautious now. For interest payment, we need to withhold taxes, we also worked out alternative options to save on tax withholdings. Please let us know what you want to do.

Thanks,

Hongpeng Lin

JMJ Development, Inc.

1755 Wittington Place

Suite 340

Dallas, TX 75234

P: 972.385.9934

F: 972.241.4484

HLin@jmjdevelopment.com

www.jmjdevelopment.net

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking action of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this message in error, please contact the sender and delete the material from all computers.

**From:** 曾军 <zjun2@126.com>
**Sent:** Wednesday, November 6, 2019 6:20 AM

**To:** Hongpeng Lin <HLin@jmjdevelopment.com>

**Cc:** chandler@yding.cn

**Subject:** Re:Letter from JMJ, 来自JMJ的一封信

你好!

我想知道, 你们什么时候支付利息, 已经过去3个月了。

曾军

在 2019-10-26 07:00:42, "Hongpeng Lin" <HLin@jmjdevelopment.com> 写道:

**Greetings Jun Zeng**

**For and on behalf of Tim Barton, Chairman of the JMJ group of entities in Dallas, Texas, USA. We hope to find you in good health and prosperity. This letter is to provide you with an update on the steps we have taken to find resolution for the issues presented in reference to the loan you have provided. Please understand, communicating directly with you has been difficult and restricted due to the involvement of Michael Fu and his Chinese owned company, PIC. We appreciate and thank you for your support in our U.S. based projects. Over the past two years Our company has had extensive growth which we have happily welcomed. Through this period of growth, we have continued to progress in business and employment of qualified individuals to assist in the growth. The JMJ entities have worked diligently to prepare this summary for your knowledge and response.**

**The Lenders from 2017, were paid the interest for the first year, during 2018. During the first quarter of 2019, the Tax returns for 2018 were filed, at that time certain non-compliance issues were brought to our attention as well as the consequent penalty and the possible criminal prosecution. The compliance issues include but are not limited to,**

- **Tax withholding on the interest payment**
- **Sending the payments back to the same bank account where it came from.**

**These details were highlighted in each receipt we issued to you upon receiving the wire transfer from you.**

**Since April 2019, the following steps have been put in place in order to proceed without having additional compliance issues.**

- **All funds have been kept in a JMJ entity bank account so as to send the appropriate wire-transfer to each lender accordingly.**
- **We needed to communicate with each of the lenders regarding the Mandatory Tax withholdings, therefore we asked Michael Fu and his staff to communicate with all the lenders to explain the various options.**

**We understand the value of hard-earned money for all the Chinese lenders. Hence, we would like to help as much as we can within the legal framework possible. Between the months of April and June, the money was**

maintained in the JMJ entity bank accounts. During the exponential growth of the company during this same time period, funds were needed to finance our growth. In June one of our managers, travelled to Singapore as well as to Hong Kong to engage the employees of PIC since we had not received sufficient communication from them on behalf of the Chinese Lenders. Since April 2019 and until now, Michael Fu and his company, PIC, have been telling us that most of the Chinese Lenders, cannot receive the funds back into the same bank account the initial wires had been sent out from. Michael Fu and his company also provided information stating that withholding of taxes was not acceptable. Since then, Michael Fu has engaged an attorney and we began working with his attorney. In the first week of September 2019, Michael Fu signed a non-binding agreement and since then, he has been reaching out to you. During the months of April through June of 2019 we did not see any progress on the part of Michael Fu. He also stopped us in reaching out to you directly and then made the decision to give up in communicating with each of the Chinese Lenders.

In the past few weeks, Michael Fu has informed us that it is becoming more expensive for him to be our agent in China. Since 2018, the JMJ entities have paid US$ 1.8 millions in commissions to Michael Fu and his company. He has invested a fraction of his commission in the name of his employees, family members, etc. where we are paying interest. Therefore, he has made a significant amount of funds during his tenure as our Chines Agent.

As a summary, here is what we would like to help, each and every one of you:

During the mediation process, which some of the Chinese lenders participated in about 3-4 months ago, Three different options were decided upon.

- Option One is to comply with the legal framework by doing the following,
  - Provide Interest payments after deducting tax withholdings
  - Interest payments must be sent to the same bank account where it originated from.

    - Discharge the loan document [if it is past 2 years]
    - Provide the copy of the Original Wire Transfer
    - Provide the tax ID with the IRS/USA
    - We are ready to send the interest within 30 days, from the date of verification of all the documents
    - In the following 90 days from the payment of Interest, we will remit the loan amount
- Option Two
  - Since shares in a publicly traded company are recognized as negotiable throughout the world, you can convert the loan into shares for which, we provide the buy-back guarantee and you can get paid through this process as per rules
- Option three
  - We can consult the experts and can customize a resolution to meet your individual needs. In this option we are asking you to pay 10% towards the expenses.

Since this is our first attempt to communicate with you directly, we hope you can understand we are working diligently to help and assist in resolving any issues with each of the Chinese Lenders. We are happy to answer

**all your questions and would like to provide you the best service possible. Two of our employees in our corporate office in Dallas, TX are originally from China and are available to communicate with you at your convenience. We believe there will not be any issues in our direct communications with you going forward. Please provide us with your speedy response.**

**Sincerely**

**Manager [Asia operations]**

**JMJ Group of Entities**

**Dallas, TX**

**Translation in Chinese is for easy understanding of our communication and for any error in translations, English version is binding and legal**

**中文翻译是为了易于理解我们的沟通，如果翻译中有任何错误，英语版本具有约束力和法律效力**

**您好，**

**谨代表美国德克萨斯州达拉斯的JMJ集团主席Tim Barton先生，我们希望您身体健康，生意兴荣。这封信是为了向您提供我们在解决贷款相关问题的进展。请您理解，由于Michael Fu以及其中国公司逸鼎的介入. [illegible]我们十分**

**感激与感谢您对我们在美国项目的支持。在过去的两年中，我们公司取得了长足的发展，我们对此感到十分高兴。**

**在这期间，我们继续扩展我们的业务以及雇佣合适的人才以协助我们公司成长。JMJ集团特别准备这份摘要给您知晓与响应。**

自**2017**年起开始计算，借款方于**2018**年支付了第一年的利息。 **2018**年的税表于**2019**年的第一季度提交， 我们注意到一些不符合法规的问题以及可能面临的处罚与刑事诉讼。 这些问题包括但不限于以下几点：

- 利息的预扣税
- 将付款发回原账户

这些在我们发给您的收据上都有注明。

自**2019**年**4**月份以来，我们已经采取以下措施来避免将来出现同样的问题。

- 所有资金已经放在**JMJ**集团的银行账户中，以便可以电汇给各个贷款方
- 我们需要向每个贷款方沟通预扣税的问题， 因此我们请**Michael Fu**及其工作人员联系每个贷款方进行沟通，解释各种选择。

我们了解以及明白所有中国贷款方的血汗钱是十分重要的。 因此，我们希望在法律框架内尽可能多的提供帮助。 从**4**月到**6**月之间，这笔钱存在**JMJ**集团的银行账户中。 于此同时，我们公司在快速增长，而大量的资金也需要来协助我们增长。由于从逸鼎没有收到有效的贷款人的沟通，我们的一位经理在**6**月份的时候前往新加坡和香港与逸鼎的员工进行面谈。 自**2019**年**4**月份至今，**Michael Fu**和他的公司逸鼎一直在告诉我们，大多数中国贷款人无法将资金退回到原始汇款账户中。**Michael Fu**与他的公司还声称不接受预扣税。 从那以后，**Michael Fu**聘请了一位律师，我们开始与这位律师沟通。 在**2019**年**9**月的第一周，**Michael Fu**签署了一份无约束力的协议， 也是从那时起，他一直在联系您。 从**2019**年**4**月到**6**月， 我们没有在**Michael Fu**身上看到任何的进展。 他还阻止我们直接与您联系， 最后决定放弃与每个中国的贷款人进行沟通。

在过去的几周里，**Michael Fu**告诉我们，作为我们在中国的代理商，成本变得越来越高了。 自**2018**年以来，**JMJ**集团已经向**Michael Fu**及其公司支付了**180**万美金的佣金。 我们每年还需要支付利息给他以员工，家人等名义投资的一部分赚取的佣金。 所以，他在担任我们中国代理期间，已经赚了一大笔钱。

作为总结，我们希望为大家提供以下帮助：

在大约**3-4**个月之前， 我们与一部分贷款人调解的过程中，决定了三种不同的选择。

- 方案一是通过完成下列要求来遵守法律框架的要求
    - 扣除预扣税部分后返还剩余利息
    - 利息支付必须返回原始汇款账户
    - 解除贷款协议（如果两年期满）
    - 提供原汇款单的复印件
    - 提供美国国税局提供的税号
    - 我们准备好在认证完所有文件的**30**天内汇出利息
    - 在利息支付后的**90**天内，我们将汇出本金
- 方案二
    - 由于上市公司的股票在全国范围内都是可转让的，因此您可以将贷款转换为股票，我们将提供回购担保， 这样您就可以按照这个流程来获得付款。
- 方案三

- 我们可以咨询专家来为根据您的需求来定制一个方案，在这个情况下，我们要求您支付**10%** 的费用

鉴于这是我们第一次尝试与您直接沟通，因此希望您能理解我们正在努力工作，帮助和协助解决每个中国贷款人有关的任何问题。 我们很乐意回答您的所有问题并希望为您提供最好的服务。 我们位于德克萨斯州达拉斯办公室的两位来自中国的员工可以在您方便的时候与您联系。 我们相信，今后与您的直接沟通不会有任何问题。 请尽快给我们答复。

**谢谢!**

**经理[亚洲业务]**

**JMJ集团**

**德克萨斯州达拉斯**