**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

# PETITIONING CREDITORS' OPPOSITION TO ALLEGED DEBTORS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 303(i)

Brian M. Gargano *(admission pending)*
bgargano@nguyen-chen.com
Jiangang Ou
jou@nguyen-chen.com
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: (832) 767-0339
Fax: (832) 767-0669

**Attorneys for the Petitioning Creditors**

[1] Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC. Alleged Debtors' federal tax identification numbers are unknown to Petitioning Creditors at this time.

## TABLE OF CONTENTS

**TABLE OF CONTENTS**---------------------------------- ERROR! BOOKMARK NOT DEFINED.

**TABLE OF AUTHORITIES --------------------------------------------------------------------------- 3**

**PRELIMINARY STATEMENT---------------------------------------------------------------------------- 5**

**PROCEDURAL AND FACTUAL BACKGROUND------------------------------------------------- 5**

**ARGUMENTS & AUTHORITIES------------------------------------------------------------------10**

**A. Legal Standard --------------------------------------------------------------------------------10**
**B. Alleged Debtors' mischaracterize the legal standards for awarding fees, costs, and punitive damages under 11 U.S.C § 303(i) ------------------------------------------------13**
**C. The Court should deny Alleged Debtors' request for punitive damages --------------15**
**D. The Court should deny Alleged Debtors' request for attorneys' fees and costs------16**
**E. Alleged Debtors' Motion is premature and requested award is unwarranted -------19**

**CONCLUSION------------------------------------------------------------------------------------------19**

# TABLE OF AUTHORITIES

**Cases**

*Aigner v. McMillan*, No. 11-47029- DML-7, 2013 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013) ........ 13
*DVI Receivables XIV, LLC v. Rosenberg (In re Rosenberg)*, 779 F.3d 1254, 1267–68 (11th Cir. 2015) ........ 20
*Forever Green Athletic*, 804 F.3d 328, 335 (3d Cir. 2015)) ........ 12, 15
*In re Acis Capital Mgmt., L.P.*, 604 B.R. at 531 ........ 13, 15
*In re All Media Props., Inc.*, 5 B.R. 126, 137 (Bankr. S.D. Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir. Unit A May 1981) ........ 15
*In re Allen Rogers and Company*, 34 Bankr. 631, 633 (Bankr. S.D.N.Y. 1983) ........ 14
*In re Allied Riser Commc'ns Corp.*, 283 B.R. 420 (Bankr. N.D. Tex. 2002) ........ 14, 16, 17, 18
*In re Clean Fuel Techs. II, LLC*, 544 B.R. 591, 603 (Bankr. W.D. Tex. 2016) ........ 12, 19
*In re John Richards Homes Bldg. Co.*, 439 F.3d 248, 255 n.2 (6th Cir. 2006)) ........ 12
*In re Landmark Distribs., Inc.*, 189 B.R. 290, 309-10 (Bankr. D.N.J. 1995)) ........ 12
*In re Nordbrock*, 772 F.2d 397 (8th Cir. 1985) ........ 14
*In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993) ........ 13
*In re Synergistic Techs., Inc.*, No. 07-31733-SGJ-7, 2007 WL 2264700 (Bankr. N.D. Tex. Aug. 6, 2007) ........ 12, 13, 15, 17
*In re Tichy Elec. Co.*, 332 B.R. 364, 372 (Bankr. N.D. Iowa 2005) ........ 20
*In re TRED Holdings, L.P.*, 2010 Bankr. LEXIS 3109, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010) ........ 13
*In re W. Side Cmty. Hosp., Inc.*, 112 B.R. 243, 258 (Bankr. N.D. Ill. 1990) ........ 14
*In re Xacur*, 219 B.R. 956, 970 (Bankr. S.D. Tex. 1998) ........ 14
*Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484, 530 (N.D. Tex. 2019) ........ 12

**Statutes**

11 U.S.C. § 303(i)(1) ........ 11
11 U.S.C. § 303(i)(2) ........ 14

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[2]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**BRIEF OF PETITIONING CREDITORS' IN OPPOSITION TO ALLEGED DEBTORS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 303(i)**

Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wenjuan Yin, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jinqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu, (collectively, the "Petitioning Creditors"), file this response in opposition to Alleged Debtors' Motion for Recovery of Attorneys' Fees, Costs and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i), and would respectfully show the Court as follows:

[2] Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC. Alleged Debtors' federal tax identification numbers are unknown to Petitioning Creditors at this time.

## PRELIMINARY STATEMENT

Alleged Debtors' request for costs, attorneys' fees, compensatory and punitive damages should be denied in its entirety. Alleged Debtors cannot recover punitive damages because there is a presumption Petitioning Creditors acted in good faith, and Alleged Debtors did not provide any evidence to support its burden to prove bad faith by a preponderance of the evidence. Instead, Alleged Debtors' assertions of bad faith rely entirely on speculation and misrepresentations of fact.

The Court should also reject Alleged Debtors' request for costs and attorneys' fees because every factor courts routinely consider when deciding whether to award costs and attorneys' fees weighs against Alleged Debtors. Accordingly, their Motion should be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

The Petitioning Creditors are primarily composed of Chinese nationals who entered into loan agreements with the Alleged Debtors for the purpose of the Alleged Debtors' acquisition of land to construct horizontal improvements to create a subdivision. Alleged Debtors defaulted on said loan agreements by failing to make payments to Petitioning Creditors when they became due. The Alleged Debtors are, in fact, mere shell companies and do not engage in business and routine operations.[3] Indeed, most of the Alleged Debtors have no employees, no business operation, no revenue, no office space, little assets,[4] no additional lines of credit, and no general business affairs of note.

[3] The Petitioning Creditors will show same to the Court if being allowed to proceed with the discovery upon the Alleged Debtors, though Alleged Debtors decisively and repeatedly refused to produce their books and records, specifically, financials (if any), to the Petitioning Creditors.

[4] Two of the seven Alleged Debtors, Wall007 LLC and Wall009 LLC, which were the first two entities kicking off the series of international borrowing activities, apparently purchased and owned certain property which were mortgaged to creditors other than the Petitioning Creditors. Based on the Petitioning Creditors investigation prior to the filing of these Involuntary Bankruptcy cases, five of the seven Alleged Debtors that received the loan in the total amount of approximately 30 million USD, did not purchase any property as they warranted and represented when raising millions of dollars from these innocent overseas lenders who baselessly, wrongfully and regretfully believed that American business entities shall be trustworthy and everyone's lawful rights and legal claims would be better protected by the U.S. law and legal system than any other jurisdiction in the world.

On April 8, 2020, Petitioning Creditors filed Chapter 7 Involuntary Bankruptcy petitions (the "Petitions") against each Alleged Debtor. [Dkt. No. 1 in 20-31131]; [Dkt. No. 1 in 20-31133]; [Dkt. No. 1 in 20-31134]; [Dkt. No. 1 in 20-31135]; [Dkt. No. 1 in 20-31136]; [Dkt. No. 1 in 20-31138]; and [Dkt. No. 1 in 20-31139]. On April 24, 2020, the Court granted Petitioning Creditors' motions to jointly administer the bankruptcy cases (the "Cases") under the lead case WALL007 LLC [Dkt. No. 11 in 20-31131] (the "Lead Case").

On May 7, 2020, the Alleged Debtors filed Motions to Dismiss. *See* [Dkt. Nos. 18–19 in 20-31131]; [Dkt. Nos. 15–16 in 20-31133]; [Dkt. Nos. 14–15 in 20-31134]; [Dkt. Nos. 14–15 in 20-31135]; [Dkt. Nos. 14–15 in 20-31136]; [Dkt. Nos. 14–15 in 20-31138]; and [Dkt. Nos. 14–15 in 20-31139] (the "Motions to Dismiss"). The Motions to Dismiss sought dismissal of the Petitions alleging, *inter alia*, that: (1) there are an insufficient number of Petitioning Creditors to support the filing of the Petitions against Alleged Debtors; (2) Petitioning Creditors' claims are in bona fide dispute; (3) Alleged Debtors are generally paying their respective debts; and (4) the Petitions are not in the best interests of Alleged Debtors and their creditors. *See id.*

On June 1, 2020, Petitioning Creditors propounded their First Set of Interrogatories ("Interrogatories") and First Request for Production of Documents ("Document Requests") (together, the "Requests") to Alleged Debtors. Alleged Debtors' discovery responses were grossly deficient and Alleged Debtors did not produce the documents requested. As a result, Petitioning Creditors repeatedly requested the Alleged Debtors cure their deficient responses and produce the requested documents. The Alleged Debtors refused these reasonable requests. Accordingly, on July 10, 2020, the Parties via their counsel conferred on the issue but were unable to amicably resolve Petitioning Creditors' objections to Alleged Debtors' discovery responses.

On July 27, 2020, Petitioning Creditors filed a Motion to Compel to wit they requested the Court to compel Alleged Debtors to produce written discovery and comply with Petitioning Creditors' discovery demands. [Dkt. No. 92]. Subsequently, on August 10, 2020, Petitioning Creditors amended their Motion to Compel (the "Amended Motion to Compel") which further requested the Court to compel Alleged Debtors to produce for deposition (i) Timothy Barton; (ii) Venkat Murugan; (iii) Hongpeng Lin; and (iv) Saskya Bedoya. [Dkt. No. 129].

On or about August 4, 2020, counsel for the Alleged Debtors noticed the depositions of the following eleven (11) Petitioning Creditors (the "Petitioner Deponents"): Jin Wang, Heng Zhang, Ying Zhou, Li Jiang, Weisi Wang, Wanwan Li, Kangying Mao, Qin Chu, Di Tang, Jiaxiang Lu, and Yijing Wu. In response, the Alleged Debtors were advised that Petitioning Creditors (who are Chinese Nationals), the vast majority of whom reside in mainland China, were unable to enter into the United States due to the ongoing COVID-19 pandemic and specifically because of the travel restrictions imposed by the Trump Administration.

On August 17, 2020, the Court held a hearing on the multiple contested discovery matters, including the Discovery Motions. At the hearing, counsel for the Petitioning Creditors and the Court briefly discussed the implications of the travel ban to the U.S. from China due to the ongoing COVID-19 pandemic. Although the Court considered the foregoing, including the impediments the travel ban had on the ability of Chinese nationals to travel to the United States, the Court determined that the Petitioning Creditor Deponents are nonetheless required to appear in person in the United States for depositions. As a result of the Court's Orders, numerous Petitioning Creditors committed to appearing in-person for their live depositions. [Dkt. 308 ¶¶ 17-18].

On September 4, 2020, the Court entered an order (the "Discovery Order") requiring Petitioning Creditors' counsel to file a "Live Deposition Agreement" that would confirm that Petitioning Creditors would appear in-person for their respective depositions in the United States. [Dkt. No.168]. However, since entry of the Discovery Order, the Petitioning Creditors (like everyone else around the globe) have faced the obstacles and impediments COVID-19 has and continues to create for foreign nationals traveling into the United States. Notably, and directly impacting the Petitioning Creditors is the Trump Administration's travel ban which still remains in effect.[5] As such, the Petitioning Creditors were and still are prohibited from traveling directly from China to the United States and appearing for live depositions.[6] As a result, the Petitioning Creditors repeatedly offered to appear by video for depositions in order to comply with the Court's mandate but the Alleged Debtors rejected said offer.

Under the Court's Order dated November 23, 2020 ("Compliance Order"), the Court required Petitioning Creditors' counsel to file a "Live Deposition Agreement" by the end of the day on December 4, 2020, or the Petitions would be dismissed by the Court. [Dkt. No. 287]. On December 4, 2020, Petitioning Creditors: Jin Wang, Heng Zhang, Ying Zhou, Li Jiang, Weisi Wang, Wanwan Li, Kangying Mao, Qin Chu, Di Tang, Jiaxiang Lu, and Yijing Wu complied with the Court's mandate and filed a Live Deposition Agreement with the Court, which Petitioning Creditors' counsel reasonably believed was in accord with the Court's Compliance Order. [Dkt.

---

[5] *See* https://www.nafsa.org/regulatory-information/covid-19-restrictions-us-visas-and-entry and https://www.federalregister.gov/documents/2020/02/05/2020-02424/suspension-of-entry-as-immigrants-and-nonimmigrants-of-persons-who-pose-a-risk-of-transmitting-2019 (People other than U.S. citizens, permanent residents, and their immediate family were prohibited from entering the U.S. within 14 days of being in China).

[6] It is beyond dispute the travel ban makes it much costlier and more difficult for Chinese nationals to travel to the U.S. First, the Chinese national must have a valid passport and visa to travel to a country not on the banned list. Second, the Chinese national must bear the burden and cost of having to travel and reside for at least 14 days in quarantine before being allowed to travel to the U.S. Third, the Chinese national must then repeat the process in order to return to his/her home in China. Additionally, the travel ban is applicable to Europe as well.

No. 308]. Notably, at the time of filing the Live Deposition Agreement, the Court had set a hearing on December 9, 2020 regarding the Alleged Debtors' Third Motion to Dismiss ("Third MTD"). [Dkt. No. 182]. The Third MTD was premised upon the Petitioning Creditors Deponents' alleged refusal to appear for depositions in the United States which is erroneous. In any event, the Petitioning Creditors responded and timely filed their opposition to the Third MTD. [Dkt. No. 294].

On December 7, 2020, without warning, notice or an attempt to cure, the Court deemed the Live Deposition Agreement insufficient and *sua sponte* issued an Order Dismissing Involuntary Bankruptcy Cases Without Prejudice ("Dismissal Order"). [Dkt. No. 310]. In the Dismissal Order, the Court set forth that the most significant problem with the Live Deposition Agreement "is the condition that COVID-19 vaccines are available to the Petitioner Deponents prior to their departure to the United States." *Id.* The Court expressed concern that this condition would add "far too much delay and uncertainty" to these proceedings due to the fact that "it is presently unknown when a vaccine will receive final regulatory approval or how long it will take to manufacture and distribute a vaccine once approved . . ." *Id.* The Court also expressed concern that such uncertainty could have serious consequences for the Alleged Debtors and third parties, including loss of credit standing, interference with general business affairs, and public embarrassment. *Id.* As such, the Court explained that "these cases are being dismissed without prejudice to refiling" and that if "[Petitioners] are more comfortable traveling to the United States in the future to prosecute their case, they are welcome to re-file the involuntary petitions at that time." *Id.*

On December 17, 2020, the Alleged Debtors, apparently motivated by revenge, filed the instant motion seeking an award for attorneys' fees, costs, compensatory damages, and punitive damages against Petitioning Creditors in the absurd amount of **$138,671,477.76**. [Dkt. 313].

Ironically, the Alleged Debtors have asked the Court in their motion to award them a windfall of millions of dollars even though they absconded millions of dollars from Petitioning Creditors under the auspices of loans in which Alleged Debtors have yet to repay. Indeed, to date, little, if any of the owed principal and accumulated interest has been paid back to the Petitioning Creditors.

On December 21, 2020, Petitioning Creditors filed their Notice of Appeal of the Dismissal Order, [Dkt. 314], and Appellants' Statement of Issues and Designation of Record on January 4, 2021. [Dkt. 318].

Further, as Petitioning Creditors' counsel was under the apprehension and reasonable belief that the Live Deposition Agreement was sufficient and in compliance with the Court's Order, Petitioning Creditors have moved the Court for reconsideration and vacatur of its dismissal order and have respectfully requested the Court grant Petitioning Creditors them the opportunity to cure the deficiency. [Dkt. No. 323]. Indeed, were the Court to grant Petitioning Creditors motion, the Alleged Debtors' instant motion would become moot and no longer justiciable.

## ARGUMENTS & AUTHORITIES

### A. LEGAL STANDARD

Pursuant to 11 U.S.C. § 303(i):

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>
> (A) costs; or
>
> (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
>
> (A) any damages proximately caused by such filing; or

(B) punitive damages.

11 U.S.C. § 303(i).

Whether to award costs or attorney's fees under 11 U.S.C. § 303(i)(1) is essentially a discretionary determination by the court. *In re Clean Fuel Techs. II, LLC*, 544 B.R. 591, 601 (Bankr. W.D. Tex. 2016). In determining whether to award fees under § 303(i)(1), the court examines the "totality of the circumstances" to determine whether an award is appropriate. *In re Synergistic Techs., Inc.*, No. 07-31733-SGJ-7, 2007 WL 2264700 (Bankr. N.D. Tex. Aug. 6, 2007). As this Court has noted, courts have developed a "dizzying array of standards" to determine whether an involuntary petition was filed in bad faith under 11 U.S.C. § 303(i)(2). *Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484, 530 (N.D. Tex. 2019). Some of these tests include:

> (1) the "improper use" test, which finds bad faith when a petitioning creditor uses involuntary bankruptcy proceedings in an attempt to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum[;]
>
> (2) the "improper purpose" test, which finds bad faith based upon the petitioner's improper motivation for filing the petition. Cases under this line of reasoning have emphasized that the petition was motivated by ill will, malice or for the purpose of harassing the debtor[;]
>
> (3) the "objective test," which essentially asks the question whether or not a reasonable person would have filed the involuntary petition under the same circumstances;
>
> (4) the "subjective test" which is almost identical to the "improper purpose" test in that they both look to the subjective motivation of the petitioning creditor for the filing; and

> (5) the "combined" or "two part" test which finds bad faith based upon consideration of both the subjective motivation and the objective reasonableness of the petitioning creditor(s).

*Id.* at 530-31 (citing *In re Landmark Distribs., Inc.*, 189 B.R. 290, 309-10 (Bankr. D.N.J. 1995)).

Courts have also applied a "totality of circumstances" test, which essentially combines the improper use, improper purpose, and objective tests. *See, e.g., Forever Green*, 804 F.3d at 336 (citing *In re John Richards Homes Bldg. Co.*, 439 F.3d 248, 255 n.2 (6th Cir. 2006)). This test has been used by at least one bankruptcy court in this circuit. *See In re TRED Holdings, L.P.*, 2010 Bankr. LEXIS 3109, 2010 WL 3516171, at *7 (Bankr. E.D. Tex. Sept. 3, 2010).

The Fifth Circuit has not expressly endorsed any particular standard, but it has considered both objective and subjective factors in deciding whether an involuntary petition was filed in bad faith. *In re Acis Capital Mgmt., L.P.*, 604 B.R. at 531 (citing *In re Sims*, 994 F.2d 210, 222 (5th Cir. 1993) (considering whether "the filing of the petitions was 'motivated by ill will, malice or for the purpose of embarrassing or harassing the debtor[s],'" and whether petitioners "conducted a reasonable inquiry into the facts and the law prior to filing the petitions, as required by Bankruptcy Rule 9011"(internal citations omitted)). Any test that considers *only* subjective or objective factors thus cannot be correct. *In re Acis Capital Mgmt., L.P.*, 604 B.R. at 531 (concluding that bankruptcy court did not err in holding that involuntary petitions were filed in good faith where creditor filed petitions out of legitimate concern that alleged debtor was “fraudulently transferring assets to the detriment of all creditors.”).

It is well-settled that a Court should not award punitive damages unless Alleged Debtors are able to provide “strong evidence that Petitioner acted willfully or wrongfully.” *Aigner v. McMillan*, No. 11-47029- DML-7, 2013 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013). As

such, unless the Alleged Debtors have presented to the Court sufficient evidence of bad faith, the Court must deny the request for punitive damages.

### B. ALLEGED DEBTORS' MISCHARACTERIZE THE LEGAL STANDARDS FOR AWARDING FEES, COSTS, AND PUNITIVE DAMAGES UNDER 11 U.S.C § 303(I)

Alleged Debtors incorrectly claim that Section 303(i)(1) of the Bankruptcy Code creates a presumption in favor of awarding attorneys' fees and costs to Alleged Debtors. (Debtors' Mtn. at ¶ 22). But this Court has expressly rejected Alleged Debtors' contention. *In re Synergistic Techs., Inc.*, No. 07-31733-SGJ-7, 2007 WL 2264700 (Bankr. N.D. Tex. Aug. 6, 2007) (Jernigan, J.). As the Court explained there, "this court concludes that, with respect to section 303(i)(1) attorney's fee shifting, a court looks at the totality of the circumstances. No presumptions apply one way or another." *Id.* at *5.

Former Chief Judge Felsenthal reached the same conclusion in *In re Allied Riser Commc'ns Corp.*, 283 B.R. 420 (Bankr. N.D. Tex. 2002). He wrote, "this court respectfully disagrees that § 303(i) of the Bankruptcy Code establishes a rebuttable presumption." *Id.* at 424. Indeed, Courts rarely award costs and attorneys' fees under Section 303(i)(1) in the absence of bad faith. *See In re W. Side Cmty. Hosp., Inc.*, 112 B.R. 243, 258 (Bankr. N.D. Ill. 1990) (although Section 301(i)(1) "does not require a bad faith finding," few courts "have assessed costs and attorneys' fees pursuant to § 303(i)(1) absent a bad faith finding"); *see also In re Xacur*, 219 B.R. 956, 970 (Bankr. S.D. Tex. 1998) (declining "to award any attorneys' fees, costs, or damages" absent a showing of bad faith); *In re Allen Rogers and Company*, 34 Bankr. 631, 633 (Bankr. S.D.N.Y. 1983) (sufficient cause must be shown to award the debtor costs and fees under § 303(i)); *In re Nordbrock*, 772 F.2d 397 (8th Cir. 1985) (holding that district court did not abuse its discretion declining to award debtor attorney's fees on creditor's appeal from dismissal of involuntary petition in bankruptcy court).

Similarly, the facts courts consider when weighing the totality of the circumstances under Section 303(i)(1) take into account whether a petitioning creditor acted in bad faith. *See Allied Riser*, 283 B.R. at 424 (noting petitioners in that case "did not file the involuntary petition in bad faith," and "the presence or absence of bad faith will inform the exercise of the court's discretion under § 303(i)"). Because Petitioning Creditors did not act in bad faith, no costs or attorneys' fees should be awarded in this case.

With respect to punitive damages, Alleged Debtors must prove Petitioning Creditors filed the involuntary petition in bad faith. *See* 11 U.S.C. § 303(i)(2) (allowing punitive damages "against any petitioner that filed the petition in bad faith"). In *Synergistic Technologies*, this Court adopted the "majority position" that there is "a presumption that the petitioning creditors acted in good faith in filing an involuntary petition, and that the alleged debtor then has a burden of proving bad faith by a preponderance of the evidence." 2007 WL 2264700, at *6. Thus, Alleged Debtors bear the burden of proving bad faith by a preponderance of the evidence before they may recover punitive damages. But Alleged Debtors have presented no evidence of bad faith. Thus, the Motion should be denied as Alleged Debtors.

The Third Circuit, in a case relied upon by the Alleged Debtors, describes "protect[ing] against the preferential treatment of other creditors or the dissipation of the debtor's assets" as legitimate purposes of an involuntary petition. *In re Acis Capital Mgmt., L.P.*, 604 B.R. at 531 (quoting *Forever Green Athletic*, 804 F.3d 328, 335 (3d Cir. 2015)). An additional "purpose of an involuntary procedure is to provide a method for creditors to protect their rights against debtors who are not meeting their debts" by "forc[ing] [them] to submit to the jurisdiction of the bankruptcy court." *Id.* (quoting *In re All Media Props., Inc.*, 5 B.R. 126, 137 (Bankr. S.D. Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir. Unit A May 1981) (adopting opinion of bankruptcy court)).

As the Petitioning Creditors have instituted these cases for the purpose of protecting against the dissipation of the Alleged Debtor's assets and to protect their rights against the Alleged Debtors who are not meeting their debts, they have acted in good faith in instituting these proceedings. The Alleged Debtors have not provided the Court with even a scintilla of evidence demonstrating otherwise.

**C. THE COURT SHOULD DENY ALLEGED DEBTORS' REQUEST FOR PUNITIVE DAMAGES**

As demonstrated above, there is a presumption the Petitions were filed in good faith. *See Synergistic Techs.*, 2007 WL 2264700, at *6. As such, for punitive damages to even be recoverable, Alleged Debtors must prove by a preponderance of the evidence that Petitioning Creditors filed the Petitions in bad faith. *Id.* Alleged Debtors have clearly failed to meet their burden of proof.

Alleged Debtors erroneously claim in their Motion that Petitioning Creditors acted in bad faith by virtue of (1) forum shopping, (2) refusal to comply with the Court's order to file a Live Deposition Agreement, and (3) false claims utilizing COVID-19 to subvert the discovery process; namely, the taking of depositions with respect to Petitioning Creditors. Such allegations are misleading and unsupported by credible evidence. Littered throughout the motion are nothing but conclusory allegations which the Alleged Debtors have grossly failed to substantiate with facts. Indeed, Alleged Debtors' evidence. that Petitioning Creditors were forum shopping or generating false COVID-19–related excuses to undermine the facilitation of depositions involving Petitioning Creditors equates to nothing more than imagined innuendo. It is uncontroverted that, Petitioning Creditors did, indeed, file a Live Deposition Agreement demonstrating compliance with the Court's order and expressed a genuine desire to advance the discovery process. To state otherwise

is risible as Petitioning Creditors are highly motivated and incentive to advance the litigation and proceeding in order to recover their converted funds.

In short, as the Alleged Debtors have not presented to the Court evidence of bad faith, the Court must deny the request for punitive damages.

### D. THE COURT SHOULD DENY ALLEGED DEBTORS' REQUEST FOR ATTORNEYS' FEES AND COSTS

The circumstances of this case demonstrate that Alleged Debtors are not entitled to recover attorneys' fees or costs from Petitioning Creditors. To begin with, Alleged Debtors bear the burden of proving the factors discussed in *Allied Riser* "weigh in favor of an award of attorney's fees." *Allied Riser*, 283 B.R. at 424. As the Alleged Debtors have not satisfied that burden, "the court should apply the American Rule" and require Alleged Debtors to pay its own fees and expenses. *Id.*

As clearly demonstrated herein, Petitioning Creditors did not file the Petitions in bad faith. Thus, the first factor addressed in *Allied Riser* is whether Petitioning Creditors filed the involuntary petition in bad faith. As discussed above, there is a presumption Petitioning Creditors acted in good faith, and Alleged Debtors failed to present any evidence to rebut that presumption—let alone a preponderance of the evidence. *See Synergistic Techs.*, 2007 WL 2264700, at *6. Accordingly, the first factor weighs in favor of denying the Motion.

The second factor Chief Judge Felsenthal addresses is the "reasonableness of the actions taken by the petitioning creditors and their motivations and objectives." *Allied Riser*, 283 B.R. at 424. The undisputed evidence shows Petitioning Creditors' actions were reasonable and that they acted in good faith. Indeed, Petitioning Creditors were seeking to protect Alleged Debtors' assets and preserve the cash that is owed to them, and as such they acted reasonably. In *Allied Riser*, the petitioners "were motivated, in part, to preserve Allied Riser's $60 million in remaining cash, for

distribution to the creditors on the outstanding $117 million of notes"—just as Petitioning Creditors here were motivated to preserve Alleged Debtor's limited assets. *Allied Riser*, 283 B.R. at 425. As such, it was reasonable and appropriate for Petitioning Creditors to seek to preserve the limited assets available by filing the involuntary petition. *Id.*

Even were the Court to scrutinize the effectiveness of Petitioning Creditors' strategy, filing an involuntary petition to preserve Alleged Debtors' limited assets does not support awarding attorneys' fees to Alleged Debtors. *See id.* ("While the court questioned the effectiveness of the strategy prior to a Delaware court trial, the petitioning creditors' motivation does not support the award of attorney's fees."). Indeed, even if Section 303(i)(1) created a presumption in favor of awarding attorneys' fees as Alleged Debtors contend, Petitioning Creditors' "motivation to preserve cash" by itself is sufficient to rebut that presumption and hold that no costs or attorneys' fees should be awarded. *Id.* at 426 ("In the event that an appellate court concludes that § 303(i) establishes a presumption in favor of awarding fees, this court concludes that the petitioning creditors rebutted the presumption based on the motivation to preserve cash in a failing market."). As the evidence shows Petitioning Creditors acted reasonably and had good faith motivations and objectives for filing the bankruptcy petition, the second factor also weighs against awarding Alleged Debtors attorneys' fees and costs.

The third factor considered in *Allied Riser* is "the merits of the petitioning creditors' view that the petition was proper and sustainable." *Allied Riser*, 283 B.R. at 425. Here, Petitioning Creditors' provided ample evidence showing they acted properly when filing the involuntary petition. Even if the Court were to ultimately find that a bona fide dispute exists in this case (which it does not)—as Judge Felsenthal did in *Allied Riser*—that does not mean Petitioning Creditors'

lacked valid arguments supporting their litigation positions. *See Allied Riser*, 283 B.R. at 425. Just as in *Allied Riser*, this factor also weighs against granting the Motion.

Furthermore, it should be recognized that the dismissal underlying Alleged Debtors' Motion was issued without prejudice and did not address the merits of the Petitioning Creditors' claims. The Dismissal Order specifically states that "these cases are being dismissed without prejudice to refiling." [Dkt. No. 310]. It should also be noted that the Alleged Debtors had previously filed Motions to Dismiss the Cases on May 7, 2020. *See* [Dkt. Nos. 18–19 in 20-31131]; [Dkt. Nos. 15–16 in 20-31133]; [Dkt. Nos. 14–15 in 20-31134]; [Dkt. Nos. 14–15 in 20-31135]; [Dkt. Nos. 14–15 in 20-31136]; [Dkt. Nos. 14–15 in 20-31138]; and [Dkt. Nos. 14–15 in 20-31139] (collectively, the "Motions to Dismiss").[7]

Indeed, the Court notes in its dismissal order: "If [Petitioners] are more comfortable traveling to the United States in the future to prosecute their case, they are welcome to re-file the involuntary petitions at that time." [Dkt. No. 310]. This fact distinguishes these cases from every case cited in support of Alleged Defendants' Motion for Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i). [Dkt. 313]. Thus, the Court's Dismissal Order should not support an award for attorneys' fees. *See also In re Clean Fuel Techs. II, LLC*, 544 B.R. 591, 603 (Bankr. W.D. Tex. 2016) (denying request for attorney fees where decision to dismiss the involuntary petition was "technical" and it was "readily apparent that [alleged debtor] was a defunct non-operating entity" with very little cash funds and was not paying

[7] The Motions to Dismiss sought dismissal of the Petitions alleging, inter alia, that: (1) there are an insufficient number of Petitioning Creditors to support the filing of the Petitions against the Alleged Debtors; (2) the Petitioning Creditors' claims are subject to bona fide dispute; (3) the Alleged Debtors are generally paying their respective debts; and (4) the Petitions are not in the best interests of each of the Alleged Debtors and their creditors. See Motions to Dismiss. There was even a hearing scheduled before the Court on December 9, 2020, on the Alleged Debtors' Third Motion to Dismiss ("Third MTD"). [Dkt. No. 182]. Yet, in its sua sponte Dismissal Order on December 7, 2020, the Court decided to dismiss the cases without prejudice. [Dkt. No. 182].

creditors). As such, given the dismissal here was technical and not substantive, 11 U.S.C § 303(i) should even apply and the instant motion should be denied on this ground alone.[8]

### E. ALLEGED DEBTORS' MOTION IS PREMATURE AND REQUESTED AWARD IS UNWARRANTED

Notably, Petitioning Creditors have filed a motion for reconsideration of the Dismissal Order and notice of appeal regarding the same. To award Alleged Debtors fees now would be premature and violate the policy against piecemeal appeals of claims. *See DVI Receivables XIV, LLC v. Rosenberg (In re Rosenberg)*, 779 F.3d 1254, 1267–68 (11th Cir. 2015). Additionally, in support of their request for damages in the amount of approximately $138,000.000.00, Alleged Debtors attach: (1) a self-serving Declaration of Timothy Barton, consisting of less than two pages of conclusory statements, and (2) a table prepared by counsel, containing general categories of damages and the amounts requested for each. The burden is on the Alleged Debtors to establish the nature and the extent of their damages. *In re Tichy Elec. Co.*, 332 B.R. 364, 372 (Bankr. N.D. Iowa 2005) (citing *In re Mundo Custom Homes, Inc.,* 179 B.R. 566, 569 (Bankr. N.D. Ill. 1995)). Alleged Debtors failure to provide a scintilla of evidence to prove the damages it seeks does not satisfy its burden.

## CONCLUSION

Alleged Debtors have failed to satisfy their burden to show that they are entitled to recover costs, attorneys' fees, or compensatory or punitive damages. Thus, Petitioning Creditors request the Court deny Alleged Debtors' Motion in its entirety. Petitioning Creditors also request all other relief to which they may be entitled.

---

[8] Here, the Dismissal Order is related to an issue that has no bearing on the merits of the case. It is also readily apparent that Alleged Debtors are mere shell companies and are not paying their creditors. Upon information and belief, most of Alleged Debtors have no employees, no business operation, no revenue, no office space, limited assets, no additional lines of credit, and no general business affairs of note. Moreover, the Court states that Petitioning Creditors are "welcome to re-file" their claims. [Dkt. 310].

Dated: January 7, 2021

Respectfully submitted,

/s/ *Brian M. Gargano*
Brian M. Gargano *(admission pending)*
bgargano@nguyen-chen.com
Jiangang Ou
jou@nguyen-chen.com
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
Tel: (832) 767-0339
Fax: (832) 767-0669

*Counsel for the Petitioning Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and forgoing instrument was served on the date that the instrument was filed electronically. Service has been accomplished electronically and/or by first-class mail to the parties listed below.

**Via U.S. Mail**
WALL007, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via U.S. Mail**
WALL009, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via U.S. Mail**
WALL010, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via U.S. Mail**
WALL011, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via U.S. Mail**
WALL012, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via U.S. Mail**
WALL016, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via U.S. Mail**
WALL017, LLC
13901 Midway Rd., Ste. 102
Dallas, TX 75244

**Via ECF**
Khudabuksh K. Walji, Esquire
Law Office of K. Walji
10701 Corporate Dr., Ste. 350
Stafford, TX 77477

**Via ECF**
Robert W. Buchholz, Esquire
bob@attorneybob.com

**Via ECF**
Darrell Wayne Cook, Esquire
dwcook@attorneycook.com
all@attorneycook.com

**Via ECF**
Katherine T. Hopkins, Esquire
katherine.thomas@kellyhart.com

**Via ECF**
Joyce W. Lindauer, Esquire
joyce@joycelindauer.com
dian@joycelindauer.com
gina@joycelindauer.com

**Via ECF**
Steven C. Metzger, Esquire
smetzger@pmklaw.com

**Via ECF**
Michael P. Ridulfo, Esquire
mridulfo@krcl.com
dtrevino@krcl.com
mridulfo@ecf.courtdrive.com

**Via ECF**
Patrick D. Sullivan, Esquire
sullivan@hooverslovacek.com

**Via ECF**
United States Trustee
ustpregion06.da.ecf@usdoj.gov

**Via ECF**
Behrooz P. Vida, Esquire
filings@vidalawfirm.com
legalprokirstin@gmail.com
bkfilings@yahoo.com

Dated: January 7, 2021 *__/s/ Jiangang Ou__*
Jiangang Ou