FILED
DALLAS COUNTY
11/15/2019 12:51 PM
FELICIA PITRE
DISTRICT CLERK

Kayla Buckley

**CAUSE NO. DC-19-18361**

| | | |
|---|---|---|
| **SILVERLAND FINANCE LTD., PLATINUM INVESTMENT CORPORATION, LIN ZHOU, JIN WANG, AND LI JUN,** | § | **IN THE DISTRICT COURT** |
| **Plaintiffs,** | § | |
| **VS.** | § | B-44TH **JUDICIAL DISTRICT** |
| **WALL007, LLC, WALL009, LLC, TIMOTHY BARTON, SADA CUMBER, CARNEGIE DEVELOPMENT, INC, AND JMJ DEVELOPMENT, LLC,** | § | |
| **Defendants.** | § | **DALLAS COUNTY, TEXAS** |

**PLAINTIFFS' ORIGINAL PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiffs **SILVERLAND FINANCE LTD., PLATINUM INVESTMENT CORPORATION, LIN ZHOU, JIN WANG**, and **LI JUN**, to file this Original Petition against Defendants **WALL007, LLC, WALL009, LLC, TIMOTHY BARTON, SADA CUMBER**, **CARNEGIE DEVELOPMENT, INC,** and **JMJ DEVELOPMENT, LLC,** and would respectfully show unto the Court the following:

**I.**

**DISCOVERY AND DAMAGES**

1. Plaintiffs intend to conduct discovery under level 3 of Rule 190 of the Texas Civil Rules of Civil Procedure. Damages are over $1,000,000.

**II.**

**PARTIES**

2. Plaintiff Silverland Finance Ltd. is a foreign corporation incorporated under the laws of the Marshall Islands.

**EXHIBIT "2"**

3. Plaintiff Platinum Investment Corporation is a foreign corporation incorporated under the laws of China.

4. Plaintiff Lin Zhou is an individual who resides in China.

5. Plaintiff Jin Wang is an individual who resides in Harris County, Texas.

6. Plaintiff Li Jun is an individual who resides in China.

7. Defendant WALL007 LLC is a Texas limited liability company with its principal place of business in Dallas, Texas. WALL007 LLC's registered agent is TRWF Lodge LLC, at 13901 Midway Road, Suite 102, Dallas, Texas.

8. Defendant WALL009 LLC is a Texas limited liability company with its principal place of business in Dallas, Texas. WALL009 LLC's registered agent is TRWF Lodge LLC, at 13901 Midway Road, Suite 102, Dallas, Texas.

9. Defendant Carnegie Development, Inc. is a foreign corporation incorporated in the state of Nevada. Carnegie Development, Inc.'s registered agent is Northwest Registered Agent, LLC, at 401 Ryland Street, Suite 200-A, Reno, Nevada 89502.

10. Defendant JMJ Development, LLC is a Texas limited liability company with its principal place of business in Dallas, Texas. JMJ Development, LLC's registered agent is Timothy Barton, at 13901 Midway Road, Suite 102, Dallas, Texas 75244, or wherever he may be found.

11. Defendant Timothy Barton is an individual who resides in Dallas, Texas. Timothy Barton may be served at 1755 Wittington Place, Suite 340, Dallas, TX 75234 , or wherever he may be found.

12. Defendant Sada Cumber is an individual who resides in Sugarland, Texas. Sada Cumber may be served at 6202 Duke Trail Lane Sugarland, TX 77479 or wherever he may be found.

## III.
## JURISDICTION AND VENUE

13. Jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court. Venue is proper pursuant to Texas Civil Practice and Remedies Code § 15.002 because Dallas County, Texas is Defendants' county of residence and/or principal office in this state.

## IV.
## FACTS

14. Plaintiffs are foreign Chinese nationals and entities that were fraudulently induced to invest millions of dollars based on representations made by Defendants.

15. This action involves, among other things, common law fraud and securities fraud, breach of contract, and breach of fiduciary duty that was perpetrated by Defendants on Plaintiffs to steal, embezzle, and convert each of their investments.

16. In or around 2017, WALL007, LLC ("WALL007") and WALL009, LLC ("WALL009") began acquiring loans from a group of foreign lenders (the "Co-Lenders") to be used in connection with two residential housing development projects in Texas.

17. The loans were collected by Platinum Investment Corporation ("PIC") and/or Silverland Finance Ltd. ("SFL"), acting as agent(s) or intermediaries for the Co-Lenders, and provided to WALL007 and WALL009.

18. WALL007 received a total of two million seven hundred sixty thousand dollars and zero cents ($2,760,000.00) in loans from the Co-Lenders for use on its residential housing development project in Fort Worth, Texas.

19. WALL009 received a total of two million three hundred twenty thousand dollars and zero cents ($2,320,000.00) in loans from the Co-Lenders for use on its residential housing development project in Venus, Texas.

***007 Commission Agreement***

20. On or about April 24, 2017, Silverland Finance Ltd. ("Silverland") entered into a Service and Commission Agreement with WALL007 LLC (the "007 Commission Agreement"). Exhibit A.

21. Timothy Barton signed the 007 Commission Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL007. *See id.*

22. Lynn Zhou signed the 007 Commission Agreement on behalf of Silverland. *See id.*

23. Per the 007 Commission Agreement, Silverland was to act as an agent and intermediary for the group of foreign lenders that loaned WALL007 money for a residential housing development project. *Id.* at ¶1.

24. In exchange for the services Silverland provided per the 007 Commission Agreement, Silverland was to receive the interest in the amount of 20% per annum on the principal of the loans made to WALL007 by the group of lenders. *Id.* at ¶2.

25. In the event of WALL007's default under the 007 Commission Agreement, Silverland "shall have the immediate right to assume control of [WALL007], except for any outstanding indebtedness of [WALL007]." *Id.* at ¶3.

26. WALL007 has defaulted on the 007 Commission Agreement by failing to make any payments to Silverland when they were due. As a result of WALL007's default, Silverland had a Notice of Default sent to WALL007 on or about July 18, 2019. *See* Exhibit B.

***009 Commission Agreement***

27. On or about April 24, 2017, Silverland also entered into a Service and Commission Agreement with WALL009 LLC (the "009 Commission Agreement"). Exhibit C.

28. Timothy Barton signed the 009 Commission Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL009. *See id*.

29. Lynn Zhou signed the 009 Commission Agreement on behalf of Silverland. *See id*.

30. Per the 009 Commission Agreement, Silverland was to act as an agent and intermediary for a group of foreign lenders that loaned WALL009 money for a residential housing development project. *Id*.at ¶1.

31. In exchange for the services Silverland provided per the 009 Commission Agreement, Silverland was to receive the spread between (i) the interest rate to be paid to the Co-Lenders and (ii) 20% per annum on the principal of the loans made to WALL009 by the group of lenders. *Id.* at ¶2.

32. In the event of WALL009's default under the 009 Commission Agreement, Silverland "shall have the immediate right to assume control of [WALL009], except for any outstanding indebtedness of [WALL009]." *Id*. at ¶3.

33. WALL009 has defaulted on the 009 Commission Agreement by failing to make any payments to Silverland when they were due. As a result of WALL009's default, Silverland had a Notice of Default sent to WALL009 on or about July 18, 2019. *See* Exhibit D.

***Jun Loan Agreement***

34. One of the Co-Lenders to WALL007 was Li Jun ("Mr. Jun"). On or about February 25, 2017, Mr. Jun entered into a Loan Agreement with WALL007 (the "Jun Loan Agreement") for the principal sum of two million dollars and zero cents ($2,000,000.00). Exhibit E § 1.1(a)(iv).

The interest on the loan was initially fifteen percent (15%) per annum commencing on April 16, 2017. *Id*.

35. Per the Jun Loan Agreement, WALL007 was to pay Mr. Jun the first year's interest "within ten (10) Working Days after the expiration of one year on April 17th, 2018." *Id*. Whereas, the second year's interest and the total principal balance of the loan was to "be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019." *Id*. Sums not paid by these times, bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due. *Id*.

36. Timothy Barton signed the Zhou Loan Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL007. *See id*. Among the representations and/or promises that were made by Mr. Barton, Carnegie Development, LLC, and/or WALL007 in the Jun Loan Agreement were the following:

a. The funds provided under the Jun Loan Agreement would be used by WALL007 "to acquire the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX." *Id*. at § 1.1(a)(i).

b. WALL007 "shall not effectuate a change in its businesses as is conducted on the date of this Agreement." *Id*. at §3.1(a).

c. WALL007 "shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of [WALL007] that would materially affect [WALL007]'s ability to repay the indebtedness created hereby." *Id*. at §3.2.

d. "[WALL007] will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified." *Id*. at §3.3.

37. WALL007 has defaulted on the Jun Loan Agreement by failing to make any interest or principal payments to Mr. Jun as designated above. As a result of this default, Mr. Jun had a Notice of Default sent to WALL007 on or about July 18, 2019. Exhibit F: Notice of Default – Wall007, LLC.

***Zhou Loan Agreement***

38. One of the Co-Lenders to WALL007 was Lin Zhou ("Ms. Zhou"). On or about April 11, 2017, Ms. Zhou entered into a Loan Agreement with WALL007 (the "Zhou Loan Agreement") for the principal sum of fifty thousand dollars and zero cents ($50,000.00). Exhibit G § 1.1(a)(iv). The interest on the loan was initially fifteen percent (15%) per annum commencing on April 16, 2017. *Id.*

39. Per the Zhou Loan Agreement, WALL007 was to pay Ms. Zhou the first year's interest "within ten (10) Working Days after the expiration of one year on April 17th, 2018." *Id.* Whereas, the second year's interest and the total principal balance of the loan was to "be paid to the Lender within ten (10) Working Days following the expiration of two years on April 17th, 2019." *Id.* Sums not paid by these times, bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due. *Id.*

40. Timothy Barton signed the Zhou Loan Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL007. *See id.* Among the representations and/or promises that were made by Mr. Barton, Carnegie Development, LLC, and/or WALL007 in the Zhou Loan Agreement were the following:

e. The funds provided under the Zhou Loan Agreement would be used by WALL007 "to acquire the 145 acres located in Fort Worth, Texas for residential lot development known as Shelby Estates located South of Shelby Road and West of Rendon Road in Fort Worth TX." *Id.* at § 1.1(a)(i).

f. WALL007 "shall not effectuate a change in its businesses as is conducted on the date of this Agreement." *Id*. at §3.1(a).

g. WALL007 "shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of [WALL007] that would materially affect [WALL007]'s ability to repay the indebtedness created hereby." *Id*. at §3.2.

h. "[WALL007] will pay the Note according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified." *Id*. at §3.3.

41. WALL007 has defaulted on the Zhou Loan Agreement by failing to make any interest or principal payments to Ms. Zhou as designated above. As a result of this default, Ms. Zhou had a Notice of Default sent to WALL007 on or about July 18, 2019. Exhibit F: Notice of Default – Wall007, LLC.

***Wang Loan Agreement***

42. Another one of the Co-Lenders was Wang Jin ("Ms. Wang"). On or about July 14, 2017, Ms. Wang entered into an Agency and Loan Agreement with PIC and WALL009 (the "Wang Loan Agreement") for the principal sum of one hundred seventy thousand dollars and zero cents ($170,000.00). Exhibit H §1.1(b). The interest on the loan was initially twenty percent (20%) per annum commencing on July 1, 2017.

43. PIC was appointed as the agent for Ms. Wang and the additional Co-Lenders for the purpose of entering into and administering the loans with WALL009. *Id*. § 1.1(a-b). As such, all payments under the agreement were to be made by WALL009 to PIC on behalf of Ms. Wang. *Id*. § 1.1.(b).

44. Per the Wang Loan Agreement, WALL009 was to pay Ms. Wang the first year's interest "within ten (10) business days after July 1, 2018." *Id*. Whereas, the second year's interest and the total principal balance of the loan was to "be paid to the Lender within ten (10) business days of July 1, 2019." *Id*. Sums not paid by these times, bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due. *Id*.

45. Timothy Barton signed the Zhou Loan Agreement as the President of Carnegie Development, LLC, which is the managing member of WALL007. *See id*. Among the representations and/or promises that were made by Mr. Barton, Carnegie Development, LLC, and/or WALL009 in the Wang Loan Agreement were the following:

b. "The Loans and the Additional Loans shall be used to acquire 100 acres located in Venus, Texas for residential lot development known as Venus 100 located on Country Rd 501 and West of FM157 in Venus, Texas ("Property")." *Id*. at §1.1(c)(i).

c. "The Property has a purchase price of $2,900,000 and the balance of funds will be provided by [WALL009]." *Id*.

d. "[WALL009] shall not effectuate a change in its businesses as is conducted on the date of this Agreement." *Id*. at §3.1(a).

e. "[WALL009] shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of [WALL009] that would materially affect [WALL009]'s ability to repay the indebtedness created hereby." *Id*. at §3.2.

f. "[WALL009] will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified." *Id*. at §3.3.

46. WALL009 has defaulted on the Wang Loan Agreement by failing to make any payments to Ms. Wang and/or PIC as provided for in the Agreement. As a result of this default,

Ms. Wang had a Notice of Default sent to WALL009 on or about July 18, 2019. Exhibit I: Notice of Default – Wall009, LLC.

***JMJ Development, LLC's Guaranty***

47. In or around 2018, Defendant JMJ Development, LLC ("JMJ") agreed to guaranty the Co-Lenders loans to WALL007 and WALL009. JMJ is another entity believed to be owned and/or operated by Barton. As a result of this guaranty, JMJ is liable for the defaults discussed above.

***Improper Transfer of Funds to Carnegie Development, Inc.***

48. After defaulting on their obligations under the agreements discussed above, Plaintiffs believe that all of the assets in WALL007 and WALL009 were inappropriately transferred to Carnegie Development, Inc. ("CDI"), a foreign corporation owned and/or operated by Timothy Barton.

49. Based on the fact that Defendants have defaulted on all the agreements with Plaintiffs and improperly transferred all funds obtained thereby to CDI, it has become clear that Defendants never intended on living up to their obligations under the agreements.

***Sada Cumber's Aiding and Abetting***

50. In or around July 2019, Sada Cumber, who is the Chairman and CEO of CDI, offered to mediate the disputes between Plaintiffs and Defendants Barton, WALL007, and WALL009, as a neutral independent mediator in a series of meetings with PIC and SFL's representative, Michael Fu.

51. During these meetings, Mr. Cumber actively aided and abetted Defendants in perpetrating their fraudulent scheme on Plaintiffs, by offering to sell certain securities to be issued by CDI in exchange for the promissory notes held by the Co-Lenders.

## V.
## CAUSES OF ACTION

### Count 1 – Breach of Contract and Breach of Guaranty
***Against Barton, WALL007, WALL009, and JMJ***

52. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

53. The Jun Loan Agreement, Zhou Loan Agreement, and Wang Loan Agreement (the "Loan Agreements") constitute binding and enforceable agreements.

54. The 007 Commission Agreement and 009 Commission Agreement (the "Commission Agreements") constitute binding and enforceable agreements.

55. Defendants WALL007, WALL009, and Barton have materially breached the Loan Agreements and Commission Agreements by failing to make payments to Plaintiffs when they were due.

56. Plaintiffs SFL, PIC, Jun, Zhou, and Wang have fully performed all of their obligations under the Loan Agreements and Commission Agreements.

57. As a direct and proximate result of the material breaches by Defendants, Plaintiffs have suffered and continue to suffer actual and consequential damages in an amount to be determined at trial.

58. Further, Defendant JMJ agreed to guaranty the loans underlying the above agreements. JMJ has failed to perform its obligations pursuant to the guaranty. As a result, JMJ is liable for the defaults discussed above.

59. Plaintiffs are entitled to actual and/or liquidated damages, to an award of costs and attorneys' fees, and to all other such relief as may be available.

**Count 2 - Breach of Fiduciary Duties**
***Against Barton, WALL007, WALL009, and CDI***

60. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

61. Under Texas law, the relationship between Plaintiffs SFL, PIC, Jun, Zhou, and Wang and Defendants WALL007, WALL009, Barton, and CDI gives rise to fiduciary duties as a matter of law. WALL007, WALL009, and Barton were acting as Plaintiffs' agent(s) for the transactions and/or agreements described above. WALL007, WALL009, and Barton also owed Plaintiffs informal fiduciary duties under the circumstances of their relationship. CDI was acting as WALL007 and WALL009's managing member. Throughout the course of the relationship between the parties described above, Defendants owed Plaintiffs the highest fiduciary duties with regard to each of the above-referenced agreements and/or occurrences.

62. Defendants WALL007, WALL009, Barton, and CDI owed Plaintiffs a high duty of care, free of negligence, and coupled with the utmost good faith, candor, loyalty, fidelity, fair and honest dealing, devoid of any misrepresentation or deceit. Defendants also owed Plaintiffs a duty of full disclosure and to refrain from self-dealing. Defendants abused that confidence.

63. Defendants WALL007, WALL009, Barton, and CDI breached their fiduciary duties to Plaintiffs by the acts and/or omissions set forth above.

64. Defendants WALL007, WALL009, Barton, and CDI made these breaches knowingly, intentionally and with malice.

65. Defendants WALL007, WALL009, Barton, and CDI breached their duties of utmost loyalty, fidelity, good faith and fair dealing, as well as their duty to refrain from self-dealing, by engaging in the series of fraudulent acts and/or agreements described above. These breaches were executed for the benefit of Defendants and to the detriment of Plaintiffs.

66. Defendants WALL007, WALL009, Barton, and CDI also failed to disclose material facts to Plaintiffs that were of critical importance to Plaintiffs, including but not limited to:

a. Defendants never intended on returning the funds obtained from the Co-Lenders;

b. Defendants never intended on making the payments provided for in the agreements;

c. Defendants never intended on using the funds invested by the Co-Lenders for the residential housing projects referenced in the agreements;

d. Defendants effectuated a change in the business conducted by WALL007 and WALL009;

e. Defendants Barton and CDI planned on confiscating all of the funds lent to WALL007 and WALL009 to personally benefit themselves at the expense of Plaintiffs;

f. Defendants were engaging in acts and/or omissions in conflict with Plaintiffs' interests;

g. The agreements were induced solely for the purpose of benefitting Defendants; and

h. The agreements were to the detriment of and unfair to Plaintiffs' interests.

67. The duty to disclose the above facts arises from the confidential and/or fiduciary relationship that existed between the parties before, during, and after the transactions underlying Plaintiffs' claims.

68. Plaintiffs have suffered substantial damages as a result of Defendants' breaches of fiduciary duties and are entitled to all actual, consequential, and special damages as a result of Defendants' intentional breaches of their fiduciary duties, including but not limited to contractual consideration forfeiture. Plaintiffs also seek to recover exemplary damages because Defendants acted with malice and fraud in orchestrating the series of agreements and/or occurrences above.

**Count 3 – Common Law Fraud**
***Against Barton, WALL007, WALL009, and CDI***

69. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

70. In addition to, or in the alternative, Plaintiffs assert a cause of action for common law fraud (including fraud in the inducement, fraud in the transaction, conspiracy to defraud and aiding and abetting a fraud).

71. Defendants WALL007, WALL009, Barton, and CDI knew or recklessly disregarded the fact that the above described acts, practices, misleading statements and omissions would be relied upon by the Plaintiffs to their detriment in making decisions regarding the agreements described above.

72. WALL007, WALL009, Barton, and CDI knew or recklessly disregarded the fact that the above transactions were part of a scheme to defraud Plaintiffs out of their investments into WALL007 and WALL009.

73. WALL007, WALL009, Barton, and CDI failed to disclose material facts, which they knew or should have known, were of critical importance to Plaintiffs, and which made the disclosures that Defendants and others made to Plaintiffs misleading. Defendants should have made the following disclosures to Plaintiffs:

a. Defendants never intended on returning the funds obtained from the Co-Lenders;

b. Defendants never intended on making the payments provided for in the agreements;

c. Defendants never intended on using the funds invested by the Co-Lenders for the residential housing projects referenced in the agreements;

d. Defendants effectuated a change in the business conducted by WALL007 and WALL009;

e. Defendants Barton and CDI planned on confiscating all of the funds lent to WALL007 and WALL009 to personally benefit themselves at the expense of Plaintiffs;

f. Defendants were engaging in acts and/or omissions in conflict with Plaintiffs' interests;

g. The agreements were induced solely for the purpose of benefitting Defendants; and

h. The agreements were to the detriment of and unfair to Plaintiffs' interests.

74. By reason of the foregoing, Defendants WALL007, WALL009, Barton, and CDI have engaged in common law fraud by one or more of the following:

a. Employing devices, schemes, conspiracies and artifices to defraud;

b. Making untrue statements of material facts or failing to state material facts necessary to make the statements made not untrue in light of the circumstances under which they were made;

c. Engaging in acts, practices, and a course of business which operated as a fraud or deceit upon Third Party Plaintiffs in connection with the transactions and/or occurrences described above.

75. Plaintiffs have suffered substantial damages as a result of this misconduct, and are entitled to all actual, consequential, special, punitive, and equitable damages as a result of Defendants' fraudulent acts and/or omissions.

**Count 4 – Statutory Fraud**
***Against Barton, WALL007, WALL009, and CDI***

76. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

77. In addition to, or in the alternative, Plaintiffs assert a cause of action for statutory fraud against Defendants under Tex. Bus. & Com. Code § 27.01, *et seq*.

78. WALL007, WALL009, Barton, and CDI made false representations of past or existing facts to Plaintiffs for the purpose of inducing them to enter into the above-referenced

agreements. Plaintiffs relied on those representations in entering into the Commission Agreements and Loan Agreements that are the subject of this suit.

79. Further, Defendants made false promises to do certain acts, as described above, and those false promises were: (1) material; (2) made with the intention of not fulfilling them; (3) made to a person for the purpose of inducing that person to enter into a contract; and (4) the false promises were relied on by that person in entering into the contract.

80. The false representations and/or false promises were made by Defendants with actual awareness of the falsity thereof.

81. Plaintiffs have suffered substantial damages as a result of Defendants' statutory fraud, and are entitled to all actual damages, exemplary damages, reasonable and necessary attorneys' fees, expert witness fees, costs for copies of depositions, and costs of court.

**Count 5 - Violations of the Texas Securities Act**
***Against Barton, WALL007, WALL009, and CDI***

82. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

83. Plaintiffs assert this cause of action for violations of the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. Art. 581-1 *et seq.,* and in particular Art. 581-33 of the Texas Securities Act.

84. Art. 581-33(A)(2) of the Texas Securities Act provides that any person (individuals or companies) who offers or sells security by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements, in light of the circumstances under which they are made, not misleading, is liable for to the person selling the security to him.

85. Defendants WALL007, WALL009, Barton, and CDI failed to disclose material facts that were of critical importance to Plaintiffs, and which made the disclosures that Defendants and others made to the Plaintiffs misleading, including, but not limited to:

a. Defendants never intended on returning the funds obtained from the Co-Lenders;

b. Defendants never intended on making the payments provided for in the agreements;

c. Defendants never intended on using the funds invested by the Co-Lenders for the residential housing projects referenced in the agreements;

d. Defendants effectuated a change in the business conducted by WALL007 and WALL009;

e. Defendants Barton and CDI planned on confiscating all of the funds lent to WALL007 and WALL009 to personally benefit themselves at the expense of Plaintiffs;

f. Defendants were engaging in acts and/or omissions in conflict with Plaintiffs' interests;

g. The agreements were induced solely for the purpose of benefitting Defendants; and

h. The agreements were to the detriment of and unfair to Plaintiffs' interests.

86. By reason of the foregoing, Defendants have violated, conspired with others to violate, and/or aided and abetted violations of Article 581-33 by making untrue statements of material fact, or omitting to state material facts necessary in order to make the statements not misleading, in light of the circumstances in which the statements were made.

87. By reason of their misrepresentations and omissions, Defendants violated, aided, abetted or controlled another who violated Article 581-33 of the Texas Securities Act and are jointly and severally liable to Plaintiffs for said violations.

88. Plaintiffs have suffered substantial damages as a result of Defendants' acts and omissions, and is entitled to all damages and attorneys' fees permitted by the Texas Securities Act.

**Count 6 – Promissory Estoppel, Quantum Meruit, and Constructive Trust**
***Against Barton, WALL007, WALL009, and CDI***

89. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

90. To the extent that a contract does not govern the obligations of Defendants to Plaintiffs, Plaintiffs plead this claim in the alternative.

91. Defendants made several promises to Plaintiffs regarding the repayment of the Loans to WALL007 and WALL009, as described above.

92. It was foreseeable to Defendants that Plaintiffs would rely on the promises made by Defendants in deciding whether to invest funds into WALL007 and WALL009.

93. Plaintiffs substantially relied on the promises of Defendants to Plaintiffs' detriment by delivering and/or causing to be delivered funds to WALL007 and WALL009.

94. Moreover, Plaintiffs conferred benefits upon Defendants, including but not limited to the investments into WALL007 and WALL009 described above.

95. As a result, Defendants Barton, WALL007, WALL009, and CDI have been unjustly enriched with the funds provided by Plaintiffs.

96. Defendants Barton, WALL007, WALL009, and CDI appreciated or realized the benefits conferred by Plaintiffs without compensating Plaintiffs.

97. As such, Defendants are liable to Plaintiffs under the theories of quantum meruit and/or unjust enrichment, for the value of the benefits conferred upon Defendants.

98. Plaintiffs request a constructive trust on all proceeds, funds, or property obtained by Defendants as a result of Defendants' theft, fraud, and other unlawful actions and disgorgement of all profits or remuneration obtained by Defendants as a result of their actions.

**Count 7 - Civil Conspiracy**
***Against Barton, Cumber, WALL007, WALL009, CDI, and JMJ***

99. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

100. Defendants Barton, Cumber, WALL007, WALL009, CDI, and JMJ conspired with each other to defraud Plaintiffs as set forth above.

101. Accordingly, Defendants engaged in an unlawful civil conspiracy by participating in a combination of two or more persons the objective to be accomplished of which is an unlawful purpose or a lawful purpose by unlawful means. It is believed that the Defendants had a meeting of the minds on the object or course of action; with one or more unlawful, overt acts, and that damages were a proximate result.

102. Plaintiffs have suffered substantial damages as a result of Defendants' and their coconspirators' acts and are entitled to rescission, and all actual, consequential, special, and exemplary damages as a result of Defendants' intentional and malicious conduct.

**Count 8 - Money had and Received**
***Against Barton, WALL007, WALL009, and CDI***

103. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

104. Defendants have money that in equity and good conscience belongs to Plaintiffs. Plaintiffs see recovery of the money which Defendants have taken from Plaintiffs to which they are equitably entitled.

105. Plaintiffs seek damages within the jurisdictional limits of this Court.

**Count 9 – Conversion**
***Against Barton, WALL007, WALL009, and CDI***

106. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

107. Defendants intentionally conspired to convert and/or did convert WALL007 and WALL009's assets, and the funds owed to Plaintiffs for their investments to Defendants' own use and benefit knowing that they did not have any legal right, justification, or claim to WALL007 and WALL009's assets, and the funds owed to Plaintiffs.

108. Defendants intentionally and unlawfully asserted dominion over WALL007 and WALL009's assets, and the funds owed to Plaintiffs when they were transferred from WALL007 and WALL009 to CDI without legally being entitled to use these assets/funds for Defendants' own benefit and purposes.

109. WALL007 and WALL009's assets, including Plaintiffs' investment funds, are Defendants' rightful property.

110. WALL007 and WALL009's assets, including Plaintiffs' investment funds, remain in the possession of the Defendants.

111. Defendants' conduct has been and continues to be egregious, willful and wanton warranting an award of exemplary damages.

**Count 10 – Violation of the Texas Civil Theft Statute**
***Against Barton, WALL007, WALL009, and CDI***

112. Plaintiffs incorporate by reference the factual allegations contained in the preceding paragraphs.

113. Under Chapter 134 of the TEX. CIV. PRAC. & REM. CODE, a person "who commits theft is liable for the damages resulting from the theft." "Theft" means "unlawfully appropriating

property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, PENAL CODE." Appropriation of property is unlawful if it is without the owner's effective consent, or if the property is stolen and the actor appropriates the property knowing it was stolen by another.

114. In violation of TEXAS PENAL CODE § 31.03, Defendants unlawfully appropriated property and monies of Plaintiffs with the intent to deprive Plaintiffs of the property and its proceeds, namely, the funds underlying the Loans.

115. Plaintiffs did not consent to Defendants' misappropriation of the funds provided by Plaintiffs, and Defendants appropriated said funds knowing that the property and proceeds generated therefrom were stolen.

116. Accordingly, Plaintiffs seek to recover all actual and consequential damages caused by the theft, all statutory penalties under Tex. Civ. Prac. & Rem. Code §134.005(A), and all pre-judgment and post-judgment interest Plaintiffs are entitled.

117. Plaintiffs further seek all reasonable and necessary attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code §134.005(b).

118. In addition, Defendants' conduct was willful, malicious, and intentional, and was done with the specific intent to cause substantial injury to Plaintiffs, Defendants should be further assessed exemplary damages in an amount to be ascertained at trial. *See* Tex. Civ. Prac. & Rem. Code §41.008(c).

## VI.
## CONDITIONS PRECEDENT

119. All conditions precedent to Plaintiffs' claim for relief have been performed or have occurred.

## VII.
## REQUEST FOR DISCLOSURES

120. Under Texas Rule of Civil Procedure 194, Plaintiffs request Defendants to disclose within fifty (50) days of service of these requests, the information and materials described in Rule 194.2(a)-(l).

## VIII.
## RULE 193.7 NOTICE

121. Pursuant to Rule 193.7, Plaintiffs hereby give notice that any and all documents produced by him may be used against Defendants at any pretrial proceeding or at trial without the necessity of authenticating the documents. This includes, but is not limited to, all produced documents by Plaintiffs provided during the course of discovery. Therefore, Plaintiffs request that Defendants assert the specific bases for any objection to the authenticity of any such documents within ten (10) days of their production.

## IX.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that Defendants appear and file an answer herein, and upon final hearing of this cause, Plaintiffs pray that they have a judgment against Defendants Barton, WALL007, WALL009, CDI, and JMJ, jointly and severally, for the following:

a. all actual, consequential and special damages allowed by law;

b. declaratory judgment regarding the agreements at issue;

c. rescission of the agreements at issue;

d. exemplary damages;

e. attorneys' fees and costs;

f. pre-judgment and post judgment interest at the maximum rate allowed by law; and

g. such other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**NGUYEN & CHEN, LLP**

Anissah M. Andang
State Bar No. 24072895
Email: aandang@nguyen-chen.com
Randall Towns
State Bar No. 24110445
Email: rtowns@nguyen-chen.com
11200 Westheimer, Suite 120
Houston, Texas 77042
Telephone: (832) 767-0339
Fax: (832) 767-0669
service@nguyen-chen.com