**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Northern District of Texas (State)

Case number (*If known*): ______________ Chapter 7

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

12/15

**Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).**

## Part 1: Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

1. **Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter 7

☐ Chapter 11

## Part 2: Identify the Debtor

2. **Debtor's name**

WALL011 LLC

3. **Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

______________________

4. **Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

__ __ – __ __ __ __ __ __ __
EIN

5. **Debtor's address**

**Principal place of business**

13901 Midway Rd., Ste. 102
Number Street

Dallas TX 75244
City State ZIP Code

Dallas
County

**Mailing address, if different**

Number Street

P.O. Box

City State ZIP Code

**Location of principal assets, if different from principal place of business**

Number Street

City State ZIP Code

Debtor WALL011 LLC
Name

Case number (*if known*) ____________________

**6. Debtor's website** (URL) N/A

**7. Type of debtor**

- ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other type of debtor. Specify: ____________________

**8. Type of debtor's business**

*Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☒ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☐ None of the types of business listed.
- ☐ Unknown type of business.

**9. To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

- ☒ No
- ☐ Yes. Debtor ____________________ Relationship ____________________

District ____________________ Date filed ____________ MM / DD / YYYY Case number, if known ____________________

Debtor ____________________ Relationship ____________________

District ____________________ Date filed ____________ MM / DD / YYYY Case number, if known ____________________

## Part 3: Report About the Case

**10. Venue**

*Check one:*

- ☒ Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- ☐ A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

**11. Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked*:

- ☒ The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- ☐ Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

**12. Has there been a transfer of any claim against the debtor by or to any petitioner?**

- ☒ No
- ☐ Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

Case 20-31135 Document 246-3 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc Exhibit Page 3 of 112

Debtor WALL011 LLC
Name

Case number (if known)

| 13. Each petitioner's claim | Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|---|
| | Ying Zhou | Loan Debt | $ 444,000.00 |
| | Lin Li | Loan Debt | $ 220,000.00 |
| | Li Jiang | Loan Debt | $ 165,000.00 |
| | | Total of petitioners' claims | $ 1,685,000.00* |

**If more space is needed to list petitioners, attach additional sheets. Write the alleged debtor's name and the case number, if known, at the top of each sheet. Following the format of this form, set out the information required in Parts 3 and 4 of the form for each additional petitioning creditor, the petitioner's claim, the petitioner's representative, and the petitioner's attorney. Include the statement under penalty of perjury set out in Part 4 of the form, followed by each additional petitioner's (or representative's) signature, along with the signature of the petitioner's attorney.**

**See attached list of additional Petitioning Creditors*

## Part 4: Request for Relief

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

### Petitioners or Petitioners' Representative

**Name and mailing address of petitioner**

Ying Zhou
Name

15-3, Rongjin Yuan, Taoyuan Town, Shenjiadian Community
Number Street

Xianlin Subdistrict, Yuhang District, Hangzhou, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

✘ DocuSigned by: Ying Zhou
401E345AB74541C...
Signature of petitioner or representative, including representative's title

### Attorneys

Jiangang Ou, Esquire
Printed name

Nguyen & Chen, LLP
Firm name, if any

11200 Westheimer, Ste. 120
Number Street

Houston TX 77042
City State ZIP Code

Contact phone 832-767-0339 Email jou@nguyen-chen.com

Bar number 5451133

State NY

✘ /s/ Jiangang Ou
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

Case 20-31135-7 Doc 1 Filed 04/08/20 Entered 04/08/20 14:11:06 Page 4 of 112

Debtor WALL011 LLC
Name

Case number (*if known*) ________________

**Name and mailing address of petitioner**

Lin Li
Name

Room 4-1-302, Section 6, Shijicheng Yuandayuan
Number Street

Yuanda Rd., Haidian District, Bejing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

DocuSigned by:
✘ li lin
DDA0A5F0CC8B429...
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

✘ /s/ Stephen M. Packman
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

**Name and mailing address of petitioner**

Li Jiang
Name

1-5-401, North Dormitory, Haidian Health Bureau
Number Street

Qinghe 3rd Street, Haidian District, Beijing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ________
MM / DD / YYYY

✘ ________________
Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone ________ Email ________

Bar number ________

State ________

✘ ________________
Signature of attorney

Date signed ________
MM / DD / YYYY

Debtor WALL011 LLC
Name

Case number *(if known)* ____________________

**Name and mailing address of petitioner**

Lin Li
Name

Room 4-1-302, Section 6, Shijicheng Yuandayuan
Number Street

Yuanda Rd., Haidian District, Bejing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

____________________
Name

____________________
Number Street

____________________
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____________
MM / DD / YYYY

✘ ____________________
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

✘ ____________________
Signature of attorney

Date signed ____________
MM / DD / YYYY

**Name and mailing address of petitioner**

Li Jiang
Name

1-5-401, North Dormitory, Haidian Health Bureau
Number Street

Qinghe 3rd Street, Haidian District, Beijing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

____________________
Name

____________________
Number Street

____________________
City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

DocuSigned by:
✘ Li Jiang
213B9409FBED46E...
Signature of petitioner or representative, including representative's title

____________________
Printed name

____________________
Firm name, if any

____________________
Number Street

____________________
City State ZIP Code

Contact phone ____________ Email ____________

Bar number ____________________

State ____________

✘ ____________________
Signature of attorney

Date signed ____________
MM / DD / YYYY

DocuSign Envelope ID: 46E23AFF-6EF4-4776-AD54-F084ACF123FD


## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Rufeng Ding | Loan Debt | $137,500.00 |
| Cunxiang Ji | Loan Debt | $112,000.00 |
| Lin Gao | Loan Debt | $110,000.00 |
| Qiao Qin | Loan Debt | $110,000.00 |
| Yue Zhang | Loan Debt | $110,000.00 |
| Xiaodong Hao | Loan Debt | $56,500.00 |

**Name and mailing address of petitioner**
Rufeng Ding
Room 306, South Building Haiyue Mingmen,
No 38 North Zaoying Lane, Maizidian Street,
Chaoyang District, Beijing, China

DocuSigned by:
X Rufeng Ding 3/20/2020
69438CF5D2834B8...

**Name and mailing address of petitioner**
Cunxiang Ji
Room 1-114, No.5, Cuiweidongli, Haiding
District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Lin Gao
A-102, Chunshen Chuangyi Yuan, No 228
Meifu Road, Minhang District, Shanghai,
China

X____________________________________

**Name and mailing address of petitioner**
Qiao Qin
1-202, No. 12 Yiyuanjv, No 4 Cuiwei Road,
Haidian District, Beijing, China

X____________________________________

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Rufeng Ding | Loan Debt | $137,500.00 |
| Cunxiang Ji | Loan Debt | $112,000.00 |
| Lin Gao | Loan Debt | $110,000.00 |
| Qiao Qin | Loan Debt | $110,000.00 |
| Yue Zhang | Loan Debt | $110,000.00 |
| Xiaodong Hao | Loan Debt | $56,500.00 |

**Name and mailing address of petitioner**
Rufeng Ding
Room 306, South Building Haiyue Mingmen,
No 38 North Zaoying Lane, Maizidian Street,
Chaoyang District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Cunxiang Ji
Room 1-114, No.5, Cuiweidongli, Haiding
District, Beijing, China

DocuSigned by:
Cunxiang Ji
E5BFC06D56164D3...
X____________________ 3/21/2020

**Name and mailing address of petitioner**
Lin Gao
A-102, Chunshen Chuangyi Yuan, No 228
Meifu Road, Minhang District, Shanghai,
China

X____________________________________

**Name and mailing address of petitioner**
Qiao Qin
1-202, No. 12 Yiyuanjv, No 4 Cuiwei Road,
Haidian District, Beijing, China

X____________________________________

# ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Rufeng Ding | Loan Debt | $137,500.00 |
| Cunxiang Ji | Loan Debt | $112,000.00 |
| Lin Gao | Loan Debt | $110,000.00 |
| Qiao Qin | Loan Debt | $110,000.00 |
| Yue Zhang | Loan Debt | $110,000.00 |
| Xiaodong Hao | Loan Debt | $56,500.00 |

**Name and mailing address of petitioner**
Rufeng Ding
Room 306, South Building Haiyue Mingmen,
No 38 North Zaoying Lane, Maizidian Street,
Chaoyang District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Cunxiang Ji
Room 1-114, No.5, Cuiweidongli, Haiding
District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Lin Gao
A-102, Chunshen Chuangyi Yuan, No 228
Meifu Road, Minhang District, Shanghai,
China

DocuSigned by:
X GAO LIN 3/23/2020
AE14B1521DE74AE...

**Name and mailing address of petitioner**
Qiao Qin
1-202, No. 12 Yiyuanjv, No 4 Cuiwei Road,
Haidian District, Beijing, China

X____________________________________

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Rufeng Ding | Loan Debt | $137,500.00 |
| Cunxiang Ji | Loan Debt | $112,000.00 |
| Lin Gao | Loan Debt | $110,000.00 |
| Qiao Qin | Loan Debt | $110,000.00 |
| Yue Zhang | Loan Debt | $110,000.00 |
| Xiaodong Hao | Loan Debt | $56,500.00 |

**Name and mailing address of petitioner**
Rufeng Ding
Room 306, South Building Haiyue Mingmen,
No 38 North Zaoying Lane, Maizidian Street,
Chaoyang District, Beijing, China

X___________________________________

**Name and mailing address of petitioner**
Cunxiang Ji
Room 1-114, No.5, Cuiweidongli, Haiding
District, Beijing, China

X___________________________________

**Name and mailing address of petitioner**
Lin Gao
A-102, Chunshen Chuangyi Yuan, No 228
Meifu Road, Minhang District, Shanghai,
China

X___________________________________

**Name and mailing address of petitioner**
Qiao Qin
1-202, No. 12 Yiyuanjv, No 4 Cuiwei Road,
Haidian District, Beijing, China

DocuSigned by:
X Qin Qiao
FA12B66FCD8F4E0... 3/22/2020

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No.9,
Tianzhaojiayuan, No.41 Xizhimen N Street,
Haidian District, Beijing, China

DocuSigned by:
X Yue Zhang 3/21/2020
0CBE0AE2950E48F...

**Name and mailing address of petitioner**
Xiaodong Hao
Room302, Unit 3, Building 10, Shuangqiao
Railway Community, Chaoyang District,
Beijing, China

X___________________________________

218154102v1

## ADDITIONAL PETITIONING CREDITORS

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No.9,
Tianzhaojiayuan, No.41 Xizhimen N Street,
Haidian District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Xiaodong Hao
Room302, Unit 3, Building 10, Shuangqiao
Railway Community, Chaoyang District,
Beijing, China

DocuSigned by:
XiaoDong Hao
AE4856768D404AC...
X____________________________________ 3/21/2020

218154102v1

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Tianqing Song | Loan Debt | $220,000.00 |

**Name and mailing address of petitioner**
Tianqing Song
12-204, Zhongding Shanzhuang, No 299
Zhongshanmen Street,
Nanjing, Jiangsu, China

DocuSigned by:
X Song Tianqing 4/2/2020
6F13DECE00B248F...

218226151v1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YING ZHOU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Ying Zhou
401E345AB74541C...
YING ZHOU

218182174v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___December 7_, 2017, and is between __Zhou Ying _ (Passport No _E22337540__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 400,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $400,000.00 – Four Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Eleven percent (_11_%) per annum commencing on __February 1, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _January 1, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __January 1, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

Case 20-31135 Doc 340 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc Exhibit Page 16 of 112

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## <u>Default and Acceleration</u>

4.1 <u>Events of Default</u>. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 <u>Optional Acceleration</u>. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 <u>Automatic Acceleration</u>. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 <u>Right of Set Off</u>. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 <u>Progress Reporting</u>. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## <u>Miscellaneous</u>

5.1 <u>Definitions</u>. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 <u>Construing Loan Papers</u>. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 <u>Renewals and Extensions</u>. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

Case 20-31135-7 Doc 1 Filed 04/08/20 Entered 04/08/20 14:11:06 Page 20 of 112

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 011, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Zhou Ying<br>15-3, Rongjin Yuan, Taoyuan Town, Shenjiadian Community, Xianlin Subdistrict, Yuhang District, Hangzhou, China<br>zhouyingxiehe2008@163.com<br>(86)13858041758 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Zhou Ying
C45482E8B0B7425...

Zhou Ying

"**BORROWER"**

WALL 011, LLC

DocuSigned by:
Tim Barton

By: 55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu

By: 86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

Case 20-31135-7 Doc 1 Filed 04/08/20 Entered 04/08/20 14:11:06 Page 23 of 112

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF LIN LI IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Li Lin
DDA0A5F0CC8B429...
LIN LI

218182230v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___January 30_, 2018, and is between __Li Lin_ (ID: 130123198108067510_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 200,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $200,000.00 – Two Hundred and Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (_10_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 011, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:
Li Lin
Room 4-1-302, Section 6, Shijicheng
Yuandayuan, Yuanda Rd.,
Haidian District, Beijing, China
17145575@qq.com
(86)18033699135

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Li Lin
DDA0A5F0CC8B429...

Li Lin

"**BORROWER"**

WALL 011, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**<u>DECLARATION OF LI JIANG IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
li jiang
213B9409FBED46E...
LI JIANG

218182238v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated January 11, 2018 , and is between Jiang Li (Passport No EA3681029), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 150,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $150,000.00 – One Hundred and Fifty Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (10%) per annum commencing on February 11, 2018, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after February 11, 2019. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of February 11, 2020. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

Doc 346-3 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 011, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:
Jiang Li
1-5-401, North Dormitory,
Haidian Health Bureau, Qinghe 3rd Street,
Haidian District, Beijing, China
kwj80@163.com
(86)13611224740

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Jiang Li
213B9409FBED46E...
Jiang Li

"**BORROWER"**

WALL 011, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF RUFENG DING IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/20/2020

DocuSigned by:
Rufeng Ding
69438CF5D2834B8...
RUFENG DING

218182249v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___February 7_, 2018, and is between __Ding Rufeng_ (Passport No: E01344929_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 125,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $125,000.00 – One Hundred and twenty five Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (_10_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

Case 20-31135-hdh7 Doc 346-3 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc Exhibit Page 46 of 112

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 011, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Ding Rufeng
Room 306, South Building Haiyue Mingmen,
No 38 North Zaoying Lane,Maizidian
lucy_ding1021@yahoo.com
(86) 18901367110

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

Case 20-31135-hdh7 Doc 346-6 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc
Exhibit Page 52 of 112

**"CO-LENDER"**

DocuSigned by:
Ding Rufeng
9290C0274FBF418...

Ding Rufeng

"**BORROWER"**

WALL 011, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF CUNXIANG JI IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Cunxiang Ji
E5BEC06D56164D3...
CUNXIANG JI

218182252v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___February 7_, 2018, and is between __Ji Cunxiang_ (Passport No: G26733388_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Twelve percent (_12_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 011, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Ji Cunxiang<br>Room 1-114, No.5, Cuiweidongli,<br>Haiding District, Beijing, China<br>wubohxs@163.com<br>(86)13311209871 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**“CO-LENDER”**

DocuSigned by:
Ji Cunxiang
E5BFC06D56164D3...

Ji Cunxiang

“**BORROWER”**

WALL 011, LLC

DocuSigned by:
By: Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

“**AGENT”**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
By: Michael Fu
86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

DocuSign Envelope ID: 398B7F4C-4108-4B8F-A219-540150A2D52B



**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**<u>DECLARATION OF LIN GAO IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "<u>Alleged Debtor</u>"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "<u>Loan Agreement</u>"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "<u>A</u>."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "<u>Claim</u>").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
GAO LIN
AE14B1521DE74AE...
LIN GAO

218182306v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___January 30_, 2018, and is between __GAO LIN_ (Passport No _E73962401_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (_10_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

Case 20-31135-7 Doc 346-8 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc Exhibit Page 67 of 112

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 011, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | GAO LIN<br>A-102,Chunshen Chuangyi Yuan, No 228 Meifu Road, Minhang District, Shanghai, China<br>gao_lin@vip.163.com<br>(86) 13816800602 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
GAO LIN
AE14B1521DE74AE...
GAO LIN

"**BORROWER"**

WALL 011, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF QIAO QIN IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
Qin Qiao
FA12B66FCD8F4E0...
QIAO QIN

218182314v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___January 30_, 2018, and is between __Qin Qiao_ (Passport No _EB1116049_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (_10_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

Case 20-31135 Doc 34-8 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 011, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Qin Qiao<br>1-202,No 12 Yiyuanjv, No 4 Cuiwei Road<br>Haidian District, Beijing, China<br>jonson-yu@163.com<br>(86)18611035500 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Qin Qiao
EA12B66FCD8E4E0...

Qin Qiao

**"BORROWER"**

WALL 011, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

**"AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YUE ZHANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Yue Zhang
0CBE0AE2950E48F...
YUE ZHANG

218182322v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___January 25_, 2018, and is between __Zhang Yue_ (Passport No _E24004107_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 100,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $100,000.00 – One Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (_10_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

Case 20-31135 ... Doc 34-6 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc
Exhibit Page 86 of 112

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

Case 20-31135-7 Doc 34-7 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc Exhibit Page 87 of 112

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

Case 20-31315 Doc 346-7 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 011, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Zhang Yue<br>Room 1-304, Building No.9,<br>Tianzhaojiayuan, No.41 Xizhimen N street,<br>Haidian District, Beijing<br>450177716@qq.com<br>(86)13901086803 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
張玥
0CBE0AE2950E48F...
______________________________
Zhang Yue

"**BORROWER"**

WALL 011, LLC

By: DocuSigned by: Tim Barton 55E2C214E42B42F... ______________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by: Michael Fu 86EE266F063C423... ______________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**<u>DECLARATION OF XIAODONG HAO IN SUPPORT OF INVOLUNTARY PETITION</u>**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People’s Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the “Alleged Debtor”). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the “Loan Agreement”), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit “A.”

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the “Claim”).

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
XiaoDongHao
AE4856768D404AC...
XIAODONG HAO

218182326v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___February 13_, 2018, and is between __Hao Xiaodong_ (ID: 14242119840617352X_), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 50,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $50,000.00 – Fifty Thousand and No/100 Dollars

Interest: Interest amount equal to Thirteen percent (_13_%) per annum commencing on __February 11, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _February 11, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __February 11, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## **Affirmative Covenants of Borrower**

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 011, LLC<br>c/o Steve Wall<br>2005 NE Green Oaks Blvd., Suite 150<br>Arlington, TX 76006<br>Steve.Wall@wall.com<br>817-276-3417 (office) |
| TO CO-LENDER: | Hao Xiaodong<br>Room302, Unit 3, Building 10, Shuangqiao<br>Railway Community, Chaoyang District, Beijing, China<br>chunchundongdong@126.com<br>(86)15810161651 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Hao Xiaodong
AF4856768D404AC
_____________________________
Hao Xiaodong

"**BORROWER"**

WALL 011, LLC

DocuSigned by:
Tim Barton
By: 55E2C214E42B42F... _____________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: 86EE266F063C423... _____________________________
Name: Michael Fu
Title: Chief Executive Officer

Case 20-31135-hdh7 Doc 34-5 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc
Exhibit Page 103 of 112

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL011, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF TIANQING SONG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

Case 20-31135-7 Doc 1 Filed 04/08/20 Entered 04/08/20 14:11:06 Page 104 of 112

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 4/2/2020

DocuSigned by:
Song Tianqing
6F13DECE00B248F...
TIANQING SONG

218226300v1

Case 20-31135-7 Doc 3-6 Filed 02/21/21 Entered 02/21/21 22:25:08 Desc
Exhibit Page 105 of 112

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___December 29_, 2017, and is between _Song Tianqing (Passport No _E44219169__), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 011, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ 200,000.00 of the total loan amount of $2,360,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $200,000.00 – Two Hundred Thousand and No/100 Dollars

Interest: Interest amount equal to Ten percent (_10_%) per annum commencing on __January 1, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _January 1, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __January 1, 2020_. Sums not paid by such times, shall bear interest at the rate of fourteen percent (14%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 128 acres located in the City Limits of Venus, County of Johnson, State of Texas for residential lot development known as The Gates at Venus ("Property"). The Property has a purchase price of $2,950,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

Case 20-31135-7 Doc 1 Filed 04/08/20 Entered 04/08/20 14:11:06 Page 107 of 112

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the

occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable,

without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 011, LLC
c/o Steve Wall
2005 NE Green Oaks Blvd., Suite 150
Arlington, TX 76006
Steve.Wall@wall.com
817-276-3417 (office)

TO CO-LENDER:

Song Tianqing
12-204, Zhongding Shanzhuang, No 299
Zhongshanmen Street
Nanjing, Jiangsu, China
Stq2898@163.com
(86)18913986558

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Song Tianqing
6F13DECE00B248F...

Song Tianqing

"**BORROWER"**

WALL 011, LLC

By: DocuSigned by:
Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 011, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

By: DocuSigned by:
Michael Fu
86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer