IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE: ) BK. NO: 20-31131-HDH
)
WALL007 LLC )
D E B T O R. )

* * * * * * * * * *

TRANSCRIPT OF PROCEEDINGS

* * * * * * * * * *

BE IT REMEMBERED, that on the 23rd day of October, 2020, before the HONORABLE HARLIN D. HALE, United States Bankruptcy Judge at Dallas, Texas, the above styled and numbered cause came on for hearing, and the following constitutes the transcript of such proceedings as hereinafter set forth:

P R O C E E D I N G S

THE COURT: All right. I'll take appearances in WALL007.

MR. PACKMAN: Yes, good morning, Your Honor. Stephen Packman and James Ou for the petitioning creditors.

THE COURT: Welcome.

MS. LINDAUER: Your Honor, Joyce Lindauer for the alleged debtors.

THE COURT: Welcome to you.

MS. LINDAUER: Thank you, Your Honor.

MR. METZGER: Your Honor, Steve Metzger on behalf of Tim Martin.

THE COURT: Welcome to you.

Mr. Packman, I'll turn this one over to you. We set this status conference at your request.

MR. PACKMAN: Yes. Thank you, Your Honor.

Your Honor, we had requested the status conference on the heels of Ms. Lindauer's third motion to dismiss, which I don't believe has been scheduled yet for a hearing. As Your Honor may recall, at the outset of the petitions, Ms. Lindauer filed motions to dismiss, one of which is, we'll call it the big motion to dismiss, it's still pending. And we have all of this discovery out there, including the depositions on both sides.

So we filed the status conference when we saw this, yet

another motion to dismiss, because apparently the alleged debtors were upset that it was taking so long. And then we read Your Honor's decision last night on the motion for reconsideration. We understand that the Court is mindful that this is a very difficult time for litigants. And we understand the Court's decision. We have yet to speak to our clients about it, since it's brand new. And we're going to do that.

Now, assuming that the clients agree to incur the expense of -- well, first of all, assuming we can find a jurisdiction where they can quarantine for two weeks and then come here, be admitted here, be allowed entry, and then further assuming that they want to spend the money, because it's very expensive right now for the Chinese to fly here -- it would be very expensive for them to quarantine somewhere for two weeks and then come here. And then it would be expensive for them to come here for what I think are going to be relatively short depositions. But assuming they agree to all of that, then we have to coordinate it to get them here. And it's going to take some time. So we're going to discuss that with them.

I'm sorry, Your Honor, did you need to say something?

THE COURT: Well, you went mute just for a second in your, maybe your last sentence, so I didn't quite hear you.

Case 20-31131-hdh7 Doc 254 Filed 11/12/20 Entered 11/12/20 14:13:22 Page 4 of 12
4

MR. PACKMAN: We're going to discuss Your Honor's most recent ruling with the clients. And then the logistics of what -- and the import of Your Honor's ruling on what it would take to do all of this.

Having said all of that, I just wanted to -- if I could ask Your Honor for clarification on the ruling. In terms of the other matters that are pending, including our discovery, Ms. Lindauer's other discovery, motion practice, my understanding is that until we get past this petitioner deposition issue that those matters are all stayed. And I just want to make sure that's correct. Because Ms. Lindauer filed another motion to dismiss during this time period.

THE COURT: Well, we wouldn't park it forever, if you all aren't going to produce folks for depositions. That sort of motion would need to go forward.

Let me ask you, there were other parts of the discovery showing wet signatures, copies of passports, and things like that. Do you have all of that stuff?

MR. PACKMAN: We have all of the passports, Your Honor. And we're getting in the wet signatures. So that's not a problem.

THE COURT: Uh-huh.

MR. PACKMAN: We'll produce all of that, Your Honor.

THE COURT: Yeah. Let me ask you, and I don't

Case 20-31131-hdh7 Doc 254 Filed 11/12/20 Entered 11/12/20 12:13:08 Desc 5

want to put words in your mouth, I just want to make sure that we're all on the same page. Are you asking for a little bit of time to confer with your clients on what to do, if they're going to go forward, depositions, et cetera before we set Ms. Lindauer's motion to dismiss? Is that one of the things that we're talking about this morning?

MR. PACKMAN: I am, Your Honor. I think we -- Your Honor, I think Ms. Lindauer's motion to dismiss is already covered by her first motion to dismiss, so it's repetitive. It's on the basis that the petitioners can't make out their case. But, yes, that is exactly what I was saying, Your Honor, that we need a little time to discuss Your Honor's decision and work out some logistics and also consider procedural options here that might be available to us.

THE COURT: Okay. All right. Let's hear -- Ms. Lindauer, let's hear from you next and then Mr. Metzger.

MS. LINDAUER: Thank you, Your Honor.

Your Honor, obviously we're fine with having this status hearing this morning. The problem I think the Court eluded to is we're -- and as I mentioned to you at prior hearing in this case is we're stuck in the mud. These cases were filed April 8th of 2020, seven months ago. I don't know what Mr. Packman's been doing behind the scenes for the last six or eight weeks, but we haven't seen anything. We don't

have depositions scheduled. We haven't seen wet signatures. We haven't seen passports. None of this stuff seems to have happened. And maybe they're working with their clients to get all of that.

But the problem that these debtors are starting to face, and the Court is seeing it, is we're getting motions to lift stay filed. My clients can't refinance properties while they're sitting in an involuntary bankruptcy case. We have loans coming due. It's not a matter of making payments, it's the actual loans are maturing while we're sitting in these involuntary bankruptcies. The longer this process goes, the greater the likelihood of damage to these estates. By the time we get done, Mr. Packman may be fighting over nothing, if we end up with a bunch of foreclosures.

So the problem I've got is my involuntary debtors cannot protect their assets every effectively while they're tied up in these cases. Which is why we filed a third motion. Mr. Packman is saying, I want to confer with my clients now. So why didn't he confer with his clients when the Court first said, hey, you're people are going to have to come here? That was, you know, six weeks ago. So now he's going to confer with his clients about whether they're going to come or now. Well, we should have had those conversations a while back.

What I would encourage the Court to do at this

juncture, and I'm surprised Mr. Packman hasn't asked for this, but is we need some deadlines. We can't just park these cases indefinitely. We need some deadlines for them to comply with the Court's prior requirements. If they're unable to do that, then these cases need to be dismissed.

And here's the thing. There was a state court lawsuit that was pending before these involuntaries were filed. Mr. Packman's clients have remedies in other forums that may not be as difficult as trying to put people into bankruptcy. So, again, I think, you know, seven months, that's where we are right now, seven months on this case, we need something to happen. We just need this thing to move along. And I think the Court's given Mr. Packman several opportunities, a lot of direction, and we still aren't anywhere, as best I can tell. Nothing's happened.

So I would ask the Court, if you are going to grant him some additional time to visit with his clients, see what they're willing to do, that we have some hard deadlines. And either stuff's turned in, or it isn't turned in, or they make a decision to dismiss these cases, or you make a decision to dismiss these cases. Because you're seeing it. We had a hearing earlier this week. We're going to have more hearings in these Wall cases about lenders that are trying to lift stays and foreclose, and my clients are paralyzed. SO we've got to have something happen. Preferably sooner rather than

later.

So that's the dilemma that we're in right now, Your Honor, is we're literally stuck and we need some kind of relief. So that was the reason for filing the third motion is it's not really a rehash of the first motion. It's basically saying, here's all of these orders that have been entered. Mr. Packman and his clients don't seem to be able to comply with them. Let's dismiss the case. So, any way, we look to you to decide what needs to happen at this point. But I would hope you would consider some deadlines, because we just can't sit here indefinitely.

THE COURT: Thank you.

MR. PACKMAN: Your Honor, can I respond briefly to that?

THE COURT: You can. Let's hear from Mr. Metzger, so you can respond to both of them in case he has something else.

Mr. Metzger, anything else?

MR. METZGER: Your Honor, I would echo Ms. Lindauer's statements. These entities are really off in the ditch and we can't do anything while they're in this position. We can't get any refinancing. No reasonable lenders are going to talk with this, let alone any hard money lenders. So we need some relief. If it's deadlines, sooner rather than later would be better. If it's dismiss part of

the cases and leave a couple of others out there, okay. But let's do something. We've lost time. And we're not likely to go anywhere very soon. Things take time in order to refinance or rearrange matters.

That's my little pitch.

THE COURT: Thank you.

Mr. Packman, you get to go last.

MR. PACKMAN: Thank you, Your Honor. I'll be brief.

Your Honor, I hear Ms. Lindauer and I understand their position. But they're the ones who want live depositions of these petitioning creditors in the United States in what is probably the most -- well, it is the most difficult time that I've experienced in terms of trying to operate as an attorney in the last 30 years. So for them to suggest that we're delaying things here, they asked us for the petitioning creditors' wet signatures and we went through that fire drill. Now they're saying to us, give us the passports that they already have and we'll do that. We will do that as soon as possible, Your Honor, next week.

THE COURT: What about the wet signatures, next week too?

MR. PACKMAN: We'll get the wet signatures, Your Honor, next week.

THE COURT: Okay.

MR. PACKMAN: By the end of next week. That's not an issue. But these depositions here, it's their hurdle. They don't want to allow video depositions (indecipherable word), even though they're going on every day. We understand that. They want to bring these people here, so they can look them in the eye. And I get that. And Your Honor has said that's what they have to do. But it's a very difficult task in these times.

THE COURT: My ruling against you on your motion to reconsider, do not think I wasn't sympathetic with the situation that you're in as a lawyer. I sense that. So at least understand that I understand your dilemma. As I said at the end of the ruling, it is my belief that if someone files an involuntary bankruptcy case in the United States, that they need to be prepared to come to the United States to prove up their case.

I think what we need to do, a couple of pieces of this. You're going to turn over copies of the passports and the wet signatures by next Friday, a week from today. Ms. Lindauer, go ahead and get your motion to dismiss set about four weeks from this week, all right. And then, Mr. Packman, I'm going to give you, let's say, is ten days enough for you to track down your clients with my order and then determine whether they're wanting to come to the United States to be deposed, able, that sort of thing? Is ten days enough?

MR. PACKMAN: Yes, Your Honor. That's fine. Thank you.

THE COURT: Okay. So let's set another one of these, so we can talk about this in open court. And then you can let us know what your clients have decided that they're going to do about the depositions. And then we have a motion to dismiss, but it's set out, again, that will be approximately, or around three weeks later after the status conference. So why don't you get a status conference. We typically do these on Fridays, but I'll do it any day that we have time. So, Mr. Packman, if you'll just get a new one of these in about ten days, or so. Okay?

MR. PACKMAN: Sounds good, Your Honor.

Thank you very much for your time today.

THE COURT: It's my pleasure. And I appreciate you asking for this. It helped me kind of understand things.

So, Ms. Lindauer, your job is to get a setting about four weeks from now, as the outside date on that. All right?

MS. LINDAUER: Understood, Your Honor. Thank you.

THE COURT: Okay. Thank you. And everyone have a nice weekend.

MR. PACKMAN: You too, Your Honor. Thank you.

(End of Proceedings.)

Case 20-31131-hdh7 Doc 265-4 Filed 11/13/20 Entered 11/13/20 13:22:25 Desc

C E R T I F I C A T E

I, CINDY SUMNER, do hereby certify that the foregoing constitutes a full, true, and complete transcription of the proceedings as heretofore set forth in the above-captioned and numbered cause in typewriting before me.

/s/Cindy Sumner

CINDY SUMNER, CSR #5832
Expires 10-31-2022
Cindy Sumner, CSR
5001 Vineyard Lane
McKinney, Texas 75070
214 802-7196