Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL007 LLC, *et al.*[1],** | § | **Case No. 20-31131-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**REPLY TO PETITIONERS' AMENDED OPPOSITION TO ALLEGED DEBTORS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 303(i)**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COME NOW WALL007, LLC *et al.* ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and file this their *Reply to Petitioners' Amended Opposition to Alleged Debtors' Motion for Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i)*, and in support thereof would respectfully show the Court as follows:

1. This Reply addresses the "bad faith" issue set for hearing by the Court.

2. The filing of a bankruptcy petition "in good faith is no longer expressly provided for in the Bankruptcy Code[,]" but when courts have considered "whether such a requirement still

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.

exists[, they]… have uniformly held that a bankruptcy court, sitting as a court of equity, possesses the inherent power to determine whether a [party]… has improperly invoked its jurisdiction by coming into the court in bad faith." *First Am. Bank v. Coastal Nursing Ctr. (In re Coastal Nursing Ctr.)*, 164 B.R. 788, 793 (Bankr. S.D. Ga. 1993).

3. "[The good faith standard] furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with 'clean hands.'" *In re Little Creek Dev. Co*., 779 F.2d 1068, 1072 (5th Cir. 1986).

4. The terms of 11 U.S.C. 303(i)(2) provide that:

> "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>
> (A)costs; or
>
> (B)a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
>
> (A) any damages proximately caused by such filing; or
>
> (B) punitive damages.

5. When an involuntary case is dismissed without consent of all of the petitioners and debtor has not waived the right to judgment under section 202(i), the bankruptcy court has discretion to award costs and attorneys' fees under section 303(i)(1). *In re eBackpack, LLC*, 605 B.R. 126,137 (Bankr. N.D. Tex. 2019). "[T]he underlying policy purpose is to allow an alleged debtor to recover its reasonable costs and attorney's fees, regardless of whether there was bad faith or improper purpose (in other words, Section 303(i)(1) creates a statutory exception to the usual 'American Rule,' so that the losing involuntary petitioners will pay in the context of an unsuccessful involuntary petition)." *McMillan v. Maestri (In re McMillan*), 543 B.R. 808 (Bankr. N.D. Tex. 2016) quoting *In re Commonwealth Sec. Corp.,* No. 06–30746–SGJ–7, 2007 WL 309942, at *6 (Bankr. N.D. Tex. Jan. 25, 2007).

6. Where bad faith is also found to exist, in addition to costs and attorneys' fees, both compensatory and punitive damages may also be awarded under section 303(i)(2). *Id*; *In re Clean Fuel Techs. II, LLC*, 544 B.R. 591, 606 (Bankr. W.D. Tex. 2016). See also *In re K.P. Enter*., 135 B.R. 174, 177 (Bankr. D. Me. 1992) ("The debtor who successfully defends an involuntary petition may obtain an award of costs and fees against the petitioner and, if a petitioner brought the petition in bad faith, the debtor may, in addition, have damages and punitive damages from it.").

***The conduct of the Petitioners and their counsel has been in bad faith.***

7. In an involuntary bankruptcy, "the petitioning creditors bad faith is a factual issue." *In re Ballato*, 252 B.R. 553, 558 (Bankr. M.D. Fla. 2000). Courts including those within the Fifth Circuit, have used multiple tests to determine whether an involuntary petition was filed in bad faith for the purposes of § 303(i)(2), including: "(1) an 'improper use test'; (2) an 'improper purpose test'; (3) an 'objective test,' inquiring into what a reasonable person would have believed; and (4) a 'Rule 9011 test,' inquiring into whether the involuntary petition: (i) was justified based upon a

reasonable inquiry into the facts and the law; and (ii) was interposed for an improper purpose." *In re McMillan* at 831 (Footnote 11) quoting *In re TRED Holdings, L.P,* No. 10–40749, 2010 WL 3516171, at *7 n. 7 (Bankr. E.D. Tex. Sept. 3, 2010). Additionally, a determination of bad faith filing of an involuntary petition may be based on the "totality of the circumstances," and is a consideration in awarding compensatory and punitive damages. *In re TRED Holdings, L.P.*, No. 10-40749, 2010 Bankr. LEXIS 3109, at *21-22 (Bankr. E.D. Tex. 2010).

8. The improper purpose test "asks whether the petition was filed for a non-bankruptcy purpose, *Basin Electric Power Cooperative v. Midwest Processing Company*, 769 F.2d 483, 487 (8th Cir.1985); *In re Willow Lake Partners II, L.P.*, 156 B.R. 638, 644 (Bankr. W.D. Mo. 1993), or was "motivated by ill will, malice or for the purpose of embarrassing or harassing the debtor. *In re Better Care, Ltd*., 97 B.R. 405, 410 (Bankr.N.D.Ill.1989). See e.g., *Basin Electric Power Cooperative*, *supra* at 486, *In re Whiteside*, 240 B.R. 762, 765-766 (Bankr. W.D. Mo. 1999). "Under the improper purpose test, the improper purpose of filing the involuntary petition may be found for multiple reasons. For instance, the filing is improper if:

(i) It was "motivated by ill will, malice or the purpose of embarrassing or harassing the debtor," *Wortley v. Chrispus Venture Capital, LLC (In re Global Energies, LLC)*, 763 F.3d 1341, 1349 at n.5 (11th Cir. 2014);

(ii) It was filed to "deliberately to gain advantage in a business dispute," *Id.;*

(iii) It was filed to "gain advantage in a contract dispute," *Basin Electric Power Cooperative v. Midwest Processing Company,* 769 F.2d 483, 486 (8th Cir. 1985);

(iv) It was motivated by the purpose of "harassing the debtor or collecting an unpaid obligation..." *In re Apache Trading Group, Inc*., 229 B.R. 891, 893 (Bankr. S.D. Fla. 1999);

(v) It was intended as a debt collection effort because "a creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt." *In re Nordbrock*, 772 F.2d 397, 400 (8th Cir.1985);

(vi) It was "using the bankruptcy process as a weapon to satisfy their claims." *In re Tichy Elec. Co. Inc.*, 332 B.R. 364, 377 (Bankr. N.D. Iowa 2005); and

(vii) "[The] petitioners could have advanced their own interests in a different forum;..." *In re Cannon Express Corp*., 280 B.R. 450 (Bankr. W.D. Ark. 2002)

9. The improper use test asks whether the creditors' actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures. *In re Whiteside*, 240 B.R. 762, 765 (Bankr. W.D. Mo. 1999) citing *In re Advance Press & Litho, Inc*., 46 B.R. 700, 703 (Bankr. D. Colo. 1984); *In re SBA Factors of Miami, Inc*., 13 B.R. 99, 101 (Bankr.S.D.Fla.1981). In distinguishing it from the improper purpose test, it must be determined whether the filing was "inappropriate or unjustified for the purposes which the remedy of involuntary bankruptcy was intended, rather than in a general sense of being wrong or unlawful..." *Whiteside* at 766. For instance, "a creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt" since the remedy of involuntary bankruptcy was not intended to be a substitute for ordinary debt collection procedures. *In re Nordbrock,* 772 F.2d 397, 400 (8th Cir.1985). This test also finds bad faith if the petitioner filed to "obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining advantages" particularly if it "could have advanced its own interests in a different forum." *In re Apache Trading Group, In*c. at 893.

10. The objective test "requires the Court to assess whether a reasonable person in the creditor's position would have acted as the petitioning creditors did [and] the reasonableness of the creditor's action in filing the involuntary petition must be scrutinized." *In re Apache Trading*

*Group, In*c at 893. For instance, the did the petitioner "conduct a reasonable inquiry into the law and the facts surrounding the case prior to the filing..." *In re Tichy Elec. Co. Inc*. at 373.

11. The Combined Test or Totality of the Circumstances test is simply a consolidation of the previous four tests. "If it smells like bad faith, it's got to be bad faith." *In re Better Care, Ltd*., 97 B.R. 405, 409 (Bankr.N.D.Ill.1989).

12. While not invoking the names of these enumerated and specifically labelled tests, other case law has used their concepts to determine whether the Petitioners have exercised bad faith in filing an involuntary petition. In those cases, it has been determined that the Court may inquire into "whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders." *In re Landmark Distributors, Inc.*, 189 B.R. 290, 309 (Bankr. D.N.J. 1995). As mentioned *supra*, when examining the conduct of the Petitioners, the Court is required to consider whether a reasonable person in the petitioners' position would have filed their petition. *Id.* Similarly, those cases have determined that the Court must also establish the subjective motivations of the Petitioners, which is comparable to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings. *Id*. Again, as noted *supra*, the Court must look at the "totality of the circumstances when determining bad faith." *In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 254 (6th Cir. 2006).

13. Here, bad acts by one or more Petitioners, and their counsel supports a totality of the circumstances finding of bad faith, as well as a finding of bad faith under any one and all of the five (5) enumerated tests for bad faith. For example, the Third Circuit, in analyzing whether an involuntary petition had been filed in bad faith, under a totality of the circumstances approach,

considered factors such as "whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing." *Forever Green Athletic*, 804 F.3d 328, 336 (3d Cir. 2015).

14. Because there can be no genuine disagreement that Petitioners and Fu filed the Involuntary Petitions in bad faith, Alleged Debtors also are entitled to compensatory and punitive damages. As one court has stated:

> [I]n determining whether [a] creditor has exercised bad faith in filing an involuntary petition in bankruptcy, inquiry may be made into whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders.

*In re Elsub Corp*., 66 B.R. 189, 196 (Bankr. D.N.J. 1986). The court "must consider whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding" and ascertain "the subjective motivations of a petitioning creditor, which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings." *Id*.

15. Under section 303 of the Bankruptcy Code, to be eligible to file an involuntary bankruptcy petition, the petitioners must have unliquidated, non-continent claims which are not subject to a bona fide dispute. Notably, whenever a bona fide dispute exists as a result of "either

a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts," a court should apply Congress's legislative intent relating to Section 303 which is to proscribe the use of an involuntary bankruptcy to pressure a debtor into paying a legitimately disputed debt. *Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 234 (2d Cir. 2015). "Congress has made clear that a claimholder does not have standing to file an involuntary petition if there is a "bona fide dispute as to liability or amount." *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co. (In re Green Hills Dev. Co.*), 741 F.3d 651 (5th Cir. 2014)

16. As stated in earlier pleadings, the Alleged Debtors assert that the Petitioners, led by Michael Fu (the Petitioners' agent), engaged in what was essentially a two-party collection effort which was subject to a bona fide dispute against the Alleged Debtors to recoup Fu's business losses (for which the Alleged Debtors were not responsible) from a State Court action ,which was still live at the time of the filing of the involuntary petitions, where Fu used the Petitioners to claim various (but unowed) remedies, and where no threat to the Petitioners' rights or ability to collect any alleged indebtedness existed. Additionally, such claims were also contingent as further reflected in the State Court action. The payment of any amounts owed required the withholding of taxes and remittance into the same accounts from which the funds originated. Petitioners and Fu (as their agent on their behalf) would comply with these requirements. Furthermore, the loan agreements under which Petitioner's assert their claims were contingent upon the execution of a master note and full funding of the amounts therein which did not occur. Petitioners never even provided direct proof that they actually sent any and all of the funds which they claimed they loaned to the Alleged Debtors. In essence, since the Petitioners failed to show that their claims

were not the subject of a bona fide dispute, and since such claims were not contingent, they did not qualify to file these involuntary bankruptcy cases; and yet they did so anyway.

17. When the Petitioners' State Court case did not proceed as planned (i.e. to Fu's and the Petitioners liking), the Fu, as the agent of the Petitioners, and Petitioners, through their counsel, engaged in bad faith tactics by shopping for an additional (and possibly, more sympathetic) forum and sought to obtain a faster result through an involuntary bankruptcy, and filed the instant parallel case in this Court while the State Court case was active based on the same operative facts and claims in a shakedown effort intended to force the Alleged Debtors to capitulate to Fu's and the Petitioners' demands for monies that are in dispute. In fact, Michael Fu stated in his deposition that after consulting with the Petitioners they determined it would be "much faster" instead of pursuing the State Court case which he felt was "going to be a long procedure, a long time dragging and for the longest time." See Exhibit "A", *Deposition Transcript of Michael Fu*, Page 73, Line 19 through Page 74, Line 15. One court found the same facts behind filing an involuntary bankruptcy petition be an improper purpose:

> The evidence reveals that the normal reasons for filing a bankruptcy petition were absent in this case. The appropriate forum for this type of collection action is the U.S. District Court. Mr. Day testified that he had unsuccessfully filed in District Court for many years. He stated that the process is slow and the results have been unsatisfactory. He suggested the bankruptcy forum to his clients because it had been suggested as an alternative at a seminar…. [an involuntary petition] is not intended to be used in an exclusively self-serving manner as a collection device….Improperly exercised, a creditor can hold a business hostage unless its claim is satisfied. Because of this potential for abuse, the exercise of this power must be closely scrutinized. The use of an involuntary petition by these Creditors in this manner is precisely the type of conduct which is forbidden and is the type of conduct which is defined as having been done in bad faith. *In re Tichy Elec. Co. Inc.*, at 376.

When asked "what … [he] hope[d] to accomplish with the bankruptcy filing," Fu further stated (as the agent of the Petitioners) that the filing was to obtain certain reports and information about the projects. See Exhibit "A", *Deposition Transcript of Michael Fu*, Page 79, Line 7 through Page 80, Line 1. It is also important to note that during the May 11, 2020 conference call between and among counsel for the Petitioners and the Alleged Debtors, Petitioners' counsel "revealed that the main purpose of the filings was to obtain [discovery supporting their case in State Court in the form of] an accounting of monies that were received by the Wall Entities from some of the [Petitioners]." See paragraph 25(c) of the *Joint Pre-Conference Statement* [Dkt. No. 25].

18. Thus, Petitioners and Fu used the filing of an involuntary petition as an (i) impermissible litigation tactic to collect on an alleged but disputed debt and (ii) which was also really a two party dispute. "An improper use of the Bankruptcy Code justifying a finding of bad faith will then exist any time a creditor uses an involuntary bankruptcy to obtain a disproportionate advantage to that particular creditor's position, rather than to protect against other creditors obtaining such a disproportionate advantage [which] is especially true where the petitioning creditor could have obtained that advantage in an alternate forum." *In re Silverman*, 230 B.R. 46, 53 (Bankr. N.J. 1998). Petitioners had the clear option of joining the State Case, and the assets of the Alleged Debtors would have likewise been protected through certain available procedural mechanisms. Furthermore, certain evidence shows that Haibo Jiang, husband of one the Petitioning Creditors claimed that such creditors were under his control, and he could have the involuntary bankruptcy cases dismissed if he was paid about $4 million which would disproportionately advantage certain creditors over others. One court has noted that a similar "offer to dismiss an involuntary case for payment of money is a felony under Title 18 U.S.C. § 152." *In re Ballato* at 556.

19. Given that the State Court Case was essentially a two-party dispute the filing of the involuntary cases was impermissible. *In re Tichy Elec. Co.* at 373; *In re 1701 Commerce, LLC*, 477 B.R. 652, 658 n.20 (Bankr. N.D. Tex. 2012) (citations omitted) ("Similar inter-lender and two-party disputes have been dismissed for cause because of such bad faith."); *Wolinsky v. Oak Tree Imaging, LP,* 362 B.R. 770, 781 (S.D. Tex. 2007) (stating that "[t]he role of the bankruptcy courts is not to adjudicate two-party disputes . . . ") (citing *Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.,* 04-C-8053, 2005 LEXIS 19633, at *14 (N.D. Ill. Sept. 7, 2005) (affirming the dismissal of a Chapter 7 case where the case has "no discernable relationship to any true bankruptcy policies" and has "been used as a litigation tactic to frustrate and delay the debtor's opponent in a two-party dispute"); *In re Ballato* at 558-59 (stating that a court may find that an involuntary petition was filed in bad faith when the bankruptcy involves a two-party dispute between the Petitioner and the Debtor and the Petitioner's sole purpose in filing is to promote its debt collection efforts).

20. The threatened and intended result of Petitioners impermissible filings was (i) a diminution in value of the Alleged Debtors' enterprises; (ii) damage to their creditors; (iii) damage to the relationship between the Alleged Debtors and their creditors; (iv) hindered access to capital credit; and (v) harm to the Alleged Debtors stemming from the negative publicity likely orchestrated by the Petitioners that the filings caused.

21. Further, in an effort to thwart the Alleged Debtors attempts to determine the Petitioners' standing to file the instant bankruptcy, the Petitioners' and their counsel failed to comply with each and every one of the Discovery Orders aimed at verifying the existence and validating the identity of the supposed Petitioners. To date, such determination has been rendered impossible due to the recalcitrance of the Petitioners to cooperate with the discovery process.

22. Given the aforementioned acts, and as mentioned *supra*, the Court must "consider whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding" and ascertain "the subjective motivations of a petitioning creditor, which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings." *In re Elsub Corp*. at 196. The bad faith actions of Petitioners and their counsel are manifest, and speak very clearly as to the motivation of the Petitioners. As such, compensatory and punitive damages are warranted. This is clear for the foregoing reasons which include the facts that (1) too few Petitioners filed the involuntary Petitions; (2) their claims were being adjudicated in a different forum prior to filing this parallel case based on the same operative facts and claims; (3) Petitioners' claims were disputed and contingent, (4) they were attempting to gain a disparate advantage, (5) they were using as a debt collection mechanism, (6) they were aware that their claims had no merit since they were made to recoup losses and seek monies not owed by the Alleged Debtors, (4) Petitioners demonstrated no legitimate concern for the well-being of the Alleged Debtors or their creditors; (5) the objective of the Petitioners was to gain a tactical advantage in their dispute with the Alleged Debtors as a critical time (i.e. when losing in the State Court action). These actions constitute an abuse of the bankruptcy system, and further, waste the resources of this Court, the Alleged Debtors, and their creditors.

***Alleged Debtors should be awarded costs and attorneys' fees.***

23. Contrary to Petitioners' arguments, the Alleged Debtors are not required to show the existence of bad faith in order to be awarded their costs and attorneys' fees as stated in Alleged Debtors prior motion. Petitioners confuse the bad faith requirement to award punitive and compensatory damages with the discretion granted to the court to award attorneys' fees and costs which is analyzed under a separate test further laid out in the Alleged Debtors' prior motion.

Additionally, The Petitioners incorrectly claim that there is no presumption in favor of awarding attorneys' fees and costs however the majority approach is that "courts apply a "presumption" that attorneys' fees will be awarded against unsuccessful petitioning creditors, with the presumption being rebuttable based on the "totality of the circumstances" test." *In re Clean Fuel Techs. II, LLC* at 601. (Note that the "totality of the circumstances" test for awarding attorneys' fees is not the same as the "totality of the circumstances" test for determining bad faith.)

**CONCLUSION**

24. The filings of the involuntary bankruptcy petitions by the Petitioners were in bad faith based not on just one test, but rather on multiple tests to determine bad faith including the improper purpose, improper use, and totality of the circumstances, and as a result, the Court should award attorneys' fees, costs, and compensatory and punitive damages to the Alleged Debtors pursuant to the terms of 11 U.S.C. § 303(i)(1) and (2).

25. Even if the Petitioners' filing of the involuntary bankruptcy petitions are found to not be in bad faith, Alleged Debtors should still be awarded their attorneys' fees and costs.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Alleged Debtors pray that the Court grant this *Motion for Recovery of Attorney's Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i)* against all Petitioners involved in the filing and pursuit of the Involuntary Petitions, and award Alleged Debtors their attorneys' fees and costs along with compensatory and punitive damages and in the alternative their attorneys' fees and costs along with such and other and further relief to which the Alleged Debtors may show themselves justly entitled.

Dated: February 23, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors
Email: joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
Attorneys for Alleged Debtors

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 23, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer