**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, *et al.*,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**PETITIONING CREDITORS' AMENDED MOTION TO COMPEL**

Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu (collectively, the "Petitioning Creditors"), by and through their counsel, hereby submit this amendment to the Petitioning Creditors Motion to Compel ("Motion to Compel"), pursuant to Rule 7037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Federal Rule of Civil Procedure 37, for entry of an order, substantially in the form attached hereto as Exhibit "H" (the

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC. The Alleged Debtors' federal tax identification numbers are unknown to the Petitioning Creditors sat this time.

EXHIBIT 25

"Proposed Order"), (a) compelling responses to the Petitioning Creditors' First Request for Production of Documents and First Set of Interrogatories [Dkt. No. 92] and (b) compelling certain party deponents to appear for depositions, pursuant to Federal Rule of Civil Procedure 30(b)(4)(the "Amended Motion to Compel"). In further support of the Amended Motion to Compel, the Petitioning Creditors respectfully represent as follows:

**FACTS AND ARGUMENT[2]**

1. As the Court is aware, the history of this discovery saga between the parties dates back almost to the beginning of this case but the following recounts the most recent chronology of events.

2. On July 27, 2020, counsel for Petitioning Creditors sent an email to the Alleged Debtors' counsel requesting depositions of Barton and Bedoya. See, Exhibit "A."

3. On July 29, 2020, counsel once again requested dates for their depositions. See, Exhibit "A."

4. On August 7, 2020, Mr. Metzger responded that he represented Barton and that Barton would be produced but not until after the hearing on August 17th. See, Exhibit "A."

5. During subsequent communications, counsel for the Petitioning Creditors advised counsel for the Alleged Debtors and Mr. Metzger, that Barton and Bedoya would be noticed for deposition as representatives of the Alleged Debtors and that if the dates set forth did not work, alternative dates could be worked out.

6. Barton and Bedoya were identified by the Alleged Debtors in their interrogatories as officers of the Alleged Debtors (President and Treasurer/Secretary, respectively).

---

2 Capitalized terms not defined in this section are defined in a later section of the Amended Motion to Compel or in the Motion to Compel.



EXHIBIT 25

7. On July 31, 2020, the Petitioning Creditors sent Notices of Deposition and Subpoenas to the Alleged Debtors' counsel regarding the depositions of the Corporate Deponents, Barton, Bedoya and the 30(b)(6) Deponent. See Exhibit "B."

8. The depositions of Barton and Bedoya were scheduled for August 10th and 11th. See, Exhibit "B."

9. The deposition of the corporate designee was scheduled for August 10th. See, Exhibit "B."

10. At the same time, the Alleged Debtors have served Notices of Depositions to 21 Petitioning Creditors. The Petitioning Creditors believe these depositions are largely duplicative and interposed for harassment, but will not object to these depositions moving forward provided that the Alleged Debtors agree to reasonable dates and time periods and take them via video or phone. The Petitioning Creditors cannot travel here from China due to COVID-19 travel restrictions and, frankly, given the current environment, counsel for the Petitioning Creditors would respectfully request that the Court not require them to travel here and potentially expose themselves or others to COVID-19. See, Exhibit "C."

11. It is apparently the Alleged Debtors' position that they (i) either will not produce Barton and Bedoya for deposition until the Alleged Debtors' Motion to Dismiss is ruled on by this Court (no date has been set for such hearing) or, even if they do produce them, (ii) they will unilaterally impose a limit on the scope of the depositions. See, Exhibit "D."

12. In an attempt to circumvent the discovery rules and prevent Barton and Bedoya from testifying at a deposition, the Alleged Debtors sent the Petitioning Creditors a "Joint Stipulation"—which was oddly presented in the form of a motion—in which the Alleged Debtors' counsel states:



EXHIBIT 25

> The Petitioners have noted rush depositions of several representatives of the Alleged Debtors, which they are seeking to take in the next two weeks. It is the Alleged Debtors' position, however, that any discovery that take place before the dispositive motions are resolved should be limited only to discovery related to the dispositive issues raised in those motions, as the Petitioners' standing in this Court is in question thus the Petitioners are not yet entitled to obtain discovery. Further, resolution that results in disposing of this case would render discovery efforts meaningless, thus limiting discovery to only dispositive issues could conserve the resources of the parties and protect the parties from unnecessary exposure of sensitive information. The Alleged Debtors have in good faith limited their discovery productions on these grounds. As the parties are scheduled to come before this Court on August 17, 2020 to resolve certain outstanding discovery issues (including the issue of whether to stay discovery), the Alleged Debtors intend to do so at least until that date, including in the depositions that the Petitioners have noted for prior to the August 17th hearing.

See, Exhibit "E"

13. The Petitioning Creditors will not agree to the Alleged Debtors' "Joint Stipulation" as they believe that they are entitled to documents, information, and deposition testimony relevant to the claims and defenses asserted by the parties in the case. Accordingly, this Amended Motion to Compel was necessarily filed and not as a result of a lack of good faith efforts on the part of the Petitioning Creditors and their counsel to resolve the matters consensually.

14. In sum, after weeks of efforts to resolve these discovery disputes consensually, the Petitioning Creditors file this Amended Motion to Compel as a result of the Alleged counsel advising the Petitioning Creditors' counsel, on August 7, 2020, that (i) they were uncertain whether they would produce for video (or even phone) deposition three of the Alleged Debtors' corporate representatives—President, Timothy Barton ("Barton"), a corporate designee pursuant to Rule 30(b)(6) ("30b6 Deponent") and Treasurer/Secretary, Saskya Bedoya ("Bedoya")

(collectively, the "Corporate Deponents")—prior to this Court's determination on alleged dispositive issues raised in the Alleged Debtors first "Motion to Dismiss," filed in this proceeding three months ago, on May 7, 2020.

15. Two other depositions were also noticed by Petitioning Creditors of Hongpeng Lin and Murugan Venkat (the "Other Deponents") (collectively with the Corporate Deponents, the "Deponents"), pursuant to subpoenas, one of which was served on Mr. Lin and the other which remains pending for service.

16. Counsel for Timothy Barton, Mr. Metzger, has said that he **may** represent the Other Deponents, individually, but has yet to confirm same. Apparently, Mr. Metzger represents the Corporate Deponents, individually, but they were noticed for deposition as representatives of the Alleged Debtors, with the exception of Mr. Barton who also must answer questions related to the Petitioning Creditors Motion for Sanctions against him for violating this Court's Order of June 4, 2020.

17. On August 7, 2020, after two weeks of back and forth between counsel and service of Notices and Subpoenas ("Deposition Notices") on the Corporate and Other Deponents ("the Deponents") and counsel, Mr. Metzger advised Petitioning Creditors that even if any of the depositions went forward prior to the August 17, 2020 hearing on the Motion to Compel, counsel would unilaterally limit the depositions to suit his purposes-namely, to delay these proceedings and prevent Petitioning Creditors from getting to relevant information and the truth of the matter. See, email chains between counsel dating back to July 27, 2020 annexed hereto collectively as Exhibit "A" and Exhibits "D" and "E."

18. This new unilaterally imposed bar to Petitioning Creditors' discovery rights is of course consistent with the Alleged Debtors' prior refusals to act in good-faith during the



EXHIBIT 25

discovery process and their abundantly apparent attempts to delay these proceedings and prevent the Petitioning Creditors from taking discovery to support their Petitions, refute the defenses asserted and of course from discovering the truth about what happened here with their loans (“Loans”) to the Alleged Debtors.

19. It has taken the Alleged Debtors two months to provide Petitioning Creditors with some responsive documents and answers to written discovery. See, annexed Exhibits “B” and “F” which is a list of those discovery documents produced, and which the Alleged Debtors have promised to produce, but have not as of the filing of this Amended Motion.

20. However, many gaps in their discovery responses remain as evidenced by their failure to produce documents and responses despite promising to do so; their refusal to respond to certain relevant requests as detailed herein and in the Motion to Compel; and their most recent refusal to produce witnesses for depositions without their self-imposed restrictions.

21. The Alleged Debtors assert (a) that they are paying their debts as they come due but refuse to produce financial documents or key witnesses to substantiate same; (b) that they are being adversely impacted by the pending proceedings (and have asserted by way of defense that the proceedings are not in their best interests or those of the creditors), yet they refuse to produce simple discovery which would substantiate these claims (i.e., their corporate documents to substantiate they are legitimate companies; their business books and records to substantiate that they have assets which might be effected; their corporate President and financial officer to testify on these and other relevant topics); (c) that they are incurring damages as a result of these Petitions (without producing any proof thereof); (d) that they received the loan proceeds at issue (some $20,000,000) yet for some reason do not have to pay that money back to the Petitioning Creditors (again calling into question the Alleged Debtors’ business operations; assets; books and



EXHIBIT 25

records and the facts squarely within the knowledge of the Deponents and which might be reflected by the subject books and records).

22. The Alleged Debtors' primary defense to the Petitions, that they don't want to pay back the Petitioning Creditors (or now do not have to pay them back), because they may not be the correct lenders, is nothing more than a ruse to delay the obvious, the Alleged Debtors apparently do not have the cash or assets to pay back the Loans and they will do anything to delay these proceedings and prevent the Petitioning Creditors from discovering the truth of what the Debtors under the tutelage of Mr. Barton did with their money.

23. The Alleged Debtors had no problem whatsoever accepting some $20,000,000 in Loan money from the Petitioning Creditors pursuant to the "Loan Agreements"; verifying receipt of the Loan proceeds ("Loan Proceeds") from the Petitioning Creditors (See, Loan Verifications Exhibit " A" to the *Opposition Of Petitioning Creditors To The Alleged Debtors' Second Motion To Compel Discovery Responses* [Dkt. 119]); commencing interest payments to some of the Petitioning Creditors on the early Loans; and, quite unbelievably, maintaining in this proceeding that they would pay the Loans back but that they "don't know how or who to pay."

24. In fact, the Alleged Debtors maintain in their own pleading that:

> The disagreement as to how and to whom the loans should be repaid is the primary underlying dispute with regards to this case. The parties attempted to mediate the dispute – with Fu acting as the agent for the lenders in the mediation – but no resolution was reached.

See, *Alleged Debtors' Motion to Compel Production of Documentary Evidence Permitting Verification of Electronic Signatures and Stay All Additional Discovery of Non-Dispositive Issues, or in the alternative to invalidate the involuntary petition and to schedule a hearing in conjunction with Creditors' Motion to Compel*, p.3



EXHIBIT 25

Case 20-31131-hdh7 Doc 123 Filed 02/23/21 Entered 02/23/21 15:39:23 Desc

In other words, the Alleged Debtors on the one had argue that they simply cannot pay the Loans back because they don't know who to pay but, on the other, apparently argue that they do not have to pay anyone on the Loans! It is an absurd construct of delay by the Alleged Debtors.

25. The Requests by Petitioning Creditors regarding admissions and declarations, including those against interest, are therefore highly relevant to these proceedings (ie., do they agree that the Loans must be paid or not? If so, why do they now dispute that they must repay the Loans to the Petitioning Creditors who are the lenders under the Loan Agreements?).

26. The Requests for documents evidencing how the Alleged Debtors took in the Loan Proceeds, and what they did with them, are directly relevant to these proceedings and the assertions of the Alleged Debtors as set forth above in their Motion to Dismiss.

27. The Requests for documents demonstrating whether the Alleged Debtors are legitimate companies with real assets and liabilities are not only relevant to the Petitions but also to other matters pending before this Court including, but not limited to, the *Motion for Stay Relief* of TAMAMOI, LLC [Dkt. No. 86] wherein the Alleged Debtors, or at least one of them, received a transfer of real property subject to TAMAMOI, LLC's lien claims, from (Carnegie Development, LLC) unbeknownst to the lender and to the Petitioning Creditors.

28. The Petitioning Creditors' understanding (as memorialized in the Loan Agreements) was that the Loan Proceeds would be used **by the Alleged Debtors** to purchase and "horizontally develop" real property for investment purposes and, in the process, the Loans would be repaid by the Alleged Debtors to the Petitioning Creditors in a timely fashion per the Loan Agreements.

29. What exactly the Alleged Debtors (or more aptly perhaps Mr. Barton) did with the Loan Proceeds remains a mystery to the Petitioning Creditors.



EXHIBIT 25

30. There is nothing in the Court's Order or Approved Discovery Plan, which limits the discovery obligations of the Alleged Debtors as they now unilaterally claim to the Petitioning Creditors.

31. To be clear, the Alleged Debtors astounding current assertion is that until the Court renders a decision on the First Motion to Dismiss, which has been pending since early May and has yet to be scheduled for hearing, the Alleged Debtors do not have to produce relevant financial documents or key witnesses—the Deponents—who they will undoubtedly rely on in support of their Motion to Dismiss which, in turn as pled, goes well beyond a Rule 12(b)(6) Motion as it raises all types of disputed facts and questions of law.

32. The general excuse the Alleged Debtors now interpose (through their counsel), in order to avoid their discovery obligations, is that the Requests are not relevant to the Court making a determination on the Petitions.

33. The Alleged Debtors are now using this same "rationale" to prevent the Petitioning Creditors from taking the depositions of Barton and Bedoya, in their official capacity as officers of the Alleged Debtors—despite it being highly likely that they have information that is directly relevant to the underlying claims and defenses in this case.

34. The Alleged Debtors' parroted relevancy objections without substance are untenable, particularly given the Fifth Circuit's broad interpretation of the relevancy standard. <u>Coughlin v. Lee</u>, 946 F.2d 1152, 1159 (5th Cir. 1991).

35. The Alleged Debtors' have made it abundantly clear that they will not participate in the discovery process in good faith unless, unfortunately, this Court gets involved and, therefore, the Petitioning Creditors are forced to file and proceed with this Amended Motion to Compel.



EXHIBIT 25

36. The Petitioning Creditors' counsel have tried repeatedly over the last few weeks to reach some type of resolution of the Alleged Debtors' objections to producing corporate and financial documents for the Alleged Debtors and the Deponents. See, Exhibit "A."

37. On or about July 30, 2020, the parties conferred via a phone call in an attempt to discuss the numerous discovery disputes outlined in the Motion to Compel and the first and second motions to compel filed by the Alleged Debtors (collectively, the "Alleged Debtors' Motions to Compel") [Dkt. Nos. 101 and 105].

38. The Alleged Debtors indicated that they would be producing additional documents and information agreed upon by the parties on the call and would take under advisement whether to produce financial documents for the Alleged Debtors and witnesses.

39. The Alleged Debtors' counsel sent the amended discovery responses (See, Exhibit "G") and a letter with a link to additional documents which is broken. Petitioning Creditors are waiting for counsel to fix the link.

40. However, notwithstanding the attempted supplemental production, to date, the Alleged Debtors have **flat out refused to produce any true corporate or financial documentation from which the Alleged Debtors intend to support their defenses**. See, Exhibit "F" - a summary list of what the Alleged Debtors have produced as of August 9, 2020.[3]

41. "The purpose of discovery is to ascertain the truth." In re Certain Asbestos Cases, 112 F.R.D. 427, 432 n. 8 (N.D. Tex. 1986) (Fitzwater, J.); see also Batson v. Neal Spelce Assocs., Inc., 112 F.R.D. 632, 642 (W.D. Tex. 1986) ("Mutual knowledge of all of the relevant facts gathered by both parties is essential to proper litigation.").

3 The Alleged Debtors' indicated they would produce all of the Alleged Debtors' communications with the Petitioning Creditors and with Michael Fu and his representatives. See, Exhibit "F."



EXHIBIT 25

42. This is why the Federal Rules permit parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," without regard to whether the information will be ultimately admissible at trial, so long as the request "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). These liberal discovery provisions are meant to encourage full vetting of the issues and facts prior to trial, and to "remove surprise," prevent sandbagging, and avoid a favorable trial outcome based on the disfavored practice of "trial by ambush." Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A., 2007 WL 441037, at *8 (N.D. Tex. Dec. 14, 2007).

43. The Fifth Circuit has held that "relevance" is to be construed broadly—information is relevant as long as it "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991). Additionally, relevancy is not limited to admissible evidence. Id.

44. Federal Rule of Civil Procedure 30(b)(6) provides that a litigant may direct a notice of deposition to an organization, which must then designate one or more officers, directors, or other persons to testify on its behalf about information known or reasonably available to it. FED. R. CIV. P. 30(b)(6).

45. The rule streamlines the discovery process and places the burden of identifying responsive witnesses for a corporation on the corporation, which appears vicariously through its designee. Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir.1993).

46. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether



EXHIBIT 25

from documents, past employees, or other sources." Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir.2006) (internal quotation marks and footnotes omitted).

47. Also, because under Rule 30(b)(6), the designated witness acts as the agent for the corporation, if a certain fact is within the collective knowledge or subjective belief of the organization, the designee should be prepared on the issue by the organization and allowed to testify as to it even if it is not within her direct personal knowledge. Id. at 435.

48. In particular, the deponent must prepare the designated witness to "answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." Id.

49. If the designated deponent is not knowledgeable about relevant facts, and the corporation has failed to designate an available, knowledgeable witness then the appearance is essentially no appearance at all, and sanctions may be imposed. Resolution Trust Corp. v. S. Union Co., 985 F.2d 916, 197 (5th Cir. 1993); see also Super Future Equities, Inc. v. Wells Fargo Bank Minn.,N.A., 2007 WL 4410370, *8 (N.D.Tex.2007) (citing approvingly cases holding that Rule 30(b)(6) requires the corporation to prepare its designee to give binding answers); Resolution Trust Corp. v. Sands, 151 F.R.D. 616, 618–19 (N.D.Tex.1993) (holding that Rule 30(b)(6) requires an entity to designate a witness to "testify as to matters known or reasonably available to the organization.") (emphasis added).

50. The Petitioning Creditors seek to depose the Corporate Deponents, Barton and Bedoya (and a 30(b)(6) designee if other than them), in their capacities as President and Treasurer/Secretary of the Alleged Debtors.

51. The law is clear that the Petitioning Creditors, like the Alleged Debtors, are entitled to relevant documents, information, and testimony to the claims and defenses plead in the pleadings filed with the Court.



EXHIBIT 25

52. No limitations on the scope of Petitioning Creditors' discovery is set forth in the Joint Discovery Plan filed with the Court (as agreed to by the parties) or otherwise under the Federal Rules of Civil Procedure which the Alleged Debtors can point to in order to severely limit the scope of discovery as they unilaterally seek to impose on the depositions and document production.

53. It is unreasonable for the Petitioning Creditors to participate in the discovery process—to the tune of producing 5,000+ documents and hundreds of responses from Petitioning Creditors to discovery requests—while the Alleged Debtors fail to respond to the majority of discovery requests (they still have not responded to interrogatory questions asking for simple litigation answers – i.e., admissions and declarations against interest) and now seek to avoid producing key witnesses or to severely limit their testimony.

54. Moreover, it is the position of the Petitioning Creditors that the Alleged Debtors seek to delay discovery in this case, including shielding critical witnesses from having to testify under oath. Petitioning Creditors are forced to assume such action by the Alleged Debtors is an indication that they are trying to hide potentially harmful information to their defenses.

55. Accordingly, the Petitioning Creditors request that (1) the Alleged Debtors be required by this Court to (a) produce the Corporate Deponents for video depositions (or phone as to Ms. Bedoya) within two weeks of entry of the Court's Order compelling same; (b) cooperate in the production of Mr. Lin and Mr. Venkat (both of whom worked for or formerly worked for or with the Alleged Debtors) for deposition pursuant to the same time line; (c) produce all documents, including the corporate and financial books and records of the Alleged Debtors, as requested by Petitioning Creditors; (d) fully respond and answer the subject Interrogatories as outlined in the Motion to Compel; (2) reimburse the Petitioning Creditors for their costs and



EXHIBIT 25

Case 20-31131-hdh7 Doc 35-1 Filed 08/10/20 Entered 08/10/20 12:15:29 Desc

counsel fees for having to pursue this Amended Motion to Compel (and the Motion to Compel; and (3) the Court award Petitioning Creditors such other and further relief as the Court deems appropriate.

**CONCLUSION**

Based on the foregoing, the Petitioning Creditors request entry of an Order granting the relief detailed above and such other relief as the Court deems appropriate under the circumstances.

Dated: August 10, 2020

/s/ *Stephen M. Packman*

Jiangang Ou
Nguyen & Chen LLP
11200 Westheimer Road Suite 120
Houston, TX 77042
(832) 767-0339
Fax : (832) 767-0669
Email: jou@nguyen-chen.com

Stephen M. Packman
Archer & Greiner, P.C.
Three Logan Square
1717 Arch St., Suite 3500
Philadelphia, PA 19103
215-246-3147
Email: spackman@archerlaw.com

*Counsel for the Petitioning Creditors*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on August 10, 2020, a true and correct copy of the foregoing document was served on all parties requesting service via the Court's ECF system.

/s/ Stephen M. Packman
Stephen M. Packman

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 8, 2020, I conferred by e-mail with counsel to the Alleged Debtors regarding the relief requested in this Amended Motion to Compel. The Alleged Debtors indicated it would not produce Barton and Bedoya for depositions.

*/s/ Stephen M. Packman*
Stephen M. Packman

219054624v4



EXHIBIT 25