Case 20-31131-hdh7 Doc 35-35 Filed 02/23/21 Entered 02/23/21 19:39:23 Page 1 of 41

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL007 LLC, *et al.*[1],** | § | **Case No. 20-31131-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**ALLEGED DEBTORS' MOTION FOR**
**RECOVERY OF ATTORNEYS' FEES, COSTS, AND**
**COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 303(i)**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 ON OR BEFORE JANUARY 7, 2021, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

---

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.



EXHIBIT 35

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COME NOW WALL007, LLC *et al.* ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and file this their *Motion for Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i)*, and in support thereof would respectfully show the Court as follows:

INTRODUCTION

1. This Chapter 7 case, and the related jointly administered cases, were filed by Petitioners as a litigation tactic, as a debt collection tactic, and an attempt at forum shopping in the context of a state court dispute with the Alleged Debtors. That conduct is a clear abuse of the Bankruptcy Code's involuntary provisions to gain a tactical advantage in the pending litigation and in the disputes between Petitioners and the Alleged Debtors.

2. The underlying subject matter of these cases pertain to a dispute previously filed in a non-bankruptcy forum, as Cause No. DC-19-18361 before the District Court of Dallas County for the 44th Judicial District (the "State Court"). After expending substantial judicial and financial resources on that case, the Alleged Debtors met with some degree of success against the Petitioners. Anticipating an undesirable outcome in that venue, the Petitioners then filed the instant related cases, resulting in a stay of those State Court proceedings until the instant proceedings (based on identical claims) could be adjudicated by this Court. Notably, the State Court remains as an available forum for resolution of all underlying disputes between Alleged Debtors and Petitioners.

3. The Petitioners' actions in these cases reek of bad faith which should be met with serious consequences. Those actions include (1) their use of this additional forum to improperly litigate identical claims, coupled with (2) their refusal to properly comply with the Court's order



EXHIBIT 35

to file a Live Deposition Agreement (aimed at the determination of standing based on the threshold issues of verification of existence and validation of identity of persons claiming to be Petitioners), (3) the filing of multiple motions using false claims of nonexistent "travel bans" and proposing alternative discovery procedures known to the Petitioners to be illegal under Chinese law and unsupportable under U.S. law. The first of those consequences, namely dismissal of the involuntary cases, has been deemed appropriate and has already been ordered by this Court.[2] For the same reasons, an award of costs and attorneys' fees pursuant to 11 U.S.C. § 303(i) is similarly appropriate.

BACKGROUND

4. The Alleged Debtors are Texas limited liability companies formed for the purpose of acquiring land in order to construct horizontal improvements thereon as necessary to create a subdivision – streets, water utilities, sewers, sidewalks, and residential lots – with the objective of selling residential lots to home builders over a period of time.

5. Certain Alleged Debtors allegedly entered into a pooled loan agreement with their respective Petitioners through their designated agent Michael Fu, who was doing business as Silverland Finance Ltd. ("Silverland") and Platinum Investment Corporation ("PIC") (collectively "PIC", "Silverland" and "Fu" are referred to herein as "Fu" or collectively the "Fu Entities") which were actually discovered to be non-existent legal entities. Fu purportedly located the Petitioners in China, engaged them to provide co-lending through the Fu Entities, organized and facilitated the transfer of funds, and acted as an agent on behalf of all the co-lending Petitioners. The Fu Entities have asserted they are the agent for the co-lenders in the pooled loan agreements and further that the agent would serve as the administrator on behalf of the co-lenders, and direct all

[2] See Order Dismissing Bankruptcy Cases Without Prejudice [Docket No. 310]



EXHIBIT 35

payments be made to the agent. Essentially, the pooled loans were part of a single partnership amongst the Petitioners as Co-Lenders with Fu and/or his entities as the unified, designated agent. These facts are important because they show that the Co-Lenders along with Fu are a single alleged creditor entity rather than separate entities.

6. The State Court Case was filed on November 15, 2019, allegedly for the purpose of debt collection. The Plaintiffs' Original Petition in the State Court Case is salacious and spurious, and served as nothing more than a shakedown orchestrated and led by Fu to cover for unrelated failed business ventures of Silverland and PIC in attempt to force Defendants to pay him millions in fees that were either unearned or already paid. Additionally, Fu shared confidential information spread rumors and false information, and defamed the Alleged Debtors and their related entities and principals to other lenders and co-lenders in a concerted and calculated effort to pressure the Alleged Debtors into submission.

7. The Defendants therein filed an answer, a plea in abatement, a motion to dismiss pursuant to TEX. R. CIV. P. 91a, and an anti-SLAPP motion.[3] Instead of responding to these pleadings, Petitioners opted to forum shop and filed this involuntary bankruptcy case.

8. This involuntary bankruptcy case was filed in April 2020 and was contrived as but another litigation tactic targeted at applying such pressure in the form of destroying the Alleged Debtors' (and their related entities' and principals') relationships with their lenders designed to restrict their access to capital needed to operate their businesses, destroy their reputation through manufactured negative publicity, obstruct their development projects, and essentially manufacturing conditions that forced creditors to file unnecessary claims against the Alleged

[3] All Alleged Debtors had intended, prior to the filing of this case, to consolidate proceedings by joining in and filing permissive counterclaims and third-party claims.



EXHIBIT 35

Debtors for fear of losing their interests in these gratuitous bankruptcy proceedings. All of these actions were wrought of anticipated negative orders in the State Court Case that run contrary to the interests of Fu and the Fu Entities.

9. The Alleged Debtors assert that the Petitioners failed to comply with their loan agreements by neglecting to tender the loaned amounts to the Alleged Debtors either personally or traced through payments by the Fu Entities or Fu; failed to provide the required "know your customer information" as part of standard anti-money laundering practices; and obstructed Alleged Debtors' obligations to comply with U.S. tax laws which require tax withholdings from payments made to Petitioners overseas. Alleged Debtors further assert that no promissory notes were ever executed as contemplated by the loan agreements. The financial practices of Fu and the Petitioners – as the Alleged Debtors now understand them – were misleading, potentially fraudulent, and violated Chinese law restricting the transfer of funds overseas by Chinese nationals located in China, and likely violated U.S. money servicing and anti-money laundering laws. See Exhibit "A".[4] In fact, the Alleged Debtors' attempt to force compliance with such laws including taking corrective actions and calling these financial practices into question is what initiated this ongoing dispute in the state case. As such, the liability and amounts owed to the Petitioners remain hotly contested and in dispute.

10. The Alleged Debtors assert that Fu, through the Fu Entities, has continuously misled the Alleged Debtors and the Petitioners, breached obligations and agreements, interfered and obstructed the Alleged Debtors in performing their obligations and efforts to even remit payments to the Petitioners.

---

[4] See description of processes used by Fu to circumvent Chinese laws restricting the transfer of funds overseas as described by Michael Fu at his deposition conducted on July 23, 2020 beginning at Page 29, Line 10 and continuing through Page 68, Line 13.

11. Upon information and belief, the Alleged Debtors question the identity and existence of the Petitioners including the assertion that some or all of named Petitioners are: (i) not voluntarily participating in this Bankruptcy Case; (ii) not aware that the Involuntary Petition was filed in their name; (iii) did not loan and/or transfer such funds as allegedly claimed in the involuntary petitions, and/or (iv) not real persons. The docu-signed documents that make up the Involuntary Petitions and related filings cast serious doubt on their authenticity and identity of such Petitioners. Further many of the Petitioners who reside in China lack or have questionable contact information. Given that Petitioners have refused to appear and participate in any legal depositions, the Alleged Debtors would have no way to verify the actual existence of the Petitioners (and if so, whether they are merely pawns for Fu and others) along with their actual involvement in the underlying transactions, their personal claims, and level of voluntary and knowing participation in the involuntary proceedings before this Court.

12. After determining the need to depose the Petitioners to make a threshold determination concerning the issues of existence, identity, and confirmation of standing as actual Petitioners, the Alleged Debtors attempted to conduct those depositions via such means as legally permitted by U.S. and Chinese law. However, at every turn, the Petitioners, and/or their counsel, obstructed each of the Alleged Debtors attempts to carry them out. Recognizing the absolute need for a determination on these threshold matters and Alleged Debtors right to depose the Petitioners, the Court agreed with the position of the Alleged Debtors and, on August 19, 2020, issued its oral ruling followed by entry of its various Orders[5] ("Discovery Orders") on September 4, 2020 concerning these dispositive issues, including the requirements that:

[5] The Discovery Orders consist of four orders: *Order Granting in Part the Alleged Debtor's Motion to Compel Discovery Related to Wet Signatures [Dkt. No. 101]* [Docket No. 165]; *Order Granting in Part the Petitioners' Motion to Compel Discovery [Dkt. Nos. 92 & 129]* [Docket No. 167]; *Order Granting in Part the Alleged Debtor's Motion*



EXHIBIT 35

- *No discovery or motion practice shall continue unless and until a live deposition agreement signed by counsel for Petitioners is filed with the Court...;* [Dkt. Numbers 166, 167, 168, and 169]
- *Petitioners are required to sign their answers to their interrogatories with their own "wet signatures" as opposed to the signature of Petitioners' counsel;* [Dkt. Numbers 165 and 166]
- *Petitioners will provide Alleged Debtors with copies of passports of all of the Petitioners, upon request and that such passports will be submitted to the Court for in-camera inspection, upon request;* [Dkt. Numbers 165 and 166]
- *Petitioners' depositions shall be required to be taken in person in the United States, at a time and place agreeable to the Parties;* [Dkt. Number 168]
- *Petitioners are required to produce all documents concerning transfers of funds from Chinese accounts to the Alleged Debtors that underlie the Petitioners' claims;* [Dkt. Numbers 169] and
- *Petitioners are required to produce all documents concerning communications between Petitioners and Michael Fu.* [Dkt. Numbers 169]

13. Even though 4 months have passed, the Petitioners have never complied with a single one of these Orders. Instead, they filed their *Motion for Reconsideration of Discovery Orders* [Dkt. No. 175]. The Court denied this Motion [Dkt. No. 202] for many reasons, including the fact that the travel restrictions contained in certain Presidential Proclamations did not ban Chinese nationals from travelling to the United States from China for depositions as claimed by Petitioners that their support for such "ban" was an expired travel alert on a tourist website rather than any authoritative legal or regulatory source; that they incorrectly argued that depositions could legally be performed in Macau despite contrary and unrefuted legal authority cited by the Alleged Debtors that such depositions violate Chinese law; and that any remotely performed depositions not only failed to resolve the illegality of conducting such depositions from China but also failed to resolve concerns over the identity of the Petitioners.

*to Quash Petitioners' Deposition Notice [Dkt. No. 133]* [Docket No. 168]; *Order Granting in Part the Alleged Debtor's Second Motion to Compel Discovery Responses from Petitioners [Dkt. No. 105]* [Docket No. 169].



EXHIBIT 35

14. With literally no changes to the Petitioners' arguments which this Court found so problematic, and no presentation of any newly discovered evidence or change in controlling law that would forbid the Petitioners travel to the United States or which would permit the taking of depositions in Macau, the Petitioners instead on November 3, 2020 filed separate *Motions for Leave to Take Direct Appeal* and *Motions for Leave to File an Interlocutory Appeal and Request for Certification to the U.S. Court of Appeals for the Fifth Circuit* (collectively, "Motion for Leave") relating to each of the five (5) Discovery Orders.

15. On November 23, 2020 this Court sua sponte issued its Order Directing Compliance with Prior Orders [Docket No. 287] and set a deadline of December 4, 2020 as the deadline for the Petitioners to either enter a "Live Deposition Agreement" (the "Agreement") as mandated by several of this Court's Discovery Orders or obtain a stay of the discovery orders pending appeal.

16. Only after the District Court denied their Motion for Leave, the Petitioners filed their Agreement [Dkt. No. 308] on December 4, 2020. The Court rejected this filing because it did not comply with the prior orders regarding the Agreement and was filed on behalf of only eleven of the sixty-five Petitioners. The Court noted that the Agreement contained problematic conditions that gave "too much control to counsel for the [Petitioners]… to avoid the obligation to appear for a deposition…." The most significant problem with the Agreement, however, was that the Petitioners' adherence to it hinged upon the uncertain availability of COVID-19 vaccinations prior to their travel to the United States. The Court was particularly troubled that the Petitioners had plenty of time to request insertion of these conditions into the Agreement, but that they never requested them. The resulting "Agreement," the Court reasoned, was a last-minute, non-compliant pleading filed on behalf of only a small number of Petitioners that gave them the ability to further



EXHIBIT 35

delay the case, and trigger conditions enabling them to never appear for depositions in the United States. In essence there was no "Agreement" to appear.

17. As a result of the foregoing, the Court ordered that the jointly administered involuntary bankruptcy cases were to be dismissed without prejudice to refiling.

## ARGUMENT

***The Wall Entities suffered damages resulting from the filing of the Involuntary Bankruptcy Petitions.***

18. In response to the Involuntary Petitioners against the Wall Entities, the Alleged Debtors were required to immediately retain expert bankruptcy counsel. Upon retention and in response to pleading after pleading filed in this unnecessary litigation parallel to identical proceedings in State Court, counsel for the Alleged Debtors was required to render extensive services in an effort to help the Alleged Debtors avoid the Petitioners' and their counsel's attempts to manipulate the involuntary case as leverage in their dispute with the Alleged Debtors over the hotly contested liability and amounts owed to the Petitioners. The result of the inappropriate and unsupportable filing of the involuntary petitions was damage to the Alleged Debtors' relationship with their lenders, a restriction of availability of capital needed to operate their enterprise, and a scrum of creditors forced to file claims against the Alleged Debtors to ensure preservation of their claims in these redundant and pointless proceedings.

19. As of the date of this Motion, actual damages incurred by the Alleged Debtors as a result of the Involuntary Petitions calculate to $46,223,825.90. Punitive damages are established at $92,447,651.70 (double the amount claimed for actual damages). An itemized summary of attorneys' fees, costs, expenses, and damages as a result of the Involuntary Petition are submitted with this Motion as Exhibit "B."

20. All attorneys' fees and costs incurred were reasonable, necessary, and appropriate under the circumstances. The fees are based on actual time spent charged at counsel's ordinary billing rates in effect at the time the services were rendered.

***An award of costs and attorneys' fees against the Petitioners is warranted under 11 U.S.C. § 303(i)(1).***

21. Pursuant to 11 U.S.C. 303(i)(1):

> "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
> (1) against the petitioners and in favor of the debtor for—
> (A) costs; or
> (B) a reasonable attorney's fee"

In the instant case, no Petitioner consent for dismissal was given.

22. Courts presume that "attorneys' fees will be awarded against unsuccessful petitioning creditors, with the presumption being rebuttable based on the 'totality of the circumstances' test. *In re Clean Fuel Techs. II, LLC*, 544 B.R. 591, 601 (Bankr. W.D. Tex. 2016). Circuits that have addressed this issue and which use this "harmonized 'presumption' approach" are in the majority. *Id*. Key factors to be considered bearing on the totality of circumstances include: (1) the merits of the involuntary petition; (2) the role of any improper conduct on the part of the alleged debtor; (3) the reasonableness of the actions taken by the petitioning creditors; and (4) the motivation and objectives behind the filing of the involuntary petition. *Id*. at 602. Here, the involuntary petition was filed without merit. Additionally, the Alleged Debtors have committed no acts hinting at improper conduct in these proceedings. The filing of cases in multiple venues based on the same operative facts and claims (i.e. forum shopping), coupled with the Petitioners' and their counsel's refusal to adhere to court orders that sought to dispose of critical matters necessary to prosecute this case (i.e. the verification of the questionable existence and



EXHIBIT 35

identity of the Petitioners that would support any determination or validation of standing to petition this Court) are arguably unreasonable actions. Finally, it appears that the filing of the petition in this case was borne of frustration or fear of losing its case filed in State Court that was based on the same facts and claims.

23. "[C]osts and attorney's fees may be awarded even in the absence of bad faith on the part of the Petitioners in an involuntary bankruptcy case." *In re Fox*, 171 B.R. 31, 33 (Bankr. E.D. Va. 1994); In re Ross, 135 B.R. 230, 236 (Bankr. E.D. Pa. 1991) ("Congress intended that attorney's fees under section 303(i)(1) be awarded by a bankruptcy court upon the dismissal of an involuntary case, absent any showing of bad faith."). "[P]etitioners should generally anticipate that an award of costs and fees will be granted upon the dismissal of an involuntary petition." *In re Landmark Distributors, Inc.*, 189 B.R. 290, 307 (Bankr. D.N.J. 1995).

24. Courts "routinely" grant an award of costs and attorney's fees to an alleged debtor who obtains the dismissal of an involuntary petition. "Although the award of attorney's fees and costs is discretionary, 11 U.S.C. 303(i)(1) routinely contemplates the award of costs and attorney's fees to the debtor.… The judgment for costs or attorney's fees under section 303(i)(1) is intended to reimburse an alleged debtor for its reasonable expenses in successfully defending an improper, involuntary petition." *In re Leach*, 102 B.R. 805, 808 (Bankr. D. Kan. 1989). "[O]nce the alleged debtor establishes the case has been dismissed, the burden shifts to the petitioning creditors to present evidence to support disallowing costs and attorney fees; unless the petitioners can overcome their burden, the court may "routinely" allow costs and attorney fees to the alleged debtor. *In re Fox*, 171 B.R. 31, 33 (Bankr. E.D. Va. 1994).

25. In addition to recovering attorneys' fees and costs incurred in defending and obtaining the dismissal of the involuntary petition, the Alleged Debtors should recover the fees



EXHIBIT 35

and costs they incur in presenting this request for fees and costs resulting from the Involuntary Petition. *In re Atlas Machine and Iron Works, Inc.*, 190 B.R. 796, 803 (Bankr. E.D. Va. 1995) ("[C]ompensable fees include time expended . . . not only in defending the initial filing of the involuntary petition, but also time expended in . . . preparing . . . [a] request for fees, costs and damages."); *In re Landmark Distributors, Inc.*, 195 B.R. 837, 846 ("I find nothing in the Code or case authority limiting an award to the date of dismissal. Preparation for and attendance at the hearing on attorney's fees, costs and damages are also part of the matters which are occasioned as a result of on involuntary petition. As such, they are compensable under § 303(i)."), quoting *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703 (D. Colo. 1984).

***The conduct of the Petitioners and their counsel warrants an award of compensatory and punitive damages pursuant to 11 U.S.C. § 303(i)(2).***

26. If bad faith is found to exist, in addition to costs and attorneys' fees, both compensatory and punitive damages may be awarded. *In re Clean Fuel Techs. II, LLC*, 544 B.R. at 606. See also *In re K.P. Enter.*, 135 B.R. 135 B.R. 174, 177 (Bankr. D. Me. 1992) ("The debtor who successfully defends an involuntary petition may obtain an award of costs and fees against the petitioner and, if a petitioner brought the petition in bad faith, the debtor may, in addition, have damages and punitive damages from it.").

27. The terms of 11 U.S.C. 303(i)(2) provide that:

> "If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
> (2) against any petitioner that filed the petition in bad faith, for—
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

28. Determination of bad faith filing of an involuntary petition goes to the "totality of the circumstances," and is a consideration in awarding compensatory and punitive damages. *In re*



EXHIBIT 35

*TRED Holdings, L.P.*, No. 10-40749, 2010 Bankr. LEXIS 3109, at *21-22 (Bankr. E.D. Tex. 2010). Although the Bankruptcy Code does not define "bad faith" in determining whether a Chapter 7 case has been filed in bad faith, courts consider, among other factors, whether the case was filed as a litigation tactic in a two-party dispute. *In re Tichy Elec. Co*., 332 B.R. 332 B.R. 364, 373 (Bankr. N.D. Iowa 2005); *In re 1701 Commerce, LLC*, 477 B.R. 652, 658 n.20 (Bankr. N.D. Tex. 2012) (citations omitted) ("Similar inter-lender and two-party disputes have been dismissed for cause because of such bad faith."); *In re Metrogate, LLC*, No. 15-12593 (KJC), 2016 Bankr. LEXIS 2242, at *42 (Bankr. D. Del. 2016) ("Although the Petitioning Creditors met the statutory numerosity requirement, the dispute appears to be functionally between two parties. Additionally, there appears to be a single recalcitrant creditor who is more concerned with a collection action than with the alleged debtor's well-being as a going concern."); *Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 781 (S.D. Tex. 2007) (stating that "[t]he role of the bankruptcy courts is not to adjudicate two-party disputes . . . ") (citing Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc., 04-C-8053, 2005 LEXIS 19633, at *14 (N.D. Ill. Sept. 7, 2005) (affirming the dismissal of a Chapter 7 case where the case has "no discernable relationship to any true bankruptcy policies" and has "been used as a litigation tactic to frustrate and delay the debtor's opponent in a two-party dispute")).

29. In determining whether the Petitioners have exercised bad faith in filing an involuntary petition, the Court may inquire into "whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders." *In re Landmark Distributors, Inc.*, 189 B.R. 290, 309 (Bankr. D.N.J. 1995). When examining the conduct of the Petitioners, the Court is

Case 20-31131-hdh7 Doc 313-5 Filed 12/23/21 Entered 02/05/21 ... Page 14 of 141

required to consider whether a reasonable person in the petitioners' position would have filed their petition. *Id.* The Court must also establish the subjective motivations of the Petitioners, which is comparable to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings. *Id.* As noted *supra*, the Court must look at the "totality of the circumstances when determining bad faith." *In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 254 (6th Cir. 2006).

30. Here, bad acts by one or more Petitioners, and their counsel supports a totality of the circumstances finding of bad faith. For example, the Third Circuit, in analyzing whether an involuntary petition had been filed in bad faith, under a totality of the circumstances approach, considered factors such as "whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing." *Forever Green Athletic*, 804 F.3d 328, 336 (3d Cir. 2015).

31. Because there can be no genuine disagreement that Petitioners and Fu filed the Involuntary Petitions in bad faith, Alleged Debtors also are entitled to compensatory and punitive damages. As one court has stated:

> [I]n determining whether [a] creditor has exercised bad faith in filing an involuntary petition in bankruptcy, inquiry may be made into whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the



EXHIBIT 35

> petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders.

*In re Elsub Corp*., 66 B.R. 189, 196 (Bankr. D.N.J. 1986). The court "must consider whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding" and ascertain "the subjective motivations of a petitioning creditor, which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings." *Id.*

32. As stated in earlier pleadings, the Alleged Debtors assert that the Petitioners, led by Michael Fu (the Petitioners' agent), engaged in what was essentially a two-party collection effort which was subject to a bona fide dispute against the Alleged Debtors to recoup Fu's business losses (for which the Alleged Debtors were not responsible) in a State Court action where Fu used the Petitioners to claim various (but unowed) remedies, and where no threat to the Petitioners rights or ability to collect any alleged indebtedness existed. Notably, whenever a bona fide dispute exists as a result of "either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts," a court should apply Congress's legislative intent relating to Section 303 which is to proscribe the use of an involuntary bankruptcy to pressure a debtor into paying a legitimately disputed debt. *Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC)*, 793 F.3d 228, 234 (2d Cir. 2015). In essence, since the Petitioners failed to show that their claim was not the subject of a bona fide dispute, they did not qualify to file these involuntary bankruptcy cases, and yet they did so anyway.

33. When the Petitioners' State Court case did not proceed as planned (i.e. to Fu's and the Petitioners liking), the Fu and Petitioners, through their counsel, engaged in bad faith tactics by shopping for an additional (and possibly, more sympathetic) forum, and filed the instant parallel case in this Court based on the same operative facts and claims in a shakedown effort intended to

force the Alleged Debtors to capitulate to Fu's and the Petitioners' demands for monies not owed. In fact, Michael Fu stated in his deposition that after consulting with the Petitioners they determined it would be "much faster" instead of pursuing the State Court case which he felt was "going to be a long procedure, a long time dragging and for the longest time." See Exhibit "A", Deposition Transcript of Michael Fu, Page 73, Line 19 through Page 74, Line 15. It is also important to note that during the May 11, 2020 conference call between and among counsel for the Petitioners and the Alleged Debtors, Petitioners' counsel "revealed that the main purpose of the filings was to obtain [discovery supporting their case in State Court in the form of] an accounting of monies that were received by the Wall Entities from some of the [Petitioners]." See paragraph 25(c) of the *Joint Pre-Conference Statement* [Dkt. No. 25].

34. The threatened and intended result was a diminution in value of the Alleged Debtors' enterprises, damage to their creditors, damage to the relationship between the Alleged Debtors and their creditors, and damage to the Alleged Debtors stemming from the negative publicity that the filings caused.

35. Further, in an effort to thwart the Alleged Debtors attempts to determine the Petitioners' standing to file the instant bankruptcy, the Petitioners' and their counsel failed to comply with a single one of the Discovery Orders aimed at verifying the existence and validating the identity of the supposed Petitioners. To date, such determination has been rendered impossible due to the recalcitrance of the Petitioners to cooperate with the discovery process.

36. Given the aforementioned acts, and as mentioned *supra*, the Court must "consider whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding" and ascertain "the subjective motivations of a petitioning creditor, which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary

bankruptcy proceedings." *In re Elsub Corp.*, 66 B.R. at 196. The bad faith actions of Petitioners and their counsel are manifest, and speak very clearly as to the motivation of the Petitioners. As such, compensatory and punitive damages are warranted. This is clear since (1) too few Petitioners filed the involuntary Petitions; (2) their claims were being adjudicated in a different forum prior to filing this parallel case based on the same operative facts and claims; (3) Petitioners were aware that their claims had no merit since they were made to recoup losses and seek monies not owed by the Alleged Debtors; (4) Petitioners demonstrated no legitimate concern for the well-being of the Alleged Debtors or their creditors; (5) the objective of the Petitioners was to gain a tactical advantage in their dispute with the Alleged Debtors as a critical time (i.e. when losing in the State Court action). These actions constitute an abuse of the bankruptcy system, and further, waste the resources of this Court, the Alleged Debtors, and their creditors.

## CONCLUSION

37. Given the totality of the circumstances and the bad faith actions of the Petitioners, the Court should award attorneys' fees, costs, and compensatory and punitive damages to the Alleged Debtors pursuant to the terms of 11 U.S.C. § 303(i)(1) and (2).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Alleged Debtors pray that the Court grant this *Motion for Recovery of Attorney's Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i)* against all Petitioners involved in the filing and pursuit of the Involuntary Petitions, and for such and other and further relief to which the Alleged Debtors may show themselves justly entitled.



EXHIBIT 35

Dated: December 17, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors
Email: joyce@joycelindauer.com
kerry@joycelindauer.com
guy@joycelindauer.com
Attorneys for Alleged Debtors

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 17, 2020, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer



EXHIBIT 35