**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>WALL007 LLC, et al.,[1]<br><br>Alleged Debtors. | Chapter 7<br><br>Case No. 20-31131 (HDH)<br>(Jointly Administered) |

**PETITIONING CREDITORS' SUR-REPLY TO ALLEGED DEBTORS' REPLY IN FURTHER SUPPORT OF ALLEGED DEBTORS' MOTION FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 303(I)**

Petitioning Creditors Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Zhou, Kai Tian, Yijing Wu, Xuegeng Gong, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Liying Yang, Yan Zhang, Wenjun Wang, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Weisi Wang, Xiaoquan Dai, Feng Yan, Ou Jiang, Jinzhe Wu, Yadan Liu, Wenjuan Yin, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Qin Chu, Yulan Chen, Sicheng Zhan, Jinqiu Tang, Di Tang, Jun Zeng, Kui Wang, Jun Wang, Xiaomin Fan, Jialin Hu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, and Qu Chen ("Petitioning Creditors") file this Sur-Reply in response to the new arguments Alleged Debtors' raised in their Reply in further support of Alleged Debtors' Motion for Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i), and would respectfully show the Court as follows:

[1] The Alleged Debtors in this jointly administered case are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC ("Alleged Debtors"). Currently, Alleged Debtors' federal tax identification numbers are unknown to Petitioning Creditors.

## INTRODUCTION

Alleged Debtors' callously ignored and violated this Court's Local Rules in filing the instant motion for fees and damages. Specifically, Alleged Debtors' violated Local Rule 7007-1 via Local Rule 9013-1 as well as Local Rule 7007-1(f) as Alleged Debtors' motion is akin to an adversary proceeding under Bankruptcy Rule 9014 which mandates that a certificate of conference is required for their motion for fees and damages. Indeed, Alleged Debtors did not confer as the Local Rules required and did not include the requisite certificate of conference in their motion. *See* [Dkt. No. 313].

In any event, Alleged Debtors raised additional factual and legal arguments in their Reply necessitating the filing of this Sur-Reply to address the same.

## ARGUMENT

### A. Alleged Debtors' 11 U.S.C. § 303(i) Motion is a Motion to Dismiss in Disguise

Alleged Debtors' opportunistic 11 U.S.C. § 303(i) motion and bad faith argument are nothing more than a repackaged and relabeled version of Alleged Debtors' motions to dismiss [Dkt. Nos. 18-23] which were effectively denied as moot once the Court *sua sponte* dismissed the Petition without prejudice as a discovery sanction. *See* [Dkt. Nos. 310, 336, Court's 1/4/2021 Notice re: hearing on these motions not held due to dismissal]. In short, the Court made clear its dismissal was not on the merits of the Petition's filing as dismissal was without prejudice and that the Petitioning Creditors' depositions must occur prior to the Court's adjudication of merits of the Petition. *See* [Dkt. No. 336 at p. 5].[2] Thus, without the benefit of adequate discovery or due

[2] The Court stated: "Nevertheless, the Petitioning Creditors are still unwilling to attempt to appear for live depositions in the United States before mid-September 2021. Their plan appears to be for the Alleged Debtors to remain parked in an involuntary bankruptcy for an additional seven months—on top of the eight months already spent prior to the dismissal—**before the Alleged Debtors can proceed with depositions that must occur before the Alleged Debtors receive their day in court on the merits of the involuntary petitions**." (emphasis added).

process, Alleged Debtors have re-filed and disguised their mooted motions to dismiss as a 11 U.S.C. § 303(i) motion in order to intimidate, prevent, and preclude Petitioning Creditors from refiling "when they are more comfortable traveling to the United States in the future to prosecute their case." Indeed, Alleged Debtors' purpose in filing the instant motion goes beyond merely obtaining an unjust windfall at Petitioning Creditors' expense, Alleged Debtors' true purpose is to turn the Court's dismissal without prejudice into a dismissal with prejudice (via a finding of bad faith) which would preclude Petitioning Creditors' from refiling "when they are more comfortable traveling to the United States in the future to prosecute their case." Petitioning Creditors pray that the Court see Alleged Debtors' bad faith argument for what it is, a resurrection of its mooted motion to dismiss which the Court determined it could not rule on until the Parties had conducted adequate discovery and received their day in Court as to the Petition's merit.

In sum, Alleged Debtors' "motion to dismiss" disguised as a 11 U.S.C. § 303(i) motion-notably for compensatory and punitive damages is not ripe for adjudication and should be denied accordingly.

**B. <u>The Involuntary Bankruptcy Action is not Two-Party Collection Action</u>**

Despite the clear evidence to the contrary, Alleged Debtors self-servingly, baselessly and in conclusory fashion claim that the Petition was wrongly filed because the matter is merely a two-party collection effort subject to a bona-fide dispute.

First, it is beyond dispute that the 76[3] Petitioning Creditors all signed and executed Loan Agreements with the Wall entities. As such, both the Petitioning Creditors and the Wall entities entered into 76 different binding agreements which required each party to each different agreement

[3] Certain Petitioning Creditors provided loans to multiple Alleged Debtors therefore their names appeared on multiple involuntary bankruptcy petitions. 76 is the numer of independent and separate claim holders against Alleged Debtors when it comes to the numerosity requirement for filing an involuntary bankruptcy petition.

to materially perform under said agreements. Thus, it is beyond reasonable dispute that there are 76 different parties with 76 different claims for repayment. In short, the Petitioning Creditors were obligated to provide the Wall entities with loan funds (regardless of where or from whom the Petitioning Creditors' got the funds) and the Wall entities were obligated to make timely payments of the principal and interest to each Petitioning Creditor in accordance with the agreements as to the funds Wall received. *See, e.g.,* [Dkt. No. 1 at pp. 13-22]. As such, regardless of whether the Petitioning Creditors completely funded the loans by themselves, the Petitioning Creditors in each separate agreement assumed the obligation to have the loan funds transferred to the Wall entities (which all of them did) and in exchange each Petitioning Creditor would receive the benefit of timely repayment of the principal along with profitable interest based on the terms of their individual agreement with the Wall entities. *Id.*[4]

Second, it is beyond reasonable dispute that the Petitioning Creditors are collectively owed approximately $15 million in principal (excluding any interest), which the Alleged Debtor entities have admitted through their ultimate principal, Timothy Barton, was due and owing. Barton's feigned excuse that the Wall entities did not know who or where to repay the loans rings hollow as Barton simply could have placed the repayment funds in an escrow account managed by an independent third-party until the "issue" was worked out. Petitioning Creditors believe based on the evidence they have including Barton's own acts, that the Wall entities through Barton are a vehicle for an illegal Ponzi scheme for Barton's benefit which is why Barton has done everything under the sun to avoid repayment and accounting for use of the loan proceeds.

Third, it is beyond reasonable dispute that there is no dispute that the loans were made, that only early interest payments were re-paid, that the Alleged Debtors/Borrowers defaulted on the

[4] Alleged Debtors' reference to Fu's commission is irrelevant and Fu had already received his commission as to the funding the Wall entities received from these 76 Petitioning Creditors.

loans, and as to the amount Alleged Debtors/Borrowers owe to Petitioning Creditors in outstanding principal and interest.

As such, Alleged Debtors' claim this is merely a two-party collection effort subject to a bona-fide dispute is risible at best and belied by the facts and evidence.

**C. <u>The State Court Action is Irrelevant</u>**

Alleged Debtors mischaracterize the now non-suited state court action. Simply put, the state court action was an attempt by three Petitioning Creditors who loaned funds to two Wall entities to collect on monies those two Wall entities owed to them. At his deposition, Mr. Fu testified that Barton used every stalling tactic possible to delay the inevitable and refused to account for the loan proceeds. As such, after consulting with well-experienced and highly-competent legal counsel, it was decided that seeking relief via involuntary bankruptcy was warranted and appropriate especially given the fact that a Trustee would be able to investigate what Barton and Wall did with all of the money, not just the Petitioning Creditors' money, but also the other creditors and the secured lender's money, and the preference payment made to insiders would be voided.

Even *arguendo*, that somehow these three Petitioning Creditors' decision to abandon their state court action and seek resolution under an involuntary bankruptcy filing was an improper litigation tactic (which it clearly is not)[5] the fact remains there are still 73 different Petitioning Creditors who did not participate or file in the state court action and who are owed money from the Wall entities. Indeed, Alleged Debtors' manufactured bad faith argument is nothing more than

[5] "The mere existence of State Court litigation and the assertion by an alleged debtor of various defenses or counterclaims is not per se a bona fide dispute." *In re Norriss Bros. Lumber Co.*, 133 B.R. 599, 604 (Bankr. N.D. Tex. 1991) (citing *In re Onyx Telecommunications, Ltd.*, 60 Bankr. 492, 495 (Bankr. S.D. N.Y. 1985)).

self-serving speculation and innuendo and is not backed by any competent evidence or material facts.

In short, at bottom, the state court action is irrelevant as to the 73 different Petitioning Creditors as they made their own independent and individual decisions as to how proceed.

**D. <u>The Loan Agreements were only Contingent on the Lenders' Receipt of Capital to Make the Loans to the Wall Entities</u>**

The only contingency set forth in the Loan Agreements is of the Petitioning Creditors receipt of capital to make the loans to the Wall entities. *See, e.g.*, [Dkt. No. 1 at p. 13]. Alleged Debtors' falsely and illogically claim that Alleged Debtors' repayment obligation was contingent upon the execution of a master note and full funding of the amounts.

First, Alleged Debtors cannot dispute that they received the loan funds.

Second, Alleged Debtors' self-serving reading of the Agreements would render them illusory, and thus, would still require Alleged Debtors to return the funds to the Petitioning Creditors.

Third, Alleged Debtors are equitably estopped from taking the position that the Agreements are unenforceable. It is beyond dispute that Alleged Debtors never communicated to Petitioning Creditors their position that the Agreements were unenforceable because they were contingent. More importantly, it is beyond dispute **<u>that Alleged Debtors kept and used the funds they obtained from Petitioning Creditors</u>**. As such, the doctrine of equitable estoppel precludes Alleged Debtors from keeping and using the money they obtained and induced from Petitioning Creditors under the loan agreements and then changing their position that the Agreements are now invalid when Alleged Debtors obligations under the Agreements implicated. In short, Alleged Debtors position that they get to keep Petitioning Creditors' money is patently absurd at best as

Alleged Debtors' have blatantly asked the Court to sanction their theft and conversion of Petitioning Creditors' loaned funds.

Lastly, the plain language in the Agreements refute and preclude Alleged Debtors' absurd interpretation.[6]

**E. <u>Alleged Debtors were Provided Direct Proof of the Funds Petitioning Creditors' sent and loaned the Wall Entities</u>**

As it is beyond dispute that Barton signed the loan receipt confirming the receipt of the loan proceeds from each Petitioning Creditor. Alleged Debtors' claim that Petitioning Creditors never even provided Alleged Debtors with direct proof that they actually sent the funds loaned to Alleged Debtors is patently false and frivolous.

**F. <u>The Involuntary Bankruptcy Petition was Filed in Good Faith</u>**

***i. Petitioning Creditors' met the Statutory Requirements for Filing the Involuntary Bankruptcy Petition***

A petitioning creditor is qualified to file an involuntary petition if it satisfies the following requirements: (1) it holds a claim against the debtor that (a) is "not contingent as to liability or the subject of a bona fide dispute as to liability or amount" and (b) equals at least $16,750 or more; and (2) it demonstrates that the debtor is "generally not paying such debtor's debts as such debts become due" (unless such debts are the subject of a bona fide dispute as to liability or amount). *See* 11 U.S.C. §§ 303(b) and (h). Moreover, an involuntary petition may be filed by a single qualifying creditor (if the debtor has less than 12 qualifying creditors) and three or more qualifying creditors (if a debtor has 12 or more creditors). *Id.* On its face, the Involuntary Bankruptcy Petitions have met these statutory requirements, as if they did not the Court would have granted Alleged Debtors' motions to dismiss long ago.

---

[6] *See, e.g.,* [Dkt. No. 1 at pp. 13-17, and 20-Section 5.2 Construing Loan Papers].

In any event, the question of whether the Involuntary Bankruptcy Petition warrants an order of relief is the ultimate issue for the Court to adjudicate in any Involuntary Bankruptcy case. As such, the Bankruptcy Code provides that at trial a petitioning creditor must establish the following requirements via preponderance of the evidence: "(1) that the debtor was eligible to be a debtor in chapter 7; (2) that the petitioning creditor had standing to file the involuntary petition; (3) that the debtor was generally not paying her debts as they became due; and (4) that the debt was not subject to a bona fide dispute." *In re Gutierrez*, No. 20-50129-NPO, 2020 Bankr. LEXIS 1792, at *23-24 (Bankr. S.D. Miss. July 6, 2020) (citing *In re Kennedy*, 504 B.R. 815, 820-21 (Bankr. S.D. Miss. 2014)). As such, this determination is an ultimate fact issue for which as the Court readily pointed out in its Orders first requires timely and adequate discovery and then a trial on the merits.

Thus, Alleged Debtors' bad faith argument and request for damages is premature as it is presumed the filing was in good faith until the Court has adjudicated the merits of the filing which the Court admonished Petitioning Creditors requires further discovery which must be accomplished as soon as possible due to the inherent nature of involuntary bankruptcy. As such, a finding of bad faith would not only be premature but inappropriate. Moreover, Petitioning Creditors' submit that the proof before Court easily shows that they satisfied the prerequisites set forth in Section 303, and as such a finding of bad faith would be inappropriate. *In re Kennedy*, 504 B.R. 815, 824 (Bankr. S.D. Miss. 2014) (quoting *Aigner v. McMillan*, No. 11-47029-DML-7, 2013 Bankr. LEXIS 2269, 2013 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013)); *see also In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 713 (Bankr. S.D.N.Y. 2007) ("The failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts.").

***ii. Petitioning Creditors' Purpose was Valid***

It is well established that Courts are - and should be - hesitant to conclude that a litigant is attempting to abuse section 303, even where that litigant is ultimately unable to obtain involuntary

relief from the court. *See In re Synergistic Technologies, Inc.*, No. 07-31733, 2007 Bankr. LEXIS 2660 (N.D. Tex. 2007); *In re Treaty Energy Corporation*, No. 13-11238, 2014 Bankr. LEXIS 4912, 2014 WL 6886643 (E.D. La. 2014); *McMillan*, 2013 Bankr. LEXIS 2269, 2013 WL 2445042 (Bankr. N.D. Tex. 2013). In the absence of strong evidence that Petitioner acted willfully or wrongfully, the court cannot, need not and will not award [Petitioner] damages pursuant to section 303(i)(2). *See McMillan*, 2013 WL 2445042 at *5 .

Here, the preponderance of the evidence clearly shows that Petitioning Creditors had sufficient basis to believe that involuntary relief was proper to avoid a finding of bad faith. Indeed, after fully examining the record, the Court should easy find that Alleged Debtors produced no evidence of malice, ill-will, motive to embarrass or harass Alleged Debtors, false statements, or fraudulent conduct the could even suggest bad faith on the part of Petitioning Creditors. Moreover, Alleged Debtors have produced no evidence of any false statements, or fraudulent conduct, or undue pressure exhibited by Fu in allegedly soliciting other creditors to join in the Petition. *See generally In re Key Auto Liquidation Ctr., Inc.*, 372 B.R. 74, 80 (Bankr. N.D. Fla. 2007) ("The solicitation of creditors does not give rise to a finding of bad faith "unless the solicitation consisted of false statements, itself amounted to fraud, or the intervening creditors felt undue pressure to join the petition.").

Accordingly, as this Court follows the majority position that there is a presumption that Petitioning Creditors have acted in good faith, it is clear Alleged Debtors have failed to carry their burden demonstrating bad faith. *In re Synergistic Technologies, Inc.*, 2007 Bankr. LEXIS 2660, at *16-19.

## CONCLUSION

For these reasons, the Court should deny Alleged Debtors' premature and meritless Motion for Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i).

Dated: February 24, 2021

Respectfully submitted,

**NGUYEN & CHEN LLP**

/s/ *Brian M. Gargano*
Brian M. Gargano
State Bar No. 24102898
bgargano@nguyen-chen.com
Jiangang Ou
State Bar No. 5451133NY
jou@nguyen-chen.com
11200 Westheimer Road, Suite 120
Houston, Texas 77042
Tel: (832) 767-0339
Fax: (832) 767-0669

*Counsel for Petitioning Creditors*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above instrument was served on the date the instrument was electronically filed. Service has been accomplished electronically and/or by first-class mail to the parties listed below.

**Via ECF**
Khudabuksh K. Walji, Esquire
Law Office of K. Walji
10701 Corporate Drive, Suite 350
Stafford, Texas 77477

**Via ECF**
Robert W. Buchholz, Esquire
bob@attorneybob.com

**Via ECF**
Darrell Wayne Cook, Esquire
dwcook@attorneycook.com
all@attorneycook.com

**Via ECF**
Katherine T. Hopkins, Esquire
katherine.thomas@kellyhart.com

**Via ECF**
Joyce W. Lindauer, Esquire
joyce@joycelindauer.com
dian@joycelindauer.com
gina@joycelindauer.com

**Via ECF**
Steven C. Metzger, Esquire
smetzger@pmklaw.com

**Via ECF**
Michael P. Ridulfo, Esquire
mridulfo@krcl.com
dtrevino@krcl.com
mridulfo@ecf.courtdrive.com

**Via ECF**
Patrick D. Sullivan, Esquire
sullivan@hooverslovacek.com

**Via ECF**

United States Trustee
ustpregion06.da.ecf@usdoj.gov

**Via ECF**
Behrooz P. Vida, Esquire
filings@vidalawfirm.com
legalprokirstin@gmail.com
bkfilings@yahoo.com

Dated: February 24, 2021

/s/ *Brian M. Gargano*
Brian M. Gargano