Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **WALL007 LLC, *et al.*[1],** | § | **Case No. 20-31131-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**MOTION TO RECONSIDER ORDER GRANTING TESTIMONY**
**FROM WITNESSES CLAIMING TO RESIDE IN EUROPE [DKT NO. 369]**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW WALL007, LLC et al. ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and files their *Motion to Reconsider Order Granting Testimony from Witnesses Claiming to Reside in Europe* [Dkt. No. 369] (the "Order"), and in support thereof would respectfully show the Court:

## I. PROCEDURAL AND FACTUAL BACKGROUND

1. On September 4, 2020, this court issued its various "Discovery Orders" (i.e. Dkt. Nos. 165, 167, 168, and 169) mandating that "no discovery or motions practice shall continue unless and until a live deposition agreement signed by counsel for Petitioners is filed with the

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.

Court" and that "petitioners' depositions shall be required to be taken in person, in the United States, at a time and place agreeable to the Parties."

2. On November 23, 2020, the Court issued its Order Directing Compliance with Prior Orders [Dkt. No. 287] (i.e. the "Compliance Order").

3. To date Petitioners and their counsel have never complied with any of the Discovery Orders or the Compliance Order.

4. On December 17, 2020, the Alleged Debtors filed their *Motion for Recovery of Attorney's Fees, Costs, and Compensatory and Punitive Damages* [Dkt. No. 313] (the "Recovery Motion") based on bad faith actions by the Petitioners that included (1) the improper filing these parallel bankruptcy cases based on identical claims to those asserted in non-bankruptcy Case No. DC-19-18361 filed in the District Court of Dallas County for the 44th Judicial District ("State Court"); (2) the refusal to properly comply with the Court's order to file a signed Live Deposition Agreement which was aimed at the determination of standing based on the threshold issues of verification of existence and validation of identity of persons claiming to be Petitioners; (3) the filing of multiple motions asserting false claims of non-existent "travel bans" and proposing alternate discovery procedures known to the Petitioners (and clearly determined by this Court) to be illegal under Chinese law and unsupportable under U.S. law. The Recovery Motion was also based on (i) the damage inflicted on the Alleged Debtors' relationships with their lenders; (ii) the restriction of capital needed to operate their enterprise that has led to the inability to refinance other of their debts resulting in potential defaults with other creditors; (iii) the morass of claims that other creditors were forced to file against the Alleged Debtors if only to preserve those claims in these redundant and pointless proceedings. All such fees, costs, and damages in the amount requested are permissible pursuant to 11 U.S.C. § 303(i)(1) and (2) and were requested in an effort

to recoup legal fees resulting from the Petitioners' bad faith actions in the form of the filing of these proceedings and the need to respond to a quagmire of unnecessary pleadings, to offset the Petitioners' damaging but intended results of credit constriction, and to dissuade similar future bad acts.

5. On January 8, 2021, and with its appeals of the *Discovery Orders* and its *Order Denying Reconsideration* still before the Fifth Circuit, Petitioners filed their *Amended Motion for (i) Reconsideration of Order Dismissing Involuntary Bankruptcy Cases Without Prejudice; and (ii) Related Relief* [Dkt. No. 325] wherein Petitioners' counsel continued to assert that a "travel ban" imposed by the Trump Administration prohibits the Petitioners' travel to the United States. No such "travel ban" exists. The *travel restrictions* enumerated in the Presidential Proclamation dated January 31, 2020 specifically enumerate exceptions to the restrictions and discuss the manner in which travel may be permitted. The restrictions in that Presidential Proclamation made no distinction between direct travel or indirect travel to the United States. No Petitioner ever attempted to seek entry into the United States by either direct or indirect means or using any exception enumerated in the Presidential Proclamation.

6. Further, upon information and belief, the Petitioners' counsel did not have a reasonable belief that the Live Deposition Agreement as filed was "sufficient and in compliance with the Court's Order" since such Order never mentioned any permission to so severely condition that Agreement as to allow the Petitioners to avoid their obligation to appear in the United States for deposition. During the four (4) months the Petitioners' counsel was aware of the Court's straightforward requirement for a signed and filed Live Deposition Agreement, it never requested, let alone mentioned, any such conditions prior the eleventh-hour filing of its "Agreement." The intent of the Petitioners was clear, namely that they would only agree to *possibly* appear. Despite

mention in the instant Motion of the subsequent distribution in the United States of the Pfizer and Moderna vaccines for COVID-19 which clearly constitute a single changed circumstance that might relate to these proceedings, and provide grounds for this Court to reconsider its past Orders, the Petitioners have presented no evidence that distribution and availability of the American vaccine supply to citizens of the United States would in any way translate to similar distribution and availability of that supply in the People's Republic of China, thereby facilitating travel of that country's citizens to this country to participate in live, face-to-face depositions.

7. Also, on January 8, 2021, Petitioners filed their *Amended Opposition to Alleged Debtors' Motion for Recovery of Attorneys' Fees, Costs and Compensatory and Punitive Damages Pursuant to 11 U.S.C. § 303(i)* [Dkt. No. 326]. In that pleading, Petitioners wrongfully assert that their "good faith" as to the filing of the bankruptcy cases must be presumed and that Alleged Debtors have presented no evidence of bad faith on their part.

8. On February 6, 2021, Petitioners filed their *Opposed Motion for Continuance of Hearing and Request for Limited Discovery* [Dkt. No. 332]. Notably, the Petitioners inequitably sought discovery to bolster their arguments to be presented at the hearing scheduled for February 23, 2021, despite the fact that they themselves never complied with this Court's requirements concerning live depositions in these proceedings that would have enabled the Alleged Debtors to seek discovery.

9. On February 12, 2021, this Court entered its *Order Denying Petitioners' Motion to Reconsider Order Dismissing Involuntary Bankruptcy Cases* [Dkt. No. 336], noting that the Petitioners are unwilling to appear in the United States for live depositions before mid-September, 2021. As a result, these proceedings would be unacceptably delayed for any additional seven months before any progress on depositions could occur. Due to additional conditions placed by

the Petitioners on these the conduct of these proceedings, the negative consequences on the Alleged Debtors' businesses, and the Petitioners' willful disobedience of the Court's "Discovery Orders" and "Compliance Order," the Court found all to be prejudicial, unjust and inequitable to the Alleged Debtors, thereby justifying dismissal of these involuntary bankruptcy petitions.

10. On the same day, February 12, 2021, the Court issued its *Order (i) Denying Petitioning Creditors Motion for Continuance and (ii) Bifurcating the Evidentiary Hearing on the Alleged Debtors' Motion for Recovery of Amounts Under 11 US.C. § 303(i)* [Dkt. No. 337]. The rationale for doing so was that the Petitioners never filed a reply in support of the Motion to Reconsider before the Court entered its Order Denying the Motion to Reconsider rendering inapplicable the Petitioners' argument that the possibility of relief in the 303(i) Motion is moot. The Court also reasoned that the Petitioners had provided no reason why discovery has not already been completed.

11. On February 21, 2021, Petitioners filed their Exhibit List [Dkt. No. 341], Expert Disclosure [Dkt. No. 342], Amended Witness List [Dkt. No. 343], Amended Rule 26(a)(2)(B) and FRE 702 Expert Disclosure [Dkt. No. 344], and Amended Exhibit List [Dkt. No. 346]. The Amended Witness List [Dkt. No. 346] amended the original Witness List [Dkt. No. 340] filed only on February 20, 2021 which, at the time of their filing was late since the hearing to which these pleadings was scheduled for February 23, 2021.

12. On February, 22, 2021, Alleged Debtors filed their *Motion to Strike and Objection to Petitioners' Late Filed Exhibit List* [Dkt. No. 341], *Expert Disclosure* [Dkt. No. 342], and *Amended Witness Lists* [Dkt. Nos. 343, 344, and 346].

13. On February 22, 2021, Petitioners filed their *Opposed Emergency Motion for Continuance of Hearing* [Dkt. No. 348]. Before Alleged Debtors were able to file their response

and objection to such Motion, this Court granted the *Emergency Motion for Continuance* [Dkt. No. 353] on February 23, 2021, thereby continuing the subject hearing to February 26, 2021.

14. After receiving the aforementioned continuance on February 23, 2021, counsel for Petitioners filed their *Second Amended Witness List* [Dkt. No. 354] and *Second Amended Exhibit List* [Dkt. No. 355] in the afternoon and evening (respectively). The *Second Amended Witness List* [Dkt. No. 354] added the names of four supposed Petitioners and identified three supposed Petitioners who would allegedly be appearing remotely from Europe. The *Second Amended Exhibit List* [Dkt. No. 355] included eight additional exhibits mentioned in the *First Amended Exhibit List* and added five new exhibits. Each of these exhibits was filed late.

15. On February 26, 2021, this Court conducted a hearing on a variety of pleadings including the *Alleged Debtors' Motion for Recovery of Attorneys' Fees, Costs and Compensatory and Punitive Damages Pursuant to 11 U.S.C. Section 303(i)* [Dkt. No. 313] and various pleadings dealing with the Petitioners' various original and amended Witness and Exhibit Lists [Dkt. Nos.340, 341, 343, 346, 354 and 355], and the Alleged Debtor's Motions to Strike such [Dkt. Nos. 347 and 358].

16. On March 4, 2021, this Court read its ruling to the record concerning the hearing on February 26, 2021 wherein it granted the Petitioners' counsel's request that Petitioner witnesses located in Europe may testify in these proceedings.

## II. ARGUMENT

### A. The Petitioners counsel has failed to provide information demonstrating the purported whereabouts of certain Petitioners intending to present testimony in this case.

17. As mentioned *supra*, Petitioners' counsel mentioned for the first time, and surprisingly so, on February 23, 2021 in the *Second Amended Witness List* [Dkt. No. 354] that

three of the Petitioners live and work at unspecified locations in Europe. Up to that date, Petitioners' counsel had indicated that all of the Petitioners were located in China, and stated incorrectly that each was prohibited by a non-existent travel "ban" issued by Presidential Proclamation on January 31, 2020. In fact, that Presidential Proclamation only restricted travel and entry into the United States by persons coming from mainland China, Hong Kong, and Macau. Those restrictions enumerated in that Proclamation never applied to Chinese nationals traveling from any other location, including Europe. It is unclear why these Petitioners continue to find it impossible to present themselves in the United States to present testimony.

18. To deal with concerns relating to the *legality* of testifying from within the borders of the People's Republic of China and/or its territories, as well as issues relating to the *identity* of the Petitioners (and thereby their standing in these cases), both topics which were discussed in prior pleadings, the Court issued the aforementioned Discovery Orders and Compliance Order that required that the Petitioners counsel sign and file a "Live Deposition Agreement" stating that the Petitioners must appear *in the United States* to provide deposition testimony. Permitting these persons (who are certainly capable of traveling relatively unrestricted from Europe) would defeat the purpose of both the Discovery Orders and the Compliance Order, and fails to address the identity and standing issues mentioned heretofore.

19. Additionally, and despite requests for such information, Petitioners' counsel has never provided any information disclosing the supposed location in Europe from which these persons would be testifying, nor have they provided any evidence demonstrating that these persons (who were previously reported to be in China) are now astonishingly located and/or residing in Europe.

**B. Taking remotely transmitted testimony from the Petitioners in Europe violates the Federal Rules of Civil Procedure and should not be allowed.**

20. Fed. R. Civ. P. 43 requires that witness testimony must be taken in open court unless federal statute, the Federal Rules of Evidence, or other enumerated authority provides otherwise. While this Rule does permit testimony in open court by "contemporaneous transmission from a different location," such may only be permitted "for good cause in compelling circumstances and with appropriate safeguards." See Fed. R. Civ. P. 43(a). Here, there is no good cause, and the court has made it clear by its Discovery Orders and Compliance Order that the appropriate safeguards of which this Rule speaks can only be put in place by face-to-face, live testimony in the United States. No other compelling circumstance appears to override the Court's prior reasoning on this matter.

21. To allow the Petitioners to now testify from Europe would thwart each and every reason for which live depositions in the United States are required as has previously been recognized by this Court. The identity of the persons on the Second Amended Witness List must be established, as must their purported role as an alleged creditor. None of that can be done via Internet testimony, whether from Europe, or from any other location on the planet. These arguments have been presented several times, and each time the Court has agreed.

**C. Taking remotely transmitted testimony from the Petitioners in Europe may violate the *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (concluded 18 March 1970)*.**

22. The *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* provides various requirements on parties wishing to obtain testimonial evidence from persons in a country that is a signatory to the Convention. Some countries have ratified the Convention in its entirety, while others have ratified it with amendments to certain of its articles. In some cases, certain countries (including some in Europe) have not signed the Convention at all

and are not bound by its terms. It is important to note that just because a country may have signed the Convention, it may not necessarily allow remote testimony from within its borders. China, for instance, is just such a signatory that refuses to allow remote testimony in foreign legal proceedings. It is conceivable that other countries may impose the same restrictions on such testimony.

23. To know which rules are applicable to which of the Petitioners who wish to testify from Europe, it is imperative to absolutely know which country or countries in which these Petitioners are located or from which they intend to testify, and whether or not such testimony is permitted from that location. To allow Petitioners' testimony without confirming the definite location from which they may be testifying runs the risk of creating additional legality concerns impacting the admissibility of any testimony procured by remote transmission.

## III. CONCLUSION

24. For reasons articulated heretofore, this Court should find that the Petitioners must provide the location in Europe from which they intend to testify, and that they must prove their presence in that location to ensure compliance with the laws of one or more countries and/or the Hague Convention relating to the taking of remote testimony. Still, the Court should find that no good cause, compelling circumstance, or appropriate safeguards exist that would justify the Court to allow the Petitioners to testify from one or more locations in Europe, and that such testimony would violate both Fed. R. Civ. P. 43 and the requirements outlined in the Court's Discovery Orders and Compliance Order.

## IV. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Alleged Debtors WALL007, LLC *et al.* request that this Court enter an order finding the Petitioners must provide the location in Europe

from which they intend to testify, and that they must prove their presence in that location to ensure compliance with the laws of the country or countries in which the Petitioners are located and with the Hague Convention relating to the taking of remote testimony as applicable. Alleged Debtors also request that the Court find that no good cause, compelling circumstance, or appropriate safeguards exist that justify the Court to allow the Petitioners to testify from one or more locations in Europe, and that such testimony violates both Fed. R. Civ. P. 43 and the requirements outlined in the Court's Discovery Orders and Compliance Order. Finally, Alleged Debtors request that this Court grant such other and further relief to which they may be justly entitled.

Dated: March 10, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry Alleyne-Simmons
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
Attorneys for Alleged Debtors

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 10, 2021, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon all parties receiving notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer