Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry Alleyne-Simmons
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL007 LLC, *et al.*[1],** | § | **Case No. 20-31131-hdh7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**POST-TRIAL BRIEF IN SUPPORT OF ALLEGED DEBTOR'S MOTION FOR DISMISSAL OF INVOLUNTARY BANKRUPTCY PETITIONS FOR REASON OF BAD FAITH AND FOR RECOVERY OF ATTORNEYS' FEES, COSTS, AND COMPENSATORY AND PUNITIVE DAMAGES**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

COMES NOW WALL007, LLC et al. ("Alleged Debtors"), Alleged Debtors in the above-styled and numbered bankruptcy case, and files this their *Post-Trial Brief in Support of Alleged Debtor's Motion for Dismissal of Involuntary Bankruptcy Petitions for Reason of Bad Faith and For Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages* (the "Brief" and "Motion, respectively), and in support thereof would respectfully show the Court:

1. Petitioners filed their involuntary bankruptcy petitions in these cases for reasons that do not comport with those permitted by the United States Bankruptcy Code. In light of the

[1] The Alleged Debtors in these cases are: WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC.

Court's recent decision in *In re National Rifle Association of America and Sea Girt, LLC*, No. 21-30085 (Bankr, N.D. Tex. Entered May 11, 2021), it seems appropriate to visit the bad faith reasons that may exist in a case filing in the context of these involuntary cases.

2. In that case, this Court unequivocally held that "a bankruptcy case filed for the purpose of obtaining an unfair litigation advantage is not filed in good faith and should be dismissed." *Nat'l Rifle Ass'n* No. 21-30085 citing *Antelope Techs., Inc. v. Lowe (In re Antelope Techs., Inc.)*, 431 F. App'x. 272 (5th Cir. 2011).

3. This Chapter 7 case, and the related jointly administered cases, were filed by Petitioners as a litigation tactic, to obtain an unfair litigation advantage by seeking discovery relevant to this and other cases, as a debt collection tactic, and as an attempt at forum shopping in the context of a state court dispute with certain of the Alleged Debtors. Those types of conduct are within the purview of an abuse of the Bankruptcy Code's provisions designed to gain a tactical advantage in pending litigation and in the disputes between Petitioners and the Alleged Debtors.

4. The underlying subject matter of these cases pertain to a dispute previously filed in a non-bankruptcy forum, as Cause No. DC-19-18361 before the District Court of Dallas County for the 44th Judicial District (the "State Court"). After expending substantial judicial and financial resources on that case, the Alleged Debtors met with some degree of success against the Petitioners. Anticipating an undesirable outcome in that venue, the Petitioners then filed the instant related cases, resulting in a stay of those State Court proceedings until the instant proceedings could be adjudicated by this Court. Notably, the State Court remains as an available forum for resolution of all underlying disputes between Alleged Debtors and Petitioners.

5. The Petitioners' actions in these cases reek of bad faith which should be met with serious consequences. Those actions include (1) their use of this additional forum to improperly

litigate identical claims, coupled with (2) their refusal to properly comply with the Court's order to file a Live Deposition Agreement (aimed at the determination of standing based on the threshold issues of verification of existence and validation of identity of persons claiming to be Petitioners), (3) the filing of multiple motions using false claims of nonexistent "travel bans" and proposing alternative discovery procedures known to the Petitioners to be illegal under Chinese law and unsupportable under U.S. law. The first of those consequences, namely dismissal of the involuntary cases, has been deemed appropriate and has already been ordered by this Court. For the same reasons, an award of costs and attorneys' fees pursuant to 11 U.S.C. § 303(i) is similarly appropriate.

## BACKGROUND

6. The Alleged Debtors are Texas limited liability companies formed for the purpose of acquiring land in order to construct horizontal improvements thereon as necessary to create a subdivision – streets, water utilities, sewers, sidewalks, and residential lots – with the objective of selling residential lots to home builders over a period of time.

7. Certain Alleged Debtors allegedly entered into a pooled loan agreement with their respective Petitioners through their designated agent Michael Fu, who was doing business as Silverland Finance Ltd. ("Silverland") and Platinum Investment Corporation ("PIC") (collectively "PIC", "Silverland" and "Fu" are referred to herein as "Fu" or collectively the "Fu Entities") which were actually discovered to be non-existent legal entities. Fu purportedly located the Petitioners in China, engaged them to provide co-lending through the Fu Entities, organized and facilitated the transfer of funds, and acted as an agent on behalf of all the co-lending Petitioners. The Fu Entities have asserted they are the agent for the co-lenders in the pooled loan agreements and further that the agent would serve as the administrator on behalf of the co-lenders, and direct all

payments be made to the agent. Essentially, the pooled loans were part of a single partnership amongst the Petitioners as Co-Lenders with Fu and/or his entities as the unified, designated agent. These facts are important because they show that the Co-Lenders along with Fu are a single alleged creditor entity rather than separate entities.

8. The State Court Case was filed on November 15, 2019, allegedly for the purpose of debt collection. The Plaintiffs' Original Petition in the State Court Case is salacious and spurious, and served as nothing more than a shakedown orchestrated and led by Fu to cover for unrelated failed business ventures of Silverland and PIC in attempt to force Defendants to pay him millions in fees that were either unearned or already paid. Additionally, Fu shared confidential information spread rumors and false information, and defamed the Alleged Debtors and their related entities and principals to other lenders and co-lenders in a concerted and calculated effort to pressure the Alleged Debtors into submission.

9. The Defendants therein filed an answer, a plea in abatement, a motion to dismiss pursuant to TEX. R. CIV. P. 91a, and an anti-SLAPP motion. Instead of responding to these pleadings, Petitioners opted to forum shop and filed this involuntary bankruptcy case.

10. This involuntary bankruptcy case was filed in April 2020 and was contrived as but another litigation tactic targeted at applying such pressure in the form of destroying the Alleged Debtors' (and their related entities' and principals') relationships with their lenders designed to restrict their access to capital needed to operate their businesses, destroy their reputation through manufactured negative publicity, obstruct their development projects, and essentially manufacturing conditions that forced creditors to file unnecessary claims against the Alleged Debtors for fear of losing their interests in these gratuitous bankruptcy proceedings. All of these

actions were wrought of anticipated negative orders in the State Court Case that run contrary to the interests of Fu and the Fu Entities.

11. The Alleged Debtors assert that the Petitioners failed to comply with their loan agreements by neglecting to tender the loaned amounts to the Alleged Debtors either personally or traced through payments by the Fu Entities or Fu; failed to provide the required "know your customer information" as part of standard anti-money laundering practices; and obstructed Alleged Debtors' obligations to comply with U.S. tax laws which require tax withholdings from payments made to Petitioners overseas. Alleged Debtors further assert that no promissory notes were ever executed as contemplated by the loan agreements. The financial practices of Fu and the Petitioners – as the Alleged Debtors now understand them – were misleading, potentially fraudulent, and violated Chinese law restricting the transfer of funds overseas by Chinese nationals located in China, and likely violated U.S. money servicing and anti-money laundering laws. In fact, the Alleged Debtors' attempt to force compliance with such laws including taking corrective actions and calling these financial practices into question is what initiated this ongoing dispute in the State Court Case. As such, the liability and amounts owed to the Petitioners remain hotly contested and in dispute.

12. The Alleged Debtors assert that Fu, through the Fu Entities, has continuously misled the Alleged Debtors and the Petitioners, breached obligations and agreements, interfered and obstructed the Alleged Debtors in performing their obligations and efforts to even remit payments to the Petitioners.

13. Upon information and belief, the Alleged Debtors question the identity and existence of the Petitioners including the assertion that some or all of named Petitioners are: (i) not voluntarily participating in this Bankruptcy Case; (ii) not aware that the Involuntary Petition

was filed in their name; (iii) did not loan and/or transfer such funds as allegedly claimed in the involuntary petitions, and/or (iv) not real persons. The docu-signed documents that make up the Involuntary Petitions and related filings cast serious doubt on their authenticity and identity of such Petitioners. Further many of the Petitioners who reside in China lack or have questionable contact information. Given that Petitioners have refused to appear and participate in any legal depositions, the Alleged Debtors would have no way to verify the actual existence of the Petitioners (and if so, whether they are merely pawns for Fu and others) along with their actual involvement in the underlying transactions, their personal claims, and level of voluntary and knowing participation in the involuntary proceedings before this Court.

14. After determining the need to depose the Petitioners to make a threshold determination concerning the issues of existence, identity, and confirmation of standing as actual Petitioners, the Alleged Debtors attempted to conduct those depositions via such means as legally permitted by U.S. and Chinese law. However, at every turn, the Petitioners, and/or their counsel, obstructed each of the Alleged Debtors attempts to carry them out. Recognizing the absolute need for a determination on these threshold matters and Alleged Debtors right to depose the Petitioners, the Court agreed with the position of the Alleged Debtors and, on August 19, 2020, issued its oral ruling followed by entry of its various Orders5 ("Discovery Orders") on September 4, 2020 concerning these dispositive issues, including the requirements that:

- No discovery or motion practice shall continue unless and until a live deposition agreement signed by counsel for Petitioners is filed with the Court...; [Dkt. Numbers 166, 167, 168, and 169]
- Petitioners are required to sign their answers to their interrogatories with their own "wet signatures" as opposed to the signature of Petitioners' counsel; [Dkt. Numbers 165 and 166]

- Petitioners will provide Alleged Debtors with copies of passports of all of the Petitioners, upon request and that such passports will be submitted to the Court for in-camera inspection, upon request; [Dkt. Numbers 165 and 166]
- Petitioners' depositions shall be required to be taken in person in the United States, at a time and place agreeable to the Parties; [Dkt. Number 168]
- Petitioners are required to produce all documents concerning transfers of funds from Chinese accounts to the Alleged Debtors that underlie the Petitioners' claims; [Dkt. Numbers 169] and
- Petitioners are required to produce all documents concerning communications between Petitioners and Michael Fu. [Dkt. Numbers 169]

15. For months, the Petitioners failed to comply with a single one of these Orders. Instead, they filed their Motion for Reconsideration of Discovery Orders [Dkt. No. 175]. The Court denied this Motion [Dkt. No. 202] for many reasons, including the fact that the travel restrictions contained in certain Presidential Proclamations did not ban Chinese nationals from travelling to the United States from China for depositions as claimed by Petitioners that their support for such "ban" was an expired travel alert on a tourist website rather than any authoritative legal or regulatory source; that they incorrectly argued that depositions could legally be performed in Macau despite contrary and unrefuted legal authority cited by the Alleged Debtors that such depositions violate Chinese law; and that any remotely performed depositions not only failed to resolve the illegality of conducting such depositions from China but also failed to resolve concerns over the identity of the Petitioners.

16. With literally no changes to the Petitioners' arguments which this Court found so problematic, and no presentation of any newly discovered evidence or change in controlling law that would forbid the Petitioners travel to the United States or which would permit the taking of depositions in Macau, the Petitioners instead on November 3, 2020 filed separate Motions for Leave to Take Direct Appeal and Motions for Leave to File an Interlocutory Appeal and Request

for Certification to the U.S. Court of Appeals for the Fifth Circuit (collectively, "Motion for Leave") relating to each of the five (5) Discovery Orders.

17. On November 23, 2020 this Court sua sponte issued its Order Directing Compliance with Prior Orders [Docket No. 287] and set a deadline of December 4, 2020 as the deadline for the Petitioners to either enter a "Live Deposition Agreement" (the "Agreement") as mandated by several of this Court's Discovery Orders or obtain a stay of the discovery orders pending appeal.

18. Only after the District Court denied their Motion for Leave, the Petitioners filed their Agreement [Dkt. No. 308] on December 4, 2020. The Court rejected this filing because it did not comply with the prior orders regarding the Agreement and was filed on behalf of only eleven of the sixty-five Petitioners. The Court noted that the Agreement contained problematic conditions that gave "too much control to counsel for the [Petitioners]… to avoid the obligation to appear for a deposition…." The most significant problem with the Agreement, however, was that the Petitioners' adherence to it hinged upon the uncertain availability of COVID-19 vaccinations prior to their travel to the United States. The Court was particularly troubled that the Petitioners had plenty of time to request insertion of these conditions into the Agreement, but that they never requested them. The resulting "Agreement," the Court reasoned, was a last-minute, non-compliant pleading filed on behalf of only a small number of Petitioners that gave them the ability to further delay the case, and trigger conditions enabling them to never appear for depositions in the United States. In essence there was no "Agreement" to appear.

19. As a result of the foregoing, the Court ordered that the jointly administered involuntary bankruptcy cases were to be dismissed without prejudice to refiling.

20. In addition to the prior events that took place in this case, on May 10, 2021, the court heard trial testimony from three Petitioners in these related bankruptcy cases. Each of the

three articulated various, and sometimes overlapping, reasons for participating in these involuntary bankruptcy proceedings.

21. When asked whether Petitioner Yue Zhang was participating in the hope of collecting money she claimed was owed, she indicated "that was only one of the reasons that I thought [sic]." See Transcript of Proceedings ("Transcript") at 33:9. Zhang also indicated that she initiated these involuntary proceedings as "the best way to protect our right and interest." Transcript at 33:16-17. Finally Zhang indicated that she was also motivated out of her concern that "this person, the debtors, could use some other way to transfer his assets to other areas so that he can pay to other people of the interest[,… and] that his discredit is going to hurt the project[.]" Transcript at 33:24-34:4.

22. Weijia Kong's motivations for filing these involuntary bankruptcy petitions were different. This witness indicated that she participated in the involuntary bankruptcy proceedings because she encountered difficulty communicating "with Tim Barton about the company, about the repayment program or plans[,] and because she had to "communicate with the PIC [Platinum Investment Corporation] as well as the attorney,… [so she had] to make the decision for protecting the interest… for myself by going through the involuntary bankruptcy petitions." Transcript at 91:11-19. Kong also indicated her unfounded fear that she "was afraid that this amount that we have invested into would be illegally [sic] or scammed into something else which is not legal" and that the Alleged Debtors would "use the … money to pay some other priority of the parties that he has in mind, such as paying for his employee or the relevant parties involved." Transcript at 91:20-92:1.

23. During the cross-examination of Sicheng Zhan, that witness indicated that he denied entering into the involuntary petition to collect money believed to be owed by the Alleged

Debtor because that was not his only incentive. He was further motivated by a desire to "know what is the status of the – like where [his]… money… went" which he could not have discovered through a lawsuit filed in the United States because he was not "expert on this, so [he]… didn't really know if there's any other alternative for [him]." Transcript at 114:10-115:8. When asked specifically about his participation in the Wall016 bankruptcy proceedings, he indicated he wanted to "collect my [his] money[,…to] see what is the progress of what – where my money go [sic][,…and to determine] if this contract, this agreement has been fulfilled." Transcript at 124:1-7.

24. The reasons for filing the involuntary bankruptcy asserted by the Petitioners above are in addition to those asserted by Michael Fu ("Fu"), who claimed to represent and be the agent of the Petitioners, during his deposition. When asked about his involvement in the filing of the involuntary bankruptcy cases, he stated "I had a discussion with [petitioning creditors]…[a]nd we have stayed a civil lawsuit [in reference to the State Court Case] against him threatened. And I become to know it's going to be a long procedure, a long time dragging and for the longest time…so I consulted with my attorney. And then I become to understand involuntary bankruptcy case is much faster….after I spoke to the attorney and also after I spoke to some of my client, they consult their own attorneys, that I realize filing a civil lawsuit can be dragging on for a long time, And a long time is really unpredictable. S—especially the way – the actions that Tim Barton shows. And I was afraid then he would do something else that then that would hurt all the [Petitioning Creditors] so, I – after the comparison after I spoke to the attorneys, and then after I consulted Mr. Steve Packman, that when I got the conclusion [that bankruptcy would be "faster."[2] When asked

[2] Deposition of Hoaqiang "Michael" Fu beginning at line 19, page 73 through line 5, page 74; line 15; and line 19, page 78 through line 6, page 79.

what he hoped to accomplish with the bankruptcy filing, Fu further stated, "we all wanted to know in detail what kind of project the investment made. We want to know the detailed information, and we want to know a specific investor – investment supposed to go specific project. We want to know those information in detail." [3]

25. The involuntary bankruptcy was additionally filed on behalf of the Petitioners by Michael Fu to extort a settlement from the Alleged Debtors. He along with Haibo Jiang, husband of a Petitioning Creditor, sought to get a settlement of between $3million and $4 million dollars for them (not the other Petitioning Creditors) and in exchange they claimed they would be able to get the bankruptcy case dismissed.[4]

26. Furthermore, during cross examination of both Yue Zhang and Weijia Kong it was revealed that they had produced documents as evidence of their transmission of loan proceeds which were an exact duplicate of other Petitioning Creditors – an obvious impossibility. Such was not a simple mistake given that, as a result this discovery during the hearing, Debtors further reviewed documents produced by many other Petitioning Creditors only to discovery numerous instances where multiple Petitioning Creditors attempted to submit evidence of their proof of claims that were also submitted by other Petitioning Creditors . The same document was often produced 3-4 times if not more by multiple Petitioning Creditors (see Exhibit "A" attached hereto).

27. The assertion that the content of this testimony, which indicates that these bankruptcy filings is motivated by a desire to seek discovery, is further reinforced by comments made by opposing counsel in the early days of this case. In a conference call on May 11, 2020

[3] Deposition of Hoaqiang "Michael" Fu lines 7 - 25, page 79.

[4] Deposition of Hoaqiang "Michael" Fu beginning at line 24, page 80 through line 18, page 81. Deposition of Haibo Jiang beginning at line 17, page 67 through line 18, page 68.

between Alleged Debtors' counsel Joyce Lindauer and Petitioner's counsel Stephen Packman, the latter "revealed that the main purpose of the filings was to obtain an accounting of monies that were received by the Wall entities from some of the Petitioning Creditors." [Dkt. No. 25, page 11, paragraph 25(c)].

**LEGAL STANDARD**

28. Both involuntary and voluntary bankruptcy petitions, regardless of whether they are filed pursuant to Chapter 7, Chapter 11, or Chapter 13, are subject to dismissal if filed in bad faith. *Forever Green Ath. Fields, Inc. v. Dawson*, 514 B.R. 768, 785 (E.D. Pa. 2014). The requirement of good faith "ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004).

29. The Bankruptcy Code does not define "bad faith." See *General Trading v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1501 (11th Cir. 1997). Instead, a court shall decide "[w]hether the good faith requirement has been satisfied… [after] a fact-intensive inquiry in which the court must examine the totality of facts and circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Forever Green* 514 B.R. at 785 (citing *Integrated Telecom*, 384 F.3 at 118).

30. To establish that a bankruptcy petition was filed in bad faith, a "Bankruptcy Court looks to the totality of the circumstances[,]… and may consider a wide range of factors, including… 'the timing of the petition; the… motive in filing the petition;…and whether the [petitioner]… has been forthcoming with the bankruptcy court….' " *Forever Green*, 514 B.R. at 786 citing *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007).

31. A determination of bad faith can be found when the petitioner has abused the provisions, purpose, or spirit of bankruptcy law." *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000)." Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith. *Id.*

**ARGUMENT AND AUTHORITIES**

32. An involuntary bankruptcy petition may be filed only for proper purposes which may include the prevention of "dissipation of assets," or to "protect against other creditors obtaining a disproportionate share of the debtor's assets." See *In re Carter*, No. 16-50723, 2017 Bankr. LEXIS 184, at *11 (Bankr. M.D.N.C. 2017); *In re Kennedy*, 504 B.R. 815 (Bankr. S.D. Miss. 2014). See also *In re Better Care, Ltd.*, 97 B.R. 405, 411 (Bankr. N.D. Ill. 1989); *In re Silverman*, 230 B.R. 46, 53 (Bankr. D.N.J. 1998).

33. A finding of bad faith can be cause for dismissal of a Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(a). *In re Privada, Inc.*, No. 07-10940 FRM, 2008 Bankr. LEXIS 2717, at *14-15 (Bankr. W.D. Tex. 2008). See also *In re Little Creek Development. Co.*, 779 F. 2d. 1068 (5th Cir. 1986). *Little Creek* has clearly established that by statute and/or judicial interpretation "a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings…." *Little Creek*, 779 F.2d at 1071. "Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e. avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with 'clean hands.'" Id. at 1071-72.

34. Where a petition is filed for an improper purpose, and thus, in bad faith, a court will hold that there is cause to dismiss. *In re Sherwood Enters., Inc.*, 112 B.R. 165, 168 (Bankr. S.D. Tex. 1989). Where a bankruptcy filing has been "used as a litigation tactic in what is essentially

a two-party dispute[,]" such "[u]se… is an abuse of the [bankruptcy]… process constituting lack of good faith in filing which warrants dismissal. *In re Privada, Inc.*, at *18.

35. Section 303(h)(1) does not mandate that a bankruptcy court "shall order relief" against a debtor who is not paying its debts. *In re Bates*, 545 B.R. 183, 192 (Bankr. W.D. Tex. 2016) citing *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334 (3d Cir. 2015). Rather, even where the statutory criteria for commencing an involuntary suit are satisfied and where the putative debtor is not paying its debts as they become due, bad faith on the part of petitioning creditors provides a basis for dismissing an involuntary bankruptcy petition. *Forever Green, 804 F.3d at 334*.

36. Again, when establishing that a bankruptcy petition was filed in bad faith, a "Bankruptcy Court looks to the totality of the circumstances[,]… [including the petitioner's] motive in filing the petition" *Forever Green*, 514 B.R. at 786 citing *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007).

37. "[D]ebt collection is not a proper purpose of bankruptcy." Forever Green 514 B.R. at 787, citing *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 716 n.11 (4th Cir. 1993). See also *In re Nordbrock*, 772 F.2d 397, 400 (8th Cir. 1985) ("A creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt"). "The filing of an involuntary petition for a non-bankruptcy purpose is evidence of bad faith." *In re Tichy Elec. Co. Inc.*, 332 B.R. 364, 373 (Bankr. N.D.Iowa 2005) (citing *Basin Elec. Power Co-op. v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir. 1985)).

38. Here each and every motivation of the Petitioners for filing these bankruptcy cases fail to meet the good faith requirements for filing such bankruptcy cases. These Petitioners had an alternate state court forum in which to pursue litigation against the Alleged Debtors. When that

litigation did not go as planned, they sought an alternate forum, namely this Bankruptcy Court, in which to re-litigate previously considered matters. Additionally, Petitioners who presented themselves before this Court and responded to questions about their reasons for participating in these proceedings indicated very clearly that they were at least in part motivated by collecting a debt owed to them individually, to ensure that their monies were not being used to pay other creditors or employees of the Alleged Debtors, to get other information about how their funds were being used, to ensure that such use was not illegal or part of a "scam," and to determine if the contract or contracts between them and the Alleged Debtors "had been fulfilled" (i.e. to seek information by discovery in an effort to gain an unfair advantage in various litigation proceedings). Given their sworn testimony and considering each as part of the "totality of circumstances" test used to determine bad faith, it is clear that none of these are proper reasons for filing an involuntary petition. [add here what is a proper reason – cite] As such, the Court should hold that the petition filings in each of these related bankruptcies was conducted in bad faith and that the dismissal of each for such reason is appropriate.

## CONCLUSION

39. Given the totality of the circumstances and the reasons for which these involuntary bankruptcy petitions were filed, the Court should find that said filings were conducted in bad faith, thereby supporting this Court's award to the Alleged Debtors of their attorneys' fees, costs, and compensatory and punitive damages pursuant to the terms of 11 U.S.C. § 303(i)(1) and (2).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Alleged Debtors pray that the Court grant this Motion in its entirety, and for such and other and further relief to which the Alleged Debtors may show themselves justly entitled.

Dated: May 19, 2021

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com
ATTORNEYS FOR ALLEGED DEBTORS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 19, 2021, a true and correct copy of the foregoing *Post-Trial Brief in Support of Alleged Debtor's Motion for Dismissal of Involuntary Bankruptcy Petitions for Reason of Bad Faith and For Recovery of Attorneys' Fees, Costs, and Compensatory and Punitive Damages* was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer